**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff, | : | Civ. A. No. |
| - against - | : | |
| GOWTHAM RAO, Defendant. | : | |

**DECLARATION OF LARRY MCKLAINE**

I, LARRY MCKLAINE, being duly sworn, declare as follows:

1. I am Senior Manager, People Partner at EPAM Systems, Inc. ("EPAM" or the "Company"). I have held this position for the past three years and have been employed with EPAM for over four years.

2. In my role, I provide support to a wide array of EPAM's client groups within North America for a number of EPAM's global business units, including life sciences. My responsibilities include providing strategic advice and consulting, employee investigations, and managing employee performance issues.

3. I submit this declaration in support of EPAM's motion for a temporary restraining order and preliminary injunction against its former employee, Gowtham Rao ("Rao" or "Defendant"): (i) directing Rao, and all parties in active concert with him, to return all of EPAM property, including its confidential information, trade secrets, and intellectual property ("EPAM Confidential Information and IP") in his possession and control; (ii) enjoining Rao, and all parties in active concert with him, from accessing, using or disclosing any EPAM Confidential Information and IP; (iii) directing Rao, and all parties in active concert with him, to preserve and

submit to a forensic examination all e-mail accounts, cloud accounts, sharefile accounts and computer or electronic devices in Rao's possession or control, or to which he has access, including, but not limited to, computers, hard disk drives, removable storage devices (e.g., USB drives), smart phones, iPads, tablets, email accounts, cloud accounts, and/or all other similar electronic storage repositories (collectively, "ESI Devices and Accounts"); and (iv) directing Rao to submit for forensic examination any other ESI Devices and Accounts in Rao's possession or control that contain or may have contained EPAM Confidential Information and IP, or were used or may have been used to transmit EPAM Confidential Information and IP.

4. I know the facts testified in this Declaration to be true based upon my own personal knowledge, discussions with other employees of EPAM, and/or a review of relevant documents.

## I. Rao's Employment with EPAM and Eventual Termination for Cause

5. Rao was employed by EPAM as Managing Principal, Life Sciences Consulting starting on or about November 19, 2024 until he was terminated for cause on October 15, 2025.

6. In the role for which he was hired, Rao was supposed to be responsible for heading the data science business unit within EPAM's life sciences division, including business development, revenue generation, portfolio management, and managing the members of the data science team.

7. Rao's employment agreement included confidentiality and non-disclosure obligations, as well as non-competition and non-solicitation restrictive covenants befit his position in the Company and access to EPAM Confidential Information and IP.

8. During his tenure with EPAM, I understand that Rao failed to consistently fulfill the expectations of his position. In particular, he failed to build revenue and exhibited poor

managerial capabilities. Team members often cited his lack of leadership and unwillingness to engage in their professional development.

9. In light of these performance issues, in September 2025, the Company made the decision to transition Rao to a different role in which he would be responsible for developing EPAM's AI capabilities with regard to certain solutions for specific clients.

10. I was brought in to help support Company leadership and Rao with this transition. No plans were made to separate his employment from EPAM, and I and others within EPAM made this quite clear to him on several occasions.

11. Rao appeared to take offense to both the negative performance evaluations and the change to his role. During my discussions with Rao about his new role, he expressed a loss of confidence in the leadership team.

12. In early October, Rao began to discuss with leadership and me about a possible resignation via a mutually agreeable separation. As part of those discussions, Rao explored whether the Company would agree to waive the post-employment non-solicitation and non-competition restrictions in his employment agreement. I told him that the Company would not waive the restrictive covenants, and again reiterated that we were not terminating him, and that his decision to leave was entirely his choice. Rao then appeared to abandon discussions about a resignation.

13. On or about October 14, 2025, I learned that Rao had engaged in a number of acts that violated Company policy. First, I learned that during an industry conference the prior week, Rao had approached at least one major EPAM customer indicating that he was no longer working at EPAM and that he was a "free agent," suggesting that he was in business for himself.

14. I also learned that a few days earlier, Rao had embedded the phrase "Copyright 2025 Gowtham Rao" into certain software code for one of EPAM's tools that the Company had been developing and to which Rao had access, in an apparent attempt to fraudulently assert ownership over the code. Another employee on the relevant project team also raised a concern that Rao had attempted to permanently delete project files from EPAM's system.

15. Rao's aforementioned misconduct compelled EPAM to terminate his employment, effective October 15, 2025.

16. I met with Rao to inform him of his termination. During that meeting, I told him that he needed to return his Company-issued computer.

17. I believe that Rao purposefully orchestrated a for cause termination from the Company. This is because the non-competition provision in his employment agreement is only triggered by a voluntary resignation. In fact, when I advised him of his termination, Rao specifically asked whether he was still bound by the non-competition provision. I reminded him that notwithstanding the non-competition circumstances, he is unquestionably bound by the post-employment non-solicitation restrictions and that the Company expects him to adhere to that obligation.

18. Despite our discussions during the exit process, I understand that Rao immediately announced himself as a competitor of EPAM and solicited one of EPAM's largest clients.

19. To date, he has still not returned his Company-issued computer even though mailing labels were sent to him to facilitate its return.

20. I was also advised that an investigation into Rao's network activities revealed that he downloaded from the Company's network thousands of data files containing a wide range of confidential information, including whole folders relating to EPAM's customers, customer

account information, RFP responses and bid proposals, pricing documentation, client facing project information, including designs and data models, contract documents, CRM data, and P&L data, among other highly confidential and sensitive information. Some of the data misappropriated by Rao include files that are the property of EPAM's customers which have been entrusted to the care of EPAM.

21. The Company also discovered that software code bases were downloaded for a number of tools and products maintained by EPAM, some of which is intellectual property that is owned by EPAM and others that are owned by EPAM's clients.

22. In addition to investigating its computer networks, the Company also launched an independent investigation into Rao's misuse of resources during his employment at EPAM. In particular, the Company is currently investigating what appear to be unauthorized charges for personal expenses made to Rao's corporate credit card, including wallpaper purchased for his home. I understand that the investigation is still ongoing.

I declare, under penalty of perjury, that the foregoing is true and correct.

Larry Mcklaine

Dated: October 31, 2025