**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff, | : | Civ. A. No. |
| - against - | : | |
| GOWTHAM RAO, Defendant. | : | |

## DECLARATION OF MIROSLAV SKLANSKY

I, MIROSLAV SKLANSKY, being duly sworn, declare as follows:

1. I am the Global Head of IT Security at EPAM Systems, Inc. ("EPAM" or the "Company"). I have held this position since March 2018.

2. In my role, I have managerial responsibility over the Company's IT Security, cybersecurity operations and incident responses.

3. I submit this declaration in support of EPAM's motion for a temporary restraining order and preliminary injunction against its former employee, Gowtham Rao ("Rao" or "Defendant"): (i) directing Rao, and all parties in active concert with him, to return all of EPAM property, including its confidential information, trade secrets, and intellectual property ("EPAM Confidential Information and IP") in his possession and control; (ii) enjoining Rao, and all parties in active concert with him, from accessing, using or disclosing any EPAM Confidential Information and IP; (iii) directing Rao, and all parties in active concert with him, to preserve and submit to a forensic examination all e-mail accounts, cloud accounts, sharefile accounts and computer or electronic devices in Rao's possession or control, or to which he has access, including, but not limited to, computers, hard disk drives, removable storage devices (e.g., USB drives), smart

phones, iPads, tablets, email accounts, cloud accounts, and/or all other similar electronic storage repositories (collectively, “ESI Devices and Accounts”); and (iv) directing Rao to submit for forensic examination any other ESI Devices and Accounts in Rao’s possession or control that contain or may have contained EPAM Confidential Information and IP, or were used or may have been used to transmit EPAM Confidential Information and IP.

4. I know the facts testified to in this Declaration to be true based upon my own personal knowledge, discussions with other employees of EPAM, and/or a review of relevant documents.

5. EPAM treats all electronic data and information stored on its networks, including, for example, client information, employee work product, research and development, financial information, software source code and intellectual property as confidential, proprietary and trade-secret information (“EPAM Confidential Information and IP”).

6. EPAM accordingly engages in various measures to protect EPAM Confidential Information and IP. These measures include, among other safeguards: (i) making all employees subject to a robust set of IT security policies and work instructions, including the Acceptable Use of IT Resources Policy and EPAM’s Code of Conduct; (ii) storing information on secure networks and password protected devices; (iii) requiring all employees to periodically complete training lessons regarding confidentiality obligations and data privacy compliance; (iv) monitoring employee access and activity on the Company’s computer systems to detect questionable conduct; and (v) requiring employees to return all EPAM Confidential Information and IP upon termination of employment.

7. On or about October 15, 2025, I received a request from EPAM leadership to disable Rao’s EPAM account and access to the Company’s networks.

8. I was then asked to investigate whether Rao had engaged in any improper activity on EPAM's network.

9. The investigation revealed that between September 11, 2025 (around the same time when EPAM advised Rao of a change to his role) through October 14, 2025, Rao downloaded approximately 44,960 documents and data files from the Company's networks to one or more external devices, without the Company's authorization. The vast majority of these downloads occurred between Sunday, October 11, 2025 through Monday October 13, 2025, just days before his termination on October 15, 2025.

10. I submitted a file listing of all of the documents downloaded by Rao during this time period to life sciences leadership for review. I am advised that among the documents accessed and downloaded by Rao were data folders relating to EPAM's customers, customer account information, RFP responses and bid proposals, pricing documentation, client-facing project information, including designs and data models, contract documents, CRM data, and P&L data, among other highly confidential and sensitive information. Given that the file listing contains confidential information relating to client identities, ongoing projects, and other proprietary and sensitive information, EPAM will agree to make the listing available subject to an appropriate protective order or for the Court's *in camera* review.

11. I understand almost all of the information downloaded by Rao constitutes EPAM Confidential Information and IP. Some of the data misappropriated by Rao include files that are the property of EPAM's customers which have been entrusted to the care of EPAM.

12. The information security team also found unusual activity during the same time frame on EPAM's GitLab repositories where source code for various software tools and products are developed and maintained, including customized computer code for EPAM's clients, which is

the client's intellectual property. The logs revealed that Rao downloaded software code bases for a number of these tools.

13. In addition, the information security team was also able to confirm earlier reports from the project team that on October 13, 2025, Rao had attempted to permanently delete files in over 60 EPAM client and project folders from EPAM's Sharepoint network (including by attempting to make them permanently unavailable by clearing the recovery folder).

14. The information security team also identified over a dozen outbound emails from Rao's EPAM email account to a personal email account between September 20, 2025 through October 3, 2025, either forwarding or attaching various documents that appear to be related to Rao's obligations to the Company.

15. Rao's actions, as set forth above, are in violation of, among other things, the Company's Corporate Governance Policy pertaining to the acceptable use of IT Resources and Code of Conduct.

I declare, under penalty of perjury, that the foregoing is true and correct.



Miroslav Sklansky

Dated: November **1**, 2025