**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff, | : | Civ. A. No. |
| - against - | : | |
| GOWTHAM RAO, Defendant. | : | |

# DECLARATION OF LUCY MCDERMOTT

I, LUCY MCDERMOTT, being duly sworn, declare as follows:

1. I am Senior Program Manager - Real-World Evidence ("RWE") and Innovation at EPAM Systems, Inc. ("EPAM" or the "Company"). I have held this position since June 1, 2024 when EPAM acquired my prior employer, Odysseus Data Services, Inc.

2. My role includes oversight over every data science project and client engagement within the RWE group, including, for example, drafting Statements of Work, preparing business proposals, and supporting business development, among other responsibilities.

3. I submit this declaration in support of EPAM's motion for a temporary restraining order and preliminary injunction against its former employee, Gowtham Rao ("Rao" or "Defendant"): (i) directing Rao, and all parties in active concert with him, to return all of EPAM property, including its confidential information, trade secrets, and intellectual property ("EPAM Confidential Information and IP") in his possession and control; (ii) enjoining Rao, and all parties in active concert with him, from accessing, using or disclosing any EPAM Confidential Information and IP; (iii) directing Rao, and all parties in active concert with him, to preserve and submit to a forensic examination all e-mail accounts, cloud accounts, sharefile accounts and

computer or electronic devices in Rao's possession or control, or to which he has access, including, but not limited to, computers, hard disk drives, removable storage devices (e.g., USB drives), smart phones, iPads, tablets, email accounts, cloud accounts, and/or all other similar electronic storage repositories (collectively, "ESI Devices and Accounts"); and (iv) directing Rao to submit for forensic examination any other ESI Devices and Accounts in Rao's possession or control that contain or may have contained EPAM Confidential Information and IP, or were used or may have been used to transmit EPAM Confidential Information and IP.

4. I know the facts testified to in this Declaration to be true based upon my own personal knowledge, discussions with other employees of EPAM, and/or a review of relevant documents.

5. In November 2024, Rao joined EPAM as Managing Principal, Life Sciences Consulting. He became my direct line manager on or about December 17, 2024.

6. In the role for which he was hired, Rao was responsible for heading the data science business unit within EPAM life sciences, including business development, revenue generation, portfolio management, and managing the members of the data science team.

7. After nearly a year of working with Rao, on September 25, 2025 I shared with Gregory Klebanov, the Global Head of RWE at EPAM, various concerns that I and other members of the RWE team had about Rao as a manager and his role within the organization. To list just a few examples, team members often expressed frustration that they were not getting the support they needed from Rao on billable projects, did not receive any feedback or reviews, and about Rao's lack of attendance at team and project meetings. This resulted in one team member voluntarily resigning and another threatening to leave. Rao also exhibited a lack of interest on active data science projects and revenue generation. In one particular instance, Rao repeatedly

refused to meet with a client and ignored the client's emails, resulting in an erosion of that client relationship.

8. Rao also made questionable staffing decisions, including tasking an employee with developing content for Rao's personal website www.gowthamrao.com, which currently appears to be defunct.

9. I understand that the Company subsequently made the decision to transition Rao to a different role in which he would be responsible for developing EPAM's AI capabilities with regard to certain solutions for specific clients.

10. On or about September 30, 2025, Rao sent a number of messages on Microsoft Teams expressing concern about the state of his employment with EPAM and his continued ability to access messages as if he were about to be terminated, even though I received no indication from anyone that the Company had any intent to terminate him. On Monday, September 29, 2025, Rao shared his personal number and encouraged team members to communicate directly with him via WhatsApp. After or around that date, for reasons I could not fathom, he set his status as "offline" on EPAM's Microsoft Teams platform indicating to EPAM employees that he was unavailable. However, I understand that he continued to communicate with some EPAM employees through OHDSI's Teams Tenant, an external industry Microsoft Teams platform.

11. Between October 6 through October 7, 2025 I attended an industry conference in New Jersey. Rao also attended the conference on the Company's behalf.

12. During the conference, I engaged in a conversation with a representative of a longstanding EPAM client. During this conversation, the representative indicated that Rao had approached his colleague to convey that he was no longer working at EPAM and that he was a

"free agent," suggesting that he was in business for himself. This made no sense to me given that Rao was still employed by the Company and I shared that information with the client.

13. On or about October 14, 2025, I learned from one of my team members that Rao had tampered with the software code for one of EPAM's tools that the Company had been developing. Specifically, Rao embedded the phrase "Copyright 2025 Gowtham Rao" in an apparent attempt to assert ownership over the code. A screenshot of this so-called "commit" on the Company's GitLab (a software code repository) is attached hereto as Exhibit A.

14. The project team also raised concerns that Rao had attempted to delete various files from an EPAM SharePoint site (including by attempting to make them permanently unavailable by clearing the recovery folder).

15. After Rao was terminated on October 15, 2025, I understand that the Company conducted an investigation into Rao's activities on its network. I was told that the Company discovered that shortly before his termination, Rao bulk downloaded a large volume of documents and data files from the Company's networks to one or more external devices, without the Company's authorization. I had to review a selection of the report of downloaded files to ensure that no protected health information or proprietary client data was compromised as a result of Rao's unauthorized conduct.

16. Since his termination, I also learned new information confirming that Rao is competing with EPAM and have reason to believe that he is targeting EPAM clients. In particular, on October 16, 2025, after Rao had already been terminated, Rao continued to communicate through OHDSI Tenant, and offered in one message to join a meeting with an established EPAM client. Rao further noted his new work email as Gowtham.rao@coreaaon.ai, and wrote: "In full disclosure I am now a competitor for EPAM." A copy of this Teams exchange, with client

information redacted, is attached hereto as Exhibit B. Separately, I have also heard through industry chatter that Rao directly reached out to another one of EPAM's clients after he was terminated.

I declare, under penalty of perjury, that the foregoing is true and correct.

Lucy Elizabeth McDermott

_______________________________________

Lucy McDermott

Dated: November 3, 2025