**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., | : | Civ. A. No. |
| Plaintiff, | : | |
| - against - | : | |
| GOWTHAM RAO, | : | |
| Defendant. | : | |

## DECLARATION OF JUNE DINITZ

I, JUNE DINITZ, being duly sworn, declare as follows:

1. I am currently employed by EPAM Systems, Inc. ("EPAM" or the "Company") as Senior Director, Head of People, USA and Canada. I have held this position since April 1, 2022. I have been employed with EPAM since May 1, 2017.

2. I submit this declaration in support of EPAM's motion for a temporary restraining order and preliminary injunction against its former employee, Gowtham Rao ("Rao" or "Defendant"): (i) directing Rao, and all parties in active concert with him, to return all of EPAM property, including its confidential information, trade secrets, and intellectual property ("EPAM Confidential Information and IP") in his possession and control; (ii) enjoining Rao, and all parties in active concert with him, from accessing, using or disclosing any EPAM Confidential Information and IP; (iii) directing Rao, and all parties in active concert with him, to preserve and submit to a forensic examination all e-mail accounts, cloud accounts, sharefile accounts and computer or electronic devices in Rao's possession or control, or to which he has access, including, but not limited to, computers, hard disk drives, removable storage devices (e.g., USB drives), smart phones, iPads, tablets, email accounts, cloud accounts, and/or all other similar electronic storage

repositories (collectively, "ESI Devices and Accounts"); and (iv) directing Rao to submit for forensic examination any other ESI Devices and Accounts in Rao's possession or control that contain or may have contained EPAM Confidential Information and IP, or were used or may have been used to transmit EPAM Confidential Information and IP.

3. I know the facts testified to in this Declaration to be true based upon my own personal knowledge, discussions with other employees of EPAM, and/or a review of relevant documents.

4. In my role, I am responsible for leading a team of over 35 People professionals in the US and Canada, with the shared responsibility for the employee lifecycle from onboarding to exit, including talent management, employee relations, coaching employees, management, and leadership, as well as people operations, payroll and compliance.

5. Rao was employed by EPAM as Managing Principal, Life Sciences Consulting starting on or about November 18, 2024.

6. As a condition of his employment with EPAM, Rao executed on November 12, 2024, EPAM's Employment Covenants Agreement (Confidentiality/Assignment/Non-Compete/Non-Solicitation/Arbitration) (the "Agreement"). The Agreement contains various provisions with respect to the protection of EPAM's confidential information and business interests, such as a provision prohibiting the misuse and disclosure of confidential information and restrictive covenants prohibiting the solicitation of certain employees and clients of the Company for a period of 12 months following termination of employment. A copy of the Agreement is attached hereto as Exhibit A.

7. With regard to non-disclosure and use restrictions concerning confidential information, Section 1(d) of the Agreement expressly provides, in relevant part, as follows:

> You agree you will: (i) treat all Confidential Information[1] as strictly confidential; (ii) not directly or indirectly disclose Confidential Information, or allow it to be disclosed in whole or in part, to any entity or person whatsoever outside of the direct employ of the EPAM Group[2] except as required in the performance of your authorized duties (and then, only within the limits and to the extent of such duties); and (iii) not access, use, or copy Confidential Information or any documents, records, files, media, or other resources containing any Confidential Information, or remove any such items from the premises or control of the EPAM Group, except as required in the performance of your authorized employment (and then, only within the limits and to the extent of such duties or consent).
>
> …
>
> You understand and acknowledge these obligations regarding Confidential Information continue during and after your employment until such time as such Confidential Information becomes public knowledge, except as a result of your breach of this Agreement, or by those acting in concert with you.
>
> If/when your employment terminates, you shall immediately return any and all Confidential Information and other EPAM Group equipment or information in your possession.

8. With regard to non-solicitation of employees and clients, paragraphs 5(a) and 5(b) of the Agreement expressly state as follows:

> (a) <u>Non-Solicitation of Employees</u>. You agree that the term of your employment plus 12 months following termination of employment, you will not directly or indirectly, solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your

---

[1] Confidential Information is defined in the Agreement to include, "without limitation, all information not generally known to the public, in spoken, printed, electronic, or any other form, relating to the EPAM Group's business processes, practices, policies, plans, publications, research, operations, services, strategies, techniques, contracts, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, software, applications, design, databases, records, systems, supplier and vendor information, financial information, accounting information, legal information, marketing, pricing, payroll, staffing personnel, internal controls, security, formula, algorithms, ideas, inventions, patent applications, original works of authorship, discoveries, experimental processes/results, specifications, and client information of the EPAM Group or any existing or prospective client, supplier, investor, or other person or entity that has entrusted information to the EPAM Group in confidence.

[2] "EPAM Group" is defined in the Agreement to include EPAM's owned affiliates, and successors and assigns.

> termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.
>
> (b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.
>
> You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

9. The Agreement also contains a non-competition provision applicable in the event of a voluntary resignation of employment, which prohibits, for a period of 12 months following termination of employment, engagement in certain competitive work or employment.

10. Separately, the Agreement makes clear that any work made by Rao in connection with his employment with the Company is owned by EPAM. Specifically, Section 2 of the Agreement provides, in relevant part:

> Ownership of Work Product. Any Confidential Information, design, program, product, invention, package, prototype, model, innovation, data, improvement, new technique, process, discovery, concept, know how, trade secret, work product and original work of authorship, whether or not patentable, copyrightable or otherwise legally protectable (individually and collectively, "Work") made, collected, developed, conceived, discovered, learned, or used by you in connection with or in the course of your employment, whether during or after normal business hours, shall constitute "work made for hire" as that

> term is defined by the Copyright Act of 1978, as amended from time to time, and shall be deemed to have been made or developed by you solely for the benefit of your employer within the EPAM Group ("Employer") and shall be the sole and exclusive property of Employer. In order to effectuate the terms of this Agreement and in the event any Work created by or on behalf of you would not be deemed to be the sole and exclusive property of Employer, you assign and agree to assign to Employer all your rights in and to the Work including, without limitation, any trademarks, copyrights, patents, moral rights, and all other proprietary interest that you may have in any such Work without additional compensation. You shall not during the course of employment or any time after, use or (to the extent that the Work constitutes Confidential Information) disclose to any other person any such Work, except as expressly authorized in writing by Employer.

11. As an employee of EPAM, Rao was also subject to the Company's Code of Conduct, which contains express policies regarding EPAM's culture of confidentiality and treatment of confidential information both with respect to EPAM information and third-party information. A copy of the Code of Conduct is attached hereto as Exhibit B.

12. For example, the Code of Conduct emphasizes "Our confidential and proprietary information is a special kind of company asset. It is the non-public information that brings EPAM value. If such information is disclosed, it might harm our business or benefit our competitors. We protect our customers' and business partners' confidential information the same way." *See* Code of Conduct at 29. Employees are instructed in the Code of Conduct to use Confidential Information only if and as authorized, follow non-disclosure agreements, share it securely with permitted recipients, and to not obtain information that is not needed or that the employee shouldn't have. *Id.*

13. The Code of Conduct further provides examples of EPAM Confidential Information, which includes, among other types of information, business operating strategies and plans, technical information, pricing information, Company financial data, customer and client lists, and research and development activities, among others. *Id.* at 30.

14. The Code of Conduct also instructs employees regarding the acceptable use of technology, and to not use technology to violate non-disclosure agreements, intellectual property rights, or disclose client names or confidential information. *Id.* at 32.

15. Rao's HR Records show that he completed the Code of Conduct training module on November 18, 2024, and was thus aware of the policies contained therein. He also completed the Company's Confidentiality and Social Media course.

16. As an employee of EPAM, Rao was also subject to the Corporate Governance Policy with respect to Acceptable Use of IT Resources (the "IT Resources Policy). A copy of the IT Policy is attached hereto as Exhibit C.

17. As stated therein, the purpose of the IT Resources Policy is to establish standards and obligations for proper use of IT Resources (including, for example, computers, devices, network communications and information systems) in EPAM's business activities. *See* IT Resources Policy at 5.

18. The IT Resources Policy repeats the same confidentiality policies set forth in the Code of Conduct. *Id.* at 7. The IT Resources Policy also provides rules for managing confidential information, including a prohibition against storing confidential data on local workstations or mobile devices. *Id.* at 15. It also requires employees to return all work equipment when departing the Company, including any Company-issued laptops. *Id.* at 30.

19. Rao was terminated for cause on October 15, 2025. Despite his immediate obligation to return his Company-issued computer, EPAM did not receive it until October 31, 2025.

I declare, under penalty of perjury, that the foregoing is true and correct.

June Dinitz

June Dinitz

Dated: November 3, 2025