**The Honorable Wendy Beetlestone**
**United States District Judge**
**United States District Court for the Eastern District of Pennsylvania**
**601 Market Street, Room 10-A Philadelphia, PA 19106**

**November 5, 2025**

**Re: `EPAM Systems, Inc. v. Gowtham Rao`, Civ. A. No. 25-cv-6260 Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order**

Your Honor:

We submit this letter on behalf of Pro se Defendant Gowtham Adamane Rao, MD PhD, in opposition to Plaintiff EPAM's motion for an emergency Temporary Restraining Order.

The extraordinary remedy EPAM seeks requires a clear showing of (1) immediate and irreparable harm, (2) a likelihood of success on the merits, (3) a balance of hardships that tips decidedly in its favor, and (4) that an injunction serves the public interest.

EPAM fails to meet this high burden on all counts. Its entire motion is built upon a false narrative—a mosaic of conjecture, suspicion, and a profound mischaracterization of standard, authorized, and logged technical procedures. EPAM seeks to paint a picture of a rogue employee's plot, but the reality is one of a high-performing employee who was wrongfully terminated and is now being harassed through this coercive motion.

EPAM's application is factually deficient and, in key areas, technically impossible.

## The Factual Record Contradicts EPAM’s Core Allegations

**1. The Alleged "Mass Download" Was a Standard, Authorized Microsoft OneDrive Synchronization, Not Theft.**

EPAM’s central allegation—that Dr. Rao "surreptitiously downloaded" over 44,000 files—is a gross distortion.

- **This Was a "Sync," Not a "Download":** This activity was not a malicious data export. It was a standard synchronization performed by EPAM's *own approved and managed software*, Microsoft OneDrive, using the common "Make files available offline" feature.
- **This Was Not "Surreptitious":** The action was performed while Dr. Rao was fully authenticated on EPAM's system, using his corporate credentials. The entire process was logged by EPAM's own IT systems. There was no attempt at concealment.
- **This Was an "Authorized" Workflow:** This activity was a technical necessity to perform Dr. Rao's job under EPAM's explicit "Bring Your Own Device" (BYOD) and "Bring Your Own Account" (BYOA) policies, which management actively directed and supported. This practice was a routine practice by Dr. Rao and others in EPAM all through his time of employment.
- **EPAM Retained Full Control:** Most critically, Dr. Rao does *not* have access to these files. The files were protected within EPAM’s secure OneDrive container. The moment EPAM terminated Dr. Rao's employment on October 15, its IT department **remotely revoked his access**. This fact alone proves the files were *always* under EPAM's control.
- **reach of Fiduciary Duty:** EPAM's claim of disloyalty is baseless. Dr. Rao was commended for high performance just weeks before his termination, including for a stellar RFP presentation to clients. Furthermore, on October 9, 2025—less than a week before he was fired—Dr. Rao publicly and proudly announced his EPAM affiliation to a live audience at an industry trade conference, an act that was recorded and is publicly available. These are the actions of a loyal employee, not one engaged in sabotage.


New
Properties
Alt+Enter
Always keep on this device
Free up space


Microsoft OneDrive
All your files, ready and on-demand
With Files On Demand, you can browse everything in your OneDrive without taking up space on your device.
Online-only
These files don't take up space on this device, and they download as you use them.
On this device
When you open a file, it downloads to your device so you can edit it while you're offline.
Always available
Right-click a file to make it available offline.

**2. No Data Was "Permanently Deleted"; The Allegation is Both Technically Impossible and Factually Misleading.**

EPAM alleges Dr. Rao "attempted to delete files" to destroy evidence. This claim is technically and factually impossible.

- **This Was Routine Maintenance:** The action was a routine "cleanup" of redundant or old files to resolve synchronization and version control errors—a common, good-faith technical action by a project leader (Dr. Rao). Dr. Rao had no notice of any investigation or impending termination and was performing routine job duties.
- **"Irreparable Harm" is Impossible:** As an end-user, Dr. Rao *cannot* "permanently delete" files from EPAM's enterprise-grade Microsoft SharePoint system. EPAM's system has multiple, cascading safeguards:
    1. A **First-Stage Recycle Bin** for users;
    2. A **Second-Stage (Site Collection) Recycle Bin** for administrators; and
    3. **Mandatory Retention Policies**. EPAM's *own* public-facing compliance with **ISO 27001 and SOC 2 Type II** standards mandates the "continuous administrative recoverability and preservation of corporate data."

Plaintiff has not, and *cannot*, provide a sworn affidavit from its IT administrators stating this data is actually lost and unrecoverable. The files remain intact and recoverable on EPAM's own servers.

**3. Non solicit and —"In full disclosure I am now a competitor for EPAM"**

The October 16 (post termination) Message Demonstrates Transparency, Not Solicitation. EPAM presents Mr. Rao's October 16 message—"In full disclosure I am now a competitor for EPAM"—as a "smoking gun" of solicitation. The full context proves the exact opposite.

Mr. Rao Did Not Initiate Contact: An EPAM employee initiated the conversation, contacting Mr. Rao after he had been terminated to discuss an EPAM client.

"Full Disclosure" Was an Ethical Act: Mr. Rao's response was not an act of solicitation; it was an act of transparency. He was ethically informing an EPAM employee that, as he was no longer an employee, any further work-related discussion would be improper. He was establishing a clear, professional boundary to avoid a breach.

The Non-Compete is Void: The plain text of Mr. Rao's employment agreement, which EPAM itself drafted, states the non-competition clause is only triggered by a voluntary resignation. Because EPAM involuntarily terminated Mr. Rao, he was, as a matter of law, free to compete. His statement was a simple, factual declaration of his legal status, made to prevent improper communication.

See screenshot of transcript of the chat between EPAM employee and Gowtham Rao.

Haha thanks 🤣

Gaurav Dravida 10/16 10:49 AM Edited

Hi, this is for BI (we have a meeting Monday where Katy wants to talk about the STD_COST_YR and TOS and you're the only person who knows about this). So, for the ETL process to incorporate the std_cost_yr and TOS this is how I see it: a staging table is created with (maybe called 'aux_cost_factor') with the fields service_date (comes from the raw data - here I am talking about Optum), STD_COST_YR, TOS (in optum this might be rev_code+pos), cumulative_factor (we calculated). Then, this table gets joined to the raw patient claims (also staged) on the decided TOS and the service_year. Based on the std_cost_yr the appropriate standardized cost is calculated using our factor. Then we map to clinical events and map the audit trail of TOS so the decidedTOS (rev_code+pos) gets put in the visit_detail_source_value. Finally map to cost table with two records and one of those records having custom concept in the type_concept_id as 'Standardized cost'....this is for the old Cost table (CDM v. 5.4). But Katy said she does not want to parse the visit_detail_source_value to get the TOS (confused what exactly she means - is this for research purposes?)

10/16 11:35 AM

I am happy to talk thru this via Ohdsi tenant

Gaurav Dravida 10/16 3:43 PM

Great, do you have time tomorrow?

Should I have Katy join us tomorrow through OHDSI as well or would you prefer just me and you...I don't care what you choose

Friday, October 17

10/17 4:23 AM

Let's find time Tuesday. I am traveling today to South Carolina in afternoon and have client calls in morning. I will be back Monday morning. I can do Monday afternoon

Gowtham.rao@coreaaon.ai is my new work email. If it's ok, we can use that

Edited

In full disclosure I am now a competitor for EPAM

Right now any time other than OHDSI community call is fine

10/17 5:11 AM

i think this should work

Book time with Gowtham Rao

**4. The "Copyright Incident" Was a Technical Artifact of EPAM's Misconfigured Software.**

EPAM's claim that Dr. Rao "attempted to assert ownership" over its code is baseless and demonstrates a lack of technical due diligence.

- **This Was Not a Manual Act:** Dr. Rao did not *type* "Copyright 2025 Gowtham Rao" into any source code.
- **This Was a Software Default:** As a project leader, Dr. Rao performed a routine administrative task: assigning a license to a new project using a standard dropdown menu in EPAM's *own* GitLab software.
- **EPAM's System Was Misconfigured:** EPAM's GitLab template was improperly configured. It was set to automatically pull the *authenticated user's full name* (in this case, "Gowtham Rao") into the copyright field, rather than the correct corporate entity, "EPAM Systems, Inc."

Dr. Rao unequivocally acknowledges he does not own this software; EPAM does. This incident is evidence of EPAM's technical error, not Dr. Rao's intent to steal. Further, GitLab commits *can be* reversed and errors like this *are easily* corrected, causing no harm.

Default behavior (add license) Software adds text “Copyright 2025 Gowtham Rao” by default
See default configuration of EPAM software.



Gowtham Rao / gitlab_tests / **Repository**

## New file

main | LICENSE | MIT No Attribution

```
MIT No Attribution

Copyright 2025 Gowtham Rao

Permission is hereby granted, free of charge, to any person obtaining a copy
of this software and associated documentation files (the "Software"), to deal
in the Software without restriction, including without limitation the rights
to use, copy, modify, merge, publish, distribute, sublicense, and/or sell
copies of the Software, and to permit persons to whom the Software is
furnished to do so.

THE SOFTWARE IS PROVIDED "AS IS", WITHOUT WARRANTY OF ANY KIND, EXPRESS OR
IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY,
FITNESS FOR A PARTICULAR PURPOSE AND NONINFRINGEMENT. IN NO EVENT SHALL THE
AUTHORS OR COPYRIGHT HOLDERS BE LIABLE FOR ANY CLAIM, DAMAGES OR OTHER
LIABILITY, WHETHER IN AN ACTION OF CONTRACT, TORT OR OTHERWISE, ARISING FROM,
OUT OF OR IN CONNECTION WITH THE SOFTWARE OR THE USE OR OTHER DEALINGS IN THE
SOFTWARE.
```

See default configuration of EPAM software.

```
{
  "key":"mit",
  "name":"MIT License",
  "nickname":null,
  "featured":true,
  "html_url":"http://choosealicense.com/licenses/mit/",
  "source_url":"http://opensource.org/licenses/MIT",
  "description":"A permissive license that is short and to the point. It lets p
  "conditions":[
    "include-copyright"
  ],
  "permissions":[
    "commercial-use",
    "modifications",
    "distribution",
    "private-use"
  ],
  "limitations":[
    "no-liability"
  ],
  "content":"The MIT License (MIT)\n\nCopyright (c) [year] [fullname]\n [...]"
}
```

This code in EPAMs system directed the software to put my name instead of EPAM's. This was configured by EPAM.

## EPAM Fails to Meet the Four-Factor Standard for a TRO

Given these facts, EPAM's motion fails on all four legal factors.

**1. EPAM Cannot Show Immediate and Irreparable Harm.** This is the most critical factor, and EPAM's claim is factually impossible. The harm is not "irreparable" because: (a) Dr. Rao does not possess the alleged data, as EPAM remotely revoked his access to the OneDrive container; and (b) the "deleted" data is not lost, as it is fully recoverable from EPAM's own Second-Stage Recycle Bin, per its ISO 27001 and SOC 2 compliance.

**2. EPAM Is Not Likely to Succeed on the Merits.** EPAM's core claims are factually false. It cannot prove "improper means" for a trade secret claim when the access was authorized and logged. It cannot prove "breach of contract" (solicitation) when the evidence shows Dr. Rao *prevented* an improper discussion. It cannot prove "breach of fiduciary duty" when the "copyright" incident was a software error and the "deletion" was routine maintenance of recoverable files.

**3. The Balance of Hardships Tips Decisively in Dr. Rao's Favor.** The Court must balance the *actual* harm to each party.

- **Harm to EPAM is hypothetical:** EPAM faces no harm. It has its files. The "deleted" files are recoverable. Its harm is purely *hypothetical*.
- **Harm to Dr. Rao is Catastrophic:** The harm to Dr. Rao is immediate and total. EPAM is asking this Court to enforce a non-compete that is *void* under the contract's plain language (triggered only by "voluntary resignation"). Granting this TRO would shut down Dr. Rao's new venture, destroy his professional reputation, and make it impossible for him to earn a living. The balance between EPAM's of hypothetical actual harm and the 100% destruction of Dr. Rao's livelihood weighs entirely in Dr. Rao's favor.

**4. The Public Interest Weighs Against Granting the TRO.** The public interest is not served by this motion.

- **The Public Interest is in Upholding Contracts:** The public has an interest in forcing companies to *honor their own contracts*. EPAM's agreement *explicitly* voids the non-compete upon an involuntary termination.
- **The Public Interest is in Preventing Abuse of Process:** As settlement communications from November 4 show, Dr. Rao was *already negotiating in good faith* to provide EPAM with a secure, verifiable protocol for data remediation. EPAM's decision to file this motion in the midst of those talks proves this is a coercive tactic to gain leverage, not a response to a true emergency.

## Conclusion

Your Honor, this motion is a transparent abuse of the Court's emergency procedures. As of yesterday, November 4, 2025, counsel for Dr. Rao was in active, good-faith negotiations with

Plaintiff's counsel to resolve this very dispute, including a secure, verifiable protocol for the remediation of Dr. Rao's devices and offer concessions to EPAM. Plaintiff’s decision to file this "emergency" motion in the midst of those discussions—fatally undermines their claim of "immediate and irreparable harm." An issue that is the subject of a calm negotiation one day cannot become a five-alarm emergency the next. This motion is not a good-faith plea to prevent a crisis; it is a bad-faith litigation tactic designed to ambush the Defendant and use this Court as a coercive tool to gain leverage.

EPAM has failed to provide any credible evidence of wrongdoing and has failed on all four factors for a TRO. We respectfully request that the Court deny Plaintiff's Motion for a Temporary Restraining Order in its entirety.

Respectfully submitted,

/s/ Gowtham Adamane Rao

Gowtham Adamane Rao MD, PhD