May 11, 2026

The Honorable Wendy Beetlestone
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106

**Re:** EPAM Systems, Inc. v. Rao, No. 2:25-cv-06260-WB
Response to ECF 42 (Plaintiff's Letter Re: Spoliation)

**Dear Judge Beetlestone:**

I write in response to Seyfarth's May 6, 2026 letter (ECF 42). EPAM's request rests on the November 14, 2025 system refresh. But, regarding that refresh, their letter omits key material facts. EPAM knew these facts before it wrote to Your Honor, and these facts establish that no spoliation occurred.

Your Honor, I do not dispute that my duty to preserve was attached when this litigation became reasonably foreseeable on or about October 31, 2025 (ECF 33 ¶ 284). The November 5, 2025 TRO hearing reinforced that duty. I took it seriously then, and I take it seriously now. What actually occurred on November 14 shows I honored that duty.

In mid-November 2025, I wanted to set up new accounts on my personal home Microsoft Windows computer so I could use it for my new company, CoReason (the company I started after being terminated by EPAM). Because the existing personal Microsoft profile was the same one I used for EPAM's work, I wanted to create a new profile following the recently concluded TRO hearing to ensure I did not mix any EPAM work with my new company. But, I forgot the passwords for these accounts, and Windows eventually would not let me log in normally. The report of the forensic neutral, iDS, provides a timeline of what happened before and after the refresh (See Exhibit A, selected pages from iDS Operating System Analysis Report).

At 3:11 PM UTC on November 13, 2025, I ran a Google search for *"my microsoft windows appears corruptded how to reset,"* and at 4:42 PM, I visited Microsoft's official System File Checker support page (Exhibit A, p. 6 of 6). Subsequently, I ran what Microsoft calls a "Keep My Files" refresh (Exhibit B). Microsoft explicitly designed and named this documented Windows recovery procedure to <u>preserve</u> user files. The iDS report confirms this was a refresh and <u>not</u> a destructive wipe: the C:\Windows folder retained its original April 1, 2024 creation date, whereas a destructive reset would wipe and reinstall C:\Windows with a November 14, 2025 timestamp (Exhibit A, p. 4 of 6). My former attorney, Nicolle Galli, provided EPAM with a detailed explanation regarding the account creation, the corruption, and the actions I took (Exhibit C).

Additionally, the protocol required the neutral forensic vendor to identify and name any software designed to forensically delete or render unrecoverable electronically stored information. Across the iDS reports produced to date, the vendor identified no such software on this computer.

Furthermore, in several emails sent between January and March 2026, iDS repeatedly refused to conclude that this computer was reset.

From the outset, I have engaged with EPAM in good faith. On November 4, 2025, in lieu of the TRO hearing, I offered to wipe the computer entirely to resolve EPAM's concerns; EPAM declined that offer. After the TRO hearing, when Your Honor declined to impose court-ordered discovery, I voluntarily executed the Forensic Inspection Protocol on December 12, 2025, as a court-stipulated contract. I then voluntarily produced eleven distinct evidence sources—including my computers, mobile phone, personal email accounts, cloud drives, and GitHub accounts—and I have voluntarily participated in the file-by-file rolling AEO review since March 2026. In all subsequent correspondence with EPAM, I have consistently reaffirmed the explanation provided by Nicolle Galli (Exhibit C).

The forensic record before the Court is not the record of a destructive wipe. As the Windows procedure was designed to ensure, the files survived the refresh. This refresh afforded me use of my computer for my home and company work, and it did not impact EPAM's ability to search for files. iDS recovered the Master File Table (MFT) from Windows and over 80,000 keyword-responsive live records. As EPAM and the Court know, I used this personal computer for EPAM work during my employment under a BYOD arrangement. After being terminated, I began deleting EPAM files as part of routine off-boarding, but I stopped full deletion upon receiving EPAM's October 31 preservation notice. I represented to the Court that shadow routine offboarding files may still persist. Thus, any continued presence of EPAM-related files on my computer is not unauthorized retention. Still, so far, the forensic file-by-file review of those 80,000 hits has not identified any EPAM trade secret files on my computer.

Based on a review of Windows technical documentation (Exhibits B), the refresh should have kept all possible EPAM files, including its alleged trade secrets, exactly as is. The refresh should not impact the protocol-based forensic search. The various iDS reports provide objective evidence of file preservation, showing that about 80,000 hits were returned from my computer from the time before the November 14, 2025 refresh date. Thus, EPAM should not be prejudiced in its ability to search for its trade secret files on my computer.

EPAM's singular concern is not that I deleted files (which I did not do after the preservation notice), but that the refresh of my personal computer destroyed proof that a USB was attached and that I copied files onto it. They argue it is *"impossible to tell if, before the reset, Rao connected another device (such as a flash drive) to his personal computer in order to transfer EPAM Information to.."* (ECF 42). But personal Windows computers do not log specific file-copy operations to a USB device by default. My private computer was not configured for that kind of auditing. My act of refreshing the computer did not destroy a USB file-copy record because no such records existed in the first place.

While the refresh may impact EPAM's ability to determine the last date a certain USB flash drive was connected, Windows on computers like mine does not capture every date a USB was connected, how often it was connected, or if I copied files to that drive. Thus, only a small, volatile, ephemeral piece of data—the last date and time of a USB connection—<u>was lost</u> as a

direct consequence of refreshing my computer. Furthermore, personal, non-corporate computers like mine are configured to not track details about the owner's activity. Ultimately, EPAM cannot be prejudiced by the loss of a file-transfer record if that record never existed on the computer.

This limited loss of information —the last date and time of a USB connection— should not be considered spoliation because EPAM still has access to all the files on my computer. In the ongoing forensic search, EPAM has access for a file-by-file review of all the hits based on their search protocol, and so far, EPAM has not found any trade secrets on my computer. If no relevant trade secret files have been found, then the speculative act of using a USB flash drive to copy EPAM trade secret files is not irrelevant, and does not prejudice EPAM.

Your Honor, I did not destroy evidence; I did not transfer files off the computer; I did not act with intent to deprive EPAM of anything. I have no need or desire to use EPAM's confidential information for any purpose, and I am committed to the obligations of my agreement with EPAM.

I respectfully request that the Court deny EPAM's request for leave to file the proposed motion. If the mere loss of —the last date and time of a USB connection— was connected to my computer is a matter of concern, I request Your Honor revisit the matter if EPAM ever finds high-value trade secret files on this computer. If it would assist the Court, I remain prepared to provide additional factual defense and arguments on both the action and intent prongs of Rule 37(e).

Respectfully submitted,

/s/ Gowtham A. Rao

Gowtham A. Rao, MD, PhD
Defendant and Counterclaim-Plaintiff, *Pro Se*
184 Mansgrove Rd.
Princeton, NJ 08540
gowthamrao.litigation@gmail.com

**Enclosures:**

Exhibit A – iDS Operating System Analysis Report (Jan. 12, 2026), pages 4 and 6
Exhibit B – Screenshot from Microsoft Website on Refresh vs Reset
Exhibit C – January 27, 2026 Letter from Nicole Galli to James Yu (with Dr. Rao's Explanation of Reset)

**cc:** James S. Yu, Esq. (via ECF and email)
Jacob Oslick, Esq. (via ECF and email)
Brooke Gary, Esq. (via ECF and email)
Seyfarth Shaw LLP