**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff, Counter Claim Defendant | : | Civ. A. No. 2:25-cv-06260 |
| - against - | : | |
| GOWTHAM RAO (pro-se), Defendant, Counter Claim Plaintiff | : | |

-------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**I. INTRODUCTION AND PRELIMINARY STATEMENT....................................................... 1**
**II. APPLICABLE LEGAL STANDARDS......................................................................... 3**
**III. STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT..................... 5**
IV. ARGUMENT........................................................................................................... 8
A. Counts I and II Should Be Dismissed With Prejudice Because EPAM Has Failed to Identify Any Trade Secret With the Particularity Required to State a Claim Under the DTSA or PUTSA........................................................................................................ 8
B. Counts I and II Should Also Be Dismissed With Prejudice Because EPAM Has Failed to Plead Actual or Threatened Misappropriation, and the Defect Cannot Be Cured by Amendment..........................................................................................................15
C. On a Further Separate Ground, Counts I and II Should Be Dismissed With Prejudice Because EPAM Has Not Pleaded the Facts Necessary to Establish a Cognizable Trade Secret Interest in Client-Owned Material........................................................................ 21
D. The Common-Law Claims (Counts IV, V, VI, and VII) Are Preempted by the PUTSA and Should Be Dismissed With Prejudice..........................................................................24
E. Count III (Breach of Contract) Should Be Dismissed................................................. 28
V. CONCLUSION........................................................................................................30

## TABLE OF AUTHORITIES


| Federal Cases | |
|---|---|
| *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168 (3d Cir. 2020) | 40, 41 |
| *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994) | 7. 16, 24 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | *passim* |
| *AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, 2017 WL 2936730 (M.D. Pa. July 10, 2017) | 12 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 8, 34 |
| *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010) | 37 |
| *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009) | *passim* |
| *Cenveo Corp. v. Slater*, 2007 WL 527720 (E.D. Pa. Feb. 12, 2007) | 45, 46 |
| *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 (7th Cir. 1992) | 12, 23 |
| *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) | 8, 12, 23 |
| *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) | 27 |
| *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) | 8, 14 |
| *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509 (E.D. Pa. 2018) | 31, 32, 37 |
| *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002) | 42 |
| *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) | 25, 27, 38 |
| *Iqvia, Inc. v. Breskin*, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) | *passim* |
| *Jenna in White, LLC v. Fischer*, 2023 WL 274010 (E.D. Mich. Jan. 18, 2023) | 32, 33 |
| *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168 (3d Cir. 2015) | 51 |
| *Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) | *passim* |
| *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263 (3d Cir. 2016) | 35, 36 |
| *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) | *passim* |

*Patient Educ. Ctr. of Am., Ltd. v. Outpatient Educ. Ctr., Inc.*, 2014 WL 869323 (E.D. Pa. 2014) 13, 44, 50

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) 9, 14, 31

*PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) 37

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) 25, 27, 38

*Synthes, Inc. v. Emerge Med., Inc.*, 2014 WL 2616824 (E.D. Pa. June 11, 2014) 44

*Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659 (E.D. Pa. 2018) 9

*Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) 51

**State Cases**

*Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2014) 47

*Diodes, Inc. v. Franzen*, 67 Cal. Rptr. 19 (Ct. App. 1968) 11, 19

*eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002) 47

*Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931 (Pa. Super. Ct. 1989) 48

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman*, 137 A.3d 1247 (Pa. 2016) 51

**Statutes**

18 U.S.C. § 1832 et seq. 16

18 U.S.C. § 1836 9, 10

18 U.S.C. § 1839 *passim*

12 Pa. C.S. § 5301 et seq. 9

12 Pa. C.S. § 5302 *passim*

12 Pa. C.S. § 5303 49

12 Pa. C.S. § 5304 49

12 Pa. C.S. § 5308 *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) *passim*

Pa. R. Civ. P. 1071-1086 48

## I. INTRODUCTION AND PRELIMINARY STATEMENT

The First Amended Complaint is a single misappropriation theory packaged into seven causes of action. Each rests on the same factual narrative: that Defendant Gowtham Rao downloaded files from EPAM's network, retained them after his October 15, 2025 termination, and stated the day after termination that he is "now a competitor for EPAM." On those facts, EPAM has pleaded misappropriation under the DTSA and PUTSA (Counts I and II), breach of contract (Count III), breach of fiduciary duty (Count IV), replevin (Count V), conversion (Count VI), and unjust enrichment (Count VII) — the same conduct, recharacterized seven times. Despite three successive pleading attempts and full notice of the deficiencies, EPAM has failed to state a claim under any of these theories.

The trade secret claims (Counts I and II) fail on three independent grounds. *First*, EPAM has not identified any trade secret with the particularity Third Circuit law requires. *See Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905–06 (3d Cir. 2021); *Mallet & Co. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021); *Iqvia, Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023). Every reference to the alleged trade secrets in Counts I and II uses an undifferentiated defined term — "EPAM Confidential Information and IP" — that aggregates source code, RFP information, bid proposals, pricing information, project data, "client contract documents," "strategic proposals," "P&L analysis," and "employee compensation data" into one bucket. Am. Compl. ¶¶ 1, 33. EPAM has not separated trade secrets from merely confidential information, has not identified what is secret about the three named software tools beyond functional descriptions, and has alleged that 44,960 files were downloaded without identifying any with particularity. *Second*, EPAM has not pleaded misappropriation as the DTSA and PUTSA define it. This Court held in *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509 (E.D. Pa. 2018), that download by an employee leaving for a competitor — even possession of trade secret pricing schedules in a comparable role — does not

establish misappropriation absent evidence of actual or threatened use or disclosure. EPAM's pleading offers nothing more. Its allegations that Rao "intends to leverage," "intends to use and disclose," or "threatens" misappropriation are statutory recitations devoid of factual content; EPAM has had Rao's laptop since October 31, 2025, has conducted forensic examination, and has had seven months to investigate, but does not allege a single instance of actual use, actual disclosure, the identity of any new employer, or any appearance of EPAM information on any other entity's systems. *Third*, EPAM affirmatively pleads that much of the material at issue is owned by EPAM's clients, not by EPAM (¶¶ 2, 4, 35, 76–77), but has not pleaded the contractual or operational facts establishing that it has any cognizable trade secret interest in client-owned material.

The common-law counts (Counts IV, V, VI, and VII) are preempted by PUTSA § 5308. *See Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 408 (E.D. Pa. 2009). Each is pleaded on the same operative facts as the PUTSA claim and uses the same "EPAM Confidential Information and IP" defined term. They are misappropriation claims relabeled, and § 5308 was designed to prevent precisely this duplicative pleading. Count III (breach of contract) fails because EPAM has pleaded no actual damages and because the only breach pleaded is parasitic on the failed misappropriation theory.

EPAM's pleading defects are not technical drafting failures that further iteration could cure. The identification defect is structural — the defined term is the architectural foundation of EPAM's case, reaffirmed and expanded across three successive pleadings. The misappropriation defect is evidentiary — no amendment can manufacture facts EPAM has had seven months to develop and has not pleaded. The preemption defect is doctrinal — every common-law count rests on the same facts as the trade secret claim and would do so however replead. Defendant accordingly moves for dismissal of Counts I, II, III, IV, V, VI, and VII of the First Amended Complaint with prejudice.

## II. APPLICABLE LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Third Circuit prescribes a three-step inquiry: identify the elements of the claim; disregard conclusory allegations "not entitled to the assumption of truth"; and determine whether the remaining factual allegations "plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). On a Rule 12(b)(6) motion, the Court may consider the complaint, exhibits attached to it, and undisputedly authentic documents central to the plaintiff's claims, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), and where an attached exhibit contradicts the complaint's allegations, the exhibit controls. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

Because the DTSA, 18 U.S.C. § 1836 *et seq.*, and the PUTSA, 12 Pa. C.S. § 5301 *et seq.*, define "trade secret" in nearly identical terms, courts analyze claims under both statutes under a unified framework. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 n.19 (3d Cir. 2021). A plaintiff must plausibly allege "(1) the existence of a trade secret . . . (2) that is related to a product or service used in . . . interstate or foreign commerce, and (3) the misappropriation of that trade secret." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). A "trade secret" is information that (a) "the owner . . . has taken reasonable measures to keep . . . secret," and (b) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *accord* 12 Pa. C.S. § 5302.

"Misappropriation" encompasses (i) acquisition by improper means, or (ii) disclosure or use by one who knew or had reason to know the information was acquired by improper means or under a duty of secrecy. 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302.

Each element of a trade secret claim "is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *Mallet*, 16 F.4th at 380. A plaintiff therefore "must sufficiently identify the information it claims as a trade secret" to survive a Rule 12(b)(6) motion. *Oakwood*, 999 F.3d at 905. The trade secret "must be described with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 906. A plaintiff that pleads only "broad categories of . . . business and technical information" — categories that "could be used to describe documents found in any number of corporations" — fails this standard. *Mallet*, 16 F.4th at 382. Courts have accordingly dismissed trade secret claims pleaded by reference to generic categories such as "pricing information," "marketing information," or "customer information." *See, e.g., id.*; *Iqvia, Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023) (dismissing claims where plaintiff failed to "distinguish between information claimed to be trade secrets and information simply claimed to be confidential"). Mere identification of the product in which a secret allegedly resides — without identification of what is *secret* about that product — is insufficient. *Oakwood*, 999 F.3d at 906–07. And the volume of information taken does not cure a specificity failure; it heightens the plaintiff's burden to identify what within that volume is in fact trade secret. *Mallet*, 16 F.4th at 384. The two statutory components of the trade secret definition — reasonable measures and independent economic value — must themselves be supported by factual allegations, not formulaic recitations of the statutory language. *Iqbal*, 556 U.S. at 678; *Connelly*, 809 F.3d at 789–90.

The PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." 12 Pa. C.S. § 5308(a). Section 5308 preempts common-law claims that "rest[] on conduct that is said to be actionable because it involves the misappropriation of trade secrets." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 408 (E.D. Pa. 2009); *accord Patient Educ. Ctr. of Am., Ltd. v. Outpatient Educ. Ctr., Inc.*, No. 13-1746, 2014 WL 869323, at *4 (E.D. Pa. Mar. 5, 2014). Claims for conversion, unjust enrichment, breach of fiduciary duty, and replevin are subject to displacement under § 5308 to the extent they rest on the same operative facts as the PUTSA claim. *See Bro-Tech*, 651 F. Supp. 2d at 408–10.

## III. STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT

For purposes of this Motion only, Defendant accepts the well-pleaded factual allegations of the First Amended Complaint as true, and the Court's review is limited to the four corners of the Amended Complaint and the documents attached as exhibits thereto — namely, the Employment Covenants Agreement (Ex. A), the EPAM Code of Conduct (Ex. B), and the EPAM Acceptable Use of IT Resources Policy (Ex. C). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

EPAM is a global technology consulting company that provides software development and digital engineering services to clients including in the life sciences industry. Am. Compl. ¶¶ 18–19. Defendant Gowtham Rao was employed by EPAM as Managing Principal, Life Sciences Consulting from November 18, 2024 until October 15, 2025, with responsibility for "heading the data science business unit within EPAM's life sciences group and RWE business unit, including business development, revenue generation, portfolio management, and managing the members of

the data science team." *Id.* ¶¶ 40–41. EPAM affirmatively pleads that Rao was authorized to access the full range of information now alleged to constitute its trade secrets. *Id.* ¶¶ 24, 32, 41, 90, 103.

Throughout the Amended Complaint, EPAM employs a single undifferentiated defined term — "EPAM Confidential Information and IP" — to describe the information allegedly misappropriated. The term first appears in Paragraph 1 and encompasses "source code and other intellectual property, along with EPAM Confidential Information and IP regarding EPAM's clients and historical account information, RFP information and bid proposals, pricing information, project information (including designs and data models), client contract documents, strategic proposals, business pipelines, and P&L and related financial information." Am. Compl. ¶ 1; *see also id.* ¶ 2. Paragraph 33 broadens the term still further, sweeping in "client information, bid proposals, RFP responses, pricing information, client contracts, project data, P&L analysis, sales and growth strategies, employee compensation data, and other similarly sensitive information." *Id.* ¶ 33. EPAM does not separately identify which subset of this aggregated information it contends is in fact a trade secret as opposed to merely confidential information. Instead, EPAM asserts that the whole is "considered a trade secret under" the DTSA (¶¶ 91–92) and the PUTSA (¶¶ 105–106), invoking "EPAM Confidential Information and IP" as an undifferentiated mass throughout the trade secret counts. *See id.* ¶¶ 90, 92–94, 96–100 (DTSA); ¶¶ 103, 105–107, 109–113 (PUTSA).

The Amended Complaint identifies three specific software tools said to be among the materials Rao accessed: an "ETL Conversion Kit" (¶ 21), an "AI Cohort Generator" (¶ 22), and an "AI Accelerator" (¶ 23). EPAM describes these tools in functional terms — what each tool does — but pleads no specific algorithm, architecture, methodology, data model, formula, or implementation detail claimed as a trade secret, and does not explain what differentiates the protected aspects of these tools from generally known techniques in the field.

EPAM alleges that Rao "downloaded approximately 44,960 documents and data files" between September 11, 2025 and October 14, 2025, Am. Compl. ¶ 74, but does not identify which of those files contain trade secrets, which contain merely confidential information, and which contain neither. EPAM aggregates the entire universe of downloaded materials under "EPAM Confidential Information and IP." *Id.* ¶¶ 76–77, 79. EPAM further pleads six categories of confidentiality measures (¶ 39), including "limiting access . . . on a need-to-know basis" (¶ 39(iii)) and employee monitoring (¶ 39(vi)) — measures that, on EPAM's own allegations, did not prevent Rao (a single Managing Principal) from having authorized access to source code across multiple tools, "historical data, clients, or projects about which Rao had no involvement," P&L data, RFP responses, client contracts, and bid proposals, *id.* ¶¶ 2, 24, 76–78, and did not detect the alleged downloads over a span exceeding one month, *id.* ¶ 74.

EPAM's misappropriation allegations rest on two acts: Rao's alleged download of files to "one or more personal external devices" (¶ 74), and his failure to return such information following his October 15, 2025 termination (¶ 93). The Amended Complaint contains no factual allegation that Rao has actually used or disclosed any of the downloaded information. EPAM pleads only on "information and belief" that Rao "intends to leverage the information . . . to compete with EPAM" (¶ 79), and in conclusory fashion that Rao "has used and disclosed, intends to use and disclose and/or threatens to use or disclose EPAM's trade secrets" (¶¶ 96, 109). The single non-conclusory allegation of competitive activity is Rao's October 16, 2025 statement on an external messaging platform: "I am now a competitor for EPAM." *Id.* ¶ 6.

## IV. ARGUMENT

### A. Counts I and II Should Be Dismissed With Prejudice Because EPAM Has Failed to Identify Any Trade Secret With the Particularity Required to State a Claim Under the DTSA or PUTSA

EPAM's first and second causes of action both rest on a single defined term — "EPAM Confidential Information and IP" — that conflates trade secrets with merely confidential information and aggregates an undifferentiated mass of categories into one bucket. Under controlling Third Circuit authority and the recent decision in *Iqvia, Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) (Sánchez, C.J.) — addressing facts virtually identical to those alleged here — that pleading approach fails as a matter of law.

#### 1. The Amended Complaint Aggregates Trade Secret and Confidential Information Into a Single Undifferentiated Bucket

A trade secret plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). The trade secret "must be described with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 906. The Third Circuit reaffirmed that requirement in *Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021), warning against "generalized claims that leave a defendant wondering what the secrets at issue might be." *Id.* at 384 (quoting *Oakwood*, 999 F.3d at 907).

In *Iqvia*, Chief Judge Sánchez applied these principles to dismiss DTSA and PUTSA claims on a fact pattern essentially identical to the one before this Court. As here, IQVIA alleged that a departing employee had downloaded thousands of files — nearly 10,000 documents — to external storage devices before her departure. *Iqvia*, 2023 WL 2588450, at *2. As here, IQVIA described the downloaded materials by category. And as here, IQVIA invoked the statutory language of the

DTSA and PUTSA to characterize that material as trade secret information. The court dismissed the claims because "the descriptions do not distinguish between information claimed to be trade secrets and information simply claimed to be confidential," and IQVIA "must still distinguish between these two groups of information." *Id.* at *4. Even where IQVIA narrowed its allegations to nine specific documents, the descriptions remained "threadbare," and the court "[could not] assess if a trade secret exists." *Id.*

EPAM's Amended Complaint suffers from the identical defect — in even more pronounced form. Where IQVIA at least separately described categories by their content, EPAM has aggregated trade secret and merely confidential information into a single defined term — "EPAM Confidential Information and IP" — that is invoked throughout the trade secret causes of action without differentiation. *See* Am. Compl. ¶¶ 1, 33, 90, 103. The defined term sweeps together at least the following:

> "source code and other intellectual property, along with EPAM Confidential Information and IP regarding EPAM's clients and historical account information, RFP information and bid proposals, pricing information, project information (including designs and data models), client contract documents, strategic proposals, business pipelines, and P&L and related financial information."

Am. Compl. ¶ 1; *see also id.* ¶ 33 (expanding the term to include "client information, bid proposals, RFP responses, pricing information, client contracts, project data, P&L analysis, sales and growth strategies, employee compensation data, and other similarly sensitive information").

This is the "kitchen sink" pleading *Mallet* warns against. 16 F.4th at 384. The categories EPAM has lumped together "could be used to describe documents found in any number of corporations." *Id.* at 382. As *Mallet* held: "While some information falling within those categories may very well include trade secrets, there is a fair probability that many of the categories — and perhaps all of them — also include information that does not qualify for trade secret protection." *Id.*

*Iqvia* quoted that observation directly in dismissing IQVIA's nearly-identical pleading. 2023 WL 2588450, at *4.

The defect compounds because EPAM has also pleaded the trade secret elements in conclusory form. Paragraphs 92, 105, and 106 parrot the statutory language — that EPAM "derives independent economic value" from information "not being generally known" and takes "reasonable efforts to maintain its secrecy" — without supporting factual content. These are legal conclusions disregarded under *Iqbal*'s second step. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016). And EPAM's own allegations contradict the conclusory secrecy claim: Rao, a single Managing Principal in one business unit, is alleged to have had authorized access to source code for multiple unrelated software tools, P&L data, RFP responses across the business, client contracts, and bid proposals (¶¶ 2, 24, 41, 76–78), and EPAM's monitoring system failed to detect any of the downloads over a span exceeding one month (¶ 74). Where a complaint's own allegations undercut its conclusory secrecy assertions, plausibility fails. *Cf. ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

### 2. Naming the Three Software Tools Does Not Cure the Identification Defect

EPAM may argue that the Amended Complaint identifies its trade secrets adequately by naming three specific software tools — the "ETL Conversion Kit" (¶ 21), the "AI Cohort Generator" (¶ 22), and the "AI Accelerator" (¶ 23). That argument fails for two reasons.

*First*, EPAM describes these tools only by reference to what they do — not what is secret about them. The Amended Complaint contains no allegation describing any specific algorithm, architecture, methodology, data structure, or implementation detail within these tools claimed as a trade secret, nor does it explain what differentiates the protected aspects from generally known techniques in the field. As *Mallet* emphasized, identification of the *product* in which a secret allegedly resides is not identification of the *secret*. 16 F.4th at 384.

*Second*, even if the three named tools were adequately identified, that would not rescue the rest of the trade secret claims, which sweep in the entire bucket of "EPAM Confidential Information and IP." The Amended Complaint alleges that "thousands of data files — including the software code to its ETL Conversion Kit, AI Cohort Generator, and AI Accelerator *and other EPAM Confidential Information and IP*" were misappropriated. *See, e.g.*, Am. Compl. ¶¶ 94, 107, 121 (emphasis added). The "and other EPAM Confidential Information and IP" tail ensures the trade secret claims encompass the full undifferentiated mass, not merely the three tools.

### 3. The Volume Allegation — 44,960 Files — Heightens, Not Cures, EPAM's Pleading Burden

EPAM alleges that Rao downloaded "approximately 44,960 documents and data files." Am. Compl. ¶ 74. Far from supporting the trade secret claims, that volume allegation underscores the identification defect. As *Mallet* cautioned, a plaintiff cannot "point to broad areas of technology and assert that something there must have been secret and misappropriated." 16 F.4th at 384. And as *Iqvia* held on a similar volume, the burden remains on the plaintiff to "distinguish between . . . information claimed to be trade secrets and information simply claimed to be confidential." 2023 WL 2588450, at *4.

Of the 44,960 files, the Amended Complaint identifies zero with particularity. It alleges by category. That is the same defect *Iqvia* found dispositive — and *Iqvia* involved approximately one-quarter the volume.

### 4. Specific Categories Within EPAM's Defined Term Are Categorically Non-Trade-Secret as a Matter of Law and Should Be Dismissed With Prejudice

Several of the categories EPAM has aggregated within "EPAM Confidential Information and IP" cannot constitute trade secrets as a matter of law, no matter how repleaded.

"Client contract documents" (Am. Compl. ¶ 1) and "client contracts" (¶ 33) are documents shared with the contracting client and therefore not "secret" within the meaning of either statute. *See* 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302. Secrecy is destroyed by dissemination to a third party.

"Employee compensation data" (¶ 33) is internal personnel information that does not derive independent economic value from secrecy in the manner the statute requires. *See* 18 U.S.C. § 1839(3)(B); 12 Pa. C.S. § 5302.

"Strategic proposals," "business pipelines," "sales and growth strategies," and "P&L analysis" (¶¶ 1, 33) are precisely the generic business-information categories the Third Circuit rejected in *Mallet*. 16 F.4th at 382 (rejecting "pricing information[,] strategies[, and] marketing information" as adequate trade secret descriptions). These are categories, not secrets.

No amendment can transform a categorically non-trade-secret descriptor into a viable trade secret claim. These items should be dismissed with prejudice. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

### 5. Dismissal Should Be With Prejudice Because Amendment Would Be Futile

EPAM's pleading defect is not a drafting failure that further iteration could cure. It is the consequence of EPAM's deliberate strategic choice to plead its trade secret claims through an aggregating defined term that EPAM has reaffirmed and expanded across three successive pleadings. The defect is structural; the procedural history confirms EPAM will not abandon the framework that produces it; and *Iqvia*'s contrary leave-to-amend ruling, on which EPAM may rely, is materially distinguishable.

#### i. *Iqvia*'s Grant of Leave to Amend Is Materially Distinguishable

In *Iqvia*, after dismissing the trade secret claims for the same identification defect, Chief Judge Sánchez granted leave to amend, finding it "plausible that IQVIA will be able to identify its

trade secrets with more specificity." 2023 WL 2588450, at *6 n.5. That ruling does not control here for three reasons.

*First*, *Iqvia* addressed IQVIA's original complaint — its first pleading attempt. *Id.* at *3. Sánchez had no occasion to consider whether a plaintiff, having received the court's particularity ruling, would respond by reinforcing rather than abandoning its undifferentiated framework. EPAM is on its third pleading iteration. It filed the original Complaint, attempted a first Amended Complaint that this Court struck on March 30, 2026 for Rule 15(a) noncompliance, and filed the present First Amended Complaint on April 20, 2026 — after Defendant's April 1, 2026 Answer placed it on notice of the trade-secret-identification deficiencies. With each iteration, EPAM has retained and expanded the "EPAM Confidential Information and IP" defined term that produces the defect. *Compare* Compl. ¶¶ 1, 33, *with* Am. Compl. ¶¶ 1, 33. *Iqvia* footnote 5's "plausibility" of cure rests on a posture EPAM no longer occupies.

*Second*, the defect Sánchez identified in *Iqvia* was a drafting defect, in principle capable of being addressed by more careful description. The defect EPAM has chosen is structural. The defined term is not a drafting shortcut — it is the architectural foundation of the trade secret claims, ensuring EPAM's theory reaches every file Rao downloaded for purposes of discovery, injunctive relief, and damages. To cure the defect, EPAM would have to abandon the defined term and commit to a narrower theory exposing the claims to summary judgment on a defined evidentiary record. Three successive pleadings demonstrate that EPAM will not do so. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (futility supported where prior amendment opportunities reveal the defect cannot be cured).

*Third*, *Iqvia*'s futility analysis turned in part on supporting evidence outside the pleading: "IQVIA has already shown documents ended up on Slipstream's systems." 2023 WL 2588450, at *6 n.5. That circumstance is wholly absent here. EPAM does not allege any EPAM information has appeared on any other entity's systems. EPAM does not identify any new employer for whom Rao now works. EPAM does not allege any specific instance of use, disclosure, or competitive

deployment. The evidentiary predicate that supported leave to amend in *Iqvia* has no parallel in EPAM's pleading.

**ii. EPAM Has Affirmatively Chosen to Maintain a Defective Pleading Framework**

Beyond *Iqvia*, the procedural posture independently supports a futility finding under Third Circuit law. Where a plaintiff has been on notice of pleading deficiencies and has affirmatively chosen to maintain rather than cure them, the Court need not extend another opportunity to amend. *See Phillips*, 515 F.3d at 236; *In re Burlington Coat Factory*, 114 F.3d at 1434 ("'Futility' means that the complaint, as amended, would fail to state a claim."); *Cureton*, 252 F.3d at 273.

The "EPAM Confidential Information and IP" defined term appeared in the original Complaint, in the stricken first Amended Complaint, and in the present First Amended Complaint — filed after EPAM had every opportunity to narrow its theory. It is a strategic choice EPAM has made three times, with full notice of the deficiency it produces. A fourth pleading iteration would either repeat the same defect or require EPAM to abandon the framework it has thrice embraced. Neither outcome justifies extending leave to amend.

**iii. Alternative Relief**

To the extent the Court is not prepared to find global futility, dismissal with prejudice should at minimum be entered as to the categorically non-trade-secret items identified in Section IV.A.4 above. As to any remaining categories, any leave to amend should be conditioned on EPAM's identifying each alleged trade secret with the particularity required by *Oakwood*, *Mallet*, and *Iqvia* — that is, with sufficient specificity to (i) distinguish trade secret information from merely confidential information, (ii) identify particular content (not categories of content) claimed as secret, and (iii) describe what differentiates the protected information from matters of general knowledge in the trade.

## B. Counts I and II Should Also Be Dismissed With Prejudice Because EPAM Has Failed to Plead Actual or Threatened Misappropriation, and the Defect Cannot Be Cured by Amendment

Even if EPAM had identified a trade secret with the particularity *Oakwood*, *Mallet*, and *Iqvia* require — and it has not — Counts I and II would still fail because EPAM has not pleaded misappropriation as the DTSA and PUTSA define that term. EPAM's misappropriation theory rests on two facts: that Rao downloaded files, and that Rao stated, the day after his termination, "I am now a competitor for EPAM." The remainder is conclusory recitation, future-tense supposition, and "information and belief" allegations untethered to any factual basis. That is not enough under either statute, and because the defect is one of facts rather than drafting, no amendment can cure it.

### 1. Download Alone Is Not Misappropriation Under the DTSA or PUTSA

Both statutes define "misappropriation" as either (1) acquisition of a trade secret by improper means, or (2) disclosure or use of a trade secret without consent by one who knew or had reason to know the information was acquired improperly or under a duty of secrecy. 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302. EPAM has pleaded neither.

EPAM's "improper means" theory fails on the face of the Amended Complaint. The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but expressly excludes "any otherwise lawful means of acquisition." 18 U.S.C. § 1839(6); *accord* 12 Pa. C.S. § 5302. Where an employee's access is authorized as part of his employment, acquisition through that access is not improper. EPAM affirmatively pleads that Rao was authorized to access the materials at issue. The Amended Complaint alleges that EPAM "trusted senior executives" with "broad access" to the materials (¶¶ 24, 36), and that Rao "was given access to and possessed" the alleged trade secrets "[b]y virtue of his employment at EPAM and performance of responsibilities for EPAM" (¶¶ 90, 103). What EPAM characterizes as "improper" is therefore not the acquisition but

the alleged subsequent retention and threatened use — which must be pleaded under the use-or-disclosure prong of misappropriation, not the acquisition prong. *See* 18 U.S.C. § 1839(5)(B); 12 Pa. C.S. § 5302.

EPAM's own exhibits reinforce that the conduct EPAM now characterizes as unauthorized was authorized by EPAM's policies. The Acceptable Use of IT Resources Policy, attached as Exhibit C, contemplates and permits employee access to confidential data on personally owned computing devices in specified circumstances. *See* Am. Compl. Ex. C § 3.14 (permitting storage of confidential data subject to specified protocols), § 3.21 (addressing personally owned computing devices). To the extent the Amended Complaint suggests EPAM's policies prohibited the conduct alleged, the policy attached as Exhibit C controls. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

Courts have dismissed DTSA claims with prejudice at the pleading stage on this very defect. In *Jenna in White, LLC v. Fischer*, No. 2:22-cv-12602, 2023 WL 274010 (E.D. Mich. Jan. 18, 2023), the court granted a Rule 12(b)(6) motion and dismissed the DTSA claim with prejudice where the plaintiff alleged the defendant had "acquired the trade secrets through improper means," but the surrounding allegations established that she had been "instructed — and paid — to acquire the information by Plaintiffs" as part of her job duties. *Id.* at *4. The court held that "whether Defendant later used the trade secrets for her own benefit is unrelated to whether her acquisition of those trade secrets was improper." *Id.* The same is true here: EPAM may believe Rao's later retention or use is wrongful, but that does not transform his authorized acquisition into "improper means."

Nor does download standing alone establish misappropriation under the use-or-disclosure prong. The Third Circuit has confirmed that the term "misappropriation" presumes "acquisition, disclosure, or use" of a trade secret. *Mallet*, 16 F.4th at 387–88. In *Iqvia*, Chief Judge Sánchez held on parallel facts that even where a departing employee admittedly downloaded thousands of

confidential documents, the absence of evidence of actual use defeats the misappropriation claim, and a theory grounded only in download "is purely speculative." *Iqvia, Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450, at *6 n.3 (E.D. Pa. Mar. 20, 2023); *Iqvia, Inc. v. Breskin*, No. 22-2610, ECF No. 40, at 2 (E.D. Pa. Mar. 20, 2023).

And this Court reached the same conclusion in *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509 (E.D. Pa. 2018) (Beetlestone, J.). There, defendant Whitman emailed himself trade-secret pricing schedules the day before resigning to join a direct competitor. *Id.* at 521. He had taken the information, retained it, and now worked for a competitor in a comparable role. On those facts, this Court denied a preliminary injunction, holding that "Freedom Medical has not carried its burden of showing actual misappropriation," that the new employment was not "likely to result" in misappropriation, and that "a showing of past harm, without more, is insufficient." *Id.* at 521, 530. The principle is clear: download by an employee, even one affiliated with a competitor, does not establish misappropriation absent evidence of actual or threatened use. EPAM pleads only download. It does not — because it cannot — plead use or disclosure.

### 2. EPAM's Misappropriation Allegations Are Conclusory and Future-Tense

Stripped of conclusory matter under *Iqbal*'s second step, the operative misappropriation allegations reduce to three facts: Rao downloaded files between September 11 and October 14, 2025 (Am. Compl. ¶ 74); Rao failed to return the information after his October 15, 2025 termination (¶ 94); and on October 16, 2025, Rao stated on an external platform: "I am now a competitor for EPAM" (¶ 6). Everything else is statutory parroting or future-tense speculation:

- "By his actions, Rao has used and disclosed, *intends to use and disclose* and/or *threatens* to use or disclose EPAM's trade secrets without express or implied consent." *Id.* ¶¶ 95, 108 (emphasis added) — verbatim statutory recital.
- "Upon information and belief, Rao *intends to leverage* the information . . . to compete with EPAM." *Id.* ¶ 79 (emphasis added).

- "Rao . . . *will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate* EPAM Confidential Information and IP." *Id.* ¶¶ 98, 111 (emphasis added).

These are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that *Iqbal* directs courts to disregard. 556 U.S. at 678. They are not "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Amended Complaint nowhere alleges:

- That Rao has used any EPAM information for any purpose since his termination;
- That Rao has disclosed any EPAM information to any third party;
- That any EPAM client has been solicited by Rao using EPAM information;
- That any EPAM trade secret has appeared in any product, service, or work product;
- Any product, service, or competitive activity by Rao that draws on EPAM's alleged trade secrets.

What EPAM has done is plead opportunity — Rao took files; Rao stated he is a competitor; therefore, on information and belief, Rao must intend to misuse the files. The DTSA and PUTSA do not punish opportunity. They punish use, disclosure, and threatened use.

### 3. EPAM's "Information and Belief" Pleading Fails Under *McDermott*

EPAM's misappropriation pleading depends heavily on allegations made "upon information and belief." *See* Am. Compl. ¶¶ 5, 6, 70, 79. Such pleading is permitted in this Circuit, but only where the plaintiff "accompan[ies] [its] legal theory with factual allegations that make [its] theoretically viable claim plausible." *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (emphasis in original); *see also Iqvia*, 2023 WL 2588450, at *5 (applying

*McDermott* to reject information-and-belief allegations of intent to harm unsupported by factual basis).

EPAM's pleading fails that standard. The two facts EPAM offers — the download and the "I am now a competitor" statement — establish at most opportunity and stated intent to compete. Neither supports the further inference that Rao has used or will use EPAM's specific information in his competition. Competition is not misappropriation. *Mallet*, 16 F.4th at 386 ("the Defendants are entitled to engage in lawful business activities"). The DTSA and PUTSA do not bar former employees from competing; they bar former employees from using or disclosing trade secrets in their competition. The leap from "intends to compete" to "intends to use trade secrets to compete" requires factual ballast, and EPAM has provided none.

The contrast to *Iqvia* is instructive. There, the plaintiff had affirmative evidence that downloaded documents had migrated to the competitor's systems — IQVIA's counsel had written to Slipstream "requesting Slipstream's cooperation in confirming IQVIA's information was no longer on Breskin's employee laptop," and Slipstream's counsel had confirmed the information had been on the system. *Iqvia*, 2023 WL 2588450, at *3. Even with that affirmative evidence of cross-systems migration, the *Iqvia* court held the information-and-belief allegations remained insufficient under *McDermott*. *Id.* at *5. Here, EPAM has not even pleaded what *Iqvia* had pleaded — no allegation that EPAM information has migrated to any other system, that Rao has any new employer at all, or that any specific competitor possesses any EPAM material.

### 4. The Inevitable Disclosure Doctrine Does Not Save the Pleading

EPAM may invoke the inevitable-disclosure doctrine — the theory that a former employee with knowledge of trade secrets, working in a competitive role, will inevitably disclose them. The doctrine is recognized in Pennsylvania but applied narrowly, and its application requires factual allegations EPAM has not made.

This Court's analysis in *Freedom Medical* is again directly on point. Even with Whitman taking trade-secret pricing schedules and joining a direct competitor in a comparable sales role, this Court found Freedom Medical "has not carried its burden of showing that Defendant Whitman's employment with Med One 'is likely to result' in misappropriation." 343 F. Supp. 3d at 521. The doctrine requires fact-specific allegations about (i) the level of competition between the former and new employer, (ii) the similarity between the employee's former and new positions, and (iii) the actions the new employer has taken to prevent use or disclosure. *Id.*; *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 113–14 (3d Cir. 2010).

EPAM has pleaded none of these factors. The Amended Complaint does not identify Rao's new employer, his new role, how that role compares to his role at EPAM, or any failure to take protective measures. It pleads only that Rao stated he is a "competitor" and that, on information and belief, he intends to leverage the information. *See* Am. Compl. ¶¶ 6, 79, 95. That is not inevitable-disclosure pleading. It is conclusory speculation the doctrine was designed to exclude. *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) ("the mere fact that a person assumed a similar position at a competitor" is insufficient).

### 5. The Misappropriation Defect Cannot Be Cured by Amendment

The misappropriation defect is a defect in the facts. EPAM has not pleaded actual use, threatened use, disclosure, or inevitable disclosure not because of any drafting failure, but because the facts that would support such allegations have not been pleaded across three pleading iterations. EPAM has had Rao's company laptop since October 31, 2025 (¶ 72), has conducted forensic analysis of its networks and Rao's accounts (¶¶ 73–82), and has had seven months to investigate Rao's post-termination conduct. Despite that, EPAM has pleaded only download and one statement. Everything else is recitation.

The *Iqvia* footnote 5 framing — that it is "plausible" the plaintiff "will be able to identify its trade secrets with more specificity" given the chance — has no application to this defect. *Iqvia*'s

observation addressed the trade-secret-identification problem. It said nothing about whether a plaintiff who has had seven months and forensic access to develop misappropriation facts can plead any. An amendment cannot manufacture facts EPAM has had every opportunity to discover and has not. *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *In re Burlington Coat Factory*, 114 F.3d at 1434. Counts I and II should be dismissed with prejudice on this independent ground regardless of how the Court resolves the identification analysis in Argument A.

### <u>C. On a Further Separate Ground, Counts I and II Should Be Dismissed With Prejudice Because EPAM Has Not Pleaded the Facts Necessary to Establish a Cognizable Trade Secret Interest in Client-Owned Material</u>

EPAM's pleading suffers from a further, distinct structural defect: a substantial portion of the materials EPAM seeks to protect through Counts I and II is, by EPAM's own admission, owned by EPAM's clients rather than by EPAM. EPAM has not pleaded the facts necessary to establish that it holds a cognizable trade secret interest in that client-owned material under either the DTSA or the PUTSA.

#### 1. EPAM Affirmatively Pleads That Client-Owned Material Is at Issue

EPAM's Amended Complaint repeatedly acknowledges that the materials at issue include software code, intellectual property, and data files belonging to EPAM's clients, not to EPAM:

- **Paragraphs 2 and 4:** Many of the stolen files are "comprised of information that belongs to EPAM's clients about which EPAM is contractually obligated to these clients to maintain as confidential," including "source code to tools comprised of intellectual property owned by EPAM's clients that have been entrusted to EPAM."
- **Paragraph 35:** "EPAM's client engagements often result in the creation of customized computer code/intellectual property which is delivered to the client. This code sometimes becomes the intellectual property of the client and sometimes is retained as intellectual property of EPAM but is licensed to the client."

- **Paragraphs 76–77:** Rao's downloads included "custom built or customized software built by EPAM for clients" and "entire data folders relating to EPAM's clients, client account information, RFP responses and bid proposals, pricing documentation, client facing project information, including designs and data models, contract documents, CRM data, and P&L data."

EPAM's pleading thus affirmatively establishes that the "EPAM Confidential Information and IP" defined term aggregates two materially different categories: (i) information allegedly owned by EPAM, and (ii) information owned by EPAM's clients and merely entrusted to EPAM for purposes of providing services.

### 2. EPAM Has Not Pleaded the Facts Establishing Its Rightful Interest in Client-Owned Trade Secrets

To plead a trade secret claim, EPAM must establish that it has "rightful legal or equitable title to, or license in, the trade secret." 18 U.S.C. § 1839(4); *see also Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177–79 (3d Cir. 2020) (analyzing contractual relationships establishing trade secret interest). EPAM has not pleaded the facts necessary to establish such an interest in the client-owned material. The Amended Complaint contains no specific allegation of: (i) any client agreement granting EPAM rights — by license, assignment, or otherwise — to assert trade secret claims with respect to the client-owned material; (ii) the identity of any specific client whose material is included in the alleged 44,960 downloaded files; or (iii) whether any client has authorized EPAM to bring trade secret claims on its behalf.

EPAM's bare allegation that it is "contractually obligated" to its clients to maintain confidentiality (¶¶ 2, 4) does the opposite of establishing a cognizable trade secret interest. A duty *owed by* EPAM to a client is not the same as a right *granted to* EPAM by a client to assert trade secret claims. The former imposes obligations on EPAM; the latter would be required to authorize EPAM's suit. EPAM has pleaded the former and not the latter.

### 3. EPAM Has Not Pleaded That Client-Owned Material Is Maintained as Secret

Even if EPAM had pleaded a cognizable interest in client-owned material, the trade secret claims would still fail because EPAM has not pleaded the "reasonable measures" element as to that material. The DTSA and PUTSA require that the *owner* take reasonable measures to maintain secrecy. 18 U.S.C. § 1839(3)(A); 12 Pa. C.S. § 5302. Where the alleged trade secret is jointly held or licensed, the reasonable-measures inquiry necessarily extends to the actual owner — here, the client — because secrecy is a binary attribute: if any holder fails to protect it, trade secret status is lost.

EPAM pleads the protective measures *EPAM* takes (¶ 39). It pleads nothing about the protective measures its *clients* take. It pleads no facts about how secrecy is maintained jointly between EPAM and its clients, no specific confidentiality agreement, joint protective protocol, or coordinated secrecy regime. The complaint's silence on client-side protective measures is fatal to any trade secret claim premised on client-owned material.

### 4. The Defect Is Structural, Not a Drafting Oversight

This pleading defect is not a technical drafting failure. It is structural and tied to the nature of EPAM's business as a custom-software developer. EPAM's own pleading establishes that its business model involves building custom software for clients, with much of that software becoming the property of the clients themselves (¶ 35). The 44,960 allegedly downloaded files necessarily reflect that business model — they are commingled materials drawn from EPAM's role as a service provider, not a discrete inventory of EPAM-owned trade secrets. Yet across 44,960 files, EPAM has not delineated which contain EPAM's own proprietary material from which contain client-owned material. The "EPAM Confidential Information and IP" defined term sweeps both together without differentiation. *Cf. IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002) (affirming dismissal where plaintiff could not "point to broad areas of software technology and ask[] [the court] to sort out what aspects of that information are trade secrets").

To plead a viable trade secret claim limited to material EPAM actually owns, EPAM would need to abandon the aggregated defined term, identify with particularity which files contain its own proprietary material, distinguish that material from client-owned material, and plead the contractual facts establishing its authority over any client-owned portion. EPAM has done none of these things across three pleading iterations, and the structural breadth of the defined term — as developed in Argument A above — confirms that EPAM will not. Counts I and II accordingly fail with respect to all client-owned material as a matter of law, and dismissal with prejudice is appropriate.

## D. The Common-Law Claims (Counts IV, V, VI, and VII) Are Preempted by the PUTSA and Should Be Dismissed With Prejudice

EPAM has packaged a single misappropriation theory into seven causes of action. Each common-law count — breach of fiduciary duty (Count IV), replevin (Count V), conversion (Count VI), and unjust enrichment (Count VII) — rests on the identical factual narrative that supports Counts I and II: that Rao downloaded files, retained them after termination, and is alleged to threaten use of them. The PUTSA's preemption provision, 12 Pa. C.S. § 5308, was designed to prevent precisely this kind of duplicative pleading. Each common-law count should be dismissed with prejudice on preemption grounds. Count V (replevin) fails on an additional and independent ground: replevin cannot be used to recover information that EPAM itself retains in identical form.

### 1. The "Same Operative Facts" Test Governs PUTSA Preemption in This District

The PUTSA's preemption provision displaces "conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." 12 Pa. C.S. § 5308(a). Courts in this District apply a "same operative facts" test: a common-law claim is preempted where it "rest[s] on conduct that is said to be actionable because it involves the misappropriation of trade secrets." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 408 (E.D. Pa. 2009). The inquiry focuses on the facts alleged, not the label the plaintiff has chosen — the label

"fiduciary duty" or "conversion" or "unjust enrichment" does not save a claim whose factual core is misappropriation. *See also Patient Educ. Ctr. of Am., Ltd. v. Outpatient Educ. Ctr., Inc.*, No. 13-1746, 2014 WL 869323, at *4 (E.D. Pa. Mar. 5, 2014); *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 WL 2616824, at *18–19 (E.D. Pa. June 11, 2014) (preempting common-law claims "grounded in misappropriation of trade secrets" notwithstanding tort labels).

### 2. Each Common-Law Count Is Pleaded on the Same Operative Facts as the PUTSA Claim

Application of the "same operative facts" test to each common-law count demonstrates that all four are preempted. Each count cross-references the same factual allegations and uses the same defined term to identify the alleged wrongdoing.

#### i. Count IV — Breach of Fiduciary Duty

EPAM alleges that Rao breached his fiduciary duty by, inter alia, "stealing data belonging to EPAM, including EPAM Confidential Information and IP" (Am. Compl. ¶ 129(b)) and "attempting to permanently delete data files on the Company network" (¶ 129(c)). These are the same factual allegations that support the PUTSA claim. *See* Am. Compl. ¶¶ 74, 81, 94, 103, 107. The breach-of-duty theory is misappropriation by another name.

The two additional sub-allegations in ¶ 129 — fraudulent representations to clients (¶ 129(a)) and engineering termination to evade the non-compete (¶ 129(d)) — do not save the count. The non-compete claims have been withdrawn from the Amended Complaint, eliminating any independent basis to anchor a fiduciary duty theory in that narrative. And the "free agent" representation to clients pleads no cognizable harm independent of the misappropriation theory and no breach of any fiduciary duty distinct from Rao's contractual obligations.

Count IV is independently barred by Pennsylvania's gist-of-the-action doctrine, which bars tort claims where the duties allegedly breached are contractual rather than independent tort duties.

*See Bruno v. Erie Insurance Co.*, 106 A.3d 48, 68 (Pa. 2014); *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). Rao's confidentiality obligations were defined by Section 1(d) of the Agreement (Am. Compl. ¶ 45), and his alleged breach forms the basis of EPAM's breach of contract claim in Count III. Where the duties at issue arise from a contract, Pennsylvania law treats the claim as sounding in contract, not tort.

**ii. Count V — Replevin**

The replevin count alleges that "Rao is currently in possession or control of EPAM property, including EPAM Confidential Information" (Am. Compl. ¶ 133), that the information "currently resides on a personal computer device owned by Rao" (¶ 134), and that "EPAM is entitled to immediate possession" (¶ 137). This is recovery of the alleged misappropriated material framed as a property action. The conduct supporting the replevin claim — Rao's alleged possession and retention after termination — is the identical conduct supporting the misappropriation theory. *See* Am. Compl. ¶¶ 94, 107, 122. Count V is preempted.

Count V independently fails on a separate doctrinal ground. Replevin under Pennsylvania law is a possessory action that requires recovery of "specific identifiable property" from the defendant's possession. *See* Pa. R. Civ. P. 1071–1086; *Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 933 (Pa. Super. 1989). The remedy presupposes that the plaintiff seeks to recover a unique chattel — a thing of which the plaintiff has been deprived. EPAM's replevin claim does not satisfy that predicate. EPAM does not allege that it has lost any unique copy of any file. To the contrary, the Amended Complaint alleges only that Rao "downloaded" or "exfiltrated" the digital files — acts that inherently involve creating copies rather than removing original data from a network. *See* Am. Compl. ¶¶ 73–74. While EPAM alleges Rao "attempted" to permanently delete certain files, it stops short of pleading that any original data was actually destroyed or that EPAM lost possession of its files. *See* Am. Compl. ¶¶ 68, 80. EPAM has not been deprived of possession of anything. What EPAM seeks is not return of property but destruction of duplicates Rao allegedly created — a

remedy that sounds in misappropriation, not replevin. The PUTSA itself provides for that remedy through its injunctive relief provisions. *See* 12 Pa. C.S. § 5303. Replevin is the wrong vehicle.

**iii. Counts VI and VII — Conversion and Unjust Enrichment**

Counts VI (conversion) and VII (unjust enrichment) are each pleaded in misappropriation terms on their face and rest on no facts distinct from the PUTSA claim. The conversion count alleges that "Rao has *intentionally and wrongfully misappropriated* EPAM's property, including, among other things, EPAM Confidential Information and IP" (Am. Compl. ¶ 140) (emphasis added) and that "Rao downloaded the EPAM Confidential Information and IP onto his personal device without EPAM's consent" (¶ 141). The unjust enrichment count alleges that "Rao's *theft* of EPAM Confidential Information and IP has unjustly enriched Rao at EPAM's expense" (¶ 148) (emphasis added) and seeks to recover the same value PUTSA's damages provisions are designed to capture — the unjust enrichment a defendant obtains through misappropriation. *See* 12 Pa. C.S. § 5304(a). Same downloads. Same alleged retention. Same defined term. Both are PUTSA claims wearing tort labels.

*Bro-Tech* and *Patient Educ. Ctr.* are directly on point. *See Bro-Tech*, 651 F. Supp. 2d at 408–10 (preempting conversion claim); *Patient Educ. Ctr.*, 2014 WL 869323, at *4 (preempting unjust enrichment claim). Counts VI and VII are preempted.

**3. Dismissal Should Be With Prejudice**

Each common-law count is preempted on the pleadings as drafted, and the defect cannot be cured by amendment. EPAM cannot plead the common-law claims based on facts other than the misappropriation conduct because there are no other facts. The Amended Complaint's narrative is a single narrative — Rao downloaded, Rao retained, Rao stated he is a competitor — and every count rests on it. EPAM has had three pleading opportunities to plead non-misappropriation facts independently supporting each common-law theory and has not done so. *See* Section IV.A.5, *supra*

(procedural posture). Every cause of action in this case is, at bottom, a trade secret theory. Counts IV, V, VI, and VII should accordingly be dismissed with prejudice.

**E. Count III (Breach of Contract) Should Be Dismissed**

EPAM's breach of contract claim (Count III) fails for two independent reasons. First, EPAM has not pleaded actual damages — a required element of a Pennsylvania breach of contract claim. Second, the only breach EPAM has pleaded is parasitic on the failed misappropriation theory addressed in Arguments A through C, and falls with those claims.

Under Pennsylvania law, a breach of contract claim requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). The damages element is not a procedural nicety — Pennsylvania law requires a plaintiff to plead and prove actual "resultant damages." *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Where the plaintiff's allegations of harm rest on future contingencies rather than actual loss, the claim fails as a matter of law. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015) (affirming dismissal of a breach of contract claim under Pennsylvania law for "failure to plead actual loss").

EPAM's Amended Complaint pleads damages only in conclusory terms. EPAM alleges that "Rao's actions have damaged EPAM's legitimate business interests" (¶ 123); that EPAM "has suffered and continues to suffer irreparable injury" (¶ 124); and that it seeks "actual, incidental, compensatory, punitive and consequential damages" (¶ 125). These are formulaic recitations *Iqbal* commands the Court to disregard. 556 U.S. at 678. The Amended Complaint does not allege a single client EPAM has lost to Rao or any competitor, any specific revenue loss, any quantifiable competitive harm, or any specific use of EPAM material by Rao that has caused harm.

Seven months elapsed between Rao's October 15, 2025 termination and the filing of the First Amended Complaint. EPAM has had its laptop, conducted forensic examinations, and

observed the market throughout that period. If EPAM had suffered any actual damages, it would plead them. The absence is conspicuous and, under *Iqbal*, fatal. *See Sirius Computer Solutions, Inc. v. Sachs*, No. 20-cv-1432, 2021 WL 1577798, at *2 (N.D. Ill. Apr. 22, 2021) (dismissing contract claim with prejudice on this ground).

EPAM pleads two specific breaches of the Agreement, both tied to the misappropriation theory: that Rao breached the Agreement by "secretly accessing, transmitting, copying or downloading . . . thousands of data files . . . to a personal external device" (¶ 121), and by "continuing to maintain possession of and failing to return EPAM Confidential Information and IP" (¶ 122).

The first alleged breach fails on the face of the Amended Complaint. The Agreement prohibits Rao from accessing, using, or copying Confidential Information "except as required in the performance of [his] authorized employment." Agreement § 1(d), quoted at Am. Compl. ¶ 45. EPAM has affirmatively pleaded that Rao was authorized to access the materials at issue as Managing Principal, Life Sciences Consulting. *See* Am. Compl. ¶¶ 24, 41, 89, 102. EPAM cannot plead both that Rao's access was authorized as a senior executive and that the same access breached the Agreement's authorized-employment exception. The contradiction defeats plausibility. *Cf. ALA*, 29 F.3d at 859 n.8.

The second alleged breach — failure to return information — collapses into the misappropriation theory addressed in Arguments A through C. EPAM has not pleaded that Rao retained material after EPAM demanded its return, nor any specific request, demand, or refusal. EPAM has pleaded only the bare fact of download and the absence of return. The claim is the misappropriation theory in contractual clothing, and it fails for the same reasons.

Count III should accordingly be dismissed with prejudice. If amendment is permitted on Counts I and II, any amended pleading of Count III should be required to plead specific actual damages and a specific breach distinct from the misappropriation theory.

## V. CONCLUSION

For the foregoing reasons, Defendant Gowtham Rao respectfully requests that this Court dismiss Counts I, II, III, IV, V, VI, and VII of the First Amended Complaint with prejudice.

In the alternative, to the extent the Court is not prepared to grant dismissal with prejudice on any count, Defendant requests that the Court (i) dismiss with prejudice the categorically non-trade-secret items identified within the defined term "EPAM Confidential Information and IP," including "client contract documents," "employee compensation data," "P&L and related financial information," "strategic proposals," and "business pipelines"; and (ii) condition any leave to amend on EPAM's identifying each alleged trade secret with the particularity required by *Oakwood*, *Mallet*, and *Iqvia*, distinguishing trade secret information from merely confidential information, and pleading specific facts of actual or threatened use or disclosure as required by the DTSA, PUTSA, and this Court's decision in *Freedom Medical*.

A proposed Order is submitted herewith.

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br>Plaintiff, Counter Claim Defendant<br><br>- against -<br><br>GOWTHAM RAO (pro-se),<br><br>Defendant, Counter Claim Plaintiff | Civ. A. No. 2:25-cv-06260 |

[PROPOSED] ORDER

**AND NOW**, this ____ day of _____________, 2026, upon consideration of Defendant Gowtham Rao's Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), the Memorandum of Law in support thereof, Plaintiff's opposition thereto, and any reply briefing, it is hereby **ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. **Counts I and II** (Misappropriation of Trade Secrets under the DTSA and PUTSA) are **DISMISSED WITH PREJUDICE**, as Plaintiff has failed to identify any trade secret with the requisite particularity and has failed to plead actual or threatened misappropriation.

2. **Count III** (Breach of Contract) is **DISMISSED WITH PREJUDICE** for failure to plead actual damages and actionable breach.

3. **Counts IV, V, VI, and VII** (Breach of Fiduciary Duty, Replevin, Conversion, and Unjust Enrichment) are **DISMISSED WITH PREJUDICE**, as they are preempted by the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. § 5308.

4. Defendant's counterclaims remain pending, and this action shall proceed accordingly.

**BY THE COURT:**

---

**HON. WENDY BEETLESTONE, U.S.D.J.**