Seyfarth

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York 10018
**T** (212) 218-5500
**F** (212) 218-5526

joslick@seyfarth.com
T (212) 218-6480

www.seyfarth.com

May 19, 2026

**VIA ECF**

The Honorable Wendy Beetlestone, U.S.D.J.
United States District Court for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106-1797

**Re: EPAM Systems, Inc. v. Rao, Case No. 2:25-cv-06260-WB**

Dear Judge Beetlestone:

We write on behalf of Plaintiff EPAM Systems, Inc. ("EPAM"), in reply to Defendant Gowtham Rao ("Rao")'s opposition to our letter seeking a conference to address Rao's evidence of spoliation and misrepresentations in his pleadings.

To cut to the chase, the following facts appear to be undisputed:

1. On Nov. 13, 2025, *nine days after the Court warned him about spoliation*, Rao conducted what iDS called a "reset" and he calls a "refresh" of his computer. (*See* ECF #43-4 at 1; Rao Ltr. at 1.)

2. This intentional decision and action destroyed all forensic evidence of USB devices that had previously been attached to his computer. (Rao Ltr. at 2.) Thus, if Rao transferred EPAM files to a USB device, EPAM would have no way to tell, much less identify the specific device, so that it could be forensically investigated and remediated.

3. The "reset" or "refresh" also destroyed forensic evidence of Rao's browsing activity. (EPAM Ltr. at 2.) Thus, if Rao uploaded EPAM files to a cloud storage website (such as to a Dropbox account) or transferred EPAM files to a Generative AI platform (such as ChatGPT, Co-Pilot, Claude), there would be no way to tell.

4. Before the reset, Rao was deleting EPAM files. (Rao Ltr. at 2.) The "reset" or "refresh," even if it did not destroy files still on his computer, destroyed the forensic record of "file activity," such as the record of what files Rao deleted and when. (EPAM Ltr. at 2.)

5. Thus, EPAM now *cannot* know whether Rao transferred EPAM files that Rao admits he possessed to a USB device, cloud-storage account, or Generative AI platform, deleted those EPAM files from his computer, then conducted the "refresh" or "reset" to cover his tracks.

6. Despite the above, Rao falsely represented in his Answer and Counterclaims that the "evidentiary baseline is completely preserved" (*id.* ¶ 231), and that the "independent" forensic analysis was "exculpatory," providing "definitive forensic clearance" of his conduct. (Answer ¶¶ 386, 389, 453, 454; *see also* ¶ 255.) He even claimed that EPAM was litigating in "bad faith" by "prosecuting claims that are contradicted by the emerging forensic record." (*Id.* ¶ 254; *see also* ¶¶ 256, 389.)

Rao provides no real defense to any of this. At best, Rao proffers he had no intent to destroy evidence, and merely conducted the "refresh" because he forgot his passwords, seemingly more than once. (Rao Ltr. at 1 & Ex. C.) But, Rao chose not to disclose the situation to EPAM, even though it occurred just six days before the scheduled hearing on EPAM's motion for a preliminary injunction (*see* ECF #10), and while the parties were extensively negotiating over the forensic protocol in an effort to resolve that motion. Rao nevertheless proceeded with the "refresh," without telling anyone, despite being fully aware that the purpose of the protocol was to understand what happened to EPAM's data after Rao downloaded it onto the computer. By his actions, Rao knowingly frustrated that very purpose.

Rao's "forgotten passwords" explanation is absurd. Windows provides easy ways to change a forgotten password without resetting or refreshing a computer.[1] But even if the Court credited his nonsensical explanation, it doesn't justify or excuse his spoliation. Before conducting the "reset" or "refresh," Rao could have first preserved all forensic data by having his computer imaged or created a backup. The cost would have been minimal. Further, if Rao had informed EPAM of the issue, EPAM would have happily paid this imaging expense to avoid the situation where it can now never know what happened, and when, with the many EPAM files on this device. Or, if Rao truly wanted to ensure that he did not "mix any EPAM work with [his] new company" (Rao Ltr. at 2), he could have – and should have– purchased a new computer strictly for use at his new venture, which would be untainted by EPAM's confidential information, work, and trade secrets. He did none of those things.

Rao also argues that his "reset" or "refresh" didn't destroy evidence of USB file transfers, because his computer did not track such transfers to begin with. (Rao Ltr. 3.) Rao knowingly minimizes and conflates the issue. If Rao had preserved evidence, instead of spoliating it, the record would identify *what* USB devices were connected and *when*. So, for instance, if the forensic record showed that Rao connected a USB device with a specific Product ID on 11/3/2025, that USB device would have been automatically included for analysis by the forensic vendor under the explicit terms of the forensic protocol.[2] Now, EPAM has no way of knowing if such a device ever existed, or what EPAM files Rao may have transferred to it.

---

[1] (*See* https://support.microsoft.com/en-us/windows/change-or-reset-your-microsoft-account-password-in-windows-8271d17c-9f9e-443f-835a-8318c8f68b9c, last visited May 17, 2026).

[2] Paragraph III(a)(iii) of the forensic protocol states, in pertinent part: "To the extent that any additional devices and/or accounts are identified pursuant to III(a)(3) or III(a)(5), those devices and/or accounts will be subject to this Agreement."

Put simply, even if, as Rao claims, "high-value trade secret files" no longer exist on the relevant computer (and the forensic review is not yet complete), that provides EPAM with no comfort. (Rao Ltr. at 3.) Rao easily could have transferred those files to a USB device, cloud storage account, or Generative AI platform, before deleting them from his computer and then destroying all forensic evidence of his misconduct through the "refresh" or "reset."

Rao is technically savvy. He knows all this. He was a highly-compensated employee at EPAM and is the founder of a new tech company—now actively in business—which directly competes against EPAM. (*See* https://www.coreason.ai/). He is not a naïve user of technology who can credibly claim to not understand the consequence of his refresh or reset to the prime device at the center of an active litigation. The only rational inference is that he spoliated evidence, and then repeatedly lied in his pleadings, to deprive EPAM of critical evidence regarding his misappropriation of trade secrets and other misconduct.

Finally, not content with the misrepresentations he made in his Answer and Counterclaims, Rao's letter doubles down on making misleading representations to the Corut. For instance, Rao proffered that EPAM had "not identified any EPAM trade secret files on my computer." (Rao Ltr. at 2.) Yet, as Rao well knew, he produced files to EPAM less than two weeks before submitting his response letter, and EPAM had until May 15 to identify EPAM files. EPAM has since identified approximately 6,700 documents, including nearly 3,700 from Rao's computer, as containing its confidential information or otherwise belonging to it (while Rao has withheld another 1,000 from EPAM's review entirely). Further, at the time he wrote his response letter, Rao had coded hundreds of documents as "EPAM (Probable)," meaning Rao himself knew that those items likely belonged to EPAM.

Rao's conduct – including not only spoliation but the numerous false and misleading statements in his pleadings and court filings – warrants the most severe sanctions. Accordingly, EPAM respectfully requests that the Court permit a formal motion seeking judgment on its claims,[3] dismissal of his Counterclaims with prejudice, order him to pay EPAM's fees and costs, and award EPAM all other appropriate relief.

We thank Your Honor for your on-going consideration of this matter.

Respectfully submitted,

*/s/ Jacob Oslick*

Jacob Oslick

cc: Gowtham Rao, *pro se* (via email and Federal Express)

---

[3] EPAM originally requested that Rao's Answer be struck, but Rao mooted that requested relief by not answering EPAM's Amended Complaint (despite answering the original Complaint), and instead moving to dismiss.