July 20, 2026

VIA ECF
The Honorable Wendy Beetlestone, U.S.D.J.
United States District Court for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106-1797

**Re:** EPAM Systems, Inc. v. Rao, Case No. 2:25-cv-06260-WB

Response to EPAM's Discovery Letter (ECF No. 53)

**Dear Judge Beetlestone:**

I, Gowtham Rao, proceeding *pro se*, respectfully respond to EPAM's July 17 letter (ECF No. 53) pursuant to Your Honor's Policies and Procedures, Civil Cases § III(c)(2). Although EPAM casts me as unreasonable, I have repeatedly conceded ground and granted access well beyond the agreed terms in a good-faith effort to resolve these issues without burdening the Court. However, EPAM's demands have now escalated beyond the bounds of reasonableness, necessitating Your Honor's guidance and a referral to a Magistrate Judge.

**Resolved matter.** I have released approximately 84,000 of the roughly 85,000 files captured by EPAM's search terms, withholding about one percent to protect my attorney-client privilege and personal privacy (Exh. A). While the mutually agreed Forensic Protocol explicitly restricts data access to “counsel for EPAM,” I have made extra-protocol concessions to authorize Relativity access for EPAM's in-house counsel and for Ms. McDermott, EPAM's United States-based technical reviewer (Exh. D). I confirm here that Ms. McDermott may receive the same access to the promoted review set that EPAM's counsel possesses. Because two EPAM employees (in-house counsel and the U.S. technical reviewer) are already authorized, the dispute over U.S. access is moot.

**Unresolved matter.** What remains is whether EPAM's remaining reviewer, who is stated to be located abroad, beyond this Court's subpoena power under Rule 45, and unbound by any signed confidentiality undertaking—should be permitted access by me outside the protocol. This remains unresolved because EPAM's own letter explains why that matters: its reviewers will “supply declarations” for its planned sanctions motion and will support an anticipated amendment “to assert new claims, potentially against additional parties.” ECF No. 53 at 3.

Individuals who will give sworn statements against a *pro se* defendant must be witnesses I can examine; employees of EPAM's foreign affiliates are non-parties permanently beyond this Court's compulsory process under Fed. R. Civ. P. 45(b)(2). If I cannot compel their appearance for a deposition, any declarations they supply would be shielded from cross-examination and subject to a motion to strike. Furthermore, I have pending whistleblower counterclaims specifically concerning EPAM's offshore operations.

Permitting EPAM to distribute my personal, forensic data to the very offshore employee population my counterclaims implicate is a profound conflict of interest that invites retaliation and witness intimidation. I proposed a solution: that each reviewer sign a one-page undertaking containing confidential treatment, litigation-use-only, and consent to this Court's jurisdiction for enforcement. EPAM rejected this proposal (Exh. D).

EPAM's July 17 correspondence states its position plainly: it requires “full access that replicates our firm access” for reviewers of its sole choosing; its three-person limit lasts only “until such time as you seek discovery,” so that even this safeguard is conditioned on me forgoing discovery on my own counterclaims; and EPAM asserts that information from this case “may be reviewed by any EPAM resource it deems necessary” (Exh. D).

EPAM also describes Mr. Ilin, whose location it has not confirmed, as the reviewer with the essential “knowledge” (Exh. D), meaning EPAM's self-described key technical witness is the one it proposes to keep beyond this Court's reach. EPAM employs thousands of technical personnel in the United States; its U.S.-based reviewer already has authorized access; and EPAM has never explained why a second qualified reviewer cannot be identified among its U.S. workforce.

**EPAM cannot show good cause for expanding the protocol.** EPAM sought access to my personal devices at the TRO stage in November 2025. The Court did not order that access; instead, the parties privately negotiated the Stipulated Consent Order (ECF No. 20) and the Forensic Protocol, under which I voluntarily submitted my devices and accounts to a bounded, neutral-administered review with limited file access to counsel for EPAM as explicitly stated in the Forensic Protocol. ECF No. 53 now asks the Court to convert that negotiated protected process into the unrestricted internal distribution EPAM did not obtain in November. Furthermore, counsel for EPAM has possessed file-level access since at least May 2026. *The record does not support the sudden urgency claimed.*

EPAM also claims it urgently needs foreign engineers to evaluate 6,693 files because I have raised a “blanket challenge” to its designations (ECF No. 53 at 3). My challenge is not blanket obstruction; it rests entirely on the Protocol's own limits. The Consent Order mandates that EPAM may only seek remediation of “EPAM Confidential Information... as defined in the [Employment Covenants] Agreement” (ECF No. 20, ¶ B). EPAM's counsel confirmed in writing on April 22 that approximately 93% of its 6,693 designated for remediation files “were extracted from 'ai-run' and 'codemie' ZIP files,” which the record shows are publicly available, Apache-licensed open-source projects (Exh. B). This is grounds for my challenge.

Section 1(b) of the ECA (ECF No. 1-1) explicitly defines what is *not* EPAM's property:

> *"Confidential Information shall not include information generally available and known by the public at the time of disclosure to you..."*

The ECA adds:

> "***For avoidance of doubt****, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information; which is through and for the purpose of community, professional, scientific; or similar groups and settings that are reasonably available through general industry sources.*" (Emphasis added).

EPAM does not need application engineers to read an Apache license. By demanding the remediation of public software, EPAM is violating the Consent Order, the Protocol, and its own employment covenant. Furthermore, when I asked EPAM to articulate an objective standard for evaluating these files, EPAM's counsel explicitly admitted on July 10 that defining such criteria is a “difficult if not impossible request” because they “don't know” what they are looking for. It is impossible to resolve designation disputes in good faith when the designating party admits it is operating on a retroactive “we'll know it when we see it” standard.

At the same time, EPAM has declined to follow the protocol and review or classify the remaining approximately 79,000 files. They continue to reserve indefinite rights to determine at a future date if those hit files may reasonably contain EPAM confidential information or IP, violating the strict mandate of Protocol § III(b)(ii) that EPAM produce its designations “[w]ithin five (5) business days of receiving either the Initial Reports or Redacted Initial Reports”. When pressed during the meet-and-confer, they claimed this requirement is unreasonable because it would take 1,300 hours and be a disproportionate burden (Exh. C). EPAM's counsel explicitly admitted on July 9 that they intend to hold these unreviewed files in limbo until they “learn information later in discovery” (Exh. C).

Furthermore, this “burden” is entirely self-inflicted and predictable. As early as January 13, 2026, EPAM was formally warned that its use of overbroad search terms (like "java", "readme", or "jnj") was improperly capturing massive volumes of "generic third-party files such as licenses to publicly available software." Having ignored these warnings to force a broader sweep, EPAM cannot now claim the resulting false-positive rate is a burden. I even offered to have the Forensic Neutral (iDS) programmatically filter the open-source files for a rough estimate of $1,000 (a cost which the Consent Order mandates “shall be borne by EPAM” (ECF No. 20, ¶ 4)), but EPAM rejected this neutral solution in favor of expensive manual review.

The urgency EPAM invokes is the due date of its own planned sanctions motion. Rule 26 does not entitle a party to expanded, unsupervised distribution of an opposing party's personal data in order to develop declarations for unfiled motions and unpled claims, and the forensic questions surrounding a system-level event such as an operating system refresh are matters for the parties' agreed Forensic Neutral, iDS, not for EPAM's application engineers.

**Forensic Protocol operates as a Protective Order:** The Forensic Protocol operates as a Rule 26(c) protective order and does not permit foreign software engineers to conduct an investigative review of my conduct. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780

(3d Cir. 1994). Furthermore, spoliation inquiries are strictly limited to determining prejudice to existing claims. *See Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

**Corrections to ECF No. 53.**

First, I have not insisted that "only EPAM's outside and in-house counsel may view the documents"; my July 16 email states the opposite, and EPAM's U.S.-based reviewer was authorized within minutes of being named. I do dispute EPAM's radical reading of the Protocol—specifically its July 9 written assertion that the Protocol "imposes no access or distribution restrictions at all"—which ignores that the Protocol explicitly directs documents to "counsel for EPAM" throughout Section III(b) and refers to "EPAM" separately where it means the company (compare § II(a)). However, the Court need not resolve that question, because the access EPAM seeks is available today by my yielding to their pressures via agreement.

Second, I am not seeking "unilateral veto power"; my proposal states that "no waiting or approval period applies" and that access "may commence upon service" of each reviewer's name, title, and signed undertaking.

Third, EPAM cannot complain that the designation disputes remain unresolved when EPAM itself refuses to verify compliance with the Court's timeline. The Consent Order explicitly mandates that "the search and remediation time period shall be September 1, 2025 to the present" (ECF No. 20, ¶ 3). When I repeatedly asked EPAM for download logs to verify that the designated files actually meet this September 1 transfer prerequisite, EPAM explicitly refused multiple times in writing (Exh. F).

Fourth, the protective order condition was not "raised for the first time on July 16": the parties' Rule 26(f) report states that "\[t\]he parties agree that a Protective Order is necessary in this case" (ECF No. 25 at 8), and while EPAM's letter asserts the parties "have not yet begun negotiating" one, its own footnote 1 acknowledges that EPAM transmitted a draft on the morning of July 17, which I have reviewed and to which this letter responds.

Fifth, as to footnote 2, I have always wanted the Forensic Protocol to be filed on the public docket; the sealing requirement in the Consent Order was included entirely at EPAM's insistence to protect their search terms. EPAM's counsel now writes on July 17 that "other than the Court's order, I do not see a basis for sealing the Forensic Protocol itself" (Exh. D). I agree: the Protocol and its search criteria may be filed publicly, subject to narrow redaction of any specific term EPAM identifies as genuinely proprietary, and I consent to whatever filing mechanism the Court prefers under Paragraph 3 of the Stipulated Consent Order (ECF No. 20).

Sixth, EPAM cannot claim I obstructed review of the approximately one percent of documents I withheld for privilege. On July 10, in a good-faith effort to build trust, I conducted a live screenshare, walking EPAM's counsel through the metadata and contents of selected withheld files (including privileged settlement communications and a government patent application). I then offered multiple compromises, including instructing the Forensic Neutral (iDS) to objectively

filter the metadata to protect my privilege. The Consent Order explicitly guarantees that “no material that is protected by the attorney-client, work product, or other form of privilege shall lose such privilege or protection” (ECF No. 20, ¶ 3). Yet, EPAM rejected all neutral solutions, demanding physical possession of the privileged metadata instead (Exh. E).

**Requested disposition.** I am not asking the Court to deny EPAM's reviewers access; I have already granted it. I respectfully ask that the Court:

(1) deny EPAM's request for unrestricted distribution and instead enter an order under Rule 26(c) providing that EPAM may share Forensic Protocol materials with up to three named technical expert reviewers, each within this Court's subpoena power, and each first executing a one-page undertaking providing confidential treatment, litigation use only, and consent to this Court's jurisdiction for enforcement, with access commencing upon service of each executed undertaking;

(2) set a schedule for completing the Forensic Protocol's remaining steps, including resolution of the designation objections through the meet-and-confer process the Protocol contemplates, so that this protracted process reaches an end and all files are classified (including the 79,000 files); and authorize the Forensic Neutral to programmatically filter the remaining 79,000 files to minimize the manual review burden; and

(3) refer any further disputes arising under the Forensic Protocol to a United States Magistrate Judge. I respectfully note that I am without income as a result of the events underlying my counterclaims and cannot fund a special master; a Magistrate Judge referral would relieve the Court of these recurring disputes at no cost to either party. Alternatively, I welcome the telephone or in-person conference EPAM requests, and, consistent with the Court's earlier suggestion, remain willing to proceed to mediation, including through this District's Court-Annexed Mediation Program in view of my *pro se* status.

I respectfully request the Court's swift intervention. As an unemployed *pro se* litigant, I am experiencing severe hardship from EPAM's strategy of litigation by attrition, and I cannot sustain this disproportionate burden. A prompt resolution is necessary to ensure the just, speedy, and inexpensive determination of this action under Rule 1. The underlying correspondence is attached as Exhibits A through F, and I will promptly provide anything further the Court wishes to review.

Respectfully submitted,

/s/ Gowtham Rao

Gowtham Rao, MD, PhD
Defendant/Counter-Plaintiff, pro se

**Enclosures: Exhibits A-F**

cc: Counsel of record (via ECF and email)

---

**Exhibit List**

**Exhibit A**
Rolling release of reviewed files: March 26, 2026 initiation and the April 6-7, 2026 release authorizations, with privilege and confidentiality withholding instructions.
Thread: EPAM v. Rao - Relativity - Rolling Production of Reviewed Files (AEO) (excerpts).

**Exhibit B**
April 10-28, 2026 correspondence, including EPAM counsel's April 22, 2026 statement that approximately 93% of the documents designated from Device A0001 were extracted from "ai-run" and "codemie" ZIP files, and EPAM's April 28, 2026 response.
Thread: Clarification on NSRL Filtering and Environment Files in EPAMR-06448.A0001 (excerpts).

**Exhibit C**
July 8-10, 2026 meet and confer correspondence: the stated 1,300-hour review burden, the rejection of neutral algorithmic filtering, and the absence of objective designation criteria.
Thread: EPAM vs Rao - 2026-07-08 - Meet and Confer (excerpts).

**Exhibit D**
July 16-17, 2026 reviewer access correspondence: Defendant's protective order proposal, EPAM's rejection and final offer, its identification of Mr. Ilin, and the immediate authorization of access for Ms. McDermott.
Threads: EPAM employee access to Relativity and
EPAM vs Rao - 2026-07-08 - Meet and Confer (excerpts).

**Exhibit E**
July 10-14, 2026 correspondence concerning the withheld inspection documents: the July 10, 2026 screenshare (including a 107-page draft settlement agreement) and EPAM's demands concerning the withheld metadata.
Thread: EPAM vs Rao - 2026-07-08 - Meet and Confer (excerpts).

**Exhibit F**
July 8-9, 2026 correspondence: Defendant's request for comprehensive download logs and EPAM counsel's written refusal.
Thread: EPAM vs Rao - 2026-07-08 - Meet and Confer (excerpts).