UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

*EPAM Systems, Inc. v. Gowtham Adamane Rao*
Case No. 2:25-cv-06260-WB (E.D. Pa.)

# EXHIBIT C

July 8-10, 2026 Meet and Confer Correspondence
Including the stated 1,300-hour review burden, the rejection of neutral algorithmic filtering, and the absence of objective designation criteria

*Excerpts (pp. 1-6, 11-14) of thread: EPAM vs Rao - 2026-07-08 - Meet and Confer*

Gmail **Gowtham Rao <gowthamrao.litigation@gmail.com>**

# EPAM vs Rao - 2026-07-08 - Meet and Confer

20 messages

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Wed, Jul 8, 2026 at 6:16 PM
To: "Christoff, Matthew" <MChristoff@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Oslick, Jacob" <JOslick@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, James Yu <jyu@seyfarth.com>

Hi Matt and Jacob,

To memorialize our discussion from today's meet and confer regarding the Forensic Protocol:

**1. Extra-Protocol Requests:** We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the "four corners" of our signed Forensic Protocol (which explicitly limits access to "counsel for EPAM"). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

**2. The Direct Solution for Technical Review:** While you claimed you lack the technical expertise to review the documents, I provided a direct and obvious solution that complies with the explicit language of the protocol. Seyfarth is a large, well-resourced law firm with its own technical personnel (or the ability to hire independent technical contractors). These individuals fall squarely under the protected umbrella of "counsel for EPAM." If technical training is required, EPAM employees are free to train Seyfarth's technical resources to conduct the review. This is the contemplated approach allowed by the protocol. Your refusal to utilize this obvious solution suggests a preference for extra-contractual access over actual protocol compliance.

**3. Request for Download Logs:** As discussed, you agreed to take my request for the comprehensive download logs (e.g., the Git logs, not just the SharePoint logs) back to EPAM for consideration as part of our negotiation regarding your extra-protocol requests.

**4. The 79,000 Un-Promoted Files and Protocol Non-Compliance:** During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III (b) (ii) of the Forensic Protocol, which mandates:

> "Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work..."

By **admitting** that you have not even attempted to determine if these 79,000 files contain EPAM confidential information or work product, you are confirming that EPAM has failed to comply with this mandatory step. It has now been 5 months since that 5-day deadline expired.

EPAM's refusal to definitively state whether it believes these 79,000 files contain confidential information—while simultaneously withholding them—prejudices my ability to appropriately manage my defense. This ongoing and intentional delay in fulfilling the basic requirements of the protocol provides clear grounds for seeking an adversarial determination from the court.

Please confirm whether EPAM intends to complete its review of these files pursuant to Section III (b) (ii), or if you are formally abandoning any claims regarding this specific subset of data.

**5. Path to Global Resolution**
As I stated on our call, I remain committed to finding a path to lasting peace. My primary concern in this litigation is managing the risk associated with the Defend Trade Secrets Act claims (Counts 1 and 2).

To that end, I want to reiterate my global resolution offer, which has been on the table for months: I unconditionally affirm that I will continue to comply with my Employment Covenant Agreement. I make this affirmation irrespective of the findings of the forensic protocol, and irrespective of whether my personal desktop is found to have—or may have had—EPAM Confidential Information or Intellectual Property on it.

If EPAM will simply confirm today that they did not find EPAM Trade Secrets within the ~85,000 forensic hits, I am willing to allow a blind reset of my computer to provide EPAM with permanent peace of mind regarding any remaining

Confidential Information, ending this dispute.

I have now made multiple reasonable offers to resolve this matter globally. EPAM's continued refusal to even consider these offers—while simultaneously refusing to clear the forensic hits of Trade Secret claims and failing to comply with mandatory protocol deadlines—suggests this litigation is being prolonged unnecessarily.

**6. Retaliation and Bad Faith:** As stated in my formal pleadings, EPAM's allegations of misappropriation and the subsequent weaponization of the federal judicial system through this lawsuit constitute ongoing, retaliatory actions designed to penalize, silence, and financially ruin me for my protected whistleblowing disclosures. Your refusal today to utilize protocol-compliant solutions, while demanding extra-contractual access and ignoring your own protocol deadlines, only further evidences this ongoing retaliatory campaign. You have also been notified today that you are actively causing me documented physical and mental health harm. I have advised you to consider ethics review within Seyfarth.

Regards,
Gowtham Rao

---

**Oslick, Jacob** <JOslick@seyfarth.com> Thu, Jul 9, 2026 at 5:10 PM
To: Gowtham Rao <gowthamrao@gmail.com>, Gowtham Rao <gowthamrao.litigation@gmail.com>
Cc: "Christoff, Matthew" <MChristoff@seyfarth.com>

Gowtham,

Your email below is not productive. Our responses are below, in red.

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

---

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Wednesday, July 8, 2026 6:17 PM
**To:** Christoff, Matthew <MChristoff@seyfarth.com>
**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Oslick, Jacob <JOslick@seyfarth.com>; Sarah Lugar <Sarah_Lugar@epam.com>; Yu, James <JYu@seyfarth.com>
**Subject:** EPAM vs Rao - 2026-07-08 - Meet and Confer

Hi Matt and Jacob,

To memorialize our discussion from today's meet and confer regarding the Forensic Protocol:

**1. Extra-Protocol Requests:** We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the "four corners" of our signed Forensic Protocol (which explicitly limits access to "counsel for EPAM"). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

I cannot fathom what you believe you will gain through these kinds of gratuitous misrepresentations. "We" established no such thing. While "you" took that position, we (EPAM) forcefully and repeatedly set forth our understanding that EPAM is entitled, under the Forensic Protocol, to have EPAM's technical employees (not just its attorneys) review the documents at-issue. Further, we made it clear that, if we could not reach an agreement on this issue, that we would go to the Court. As we are at an impasse on this issue that is what we will do now. And we will seek our fees for being forced to file such an application.

Contrary to your supposition, nothing in the Protocol limits access to any of the forensic reports or documents to only "counsel for EPAM." To the contrary, it imposes no access or distribution restrictions at all, so long as EPAM uses the documents for "the purpose of this Litigation." (Forensic Protocol Sec. VI(c).) Further, it would make no sense to restrict access or distribution to the documents only to EPAM attorneys. EPAM's attorneys do not have the same first-hand knowledge as its technical people about what constitutes "Confidential Information" and "Work"(within the Protocol's meaning) when it comes to specific documents that are technical in nature or regarding certain projects that EPAM's attorneys would not be directly familiar with, absent consultation within the business.

**2. The Direct Solution for Technical Review:** While you claimed you lack the technical expertise to review the documents, I provided a direct and obvious solution that complies with the explicit language of the protocol. Seyfarth is a large, well-resourced law firm with its own technical personnel (or the ability to hire independent technical contractors). These individuals fall squarely under the protected umbrella of "counsel for EPAM." If technical training is required, EPAM employees are free to train Seyfarth's technical resources to conduct the review. This is the contemplated approach allowed by the protocol. Your refusal to utilize this obvious solution suggests a preference for extra-contractual access over actual protocol compliance.

Your proposal is not "contemplated" by the protocol. It is nonsensical and, like your other proposals and conduct during the Forensic Protocol, appears designed primarily to magnify EPAM's costs while frustrating its ability to gain meaningful information from the documents, or negotiate in good faith regarding your claims that none of the documents identified for remediation contain EPAM's Confidential Information and/or Work. There is no feasible way for EPAM's technical employees to "train" outside contractors on every kind of document that might be EPAM Confidential Information or Work. That kind of knowledge is gained by actually working at EPAM day-by-day, and by encountering, in the ordinary course of business, the kinds of documents that you wrongfully downloaded. Your refusal to permit EPAM's technical employees to review the documents is baffling – it is the technical people, not EPAM attorneys or outside contractors, who likely *drafted* and/or *received* many of the documents at issue as part of their jobs, and who could provide the best information to counsel about what the documents are, **since you are taking the position that not a single one is EPAM Confidential Information or Work**. Your proposal also introduces extreme inefficiencies regarding the review of these documents. For example, if an outside contractor had a question regarding a particular technical document, your proposal would seemingly forbid them from showing the document. Instead, the contractor would be forced to describe highly technical materials, *including source code*, in a narrative fashion. Further, your proposal would also be extremely expensive. Put simply, after victimizing EPAM by wrongfully downloading tens of thousands of files, your proposal is to victimize EPAM again by forcing it to incur enormous unnecessary costs just to try to fix the mess that you created. We won't agree to this.

**3. Request for Download Logs:** As discussed, you agreed to take my request for the comprehensive download logs (e.g., the Git logs, not just the SharePoint logs) back to EPAM for consideration as part of our negotiation regarding your extra-protocol requests.

That is *not* what we "agreed" to. Rather, we reiterated that EPAM is entitled to have its technical people review the documents under the Forensic Protocol. However, we sought clarity about what you wanted in exchange for dropping your groundless objections and consenting to iDS giving these people access to the Relativity environment. You first mentioned the production of certain logs. We explained (and you agreed) that you weren't entitled to these under the Protocol. However, we are obligated to take any offer back to our client. So, if your proposal was limited to demanding the logs, we stated that we would take your proposal back to EPAM. We did not make any representations about whether EPAM would deem your offer to be acceptable.

In any event, you quickly made it clear that this was *not* your offer, so any such discussions are moot. You insisted that, in addition to the logs, you also demanded one of the following:

1. EPAM's analysis about why it sought the promotion of certain documents for review in Relativity, while not seeking to promote for review approximately 79,000 other documents;
2. EPAM's affirmative statement that it has no reasonable belief that the other 79,000 documents contained its trade secrets or confidential information.

We explained that we could not, under any circumstances, agree to either demand. As to your first demand, the information you seek is protected by the attorney-client privilege and work product doctrine. Essentially, you are seeking our legal analysis about why we considered certain documents to be more valuable and worthy of review than other documents. You aren't entitled to that.

As to your second demand, we noted – as you should have already known for months – that the 79,000 documents that were *not promoted for review* were, unsurprisingly, not reviewed. This does not mean that we can make any affirmative statements about what the documents do or do not contain. Our analysis about what to promote to review was based on the limited information (such as metadata) contained in the Initial Reports, not the full contents of the documents. If this matter does not resolve, which seems likely at this point, we may learn information later in discovery which will provide a basis for reviewing these documents and assessing whether they contain EPAM Confidential Information or Work, let alone other documents from your devices and accounts that were outside the scope of the targeted search parameters that resulted in the forensic reports prepared by iDS from which the promotion sets were identified. For example, they may contain derivatives of EPAM Confidential Information or Work, with enough superficial information changed in order to disguise (on something like the Initial Reports) the origin of the substantive information they contain. Or they could contain Work that you failed to disclose to EPAM and, as such, would not be detectible through the limited information in the Initial Reports. At any rate, as previously discussed, EPAM's promotion of certain files was based on a logical, reasonable, and good faith analysis of metadata based upon the information it knew at the time and not review of the content of every single file, and its decision to not promote certain files under the protocol does not change your obligations in the event any of those files contain Confidential Information or Work. As we have repeated, the purpose of the forensic protocol is for the targeted <u>identification and remediation</u> of EPAM's Confidential Information and/or Work.

**4. The 79,000 Un-Promoted Files and Protocol Non-Compliance:** During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III (b) (ii) of the Forensic Protocol, which mandates:

> "Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work..."

By **admitting** that you have not even attempted to determine if these 79,000 files contain EPAM confidential information or work product, you are confirming that EPAM has failed to comply with this mandatory step. It has now been 5 months since that 5-day deadline expired.

EPAM's refusal to definitively state whether it believes these 79,000 files contain confidential information—while simultaneously withholding them—prejudices my ability to appropriately manage my defense. This ongoing and intentional delay in fulfilling the basic requirements of the protocol provides clear grounds for seeking an adversarial determination from the court.

Please confirm whether EPAM intends to complete its review of these files pursuant to Section III (b) (ii), or if you are formally abandoning any claims regarding this specific subset of data.

Your reading of the Forensic Protocol is groundless. There is no requirement in the Forensic Protocol for EPAM to review each-and-every document. Quite the opposite, the Forensic Protocol's framework first required EPAM to review Initial Reports containing information such as metadata, and to use those reports to identify the *subset* of documents to review, *i.e.*, the subset where, based on the limited information and metadata contained in the Initial Reports, it reasonably believes the subset contains Confidential Information and/or Work. EPAM did precisely that. This step happens *before* EPAM is entitled to review any of the documents themselves. In fact, we were shocked to learn that you were under the mistaken impression that we have access to the <u>content from all documents</u> identified in the forensic reports. If that were the case, then there would obviously have been no requirement that the documents be released to you for review first and certainly there would be no further dispute regarding the Withheld Inspection Documents Report, as all documents would have been made available. In other words, the Protocol contemplates that EPAM would

*not* review all, or even most, of the documents located on your devices and accounts. EPAM has no interest in doing so and the protocol was designed to focus this review in a reasonable, practical, and cost-effective manner.

Beyond the fact that your position has no basis in the Forensic Protocol, doing so would be ludicrously expensive and impractical. Even if EPAM could review one document a minute, the review of 79,000 documents that you are now seemingly demanding would take over 1,300 hours. There is nothing in the Forensic Protocol that imposes such a ridiculous and disproportionate burden on EPAM. EPAM did not and will not agree to take on that burden – which would only magnify the victimization caused by your improper acts.

To be clear, the fact that EPAM sought to promote only a subset of documents for review, does not "definitively" mean that the unpromoted documents do not contain "Confidential Information and/or Work." And under no circumstances will EPAM make any such representation.

**5. Path to Global Resolution**
As I stated on our call, I remain committed to finding a path to lasting peace. My primary concern in this litigation is managing the risk associated with the Defend Trade Secrets Act claims (Counts 1 and 2).

To that end, I want to reiterate my global resolution offer, which has been on the table for months: I unconditionally affirm that I will continue to comply with my Employment Covenant Agreement. I make this affirmation irrespective of the findings of the forensic protocol, and irrespective of whether my personal desktop is found to have—or may have had—EPAM Confidential Information or Intellectual Property on it.

If EPAM will simply confirm today that they did not find EPAM Trade Secrets within the ~85,000 forensic hits, I am willing to allow a blind reset of my computer to provide EPAM with permanent peace of mind regarding any remaining Confidential Information, ending this dispute.

I have now made multiple reasonable offers to resolve this matter globally. EPAM's continued refusal to even consider these offers—while simultaneously refusing to clear the forensic hits of Trade Secret claims and failing to comply with mandatory protocol deadlines—suggests this litigation is being prolonged unnecessarily.

We will "confirm" no such thing. To the contrary, the evidence we have obtained to date, including through the review of documents via the Forensic Protocol, confirms that your conduct was far more egregious than we believed back when we filed this suit. While we have nevertheless bent over backwards in an attempt to reach a resolution with you, it is clear that any such resolution is not possible. By way of example, your "offer" to "resolve" the dispute by wiping your computer is meaningless, because your spoliation of evidence makes it impossible for us to determine if you transferred EPAM's Confidential Information and Work to USB devices, cloud storage accounts, or created derivative works (including through the use of AI platforms). Further, this offer does absolutely nothing to address any EPAM Confidential Information and/or Work that exists on sources outside of your computer. As we have previously – and repeatedly – explained to you, it accomplishes nothing for us to wipe your computer, if you have copies of the same information stored elsewhere. This was a path EPAM proposed to you many months ago, before we had the information we have now. You refused that path repeatedly. That option for resolution is no longer on the table. With resolution now infeasible, we intend to proceed with the spoliation motion and also to seek other forms of relief, including an additional Amended Complaint that will assert additional claims based on the information we have learned to date.

We will not dignify the remainder of the above with a substantive response. Suffice it to say that – in an ordinary case, if you were represented by counsel – we would have gone to the Court long ago, in light of your continued obfuscation and attempts to stymie EPAM's investigation into your wrongdoing. For instance, we would have gone to the Court over your previous refusal (for months) to let EPAM's in-house counsel access to the documents, your on-going refusal to permit EPAM's technical employees access to the documents, your failure to produce the required information relative to the withheld documents, and your bad faith challenge (with *zero* explanation) to each and every one of the 6693 documents that EPAM asked to be remediated.

**6. Retaliation and Bad Faith:** As stated in my formal pleadings, EPAM's allegations of misappropriation and the subsequent weaponization of the federal judicial system through this lawsuit constitute ongoing, retaliatory actions designed to penalize, silence, and financially ruin me for my protected whistleblowing disclosures. Your refusal today to utilize protocol-compliant solutions, while demanding extra-contractual access and ignoring your own protocol deadlines, only further evidences this ongoing retaliatory campaign. You have also been notified today that you are actively causing me documented physical and mental health harm. I have advised you to consider ethics review within Seyfarth.

These allegations are offensive and insulting, and make any further meet-and-confers difficult. We did not appreciate spending roughly 20-25 minutes yesterday during the supposed meet-and-confer being lectured by you about your imagined and baseless accusations of EPAM's and Seyfarth's supposed misconduct, and we don't appreciate comments such as the above. We have tried, repeatedly to work with you in good faith, only to receive bad faith, insults, and accusations in return. We don't see any further point in supposed "meet-and-confers," particularly meet-and-confers that you simply misuse as your soap box to give long speeches

about EPAM's and Seyfarth's supposed wrongdoing. We have exhausted all efforts to reasonably move this protocol to conclusion and will not abide by further indefinite stalling.

**7. Withheld Inspection Documents Report**: While we had specifically informed you that we wished to discuss the Withheld Inspection Documents Report, you explicitly rejected any discussion on this topic. For purposes of making the written record clear, you have refused to permit even EPAM's attorneys to review 1,063 documents based solely on your representations – such as that the documents are personal, or protected by the spousal and/or attorney-client privileges. However, you have not established any of these claims. You refused, for example, to provide any metadata confirming that any of these documents were shared with your wife or your attorney, and similarly refused to provide any of the information that would ordinarily be found on a privilege log. Further even, if these documents were shared, the applicable privileges would not save the documents from remediation – you aren't allowed to keep copies of EPAM Confidential Information or Work simply by forwarding it to your wife or attorney. Further, we note that 62 of these documents were identified by you as being related to "Project Synapse," *i.e.*, work you did for EPAM's Synapse AI product. Your contention that even Project Synapse documents cannot be shared with EPAM – which owns Project Synapse – is baffling and unsupported. For another example, you refused to release, even for EPAM's review, numerous documents that are marked by your own coding, as being related to your "routine work responsibilities" for EPAM – based on your *ipxe dixit* that the documents are "not a matter of this case." Whether the documents are "a matter of this case" is not your decision to make, without enabling EPAM access to see for itself. For still another example, you have withheld (and refused EPAM access) on numerous other documents based on your opinion that the information is "EPAM client owned." Yet surely EPAM should be permitted to see documents, generated in connection with your EPAM work, even if you are taking the legal position that the information is somehow "owned" by EPAM's clients. Because you refused to even meet-and-confer regarding the documents you withheld, we will seek relief from the Court.

**8. Generative AI Platforms**: You refused to confirm whether you stored, transferred, analyzed, or exchanged any EPAM Confidential Information and/or Work in Generative AI models or platforms, but instead repeated that your former counsel had provided iDS with access to all of your devices and accounts, including any associated with Generative AI models or platforms that were in your possession, custody, or control at the time of the protocol. We informed you that unless you had identified those Generative AI models and/or platforms (such as ChatGPT or Claude), as well as the associated account names, there would have been no method by which iDS could have identified, accessed, or collected any such information. To avoid any doubt, if you retained access to any such platforms or models registered to your gowtham_rao@epam.com account at the time the forensic protocol was signed, those accounts should have certainly been subject to identification and collection of the forensic protocol. You agreed that a confirmation with iDS regarding their collection of information from Generative AI models or platforms was appropriate and we intend to send them the following, targeted questions, as this information is squarely within the protocol:

- Can iDS confirm whether it collected all Google service data from each of Dr. Rao's Google accounts, including data from Gemini (such as prompts, inputs, and/or outputs) pursuant to Section I(e)(iii) of the Forensic Protocol?
- Can iDS confirm whether its collection of Dr. Rao's Google service data contained information from Gemini, including prompts, inputs, and/or outputs?
- Can iDS confirm whether it collected any information from Dr. Rao's devices or accounts associated with Generative AI models or platforms other than Gemini, including prompts, inputs, and/or outputs?

We will proceed with our remedies in Court.

Regards,
Gowtham Rao

---

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Thu, Jul 9, 2026 at 5:32 PM
To: "Oslick, Jacob" <JOslick@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, James Yu <jyu@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>

Thank you Jacob.

Regarding the withheld inspection report, I have offered to show its contents via a screenshare. After the screenshare, if you wish to have further access to them via Relativity - we can discuss that on a case by case basis. You have refused this offer without justification. I will set a meet and confer for tomorrow 1 PM EST to perform a screenshare on this topic. The content are personal and private matters. I am citing the protocol for your convenience that justified the withholding:

Within three (3) business days of receiving the documents identified on the Inspection Documents Report, counsel for Rao will identify to counsel for EPAM and Forensic Vendor any documents that it believes contain privileged information and/or does not constitute Confidential Information and/or Work ("Withheld Inspection Documents Report"), and shall specifically identify the reason for withholding the document (i.e.,

- (2) identify documents released to Relativity that we believe contain EPAM Confidential Information and/or Work.

- The parties will then meet and confer to resolve any remaining disputes regarding those challenges, if any.

  - Any documents that the parties agree are not protected by the attorney-client privilege or work product doctrine, or agree contain EPAM Confidential Information and/or Work will be released to Relativity if they are not already available.

  - Any documents that the parties agree are protected by the attorney-client privilege or work product doctrine, or agree do not contain EPAM Confidential Information and/or Work will be removed from Relativity.

- If the parties cannot resolve all disputes regarding the documents on the Withheld Inspection Documents Report, they will be raised with the Court.

We look forward to your response and a productive discussion.

Thanks

Matt

**Matthew Christoff** | Partner | Seyfarth Shaw LLP
eDiscovery and Information Governance, EnCE
233 S. Wacker Drive | Suite 8000 | Chicago, Illinois 60606-6448
Direct: +1-312-460-5315
MChristoff@seyfarth.com | www.seyfarth.com

Seyfarth

[Quoted text hidden]

---

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Fri, Jul 10, 2026 at 1:34 PM
To: "Oslick, Jacob" <JOslick@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Got it. It has been turned off. Come back
[Quoted text hidden]

---

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Fri, Jul 10, 2026 at 4:25 PM
To: "Oslick, Jacob" <JOslick@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Matt, Jacob -

I am writing to summarize our meet and confer today regarding the Withheld Inspection Documents Report. Based on our discussion, it appears we have made some progress but still have a ways to go before we break the impasse.

To document our respective positions:

**1. Good faith screen share:** In a good-faith effort to build trust, I conducted a targeted screen share of documents from the withheld log. We looked at a document tagged with the "Project Synapse" identifier. As I demonstrated on the screen, this 107-page document was not EPAM intellectual property or source code; rather, it was a clearly privileged attorney-client communication regarding settlement. I understand your position is that, without a page-by-page review, you cannot be certain the material lacks EPAM confidential information or IP. You asserted that even attorney-client privileged communications are subject to remediation if they contain EPAM confidential information or IP, and that if a dispute arises over such a document, only the Court can make the final judgment.

**2. Failure to Define "Confidential Information":** Throughout our discussion, you failed to define or describe the objective criteria for what constitutes EPAM confidential information or intellectual property. In fact, when I asked you to propose boundaries or categories for review, you admitted that coming up with such categories is a "difficult if not impossible request" because you "don't know" what, wrt EPAM confidential information or IP, you are looking for. This confirms my concern that EPAM is using a retroactive, "we'll know it when we see it" standard, which makes objective, good-faith negotiation impossible.

**3. EPAM's Demand for Metadata:** You stated that EPAM cannot meaningfully evaluate or challenge my withheld designations without receiving to its physical possession the full metadata for these documents in its possession. You indicated that receiving this metadata is EPAM's "compromise" position.

**4. My Position on Metadata:** I reiterated that I cannot provide you with the full metadata log for the withheld documents. Doing so would improperly expose my privileged communication patterns, my associations, and my core legal strategy. Given the overinclusive nature of the raw forensic hits—which resulted from a broad, unencumbered search strategy unilaterally designed by EPAM—handing over this metadata is tantamount to handing over my privileged work product.

**5. Rejection of Neutral Third-Party Compromise:** To bridge this gap, I proposed a compromise: we could instruct the neutral forensic examiner (iDS) to perform metadata filtering on their end. For example, iDS could isolate and exclude communications exclusively between myself and my spouse, or myself and my attorneys. This would narrow the pool without exposing my privileged metadata to EPAM. I also proposed that the neutral review the content of the file, based on an agreed-upon set of rules we formulate, to identify information that is genuinely EPAM confidential information or IP. You explicitly rejected this proposal, stating you did not want to incur iDS costs for an "Excel filtering process" that you believe EPAM should do itself—even after I noted that the cost of having iDS perform this neutral filtering (estimated to be less than 1,000$) would likely be significantly less than the billing rates of two senior Seyfarth attorneys performing the same task (estimated more than 10,000$s, at 3,500$/hr for Jacob and 1,500$/hr for Matt).

**6. Rejection of the Relativity Platform Compromise:** When it became clear you would not agree to iDS performing the filtering, I offered a second compromise. I asked if providing the limited metadata within the secure confines of the neutral iDS Relativity platform—allowing you to view and filter the metadata, but restricting you from downloading or taking physical possession of the file onto Seyfarth or EPAM servers—would be acceptable. You dismissed this proposal as well, characterizing it merely as an unnecessary "additional step." This demonstrates that your goal is not simply to review the metadata to validate the withholdings as you claim, but rather to take permanent physical possession of it.

**7. Privilege Log Request:** You stated it is reasonable to ask for a privilege log, and I agreed to consider producing one. You indicated it would require some limited metadata, and I look forward to receiving your email detailing those specific parameters.

**8. Impasse Regarding Non-Privileged Documents:** Regarding documents that are not marked as privileged, we have also reached an impasse. During the screen share, I showed you a document containing a patent application I filed with the Government. You stated EPAM would still want to review this document based on your suspicion that I may have used derivatives of EPAM property to file the patent.

**9. Proportionality and Unreviewed Data:** During our call, we discussed the overall scope of the forensic hits. Out of approximately 85,000 total hits generated by EPAM's unencumbered search terms, I have granted you full access to ~84,000 of them. I noted that I only withheld a very small fraction of the total documents—primarily to protect highly personal and privileged information (such as family photos, communications with my spouse, and attorney-client work product). You had admitted on a prior call that EPAM has not even performed a file name review of the ~79,000 documents you already possess. It defies logic and proportionality for EPAM to aggressively demand access to a tiny subset of highly sensitive, withheld documents when you have not even bothered to review the tens of thousands of documents I have already produced to you and have called it a violation of the stipulated protocol.

**10. Judicial Intervention vs. Good-Faith Resolution:** You indicated that, given this impasse, you feel there is no option but to escalate this to the Court and request an *in camera* review of the withheld documents. I explicitly stated that we should exhaust every possible approach to find a middle ground and avoid burdening the Court with a procedural discovery dispute. My proposals today—using the neutral expert to filter data, or viewing the metadata securely via the Relativity platform—were made precisely to resolve this without requiring judicial intervention.

**11. Final Plea for Collaborative Resolution:** Before concluding the call, I made a direct plea to you to propose your own boundaries or criteria if you found my compromises unacceptable. I explicitly asked you to "help me out" and "come up with something" that establishes allowed and disallowed interpretation for these sensitive files so we could make progress. My stated goal was—and remains—to find a negotiated solution rather than rushing to the Court. However, you did not offer any alternative framework or compromise, maintaining only your initial demand.

*Note on Screen Share:* In total, I showed you approximately five documents during today's screen share. As agreed prior to this demonstration, **this disclosure was made strictly for confidence-building purposes and is protected under a clawback agreement**, such that my showing you these documents does not constitute a waiver of any applicable privilege.

**Conclusion:** Because you refuse to accept a neutral third party performing the metadata filtering, and I cannot turn over privileged metadata directly to opposing counsel, we are at a standstill on this issue. I will consider your request on the privilege log once I get the details. I have asked you to consider the option of engaging the neutral iDS service.

Please let me know if you believe this summary inaccurately reflects your position from today's call.

Sincerely,

Gowtham Rao

[Quoted text hidden]

---

**Oslick, Jacob** <JOslick@seyfarth.com> Tue, Jul 14, 2026 at 12:50 PM
To: Gowtham Rao <gowthamrao.litigation@gmail.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Gowtham,

Given the length of your email below, we do not believe that it is productive to provide a lengthy point-by-point response. Accordingly, we have largely limited our responses to places where you have mischaracterized or misrepresented the substance of our discussion.

To move the matter along, here is our final “offer,” the substance of which was already orally discussed with you on Friday. Please provide us with a firm “yes” or “no” no later than 5 p.m. on Wednesday.

1. For the documents that you claim are privileged, please provide a privilege log that is compliant with the kinds of privilege logs that would ordinarily be produced in discovery. We have suggested that you utilize the very metadata included on the replacement Withheld Inspection Documents Report, rather that creating it manually from scratch, but the privilege log itself must include the following information: (a) date-related information, such as created, modified, or sent dates, (b) identification of all individual or accounts on each communication/document (whether they are a sender, a recipient, a cc, or a bcc or, as to a non-communication, the drafters/editors of a document) and identifying the individuals who are attorneys and those who are not (such as by appending an asterisk to the name of the attorneys); (c) the kind of document (e.g., email, attachment, Word document, Excel, PowerPoint, text message); (d) the type of privilege asserted (e.g., attorney-client, spousal); (e) a description of the document’s contents sufficient to assess the privilege claim. The privilege log should be provided in Microsoft Excel format in order to facilitate us being able to search and analyze the data.

   A. EPAM will review your privilege claims, and identify those documents where it contests the privilege claims.

   B. The parties will then meet-and-confer regarding the documents at issue.

   C. If the parties cannot resolve their disagreements over your privilege claims, EPAM will prepare a discovery letter seeking the Court’s intervention.

2. For the documents that you do not claim as privileged, we propose the following:

A. You will take another pass through these documents, as we suggested on Friday when you identified a document that you had mistakenly failed to identify as privileged, and reconsider your previous decision to withhold the documents. You will release to Seyfarth any documents that you mistakenly withheld.

B. iDS will perform a review of these documents and identify any documents that it concludes are <u>exclusively</u> personal in nature (e.g., family photographs, vacation plans). For the avoidance of doubt, two kinds of examples that we discussed on Friday <u>would not</u> qualify as exclusively personal: (i) complaints to your friends about EPAM and/or your termination from EPAM, and (ii) patent applications that you filed. Both of these were identified as hits from the agreed search terms and both of these may contain EPAM Confidential Information and IP and we cannot know that unless we view the documents.

C. The documents that iDS does not deem exclusively personal will be released to Seyfarth, on a “Seyfarth only” basis. Seyfarth will not, at this time, share these documents with anyone at EPAM.

D. Seyfarth will then make a list of the documents that it deems to be relevant to this case in some form, and which it believes should be shared with EPAM. Within three days after Seyfarth provides this list, you will identify those documents that you insist that Seyfarth cannot share with EPAM because they are not relevant to the facts, issues, and/or claims in this matter. Within three days after you provide these counter-designations, the parties will meet-and-confer to resolve their disagreement.

E. For any documents that the parties cannot agree on, Seyfarth will prepare a discovery letter seeking the Court’s intervention.