UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

*EPAM Systems, Inc. v. Gowtham Adamane Rao*
Case No. 2:25-cv-06260-WB (E.D. Pa.)

# EXHIBIT E

July 10-14, 2026 Communications
Concerning the withheld inspection documents, the July 10, 2026 screenshare (including a 107-page draft settlement agreement), and EPAM's demands concerning the withheld metadata

*Excerpts (pp. 11-15) of thread: EPAM vs Rao - 2026-07-08 - Meet and Confer*

- (2) identify documents released to Relativity that we believe contain EPAM Confidential Information and/or Work.

- The parties will then meet and confer to resolve any remaining disputes regarding those challenges, if any.

  - Any documents that the parties agree are not protected by the attorney-client privilege or work product doctrine, or agree contain EPAM Confidential Information and/or Work will be released to Relativity if they are not already available.

  - Any documents that the parties agree are protected by the attorney-client privilege or work product doctrine, or agree do not contain EPAM Confidential Information and/or Work will be removed from Relativity.

- If the parties cannot resolve all disputes regarding the documents on the Withheld Inspection Documents Report, they will be raised with the Court.

We look forward to your response and a productive discussion.

Thanks

Matt

**Matthew Christoff** | Partner | Seyfarth Shaw LLP
eDiscovery and Information Governance, EnCE
233 S. Wacker Drive | Suite 8000 | Chicago, Illinois 60606-6448
Direct: +1-312-460-5315
MChristoff@seyfarth.com | www.seyfarth.com

Seyfarth

[Quoted text hidden]

---

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Fri, Jul 10, 2026 at 1:34 PM
To: "Oslick, Jacob" <JOslick@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Got it. It has been turned off. Come back
[Quoted text hidden]

---

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Fri, Jul 10, 2026 at 4:25 PM
To: "Oslick, Jacob" <JOslick@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Matt, Jacob -

I am writing to summarize our meet and confer today regarding the Withheld Inspection Documents Report. Based on our discussion, it appears we have made some progress but still have a ways to go before we break the impasse.

To document our respective positions:

**1. Good faith screen share:** In a good-faith effort to build trust, I conducted a targeted screen share of documents from the withheld log. We looked at a document tagged with the "Project Synapse" identifier. As I demonstrated on the screen, this 107-page document was not EPAM intellectual property or source code; rather, it was a clearly privileged attorney-client communication regarding settlement. I understand your position is that, without a page-by-page review, you cannot be certain the material lacks EPAM confidential information or IP. You asserted that even attorney-client privileged communications are subject to remediation if they contain EPAM confidential information or IP, and that if a dispute arises over such a document, only the Court can make the final judgment.

**2. Failure to Define "Confidential Information":** Throughout our discussion, you failed to define or describe the objective criteria for what constitutes EPAM confidential information or intellectual property. In fact, when I asked you to propose boundaries or categories for review, you admitted that coming up with such categories is a "difficult if not impossible request" because you "don't know" what, wrt EPAM confidential information or IP, you are looking for. This confirms my concern that EPAM is using a retroactive, "we'll know it when we see it" standard, which makes objective, good-faith negotiation impossible.

**3. EPAM's Demand for Metadata:** You stated that EPAM cannot meaningfully evaluate or challenge my withheld designations without receiving to its physical possession the full metadata for these documents in its possession. You indicated that receiving this metadata is EPAM's "compromise" position.

**4. My Position on Metadata:** I reiterated that I cannot provide you with the full metadata log for the withheld documents. Doing so would improperly expose my privileged communication patterns, my associations, and my core legal strategy. Given the overinclusive nature of the raw forensic hits—which resulted from a broad, unencumbered search strategy unilaterally designed by EPAM—handing over this metadata is tantamount to handing over my privileged work product.

**5. Rejection of Neutral Third-Party Compromise:** To bridge this gap, I proposed a compromise: we could instruct the neutral forensic examiner (iDS) to perform metadata filtering on their end. For example, iDS could isolate and exclude communications exclusively between myself and my spouse, or myself and my attorneys. This would narrow the pool without exposing my privileged metadata to EPAM. I also proposed that the neutral review the content of the file, based on an agreed-upon set of rules we formulate, to identify information that is genuinely EPAM confidential information or IP. You explicitly rejected this proposal, stating you did not want to incur iDS costs for an "Excel filtering process" that you believe EPAM should do itself—even after I noted that the cost of having iDS perform this neutral filtering (estimated to be less than 1,000$) would likely be significantly less than the billing rates of two senior Seyfarth attorneys performing the same task (estimated more than 10,000$s, at 3,500$/hr for Jacob and 1,500$/hr for Matt).

**6. Rejection of the Relativity Platform Compromise:** When it became clear you would not agree to iDS performing the filtering, I offered a second compromise. I asked if providing the limited metadata within the secure confines of the neutral iDS Relativity platform—allowing you to view and filter the metadata, but restricting you from downloading or taking physical possession of the file onto Seyfarth or EPAM servers—would be acceptable. You dismissed this proposal as well, characterizing it merely as an unnecessary "additional step." This demonstrates that your goal is not simply to review the metadata to validate the withholdings as you claim, but rather to take permanent physical possession of it.

**7. Privilege Log Request:** You stated it is reasonable to ask for a privilege log, and I agreed to consider producing one. You indicated it would require some limited metadata, and I look forward to receiving your email detailing those specific parameters.

**8. Impasse Regarding Non-Privileged Documents:** Regarding documents that are not marked as privileged, we have also reached an impasse. During the screen share, I showed you a document containing a patent application I filed with the Government. You stated EPAM would still want to review this document based on your suspicion that I may have used derivatives of EPAM property to file the patent.

**9. Proportionality and Unreviewed Data:** During our call, we discussed the overall scope of the forensic hits. Out of approximately 85,000 total hits generated by EPAM's unencumbered search terms, I have granted you full access to ~84,000 of them. I noted that I only withheld a very small fraction of the total documents—primarily to protect highly personal and privileged information (such as family photos, communications with my spouse, and attorney-client work product). You had admitted on a prior call that EPAM has not even performed a file name review of the ~79,000 documents you already possess. It defies logic and proportionality for EPAM to aggressively demand access to a tiny subset of highly sensitive, withheld documents when you have not even bothered to review the tens of thousands of documents I have already produced to you and have called it a violation of the stipulated protocol.

**10. Judicial Intervention vs. Good-Faith Resolution:** You indicated that, given this impasse, you feel there is no option but to escalate this to the Court and request an *in camera* review of the withheld documents. I explicitly stated that we should exhaust every possible approach to find a middle ground and avoid burdening the Court with a procedural discovery dispute. My proposals today—using the neutral expert to filter data, or viewing the metadata securely via the Relativity platform—were made precisely to resolve this without requiring judicial intervention.

**11. Final Plea for Collaborative Resolution:** Before concluding the call, I made a direct plea to you to propose your own boundaries or criteria if you found my compromises unacceptable. I explicitly asked you to "help me out" and "come up with something" that establishes allowed and disallowed interpretation for these sensitive files so we could make progress. My stated goal was—and remains—to find a negotiated solution rather than rushing to the Court. However, you did not offer any alternative framework or compromise, maintaining only your initial demand.

*Note on Screen Share:* In total, I showed you approximately five documents during today's screen share. As agreed prior to this demonstration, **this disclosure was made strictly for confidence-building purposes and is protected under a clawback agreement**, such that my showing you these documents does not constitute a waiver of any applicable privilege.

**Conclusion:** Because you refuse to accept a neutral third party performing the metadata filtering, and I cannot turn over privileged metadata directly to opposing counsel, we are at a standstill on this issue. I will consider your request on the privilege log once I get the details. I have asked you to consider the option of engaging the neutral iDS service.

Please let me know if you believe this summary inaccurately reflects your position from today's call.

Sincerely,

Gowtham Rao

[Quoted text hidden]

---

**Oslick, Jacob** <JOslick@seyfarth.com> Tue, Jul 14, 2026 at 12:50 PM
To: Gowtham Rao <gowthamrao.litigation@gmail.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Christoff, Matthew" <MChristoff@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, "Yu, James" <JYu@seyfarth.com>

Gowtham,

Given the length of your email below, we do not believe that it is productive to provide a lengthy point-by-point response. Accordingly, we have largely limited our responses to places where you have mischaracterized or misrepresented the substance of our discussion.

To move the matter along, here is our final "offer," the substance of which was already orally discussed with you on Friday. Please provide us with a firm "yes" or "no" no later than 5 p.m. on Wednesday.

1. For the documents that you claim are privileged, please provide a privilege log that is compliant with the kinds of privilege logs that would ordinarily be produced in discovery. We have suggested that you utilize the very metadata included on the replacement Withheld Inspection Documents Report, rather that creating it manually from scratch, but the privilege log itself must include the following information: (a) date-related information, such as created, modified, or sent dates, (b) identification of all individual or accounts on each communication/document (whether they are a sender, a recipient, a cc, or a bcc or, as to a non-communication, the drafters/editors of a document) and identifying the individuals who are attorneys and those who are not (such as by appending an asterisk to the name of the attorneys); (c) the kind of document (e.g., email, attachment, Word document, Excel, PowerPoint, text message); (d) the type of privilege asserted (e.g., attorney-client, spousal); (e) a description of the document's contents sufficient to assess the privilege claim. The privilege log should be provided in Microsoft Excel format in order to facilitate us being able to search and analyze the data.

    A. EPAM will review your privilege claims, and identify those documents where it contests the privilege claims.

    B. The parties will then meet-and-confer regarding the documents at issue.

    C. If the parties cannot resolve their disagreements over your privilege claims, EPAM will prepare a discovery letter seeking the Court's intervention.

2. For the documents that you do not claim as privileged, we propose the following:

A. You will take another pass through these documents, as we suggested on Friday when you identified a document that you had mistakenly failed to identify as privileged, and reconsider your previous decision to withhold the documents. You will release to Seyfarth any documents that you mistakenly withheld.

B. iDS will perform a review of these documents and identify any documents that it concludes are <u>exclusively</u> personal in nature (e.g., family photographs, vacation plans). For the avoidance of doubt, two kinds of examples that we discussed on Friday <u>would not</u> qualify as exclusively personal: (i) complaints to your friends about EPAM and/or your termination from EPAM, and (ii) patent applications that you filed. Both of these were identified as hits from the agreed search terms and both of these may contain EPAM Confidential Information and IP and we cannot know that unless we view the documents.

C. The documents that iDS does not deem exclusively personal will be released to Seyfarth, on a "Seyfarth only" basis. Seyfarth will not, at this time, share these documents with anyone at EPAM.

D. Seyfarth will then make a list of the documents that it deems to be relevant to this case in some form, and which it believes should be shared with EPAM. Within three days after Seyfarth provides this list, you will identify those documents that you insist that Seyfarth cannot share with EPAM because they are not relevant to the facts, issues, and/or claims in this matter. Within three days after you provide these counter-designations, the parties will meet-and-confer to resolve their disagreement.

E. For any documents that the parties cannot agree on, Seyfarth will prepare a discovery letter seeking the Court's intervention.

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

---

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Friday, July 10, 2026 4:26 PM
**To:** Oslick, Jacob <JOslick@seyfarth.com>
**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Christoff, Matthew <MChristoff@seyfarth.com>; Sarah Lugar <Sarah_Lugar@epam.com>; Yu, James <JYu@seyfarth.com>
**Subject:** Re: EPAM vs Rao - 2026-07-08 - Meet and Confer

Matt, Jacob -

I am writing to summarize our meet and confer today regarding the Withheld Inspection Documents Report. Based on our discussion, it appears we have made some progress but still have a ways to go before we break the impasse.

To document our respective positions:

**1. Good faith screen share:** In a good-faith effort to build trust, I conducted a targeted screen share of documents from the withheld log. We looked at a document tagged with the "Project Synapse" identifier. As I demonstrated on the screen, this 107-page document was not EPAM intellectual property or source code; rather, it was a clearly privileged attorney-client communication regarding settlement. I understand your position is that, without a page-by-page review, you cannot be certain the material lacks EPAM confidential information or IP. You asserted that even attorney-client privileged communications are subject to remediation if they contain EPAM confidential information or IP, and that if a dispute arises over such a document, only the Court can make the final judgment.

- You "demonstrated" no such thing. To be clear, you showed us a portion of a single page of a 107-page document. We agreed that the portion you showed us appeared, at first glance, to be privileged. We noted that it was unlikely that a draft settlement agreement would total 107 pages, and commented that we did not know whether the entire document was privileged based on the fraction of a page we saw. You are correct that, under the Forensic Protocol, even privileged documents that contain EPAM Confidential Information and IP would need to be remediated. For example, you are not permitted to keep copies of EPAM Confidential Information and IP simply because you attached these documents to an email to an attorney – that would defeat the point of remediation.

**2. Failure to Define "Confidential Information":** Throughout our discussion, you failed to define or describe the objective criteria for what constitutes EPAM confidential information or intellectual property. In fact, when I asked you to propose boundaries or categories for review, you admitted that coming up with such categories is a "difficult if not impossible request" because you "don't know" what, wrt EPAM