UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

*EPAM Systems, Inc. v. Gowtham Adamane Rao*
Case No. 2:25-cv-06260-WB (E.D. Pa.)

---

# EXHIBIT F

July 8-9, 2026 Correspondence
Documenting Defendant's request for comprehensive download logs
and EPAM counsel's written refusal

*Excerpts (pp. 1-4) of thread: EPAM vs Rao - 2026-07-08 - Meet and Confer*

Gmail Gowtham Rao <gowthamrao.litigation@gmail.com>

## EPAM vs Rao - 2026-07-08 - Meet and Confer

20 messages

**Gowtham Rao** <gowthamrao.litigation@gmail.com> Wed, Jul 8, 2026 at 6:16 PM
To: "Christoff, Matthew" <MChristoff@seyfarth.com>
Cc: Gowtham Rao <gowthamrao@gmail.com>, "Oslick, Jacob" <JOslick@seyfarth.com>, Sarah Lugar <Sarah_Lugar@epam.com>, James Yu <jyu@seyfarth.com>

Hi Matt and Jacob,

To memorialize our discussion from today's meet and confer regarding the Forensic Protocol:

**1. Extra-Protocol Requests:** We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the "four corners" of our signed Forensic Protocol (which explicitly limits access to "counsel for EPAM"). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

**2. The Direct Solution for Technical Review:** While you claimed you lack the technical expertise to review the documents, I provided a direct and obvious solution that complies with the explicit language of the protocol. Seyfarth is a large, well-resourced law firm with its own technical personnel (or the ability to hire independent technical contractors). These individuals fall squarely under the protected umbrella of "counsel for EPAM." If technical training is required, EPAM employees are free to train Seyfarth's technical resources to conduct the review. This is the contemplated approach allowed by the protocol. Your refusal to utilize this obvious solution suggests a preference for extra-contractual access over actual protocol compliance.

**3. Request for Download Logs:** As discussed, you agreed to take my request for the comprehensive download logs (e.g., the Git logs, not just the SharePoint logs) back to EPAM for consideration as part of our negotiation regarding your extra-protocol requests.

**4. The 79,000 Un-Promoted Files and Protocol Non-Compliance:** During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III (b) (ii) of the Forensic Protocol, which mandates:

> "Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work..."

By **admitting** that you have not even attempted to determine if these 79,000 files contain EPAM confidential information or work product, you are confirming that EPAM has failed to comply with this mandatory step. It has now been 5 months since that 5-day deadline expired.

EPAM's refusal to definitively state whether it believes these 79,000 files contain confidential information—while simultaneously withholding them—prejudices my ability to appropriately manage my defense. This ongoing and intentional delay in fulfilling the basic requirements of the protocol provides clear grounds for seeking an adversarial determination from the court.

Please confirm whether EPAM intends to complete its review of these files pursuant to Section III (b) (ii), or if you are formally abandoning any claims regarding this specific subset of data.

**5. Path to Global Resolution**
As I stated on our call, I remain committed to finding a path to lasting peace. My primary concern in this litigation is managing the risk associated with the Defend Trade Secrets Act claims (Counts 1 and 2).

To that end, I want to reiterate my global resolution offer, which has been on the table for months: I unconditionally affirm that I will continue to comply with my Employment Covenant Agreement. I make this affirmation irrespective of the findings of the forensic protocol, and irrespective of whether my personal desktop is found to have—or may have had—EPAM Confidential Information or Intellectual Property on it.

If EPAM will simply confirm today that they did not find EPAM Trade Secrets within the ~85,000 forensic hits, I am willing to allow a blind reset of my computer to provide EPAM with permanent peace of mind regarding any remaining

Confidential Information, ending this dispute.

I have now made multiple reasonable offers to resolve this matter globally. EPAM's continued refusal to even consider these offers—while simultaneously refusing to clear the forensic hits of Trade Secret claims and failing to comply with mandatory protocol deadlines—suggests this litigation is being prolonged unnecessarily.

**6. Retaliation and Bad Faith:** As stated in my formal pleadings, EPAM's allegations of misappropriation and the subsequent weaponization of the federal judicial system through this lawsuit constitute ongoing, retaliatory actions designed to penalize, silence, and financially ruin me for my protected whistleblowing disclosures. Your refusal today to utilize protocol-compliant solutions, while demanding extra-contractual access and ignoring your own protocol deadlines, only further evidences this ongoing retaliatory campaign. You have also been notified today that you are actively causing me documented physical and mental health harm. I have advised you to consider ethics review within Seyfarth.

Regards,
Gowtham Rao

---

**Oslick, Jacob** <JOslick@seyfarth.com> Thu, Jul 9, 2026 at 5:10 PM
To: Gowtham Rao <gowthamrao@gmail.com>, Gowtham Rao <gowthamrao.litigation@gmail.com>
Cc: "Christoff, Matthew" <MChristoff@seyfarth.com>

Gowtham,

Your email below is not productive. Our responses are below, in red.

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

---

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Wednesday, July 8, 2026 6:17 PM
**To:** Christoff, Matthew <MChristoff@seyfarth.com>
**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Oslick, Jacob <JOslick@seyfarth.com>; Sarah Lugar <Sarah_Lugar@epam.com>; Yu, James <JYu@seyfarth.com>
**Subject:** EPAM vs Rao - 2026-07-08 - Meet and Confer

Hi Matt and Jacob,

To memorialize our discussion from today's meet and confer regarding the Forensic Protocol:

**1. Extra-Protocol Requests:** We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the "four corners" of our signed Forensic Protocol (which explicitly limits access to "counsel for EPAM"). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

I cannot fathom what you believe you will gain through these kinds of gratuitous misrepresentations. "We" established no such thing. While "you" took that position, we (EPAM) forcefully and repeatedly set forth our understanding that EPAM is entitled, under the Forensic Protocol, to have EPAM's technical employees (not just its attorneys) review the documents at-issue. Further, we made it clear that, if we could not reach an agreement on this issue, that we would go to the Court. As we are at an impasse on this issue that is what we will do now. And we will seek our fees for being forced to file such an application.

Contrary to your supposition, nothing in the Protocol limits access to any of the forensic reports or documents to only "counsel for EPAM." To the contrary, it imposes no access or distribution restrictions at all, so long as EPAM uses the documents for "the purpose of this Litigation." (Forensic Protocol Sec. VI(c).) Further, it would make no sense to restrict access or distribution to the documents only to EPAM attorneys. EPAM's attorneys do not have the same first-hand knowledge as its technical people about what constitutes "Confidential Information" and "Work"(within the Protocol's meaning) when it comes to specific documents that are technical in nature or regarding certain projects that EPAM's attorneys would not be directly familiar with, absent consultation within the business.

**2. The Direct Solution for Technical Review:** While you claimed you lack the technical expertise to review the documents, I provided a direct and obvious solution that complies with the explicit language of the protocol. Seyfarth is a large, well-resourced law firm with its own technical personnel (or the ability to hire independent technical contractors). These individuals fall squarely under the protected umbrella of "counsel for EPAM." If technical training is required, EPAM employees are free to train Seyfarth's technical resources to conduct the review. This is the contemplated approach allowed by the protocol. Your refusal to utilize this obvious solution suggests a preference for extra-contractual access over actual protocol compliance.

Your proposal is not "contemplated" by the protocol. It is nonsensical and, like your other proposals and conduct during the Forensic Protocol, appears designed primarily to magnify EPAM's costs while frustrating its ability to gain meaningful information from the documents, or negotiate in good faith regarding your claims that <u>none</u> of the documents identified for remediation contain EPAM's Confidential Information and/or Work. There is no feasible way for EPAM's technical employees to "train" outside contractors on every kind of document that might be EPAM Confidential Information or Work. That kind of knowledge is gained by actually working at EPAM day-by-day, and by encountering, in the ordinary course of business, the kinds of documents that you wrongfully downloaded. Your refusal to permit EPAM's technical employees to review the documents is baffling – it is the technical people, not EPAM attorneys or outside contractors, who likely *drafted* and/or *received* many of the documents at issue as part of their jobs, and who could provide the best information to counsel about what the documents are, **since you are taking the position that not a single one is EPAM Confidential Information or Work**. Your proposal also introduces extreme inefficiencies regarding the review of these documents. For example, if an outside contractor had a question regarding a particular technical document, your proposal would seemingly forbid them from showing the document. Instead, the contractor would be forced to describe highly technical materials, *including source code*, in a narrative fashion. Further, your proposal would also be extremely expensive. Put simply, after victimizing EPAM by wrongfully downloading tens of thousands of files, your proposal is to victimize EPAM again by forcing it to incur enormous unnecessary costs just to try to fix the mess that you created. We won't agree to this.

**3. Request for Download Logs:** As discussed, you agreed to take my request for the comprehensive download logs (e.g., the Git logs, not just the SharePoint logs) back to EPAM for consideration as part of our negotiation regarding your extra-protocol requests.

That is *not* what we "agreed" to. Rather, we reiterated that EPAM is entitled to have its technical people review the documents under the Forensic Protocol. However, we sought clarity about what you wanted in exchange for dropping your groundless objections and consenting to iDS giving these people access to the Relativity environment. You first mentioned the production of certain logs. We explained (and you agreed) that you weren't entitled to these under the Protocol. However, we are obligated to take any offer back to our client. So, if your proposal was limited to demanding the logs, we stated that we would take your proposal back to EPAM. We did not make any representations about whether EPAM would deem your offer to be acceptable.

In any event, you quickly made it clear that this was *not* your offer, so any such discussions are moot. You insisted that, in addition to the logs, you also demanded one of the following:

1. EPAM's analysis about why it sought the promotion of certain documents for review in Relativity, while not seeking to promote for review approximately 79,000 other documents;
2. EPAM's affirmative statement that it has no reasonable belief that the other 79,000 documents contained its trade secrets or confidential information.

We explained that we could not, under any circumstances, agree to either demand. As to your first demand, the information you seek is protected by the attorney-client privilege and work product doctrine. Essentially, you are seeking our legal analysis about why we considered certain documents to be more valuable and worthy of review than other documents. You aren't entitled to that.

As to your second demand, we noted – as you should have already known for months – that the 79,000 documents that were *not promoted for review* were, unsurprisingly, not reviewed. This does not mean that we can make any affirmative statements about what the documents do or do not contain. Our analysis about what to promote to review was based on the limited information (such as metadata) contained in the Initial Reports, not the full contents of the documents. If this matter does not resolve, which seems likely at this point, we may learn information later in discovery which will provide a basis for reviewing these documents and assessing whether they contain EPAM Confidential Information or Work, let alone other documents from your devices and accounts that were outside the scope of the targeted search parameters that resulted in the forensic reports prepared by iDS from which the promotion sets were identified. For example, they may contain derivatives of EPAM Confidential Information or Work, with enough superficial information changed in order to disguise (on something like the Initial Reports) the origin of the substantive information they contain. Or they could contain Work that you failed to disclose to EPAM and, as such, would not be detectible through the limited information in the Initial Reports. At any rate, as previously discussed, EPAM's promotion of certain files was based on a logical, reasonable, and good faith analysis of metadata based upon the information it knew at the time and not review of the content of every single file, and its decision to not promote certain files under the protocol does not change your obligations in the event any of those files contain Confidential Information or Work. As we have repeated, the purpose of the forensic protocol is for the targeted identification and remediation of EPAM's Confidential Information and/or Work.

**4. The 79,000 Un-Promoted Files and Protocol Non-Compliance:** During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III (b) (ii) of the Forensic Protocol, which mandates:

> "Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work..."

By **admitting** that you have not even attempted to determine if these 79,000 files contain EPAM confidential information or work product, you are confirming that EPAM has failed to comply with this mandatory step. It has now been 5 months since that 5-day deadline expired.

EPAM's refusal to definitively state whether it believes these 79,000 files contain confidential information—while simultaneously withholding them—prejudices my ability to appropriately manage my defense. This ongoing and intentional delay in fulfilling the basic requirements of the protocol provides clear grounds for seeking an adversarial determination from the court.

Please confirm whether EPAM intends to complete its review of these files pursuant to Section III (b) (ii), or if you are formally abandoning any claims regarding this specific subset of data.

Your reading of the Forensic Protocol is groundless. There is no requirement in the Forensic Protocol for EPAM to review each-and-every document. Quite the opposite, the Forensic Protocol's framework first required EPAM to review Initial Reports containing information such as metadata, and to use those reports to identify the *subset* of documents to review, *i.e.*, the subset where, based on the limited information and metadata contained in the Initial Reports, it reasonably believes the subset contains Confidential Information and/or Work. EPAM did precisely that. This step happens *before* EPAM is entitled to review any of the documents themselves. In fact, we were shocked to learn that you were under the mistaken impression that we have access to the content from all documents identified in the forensic reports. If that were the case, then there would obviously have been no requirement that the documents be released to you for review first and certainly there would be no further dispute regarding the Withheld Inspection Documents Report, as all documents would have been made available. In other words, the Protocol contemplates that EPAM would