# STIPULATED FORENSIC INSPECTION PROTOCOL AGREEMENT

This Stipulated Forensic Inspection Protocol Agreement (the "Agreement") is made and entered into as of December 12, 2025 ("Effective Date"), by and between Gowtham Rao ("Rao") and EPAM Systems, Inc. ("EPAM"). EPAM and Rao are referred to herein individually as a "Party" and collectively as the "Parties."

## I. DEFINITIONS

a. **"Confidential Information"** means

All information defined as "Confidential Information" in the November 12, 2024 Employee Covenants Agreement signed by Rao;

b. **"Work"** means all information defined as "Work" in the November 12, 2024 Employee Covenants Agreement signed by Rao.

c. **"Device Sources"** shall be defined as all workstations and external storage devices in the possession, custody, or control of Rao to/on which Rao may have transferred, accessed, and/or stored EPAM Confidential Information and/or the Work, including devices bearing the following serial numbers:

i. Rao's MSI Codex R2 Desktop Computer
ii. Rao's HP Omnibook 7 Laptop
iii. Rao's Silver Acer Laptop
iv. Rao's Black Asus Laptop
v. Rao's Samsung S23 Cellphone (including associated cloud accounts, such as iCloud, to which the device may have synchronized messages, files, or other data, or made backups)

d. **"Email Sources"** shall be defined as all email accounts in the possession, custody, or control of Rao which Rao may have used to send, receive, and/or store EPAM Confidential Information and/or the Work, including, but not limited to:

i. Rao's Google Gmail Accounts as follows:

1. gowthamrao@gmail.com
2. subscriptionrao@gmail.com
3. raosubscription@gmail.com
4. coreason001@gmail.com

ii. Rao's CoReason AI Account: Gowtham.rao@coreason.ai

e. **"Cloud Source"** shall be defined as all cloud-based storage accounts in the possession, custody, or control of Rao which Rao may have used to upload, download, and/or store EPAM Confidential Information and/or the Work, including the following:

   i. Rao's Personal GitHub/GitLab account

   ii. Rao's CoReason AI GitHub/GitLab account

   iii. All Google Drives or other Google service data (including Gemini if extractable) associated with Email Sources listed in Section I.d.i above

   iv. Rao's Microsoft OneDrive Account associated with the username: gowthamrao@hotmail.com

f. "**Forensic Image**" shall be defined as a full forensic bitstream image of a device.

## II. COLLECTION AND IMAGING

a. Absent another mutually agreed upon date, within two (2) business days of the Effective Date, Rao and/or counsel for Rao will transfer and/or make available the Device Sources to third-party forensic vendor iDiscovery Solutions, Inc. ("Forensic Vendor"), along with any associated passwords or credentials necessary to access the Device Sources. Upon receipt, Forensic Vendor will create a Forensic Image of the Device Sources and create and maintain associated chain of custody documentation. The Forensic Image will be created and validated through the use of industry-standard equipment and best practices methodology and shall include the generation of MD5 hash values or other industry standard hash values, if applicable. Forensic Vendor will take all reasonable steps to identify and recover deleted files, file fragments, and corresponding forensic artifacts from the Forensic Images. The Forensic Images will not be made available to EPAM or its counsel; however, upon request, a copy of the Forensic Images may be made available to Rao's counsel and/or a forensic vendor hired by Rao or Rao's counsel at Rao's expense. The Forensic Images will be retained by the Forensic Vendor until the litigation captioned *EPAM Systems, Inc. v. Rao*, Civil Action No. 2:25-cv-06260(the "Litigation") is resolved or otherwise agreed by the Parties, at which point they will be deleted in a secure manner unless otherwise agreed by the Parties.

b. Within two (2) business days of the Effective Date, counsel for Rao will provide any associated passwords or credentials necessary to access the Email Sources and Cloud Sources to Forensic Vendor. Upon receipt, Forensic Vendors will promptly collect in a forensically sound manner any and all information from the Email Sources and Cloud Sources, including any login, synchronization, and

access history of the account itself (if available)[1] ("Forensic Collection"). The Forensic Collection will be created and validated through the use of industry-standard equipment and best practices methodology and shall include the generation of MD5 hash values or other industry-standard hash values, if applicable. Forensic Vendor will take all reasonable steps to identify and recover deleted files, file fragments, and corresponding forensic artifacts from the Forensic Collection. The Forensic Collection will not be made available to EPAM or its counsel; however, upon request, a copy of the Forensic Collection may be made available to Rao's counsel and/or a forensic vendor hired by Rao or Rao's counsel at Rao's expense. The Forensic Collection will be retained by the Forensic Vendor until the Litigation is resolved or otherwise agreed by the Parties, at which point they will be deleted in a secure manner unless otherwise agreed by the Parties.

## III. REPORTING

### a. Preparation of Initial Reports

i. Within ten (10) business days of the receipt of the Device Sources and passwords or credentials for the Email Sources and Cloud Sources, Forensic Vendor will prepare reports containing the following information extracted from the Forensic Images and forensically sound collections, if available, and distribute those reports to counsel for Rao:

1. For each Device Source, the manufacturer, model, product and serial number collected from the device's firmware, the serial number physically printed on the device, capacity, and physical description;

2. For each Device Source and Cloud Source, a listing of each file created, modified, or accessed on or after September 1, 2025 that contain any of the search terms identified in Exhibit A, match the filenames identified in Exhibit B, and/or match the MD5 hash values identified in Exhibit C, including the following metadata fields, if available: filename, file path, file extension, date created (system-level and file-level), date modified (system-level and file-level), date accessed (system-level and file-level), the file size, an MD5 hash value or other industry-standard hash value, the date the file was deleted (if applicable), the search term(s) from Exhibit A contained in the file (if any), whether the filename was located within Exhibit B, whether the MD5 hash value was located within Exhibit C, and a unique numerical identifier;

[1] To the extent login, synchronization, and access history of a Source is not collected using the Forensic Vendor's collection software, the Forensic Vendor will capture this information using other, reasonable methods, such as exporting that information from the Source's user interface or creating screenshots of that information.

3. For each computer, a listing of all removable devices attached to the computer on or after September 1, 2025, including the following information: the manufacturer, model, product and serial number, including volume serial number if available, and volume label, collected from the removable device's firmware, the date and time the device was attached to the computer, and whether those device were included in the Device Sources;

4. For each computer, a listing identifying all forensic artifacts and associated metadata relating to file and folder activity on or after September 1, 2025, including but not limited to LNK files, shell bags, and/or jump lists;

5. For each computer, whether there is evidence of the use of cloud-based storage accounts on or after September 1, 2025, including but not limited to Dropbox, YouSendIt, SugarSync, Apple iCloud, Microsoft OneDrive, Box.net, Google Drive, Sharepoint, Sharefile, GitHub, and GitLab, and if so, the name of the cloud-based storage service, and a listing of any files within a folder whose purpose is to synchronize to or from the cloud-based storage account, including the following metadata fields, if available: filename, file path, date created (system-level and file-level), date modified (system-level and file-level), date accessed (system-level and file-level), the file size, an MD5 hash value or other industry standard hash value, whether the file was deleted or identified for deletion, the date the file was deleted (if applicable), and a unique numerical identifier;

6. For each Email Source, a listing of each email sent or received on or after September 1, 2025 that contain any of the search terms identified in Exhibit A, match the filenames identified in Exhibit B, and/or match the MD5 hash values identified in Exhibit C, including the following metadata fields, if available: subject, from, to, CC, BCC, date sent, the file path of the email, the file name of any attachments, the file extensions of any attachments, the file size of any attachments, the MD5 hash value or other industry-standard hash value of any attachments, the search term(s) from Exhibit A contained in the file (if any), whether the filename was located within Exhibit B, whether the MD5 hash value was located within Exhibit C, and a unique numerical identifier;

7. For each Cloud Source, the name of the service, a listing of any electronic devices that the account identifies as having synchronized, accessed, copied, or replicated documents from or to, and whether those devices were included in the Devices Sources;

8. For each Cloud Source whose primary purpose is to store and/or manage source code, such as GitHub or GitLab, all available audit history on or after September 1, 2025 related to source code uploads, transfers, or revisions;

9. For each mobile device, a listing of installed programs and/or software on the device whose primary purpose involves: (1) messaging (SMS, MMS, text, chat, and/or email); (2) synchronization, storage, or transfer of documents or data (such as to cloud-based storage platforms); (3) the secure deletion or wiping of electronically stored information; or (4) creating or managing audio or video recordings;

10. For each mobile device, a listing of all available text messages, multimedia messages, and chat messages available in default or third-party messaging applications on or after September 1, 2025 that contain any of the search terms identified in Exhibit A, including all available metadata and attachments;

11. For each mobile device, a listing of all available audio and video recordings created, modified, or accessed on or after September 1, 2025 that contain any of the search terms identified in Exhibit A.

12. For each Device Source, whether there is any evidence of the use of software whose primary purpose is to forensically delete or render unrecoverable electronically stored information, and if so, the name of the software, the date the software was used, and any additional evidence of its usage (if applicable); and

13. For each Device Source, a listing of any documents printed on or after September 1, 2025, including the following metadata fields, if available: filename, file path, file extension, date created (system-level and file-level), date modified (system-level and file-level), date accessed (system-level and file-level), date printed, the file size, an MD5 hash value or other industry-standard hash value, the date the file was deleted (if applicable), the search term(s) from Exhibit A contained in the file (if any), whether the filename was located within Exhibit B, whether the MD5 hash value was located within Exhibit C, and a unique numerical identifier.

ii. If Forensic Vendor needs additional time to complete its work, the Parties agree that they will discuss the matter in good faith and attempt to agree on a reasonable period of time in which it may have to do so.

iii. To the extent that any additional devices and/or accounts are identified pursuant to III(a)(3) or III(a)(5), those devices and/or accounts will be subject to this Agreement, however should there be any dispute as to

whether certain devices and/or accounts should be included, the parties shall promptly meet and confer in good faith to resolve the dispute.

b. **Review of Initial Reports**

i. Within five (5) business days of receiving the reports identified in III(a)(i) (the "Initial Reports"), counsel for Rao shall redact any part of the Initial Reports that it believes contains privileged and/or information that does not constitute Confidential Information and/or Work and will produce a redacted version of the Initial Reports to counsel for EPAM ("Redacted Initial Reports"), along with an explanation of the redaction(s) with sufficient detail so that counsel for EPAM can reasonably evaluate the redaction(s) made. If counsel for Rao does not believe that any redactions are required for any of the Initial Reports, it will notify counsel for EPAM and Forensic Vendor and Forensic Vendor will produce those Initial Reports to counsel for EPAM.

ii. Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work ("Inspection Documents Report").

iii. Within two (2) business days of being provided with the Inspection Documents Report, Forensic Vendor will provide the corresponding documents to counsel for Rao for review[2].

iv. Within three (3) business days of receiving the documents identified on the Inspection Documents Report, counsel for Rao will identify to counsel for EPAM and Forensic Vendor any documents that it believes contain privileged information and/or does not constitute Confidential Information and/or Work ("Withheld Inspection Documents Report"), and shall specifically identify the reason for withholding the document (i.e., document contains attorney-client communications or attorney work product, or a specific reason that counsel for Rao does not believe it falls within the scope of Confidential Information and/or Work). Any documents on the Inspection Documents Report that are not identified on the Withheld Inspection Documents Report will then be provided to counsel for EPAM for review ("Non-Withheld Inspection Documents") by Forensic Vendor.

v. Within five (5) business days of receiving the Withheld Inspection Documents Report, counsel for EPAM will identify whether it challenges

[2] To the extent that the parties believe the analysis and review of documents extracted from the Sources would be more efficiently reviewed within a document review platform, such as Relativity, they will discuss that with the Forensic Vendor. If a review platform is utilized, the Forensic Vendor will confirm that neither Party will be able to see the coding and/or review history of the other Party.

the designations on the Withheld Inspection Documents Report and the Parties will meet and confer to resolve any disputes within five (5) business days of such notification.

vi. Within ten (10) business days of receiving the Non-Withheld Inspection Documents counsel for EPAM will identify to counsel for Rao the documents that contain Confidential Information and/or Work, if any ("Documents to be Remediated Report").

vii. Within three (3) business days of receiving the Documents to be Remediated Report, counsel for Rao shall determine whether it challenges any of the Documents to be Remediated, and, to the extent it does, the Parties will meet and confer to resolve any disputes within five (5) business days of such notification.

## IV. REMEDIATION

a. Within three (3) business days of the Parties reaching an agreement regarding the Documents to be Remediated located on the Device Sources, Email Sources, and/or Cloud Sources, Forensic Vendor will securely delete all Documents to be Remediated in a forensically sound manner from those sources.

b. To the extent that Forensic Vendor identifies ESI that cannot be collected, such as communications via ephemeral messaging applications like Signal, the parties will develop a separate workflow for the Forensic Vendor to identify and remediate any Documents to be Remediated located on those sources.

c. To the extent that Forensic Vendor identifies ESI that is being synchronized or backed up to a Cloud Source, the Forensic Vendor will take reasonable steps to delete any pre-remediation backups that may exist in the Cloud Source.

## V. COSTS

a. EPAM will be responsible for all fees incurred by the Forensic Vendor, regardless of whether any remediation is required.

## VI. ADDITIONAL CONSIDERATIONS

a. Following Forensic Vendor's work pursuant to the Agreement, Rao will provide to EPAM a signed copy of the Certification listed in Exhibit D.

b. To the extent that additional reports or analysis beyond that which is specifically authorized by this protocol are requested, the parties agree to meet and confer on their purpose and content.

c. For avoidance of doubt, all Forensic Images, Forensic Collection, reports, and/or copies of documents created and/or identified in this protocol shall be used for the purposes of this Litigation only and for no other purpose.

SEYFARTH SHAW LLP

By: *_/s/ James S. Yu_*
Jacob Oslick
josolick@seyfarth.com
James S. Yu (*pro hac vice*)
jyu@seyfarth.com
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Plaintiff EPAM Systems, Inc.

ND GALLI LAW LLC

By: *_/s/ Nicole D. Galli_*
Nicole D. Galli
ndgalli@ndgallilaw.com
Andrew J. Costa
ajcosta@ndgallilaw.com
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 525-9580

Attorneys for Defendant Gowtham Rao

**Exhibit A – Search Terms**

[Due to the volume, this should be provided in spreadsheet / delimited format]

**Exhibit B – File Names**

[Due to the volume, this should be provided in spreadsheet / delimited format]

**Exhibit C – Hash Values**

[Due to the volume, this should be provided in spreadsheet / delimited format]

**Exhibit D**

**CERTIFICATION OF GOWTHAM RAO**

I, Gowtham Rao, hereby certify under the pains and penalties of perjury, as follows:

2. On or about November 12, 2024, I signed an Employee Covenants Agreement (the "Agreement") with EPAM systems, Inc. ("EPAM").

3. I hereby confirm that, to the best of my knowledge, information and belief, since the entry of the Stipulated Consent Order, dated December 10, 2025, I have not shared, disclosed, disseminated, or otherwise transmitted in any form any Confidential Information and/or Work as defined in the Agreement to any person or entity outside of EPAM except as necessary to my attorney(s) for the purpose of receiving legal advice.

4. I have submitted all email sources, device sources, and cloud sources (including source code repositories) that may have used to send, receive, and/or store Confidential Information and/or Work to iDiscovery, Inc. Solutions for forensic imaging and collection in accordance with the Stipulated Forensic Inspection Protocol Agreement, dated December 12, 2025 (the "Protocol Agreement").

5. To my knowledge, after the deletion of the Documents to be Remediated, as that term is defined within the Protocol Agreement, I do not have any Confidential Information and/or Work, nor any excerpts, components, or derivations of the Documents to be Remediated in any electronic devices, email accounts, and cloud sources (including source code repositories), and/or in hard copy format within my possession custody or control.

____________________________________

Gowtham Rao

Dated: