# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
- - -

| | | |
|---|---|---|
| EPAM SYSTEMS, INC. | : | CIVIL ACTION NO. |
| | : | 25-cv-06260 |
| v. | : | |
| | : | TRO HEARING |
| DR. GOWTHA ADAMANE ROA | : | |
| | : | |
| | : | |

---

James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
November 5, 2025
Commencing at 3:00

---

BEFORE THE HONORABLE WENDY BEETLESTONE

---

APPEARANCES:

FOR THE PLAINTIFF: SEYFARTH SHAW LLP
BY: JACOB OSLICK, ESQUIRE
BY: JAMES S. YU, ESQUIRE
620-8TH AVE 31ST FL
NEW YORK, NEW YORK 10018

- - -

Kim L. Haley, CRR, RPR
Official Court Reporter
Kim_Haley@paed.uscourts.gov

Proceedings taken stenographically and prepared utilizing computer-aided transcription

APPEARANCES CONTINUED:

GOWTHAM ADAMANE ROA,
PRO SE DEFENDANT

184 MANSGROVE ROAD
PRINCETON, NJ 08540
(803) 386-7890

- - -

(THE DEPUTY CLERK OPENS COURT)

THE COURT: Good afternoon. Have a seat.

This is EPAM Systems versus Dr. Gowtham, Gowtham Rao. We're here on the defendant's TRO.

15:07:29 Can I have some introductions, please, from plaintiff.

MR. OSLICK: Sure. Jake Oslick, Seyfarth Shaw, on behalf of plaintiff EPAM Systems, Inc.

With me is James Yu. He will be seeking

15:07:41 pro hoc vice admission to this Court. And with the Court's permission, I would ask that he be permitted to argue today; if not, I am fully prepared to do so.

THE COURT: Well, have you got a local counsel here who can -- who can speak to your -- as to

15:08:02 why he should be --

MR. OSLICK: That would be -- that would be me, Your Honor. I worked with Mr. Yu for over 10 years.

THE COURT: Okay. Tell me more about his

15:08:09 character.

MR. OSLICK: He has an excellent character. He's very well-regarded. He is ethical. He is diligent. He is competent.

THE COURT: And you are a member of this

15:08:19 Court?

MR. OSLICK: That is correct, Your Honor.

THE COURT: And, Mr. Yu, tell me a little bit about yourself.

MR. YU: Your Honor, I have been practicing law since 2000. I am admitted in New Jersey and New York, as well as the First Circuit, Second Circuit, Third Circuit U.S. District Court for the Southern, Eastern, and Northern Districts of New York, District of New Jersey, and District of Connecticut.

THE COURT: Okay. I will -- I will admit you pro hoc. Preliminarily, you have to pay your 75 bucks, you have to do the motion on the docket.

MR. YU: We plan to file that motion today, Your Honor.

THE COURT: Good. Okay.

So -- and, Mr. Rao -- or, Dr. Rao, are you representing yourself?

MR. RAO: Yes, ma'am. Your Honor, my name is Dr. Rao. I'm a resident of Princeton, New Jersey. And I'm -- I am representing myself in this case.

THE COURT: Well, I mean, we are here on this -- on this TRO, and there's a lot of things that plaintiffs are asking me to do.

Is there any way that we can negotiate

something in terms of the TRO and then explore things more fully in a preliminary injunction hearing in which we can have proper witnesses and more prep time?

MR. OSLICK: Your Honor, we actually -- 15:09:37 just for full disclosure, we did -- I'm sorry.

MR. YU: Your Honor, we did actually try to have some preliminary discussions with Dr. Rao's counsel, who is not representing him in connection with these proceedings.

15:09:47 There was notice that was originally sent by e-mail to Dr. Rao last week that informing him that we intend to file this lawsuit, as well as seeking the TRO based upon his misappropriation of over 40,000 files and software code.

15:10:06 His counsel responded over the weekend in an attempt to try to reach a resolution, but those efforts did not progress in any way that was satisfactory to us, which is what compelled us to move forward with this application today, Your Honor.

15:10:20 THE COURT: When did Dr. Rao leave the company?

MR. YU: October 15th. That was the day he was terminated.

THE COURT: October 15th?

15:10:26 MR. YU: Yes.

THE COURT: And what is the day today?

MR. YU: November 3rd.

THE COURT: November the 3rd. And when did you find out about the 40,000 files?

15:10:35 MR. YU: We found out about it several days after his departure. We were tying to understand the scope of his theft, as well as trying to understand exactly the -- you know, where -- where the -- where the information was residing.

15:10:49 There is was a lot of investigation that was being done as to, you know, why Dr. Rao had taken these files and some concerns was the fact that some of these files were intellectual property of EPAM's clients, and so we were trying to understand whether or 15:11:05 not there was any personal, identifiable information that was potentially implicated, as well as patient --

THE COURT: Well, I don't think you can represent your client -- the intellectual property of your clients.

15:11:16 MR. YU: No. But it was under our the care. But in terms --

THE COURT: But it doesn't matter if it's under your care. It's there. It's -- first of all, it's with you, so there is no -- there's no 15:11:26 confidentiality concerns. And, second of all, you can't

represent them.

So to the extent that you're asking for a TRO with respect to those documents or those issues, you're not getting one.

15:11:36 MR. YU: Well, Your Honor, that was only just a piece of it.

THE COURT: Okay. So let's sort of lay out what it is. We will go into the arguments later, but what -- what -- give me categories of things that

15:11:47 you want to do.

MR. YU: So the first category is software code, Your Honor. This is undisputably EPAM intellectual property. It's software code that is -- so EPAM is in the software and consulting industry. They

15:11:59 provide software solutions for their clients. And this -- for a variety of industries, the industry that we are speaking about today is life sciences and healthcare.

THE COURT: And so your allegation is

15:12:11 that Dr. Rao took your software code?

MR. YU: Correct.

THE COURT: So let's move on to the next. What's your next category?

MR. YU: Then there's compilation of

15:12:23 historical client information relating to EPAM's

clients. This is information ranging from project files that EPAM works on for its clients, as well as, you know, RFP information, bid --

THE COURT: RFP?

15:12:39 MR. YU: Yes. RFP information, bid proposals, pricing information. The type of typical stuff you see in businesses where they keep sort of this information on CRM platforms, for example, as well as -- sorry, just give me -- there was another category I was 15:12:57 thinking about -- financial information. That's what I was thinking of. Yes, financial information.

THE COURT: So is that -- the financial information, is that filed under -- fit under compilation or -- of historical client info or that's 15:13:08 another category?

MR. YU: Well, they're all -- there was 44,000 files. Did we actually open up every single document of the 44,000 files? No. But amongst this information, it was all part of the files that were 15:13:19 taken from EPAM's SharePoint system.

THE COURT: I understand. I'm just trying to drill down on what information it is.

So the question is -- you said there were several areas. You said software code.

15:13:27 MR. YU: Yes.

THE COURT: You talked about that.

Then you said compilation of historical client info. You gave me some details about that.

MR. YU: Yeah.

15:13:35 THE COURT: Then you said financial information.

So the question is, does the financial information you're talking about fall under the bucket of compilation of historical client info or is it a
15:13:46 separate bucket?

MR. YU: My understanding is it's part of the -- the client information, although I would have to clarify that with my client specifically, Your Honor.

THE COURT: So it's financial information
15:13:54 about your clients?

MR. YU: No. Just in terms of the pricing, for example, pricing information that we have with clients and how much profits we make, you know, on the specific projects that we make with these clients.

15:14:05 For example, the client -- EPAM works on a billable-hour model, and so the amount of billable hours on a project and how much profits were made, that's all part of the financial information that would be part of the customer data, for example.

15:14:16 THE COURT: Okay. Anything else?

MR. YU: There could be other categories, Your Honor, but that's the -- that's sort of the major focus points.

THE COURT: Well, there could be. We are not talking about it now.

15:14:22

MR. YU: Right.

THE COURT: Right?

So all we are talking about is the software code, compilation of historical client info, which is project files, RFP info, bid proposals, and financial information concerning the profits associated with clients --

15:14:28

MR. YU: Correct.

THE COURT: -- with sales.

MR. YU: Yes.

15:14:35

THE COURT: That's all we're talking about?

MR. YU: That's -- I would say that's the vast majority, yes.

THE COURT: Okay. Well, we are only talking about what you tell me right now.

15:14:42

MR. YU: Understood.

THE COURT: Because all these vague and vast majority doesn't mean anything right now.

MR. YU: Okay.

15:14:48

15:15:00
THE COURT: So you just told me these certain categories.

Okay. So you want me to -- well, why don't you tell me the story and then I'll hear from Mr. Rao -- Dr. Rao. Okay. Let's hear you, Mr. Yu.

MR. YU: Okay. Your Honor, Dr. Rao was hired in 2024. He was hired to be the managing principal of life sciences in charge of predominantly to try to generate revenue, bring in new business. He came

15:15:18
from Johnson & Johnson with an employment history in the healthcare pharmaceutical industry and he's an epidemiologist. And we, the company, felt that he might be a good fit as far as a business development role.

He also was in charge of managing across

15:15:36
the board a team of project managers to deliver consulting services for EPAM's clients, as well as fostering those relationships and developing new business from those clients.

And to be candid, Your Honor, his role

15:15:54
was -- he was not considered a good performer from that -- from the business development standpoint. And so, in September of 2025, he was -- the company transitioned him or redefined his role to focus more on developing the company's ongoing AI projects. There was

15:16:16
a couple of software code in particular called an AI

accelerator project that he was -- helped to develop on behalf of the company.

THE COURT: But he's -- he's an epidemiologist, not a soft -- not a --

15:16:28 MR. YU: He's not a coder, but he -- Your Honor, as part of his employment with EPAM, he was introduced to, you know, AI technology and he was asked to help develop, you know, at a macro level, sort of that product. And he didn't develop the actual code.

15:16:46 He had a team of coders that worked under his direction in that regard.

THE COURT: Okay.

MR. YU: And then, shortly before his termination on October 15th, the company discovered a

15:16:58 few disturbing facts that came to light.

Number one, Dr. Rao was found by one of his team members to have embedded into the code of the project that he was working on a copy -- a copyright with his name on it, as if he was attempting to assert

15:17:18 ownership, copyright ownership, of the code, that the company that was paying him and his team of engineers to develop.

Number two, Dr. Rao attended an industry conference in New Brunswick, New Jersey, during the

15:17:30 first week of October. And at the industry conference,

one of his team members had a conversation with a client of the company, a longstanding client, where it was reported to this employee, Lucy McDermott, and you have her declaration, that the client had said his -- one of his colleagues, so there's double levels of hearsay admittedly, Your Honor, but one of his colleagues was approached by Dr. Rao, and Dr. Rao indicated that he was no longer working at EPAM, and that he was, quote/unquote, a free agent, as was suggesting he would be doing business on behalf of himself. And that was the takeaway from that conversation.

Then, third, there was reports from his team that there was some anomalies in the data files, the source -- that Dr. Rao had apparently deleted some data files from the SharePoint server and then cleared the history, so that in an attempt permanently delete that data.

So when these allegations came to light, the company terminated him effectively immediately October 15th of 2025. They immediately suspended his access to his e-mails.

And then it was after his departure that they then launched an investigation out of concern that he was tampering with the code, seen what else he had done --

THE COURT: What do you mean "tampering with the code"?

MR. YU: Of the software code when he embedded, for example, the -- his copyright into the 15:18:58 code, as well as the destruction of files. So there was like, you know, those two things that happened.

THE COURT: So that he was -- he was tampering with it before he left?

MR. YU: Yes.

15:19:07 THE COURT: Okay.

MR. YU: And that happened on October 12th, that's -- according to the -- the file history on the database.

So after October 15th, the company then 15:19:18 launched its investigation into its servers and that's when they discovered that he had downloaded the software files. And three of them, in particular, are at issue in this case, which are identified in our papers.

Number one is called an ETL conversion 15:19:36 kit.

THE COURT: ETL conversion kit?

MR. YU: ETL, yes. The ETL conversion kit, I just wanted -- it's called -- just so Your Honor just understands, it's extract -- hold on. I 15:19:51 don't have -- yes, it's a medical data management

software, Your Honor. And that's -- they license this to customers, and they custom -- they can further customize the software code to match whatever the customer project that is called for in that particular situation.

15:20:02

So it's basically the -- the lifeblood of the business in terms of -- it's a commercial product that they license through their customers so they use it as part of their software consulting business.

15:20:14

And there's also a project called the AI cohort generator and then the AI accelerator, and all this code was downloaded by Dr. Rao.

THE COURT: And the AI cohort generator and the AI accelerator, is that different things or the same?

15:20:29

MR. YU: Well, they're two different programs. The AI accelerator is the program that Dr. Rao was working on where he put in his copyright, or attempted copyright, ownership into documents.

15:20:39

THE COURT: So he had downloaded, according to you, the ETL conversion kit, the AI cohort generator and the AI accelerator?

MR. YU: Yes.

THE COURT: Okay. What else?

15:20:48

MR. YU: And then, in addition, he also

downloaded over 44,000 files from the company' Microsoft SharePoint server, which included all of the text of client information that I referred to and the project information that I referred to at the outset.

15:21:04 So following this investigation, Your Honor, then we sent Dr. Rao a letter on October 31st with the cease and desist notice and request that he agree to a forensic examination of all of his devices.

15:21:23 We understand that all the information was downloaded onto a personal device, and outside of EPAM's network and control, and we need to have that data back. We need to have that data remediated, and that's the basis for this TRO application.

15:21:41 In addition, Your Honor, we are also seeking enforcement of his non-solicitation provision. We, again, had reason to believe, based upon conversations that employees of the company have had with clients, that Dr. Rao -- first, there was that 15:21:58 industry conference that I referred to where he was apparently attempting to solicit business from a longstanding client of the company, indicating that he was a free agent.

After he left, we also -- it's attached 15:22:11 to Lucy McDermott's declaration, he was part of an

external EPAM Teams chat where he was attempting to insert himself into a meeting with another EPAM client as well. And this is borne out in that Teams chat, which is attached to her declaration as an exhibit.

15:22:31 THE COURT: Okay. So let's hear from you, Dr. Rao. We are talking now only about the facts as stated by Mr. Yu.

MR. RAO: Your Honor -- Your Honor, thank you for this opportunity. Thank you for agreeing --

15:22:44 THE COURT: Well, before you start, you don't have an attorney, you're representing yourself?

MR. RAO: I do not have an attorney. I am representing myself. The -- the cost was very prohibitive. I was expected to pay $200,000 to have a 15:22:57 litigation attorney and I am unable to afford it.

THE COURT: Okay. So tell me what your -- your side of the story.

MR. RAO: So I have compiled the document that I presented to you and I presented to them. I 15:23:09 would like to -- to -- I believe that document addresses the concern that they raised to --

THE COURT: I don't -- do you mean the thing that you filed a few hours ago, that thing?

MR. RAO: Yes, ma'am.

15:23:21 THE COURT: Okay. Why don't you just

tell me about it.

MR. RAO: Okay. So, at the outset, I wanted to -- to -- I have -- when I left EPAM, I was in a state of shock and I was -- and I was -- and then I have made steps to being the primary breadwinner for my family, tried to make a living for myself. I am currently on New Jersey unemployment benefits. We are under hardship. So we are going through a tough state.

This -- this -- though, this came to me on October 31st when I was pick up duty with my kids. I made reasonable efforts on Sunday to contact an attorney, communicated with them, and have made as much -- as much as compromises as I could.

I offered to do under -- under -- purge computers, make -- make affirmations, but they requested that I do not do any work for next 12 months of any kind, which is extremely onerous.

And so that's why I am here. And I am unable to -- the time stamp, the timeline was too short for me to make a reasonable arrangement. Now, to -- that's just the background.

Obviously, this is the first time I am in the court and I will try to represent myself the best, and please forgive me if I am making errors in -- in this representation.

My understanding of the factual points that they raised, this is the 40,000 files that was referenced. As you can see in this -- in this diagram here on the next page, EPAM allows EPAM-installed software on your BYOB device. There is a -- there is an option called -- there is something called OneDrive and there is something called SharePoint. We get role-based access control, based on our roles for these files and all EPAM employees use OneDrive and those files gets downloaded to our local machines.

The files could be large. There is an option in that -- in that -- in that software that says, Keep files local. If I press that button, it downloads files. A large amount of files has moved to my computers and I am not denying that.

THE COURT: To your personal computers?

MR. RAO: Yes, I have been using my personal computer since day one on my employment with my permission of my manager, Greg Klebanov right here. So that's part of the company's policies that allowed you to bring your own device, and I've -- I've used that ever since -- and that -- and EPAM is aware of it.

THE COURT: But if you want to -- okay. So you said that you actually do have them on your device and you have your device with you, right? Or

you have -- you haven't handed your device back to anyone.

MR. RAO: The access to those files are contained inside OneDrive.

15:26:34 THE COURT: You have to answer my question.

MR. RAO: Oh, I'm sorry, ma'am. What was the question?

THE COURT: You downloaded that

15:26:39 information to your personal device, you were using your personal device for your work?

MR. RAO: Correct.

THE COURT: Right?

So are they -- you have that personal

15:26:47 device right now?

MR. RAO: Correct.

THE COURT: And are the documents still on that personal device?

MR. RAO: No.

15:26:53 THE COURT: Where are they?

MR. RAO: They are -- when I got terminated from EPAM, EPAM's IT automatically divorced access and deleted that content. We have -- we have rights to that folder.

15:27:03 THE COURT: So if -- you have your device

on you?

MR. RAO: No, ma'am.

THE COURT: Okay. So all those 40,000 documents are not on your files -- on your personal device?

15:27:13

MR. RAO: So I -- the OneDrive part that has the 40,000 files is not on my device. There might be other files that are shadows. So, example, you can download file, save as to your downloads folder of your computer, and those might still be there, but that -- that might have accumulated over the period of my one year of employment.

15:27:29

THE COURT: Okay. So if I were to -- I'm not going to say -- I'm not saying right now that I will, but if I were grant their temporary retraining order with respect to those 40,000 documents to the extent that they fall within the categories that are appropriate, you would have no problem with it.

15:27:38

MR. RAO: No.

THE COURT: Because you didn't -- you didn't do it maliciously. You did it and you believe, in fact, that they're not there.

15:27:48

MR. RAO: That's correct.

THE COURT: Okay. So why don't you negotiate with him on that?

15:27:55

MR. YU: Your Honor, well, first of all, from a technical standpoint, after speaking to --

THE COURT: I am not talking about the technical standpoint. He said that he doesn't think he has it anymore. So then -- and you want him not to use them. So he -- if he says he doesn't have them, I can enter a TRO saying don't use them, and it doesn't matter. Right? But I'm saying you should negotiate. Right?

MR. YU: No. Understood, Your Honor.

THE COURT: So what I am going to do, I am going to go through all these things, and I am going to leave, and you're going to negotiate. Understood?

MR. YU: Understood, Your Honor.

THE COURT: Okay. So let's go -- so you have those 40,000 documents you say that you downloaded.

MR. RAO: I do not have access to them.

THE COURT: Right. You had them, you downloaded them, once you took your computer home because you were denied access to company files, you do not have those 40,000 documents. Although you may have shadow documents, but you have no intention of using them.

So, therefore, if I were to enter an order or if they were agree to a stipulation, you don't

care.

MR. RAO: Yes, ma'am.

THE COURT: Okay. Let's move on.

MR. RAO: And I offered that as part of the negotiations.

15:28:52

THE COURT: Okay. Let's move on.

MR. RAO: There's an allegation that I had permanently deleted or tampered with files on EPAM's computers. My response to that is these are SharePoint files that as a user I am unable to permanently tamper or delete.

15:29:12

I do routine maintenance of -- to avoid application and portion control nightmares. So that is my responsibility as the leader of the team. And I do -- I remove files, I have done that throughout my time inside EPAM.

15:29:27

The files are stored -- there are micro levels of security inside EPAM that follows the standard process. There is something called -- there's a first stage recycle bin, the second stage site collection recycle bin. There are management retention policies that are employed by EPAM. User level access of removing of files does not cause harm to EPAM. They are there. They are always there.

15:29:40

And this is required -- this is required

15:29:57

to be done by any publicly traded company. I am, as an individual, unable, even if I wanted to, tamper these files. I was doing routine maintenance at the time of -- of -- I want to add one more point.

15:30:11 Both in the first instance of the 40,000 files and this deletion of files, which was I was doing it as part of my routine responsibilities without awareness that I would be terminated for this later, or five years later.

15:30:24 THE COURT: Okay. Let's put aside what you did while you were there. I'm looking at what they're trying to stop you doing stuff now.

MR. RAO: Yeah.

THE COURT: Okay. And what they are

15:30:33 concerned about is software downloads onto your personal device. So the ETL conversion kit, the AI cohort generation and the AI accelerator. Are those pieces of software on your personal device now?

MR. RAO: No, ma'am.

15:30:45 THE COURT: Okay. So if I were enter a temporary restraining order preventing you from using those or preventing you from doing anything with respect to those software downloads, it wouldn't impact you one way or the other because you don't have them.

15:30:59 MR. RAO: Absolutely.

THE COURT: Okay. So now let's move to the enforcement of the non-solicitation provision.

Now, there's reports that you said I am an independent operator, you talked to a client. What's that about?

15:31:10

MR. RAO: So I have -- I spent -- I negotiated my contract with EPAM where if there -- one of the clear language that was inserted into the -- into the document was if there was an immorality termination, I would not be subjected to non-compete.

15:31:27

THE COURT: Where is -- show me where that is.

MR. RAO: It's in the -- in the documents that the plaintiffs has submitted. It is my -- it's --

15:31:40

THE COURT: I need a copy of that, please.

MR. RAO: In Section 5(b) and 5 -- 5(c) and 5(b), I believe. Section 5(b) under restrictive covenant.

15:31:57

MR. YU: Your Honor, do you want me to approach with a copy of the agreement?

THE COURT: I think my law clerk has them. Do you -- have you found them?

THE LAW CLERK: Yes.

15:32:12

THE COURT: Okay. So it's -- it's 5 -- 5

and 5(a); is that right? No, I'm sorry.

MR. RAO: If I have a copy, I could find out exact location of it.

THE COURT: Well, so in the event your primary location changes to Illinois. Did it ever do that?

15:32:31

MR. RAO: No.

THE COURT: In the event your primary location changes to Massachusetts. Did it ever do that?

15:32:39 MR. RAO: No.

THE COURT: In the event your primary work location changes to Nevada. Did it ever do that?

MR. RAO: No.

THE COURT: What about DC?

15:32:47 MR. RAO: No.

THE COURT: And then what about Washington State?

MR. RAO: No.

I have always been in New Jersey throughout the tenure of my employment.

15:33:09

THE COURT: So I'm looking at this agreement and all these various covenants apply in the event you change -- okay. How about Hawaii, North Dakota or Oklahoma?

15:33:24 MR. RAO: No.

15:33:31
15:33:42
15:33:46
15:33:53
15:34:02

MR. YU: Your Honor, if it would be helpful, the covenant is on page 3.

THE COURT: On page 30?

MR. YU: Page 3 of 20.

THE COURT: Page 3.

MR. YU: Yeah, it starts at 3 and then goes to 4.

THE COURT: Including what he's talking about?

MR. YU: Yes. He's talking about the -- Your Honor, if I could help clarify, he is talking about the non-compete. We are not seeking enforcement of the non-compete.

THE COURT: What are you seeking enforce --

MR. YU: We are seeking enforcement of the non-solicitation.

THE COURT: Non-solicitation. Okay.

So were you talking about the non-compete or the non-solicitation?

MR. RAO: The free agent is I present myself as a free agent because I can compete with EPAM.

MR. YU: Your Honor, but he's -- he can't solicit.

THE COURT: Okay. There is a difference

between -- what he's telling me, there is a difference between compete and solicit.

MR. RAO: Correct.

THE COURT: So you're talking to me about competing, right?

So he is not asking you to abide by any non-compete. He is not saying that there is a non-compete, but what he is saying is there is a non-solicitation clause. So we are going to focus on in that solicitation clause. Okay?

So what is the non-solicitation clause you are talking about?

MR. YU: 5(b).

THE COURT: 5(b)?

MR. YU: Between page 3 and 4. It's on 4, Your Honor, non-solicitation of clients, on the top of page 4.

THE COURT: Okay. I must have different pages than you.

MR. YU: Oh, I'm sorry, it's 5 on -- if you're looking at the docket header, it's 5, but if you're looking at the pages on the bottom --

THE COURT: I don't have the pages on the bottom.

MR. OSLICK: It's 5 of 21 of the pages.

THE COURT: Okay. 5 of 21. Okay. Non-competition. But I thought you were talking about non-solicitation.

MR. YU: Yeah, it's above the non-competition.

15:35:06

THE COURT: Okay. Non-solicitation of clients. Okay.

So you are -- we are talking about paragraph 4 of the agreement, correct?

15:35:20 MR. YU: Paragraph 5(b). 5(b).

MR. RAO: Is it possible for me to have a copy, please?

MR. YU: I can get you -- I can give --

THE COURT: Well, that's not on the page

15:35:30 you just told me. There's no 5.

MR. OSLICK: Your Honor, can I approach?

THE COURT: Yeah. Here's my copy.

Is it in the content of that? Is that in the right order now?

15:36:23 Now, don't ever, ever do that. Then that messes it up.

Where do you say, the paragraph that reads --

MR. YU: Non-solicitation of clients?

15:36:46 THE COURT: Yes.

MR. YU: It's 5(b) on --

THE COURT: Okay. I'm still -- you pointed me to something that's not 5, it's 4.

MR. YU: 4 is processing of employee information.

15:36:57

THE COURT: Okay. Then I'm turning to the next page, which I have, and it -- then it goes -- it starts with Your role, so there is a page missing.

MR. YU: Your Honor, this is as printed off of TCF. If you want, you can use this copy.

15:37:17

THE COURT: Okay. So page 5 -- well, paragraph 5 is called restrictive covenants, right?

MR. YU: Correct.

THE COURT: And then paragraph 5 has an A and a B. So what are you talking about?

15:37:45

MR. YU: 5(b).

THE COURT: 5(b), non-solicitation of clients. So let's take a look at this.

So 5(b) -- so 5, rather, concerns restrictive covenants. You understand the nature of your position gives you access to and knowledge of confidential information and places you in a position of trust and confidence with the EPAM group. You acknowledge that your services are special in character; that you will obtain knowledge and skill relevant to the

15:37:54

15:38:10

EPAM industry, method of doing business, inventions, marketing strategies or other confidential information by virtue of your employment; and that the restrictive covenants and other terms and conditions of this agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM group. As a result, and in return for employment and access to the confidential information, you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination.

15:38:25

15:38:38

Now, Mr. Rao, is that -- do you agree that that's in your contract --

MR. RAO: Yes.

15:38:48 THE COURT: -- so far?

Okay. Now, we are going to turn to B at 5, non-solicitation of clients.

You understand and acknowledge that because of your relationship to the EPAM group, you will have access to and learn about the EPAM group's client information, such as for example: names, phone numbers, addresses, e-mails addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM group. You further understand and acknowledge that

15:38:59

15:39:13

15:39:29 loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, any use -- using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant messaging, or social

15:39:46 media, or meet with the EPAM group's former, or prospective clients, for purposes of offering services similar or competitive with those offered by the EPAM group. Following termination of employment, this restriction shall only apply to any clients or

15:40:04 prospective clients you had contact with during the 12 months preceding termination of employment; and separately, any clients with whom you have -- possess trade or secret confidential information gained during the 12 months preceding termination of your employment.

15:40:16 The restriction applies broadly without the limitations in (i) and (ii), while you remain employed.

So do you agree that is, in fact, what you agreed to?

MR. RAO: That is the words that I

15:40:29 accept.

THE COURT: Okay. So what is it that you say that he did that falls outside of this particular provision?

MR. YU: That falls outside the provision?

15:40:40

THE COURT: Well, sorry, that falls within the provision?

MR. YU: Your Honor, so we understand and, number one, it's attached to the Lucy McDermott declaration, that after he left, he was in an external Teams chat. It's called the Odyssey chat tenant. It's an industry chat group where he tried to arrange a meeting with a client, and I prefer because it is an open court proceeding not to reveal the client's identify, but we can under seal, where he tried to meet with -- schedule a meeting with that particular client.

15:40:50

15:41:09

THE COURT: Did you -- did you do that?

MR. RAO: I have -- I have evidence here of an exact transaction screenshot.

15:41:19

THE COURT: Of the -- okay. Let's see that.

MR. RAO: It's -- it's the document that I gave you, Your Honor.

THE COURT: I know, but you just -- I've

15:41:29

got a lot of stuff here, so can you just give me that document, please.

MR. RAO: Yes. May I come to you?

THE COURT: You may.

15:41:43 Have you given it to the other side?

MR. RAO: Yes.

THE COURT: You can go sit down.

MR. RAO: May I add?

THE COURT: I'm reading it.

15:42:02 MR. RAO: Sorry.

THE COURT: Okay. So who is Gauriv Govinda?

MR. RAO: EPAM employee.

THE COURT: So what -- in your view, what 15:42:25 does this say? What is this about?

MR. RAO: Gauriv Govinda after -- this happened on October 16th, the day after my termination. Gauriv was aware that I was terminated. He could not reach me for -- for a certain piece of knowledge that 15:42:39 was need -- that EPAM needed particular to a client, Boehringer Ingleheim Pharmaceutical Company. So to -- to seek that knowledge, which I possessed, because it is a specialized knowledge because of -- because of my scientific training and outcome research, he reached out 15:42:57 to me asking me about how to adjust for standardized

costs, inserting cost methodologies, and I offered to provide him -- or help as a former colleague as continuation of EPAM's business in the place of EPAM in the -- in the Odyssey tenant.

15:43:14 THE COURT: So you're -- what you're saying to me is that you were in a business, one of your former colleagues reached out to you, they didn't know how to do something, and you helped him then?

MR. RAO: Yes, ma'am.

15:43:26 THE COURT: So is it your view that this is not solicitation of a former client of the plaintiff; is that correct?

MR. RAO: This is EPAM asking me -- my former employer asking me for help.

15:43:40 THE COURT: Okay. And right now, do you have any intention of soliciting any former clients of EPAM?

MR. RAO: I have been -- former clients of EPAM are soliciting me directly for -- for services.

15:43:52 THE COURT: Okay. But you have no intention of soliciting them?

MR. RAO: If they offer me -- ask me, then I hope that I can offer them services.

THE COURT: Okay. There's nothing here

15:44:02 plaintiffs that saying that if they contact him, or is

there?

MR. YU: First of all, Your Honor --

THE COURT: You will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, et cetera, et cetera, for purposes of offering services.

So what this says is that he can't -- he can't contact them. It doesn't say that he can't respond if they contact him, right?

MR. YU: Sorry. One second, Your Honor. Give me one moment, Your Honor.

THE COURT: Go ahead.

15:45:19 MR. YU: Bear with me.

Your Honor, two things, and I will address the language in a second. First of all, we disagree with his recitation of what that transpired with respect to that Teams chat that we were referring to.

THE COURT: Well, this is it. This is the Teams chat, right?

MR. YU: Yes, but he said --

THE COURT: And he's talking to someone at EPAM, right?

MR. YU: Your Honor --

THE COURT: Talking to anyone else outside of EPAM?

MR. YU: No, Your Honor.

15:45:38 THE COURT: Yes or no?

MR. YU: However, he incorrectly represented that Mr. -- that -- that Gauriv knew that he had already left. Gauriv did not know because Mr. --

THE COURT: I'm sorry. You're speaking

15:45:47 too fast.

MR. YU: The EPAM employee that's on this chat did not know that Gauriv -- I mean, that Dr. Rao had already left the company, which is --

THE COURT: What's that got to do with

15:45:59 the price of eggs?

MR. YU: Your Honor, because that's the reason why -- he's saying that the reason why he was reached out to was because he was relying on his expertise. That's not what happened here, Your Honor.

15:46:06 He was reaching out in a general chat and he responded to it offering to meet with the client.

THE COURT: Where does it say that on this chat?

MR. YU: He says, I am happy to talk

15:46:20 through this via Odyessy tenants.

THE COURT: Okay. That doesn't refer -- talk about going -- talking to another client, does it?

MR. YU: And it says, Should I have Katie join us tomorrow through Odyssey as well? Meaning that Katie is the client.

THE COURT: Who is Katie?

MR. YU: Katie is the representative from the -- from Boehringer Ingleheim.

THE COURT: How do we know that? There's lots of people called Katie.

MR. YU: Your Honor, this is just a snapshot of his text.

THE COURT: This is what I have.

MR. YU: Okay. But, Your Honor, I can have Ms. --

THE COURT: No, this is what -- you have it now. I mean, we are doing this now.

MR. YU: I understand that, Your Honor, but Ms. McDermott testified in her declaration as to the context behind this chat.

THE COURT: Does she know about it?

MR. YU: Yes.

THE COURT: How does she know about it?

MR. YU: She attaches it to her declaration.

THE COURT: Okay. But tell me how she knows about it.

MR. YU: Because she received this information from Gauriv, who is on this chat, Gauriv Govinda.

15:47:13

THE COURT: Okay. Who is Ms. Jones?

MR. YU: I'm sorry?

THE COURT: Who is Gauriv? Is it Katie?

MR. YU: No. McDermott is the -- Lucy McDermott is an EPAM employee.

15:47:23

THE COURT: Okay. So an EPAM employee is told by another EPAM employee that a former EPAM employee has talked to him about a particular issue that is peculiarly within his knowledge, and then the EPAM employee involved in this chat makes an assumption that he is going to talk to Katie, who is a former client. Right?

15:47:44

MR. YU: No. It's a present client.

THE COURT: It's Katie. Who's Katie?

15:47:55

MR. YU: Your Honor, the very first line, it says, Hi, this is for BI. That's Boehringer Ingleheim.

THE COURT: So what does that mean?

MR. YU: And then we have a meeting Monday where Katie wants to talk about --

15:48:04

THE COURT: Who is Katie? Who is Katie? We don't know who Katie is.

MR. YU: Your Honor, I'm trying to --

THE COURT: How can you take Katie and determine that it's a former client? Is Katie a client? Do you have any individuals who are clients?

MR. YU: No, Your Honor.

THE COURT: Who is Katie? Who does she belong to?

MR. YU: Your Honor, we can supplement these papers.

THE COURT: No, no, no. You're here today.

MR. YU: Okay. Understood.

THE COURT: So who is Katie?

MR. YU: I -- well, I can represent to the Court based upon my conversations with the client that Katie is a representative of Boehringer Ingleheim.

THE COURT: You had a conversation with a client. Is that client here today?

MR. YU: Well, Lucy McDermott is not here today, but we attached --

THE COURT: Is the client here today?

MR. YU: The client is here today, Your Honor.

THE COURT: Who is the client?

MR. YU: Your Honor, I have with me Greg Klebanov, who is Dr. Rao's immediate supervisor at the time that Dr. --

15:48:49 THE COURT: No. We are talking about the client.

MR. YU: Oh, I'm sorry.

THE COURT: Is the client here?

MR. YU: Not my client, you're right.
15:48:54 No, the client is not here today.

THE COURT: The client is not here. Okay. So we don't know who Katie is. We have no idea who Katie is.

MR. YU: Well, Lucy McDermott can testify
15:49:05 that -- as to who Katie is.

THE COURT: How does she know who Katie is?

MR. YU: Because she's the EPAM employee who worked on that project.

15:49:10 THE COURT: Okay. And she read this and she determined that that Katie was the -- someone who worked in a client -- we don't know the client's name.

MR. YU: We do. It's BI, which is Boehringer Ingleheim.

15:49:19 THE COURT: Okay. How does she determine

that Katie is this -- works for this person?

MR. YU: Number one, she also works on the Boehringer Ingleheim -- she -- she is part of the team that works for that client.

15:49:31 THE COURT: Okay.

So, Mr. Rao, so you -- regardless of this -- and this happened just afterwards, right?

MR. YU: Correct.

THE COURT: And so did -- who is this Katie? 15:49:45

MR. RAO: Katie is an -- is an employee of Boehringer Ingleheim. She was the -- she had some questions to Gauriv, which was very difficult for Gauriv to answer, and Gauriv wanted some information from me to help answer to Katie. 15:50:03

THE COURT: Have you ever talked to Katie directly?

MR. RAO: No.

THE COURT: Have you ever e-mailed Katie directly? 15:50:09

MR. RAO: No.

THE COURT: Have you ever texted Katie directly?

MR. RAO: No.

15:50:14 THE COURT: Have you called her?

MR. RAO: No.

THE COURT: Okay. So, Mr. Yu, we have -- he just said he hadn't -- he hadn't contacted Katie.

MR. YU: Understood, Your Honor.

15:50:24 But, number one, there is no dispute that he is attempting to do -- to compete, correct? And he recently --

THE COURT: Well, we are not talking about compete.

15:50:29 MR. YU: I understand that.

THE COURT: Focus in on what you're talking about. You're saying you don't want him to solicit. He says he hasn't solicited, but people are calling him. And I am looking at the language of his 15:50:39 agreement and it says that if they contact him, it doesn't say anything about it at all.

MR. YU: Well, Your Honor, he gets that point. Your Honor, I -- he is obviously putting himself out there as a competitor. He is soliciting in the 15:50:48 sense that he --

THE COURT: You can't say he obviously is if you have no information.

MR. YU: He says in his papers --

THE COURT: And we are not talking about 15:50:54 competitor. We're talking about solicitation. So focus

in on what you actually mean.

MR. YU: Your Honor, he says in his papers that he's opened up his own business. The papers that he submitted to --

15:51:02 THE COURT: And he just said that he is -- he has just said that he is not going to solicit people.

So here's what you are going to do: You have this conversation, you know what is and is not, so you are going to sit down and negotiate. 15:51:14

I am not going to rule on this, because if I do, I have to go through every single one of your claims and determine whether each of your categories that you want me to -- to encompass in this -- in this TRO you seek, can -- it can actually be done on a particular claim, and that is a long process, and it's a process that I don't think is useful because I think you should work it out. 15:51:29

You know, I think you have a certain set of assumptions about it and he has a certain set of assumptions about it. But what he has said here today you can certainly cobble together something so you can agree what will happen over the next two weeks, and then I will have a preliminary injunction hearing if you want one, and then we'll have a real conversation about it. 15:51:41 15:51:56

Understood?

MR. YU: Understood, Your Honor.

THE COURT: Okay. Call me when you're ready.

15:52:01 MR. YU: Okay. Thank you, Your Honor.

CLERK: All rise.

(Proceeding adjourned).

THE COURT: Okay. So have you reached a -- have you reached a stipulation?

16:47:17 MR. YU: Your Honor, if I can speak first. We were actually trying to revise the proposed order. There was a lot of exchanges about specific language that the parties wanted to include, exclude, that kind of stuff, so that is what's taking it a long time. 16:47:30

THE COURT: Okay.

MR. YU: General concepts, I think we're in agreement, but it was -- the dispute was over minor --

16:47:38 THE COURT: It's the details. Okay.

So let me make a suggestion. I am very happy that you've been able to talk and it seems like you should be able to make more progress. So I am not going to -- I wanted to put your feet to the fire now so you would start talking. But in order to conclude, I 16:47:51

think it probably would make sense to have more time.

So what I will do is, I will assume that you are going to continue to talk. If you want to continue to talk in this courtroom, you can certainly do that.

16:48:07

I suppose the question is -- I'm hoping you can reach some kind of stipulation. The question then is, do you want a preliminary injunction hearing? Because you've asked for one of those, too. So I could schedule it in about two weeks such that if there is anything left, we can come back in and do it.

16:48:22

What's your thinking?

MR. YU: Your Honor, yes, I think we still -- obviously, we are just here today on an initial application on the TRO.

16:48:36

THE COURT: Yes.

MR. YU: There -- you know, based upon some of the discussions that we've had in trying to discuss the language, there is, you know, still potential -- potential concern that information may have been, you know, misused, you know, in the past, you know, before we had a chance to conduct this forensic examination.

16:48:44

There is a dispute about actually conducting the forensic examination in advance of a

16:48:56

preliminary injunction hearing about who is going to pay for it, for example. Those are some of the items that we are still trying to work out.

THE COURT: Okay. So --

16:49:07 MR. YU: So, yes, we would like to put something on the calendar. Obviously, if we are able to resolve the entire case in advance, we wouldn't need the preliminary injunction hearing, but we should have something on the calendar.

16:49:17 THE COURT: Okay. So what I'll do is, I will deny the TRO without prejudice. Okay?

Although if you file again, it won't be a material preliminary injunction. I will assume that I am going to get a stipulation from you in the next 16:49:32 couple of days, and then I will schedule a preliminary injunction hearing.

Any objection to that way of proceeding?

I saw you -- you sort of flinched a little bit when I said that. So why did you flinch?

16:49:45 MR. YU: Well, Your Honor, because at present moment all we have is a representation from -- from the defendant that he is not going to use any confidential information, which, as far as we know, could still be in his possession. All we are have is a 16:49:58 denial that he doesn't have it, which --

THE COURT: Well, that's what you're going to do, is you're going to stipulate for two weeks so that -- until a preliminary injunction.

And, you know, if he stipulates to something and he signs it, and I put it on the docket, he's got a problem if he doesn't abide by it. Right? Because that's -- that's yet another issue that you can bring to my attention.

MR. YU: Your Honor, can we at least enter into an order today that at least enjoins him from --

THE COURT: No.

MR. YU: -- or preserves --

THE COURT: No.

MR. YU: -- I'm sorry, preserves the data so in case there is a spoliation issue.

THE COURT: No. I mean, if you -- if you agree to it, fine. If you stipulate to it, fine, I will sign off on a stipulation if that's what you want, but no.

MR. YU: Okay. But, Your Honor, just if I may, you know, preservation is pretty routine in any case regardless, so --

THE COURT: Well, I mean, he's representing himself. He understands that spoliation is

a --

Do you understand what spoliation is? Tell me what you -- what you understand by spoliation.

MR. RAO: It's intentionally destroying evidence I think.

THE COURT: So, Mr. Yu, did you understand? He understands what spoliation is.

MR. YU: Okay.

THE COURT: Do you understand what the -- what possible penalties there are for spoliation of evidence?

MR. RAO: I would assume it's a criminal --

THE COURT: I don't know whether it's criminal, but there -- I could sanction you, and there's lots of ways I could sanction you. Some of which are small and some of which are very big.

So you understand that you are not allowed to -- to destroy evidence in any way, hide it, destroy it?

MR. RAO: Of course.

THE COURT: Okay.

MR. YU: Your Honor, my -- my concern really is the fact that just based upon -- I know that Your Honor wasn't present here for our discussions, but

based upon the tenor of those discussions, I could see a lot of difficulty in trying to reach an agreement, even over the next, you know, couple of days.

And unless we have like some sort of mechanism in place that allows us to get Your Honor to ultimately decide if there's a dispute, that we can't --

THE COURT: Well, that's what we are going to do in two weeks with the preliminary injunction.

MR. YU: That's a long time, Your Honor, unfortunately.

THE COURT: Well, you haven't convinced me to enter a TRO. I mean, I didn't even get to the analysis of the law. Even with the facts that you've presented, you have not convinced me that there is immediate and irreparable harm.

So I haven't even gone beyond the first prong, and I'm not -- I'm not in your -- in your -- in your court, right?

So I am not going to enter a TRO.

MR. YU: Okay. Understood, Your Honor.

But because we do need a forensic examination in advance of a preliminary injunction and if Dr. Rao is not going to --

THE COURT: You don't need it. You may

want it. You may get it. You don't need it. And certainly there is nothing to suggest that I should enter an order requiring a forensic examination of his personal device.

16:52:41 I mean, if there's -- if -- you haven't even made any -- any legal argument as to why you should get a forensic examination of his personal device.

MR. YU: Your Honor, that -- quite frankly, and I am not -- you know, it's very -- I 16:52:55 litigate these cases all the time, and it's fairly routine in data misappropriation cases where data has been exfiltrated to obtain court-ordered forensic discovery.

THE COURT: Really? And so you're 16:53:07 telling me as a federal judge whose been sitting on the bench for 10 years, even though you litigate these things all the time and it is very routine, you have not provided me with one case.

And you have no idea -- I think you're 16:53:18 from New York, right?

MR. YU: Well, Your Honor --

THE COURT: You don't know what we do in the Eastern District of Pennsylvania. So I really don't care what you routinely do, with no evidence whatsoever.

16:53:26 Understood?

MR. YU: Understood, Your Honor. I wasn't trying to denigrate anything. I was just explaining that it's the only --

THE COURT: You're explaining your own the personal experience.

MR. YU: No. Explaining that the only way we can ever get sufficient comfort that data hasn't been misused or potentially transferred elsewhere, after is it's already been taken by unlawful means, we would be entitled to a forensic discovery, and my brief does cite to cases that provide that.

THE COURT: Okay.

MR. YU: But I appreciate Your Honor's --

THE COURT: Okay. So I will -- when can you get me a stipulation? When can you work on this?

MR. YU: Well, Your Honor, ideally, we would be able to enter something tomorrow, because --

THE COURT: Okay.

MR. YU: But, again, that -- if Dr. Rao is --

THE COURT: Well, Dr. Rao has -- has an attorney, right, who helped him negotiate deals. So this -- perhaps what his attorney can get back in the saddle and help you negotiate this one.

Would that help? I think it would.

16:54:24

16:54:35

16:54:47

MR. YU: I'd like to be able to negotiate with an attorney, but if his attorney is not going to even represent him, then I --

THE COURT: Well, I think, what I understand his attorney wouldn't represent him in litigation because it is expensive. But his attorney has been representing him in negotiations, transactional negotiations. So maybe that's the next move for everybody.

For you, Dr. Rao, to contact that attorney and ask whether you think he or she could be involved in the negotiation.

And then you can start negotiating with that attorney either tonight or tomorrow and work out something that makes sense, and then I will schedule that preliminary injunction hearing.

MR. YU: Okay. Thank you, Your Honor.

THE COURT: Okay. Thank you.

(Proceedings concluded at 4:45.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Kim L. Haley, CSR, CRR, RPR
11/7/2025

## $

**$200,000** [1] - 17:14

## /

**/s** [1] - 53:25

## 0

**08540** [1] - 2:3

## 1

**10** [2] - 3:17, 51:16
**10018** [1] - 1:17
**11/7/2025** [1] - 53:25
**12** [4] - 18:16, 32:4, 32:15, 32:19
**12th** [1] - 14:12
**15th** [5] - 5:22, 5:24, 12:14, 13:20, 14:14
**16th** [1] - 34:17
**184** [1] - 2:2
**19106** [1] - 1:9

## 2

**20** [1] - 27:4
**2000** [1] - 4:5
**2024** [1] - 11:7
**2025** [3] - 1:9, 11:22, 13:20
**21** [2] - 28:25, 29:1
**25-cv-06260** [1] - 1:4

## 3

**3** [5] - 27:2, 27:4, 27:5, 27:6, 28:15
**30** [1] - 27:3
**31st** [2] - 16:7, 18:10
**31ST** [1] - 1:16
**386-7890** [1] - 2:3
**3:00** [1] - 1:10
**3rd** [2] - 6:2, 6:3

## 4

**4** [7] - 27:7, 28:15, 28:16, 28:17, 29:9, 30:3, 30:4
**40,000** [9] - 5:13, 6:4, 19:2, 21:3, 21:7, 21:16, 22:16, 22:21, 24:5
**44,000** [3] - 8:17, 8:18, 16:1
**4:45** [1] - 53:19

## 5

**5** [15] - 1:9, 25:17, 25:25, 28:20, 28:21, 28:25, 29:1, 29:15, 30:3, 30:11, 30:12, 30:14, 30:19, 31:17
**5(a** [1] - 26:1
**5(b** [7] - 25:17, 25:18, 28:14, 30:1, 30:17, 30:19
**5(b)** [4] - 28:13, 29:10, 30:16
**5(c** [1] - 25:17

## 6

**601** [1] - 1:8
**620-8TH** [1] - 1:16

## 7

**75** [1] - 4:11

## 8

**803** [1] - 2:3

## A

**abide** [2] - 28:6, 48:6
**able** [5] - 45:22, 45:23, 47:6, 52:17, 53:1
**above-entitled** [1] - 53:24
**absolutely** [1] - 24:25
**accelerator** [6] - 12:1, 15:11, 15:14, 15:17, 15:22, 24:17
**accept** [1] - 32:25
**access** [10] - 13:21, 19:8, 20:3, 20:23, 22:17, 22:20, 23:22, 30:21, 31:8, 31:20
**according** [2] - 14:12, 15:21
**accumulated** [1] - 21:11
**acknowledge** [3] - 30:24, 31:18, 31:25
**ACTION** [1] - 1:3
**actual** [1] - 12:9
**ADAMANE** [2] - 1:5, 2:2
**add** [2] - 24:4, 34:8
**addition** [2] - 15:25, 16:15
**address** [1] - 36:17
**addresses** [3] - 17:20, 31:22
**adjourned)** [1] - 45:7
**adjust** [1] - 34:25
**admission** [1] - 3:10
**admit** [1] - 4:10
**admitted** [1] - 4:5
**admittedly** [1] - 13:6
**advance** [3] - 46:25, 47:7, 50:23
**affirmations** [1] - 18:15
**afford** [1] - 17:15
**afternoon** [1] - 3:2
**afterwards** [1] - 42:7
**agent** [4] - 13:9, 16:23, 27:21, 27:22
**ago** [1] - 17:23
**agree** [8] - 16:8, 22:25, 31:9, 31:12, 32:3, 32:22, 44:23, 48:18
**agreed** [1] - 32:23
**agreeing** [1] - 17:9
**agreement** [7] - 25:21, 26:22, 29:9, 31:5, 43:15, 45:18, 50:2
**ahead** [1] - 36:14
**AI** [12] - 11:24, 11:25, 12:7, 15:10, 15:11, 15:13, 15:14, 15:17, 15:21, 15:22, 24:16, 24:17
**aided** [1] - 1:23
**allegation** [2] - 7:19, 23:7
**allegations** [1] - 13:18
**allowed** [2] - 19:20, 49:19
**allows** [2] - 19:4, 50:5
**amount** [2] - 9:21, 19:14
**analysis** [1] - 50:14
**anomalies** [1] - 13:13
**answer** [3] - 20:5, 42:14, 42:15
**APPEARANCES** [2] - 1:14, 2:1
**application** [4] - 5:19, 16:14, 23:13, 46:15
**applies** [1] - 32:20
**apply** [2] - 26:22, 32:14
**appreciate** [1] - 52:13
**approach** [2] - 25:21, 29:16
**approached** [1] - 13:7
**appropriate** [1] - 21:18
**areas** [1] - 8:24
**argue** [1] - 3:12
**argument** [1] - 51:6
**arguments** [1] - 7:8
**arrange** [1] - 33:12
**arrangement** [1] - 18:20
**aside** [1] - 24:10
**assert** [1] - 12:19
**associated** [1] - 10:11
**assume** [3] - 46:2, 47:13, 49:12
**assumption** [1] - 39:15
**assumptions** [2] - 44:20, 44:21
**attached** [4] - 16:24, 17:4, 33:9, 40:22
**attaches** [1] - 38:24
**attempt** [4] - 5:16, 13:16, 32:6, 36:4
**attempted** [1] - 15:19
**attempting** [4] - 12:19, 16:21, 17:1, 43:6
**attended** [1] - 12:23
**attention** [1] - 48:8
**attorney** [12] - 17:11, 17:12, 17:15, 18:12, 52:22, 52:23, 53:2, 53:5, 53:6, 53:11, 53:14
**automatically** [1] - 20:22
**AVE** [1] - 1:16
**avoid** [1] - 23:12
**aware** [2] - 19:22, 34:18
**awareness** [1] - 24:8

## B

**background** [1] - 18:21
**based** [8] - 5:13, 16:17, 19:7, 19:8, 40:17, 46:17, 49:24, 50:1
**basis** [1] - 16:14
**bear** [1] - 36:15
**BEETLESTONE** [1] - 1:11
**BEFORE** [1] - 1:11
**behalf** [3] - 3:8, 12:2, 13:10
**behind** [1] - 38:20
**belong** [1] - 40:9
**bench** [1] - 51:16
**benefits** [1] - 18:7
**best** [1] - 18:23
**between** [3] - 28:1, 28:2, 28:15
**beyond** [1] - 50:17
**BI** [2] - 39:21, 41:23
**bid** [3] - 8:3, 8:5, 10:10
**big** [1] - 49:17
**billable** [2] - 9:21
**billable-hour** [1] - 9:21
**bin** [2] - 23:20, 23:21
**bit** [2] - 4:3, 47:19
**board** [1] - 11:15
**Boehringer** [7] - 34:21, 38:8, 39:21, 40:18, 41:24, 42:3, 42:12
**borne** [1] - 17:3
**bottom** [2] - 28:22, 28:24
**breadwinner** [1] - 18:5
**brief** [1] - 52:10
**bring** [3] - 11:9, 19:21, 48:8
**broadly** [1] - 32:20
**Brunswick** [1] - 12:24
**bucket** [2] - 9:8, 9:10
**bucks** [1] - 4:12
**business** [13] - 11:9, 11:13, 11:18, 11:21, 13:10, 15:7, 15:9, 16:21, 31:1, 31:6, 35:3, 35:6, 44:3
**businesses** [1] - 8:7
**button** [1] - 19:13
**BY** [2] - 1:15, 1:16
**BYOB** [1] - 19:5
**Byrne** [1] - 1:8

## C

**calendar** [2] - 47:6, 47:9
**candid** [1] - 11:19
**care** [4] - 6:21, 6:23, 23:1, 51:24
**case** [6] - 4:21, 14:18, 47:7, 48:16, 48:23, 51:18
**cases** [3] - 51:10, 51:11, 52:11
**categories** [5] - 7:9, 10:1, 11:2, 21:17, 44:13
**category** [4] - 7:11, 7:23, 8:9, 8:15
**cease** [1] - 16:7
**certain** [4] - 11:2, 34:19, 44:19, 44:20
**certainly** [3] - 44:22, 46:4, 51:2
**certify** [1] - 53:22
**cetera** [2] - 36:7
**chance** [1] - 46:22
**change** [1] - 26:23

**changes** [3] - 26:5, 26:9, 26:12
**character** [3] - 3:20, 3:22, 30:24
**charge** [2] - 11:8, 11:14
**chat** [13] - 17:1, 17:3, 33:11, 33:12, 36:19, 36:22, 37:12, 37:20, 37:23, 38:20, 39:4, 39:15
**Circuit** [3] - 4:6, 4:7
**cite** [1] - 52:11
**CIVIL** [1] - 1:3
**claim** [1] - 44:16
**claims** [1] - 44:13
**clarify** [2] - 9:13, 27:11
**clause** [3] - 28:9, 28:10, 28:11
**clear** [1] - 25:8
**cleared** [1] - 13:15
**CLERK** [3] - 3:1, 25:24, 45:6
**clerk** [1] - 25:22
**client** [43] - 6:18, 7:25, 8:14, 9:3, 9:9, 9:12, 9:13, 9:20, 10:9, 13:1, 13:2, 13:4, 16:3, 16:22, 17:2, 25:4, 31:20, 31:24, 32:1, 33:13, 33:17, 34:20, 35:11, 37:21, 38:2, 38:5, 39:16, 39:18, 40:5, 40:17, 40:20, 40:23, 40:24, 41:1, 41:6, 41:8, 41:9, 41:10, 41:11, 41:22, 42:4
**client's** [2] - 33:14, 41:22
**clients** [24] - 6:14, 6:19, 7:15, 8:1, 8:2, 9:15, 9:18, 9:19, 10:12, 11:16, 11:18, 16:19, 28:16, 29:7, 29:24, 30:18, 31:17, 32:11, 32:14, 32:15, 32:17, 35:16, 35:18, 40:6
**cobble** [1] - 44:22
**code** [16] - 5:14, 7:12, 7:13, 7:20, 8:24, 10:9, 11:25, 12:9, 12:17, 12:20, 13:24, 14:2, 14:3, 14:5, 15:3, 15:12
**coder** [1] - 12:5
**coders** [1] - 12:10
**cohort** [4] - 15:11, 15:13, 15:21, 24:16
**colleague** [1] - 35:2
**colleagues** [3] - 13:5, 13:6, 35:7
**collection** [1] - 23:20
**comfort** [1] - 52:7
**Commencing** [1] - 1:10
**commercial** [1] - 15:7
**communicated** [1] - 18:12
**communication** [2] - 32:8, 36:6
**company** [14] - 5:21, 11:12, 11:22, 12:2, 12:14, 12:21, 13:2, 13:19, 14:14, 16:18, 16:22, 22:20, 24:1, 37:13
**Company** [1] - 34:21
**company'** [1] - 16:1
**company's** [2] - 11:24, 19:20
**compelled** [1] - 5:18
**compete** [10] - 25:10, 27:12, 27:13, 27:19, 27:22, 28:2, 28:7, 28:8, 43:6, 43:9
**competent** [1] - 3:23
**competing** [1] - 28:5
**competition** [2] - 29:2, 29:5
**competitive** [1] - 32:12
**competitor** [2] - 43:19, 43:25
**compilation** [5] - 7:24, 8:14, 9:2, 9:9, 10:9
**compiled** [1] - 17:18
**compromises** [1] - 18:13
**computer** [4] - 1:23, 19:18, 21:10, 22:19
**computer-aided** [1] - 1:23
**computers** [4] - 18:15, 19:15, 19:16, 23:9
**concepts** [1] - 45:17
**concern** [4] - 13:23, 17:21, 46:20, 49:23
**concerned** [1] - 24:15
**concerning** [1] - 10:11
**concerns** [3] - 6:12, 6:25, 30:19
**conclude** [1] - 45:25
**concluded** [1] - 53:19
**conditions** [1] - 31:4
**conduct** [1] - 46:22
**conducting** [1] - 46:25
**conference** [3] - 12:24, 12:25, 16:20
**confidence** [1] - 30:23
**confidential** [5] - 30:22, 31:2, 31:8, 32:18, 47:23
**confidentiality** [1] - 6:25
**Connecticut** [1] - 4:9
**connection** [1] - 5:8
**considered** [1] - 11:20
**consulting** [3] - 7:14, 11:16, 15:9
**contact** [11] - 18:11, 32:6, 32:15, 35:25, 36:4, 36:5, 36:10, 36:11, 43:15, 53:10
**contacted** [1] - 43:3
**contained** [1] - 20:4
**content** [2] - 20:23, 29:18
**context** [1] - 38:20
**continuation** [1] - 35:3
**continue** [2] - 46:3, 46:4
**CONTINUED** [1] - 2:1
**contract** [2] - 25:7, 31:13
**control** [3] - 16:12, 19:8, 23:13
**conversation** [5] - 13:1, 13:11, 40:19, 44:9, 44:25
**conversations** [2] - 16:18, 40:17
**conversion** [5] - 14:19, 14:21, 14:23, 15:21, 24:16
**convinced** [2] - 50:12, 50:15
**copy** [7] - 12:18, 25:15, 25:21, 26:2, 29:12, 29:17, 30:10
**copyright** [5] - 12:18, 12:20, 14:4, 15:18, 15:19
**correct** [13] - 4:1, 7:21, 10:13, 20:12, 20:16, 21:23, 28:3, 29:9, 30:13, 35:12, 42:8, 43:6, 53:22
**cost** [2] - 17:13, 35:1
**costs** [1] - 35:1
**counsel** [3] - 3:14, 5:8, 5:15
**couple** [3] - 11:25, 47:15, 50:3
**course** [1] - 49:21
**court** [4] - 18:23, 33:14, 50:19, 51:12
**COURT** [191] - 1:1, 3:1, 3:2, 3:13, 3:19, 3:24, 4:2, 4:10, 4:15, 4:22, 5:20, 5:24, 6:1, 6:3, 6:17, 6:22, 7:7, 7:19, 7:22, 8:4, 8:12, 8:21, 9:1, 9:5, 9:14, 9:25, 10:4, 10:7, 10:14, 10:16, 10:20, 10:23, 11:1, 12:3, 12:12, 14:1, 14:7, 14:10, 14:21, 15:13, 15:20, 15:24, 17:5, 17:10, 17:16, 17:22, 17:25, 19:16, 19:23, 20:5, 20:9, 20:13, 20:17, 20:20, 20:25, 21:3, 21:13, 21:20, 21:24, 22:3, 22:11, 22:15, 22:18, 23:3, 23:6, 24:10, 24:14, 24:20, 25:1, 25:11, 25:15, 25:22, 25:25, 26:4, 26:8, 26:11, 26:14, 26:16, 26:21, 27:3, 27:5, 27:8, 27:14, 27:18, 27:25, 28:4, 28:14, 28:18, 28:23, 29:1, 29:6, 29:14, 29:17, 29:25, 30:2, 30:6, 30:11, 30:14, 30:17, 31:15, 33:1, 33:6, 33:18, 33:21, 33:25, 34:4, 34:7, 34:9, 34:11, 34:14, 35:5, 35:10, 35:15, 35:20, 35:24, 36:3, 36:14, 36:21, 36:24, 37:2, 37:5, 37:9, 37:14, 37:22, 38:1, 38:6, 38:9, 38:13, 38:16, 38:21, 38:23, 39:1, 39:6, 39:8, 39:11, 39:19, 39:23, 40:1, 40:4, 40:8, 40:12, 40:15, 40:19, 40:23, 41:1, 41:5, 41:8, 41:11, 41:16, 41:20, 41:25, 42:5, 42:9, 42:16, 42:19, 42:22, 42:25, 43:2, 43:8, 43:11, 43:21, 43:24, 44:5, 45:3, 45:8, 45:16, 45:20, 46:16, 47:4, 47:10, 48:1, 48:12, 48:14, 48:17, 48:24, 49:6, 49:9, 49:14, 49:22, 50:7, 50:12, 50:25, 51:14, 51:22, 52:4, 52:12, 52:14, 52:18, 52:21, 53:4, 53:18
**Court** [5] - 1:20, 3:10, 3:25, 4:7, 40:17
**Court's** [1] - 3:11
**court-ordered** [1] - 51:12
**Courthouse** [1] - 1:8
**courtroom** [1] - 46:4
**covenant** [2] - 25:19, 27:2
**covenants** [5] - 26:22, 30:12, 30:20, 31:4, 31:10
**criminal** [2] - 49:13, 49:15
**CRM** [1] - 8:8
**CRR** [2] - 1:20, 53:25
**CSR** [1] - 53:25
**custom** [1] - 15:2
**customer** [2] - 9:24, 15:4
**customers** [2] - 15:2, 15:8
**customize** [1] - 15:3

**D**

**Dakota** [1] - 26:24
**data** [11] - 9:24, 13:13, 13:15, 13:17, 14:25, 16:13, 48:15, 51:11, 52:7
**database** [1] - 14:13
**days** [3] - 6:6, 47:15, 50:3
**DC** [1] - 26:14
**deals** [1] - 52:22
**decide** [1] - 50:6
**declaration** [6] - 13:4, 16:25, 17:4, 33:10, 38:19, 38:25
**DEFENDANT** [1] - 2:4
**defendant** [1] - 47:22
**defendant's** [1] - 3:4
**delete** [2] - 13:16, 23:11
**deleted** [3] - 13:14, 20:23, 23:8
**deletion** [1] - 24:6
**deliver** [1] - 11:15
**denial** [1] - 47:25
**denied** [1] - 22:20
**denigrate** [1] - 52:2
**deny** [1] - 47:11
**denying** [1] - 19:15
**departure** [2] - 6:6, 13:22
**DEPUTY** [1] - 3:1
**desist** [1] - 16:7
**destroy** [2] - 49:19,

49:20
**destroying** [1] - 49:4
**destruction** [1] - 14:5
**details** [2] - 9:3, 45:20
**determine** [3] - 40:5, 41:25, 44:13
**determined** [1] - 41:21
**develop** [4] - 12:1, 12:8, 12:9, 12:22
**developing** [2] - 11:17, 11:24
**development** [2] - 11:13, 11:21
**device** [17] - 16:11, 19:5, 19:21, 19:25, 20:1, 20:10, 20:11, 20:15, 20:18, 20:25, 21:5, 21:7, 24:16, 24:18, 51:4, 51:7
**devices** [1] - 16:9
**diagram** [1] - 19:3
**difference** [2] - 27:25, 28:1
**different** [3] - 15:14, 15:16, 28:18
**difficult** [1] - 42:13
**difficulty** [1] - 50:2
**diligent** [1] - 3:23
**direction** [1] - 12:10
**directly** [6] - 32:5, 35:19, 36:3, 42:17, 42:20, 42:23
**disagree** [1] - 36:18
**disclosure** [1] - 5:5
**discovered** [2] - 12:14, 14:16
**discovery** [2] - 51:13, 52:10
**discuss** [1] - 46:19
**discussions** [4] - 5:7, 46:18, 49:25, 50:1
**dispute** [4] - 43:5, 45:18, 46:24, 50:6
**DISTRICT** [2] - 1:1, 1:2
**District** [4] - 4:7, 4:9, 51:23
**Districts** [1] - 4:8
**disturbing** [1] - 12:15
**divorced** [1] - 20:22
**docket** [3] - 4:12, 28:21, 48:5
**document** [6] - 8:18, 17:18, 17:20, 25:9, 33:23, 34:2
**documents** [9] - 7:3, 15:19, 20:17, 21:4, 21:16, 22:16, 22:21, 22:22, 25:13
**done** [5] - 6:11, 13:25, 23:15, 24:1, 44:15
**double** [1] - 13:5
**down** [3] - 8:22, 34:7, 44:10
**download** [1] - 21:9
**downloaded** [9] - 14:16, 15:12, 15:20, 16:1, 16:11, 19:10, 20:9, 22:16, 22:19
**downloads** [4] - 19:13, 21:9, 24:15, 24:23
**Dr** [27] - 3:3, 4:16, 4:19, 5:7, 5:11, 5:20, 6:11, 7:20, 11:5, 11:6, 12:16, 12:23, 13:7, 13:14, 15:12, 15:17, 16:6, 16:19, 17:6, 37:12, 41:3, 41:4, 50:24, 52:19, 52:21, 53:10
**DR** [1] - 1:5
**drill** [1] - 8:22
**during** [3] - 12:24, 32:15, 32:18
**duty** [1] - 18:10

## E

**e-mail** [1] - 5:11
**e-mailed** [1] - 42:19
**e-mails** [2] - 13:21, 31:22
**Eastern** [2] - 4:8, 51:23
**EASTERN** [1] - 1:2
**effectively** [1] - 13:19
**efforts** [2] - 5:17, 18:11
**eggs** [1] - 37:15
**either** [1] - 53:14
**electronic** [4] - 32:7, 32:8, 36:5, 36:6
**elsewhere** [1] - 52:8
**embedded** [2] - 12:17, 14:4
**employed** [2] - 23:22, 32:21
**employee** [11] - 13:3, 30:4, 34:13, 37:11, 39:10, 39:11, 39:12, 39:13, 39:15, 41:18, 42:11
**employees** [2] - 16:18, 19:9
**employer** [1] - 35:14
**employment** [13] - 11:10, 12:6, 19:18, 21:12, 26:20, 31:3, 31:7, 31:11, 32:4, 32:5, 32:13, 32:16, 32:19
**encompass** [1] - 44:14
**enforce** [1] - 27:15
**enforcement** [4] - 16:16, 25:2, 27:12, 27:16
**engineers** [1] - 12:21
**enjoins** [1] - 48:10
**enter** [8] - 22:7, 22:24, 24:20, 48:10, 50:13, 50:20, 51:3, 52:17
**entire** [1] - 47:7
**entitled** [2] - 52:10, 53:24
**EPAM** [47] - 1:3, 3:3, 3:8, 7:12, 7:14, 8:2, 9:20, 12:6, 13:8, 17:1, 17:2, 18:3, 19:4, 19:9, 19:22, 20:22, 23:16, 23:18, 23:22, 23:23, 25:7, 27:22, 30:23, 31:1, 31:6, 31:19, 31:20, 31:25, 32:2, 32:10, 32:12, 34:13, 34:20, 35:3, 35:13, 35:17, 35:19, 36:25, 37:3, 37:11, 39:10, 39:11, 39:12, 39:14, 41:18
**EPAM's** [8] - 6:13, 7:25, 8:20, 11:16, 16:12, 20:22, 23:8, 35:3
**EPAM-installed** [1] - 19:4
**epidemiologist** [2] - 11:12, 12:4
**errors** [1] - 18:24
**ESQUIRE** [2] - 1:15, 1:16
**et** [2] - 36:7
**ethical** [1] - 3:22
**ETL** [6] - 14:19, 14:21, 14:22, 15:21, 24:16
**event** [4] - 26:4, 26:8, 26:11, 26:23
**evidence** [5] - 33:19, 49:5, 49:11, 49:19, 51:24
**exact** [2] - 26:3, 33:20
**exactly** [1] - 6:8
**examination** [6] - 16:8, 46:23, 46:25, 50:23, 51:3, 51:7
**example** [8] - 8:8, 9:17, 9:20, 9:24, 14:4, 21:8, 31:21, 47:2
**excellent** [1] - 3:21
**exchanges** [1] - 45:12
**exclude** [1] - 45:13
**exfiltrated** [1] - 51:12
**exhibit** [1] - 17:4
**expected** [1] - 17:14
**expensive** [1] - 53:6
**experience** [1] - 52:5
**expertise** [1] - 37:19
**explaining** [3] - 52:3, 52:4, 52:6
**explore** [1] - 5:1
**extent** [2] - 7:2, 21:17
**external** [2] - 17:1, 33:10
**extract** [1] - 14:24
**extremely** [1] - 18:17

## F

**fact** [4] - 6:12, 21:22, 32:22, 49:24
**facts** [3] - 12:15, 17:6, 50:14
**factual** [1] - 19:1
**fairly** [1] - 51:10
**fall** [2] - 9:8, 21:17
**falls** [3] - 33:2, 33:4, 33:6
**family** [1] - 18:6
**far** [3] - 11:13, 31:15, 47:23
**fast** [1] - 37:10
**fax** [2] - 32:9, 36:7
**federal** [1] - 51:15
**feet** [1] - 45:24
**felt** [1] - 11:12
**few** [2] - 12:15, 17:23
**file** [5] - 4:13, 5:12, 14:12, 21:9, 47:12
**filed** [2] - 8:13, 17:23
**files** [34] - 5:13, 6:4, 6:12, 6:13, 8:1, 8:17, 8:18, 8:19, 10:10, 13:13, 13:15, 14:5, 14:17, 16:1, 19:2, 19:8, 19:9, 19:11, 19:13, 19:14, 20:3, 21:4, 21:7, 21:8, 22:20, 23:8, 23:10, 23:15, 23:17, 23:23, 24:3, 24:6
**financial** [8] - 8:10, 8:11, 8:12, 9:5, 9:7, 9:14, 9:23, 10:11
**fine** [2] - 48:18
**fire** [1] - 45:24
**first** [13] - 6:23, 7:11, 12:25, 16:19, 18:22, 22:1, 23:19, 24:5, 36:2, 36:17, 39:20, 45:11, 50:17
**First** [1] - 4:6
**fit** [2] - 8:13, 11:13
**five** [1] - 24:9
**FL** [1] - 1:16
**flinch** [1] - 47:19
**flinched** [1] - 47:18
**focus** [5] - 10:3, 11:23, 28:9, 43:11, 43:25
**folder** [2] - 20:24, 21:9
**following** [4] - 16:5, 31:9, 32:4, 32:13
**follows** [1] - 23:18
**FOR** [2] - 1:2, 1:15
**foregoing** [1] - 53:22
**forensic** [8] - 16:8, 46:22, 46:25, 50:22, 51:3, 51:7, 51:12, 52:10
**forgive** [1] - 18:24
**form** [2] - 32:7, 36:5
**former** [10] - 32:10, 35:2, 35:7, 35:11, 35:14, 35:16, 35:18, 39:12, 39:16, 40:5
**forward** [1] - 5:19
**fostering** [1] - 11:17
**frankly** [1] - 51:9
**free** [4] - 13:9, 16:23, 27:21, 27:22
**full** [1] - 5:5
**fully** [2] - 3:12, 5:2
**future** [1] - 31:11

## G

**gained** [1] - 32:18
**Gauriv** [11] - 34:11, 34:18, 37:7, 37:8, 37:12, 39:4, 39:8, 42:13, 42:14
**gauriv** [1] - 34:16
**general** [2] - 37:20, 45:17
**generate** [1] - 11:9
**generation** [1] - 24:17
**generator** [3] - 15:11, 15:13, 15:22
**given** [1] - 34:5
**goodwill** [1] - 32:1
**Govinda** [3] - 34:12, 34:16, 39:5
**GOWTHA** [1] - 1:5
**GOWTHAM** [1] - 2:2
**Gowtham** [2] - 3:3, 3:4
**grant** [1] - 21:15
**Greg** [2] - 19:19, 41:2
**group** [7] - 30:23, 31:7, 31:19, 31:25,

32:2, 32:13, 33:12
**group's** [2] - 31:20, 32:10

## H

**Haley** [2] - 1:20, 53:25
**handed** [1] - 20:1
**happy** [2] - 37:24, 45:22
**hardship** [1] - 18:8
**harm** [3] - 23:23, 32:2, 50:16
**Hawaii** [1] - 26:23
**header** [1] - 28:21
**healthcare** [2] - 7:18, 11:11
**hear** [3] - 11:4, 11:5, 17:5
**hearing** [7] - 5:2, 44:24, 46:8, 47:1, 47:8, 47:16, 53:16
**HEARING** [1] - 1:5
**hearsay** [1] - 13:5
**help** [7] - 12:8, 27:11, 35:2, 35:14, 42:15, 52:24, 52:25
**helped** [3] - 12:1, 35:8, 52:22
**helpful** [1] - 27:2
**Hi** [1] - 39:21
**hide** [1] - 49:19
**himself** [4] - 13:10, 17:2, 43:18, 48:25
**hired** [2] - 11:7
**historical** [5] - 7:25, 8:14, 9:2, 9:9, 10:9
**history** [4] - 11:10, 13:16, 14:12, 31:22
**hoc** [2] - 3:10, 4:11
**hold** [1] - 14:24
**home** [1] - 22:19
**Honor** [72] - 3:17, 4:1, 4:4, 4:14, 4:18, 5:4, 5:6, 5:19, 7:5, 7:12, 9:13, 10:2, 11:6, 11:19, 12:6, 13:6, 14:24, 15:1, 16:6, 16:15, 17:8, 22:1, 22:10, 22:14, 25:20, 27:1, 27:11, 27:23, 28:16, 29:16, 30:9, 33:8, 33:24, 36:2, 36:12, 36:13, 36:16, 37:1, 37:4, 37:16, 37:19, 38:11, 38:14, 38:18, 39:20, 40:3, 40:7, 40:10, 40:25, 41:2, 43:4, 43:17, 43:18, 44:2, 45:2, 45:5, 45:10, 46:13, 47:20, 48:9, 48:21, 49:23, 49:25, 50:5, 50:10, 50:21, 51:8, 51:21, 52:1, 52:16, 53:17
**Honor's** [1] - 52:13
**HONORABLE** [1] - 1:11
**hope** [1] - 35:23
**hoping** [1] - 46:6
**hour** [1] - 9:21
**hours** [2] - 9:22, 17:23

## I

**idea** [2] - 41:12, 51:19
**ideally** [1] - 52:16
**identifiable** [1] - 6:15
**identified** [1] - 14:18
**identify** [1] - 33:15
**ii** [1] - 32:21
**Illinois** [1] - 26:5
**immediate** [2] - 41:3, 50:16
**immediately** [2] - 13:19, 13:20
**immorality** [1] - 25:9
**impact** [1] - 24:23
**implicated** [1] - 6:16
**IN** [1] - 1:1
**Inc** [1] - 3:8
**INC** [1] - 1:3
**include** [1] - 45:13
**included** [1] - 16:2
**including** [3] - 27:8, 32:8, 36:6
**incorrectly** [1] - 37:6
**independent** [1] - 25:4
**indicated** [1] - 13:7
**indicating** [1] - 16:22
**indirectly** [2] - 32:5, 36:4
**individual** [1] - 24:2
**individuals** [1] - 40:6
**industries** [1] - 7:16
**industry** [8] - 7:14, 7:16, 11:11, 12:23, 12:25, 16:20, 31:1, 33:12
**info** [5] - 8:14, 9:3, 9:9, 10:9, 10:10
**information** [36] - 6:9, 6:15, 7:25, 8:1, 8:3, 8:5, 8:6, 8:8, 8:10, 8:11, 8:13, 8:19, 8:22, 9:6, 9:8, 9:12, 9:14, 9:17, 9:23, 10:11, 16:3, 16:4, 16:10, 20:10, 30:5, 30:22, 31:2, 31:8, 31:21, 31:23, 32:18, 39:4, 42:14, 43:22, 46:20, 47:23
**informing** [1] - 5:11
**Ingleheim** [7] - 34:21, 38:8, 39:22, 40:18, 41:24, 42:3, 42:12
**initial** [1] - 46:14
**injunction** [11] - 5:2, 44:24, 46:8, 47:1, 47:8, 47:13, 47:16, 48:3, 50:9, 50:23, 53:16
**insert** [1] - 17:2
**inserted** [1] - 25:8
**inserting** [1] - 35:1
**inside** [3] - 20:4, 23:16, 23:18
**installed** [1] - 19:4
**instance** [1] - 24:5
**instant** [1] - 32:9
**intellectual** [3] - 6:13, 6:18, 7:13
**intend** [1] - 5:12
**intention** [3] - 22:22, 35:16, 35:21
**intentionally** [1] - 49:4
**interests** [1] - 31:6
**introduced** [1] - 12:7
**introductions** [1] - 3:5
**inventions** [1] - 31:1
**investigation** [4] - 6:10, 13:23, 14:15, 16:5
**involved** [2] - 39:15, 53:12
**irreparable** [2] - 32:2, 50:16
**issue** [4] - 14:17, 39:13, 48:7, 48:16
**issues** [1] - 7:3
**IT** [1] - 20:22
**items** [1] - 47:2

## J

**JACOB** [1] - 1:15
**Jake** [1] - 3:7
**James** [2] - 1:8, 3:9
**JAMES** [1] - 1:16
**Jersey** [6] - 4:5, 4:9, 4:20, 12:24, 18:7, 26:19
**Johnson** [2] - 11:10
**join** [1] - 38:4
**Jones** [1] - 39:6
**judge** [1] - 51:15

## K

**Katie** [31] - 38:3, 38:5, 38:6, 38:7, 38:10, 39:8, 39:16, 39:19, 39:25, 40:1, 40:2, 40:4, 40:5, 40:8, 40:15, 40:18, 41:12, 41:13, 41:15, 41:16, 41:21, 42:1, 42:10, 42:11, 42:15, 42:16, 42:19, 42:22, 43:3
**Keep** [1] - 19:13
**keep** [1] - 8:7
**kids** [1] - 18:10
**Kim** [2] - 1:20, 53:25
**Kim_Haley@paed.uscourts.gov** [1] - 1:21
**kind** [3] - 18:17, 45:14, 46:7
**kit** [5] - 14:20, 14:21, 14:23, 15:21, 24:16
**Klebanov** [2] - 19:19, 41:3
**knowledge** [6] - 30:21, 30:25, 34:19, 34:22, 34:23, 39:14
**knows** [1] - 39:2

## L

**language** [5] - 25:8, 36:17, 43:14, 45:13, 46:19
**large** [2] - 19:11, 19:14
**last** [1] - 5:11
**launched** [2] - 13:23, 14:15
**LAW** [1] - 25:24
**law** [3] - 4:5, 25:22, 50:14
**lawsuit** [1] - 5:12
**lay** [1] - 7:7
**leader** [1] - 23:14
**learn** [1] - 31:20
**least** [2] - 48:9, 48:10
**leave** [2] - 5:20, 22:13
**left** [7] - 14:8, 16:24, 18:3, 33:10, 37:8, 37:13, 46:11
**legal** [1] - 51:6
**legitimate** [1] - 31:6
**letter** [1] - 16:6
**level** [2] - 12:8, 23:22
**levels** [2] - 13:5, 23:18
**license** [2] - 15:1, 15:8
**life** [2] - 7:17, 11:8
**lifeblood** [1] - 15:6
**light** [2] - 12:15, 13:18
**limitations** [1] - 32:20
**limited** [2] - 32:8, 36:6
**line** [1] - 39:20
**litigate** [2] - 51:10, 51:16
**litigation** [2] - 17:15, 53:6
**living** [1] - 18:6
**LLP** [1] - 1:15
**local** [3] - 3:13, 19:10, 19:13
**location** [4] - 26:3, 26:5, 26:9, 26:12
**longstanding** [2] - 13:2, 16:22
**look** [1] - 30:18
**looking** [5] - 24:11, 26:21, 28:21, 28:22, 43:14
**loss** [1] - 32:1
**Lucy** [6] - 13:3, 16:25, 33:9, 39:9, 40:21, 41:14

## M

**ma'am** [7] - 4:18, 17:24, 20:7, 21:2, 23:2, 24:19, 35:9
**machines** [1] - 19:10
**macro** [1] - 12:8
**mail** [3] - 5:11, 32:9, 36:7
**mailed** [1] - 42:19
**mails** [2] - 13:21, 31:22
**maintenance** [2] - 23:12, 24:3
**major** [1] - 10:2
**majority** [2] - 10:19, 10:24
**maliciously** [1] - 21:21
**management** [2] - 14:25, 23:21
**manager** [1] - 19:19
**managers** [1] - 11:15
**managing** [2] - 11:7, 11:14
**MANSGROVE** [1] - 2:2
**Market** [1] - 1:8
**marketing** [1] - 31:2
**Massachusetts** [1] - 26:9
**match** [1] - 15:3
**material** [1] - 47:13
**matter** [3] - 6:22, 22:8, 53:24
**McDermott** [7] - 13:3, 33:9, 38:19, 39:9,

39:10, 40:21, 41:14
**McDermott's** [1] - 16:25
**mean** [12] - 4:22, 10:24, 14:1, 17:22, 37:12, 38:17, 39:23, 44:1, 48:17, 48:24, 50:13, 51:5
**meaning** [1] - 38:4
**means** [1] - 52:9
**mechanism** [1] - 50:5
**media** [1] - 32:10
**medical** [1] - 14:25
**meet** [3] - 32:10, 33:16, 37:21
**meeting** [4] - 17:2, 33:13, 33:16, 39:24
**member** [1] - 3:24
**members** [2] - 12:17, 13:1
**messaging** [1] - 32:9
**messes** [1] - 29:21
**method** [1] - 31:1
**methodologies** [1] - 35:1
**micro** [1] - 23:17
**Microsoft** [1] - 16:1
**might** [4] - 11:12, 21:7, 21:10, 21:11
**minor** [1] - 45:19
**misappropriation** [2] - 5:13, 51:11
**missing** [1] - 30:8
**misused** [2] - 46:21, 52:8
**model** [1] - 9:21
**moment** [2] - 36:13, 47:21
**Monday** [1] - 39:25
**months** [4] - 18:16, 32:4, 32:16, 32:19
**motion** [2] - 4:12, 4:13
**move** [6] - 5:18, 7:22, 23:3, 23:6, 25:1, 53:8
**moved** [1] - 19:14
**MR** [191] - 3:7, 3:16, 3:21, 4:1, 4:4, 4:13, 4:18, 5:4, 5:6, 5:22, 5:25, 6:2, 6:5, 6:20, 7:5, 7:11, 7:21, 7:24, 8:5, 8:16, 8:25, 9:4, 9:11, 9:16, 10:1, 10:6, 10:13, 10:15, 10:18, 10:22, 10:25, 11:6, 12:5, 12:13, 14:3, 14:9, 14:11, 14:22, 15:16, 15:23, 15:25, 17:8, 17:12, 17:18, 17:24, 18:2, 19:17, 20:3, 20:7, 20:12, 20:16, 20:19, 20:21, 21:2, 21:6, 21:19, 21:23, 22:1, 22:10, 22:14, 22:17, 23:2, 23:4, 23:7, 24:13, 24:19, 24:25, 25:6, 25:13, 25:17, 25:20, 26:2, 26:7, 26:10, 26:13, 26:15, 26:18, 26:25, 27:1, 27:4, 27:6, 27:10, 27:16, 27:21, 27:23, 28:3, 28:13, 28:15, 28:20, 28:25, 29:4, 29:10, 29:11, 29:13, 29:16, 29:24, 30:1, 30:4, 30:9, 30:13, 30:16, 31:14, 32:24, 33:4, 33:8, 33:19, 33:23, 34:3, 34:8, 34:10, 34:13, 34:16, 35:9, 35:13, 35:18, 35:22, 36:2, 36:12, 36:15, 36:23, 37:1, 37:4, 37:6, 37:11, 37:16, 37:24, 38:3, 38:7, 38:11, 38:14, 38:18, 38:22, 38:24, 39:3, 39:7, 39:9, 39:18, 39:20, 39:24, 40:3, 40:7, 40:10, 40:14, 40:16, 40:21, 40:24, 41:2, 41:7, 41:9, 41:14, 41:18, 41:23, 42:2, 42:8, 42:11, 42:18, 42:21, 42:24, 43:1, 43:4, 43:10, 43:17, 43:23, 44:2, 45:2, 45:5, 45:10, 45:17, 46:13, 46:17, 47:5, 47:20, 48:9, 48:13, 48:15, 48:21, 49:4, 49:8, 49:12, 49:21, 50:10, 50:21, 51:8, 51:21, 52:1, 52:6, 52:13, 52:16, 52:19, 53:1, 53:17
**must** [1] - 28:18

## N

**name** [3] - 4:19, 12:19, 41:22
**names** [1] - 31:21
**nature** [1] - 30:20
**necessary** [1] - 31:5
**need** [8] - 16:12, 16:13, 25:15, 34:20, 47:7, 50:22, 50:25, 51:1
**needed** [1] - 34:20
**negotiate** [8] - 4:25, 21:25, 22:8, 22:13, 44:10, 52:22, 52:24, 53:1
**negotiated** [1] - 25:7
**negotiating** [1] - 53:13
**negotiation** [1] - 53:12
**negotiations** [3] - 23:5, 53:7, 53:8
**network** [1] - 16:12
**Nevada** [1] - 26:12
**new** [2] - 11:9, 11:17
**NEW** [2] - 1:17
**New** [10] - 4:5, 4:6, 4:8, 4:9, 4:19, 12:24, 18:7, 26:19, 51:20
**next** [9] - 7:22, 7:23, 18:16, 19:4, 30:7, 44:23, 47:14, 50:3, 53:8
**nightmares** [1] - 23:13
**NJ** [1] - 2:3
**NO** [1] - 1:3
**non** [21] - 16:16, 25:2, 25:10, 27:12, 27:13, 27:17, 27:18, 27:19, 27:20, 28:7, 28:8, 28:9, 28:11, 28:16, 29:2, 29:3, 29:5, 29:6, 29:24, 30:17, 31:17
**non-compete** [6] - 25:10, 27:12, 27:13, 27:19, 28:7, 28:8
**non-competition** [2] - 29:2, 29:5
**non-solicitation** [13] - 16:16, 25:2, 27:17, 27:18, 27:20, 28:9, 28:11, 28:16, 29:3, 29:6, 29:24, 30:17, 31:17
**North** [1] - 26:23
**Northern** [1] - 4:8
**nothing** [2] - 35:24, 51:2
**notice** [2] - 5:10, 16:7
**November** [3] - 1:9, 6:2, 6:3
**number** [6] - 12:16, 12:23, 14:19, 33:9, 42:2, 43:5
**numbers** [1] - 31:21

## O

**objection** [1] - 47:17
**obtain** [2] - 30:25, 51:12
**obviously** [5] - 18:22, 43:18, 43:21, 46:14, 47:6
**October** [10] - 5:22, 5:24, 12:14, 12:25, 13:20, 14:11, 14:14, 16:6, 18:10, 34:17
**Odyessy** [1] - 37:25
**Odyssey** [3] - 33:11, 35:4, 38:4
**OF** [1] - 1:2
**offer** [2] - 35:22, 35:23
**offered** [4] - 18:14, 23:4, 32:12, 35:1
**offering** [3] - 32:11, 36:8, 37:21
**Official** [1] - 1:20
**Oklahoma** [1] - 26:24
**once** [1] - 22:19
**one** [23] - 7:4, 12:16, 13:1, 13:4, 13:6, 14:19, 19:18, 21:11, 24:4, 24:23, 25:7, 33:9, 35:6, 36:12, 36:13, 42:2, 43:5, 44:12, 44:25, 46:9, 51:18, 52:24
**OneDrive** [4] - 19:6, 19:9, 20:4, 21:6
**onerous** [1] - 18:17
**ongoing** [1] - 11:24
**open** [2] - 8:17, 33:14
**opened** [1] - 44:3
**OPENS** [1] - 3:1
**operator** [1] - 25:4
**opportunity** [1] - 17:9
**option** [2] - 19:6, 19:12
**oral** [2] - 32:7, 36:5
**order** [8] - 21:16, 22:25, 24:21, 29:19, 45:12, 45:25, 48:10, 51:3
**ordered** [1] - 51:12
**originally** [1] - 5:10
**OSLICK** [8] - 1:15, 3:7, 3:16, 3:21, 4:1, 5:4, 28:25, 29:16
**Oslick** [1] - 3:7
**outcome** [1] - 34:24
**outset** [2] - 16:4, 18:2
**outside** [4] - 16:11, 33:2, 33:4, 37:3
**own** [3] - 19:21, 44:3, 52:4
**ownership** [3] - 12:20, 15:19

## P

**PA** [1] - 1:9
**page** [11] - 19:4, 27:2, 27:3, 27:4, 27:5, 28:15, 28:17, 29:14, 30:7, 30:8, 30:11
**pages** [4] - 28:19, 28:22, 28:23, 28:25
**papers** [5] - 14:18, 40:11, 43:23, 44:3
**paragraph** [5] - 29:9, 29:10, 29:22, 30:12, 30:14
**part** [12] - 8:19, 9:11, 9:23, 9:24, 12:6, 15:9, 16:25, 19:20, 21:6, 23:4, 24:7, 42:3
**particular** [8] - 11:25, 14:17, 15:4, 33:2, 33:16, 34:20, 39:13, 44:16
**parties** [1] - 45:13
**past** [1] - 46:21
**patient** [1] - 6:16
**pay** [3] - 4:11, 17:14, 47:1
**paying** [1] - 12:21
**peculiarly** [1] - 39:14
**penalties** [1] - 49:10
**PENNSYLVANIA** [1] - 1:2
**Pennsylvania** [1] - 51:23
**people** [3] - 38:10, 43:13, 44:7
**performer** [1] - 11:20
**perhaps** [1] - 52:23
**period** [1] - 21:11
**permanently** [3] - 13:16, 23:8, 23:10
**permission** [2] - 3:11, 19:19
**permitted** [1] - 3:11
**person** [1] - 42:1
**personal** [14] - 6:15, 16:11, 19:16, 19:18, 20:10, 20:11, 20:14, 20:18, 21:4, 24:15, 24:18, 51:4, 51:7, 52:5
**pharmaceutical** [1] - 11:11
**Pharmaceutical** [1] - 34:21
**Philadelphia** [1] - 1:9
**phone** [3] - 31:21, 32:9, 36:7
**pick** [1] - 18:10

**piece** [2] - 7:6, 34:19
**pieces** [1] - 24:17
**place** [2] - 35:3, 50:5
**places** [1] - 30:22
**plaintiff** [3] - 3:6, 3:8, 35:11
**PLAINTIFF** [1] - 1:15
**plaintiffs** [3] - 4:24, 25:14, 35:25
**plan** [1] - 4:13
**platforms** [1] - 8:8
**plus** [1] - 32:4
**point** [2] - 24:4, 43:18
**pointed** [1] - 30:3
**points** [2] - 10:3, 19:1
**policies** [2] - 19:20, 23:21
**portion** [1] - 23:13
**position** [2] - 30:21, 30:22
**possess** [1] - 32:17
**possessed** [1] - 34:22
**possession** [1] - 47:24
**possible** [2] - 29:11, 49:10
**potential** [2] - 46:20
**potentially** [2] - 6:16, 52:8
**practicing** [1] - 4:5
**preceding** [2] - 32:16, 32:19
**predominantly** [1] - 11:8
**prefer** [1] - 33:13
**prejudice** [1] - 47:11
**preliminarily** [1] - 4:11
**preliminary** [12] - 5:2, 5:7, 44:24, 46:8, 47:1, 47:8, 47:13, 47:15, 48:3, 50:8, 50:23, 53:16
**prep** [1] - 5:3
**prepared** [2] - 1:22, 3:12
**present** [4] - 27:21, 39:18, 47:21, 49:25
**presented** [3] - 17:19, 50:15
**preservation** [1] - 48:22
**preserves** [2] - 48:13, 48:15
**press** [1] - 19:13
**pretty** [1] - 48:22
**preventing** [2] - 24:21, 24:22
**price** [1] - 37:15
**pricing** [4] - 8:6, 9:17, 31:23
**primary** [4] - 18:5, 26:5, 26:8, 26:11
**Princeton** [1] - 4:19
**PRINCETON** [1] - 2:3
**principal** [1] - 11:8
**printed** [1] - 30:9
**PRO** [1] - 2:4
**pro** [2] - 3:10, 4:11
**problem** [2] - 21:18, 48:6
**Proceeding** [1] - 45:7
**proceeding** [2] - 33:14, 47:17
**proceedings** [2] - 5:9, 53:23
**Proceedings** [2] - 1:22, 53:19
**process** [3] - 23:19, 44:16, 44:17
**processing** [1] - 30:4
**product** [2] - 12:9, 15:7
**profits** [3] - 9:18, 9:22, 10:11
**program** [1] - 15:17
**programs** [1] - 15:17
**progress** [2] - 5:17, 45:23
**prohibitive** [1] - 17:14
**project** [10] - 8:1, 9:22, 10:10, 11:15, 12:1, 12:18, 15:4, 15:10, 16:3, 41:19
**projects** [2] - 9:19, 11:24
**prong** [1] - 50:18
**proper** [1] - 5:3
**property** [3] - 6:13, 6:18, 7:13
**proposals** [2] - 8:6, 10:10
**proposed** [1] - 45:11
**prospective** [2] - 32:11, 32:15
**protect** [1] - 31:6
**provide** [3] - 7:15, 35:2, 52:11
**provided** [2] - 31:9, 51:18
**provision** [6] - 16:16, 25:2, 31:24, 33:3, 33:5, 33:7
**publicly** [1] - 24:1
**purge** [1] - 18:14
**purposes** [2] - 32:11, 36:8
**put** [5] - 15:18, 24:10, 45:24, 47:5, 48:5
**putting** [1] - 43:18

## Q

**questions** [1] - 42:13
**quite** [1] - 51:8
**quote/unquote** [1] - 13:9

## R

**raised** [2] - 17:21, 19:2
**ranging** [1] - 8:1
**Rao** [28] - 3:4, 4:16, 4:19, 5:11, 5:20, 6:11, 7:20, 11:5, 11:6, 12:16, 12:23, 13:7, 13:14, 15:12, 15:18, 16:6, 16:19, 17:6, 31:12, 37:12, 42:6, 50:24, 52:19, 52:21, 53:10
**RAO** [59] - 4:18, 17:8, 17:12, 17:18, 17:24, 18:2, 19:17, 20:3, 20:7, 20:12, 20:16, 20:19, 20:21, 21:2, 21:6, 21:19, 21:23, 22:17, 23:2, 23:4, 23:7, 24:13, 24:19, 24:25, 25:6, 25:13, 25:17, 26:2, 26:7, 26:10, 26:13, 26:15, 26:18, 26:25, 27:21, 28:3, 29:11, 31:14, 32:24, 33:19, 33:23, 34:3, 34:6, 34:8, 34:10, 34:13, 34:16, 35:9, 35:13, 35:18, 35:22, 42:11, 42:18, 42:21, 42:24, 43:1, 49:4, 49:12, 49:21
**Rao's** [2] - 5:7, 41:3
**rather** [1] - 30:19
**reach** [4] - 5:16, 34:19, 46:7, 50:2
**reached** [5] - 34:24, 35:7, 37:18, 45:8, 45:9
**reaching** [1] - 37:20
**read** [1] - 41:20
**reading** [1] - 34:9
**reads** [1] - 29:23
**ready** [1] - 45:4
**real** [1] - 44:25
**really** [3] - 49:24, 51:14, 51:23
**reason** [4] - 16:17, 31:10, 37:17
**reasonable** [3] - 18:11, 18:20, 31:5
**reasonably** [1] - 31:5
**received** [1] - 39:3
**recently** [1] - 43:7
**recitation** [1] - 36:18
**record** [1] - 53:23
**recycle** [2] - 23:20, 23:21
**redefined** [1] - 11:23
**refer** [1] - 38:1
**referenced** [1] - 19:3
**referred** [3] - 16:3, 16:4, 16:20
**referring** [1] - 36:19
**regard** [1] - 12:11
**regarded** [1] - 3:22
**regardless** [3] - 31:10, 42:6, 48:23
**relating** [1] - 7:25
**relationship** [2] - 31:19, 32:1
**relationships** [1] - 11:17
**relevant** [2] - 30:25, 31:24
**relying** [1] - 37:18
**remain** [1] - 32:21
**remediated** [1] - 16:13
**remove** [1] - 23:15
**removing** [1] - 23:23
**reported** [1] - 13:3
**Reporter** [1] - 1:20
**reports** [2] - 13:12, 25:3
**represent** [6] - 6:18, 7:1, 18:23, 40:16, 53:3, 53:5
**representation** [2] - 18:25, 47:21
**representative** [2] - 38:7, 40:18
**represented** [1] - 37:7
**representing** [7] - 4:17, 4:20, 5:8, 17:11, 17:13, 48:25, 53:7
**request** [1] - 16:7
**requested** [1] - 18:15
**required** [2] - 23:25
**requiring** [1] - 51:3
**research** [1] - 34:24
**resident** [1] - 4:19
**residing** [1] - 6:9
**resolution** [1] - 5:16
**resolve** [1] - 47:7
**respect** [4] - 7:3, 21:16, 24:22, 36:19
**respond** [1] - 36:11
**responded** [2] - 5:15, 37:20
**response** [1] - 23:9
**responsibilities** [1] - 24:7
**responsibility** [1] - 23:14
**restraining** [1] - 24:21
**restriction** [2] - 32:14, 32:20
**restrictive** [5] - 25:18, 30:12, 30:20, 31:3, 31:10
**result** [1] - 31:7
**retention** [1] - 23:21
**retraining** [1] - 21:15
**return** [1] - 31:7
**reveal** [1] - 33:14
**revenue** [1] - 11:9
**revise** [1] - 45:11
**RFP** [3] - 8:3, 8:5, 10:10
**rFP** [1] - 8:4
**rights** [1] - 20:24
**rise** [1] - 45:6
**ROA** [2] - 1:5, 2:3
**ROAD** [1] - 2:2
**role** [6] - 11:13, 11:19, 11:23, 19:7, 30:8, 31:9
**role-based** [1] - 19:7
**roles** [1] - 19:8
**routine** [6] - 23:12, 24:3, 24:7, 48:22, 51:11, 51:17
**routinely** [1] - 51:24
**RPR** [2] - 1:20, 53:25
**rule** [1] - 44:11

## S

**saddle** [1] - 52:24
**sales** [1] - 10:14
**sanction** [2] - 49:15, 49:16
**satisfactory** [1] - 5:18
**save** [1] - 21:9
**saw** [1] - 47:18
**schedule** [4] - 33:16, 46:10, 47:15, 53:15
**sciences** [2] - 7:17, 11:8
**scientific** [1] - 34:24
**scope** [1] - 6:7
**screenshot** [1] - 33:20
**SE** [1] - 2:4
**seal** [1] - 33:15
**seat** [1] - 3:2
**Second** [1] - 4:6
**second** [4] - 6:25, 23:20, 36:12, 36:17
**secret** [1] - 32:18

**Section** [2] - 25:17, 25:18
**security** [1] - 23:18
**see** [4] - 8:7, 19:3, 33:21, 50:1
**seek** [2] - 34:22, 44:15
**seeking** [6] - 3:9, 5:12, 16:16, 27:12, 27:14, 27:16
**sense** [3] - 43:20, 46:1, 53:15
**sent** [2] - 5:10, 16:6
**separate** [1] - 9:10
**separately** [1] - 32:17
**September** [1] - 11:22
**server** [2] - 13:15, 16:2
**servers** [1] - 14:15
**service** [1] - 31:22
**services** [7] - 11:16, 30:24, 31:24, 32:11, 35:19, 35:23, 36:8
**set** [2] - 44:19, 44:20
**several** [2] - 6:5, 8:24
**Seyfarth** [1] - 3:7
**SEYFARTH** [1] - 1:15
**shadow** [1] - 22:22
**shadows** [1] - 21:8
**shall** [1] - 32:14
**SharePoint** [5] - 8:20, 13:15, 16:2, 19:7, 23:9
**SHAW** [1] - 1:15
**Shaw** [1] - 3:8
**shock** [1] - 18:4
**short** [1] - 18:19
**shortly** [1] - 12:13
**show** [1] - 25:11
**side** [2] - 17:17, 34:5
**sign** [1] - 48:19
**significant** [1] - 32:2
**signs** [1] - 48:5
**similar** [1] - 32:12
**single** [2] - 8:17, 44:12
**sit** [2] - 34:7, 44:10
**site** [1] - 23:20
**sitting** [1] - 51:15
**situation** [1] - 15:5
**skill** [1] - 30:25
**small** [1] - 49:17
**snapshot** [1] - 38:12
**social** [1] - 32:9
**soft** [1] - 12:4
**software** [19] - 5:14, 7:12, 7:13, 7:14, 7:15, 7:20, 8:24, 10:9, 11:25, 14:3, 14:16, 15:1, 15:3, 15:9, 19:5, 19:12, 24:15, 24:18, 24:23
**solicit** [9] - 16:21, 27:24, 28:2, 32:5, 32:6, 36:4, 43:13, 44:6
**solicitation** [16] - 16:16, 25:2, 27:17, 27:18, 27:20, 28:9, 28:10, 28:11, 28:16, 29:3, 29:6, 29:24, 30:17, 31:17, 35:11, 43:25
**solicited** [1] - 43:13
**soliciting** [4] - 35:16, 35:19, 35:21, 43:19
**solutions** [1] - 7:15
**someone** [2] - 36:24, 41:21
**sorry** [12] - 5:5, 8:9, 20:7, 26:1, 28:20, 33:6, 34:10, 36:12, 37:9, 39:7, 41:7, 48:15
**sort** [6] - 7:7, 8:7, 10:2, 12:8, 47:18, 50:4
**source** [1] - 13:14
**Southern** [1] - 4:8
**speaking** [3] - 7:17, 22:2, 37:9
**special** [1] - 30:24
**specialized** [1] - 34:23
**specific** [3] - 9:19, 31:23, 45:12
**specifically** [1] - 9:13
**spent** [1] - 25:6
**spoliation** [6] - 48:16, 48:25, 49:2, 49:3, 49:7, 49:10
**stage** [2] - 23:20
**stamp** [1] - 18:19
**standard** [1] - 23:18
**standardized** [1] - 34:25
**standpoint** [3] - 11:21, 22:2, 22:4
**start** [3] - 17:10, 45:25, 53:13
**starts** [2] - 27:6, 30:8
**state** [2] - 18:4, 18:8
**State** [1] - 26:17
**STATES** [1] - 1:1
**stenographically** [1] - 1:22
**steps** [1] - 18:5
**still** [7] - 20:17, 21:10, 30:2, 46:14, 46:19, 47:3, 47:24
**stipulate** [2] - 48:2, 48:18
**stipulates** [1] - 48:4
**stipulation** [6] - 22:25, 45:9, 46:7, 47:14, 48:19, 52:15
**stop** [1] - 24:12
**stored** [1] - 23:17
**story** [2] - 11:4, 17:17
**strategies** [1] - 31:2
**Street** [1] - 1:8
**structure** [1] - 31:23
**stuff** [4] - 8:7, 24:12, 34:1, 45:14
**subjected** [1] - 25:10
**submitted** [2] - 25:14, 44:4
**sufficient** [1] - 52:7
**suggest** [1] - 51:2
**suggesting** [1] - 13:9
**suggestion** [1] - 45:21
**Sunday** [1] - 18:11
**supervisor** [1] - 41:3
**supplement** [1] - 40:10
**suppose** [1] - 46:6
**suspended** [1] - 13:20
**system** [1] - 8:20
**SYSTEMS** [1] - 1:3
**Systems** [2] - 3:3, 3:8

## T

**takeaway** [1] - 13:11
**tamper** [2] - 23:10, 24:2
**tampered** [1] - 23:8
**tampering** [3] - 13:24, 14:1, 14:8
**TCF** [1] - 30:10
**team** [8] - 11:15, 12:10, 12:17, 12:21, 13:1, 13:13, 23:14, 42:4
**Teams** [5] - 17:1, 17:3, 33:11, 36:19, 36:22
**technical** [2] - 22:2, 22:4
**technology** [1] - 12:7
**temporary** [2] - 21:15, 24:21
**tenant** [2] - 33:11, 35:4
**tenants** [1] - 37:25
**tenor** [1] - 50:1
**tenure** [1] - 26:20
**term** [1] - 32:3
**terminated** [5] - 5:23, 13:19, 20:22, 24:8, 34:18
**termination** [8] - 12:14, 25:9, 31:11, 32:4, 32:13, 32:16, 32:19, 34:17
**terms** [5] - 5:1, 6:21, 9:16, 15:7, 31:4
**testified** [1] - 38:19
**testify** [1] - 41:14
**text** [2] - 16:2, 38:12
**texted** [1] - 42:22
**THE** [195] - 1:1, 1:2, 1:11, 1:15, 3:1, 3:2, 3:13, 3:19, 3:24, 4:2, 4:10, 4:15, 4:22, 5:20, 5:24, 6:1, 6:3, 6:17, 6:22, 7:7, 7:19, 7:22, 8:4, 8:12, 8:21, 9:1, 9:5, 9:14, 9:25, 10:4, 10:7, 10:14, 10:16, 10:20, 10:23, 11:1, 12:3, 12:12, 14:1, 14:7, 14:10, 14:21, 15:13, 15:20, 15:24, 17:5, 17:10, 17:16, 17:22, 17:25, 19:16, 19:23, 20:5, 20:9, 20:13, 20:17, 20:20, 20:25, 21:3, 21:13, 21:20, 21:24, 22:3, 22:11, 22:15, 22:18, 23:3, 23:6, 24:10, 24:14, 24:20, 25:1, 25:11, 25:15, 25:22, 25:24, 25:25, 26:4, 26:8, 26:11, 26:14, 26:16, 26:21, 27:3, 27:5, 27:8, 27:14, 27:18, 27:25, 28:4, 28:14, 28:18, 28:23, 29:1, 29:6, 29:14, 29:17, 29:25, 30:2, 30:6, 30:11, 30:14, 30:17, 31:15, 33:1, 33:6, 33:18, 33:21, 33:25, 34:4, 34:7, 34:9, 34:11, 34:14, 35:5, 35:10, 35:15, 35:20, 35:24, 36:3, 36:14, 36:21, 36:24, 37:2, 37:5, 37:9, 37:14, 37:22, 38:1, 38:6, 38:9, 38:13, 38:16, 38:21, 38:23, 39:1, 39:6, 39:8, 39:11, 39:19, 39:23, 40:1, 40:4, 40:8, 40:12, 40:15, 40:19, 40:23, 41:1, 41:5, 41:8, 41:11, 41:16, 41:20, 41:25, 42:5, 42:9, 42:16, 42:19, 42:22, 42:25, 43:2, 43:8, 43:11, 43:21, 43:24, 44:5, 45:3, 45:8, 45:16, 45:20, 46:16, 47:4, 47:10, 48:1, 48:12, 48:14, 48:17, 48:24, 49:6, 49:9, 49:14, 49:22, 50:7, 50:12, 50:25, 51:14, 51:22, 52:4, 52:12, 52:14, 52:18, 52:21, 53:4, 53:18
**theft** [1] - 6:7
**therefore** [1] - 22:24
**thinking** [3] - 8:10, 8:11, 46:12
**Third** [1] - 4:7
**third** [1] - 13:12
**three** [1] - 14:17
**throughout** [2] - 23:15, 26:20
**timeline** [1] - 18:19
**today** [14] - 3:12, 4:14, 5:19, 6:1, 7:17, 40:13, 40:20, 40:22, 40:23, 40:24, 41:10, 44:21, 46:14, 48:10
**together** [1] - 44:22
**tomorrow** [3] - 38:4, 52:17, 53:14
**tonight** [1] - 53:14
**took** [2] - 7:20, 22:19
**top** [1] - 28:16
**tough** [1] - 18:8
**trade** [1] - 32:18
**traded** [1] - 24:1
**training** [1] - 34:24
**transaction** [1] - 33:20
**transactional** [1] - 53:7
**transcript** [1] - 53:23
**transcription** [1] - 1:23
**transferred** [1] - 52:8
**transitioned** [1] - 11:23
**transpired** [1] - 36:18
**tried** [3] - 18:6, 33:12, 33:15
**TRO** [13] - 1:5, 3:4, 4:23, 5:1, 5:13, 7:3, 16:14, 22:7, 44:15, 46:15, 47:11, 50:13, 50:20
**trust** [1] - 30:23
**try** [4] - 5:6, 5:16, 11:9, 18:23
**trying** [10] - 6:7, 6:14, 8:22, 24:12, 40:3, 45:11, 46:18, 47:3,

50:2, 52:2
**turn** [1] - 31:16
**turning** [1] - 30:6
**two** [8] - 12:23, 14:6, 15:16, 36:16, 44:23, 46:10, 48:2, 50:8
**tying** [1] - 6:6
**type** [1] - 8:6
**typical** [1] - 8:6

**U**

**U.S** [2] - 1:8, 4:7
**ultimately** [1] - 50:6
**unable** [4] - 17:15, 18:19, 23:10, 24:2
**under** [11] - 6:20, 6:23, 8:13, 9:8, 12:10, 18:8, 18:14, 25:18, 33:15
**understood** [11] - 10:22, 22:10, 22:13, 22:14, 40:14, 43:4, 45:1, 45:2, 50:21, 51:25, 52:1
**undisputably** [1] - 7:12
**unemployment** [1] - 18:7
**unfortunately** [1] - 50:11
**UNITED** [1] - 1:1
**unlawful** [1] - 52:9
**unless** [1] - 50:4
**up** [4] - 8:17, 18:10, 29:21, 44:3
**useful** [1] - 44:17
**user** [2] - 23:10, 23:22
**utilizing** [1] - 1:23

**V**

**vague** [1] - 10:23
**variety** [1] - 7:16
**various** [1] - 26:22
**vast** [2] - 10:19, 10:24
**versus** [1] - 3:3
**via** [1] - 37:25
**vice** [1] - 3:10
**view** [2] - 34:14, 35:10
**virtue** [1] - 31:3

**W**

**wants** [1] - 39:25
**Washington** [1] - 26:17
**ways** [1] - 49:16
**week** [2] - 5:11, 12:25
**weekend** [1] - 5:15
**weeks** [4] - 44:23, 46:10, 48:2, 50:8
**well-regarded** [1] - 3:22
**WENDY** [1] - 1:11
**whatsoever** [1] - 51:24
**witnesses** [1] - 5:3
**words** [1] - 32:24
**works** [5] - 8:2, 9:20, 42:1, 42:2, 42:4
**written** [2] - 32:7, 36:5

**Y**

**year** [1] - 21:12
**years** [3] - 3:18, 24:9, 51:16
**YORK** [2] - 1:17
**York** [3] - 4:6, 4:8, 51:20
**yourself** [3] - 4:3, 4:17, 17:11
**yU** [2] - 29:4, 44:2
**Yu** [7] - 3:9, 3:17, 4:2, 11:5, 17:7, 43:2, 49:6
**YU** [126] - 1:16, 4:4, 4:13, 5:6, 5:22, 5:25, 6:2, 6:5, 6:20, 7:5, 7:11, 7:21, 7:24, 8:5, 8:16, 8:25, 9:4, 9:11, 9:16, 10:1, 10:6, 10:13, 10:15, 10:18, 10:22, 10:25, 11:6, 12:5, 12:13, 14:3, 14:9, 14:11, 14:22, 15:16, 15:23, 15:25, 22:1, 22:10, 22:14, 25:20, 27:1, 27:4, 27:6, 27:10, 27:16, 27:23, 28:13, 28:15, 28:20, 29:10, 29:13, 29:24, 30:1, 30:4, 30:9, 30:13, 30:16, 33:4, 33:8, 36:2, 36:12, 36:15, 36:23, 37:1, 37:4, 37:6, 37:11, 37:16, 37:24, 38:3, 38:7, 38:11, 38:14, 38:18, 38:22, 38:24, 39:3, 39:7, 39:9, 39:18, 39:20, 39:24, 40:3, 40:7, 40:10, 40:14, 40:16, 40:21, 40:24, 41:2, 41:7, 41:9, 41:14, 41:18, 41:23, 42:2, 42:8, 43:4, 43:10, 43:17, 43:23, 45:2, 45:5, 45:10, 45:17, 46:13, 46:17, 47:5, 47:20, 48:9, 48:13, 48:15, 48:21, 49:8, 49:23, 50:10, 50:21, 51:8, 51:21, 52:1, 52:6, 52:13, 52:16, 52:19, 53:1, 53:17