**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counter-Defendant,<br><br>- against -<br><br>GOWTHAM RAO,<br><br>Defendant/Counter-Plaintiff. | Civ. A. No. 2:25-cv-06260 |

**DECLARATION OF JOSEPH GREENFIELD**

I, Joseph Greenfield, declare and state as follows:

1. I am over the age of 18, have personal knowledge of matters set forth herein, and could testify competently thereto if called to do so.

2. The firm of Maryman & Associates Inc. has been retained by the law firm of **Seyfarth Shaw**, counsel of record for **Plaintiff/Counter-Defendant EPAM Systems, Inc.** in connection with Case No. **2:25-cv-06260-WB**, to provide independent technical expert consulting services and opinions and analysis.

3. I am the President and Chief Forensic Examiner of Maryman & Associates Inc., a professional services firm specializing in computer forensics, cyber investigations, incident response and security consulting. I have nearly 20 years of experience in conducting investigations, collecting evidence and analyzing digital evidentiary items. The firm's associates have wide-ranging investigative, security and forensic experience with backgrounds in military, law enforcement, intelligence, and academia. They have traveled internationally in support of highly sophisticated and complex forensic and cyber matters for our clients and their legal representation.

4. In addition to my role at Maryman & Associates Inc., I am an Associate Professor of Technology and Applied Computing Practice at the Viterbi School of Engineering at the University of Southern California (USC). I have been teaching cyber security and forensics at USC

since 2006. During my time as a faculty member, I authored the first undergraduate cyber security program, the undergraduate Minor in Applied Computer Security, in 2009. In 2012, I launched a minor in Computer & Digital Forensics. In 2014, the Ponemon Institute ranked USC as 6th in the nation for "Best Schools for Cybersecurity" and the highest ranked on the West Coast.

5. I completed my Doctor of Philosophy (Ph.D.) in Computer Science at the University of Rhode Island in 2019. My thesis, entitled "SPARTA: System for Portable Acquisition with Real-Time Analysis" is available for download via the DigitalCommons@URI https://digitalcommons.uri.edu/oa_diss/1082/

6. I have performed thousands of hours of computer forensic investigation including forensic data acquisition and analysis of an extensive variety of digital evidence items including electronic business records and computer files. I have been a presenter at local and national conferences on various topics in digital forensics.

7. I have specific knowledge and testing of solid-state drive forensics, and have taught solid-state drive forensics as a part of the USC digital forensics curriculum as well as the Los Angeles Electronic Crimes Task Force, now the Cyber Fraud Task Force (CFTF).

8. Please see my Curriculum Vitae (CV) attached as Exhibit A for additional information regarding my experience and qualifications.

9. My analysis of the information relevant to this case is ongoing. I expect to continue reviewing information as it is presented to me, and it is possible that this new information may affect certain conclusions in this report. I reserve the right to supplement or amend this declaration, such as based on additional documents, testimony, or other information in this case.

10. I reserve the right to supplement or amend this declaration if and when appropriate.

11. I expect to testify at trial regarding the matters expressed in this declaration and in any supplemental report that I may provide in this litigation. I reserve the right to provide an expert report to address any issues or claims raised by Defendant or its expert with respect to the files provided. I may rely on visual aids and demonstratives to demonstrate the bases of my opinions. Examples of such visual aids and demonstratives may include, for example, charts,

drawings, diagrams, interrogatory responses, deposition transcripts and exhibits, as well as videos and animated or computer-generated video.

12. As part of this litigation, I have been asked by counsel for Plaintiff to provide an opinion regarding actions taken by the Defendant, Dr. Gowtham Rao, with regards to his MSI computer.

13. I was provided the following files for my review by counsel

a) Defendant's Letter in Response to EPAM Letter on Matter of Spoliation (ECF 42).pdf and 4 attachments.

b) [42] EPAM_Rao - Spoliation Letter [Filed].pdf

c) [43-2] EPAM v. Rao - MTD - Declaration of James Yu [Filed].pdf and five exhibits.

d) EPAMR-06448.A0001_Forensic_Investigation_Report-20260112.pdf and RE_ EPAMR-06448 - Forensic Reports For Review.pdf, along with the accompanying spreadsheets. The spreadsheet review was limited to those spreadsheets with the designation "A0001" in the path.

14. I calculated the SHA256 hash values for the documents. SHA256 is a cryptographic hash function that provides a unique mathematical number for the data contained within a file. No two files will have the same hash values if they do not contain the same data. The calculated hash values for the provided files are:

| Filename | Hash |
|---|---|
| **[42] EPAM_Rao - Spoliation Letter [Filed].pdf** | CD43294DFB1C1B44FE1A6ADAE5816CE4 DCAC506FD35F814CB3C58FB89B66407F |
| **[43-2] EPAM v. Rao - MTD - Declaration of James Yu [Filed].pdf** | 436E44CEB7C19A0475975F3F208F1D4BF D3C751E7F3899E3F3C9025BBDE858E0 |
| **[43-3] Exhibit 1 [Filed].pdf** | 07154818A702F4E3EFFC9EEBADFBBC30 D52C756A14D0B31ACF29F35BAF534427 |
| **[43-4] Exhibit 2 [Filed].pdf** | 08717ECFF3E499F5523B73A30E8F25A5D B230524D31A3F7EAB7A6FCF822E7132 |
| **[43-5] Exhibit 3 [Filed].pdf** | 1CA03A6589A0330F4F9D5B3679982ED40 F2C30995D5CFD91BC4C829909466ABB |

| | |
|---|---|
| **[43-6] Exhibit 4 [Filed].pdf** | 5CAFAE00AA69BC5FA48ED82291233EBC CF4CAAB1DE86B8558C14C138C5359825 |
| **[43-7] Exhibit 5 [Filed].pdf** | D6053ED98E43B7B31486B3D479E6246611 08E2FBC5BDB32626C831C834CFAC53 |
| **Defendant's Letter in Response to EPAM Letter on Matter of Spoliation (ECF 42).pdf** | 2842BD398B89A7FB760B1DAEECD85A8F 45D426351734CC7DA3573F409B2A8BFD |
| **Attachments # (1) Exhibit A.pdf** | 6BB45C2CB22612A2525C554369394F2AC 4E12B4A2B77AC7C606ACEB936A7DBBC |
| **Attachments # (2) Exhibit B.pdf** | A5573CA0F5A65390CF7D2B2CBDF46854 D045944D57B8BAB0B6B36F8E7B1D8448 |
| **Attachments # (3) Exhibit C.pdf** | 36EC864E2A8E962EE3FC9ED650E2CC350 4528ADBCFFED6F984E503572C7A71E1 |
| **Attachments # (4) Cover Page) (mbh).pdf** | 4B9DD696E0D952F8080BCBA7AEB13E63 5E203BB34DE0BF67ADCEA368C017C9C8 |
| **EPAMR-06448.A0001_Forensic_Investigation_Report-20260112.pdf** | 8F0B79780EBAAD3F6AC69B37E6A2F2B9 856BFFC4305BE537B59533DAB7A08A56 |
| **RE_ EPAMR-06448 - Forensic Reports For Review.pdf** | 615473D54DF58B8433433B3E8C6668A452 2E173B655E941DF2E7F0A1903C4CF4 |
| **EPAMR-06448.A0001_Forensic_Investigation_Report-20260112.pdf** | 8F0B79780EBAAD3F6AC69B37E6A2F2B9856 BFFC4305BE537B59533DAB7A08A56 |
| **EPAMR-06448.A0001-III-a-i-2-FileAccess.xlsx** | 82078C157349C1143F23F8DF2407B3B64E7 9663377523A8E9A0EEA16F6778D52 |
| **EPAMR-06448.A0001-III-a-i-2-FileKnowledge-LostFiles-KWResponsive.xlsx** | 54B545A61145D2652ED51A67804C449FE9C 488ACC56DF74763920FCBF9F55BAD |
| **EPAMR-06448.A0001-III-a-i-2-WebRelatedFileAccess.xlsx** | FA7BD3C6073BA358D4EB475A0AB37CE2CB 0755466170ABA2A61163E27CCC112A |
| **EPAMR-06448.A0001-III-a-i-KWResponsive-NOHASH.xlsx** | A2F7297F5ABF880AEAD5AA4BBEFE149C945 9C0AF9A95421E0EA12A5D2C40A5E5 |

15. Based upon my previous experience with iDS and the reputation of iDS, I am assuming that all technical elements in the materials provided by iDS are forensically sound.

16. Based upon "[43-4] Exhibit 2 [Filed].pdf," the internal drive was a Kingston SNV2S1000G. The Kingston website for the product, *https://www.kingston.com/en/memory/search/discontinuedmodels?partid=SNV2S/1000G*, states that this is a solid-state drive (SSD).

17. To summarize my opinion, Dr. Rao's actions of performing a system reset while "keeping my files" will either delete or overwrite all Windows system files on the system while

maintaining user-created documents, such as office documents (Word .docx, Excel .xlsx, PowerPoint .pptx, Adobe .pdf, etc.). Windows files and artifacts that I would expect to be deleted include the Windows registry files, web browsing activity, printing logs, Windows event logs, USB connection and disconnection activity, and file and/or folder activity logs, all of which hold key forensic value for examination, particularly for investigation of data exfiltration. The deleted data would likely be unrecoverable due to the function of solid-state drives.

18. In the Defendant's Exhibit B, the specific language for the Reset option "Keep my files" is "Also known as a Refresh, this option reinstalls Windows while keeping your personal files intact. It removes apps and settings but preserves your documents, photos, and other personal data."

19. I have performed this type of reset on both examination systems and personal systems. In my personal and professional experience, this action will reinstall Windows, causing an overwrite and/or rebuild of any and all Windows registry files.[1]

20. The material deleted through a Windows Reset on a Solid State Drive would unlikely be forensically recoverable.

21. The non-recoverability of deleted information is due to the nature by which Solid State Drives function. There is a system within solid-state drives called an Idle-Time Garbage Collector. The Idle-Time Garbage Collector is responsible for preemptively erasing parts of the drive with deleted data. This function improves the speed of solid-state drives. This is contrast with magnetic hard drives (HDDs) which do not have an Idle-Time Garbage Collector, and deleted data is recoverable unless explicitly wiped by a user or overwritten by new data.

22. Any deletion on a solid-state drive is unlikely to be forensically recoverable. Deleted data that is recovered using forensic techniques is either data that has yet to be erased by the Idle-Time Garbage Collector or data that was not properly marked for deletion by the operating system or hardware.

---

[1] A Windows Refresh or Reset will typically delete the previous registry files and compile new registry files from the Operating System install files. This renders the previous registry files as no longer recoverable.

23. While Dr. Rao is correct in that there does not exist a log of copy actions to a USB device on a Windows system, digital forensic examiners will typically use independent forensic artifacts and timeline analysis to determine if it is likely that files were copied to a USB device (such as a flash drive or external hard drive). This is a technique that is taught in nearly all digital forensic academic programs, including the one at USC which I built and in which I still teach. By using this technique, if Rao had not conducted the reset, I would expect that forensic analysis could have determined if files were likely to have been copied to one or more USB devices, and the relevant USB device(s) could have been identified.

24. The forensic artifacts, with timestamps, that can be used for determining if files were copied to a USB device include USBStor (Windows registry information pertaining specifically to USB devices), ShellBags (Windows registry information pertaining to folders accessed by a user), JumpLists (information pertaining to files opened by a user using a particular program), LNK files (shortcut files), and Windows Explorer history. All of these forensic artifacts can reference drive paths to removable devices and have timestamps pertaining to their references.

25. All of the above forensic artifacts are likely to be erased through a Windows reset, including the option for “keep my files” since these are all operating system files and not user-generated files.

26. I have reviewed the forensic reports prepared by iDS, the parties’ forensic neutral. Based on those reports, Rao’s own admissions, and the fact that the operating system was stored on a SSD, I would not expect operating system artifacts for the prior operating system to be recoverable. As such, USB connection events prior to the reset would be deleted and unrecoverable.

27. Accordingly, since I do not expect that the operating system artifacts for the prior operating system are recoverable, there is now no way to ascertain if Rao copied EPAM files to a USB device (or even which USB devices he connected to his computer before the reset), much less to identify the specific devices that could now hold EPAM’s files.

28. Additionally, web history files are typically stored in regions of the drive that are not marked as "user files" and not preserved through a Windows reset. Web history files would include references to cloud storage and generative AI platform queries.

29. Based on forensic reports prepared by iDS, since I do not expect that the operating system artifacts for the prior operating system are recoverable, it appears that forensic artifacts relating to web history have been rendered unrecoverable. While certain limited browsing data remains, it is impossible to know the extent of data that may have been deleted and is now unrecoverable due to the reset.

30. The forensic artifacts that are unrecoverable could have been used to determine whether Rao uploaded files to cloud storage systems and/or websites (such as to a Dropbox account) or whether Rao leveraged Generative AI platforms (such as ChatGPT, Co-Pilot, Claude, and Gemini), to create derivative works. The most popular cloud storage programs, such as Dropbox and Google Drive, maintain records of files uploaded and downloaded within a database file stored on the local computer called a sync history, if the user installed the program on their system. This file is wiped permanently during the kind of refresh/reset that Rao performed. The web browning history may also specifically identify uploads, including the file paths where files were uploaded. Further, if the file and folder activity indicated that Rao opened a file and then, almost immediately thereafter, visited a cloud storage website (such as Dropbox or Google Drive) or a Generative AI website, that would be a indication that he may have uploaded the file to the cloud storage site. Now, there are no forensic artifacts that would allow the determination as to whether Rao may have copied EPAM files to a cloud storage website, or inputted EPAM files into a Generative AI platform.

31. Based on forensic reports prepared by iDS, since I do not expect that the operating system artifacts for the prior operating system are recoverable, typical forensic artifacts relating to user activity, including jump lists, LNK files, shell bags, are deleted and unrecoverable. These forensic artifacts provide records of the files and folders opened by a particular user account at a particular date and time.

32. Forensic artifacts relating to user activity are a critical component in forensic timeline analyses. Such analyses are used to determine whether a user created derivative works, referenced other documents during the creation or modification of other documents, or deleted files. If these forensic artifacts related to user activity had been recoverable, they would have been critical in assessing whether Rao used EPAM files to create derivative works. For example, if the forensic artifacts related to user activity showed that Rao opened a file he downloaded from EPAM then, shortly thereafter, created a new file (including after visiting the website of a Generative AI platform), that would be an indication that the new file may be a derivative work. Through these forensic artifacts, EPAM would also know information about which specific files, not originally downloaded from EPAM, it should review and investigate to determine if those files contain EPAM information in a derivative form (such as through copying material, or the use of a Generative AI platform). Now, because of the reset, these forensic artifacts no longer exist.

33. Based on forensic reports prepared by iDS, Rao's reset also impacted the availability of forensic artifacts and evidence relating to deletion activity. While certain files placed into the Recycle Bin were recoverable, due to the function of solid-state drives, I would not expect forensic evidence to be available determine what files were deleted prior to the reset, what files were permanently overwritten by the reset, and what files were unable to be recovered after the reset. Thus, if Rao copied or otherwise created a derivative version of EPAM data and used them in any way, I would not expect forensic evidence to exist to determine the extent of such actions, including transfers to secondary sources (such as a USB device or cloud storage accounts) or comprehensive forensic artifacts relating to deleted user files or deleted user file activity. In other words, if Rao deleted files with a derivative version of EPAM data from this computer (including *after* transferring those files to a secondary source, such as a USB device or cloud storage account), and those deleted files were permanently overwritten, then any evidence of those derivative works once existing on this computer would be gone. Further, for the reasons described above, there would be no way to determine the locations of which secondary sources those derivative works may have been transferred to.

34. In the document "Defendant's Letter in Response to EPAM Letter on Matter of Spoliation (ECF 42).pdf," Dr. Rao states that "… I forgot the passwords for these accounts, and Windows eventually would not let me log in normally." Microsoft has a website detailing how to reset a Microsoft account password: https://support.microsoft.com/en-us/account-billing/reset-a-forgotten-microsoft-account-password-eff4f067-5042-c1a3-fe72-b04d60556c37. Additionally, Microsoft has a website on how to change or reset a Windows password: https://support.microsoft.com/en-us/windows/change-or-reset-your-microsoft-account-password-in-windows-8271d17c-9f9e-443f-835a-8318c8f68b9c. In reviewing both sites, neither recommends a reset nor a refresh of the entire computer system as an effective remedy for a forgotten password.

35. The actions performed by Dr. Rao impeded the forensic investigation due to the erasure of key Windows system files and forensic artifacts that would likely have allowed the forensic neutral, iDS, to establish facts and timelines of user activity prior to the system reset. Such user activity that is now undeterminable due to the reset would include usage of removable devices, including whether it was likely that files were copied to or from removable devices, web browsing activity (including those related to Cloud storage and Generative AI platforms), deletion activity, file and/or folder accesses, and other data exfiltration. The Microsoft sites that I reviewed do not provide any recommendations to enact a system reset as a remedy for a forgotten password.

36. Before performing the reset, Rao could have forensically preserved all forensic data on his desktop by having his computer imaged or by simply replacing the solid-state hard drive with a new one. The cost to replace the solid-state drive would have been approximately $200. Rao could have also arranged for his computer to be forensically imaged and I am aware of forensic experts in the New Jersey area that could have done so at reasonable costs.

37. To summarize my opinions, Rao's reset of his computer has made it impossible to identify and determine the extent of user activity on Rao's computer. Additionally, the reset has made it impossible to determine whether EPAM data has been copied to other data sources, such as USB devices, cloud storage accounts, or Generative AI platforms. The reset has also made it

impossible to determine, through available forensic artifacts, whether Rao used EPAM information to create derivative works, and which files not originally downloaded from EPAM are likely to contain EPAM information in a derivative form. The reset also erased forensic evidence that would have indicated which now deleted documents relating to EPAM had ever existed on his computer, either in original or derivative form, and have since been overwritten. Had the forensic evidence been preserved, then I would have expected forensic artifacts to exist to allow a review of file and folder activity, web browsing activity, USB activity, and a targeted review of additional files for EPAM data. Those artifacts would have been extremely valuable in answering each of the above inquiries.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 29, 2026 in Los Angeles, California.

# EXHIBIT A

MARYMAN
INCIDENT RESPONSE · INVESTIGATIONS · DIGITAL FORENSICS

**JOSEPH GREENFIELD, PH.D.**
*President &*
*Chief Forensic Examiner*

*Maryman & Associates Inc.*
*Telephone: 818-290-3775*
*Cell: 310-738-8788*
*jgreenfield@maryman.com*
*www.maryman.com*

***CURRICULUM VITAE***
June 2025

## PROFESSIONAL HISTORY

Dr. Joseph Greenfield is the President and Chief Forensic Examiner at Maryman & Associates Inc. and an award-winning educator. He is a renowned computer forensics expert with nearly 20 years of investigative experience, including cyber breach investigations, employee misconduct, and email recovery and analysis. He has worked over 1000 cases and analyzed over 2000 digital evidentiary items. He is known for deep forensic analysis while being able to explain technical details to non-technical decision-makers, attorneys, judges, juries, and clients. He has provided expert testimony in state, federal, and international legal matters.

Dr. Greenfield is also an Associate Professor of Technology and Applied Computing Practice at the Viterbi School of Engineering at the University of Southern California, where he has taught for nearly 20 years. He authored the undergraduate programs in both cybersecurity and digital forensics. In 2014, the Ponemon Institute ranked USC as 6th in the nation for *"Best Schools for Cybersecurity"* and the highest ranked on the West Coast. He also co-created the interdisciplinary bachelor's degree in Intelligence and Cyber Operations, now a part of the USC Political Science and International Relations Department in the Dornsife College of Letters, Arts and Sciences. He has taught thousands of students who have progressed to careers at some of the largest consulting companies in the world.

Dr. Greenfield engages in practical research in digital forensics. In 2009, he presented some of his research of peer-to-peer networks, specifically BitTorrent, to the Los Angeles Electronic Crimes Task Force (LAECTF) and the Los Angeles Chapter of the Information Systems Security Association (ISSA). He pioneered new techniques for associating downloaded content to the metadata files (.torrent files) with extreme accuracy. In 2012 and 2013, he presented a series of lectures to the LAECTF on Solid State Drives (SSDs), articulating the problems of flash memory for forensics and outlining how operating systems change their behavior when deployed on SSDs.

Dr. Greenfield holds a Bachelor's Degree in Computer Engineering & Computer Science and a Master's Degree in Computer Science from the University of Southern California. He completed his Ph. D. in Computer Science at the University of Rhode Island, where his research focused on parallel processing of all live files while creating a forensic bitstream image.

MARYMAN™
INCIDENT RESPONSE · INVESTIGATIONS · DIGITAL FORENSICS

## EDUCATION *University of Rhode Island*

Ph. D. Computer Science, Concentration in Digital Forensics — Dec. 2019
Dissertation: *SPARTA: System For Portable Acquisition with Real-Time Analysis*
https://digitalcommons.uri.edu/oa_diss/1082/

## EDUCATION *University of Southern California*

M.S. Computer Science — Aug. 2006
Cyber-Security Certificate, Information Technology Program — Dec. 2005
B.S. Computer Engineering and Computer Science — May 2005

## PROFESSIONAL AND TEACHING EXPERIENCE

President & Chief Forensic Examiner — Apr. 2025 - Present
*Maryman & Associates*

Vice President & Chief Forensic Examiner — Nov. 2017 – Apr. 2025
*Maryman & Associates*

Senior Forensic Examiner — Sep. 2008 - Nov 2017
*Maryman & Associates*

Associate Professor of Technology and Applied Comoputing — July 2016 - Present
*USC Technology and Applied Computing Program*

Senior Lecturer — July 2012 - July 2016
*USC Information Technology Program*

Lecturer, Part-Time and Full-Time — Aug. 2006 - June 2012
*USC Information Technology Program*

## CERTIFICATIONS

GIAC Certified Forensic Analyst (GFCA) — Jan 2021 - Jan 2025

## PUBLICATIONS

Greenfield, Joseph, "SPARTA: SYSTEM FOR PORTABLE ACQUISTION WITH REAL-TIME ANALYSIS" (2019). Open Access Dissertations. Paper 1082. https://digitalcommons.uri.edu/oa_diss/1082

MARYMAN™
INCIDENT RESPONSE · INVESTIGATIONS · DIGITAL FORENSICS

## ACADEMIC RESEARCH

Department of Electrical and Computer Engineering, *Naval Postgraduate School*
July 2010 - August 2010
*Researcher*, Honeynet Project
Under the supervision of Dr. Jeffrey Knorr and Dr. John McEachen

## SELECTED PRESENTATIONS & LECTURES

Cybersecure SoCal 2019
October 17, 2019
*Co-Presenter – Cybersecurity is a Team Sport*

USC-CBIZ Risk Management Symposium
October 11, 2018
*Panel Moderator – Cybersecurity: When Planning May Not Be Enough*

Enfuse 2017
May 22-25, 2017
*Speaker – Forensics Report Writing*

US Attorney/FBI Cyber Security Summit
October 18th, 2016
*Panelist*

USC Information Security Summit
November 30th, 2015
*Invited Speaker – Security Concerns for Faculty*

Los Angeles Electronics Crimes Task Force Quarterly Meeting
May 24th, 2013
*Speaker* – A Way Too Early Look at Windows 10 Forensics

USC Information Security Summit
November 30th, 2014
*Joint Speaker* – Lessons Learned on the Frontlines of Digital Forensics

Educause
October 16th, 2013
*Panelist* - A Proactive Approach to Data Breach Response

MARYMAN™
INCIDENT RESPONSE • INVESTIGATIONS • DIGITAL FORENSICS

Digital Forensics Group, US Treasury Inspector General for Tax Administration (TIGTA)
August 8th, 2013
*Speaker* – Solid State Drive Forensics and Advanced Topics

Los Angeles Electronics Crimes Task Force Quarterly Meeting
May 24th, 2013
*Speaker* – Advanced Solid State Topics

Los Angeles Electronics Crimes Task Force Quarterly Meeting
May 18th, 2012
*Speaker* – Solid State Drive Acquisitions and Forensics

Los Angeles Electronics Crimes Task Force Quarterly Meeting
May 19th, 2009
*Speaker* – BitTorrent Forensics

## Courses Taught – University of Southern California

ITP/TAC 101 – Introduction to Information Technology
ITP/TAC 109 – Introduction to Java Programming
ITP/TAC 125 – From Hackers to CEOs: Introduction to Information Security
ITP/TAC 325 – Ethical Hacking and Systems Defense (previously titled Web Security)
ITP/TAC 370 – Information Security Management
ITP/TAC 375 – Digital Forensics
ITP/TAC 425 – Web Application Security
ITP/TAC 457 – Network Security
ITP/TAC 475 – Advanced Digital Forensics
INF/DSCI 528 – Computer and Network Forensics

## Programs Authored and Developed – University of Southern California

Bachelor of Arts in Intelligence & Cyber Operations (Co-Author)
Minor in Applied Computer Security, now Minor in Cybersecurity
Minor in Computer and Digital Forensics, now Minor in Digital Forensics
Specialization in Computer and Digital Forensics

## Computer Programming Languages Experience

C/C++, C#, Java, Python, BASIC, SQL, Javascript, HTML

## Computer Forensic Tools Experience

Autopsy, EnCase 6/7/8, FTK5/6, Internet Evidence Finder, Axiom, Log2Timeline, Forensic Explorer, Intella, KAPE, F-Response

MARYMAN™
INCIDENT RESPONSE • INVESTIGATIONS • DIGITAL FORENSICS

## OPERATING SYSTEMS EXPERIENCE

Apple/Macintosh OS 7,8,9,X
Linux/Unix
Microsoft DOS, Windows NT, 95, 98, ME, 2000, XP, Vista, 7, 8/8.1, 10, 11
Blackberry OS; Palm OS; Apple iOS, Android

## PROFESSIONAL MEMBERSHIPS AND ACTIVITIES

Information Systems Security Association (ISSA) – former member and past speaker
American Academy of Forensic Sciences (AAFS) – former member
Secure the Village Leadership Council

## HONORS & AWARDS

| | |
|---|---|
| USC Viterbi Dean’s Award for Innovation in Teaching and Education | 2021 |
| Certificate of Appreciation, United States Secret Service | 2009 |
| Special recognition for teaching excellence, Information Technology Program, December | 2008 |
| USC Deans Engineering Scholarship | 2001 |