**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff | Civil Action No. 2:25-cv-06260 |

**PLAINTIFF/COUNTER-DEFENDANT EPAM SYSTEMS, INC.'S MOTION TO SEAL**

Plaintiff/Counter-Defendant EPAM Systems, Inc. ("EPAM") submits this motion, pursuant to Local Rule 5.1.5, 18 U.S.C. § 1835, 12 Pa. Stat. § 5306, and/or the Court's inherent authority, for an order: (1) permitting it to introduce unredacted versions of Exhibits 9, 10 and 13 to the Declaration of Jacob Oslick ("Oslick Declaration") and less redacted versions of Exhibits 6-8 under seal during the September 16, 2026 hearing on EPAM's Motion for Sanctions for Spoliation of Evidence ("Spoliation Motion"); and (2) closing the courtroom during any testimony during the hearing regarding the sealed information.

In sum, the central grounds for this Motion, which are set forth in more detail and with legal support in the accompanying Memorandum of Law, are as follows:

1. A party seeking sealing bears the burden of establishing, on a document-by-document basis, that disclosure would cause a clearly defined and serious injury sufficient to overcome that presumption. *See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672-73 (3d Cir. 2019).

2. Exhibits 9 and 10 contain trade secrets and/or other incredibly sensitive

information concerning EPAM's "Synapse" platform, and EPAM would suffer a serious injury if this information became public.

3. Indeed, Exhibit 9 contains what the document itself describes as a "comprehensive, step-by-step plan" for recreating Synapse from scratch. (ECF #58-25 ¶ 8; ECF #58-12 at 8.) EPAM has spent significant resources to develop Synapse, is still seeking to sell Synapse and Synapse-derivatives, and EPAM considers the information contained in Exhibits 9 to be a trade secret. Needless to say, EPAM would face significant injury if a competitor used an unredacted version of Exhibit 9 to create a copycat of Synapse.

4. Exhibit 10 contains trade secrets that would provide EPAM's competitors with a huge advantage in understanding what provides Synapse and a related program (MedRag) with a competitive advantage over its competitors, and how their own competing solutions can be improved to better compete with Synapse. (*See* ECF #58-13.) Essentially, the document explains how Synapse and MedRag were designed in order to achieve their functionality, and the internal processes and governance that render Synapse unique. EPAM would suffer a significant competitive injury if an unredacted version of Exhibit 10 became public.

5. Exhibit 13 consists of EPAM's "Sales Battle Card" for Synapse and the related MedRAG program. The Sales Battle Card constitutes a confidential sales and marketing resource developed for EPAM's commercial use. Indeed, as can be seen from the document itself (ECF #58-16), the Sales Battle Card contains EPAM's strategy for how it positions Synapse and MedRage in the marketplace (i.e., "Business Value & Use Cases"), seeks to differentiate these products from their competitors (i.e., "Why We Win – Key Differentiators" and "Competitive Positioning"), and plans to price its offerings to prospective customers ("Engagement & Pricing Models"). Essentially, the Sales Battle Card contains EPAM's

comprehensive sales strategy for Synapse. As suggested by the name, this is EPAM's strategy to go to battle in the marketplace and win sales. It is the blueprint to EPAM's sales pitch. And, while the Sales Battle Card is roughly one year old by now, EPAM's fundamental strategy for marketing and pricing Synapse as set forth in this document has not changed. EPAM would face a significant, concrete injury if its competitors learned the "inside baseball" of EPAM's sales and marketing strategies for Synapse.

6. EPAM only very lightly redacted the publicly-filed versions of Exhibits 6-8. Its primary concern was not protection of trade secrets or confidential business information, but rather to prevent public identification of the three non-parties that EPAM's Sanctions Motion refers to as Executive #1, Executive #2, and Executive #3. The relief EPAM seeks in this Motion, in connection with the September 16 hearing, is the Court accepting under seal less redacted versions of these documents, which will disclose, *in camera*, the identities of these individuals, as well as closing the courtroom during testimony that could reveal their identities (or information that would make it easy to determine their names and identities).[1] These individuals are not parties to this litigation. Their identities are not necessary for the public to understand the issues before the Court, EPAM's sanctions motion, or the evidence relevant to that motion. EPAM requests that after the hearing, the hearing transcript can be publicly disclosed with only redactions to protect the identities of these individuals. Accordingly, as discussed in greater detail in EPAM's accompanying memorandum of law, the proposed sealing and court closure is narrowly tailored to protect substantial privacy and reputational interests

[1] EPAM also redacted a limited amount of confidential business information in these documents, as well as the names of non-parties who are mentioning in passing in these documents. EPAM does not seek to court approval to seal this information. Instead, EPAM seeks to introduce at hearings lightly redacted versions of Exhibits 6-8, that continues to redact the business information references to non-parties are not germane to the Sanctions Motion.

while preserving public access to the core issues in dispute.

7. Rao opposes EPAM's motion in its entirety. However, Rao recognizes that Exhibits 6-8 raise concerns regarding the privacy of the non-party individuals named in the exhibits and Rao consents to continued use of the Executive #1, 2, and 3 nomenclature and exclusion of the individuals' names from the record. Rao's proposed solution, in correspondence with EPAM, was to "continu[e] the 'Executive 1/2/3' convention in open-court testimony and in any exhibit displayed publicly," in lieu of closing the courtroom or providing the Court in camera copies of unredacted documents. (See Ex. A.) The problem with Rao's suggested approach is twofold: (a) it would limit EPAM's ability to question Rao regarding these exhibits, such as by identifying Executive #1's employer (a key EPAM client) during EPAM's questioning of him; and (b) it depends upon Rao's ability to testify perfectly using this phrasing (e.g., "Executive #1"), when his natural inclination may be to refer to these individual's names and/or to disclose information that would reveal their identities. And, if Rao "slips up," even inadvertently, and publicly identifies these persons, there may be no way to cure that disclosure later on.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Jacob Oslick*
Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue,
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

*Attorneys for Plaintiff/Counterclaim-Defendant EPAM Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, I electronically filed the foregoing Notice of Motion; Gregory Klevanov, Esq., together with Exhibits thereto; Memorandum of Law in Support; and Proposed Order, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record, and a courtesy copy sent via electronic mail to the following:

GOWTHAM ADAMANE ROA
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao.litigation@gmail.com
gowthamrao@gmail.com

*/s/ Jacob Oslick*
Jacob Oslick