**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff | X<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>X | Civil Action No. 2:25-cv-06260 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO PERMIT REMOTE TESTIMONY**

Plaintiff/Counter-Defendant EPAM Systems, Inc. ("EPAM") moves under Fed. R. Civ. P. 43(a) to permit the remote testimony of Dmitrii Ilin, via live video, during the September 16, 2026 hearing on its Motion for Sanctions for Spoliation of Evidence ("Spoliation Motion").

**Discussion**

Fed. R. Civ. P. 43(a) sets forth that "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." To assess whether "compelling circumstances" exist, courts have "considered factors such as the distance of witnesses from the trial, whether the witnesses live more than 100 miles from the courthouse . . . the length of their expected testimony, the burden of appearing at trial, and other circumstances, such as the COVID-19 pandemic." *Williams v. Elliott*, 2025 WL 4100526, at *1 n.2 (E.D. Pa. 2025). Here, "good cause" and "compelling circumstances" exist to permit one of EPAM's witnesses, Dmitrii Ilin, to testify remotely.

Mr. Ilin lives in the Czech Republic, a distance of over 4,000 miles from Philadelphia. (ECF #58-25 ¶ 2.) Flights between Philadelphia and Prague are slightly less than 9 hours each way. Including Mr. Ilin's time spent getting to the airport before an international flight, and clearing customs/immigration upon landing, his roundtrip travel time for an in-person appearance would easily exceed 20 hours. This is not to mention the time required to procure the necessary visa for the trip. And once he arrives, Mr. Ilin would need to overcome the jetlag associated with such a long flight, as well as the six hour time difference, in order to competently testify.

Meanwhile, although Mr. Ilin will be an important witness at the September 16 hearing, his anticipated testimony will be narrow and brief. Indeed, EPAM anticipates that it will consist entirely of the facts that he previously attested to in his six page, 21-paragraph declaration. As such, EPAM does not expect his direct testimony to last more than 30 minutes. Thus, Mr. Ilin's distance from the courthouse, the length of his expected testimony, and the burden of him appearing for the hearing all favor permitting a remote appearance.

Further, as to "other circumstances," given that Mr. Ilin is not a U.S. citizen, he will require a visa to travel for the hearing. While EPAM anticipates he will be able to obtain this visa in time for the hearing, this is not an absolute certainty, particularly because Mr. Ilin is a Russian citizen (although he holds a long-term residence permit in the Czech Republic and expects to be issued permanent residency in September).

Lastly, proceeding without Mr. Ilin's testimony would result in material prejudice to EPAM. Mr. Ilin's specialized knowledge cannot be replaced in this case by a witness that is more local. Mr. Ilin is EPAM's lead AI Data Engineer / Architect on the Synapse software solution. He not only has intimate knowledge of the Synapse code, he personally developed

much of it.  Thus, although Mr. Ilin's testimony should be brief, it is important. Mr. Ilin's testimony is critical in explaining **why** the evidence destroyed by Dr. Rao is so critical in this case, and **why** Dr. Rao had a motive for destroying this evidence.  Indeed, Mr. Ilin will testify that key documents found in Dr. Rao's possession via forensics were likely generated by Dr. Rao inputting EPAM's trade secrets and confidential information regarding Synapse into artificial intelligence, and how Mr. Ilin reached that conclusion.  Mr. Ilin will also identify key portions of these documents that reflect EPAM proprietary and confidential information.  This is critical testimony to demonstrate the bad faith intent behind Dr. Rao's destruction of forensic evidence (such as file and folder activity, browser history), which—if not destroyed—would have confirmed Dr. Rao misappropriation of Synapse by, for example, feeding Synapse-related trade secrets and confidential information into artificial intelligence programs in order to create "new" derivative documents, such as "comprehensive, step-by-step" instructions for rebuilding Synapse from scratch.  (*See* Oslick Decl. Ex. 9.)

Dr. Rao opposes EPAM's motion.  (*See* Ex. A.[1])  But his arguments are without merit. Dr. Rao first argues that Mr. Ilin's credibility will be "central."  (*See* Ex. A.)  But he does not explain why it will be difficult to assess Mr. Ilin's credibility via a live video feed.  *See Guardant Health, Inc. v. Found. Med., Inc.*, 2020 WL 6120186, at *3 (D. Del. 2020) ("The Court is confident that the jury will be able to assess witnesses' credibility" even if done via live video feed, and noting that "[t]o date, the undersigned Judge has presided over three fully remote 'video' bench trials," and that, in each one "the examinations provided the evidence necessary to assess credibility").  Dr. Rao also argues that he intends to cross-examine Mr. Ilin with

[1] EPAM initially requested that Dr. Rao also consent to Dr. Greenfield testifying remotely (*see* Ex. A) but does not move, over his Dr. Rao's objection, for Dr. Greenfield's remote appearance.

documents. (*See* Ex. A.) But Dr. Rao does not indicate why this cannot be done remotely, nor how many cross-examination documents he intends to use. And, in any event, there are ample ways to show documents to remote witnesses. *See generally Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, 2020 WL 4794533, at *2 (D. Del. 2020) (noting that the court was presiding over a full bench trial, and that the technology which permits remote trials was "working fine"). For instance, as is sometimes done, Mr. Ilin could be emailed the potential cross-examination documents at the beginning of EPAM's direct, but be directed not to look at them unless asked to by Rao during cross-examination. Or, Mr. Ilin could be shown the documents via screen-sharing in real-time. Dr. Rao further argues that Mr. Ilin would be beyond "any practical perjury sanction." (*See* Ex. A.) But Dr. Rao supplies no basis for fretting about the prospect of Mr. Ilin committing perjury. Regardless, Dr. Rao's purported concern makes no sense. Witnesses from outside the United States are not restricted from testimony. Even if Mr. Ilin were required to travel to Philadelphia for the hearing, Mr. Ilin would not be required to remain in the United States indefinitely throughout the life of this litigation in order to adjudicate some hypothetical future proceeding relating to nonexistent perjury. Finally, Dr. Rao speculates that Mr. Ilin's remote testimony would "implicate[] the Hague Evidence Convention and the host country's rules on the taking of evidence." (*Id.*) But Dr. Rao does not even explain what he means. He does not, for instance, contend that the Hague Convention bars Mr. Ilin from voluntarily testifying via live video feed at the September 16 hearing. And it is unlikely that he would have even standing to make such an argument, which presumably would involve a sovereign concern of the Czech Republic, not a personal interest of Dr. Rao.

For completeness, we further note that EPAM will have two witnesses flying in for the hearing, from California, and from Maine. EPAM makes this request to the Court for the remote appearance solely of Mr. Ilin given the material time and distance and visa considerations.

For these reasons, the Court should find that "compelling circumstances" exist, and permit Mr. Ilin to testify remotely, via a live video feed, at the September 16, 2026 hearing. *Williams*, 2025 WL 4100526, at *1 n.2 (permitting live video testimony of witness located in Virginia, where testimony was expected to be less than 30 minutes, and where travel would pose a hardship).

Dated: August 17, 2026

Respectfully submitted,

*<u>/s/ Jacob Oslick</u>*
Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue,
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

*Attorneys for Plaintiff/Counterclaim-Defendant EPAM Systems, Inc.*