**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

v.

**Case No. 2:25-cv-06260-WB**

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

# DEFENDANT'S EXHIBIT O

## *July 7?17, 2026 Meet-and-Confer Correspondence & Written Admission of 79,000 Unreviewed Documents*

*(Filed in Support of Declaration of Gowtham Rao, MD, PhD paragraphs 68, 69; Brief Section II paragraph 13, Section III)*

SUMMARY OF ATTACHED COMMUNICATIONS (20 CHRONOLOGICAL EMAIL RECORDS):

* July 8-10, 2026 (Emails 1-11): Formal meet-and-confer negotiations, pre-meeting position papers, and Dr. Rao's comprehensive formal recap regarding the Withheld Inspection Documents Report, demonstrating good-faith screensharing and proposing neutral iDS filtering.

* July 9, 2026 (Email 2 -- KEY IN-LINE ADMISSION): Seyfarth Shaw line-by-line in-line response, explicitly admitting:
'Even if EPAM could review one document a minute, the review of 79,000 documents that you are now seemingly demanding would take over 1,300 hours. There is nothing in the Forensic Protocol that imposes such a ridiculous and disproportionate burden on EPAM. EPAM did not and will not agree to take on that burden...'

* July 14-15, 2026 (Emails 12-14): Seyfarth Shaw 5-point proposal and Dr. Rao's formal counter-proposal offering rolling release and protective safeguards for employee review.

* July 16, 2026 (Email 16): Jacob Oslick response regarding employee access, meet-and-confer parameters, and protective order requirements.

* July 17, 2026 (Emails 17-20): Final meet-and-confer exchange concluding with Dr. Rao's recommendation authorizing Lucy McDermott access via rolling release.

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

---

**EMAIL 1 OF 20: DEFENDANT MEET & CONFER MEMORIALIZATION (JULY 8, 2026)**
**Date: Wed, 8 Jul 2026 18:16:35 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-08_EPAM vs Rao - 2026-07-08 - Meet and Confer_19f43cde80f037e7.md**

---

Hi Matt and Jacob,

To memorialize our discussion from today's meet and confer regarding the Forensic Protocol:

*1. Extra-Protocol Requests: *We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the "four corners" of our signed Forensic Protocol (which explicitly limits access to "counsel for EPAM"). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

*2. The Direct Solution for Technical Review: *While you claimed you lack the technical expertise to review the documents, I provided a direct and obvious solution that complies with the explicit language of the protocol. Seyfarth is a large, well-resourced law firm with its own technical personnel (or the ability to hire independent technical contractors). These individuals fall squarely under the protected umbrella of "counsel for EPAM." If technical training is required, EPAM employees are free to train Seyfarth's technical resources to conduct the review. This is the contemplated approach allowed by the protocol. Your refusal to utilize this obvious solution suggests a preference for extra-contractual access over actual protocol compliance.

*3. Request for Download Logs: *As discussed, you agreed to take my request for the comprehensive download logs (e.g., the Git logs, not just the SharePoint logs) back to EPAM for consideration as part of our negotiation regarding your extra-protocol requests.

---

***EMAIL 1 OF 20: DEFENDANT MEET & CONFER MEMORIALIZATION (JULY 8, 2026) (Continued - Part 2)***

*4. The 79,000 Un-Promoted Files and Protocol Non-Compliance: *During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III (b) (ii) of the Forensic Protocol, which mandates:

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

---

**EMAIL 2 OF 20: SEYFARTH SHAW IN-LINE RESPONSE & 79,000-FILE ADMISSION (JULY 9, 2026)**
**Date: Thu, 9 Jul 2026 21:10:28 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-09_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f48b8279a9b2a1.md**

---

Gowtham,

Your email below is not productive. Our responses are below, in red.

Jacob Oslick | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited.

==========================================================================================
IN-LINE MEET-AND-CONFER DIALOGUE (JULY 8 MEMORIALIZATION & JULY 9 SEYFARTH IN-LINE REPLIES)
==========================================================================================

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
1. Extra-Protocol Requests: We established that EPAM's demand to grant its internal employees direct access to the Relativity platform falls outside the 'four corners' of our signed Forensic Protocol (which explicitly limits access to 'counsel for EPAM'). Any expansion of this access beyond what is written requires mutual negotiation and concessions.

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026):
I cannot fathom what you believe you will gain through these kinds of gratuitous misrepresentations. 'We' established nothing of the sort. Contrary to your supposition, nothing in the Protocol limits access to any of the forensic reports or data to outside counsel. To the contrary, the Forensic Protocol expressly states that 'EPAM may use the documents for the purpose of this litigation.' You do not have the right to dictate to EPAM who within the company can or cannot view documents that were taken from EPAM in the first place.

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
2. The Direct Solution for Technical Review: While you claimed you lack the technical expertise to review these files, the protocol provides a clear mechanism: you can engage the neutral expert (iDS) or your own expert to conduct technical reviews. EPAM's decision not to hire an expert does not create an emergency that justifies rewriting the protocol to give unvetted employees direct access to the data.

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026):
Your proposal is not 'contemplated' by the protocol. It is nonsensical and, like your other proposals, an attempt to impose unnecessary, extra-contractual costs and delays on EPAM.

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
3. Request for Download Logs: As discussed, you agreed to take my request for the comprehensive download logs to EPAM for consideration. I look forward to receiving confirmation on whether EPAM will produce these logs.

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026):
That is not what we 'agreed' to. Rather, we reiterated that EPAM is entitled to have its technical employees review the materials... In any event, you quickly made it clear that this was not your offer, so any such discussions are moot. Rather, you demanded: (1) EPAM's analysis about why it sought the promotion of certain documents for review in Relativity, while not seeking to promote for review approximately 79,000 other documents; (2) EPAM's affirmative statement that it has no reasonable belief that the other 79,000 documents contained its trade secrets or confidential information.

We explained that we could not, under any circumstances, agree to either demand. As to your first demand, EPAM's work product is not subject to disclosure. As to your second demand, we noted -- as you should have already known for months -- that the 79,000 documents that were not promoted for review were, unsurprisingly, not reviewed. This does not mean that we can make any affirmative statements about what the documents do or do not contain...

***EMAIL 2 OF 20: SEYFARTH SHAW IN-LINE RESPONSE & 79,000-FILE ADMISSION (JULY 9, 2026) (Continued - Part 2)***

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
4. The 79,000 Un-Promoted Files and Protocol Non-Compliance: During our call, you explicitly stated that Seyfarth has not reviewed the 79,000 files identified in the initial hit report. This is a direct contradiction of Section III(b)(ii) of the Forensic Protocol, which mandates: 'Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM shall identify any documents referenced within the Initial Reports... that it in good faith believes contains EPAM Confidential Information and/or Work...' By admitting that you have not even attempted to determine if these 79,000 files contain EPAM confidential information or work product, you are confirming that EPAM has failed to comply with this mandatory step. It has now been 5 months since that 5-day deadline expired. EPAM's refusal to definitively state whether it believes these 79,000 files contain confidential information--while simultaneously withholding them--prejudices my ability to appropriately manage my defense. This ongoing and intentional delay in fulfilling the basic requirements of the protocol provides clear grounds for seeking an adversarial determination from the court. Please confirm whether EPAM intends to complete its review of these files pursuant to Section III(b)(ii).

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026 -- 79,000-FILE / 1,300-HOUR ADMISSION):
Your reading of the Forensic Protocol is groundless. There is no requirement in the Forensic Protocol that EPAM must review every single document referenced in the Initial Reports. Beyond the fact that your position has no basis in the Forensic Protocol, doing so would be ludicrously expensive and impractical. Even if EPAM could review one document a minute, the review of 79,000 documents that you are now seemingly demanding would take over 1,300 hours. There is nothing in the Forensic Protocol that imposes such a ridiculous and disproportionate burden on EPAM. EPAM did not and will not agree to take on that burden -- which would only magnify the victimization caused by your improper acts. To be clear, the fact that EPAM sought to promote only a subset of documents for review, does not 'demonstrate' that the remaining documents do not contain EPAM Confidential Information and/or Work.

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
5. Path to Global Resolution: As I stated on our call, I remain committed to finding a path to lasting peace. My primary concern is protecting my privacy, my intellectual property, and my reputation from ongoing bad-faith attacks. To that end, I want to reiterate my global resolution offer, which has been on the table for months: If EPAM will simply confirm today that they did not find EPAM Trade Secrets within the ~85,000 forensic hits, I will immediately execute a complete, court-supervised wipe of my computer, and we can end this litigation with mutual releases. I have now made multiple reasonable offers to resolve this matter globally. EPAM's continued refusal to engage with these practical off-ramps strongly suggests that your goal is not remediation, but rather the continued infliction of legal fees and emotional distress on a pro se defendant.

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026):
We will 'confirm' no such thing. To the contrary, the evidence we have obtained to date, including through the review of documents via the Forensic Protocol, confirms that your conduct was far more egregious than we believed back when we filed this suit. While we have nevertheless bent over backwards in an attempt to reach a resolution with you, it is clear that any such resolution is not possible. By way of example, your 'offer' to 'resolve' the dispute by wiping your computer is meaningless, because your spoliation of evidence makes it impossible for us to determine if you transferred EPAM's Confidential Information and Work to USB devices, cloud storage accounts, or created derivative works (including through the use of AI platforms)... That option for resolution is no longer on the table. With resolution now infeasible, we intend to proceed with the spoliation motion and also to seek other forms of relief, including an additional Amended Complaint that will assert additional claims based on the information we have learned to date. We will not dignify the remainder of the above with a substantive response...

[Dr. Gowtham Rao (July 8, 2026 Meet-and-Confer Memorialization)]:
6. Retaliation and Bad Faith: As stated in my formal pleadings, EPAM's allegations of misappropriation and the subsequent weaponization of the federal judicial system through this lawsuit constitute ongoing, retaliatory actions designed to penalize, silence, and financially ruin me for my protected whistleblowing disclosures. Your refusal today to utilize protocol-compliant solutions, while demanding extra-contractual access and ignoring your own protocol deadlines, only further evidences this ongoing retaliatory campaign. You have also been notified today that you are actively causing me documented physical and mental health harm. I have advised you to consider ethics review within Seyfarth.

>>> SEYFARTH SHAW IN-LINE RESPONSE (JULY 9, 2026):
These allegations are offensive and insulting, and make any further meet-and-confers difficult. We did not appreciate spending roughly 20-25 minutes yesterday during the supposed meet-and-confer being lectured by you about your imagined and baseless accusations of EPAM's and Seyfarth's supposed misconduct, and we don't appreciate comments such as the above. We have tried, repeatedly to work with you in good faith, only to receive bad faith, insults, and accusations in return. We don't see any further point in supposed 'meet-and-confers'... We have exhausted all efforts to reasonably move this protocol to conclusion and will not abide by further indefinite stalling.

***EMAIL 2 OF 20: SEYFARTH SHAW IN-LINE RESPONSE & 79,000-FILE ADMISSION (JULY 9, 2026) (Continued - Part 3)***

[Seyfarth Shaw (July 9, 2026 Substantive Points)]:
7. Withheld Inspection Documents Report: While we had specifically informed you that we wished to discuss the Withheld Inspection Documents Report, you explicitly rejected any discussion on this topic. For purposes of making the written record clear, you have refused to permit even EPAM's attorneys to review 1,063 documents based solely on your representations -- such as that the documents are personal, or protected by the spousal and/or attorney-client privileges. However, you have not established any of these claims. You refused, for example, to provide any metadata confirming that any of these documents were shared with your wife or your attorney, and similarly refused to provide any of the information that would ordinarily be found on a privilege log... Because you refused to even meet-and-confer regarding the documents you withheld, we will seek relief from the Court.

8. Generative AI Platforms: You refused to confirm whether you stored, transferred, analyzed, or exchanged any EPAM Confidential Information and/or Work in Generative AI models or platforms, but instead repeated that your former counsel had provided iDS with access to all of your devices and accounts... You agreed that a confirmation with iDS regarding their collection of information from Generative AI models or platforms was appropriate and we intend to send them the following, targeted questions, as this information is squarely within the protocol:

* Can iDS confirm whether it collected all Google service data from each of Dr. Rao's Google accounts, including data from Gemini (such as prompts, inputs, and/or outputs) pursuant to Section I(e)(iii) of the Forensic Protocol?
* Can iDS confirm whether its collection of Dr. Rao's Google service data contained information from Gemini, including prompts, inputs, and/or outputs?
* Can iDS confirm whether it collected any information from Dr. Rao's devices or accounts associated with Generative AI models or platforms other than Gemini, including prompts, inputs, and/or outputs?

We will proceed with our remedies in Court.

Jacob

**EMAIL 3 OF 20: DEFENDANT SCREENSHARING & INSPECTION OFFER (JULY 9, 2026)**
**Date: Thu, 9 Jul 2026 17:32:20 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-09_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f48cbc25314c79.md**

---

Thank you Jacob.

Regarding the withheld inspection report, I have offered to show its contents via a screenshare. After the screenshare, if you wish to have further access to them via Relativity - we can discuss that on a case by case basis. You have refused this offer without justification. I will set a meet and confer for tomorrow 1 PM EST to perform a screenshare on this topic. The content are personal and private matters. I am citing the protocol for your convenience that justified the withholding:

Within three (3) business days of receiving the documents identified on the Inspection Documents Report, counsel for Rao will identify to counsel for EPAM and Forensic Vendor any documents that it believes contain privileged information and/or does not constitute Confidential Information and/or Work ("Withheld Inspection Documents Report"), and shall specifically identify the reason for withholding the document (i.e., document contains attorney-client communications or attorney work product, or a specific reason that counsel for Rao does not believe it falls within the scope of Confidential Information and/or Work).

Gowtham

**EMAIL 4 OF 20: SEYFARTH SHAW SCHEDULING NOTICE (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 16:04:16 +0000**
**From: "Christoff, Matthew" <MChristoff@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4cc60ef1730fc.md**

---

Gowtham

As a preliminary matter, we are not available to meet and confer during the time that you proposed. Please let us know if you are free from 12:30 to 2:00 or 2:30 to 4:00 Central, and if not, your availability on Monday. For the avoidance of doubt, we do not consent to record, transcribe, or summarize any discussions between the parties.

However, as we have previously discussed, your proposal is unworkable for multiple reasons. A screenshare, particularly of a lengthy spreadsheet containing detailed metadata, introduces substantial inefficiencies into the review process, including the inability to accurately analyze specific and detailed metadata and compare that information to documents that you have not withheld. Further, as we noted in our written responses and discussed on the meet and confer earlier this week, you are not entitled to the mental impressions of Seyfarth and/or EPAM, all of which would be implicated by examining how and what we may focus on during a screenshare. Your further demand that the call be recorded as "evidence" of your offer only amplifies these issues.

Instead, the following is our counterproposal:

* iDS will provide the replacement Withheld Inspection Documents Report for any document you claim is protected by the attorney-client and/or work product doctrine ("Replacement WIDR - Potentially Privileged"). This information would contain the supplemental metadata that we have already discussed, but would not contain the content of the documents.

* iDS will release to Relativity any remaining documents on the Withheld Inspection Documents Report.

* Pursuant to Section III(b)(5) of the Forensic Protocol, we will:

  * (1) identify documents on the "Replacement WIDR - Potentially Privileged" spreadsheet that we do not believe are protected by the attorney-client privilege and/or work product doctrine (if any), and

  * (2) identify documents released to Relativity that we believe contain EPAM Confidential Information and/or Work.

* The parties will then meet and confer to resolve any remaining disputes regarding those challenges, if any.

  * Any documents that the parties agree are not protected by the attorney-client privilege or work product doctrine, or agree contain EPAM Confidential Information and/or Work will be released to Relativity if they are not already available.

  * Any documents that the parties agree are protected by the attorney-client privilege or work product doctrine, or agree do not contain EPAM Confidential Information and/or Work will be removed from Relativity.

* If the parties cannot resolve all disputes regarding the documents on the Withheld Inspection Documents Report, they will be raised with the Court.

We look forward to your response and a productive discussion.

***EMAIL 4 OF 20: SEYFARTH SHAW SCHEDULING NOTICE (JULY 10, 2026) (Continued - Part 2)***

Thanks

Matt

Matthew Christoff | Partner | Seyfarth Shaw LLP

eDiscovery and Information Governance, EnCE

233 S. Wacker Drive | Suite 8000 | Chicago, Illinois 60606-6448

Direct: +1-312-460-5315

MChristoff@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EMAIL 5 OF 20: DEFENDANT NOTICE OF SCREENSHARING PREPARATION (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 11:08:01 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4c924b2c97fe6.md**

---

Hi Jacob,

I have prepared for today's meet and confer and will be screensharing the Withheld Inspection Report. As per prior communication from James Yu, I have invited Sarah Lugar; her presence would be helpful, and she is welcome to see the screen as an EPAM employee along with Seyfarth. I plan to record the call as evidence that this screenshare was offered and performed.

My plan for today is to pull up the Withheld Inspection Report generated by iDS to show you its bounds over the screenshare, and to go through the metadata with you so you have the option to explore it. I am also willing to show you the content of selected files in Relativity.

I hope to make good faith and substantial progress today, and I look forward to a positive meet and confer.

Regards,

Gowtham

**EMAIL 6 OF 20: DEFENDANT MEETING INVITE UPDATE (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 12:12:45 -0400**
**From: Gowtham Rao <gowthamrao@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4ccdd233f0b21.md**

---

I have updated the meeting invite to accommodate for your availability. We

will meet and confer today.

Gowtham

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

**EMAIL 7 OF 20: DEFENDANT PRE-MEETING POSITION PAPER (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 13:23:19 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4d0e25d8cb783.md**

---

Matt, Jacob -

I am writing in advance of our meet and confer today to outline my position regarding the Withheld Inspection Documents Report, pursuant to Section III(b)(5) of the Protocol.

To summarize the current status of this dispute:

1. iDS provided you the Withheld Inspection Documents Report.

2. EPAM challenged the withheld designations.

3. We met and conferred, during which I provided my justification for the withholdings.

4. You indicated that you are not satisfied with my justification.

The primary obstacle to resolving this dispute is EPAM's refusal to provide the objective (or any) criteria it is using to evaluate these documents. The Protocol, unfortunately, does not define the standard EPAM will use to judge whether a specific file constitutes EPAM confidential information, intellectual property, or a trade secret. During our previous conferral, when I asked for your decision-making framework, you declined to provide it, asserted it was protected attorney work product, and criticized my *pro se* status.

This approach does not represent a good-faith effort to resolve the dispute. Good-faith negotiation requires mutual transparency. It is impossible to reach a mutual resolution if EPAM continually demands greater access while refusing to articulate the standard it is applying. This posture makes meaningful negotiation impossible and demonstrates a pattern

***EMAIL 7 OF 20: DEFENDANT PRE-MEETING POSITION PAPER (JULY 10, 2026) (Continued - Part 2)***

of conduct that reinforces the position in my counterclaim--namely, that EPAM is acting in bad faith for retaliatory purposes.

Regarding EPAM confidential information and IP, my position remains consistent. These matters are covered by the Employment Covenant Agreement, which I have repeatedly stated I will abide by. As I have informed the Court, I have no interest in or desire to retain any EPAM Confidential Information or IP. Any EPAM Confidential Information or IP that I possessed during the routine course of my employment were deleted as part of my off-boarding process. As I stated during the TRO hearing, there might be other files that remain as shadows.

*As the Court noted on the record during the November 5 TRO hearing:*

**EMAIL 8 OF 20: DEFENDANT ATTENDANCE NOTICE (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 13:32:51 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4d16dc3880909.md**

---

Good afternoon - I am in the meeting. Please let me know if you are unable

to attend.

---

**EMAIL 9 OF 20: SEYFARTH SHAW TRANSCRIPTION INQUIRY (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 17:33:28 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4d17c70b1bf72.md**

---

Gowtham -

I received a message when I tried to log-on that the meet-and-confer call was being transcribed, with Gemini taking notes. We do not agree to the call being recorded. We will not agree to the call being recorded in any way, or transcribed by AI.

If you want to cancel the meeting and resend an invitation that will not be recorded, we will agree to meet-and-confer. Otherwise, we will construe your demand for recording and transcription as a refusal to meet in good faith.

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EMAIL 10 OF 20: DEFENDANT CONFIRMATION -- NOTES OFF (JULY 10, 2026)**
**Date: Fri, 10 Jul 2026 13:34:49 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4d18a6682efbe.md**

---

Got it. It has been turned off. Come back

**EMAIL 11 OF 20: DEFENDANT COMPREHENSIVE FORMAL RECAP OF JULY 10 MEET & CONFER**
**Date: Fri, 10 Jul 2026 16:25:33 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-10_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f4db4fc320e815.md**

---

Matt, Jacob -

I am writing to summarize our meet and confer today regarding the Withheld Inspection Documents Report. Based on our discussion, it appears we have made some progress but still have a ways to go before we break the impasse.

To document our respective positions:

1. Good faith screen share: In a good-faith effort to build trust, I conducted a targeted screen share of documents from the withheld log. We looked at a document tagged with the "Project Synapse" identifier. As I demonstrated on the screen, this 107-page document was not EPAM intellectual property or source code; rather, it was a clearly privileged attorney-client communication regarding settlement. I understand your position is that, without a page-by-page review, you cannot be certain the material lacks EPAM confidential information or IP. You asserted that even attorney-client privileged communications are subject to remediation if they contain EPAM confidential information or IP, and that if a dispute arises over such a document, only the Court can make the final judgment.

2. Failure to Define "Confidential Information": Throughout our discussion, you failed to define or describe the objective criteria for what constitutes EPAM confidential information or intellectual property. In

***EMAIL 11 OF 20: DEFENDANT COMPREHENSIVE FORMAL RECAP OF JULY 10 MEET & CONFER (Continued - Part 2)***

fact, when I asked you to propose boundaries or categories for review, you admitted that coming up with such categories is a "difficult if not impossible request" because you "don't know" what, wrt EPAM confidential information or IP, you are looking for. This confirms my concern that EPAM is using a retroactive, "we'll know it when we see it" standard, which makes objective, good-faith negotiation impossible.

3. EPAM's Demand for Metadata: You stated that EPAM cannot meaningfully evaluate or challenge my withheld designations without receiving to its physical possession the full metadata for these documents in its possession. You indicated that receiving this metadata is EPAM's "compromise" position.

4. My Position on Metadata: I reiterated that I cannot provide you with the full metadata log for the withheld documents. Doing so would improperly expose my privileged communication patterns, my associations, and my core legal strategy. Given the overinclusive nature of the raw forensic hits--which resulted from a broad, unencumbered search strategy unilaterally designed by EPAM--handing over this metadata is tantamount to handing over my privileged work product.

5. Rejection of Neutral Third-Party Compromise: To bridge this gap, I proposed a compromise: we could instruct the neutral forensic examiner (iDS) to perform metadata filtering on their end. For example, iDS could isolate and exclude communications exclusively between myself and my spouse, or myself and my attorneys. This would narrow the pool without exposing my privileged metadata to EPAM. I also proposed that the neutral review the content of the file, based on an agreed-upon set of rules we formulate, to identify information that is genuinely EPAM confidential

***EMAIL 11 OF 20: DEFENDANT COMPREHENSIVE FORMAL RECAP OF JULY 10 MEET & CONFER (Continued - Part 3)***

information or IP. You explicitly rejected this proposal, stating you did not want to incur iDS costs for an "Excel filtering process" that you believe EPAM should do itself--even after I noted that the cost of having iDS perform this neutral filtering (estimated to be less than 1,000$) would likely be significantly less than the billing rates of two senior Seyfarth attorneys performing the same task (estimated more than 10,000$s, at 3,500$/hr for Jacob and 1,500$/hr for Matt).

6. Rejection of the Relativity Platform Compromise: When it became clear you would not agree to iDS performing the filtering, I offered a second compromise. I asked if providing the limited metadata within the secure confines of the neutral iDS Relativity platform--allowing you to view and filter the metadata, but restricting you from downloading or taking physical possession of the file onto Seyfarth or EPAM servers--would be acceptable. You dismissed this proposal as well, characterizing it merely as an unnecessary "additional step." This demonstrates that your goal is not simply to review the metadata to validate the withholdings as you claim, but rather to take permanent physical possession of it.

7. Privilege Log Request: You stated it is reasonable to ask for a privilege log, and I agreed to consider producing one. You indicated it would require some limited metadata, and I look forward to receiving your email detailing those specific parameters.

8. Impasse Regarding Non-Privileged Documents: Regarding documents that are not marked as privileged, we have also reached an impasse. During the screen share, I showed you a document containing a patent application I filed with the Government. You stated EPAM would still want to review this document based on your suspicion that I may have used derivatives of EPAM

***EMAIL 11 OF 20: DEFENDANT COMPREHENSIVE FORMAL RECAP OF JULY 10 MEET & CONFER (Continued - Part 4)***

property to file the patent.

9. Proportionality and Unreviewed Data: During our call, we discussed the overall scope of the forensic hits. Out of approximately 85,000 total hits generated by EPAM's unencumbered search terms, I have granted you full access to ~84,000 of them. I noted that I only withheld a very small fraction of the total documents--primarily to protect highly personal and privileged information (such as family photos, communications with my spouse, and attorney-client work product). You had admitted on a prior call that EPAM has not even performed a file name review of the ~79,000 documents you already possess. It defies logic and proportionality for EPAM to aggressively demand access to a tiny subset of highly sensitive, withheld documents when you have not even bothered to review the tens of thousands of documents I have already produced to you and have called it a violation of the stipulated protocol.

10. Judicial Intervention vs. Good-Faith Resolution: You indicated that, given this impasse, you feel there is no option but to escalate this to the Court and request an in camera review of the withheld documents. I explicitly stated that we should exhaust every possible approach to find a middle ground and avoid burdening the Court with a procedural discovery dispute. My proposals today--using the neutral expert to filter data, or viewing the metadata securely via the Relativity platform--were made precisely to resolve this without requiring judicial intervention.

11. Final Plea for Collaborative Resolution: Before concluding the call, I made a direct plea to you to propose your own boundaries or criteria if you found my compromises unacceptable. I explicitly asked you to "help me out" and "come up with something" that establishes allowed and disallowed

***EMAIL 11 OF 20: DEFENDANT COMPREHENSIVE FORMAL RECAP OF JULY 10 MEET & CONFER (Continued - Part 5)***

interpretation for these sensitive files so we could make progress. My stated goal was--and remains--to find a negotiated solution rather than rushing to the Court. However, you did not offer any alternative framework or compromise, maintaining only your initial demand.

Note on Screen Share: In total, I showed you approximately five documents during today's screen share. As agreed prior to this demonstration, this disclosure was made strictly for confidence-building purposes and is protected under a clawback agreement, such that my showing you these documents does not constitute a waiver of any applicable privilege.

Conclusion: Because you refuse to accept a neutral third party performing the metadata filtering, and I cannot turn over privileged metadata directly to opposing counsel, we are at a standstill on this issue. I will consider your request on the privilege log once I get the details. I have asked you to consider the option of engaging the neutral iDS service.

Please let me know if you believe this summary inaccurately reflects your position from today's call.

Sincerely,

Gowtham Rao

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

---

**EMAIL 12 OF 20: SEYFARTH SHAW 5-POINT PROPOSAL (JULY 14, 2026)**
**Date: Tue, 14 Jul 2026 16:50:39 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-14_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f618a4d27b41f1.md**

---

Gowtham,

Given the length of your email below, we do not believe that it is productive to provide a lengthy point-by-point response. Accordingly, we have largely limited our responses to places where you have mischaracterized or misrepresented the substance of our discussion.

To move the matter along, here is our final "offer," the substance of which was already orally discussed with you on Friday. Please provide us with a firm "yes" or "no" no later than 5 p.m. on Wednesday.

1. For the documents that you claim are privileged, please provide a privilege log that is compliant with the kinds of privilege logs that would ordinarily be produced in discovery. We have suggested that you utilize the very metadata included on the replacement Withheld Inspection Documents Report, rather that creating it manually from scratch, but the privilege log itself must include the following information: (a) date-related information, such as created, modified, or sent dates, (b) identification of all individual or accounts on each communication/document (whether they are a sender, a recipient, a cc, or a bcc or, as to a non-communication, the drafters/editors of a document) and identifying the individuals who are attorneys and those who are not (such as by appending an asterisk to the name of the attorneys); (c) the kind of document (e.g., email, attachment, Word document, Excel, PowerPoint, text message); (d) the type of privilege asserted (e.g., attorney-client, spousal); (e) a description of the document's contents sufficient to assess the privilege claim. The privilege log should be provided in Microsoft Excel format in order to facilitate us being able to search and analyze the data.

* EPAM will review your privilege claims, and identify those documents where it contests the privilege claims.

* The parties will then meet-and-confer regarding the documents at issue.

* If the parties cannot resolve their disagreements over your privilege claims, EPAM will prepare a discovery letter seeking the Court's intervention.

1. For the documents that you do not claim as privileged, we propose the following:

1. You will take another pass through these documents, as we suggested on Friday when you identified a document that you had mistakenly failed to identify as privileged, and reconsider your previous decision to withhold the documents. You will release to Seyfarth any documents that you mistakenly withheld.

2. iDS will perform a review of these documents and identify any documents that it concludes are exclusively personal in nature (e.g., family photographs, vacation plans). For the avoidance of doubt, two kinds of examples that we discussed on Friday would not qualify as exclusively personal: (i) complaints to your friends about EPAM and/or your termination from EPAM, and (ii) patent applications that you filed. Both of these were identified as hits from the agreed search terms and both of these may contain EPAM Confidential Information and IP and we cannot know that unless we view the documents.

***EMAIL 12 OF 20: SEYFARTH SHAW 5-POINT PROPOSAL (JULY 14, 2026) (Continued - Part 2)***

3. The documents that iDS does not deem exclusively personal will be released to Seyfarth, on a "Seyfarth only" basis. Seyfarth will not, at this time, share these documents with anyone at EPAM.

4. Seyfarth will then make a list of the documents that it deems to be relevant to this case in some form, and which it believes should be shared with EPAM. Within three days after Seyfarth provides this list, you will identify those documents that you insist that Seyfarth cannot share with EPAM because they are not relevant to the facts, issues, and/or claims in this matter. Within three days after you provide these counter-designations, the parties will meet-and-confer to resolve their disagreement.

5. For any documents that the parties cannot agree on, Seyfarth will prepare a discovery letter seeking the Court's intervention.

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EMAIL 13 OF 20: DEFENDANT COUNTER-PROPOSAL -- ROLLING RELEASE & PROTECTIONS (JULY 15, 2026)**
**Date: Wed, 15 Jul 2026 15:00:00 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-15_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f6726728dd3d6a.md**

---

*J*acob, Matt,

This responds to your July 14 proposal within your requested deadline. To be clear at the outset: In this proposal, my offer is to accept your privilege log proposal and of the re-review and iDS screening steps you proposed, with a defined schedule for the remaining items. It is not a rejection of any part of your proposal.

1. Privilege Log - Yes. I will produce a privilege log in Microsoft Excel format containing the fields you identified: date-related information; identification of all individuals or accounts on each communication, with attorneys designated by asterisk; the kind of document; the type of privilege asserted; and a description of the document's contents sufficient to assess the privilege claim, consistent with Rule 26(b)(5)(A). Two clarifications:

* Consistent with your suggestion, the log will be built from the metadata in the replacement Withheld Inspection Documents Report, and its fields will reflect that metadata as it exists.

* Post-complaint communications exclusively between me and my counsel of record concerning this litigation will be logged categorically (count, date range, and participants), consistent with customary practice. All other privileged items will be logged individually.

2. Re-Review - Yes. As you proposed, I will complete a second review pass through the withheld documents and release to iDS any documents that were

***EMAIL 13 OF 20: DEFENDANT COUNTER-PROPOSAL -- ROLLING RELEASE & PROTECTIONS (JULY 15, 2026) (Continued - Part 2)***

mistakenly withheld. Because the outcome of the re-review defines the final contents of the privilege log, I will complete the re-review and produce the log together, within ten (10) business days. This schedule reflects the volume of documents requiring individual verification (over 1,000) and the parties' concurrent preparation obligations for the upcoming hearing.

3. iDS Screening of Personal Material - Yes. I agree to iDS reviewing the non-privileged withheld documents to identify exclusively personal material (family photographs, personal media, and similar items), and to that material being handled as you proposed. This agreement is without prejudice to my Section III(b)(iv) positions regarding the remaining documents.

4. Rule 502(d) Order / Clawback. Before the log is produced, the parties should submit a stipulated order under Federal Rule of Evidence 502(d) for entry by the Court. I propose the order provide, for both parties mutually, that:

* disclosure of privileged or work-product material in connection with this litigation, including through the Forensic Protocol process, does not waive any privilege or protection in this proceeding or any other, irrespective of the care taken in the disclosure;

* no disclosure shall be deemed a subject-matter waiver;

* the order covers the privilege log, the Withheld Inspection Documents Report and any replacement thereof, documents released through iDS or Relativity, any re-review releases, and the documents displayed during the July 10, 2026 screenshare; and

* upon notice of an inadvertent disclosure, the receiving party will sequester and return or destroy the material and will not use it, with any dispute over the claim raised promptly with the Court.

***EMAIL 13 OF 20: DEFENDANT COUNTER-PROPOSAL -- ROLLING RELEASE & PROTECTIONS (JULY 15, 2026) (Continued - Part 3)***

To move quickly, please send your proposed form of order and I will respond promptly.

5. Remaining Non-Privileged Withheld Documents. The remaining documents were withheld under Protocol § III(b)(iv) because they do not constitute EPAM Confidential Information and/or Work, and the specific reason for each withholding was identified as that Section requires. The orderly sequence is to complete the steps above first: the re-review, the iDS personal-material screening, and the privilege log process will each reduce the set of documents actually in dispute. Once you have received the log and served any challenges, I will meet and confer with you regarding the remaining documents pursuant to Protocol § III(b)(v) within five (5) business days of your challenges.

Please confirm, and please send the proposed 502(d) form.

Regards,

Gowtham Rao

**EMAIL 14 OF 20: SEYFARTH SHAW RESPONSE DEMANDING UNRESTRICTED ACCESS (JULY 15, 2026)**
**Date: Wed, 15 Jul 2026 21:40:15 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-15_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f67b9b23284558.md**

---

Gowtham,

Thank you for the below. Based on the below, I believe we more or less have an agreement on next steps as to the withheld documents, and will not go to the Court regarding these issues at this time. Regarding the Rule 502 Order, it's our suggestion that we mutually reach out to Judge Beetlestone to see if she has a "standard order" that she can enter. If you are fine with that, let us know.

There is one remaining dispute, which we discussed last week, and intend to seek prompt relief from the Court regarding - you have taken the position that the Forensic Protocol only permits EPAM's attorneys (in-house and outside counsel) to view the documents, and that EPAM's technical employees (i.e., such as the people you worked with) are prohibited from doing so. EPAM vigorously disagrees: the Forensic Protocol contains no such limitation and, in fact, expressly permits EPAM to use the documents for any purpose related to this litigation. Moreover, EPAM's technical employees are the persons best suited to assess whether documents are EPAM Confidential Information and/or Work.

We have exhausted any meet-and-confers regarding this issue, including through incredibly lengthy conference calls and several back-and-forth emails. Solely to boil the issue down for the Court, please answer "yes" or "no" to the following three questions by 2 p.m. tomorrow:

1. You refuse to permit iDS to grant access, through its Relativity portal, to any EPAM technical employees.

2. You take the position that EPAM's counsel are also prohibited from otherwise sharing the documents made available through the Forensic Protocol with any of EPAM's technical employees.

3. You have conditioned your willingness to change your position on #1 or #2, both of which solely concern access to documents, on EPAM either: (1) disclosing its attorney work behind why it decided to promote some documents for review but not other documents; or (2) making affirmative representations that you believe would help you on the merits of this dispute about the contents of the approximately 79,000 documents that EPAM has not promoted for review, and has not reviewed (i.e., you want EPAM to represent that it has no reasonable belief that the documents contain Confidential Information and IP, and are unsatisfied with EPAM's position that it does not know what the documents contain, and that EPAM reserves the right to reassess the issue as it acquires additional information and in due course).

Jacob

***EMAIL 14 OF 20: SEYFARTH SHAW RESPONSE DEMANDING UNRESTRICTED ACCESS (JULY 15, 2026) (Continued - Part 2)***

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EMAIL 15 OF 20: DEFENDANT OBJECTION TO 2 PM ULTIMATUM (JULY 16, 2026)**
**Date: Thu, 16 Jul 2026 13:36:14 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-16_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f6c001de94e0fc.md**

---

Jacob,

Your email requests answers to three questions by 2 p.m. today. That deadline appears nowhere in the Forensic Protocol or in any order of the Court. I am responding promptly and substantively regardless, because this dispute is resolvable without motion practice.

On the Rule 502 order, I agree with your suggestion. A joint outreach to Judge Beetlestone's chambers asking whether she has a standard form order makes sense. I suggest the same outreach address the stipulated protective order contemplated by the parties' Rule 26(f) report (ECF No. 25 at 8), in which both parties agreed a protective order is necessary in this case, once the parties have exchanged a draft. As set out below, that order resolves the remaining dispute.

To answer your questions directly:

First, I do not object to iDS granting Relativity access to designated EPAM technical employees once the protective order described below is entered.

Second, the same is true of counsel sharing documents made available through the Forensic Protocol with those designated employees under that order.

Third, the proposal below is not conditioned on EPAM disclosing its methodology for promoting documents for review, nor on EPAM making any representation regarding the documents it has not promoted.

***EMAIL 15 OF 20: DEFENDANT OBJECTION TO 2 PM ULTIMATUM (JULY 16, 2026) (Continued - Part 2)***

For the record, I do not agree that the Forensic Protocol grants EPAM's employees access to these materials. Its operative provisions direct documents to counsel for EPAM. Access for EPAM personnel has been, and remains, an accommodation. EPAM's in-house counsel already received access, at EPAM's request, beyond anything the Protocol requires, and EPAM has not identified any determination it was unable to make or explained why that access is insufficient. The further access below is likewise provided as an accommodation under a protective order, without prejudice to either party's reading of the Protocol, and not pursuant to any obligation the Protocol imposes.

The parties enter a stipulated protective order under which: (1) EPAM designates up to three named technically competent employees, each employed by EPAM's U.S. entity, based in the United States, and executing the standard acknowledgment, which includes consent to this Court's jurisdiction and designation of a U.S. agent for service of process; (2) those employees may review the technical materials in the review set (source code, repositories, packages, and development artifacts, which is where technical judgment is actually needed) through iDS's Relativity workspace, accessed from within the United States; (3) communications, contracts, financial documents, and personal materials remain at the attorneys' level, where technical expertise adds nothing; and (4) all material is used solely for this litigation, consistent with Protocol Section VI(c).

EPAM serves the names, titles, and roles of its proposed reviewers, I have five business days to raise any objection, and iDS implements the access.

Since the stated purpose of this access is to enable EPAM to complete its identification of Confidential Information and Work under Protocol Section III(b)(vi), please confirm that EPAM will serve its Documents to be Remediated Report within fifteen (15) business days of its designated

***EMAIL 15 OF 20: DEFENDANT OBJECTION TO 2 PM ULTIMATUM (JULY 16, 2026) (Continued - Part 3)***

employees receiving access. The parties advised the Court in February that this review and any required remediation would be complete by the end of March (ECF No. 25 at 7-8). The access above removes the last stated impediment to completing it.

I will send you a draft stipulated protective order reflecting these terms by Monday, July 20, and I am available to finalize it next week.

Regards,

Gowtham Rao

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

**EMAIL 16 OF 20: SEYFARTH SHAW RESPONSE ON EMPLOYEE ACCESS & PROTECTIVE ORDER (JULY 16, 2026)**
**Date: Thu, 16 Jul 2026 20:35:17 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-16_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f6ca47389398c4.md**

---

Gowtham,

In answer to the 2 p.m. deadline, time is of the essence here. We have been going back-and-forth with you for months, and have reached the point where our technical employees need full access now- not at some indefinite point in the future. Indeed, they needed that access weeks ago. None of your new proposals below were raised in any of the parties' lengthy oral and written meet-and-confers and, we are concerned, have been asserted now essentially to delay matters further. Nevertheless, our response are below. Because time is of the essence, we need "yes" or "no" answers to the below no later than noon tomorrow.

1) We have no objection to requesting that the Court enter a protective order, but can't condition any agreement on the Court deciding to enter a protective order. Judges often refuse to enter protective orders (see Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-88 (3rd Circuit 1994), and Judge Beetlestone specifically sets forth that she only approves them for "good cause shown." (Judge Beetlestone Policies and Practices, Section III(D).) We would instead suggest entering into a confidentiality stipulation with you, and then request that the Court endorse the stipulation as a protective order under Pansy. The confidentiality stipulation would remain effective either way (courts can enforce stipulations between the parties), even if Judge Beetlesetone refuses to enter it as a protective order.

However, EPAM's technical employees need access today - we cannot waste any time going through numerous additional rounds of negotiations and "meet and confers" with you about the text of a condition you just suggested today. We have already agreed, under the Forensic Protocol, that the materials would be used solely for purpose of this litigation. To allay any additional concerns, we would also agree, through this email correspondence, to keep any materials viewed by the technical employees as "confidential," and to instruct the technical employees to do the same, subject to the standard carve-outs seen in virtually all confidentiality agreements. For a few examples, we may need to share certain documents with retained experts, and may need at some point to file them in Court.

This is our final offer. It is not subject to additional negotiation. Please let us know "yes" or "no" if this is acceptable to you.

2) EPAM's technical employees must have full access to all the documents. This is not up for negotiation, and represents our final offer. We cannot agree that technical employees not be given access to "communications, contracts, financial documents, and personal materials." Those documents can easily contain EPAM Confidential Information and/or Work. You may, for example, have downloaded "communications, contracts, financial documents, and personal materials" from EPAM, or copied or typed EPAM Confidential Information and/or Work into additional documents (including "communications" such as emails).

Please confirm, "yes" or "no," whether you agree that EPAM's technical employees can have access to all the documents that EPAM's counsel have access to.

---

***EMAIL 16 OF 20: SEYFARTH SHAW RESPONSE ON EMPLOYEE ACCESS & PROTECTIVE ORDER (JULY 16, 2026) (Continued - Part 2)***

3) While your demand is without basis, EPAM will agree that, unless you serve formal discovery requests, it will limit the number of technical employees it shares access with to three persons. However, you do not have any right to restrict access to employees based in the United States, or based on which EPAM entity is the individual's legal employer. You worked with people around the world, and the most knowledgeable people at EPAM may be persons who reside outside the United States, or may be employed by different EPAM legal entities. Further, you do not get veto power over EPAM's choices, nor do you get to delay this process an additional five days. Once again, EPAM's technical employees need access now, not five days from now or, worse, at some indefinite future point after we resolve yet more objections from you after more meet-and-confers. And EPAM's counsel needs to share the documents with the persons best suited to understand them - you have zero right to inhibit our ability to represent our client by vetoing whom we share documents with. Further, if you serve formal discovery, the three person limit goes away and EPAM can share documents with whomever it believes may assist it with responding to discovery - without giving you any prior notice of whom or what we are sharing (all such information would infringe on work product).

This is our final offer. It is not subject to further negotiation. Please confirm "yes" or "no" if you accept it.

4) We already identified the documents for which we requested remediation, specifically identifying 6693 documents. You objected to each and every one, without supplying a basis. That is part of the reason why we are here, and part of why EPAM's technical employees need access. We cannot agree on any artificial time limits.

5) If we cannot reach a final resolution, we will need to promptly seek relief from Judge Beetlestone. Pursuant to the Stipulated Consent Order (ECF #20, Paragraph 3), a party seeking to file the Forensic Protocol must "submit a consented to motion requesting leave from the Court to file it under seal." If we cannot reach agreement, please confirm in writing that we can file such a "consented to motion."

Again, this is our final offer. It is not subject to further negotiation. Please confirm "yes" or "no" if you accept it.

Jacob

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**EMAIL 17 OF 20: SEYFARTH SHAW CONFIDENTIALITY TRANSMITTAL & ACCESS DEMAND (JULY 17, 2026)**
**Date: Fri, 17 Jul 2026 15:32:47 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-17_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f70b6b9ca02120.md**

---

Gowtham,

While we cannot agree that our employees' access to the documents be conditioned on a confidentiality agreement being finalized, or a protective order being entered (condition that could result in lengthy and unpredictable delays), to advance the ball we have gone ahead and prepared a confidentiality agreement. This draft is acceptable to us as both a confidentiality agreement, and as a proposed protective order to submit to the Court.

Please let us know if this agreement is acceptable to you.

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

From: Oslick, Jacob

Sent: Thursday, July 16, 2026 4:35 PM

To: 'Gowtham Rao' <gowthamrao.litigation@gmail.com>

Cc: Gowtham Rao <gowthamrao@gmail.com>; Christoff, Matthew <MChristoff@seyfarth.com>; Sarah Lugar <Sarah_Lugar@epam.com>; Yu, James <JYu@seyfarth.com>

Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

***EMAIL 17 OF 20: SEYFARTH SHAW CONFIDENTIALITY TRANSMITTAL & ACCESS DEMAND (JULY 17, 2026) (Continued - Part 2)***

Gowtham,

In answer to the 2 p.m. deadline, time is of the essence here. We have been going back-and-forth with you for months, and have reached the point where our technical employees need full access now- not at some indefinite point in the future. Indeed, they needed that access weeks ago. None of your new proposals below were raised in any of the parties' lengthy oral and written meet-and-confers and, we are concerned, have been asserted now essentially to delay matters further. Nevertheless, our response are below. Because time is of the essence, we need "yes" or "no" answers to the below no later than noon tomorrow.

1) We have no objection to requesting that the Court enter a protective order, but can't condition any agreement on the Court deciding to enter a protective order. Judges often refuse to enter protective orders (see Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-88 (3rd Circuit 1994), and Judge Beetlestone specifically sets forth that she only approves them for "good cause shown." (Judge Beetlestone Policies and Practices, Section III(D).) We would instead suggest entering into a confidentiality stipulation with you, and then request that the Court endorse the stipulation as a protective order under Pansy. The confidentiality stipulation would remain effective either way (courts can enforce stipulations between the parties), even if Judge Beetlesetone refuses to enter it as a protective order.

However, EPAM's technical employees need access today - we cannot waste any time going through numerous additional rounds of negotiations and "meet and confers" with you about the text of a condition you just suggested today. We have already agreed, under the Forensic Protocol, that the materials would be used solely for purpose of this litigation. To allay any additional concerns, we would also agree, through this email correspondence, to keep any materials viewed by the technical employees as "confidential," and to instruct the technical employees to do the same, subject to the standard carve-outs seen in virtually all confidentiality agreements. For a few examples, we may need to share certain documents with retained experts, and may need at some point to file them in Court.

This is our final offer. It is not subject to additional negotiation. Please let us know "yes" or "no" if this is acceptable to you.

2) EPAM's technical employees must have full access to all the documents. This is not up for negotiation, and represents our final offer. We cannot agree that technical employees not be given access to "communications, contracts, financial documents, and personal materials." Those documents can easily contain EPAM Confidential Information and/or Work. You may, for example, have downloaded "communications, contracts, financial documents, and personal materials" from EPAM, or copied or typed EPAM Confidential Information and/or Work into additional documents (including "communications" such as emails).

Please confirm, "yes" or "no," whether you agree that EPAM's technical employees can have access to all the documents that EPAM's counsel have access to.

3) While your demand is without basis, EPAM will agree that, unless you serve formal discovery requests, it will limit the number of technical employees it shares access with to three persons. However, you do not have any right to restrict access to employees based in the United States, or based on which EPAM entity is the individual's legal employer. You worked with people around the world, and the most knowledgeable people at EPAM may be persons who reside outside the United States, or may be employed by different EPAM legal entities. Further, you do not get veto power over EPAM's choices, nor do you get to delay this process an additional five days. Once again, EPAM's technical employees need access now, not five days from now or, worse, at some indefinite future point after we resolve yet more objections from you after more meet-and-confers. And EPAM's counsel needs to share the documents with the persons best suited to understand them - you have zero right to inhibit our ability to represent our client by vetoing whom we share documents with. Further, if you serve formal discovery, the three person limit goes away and EPAM can share documents with whomever it believes may assist it with responding to discovery - without giving you any prior notice of whom or what we are sharing (all such information would infringe on work product).

This is our final offer. It is not subject to further negotiation. Please confirm "yes" or "no" if you accept it.

***EMAIL 17 OF 20: SEYFARTH SHAW CONFIDENTIALITY TRANSMITTAL & ACCESS DEMAND (JULY 17, 2026) (Continued - Part 3)***

4) We already identified the documents for which we requested remediation, specifically identifying 6693 documents. You objected to each and every one, without supplying a basis. That is part of the reason why we are here, and part of why EPAM's technical employees need access. We cannot agree on any artificial time limits.

5) If we cannot reach a final resolution, we will need to promptly seek relief from Judge Beetlestone. Pursuant to the Stipulated Consent Order (ECF #20, Paragraph 3), a party seeking to file the Forensic Protocol must "submit a consented to motion requesting leave from the Court to file it under seal." If we cannot reach agreement, please confirm in writing that we can file such a "consented to motion."

Again, this is our final offer. It is not subject to further negotiation. Please confirm "yes" or "no" if you accept it.

Jacob

**EMAIL 18 OF 20: DEFENDANT RESPONSE TO URGENT ESCALATION (JULY 17, 2026)**
**Date: Fri, 17 Jul 2026 12:57:47 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-17_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f7103454cfda71.md**

---

Jacob,

I am concerned by the extreme urgency and shifting demands regarding this

matter, and I need more time to review everything properly.

If I were to contact iDS to recommend Relativity access to certain EPAM

employees, I need to know who those individuals are. Please provide the

names of the employees you are requesting access.

Regards,

Gowtham Rao

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

---

**EMAIL 19 OF 20: SEYFARTH SHAW FOLLOW-UP ON EMPLOYEE ACCESS (JULY 17, 2026)**
**Date: Fri, 17 Jul 2026 17:26:06 +0000**
**From: "Oslick, Jacob" <JOslick@seyfarth.com>**
**Subject: RE: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-17_RE EPAM vs Rao - 2026-07-08 - Meet and Confer_19f711daf1078606.md**

---

Gowtham,

There have been no "shifting demands" from us. We have been consistent, for months, that our technical employees need access. The only "shifting demands" have been the various irrational pre-conditions and restrictions that you have sought to unilaterally impose on us, despite the Forensic Protocol imposing no restrictions whatsoever on our use of the documents - other than they must be used for litigation purpose. Frankly, our agreement to limit access to just three employees (which is conditioned on this dispute being resolved without court intervention) is itself a major restriction for which there is no basis in the forensic protocol.

We are out-of-time, and intend to proceed with filing a discovery letter with Judge Beetlestone this afternoon. However, in the hope that this dispute can be resolved before a discovery conference actually takes place, we will represent that two of those employees will be Dmitrii Ilin and Lucy McDermott. We would select a third employee later on. While they will eventually need Relativity access, in the interim, we can share documents with these employees in other ways (e.g., a screenshare). Please confirm your agreement with that.

As set forth below, if you serve formal discovery, this three person limit goes away.

If the matter goes to a decision before Judge Beetlestone, we will insist on full and unrestricted access for any EPAM employee with a litigation need-to-know - not merely with three employees.

Jacob

***EMAIL 19 OF 20: SEYFARTH SHAW FOLLOW-UP ON EMPLOYEE ACCESS (JULY 17, 2026) (Continued - Part 2)***

Jacob Oslick | Counsel | Seyfarth Shaw LLP

620 Eighth Avenue | New York, New York 10018-1405

Direct: +1-212-218-6480 | Mobile: +1-917-613-2523

N.Y. Bar No. 4275699; Pa. Bar No. 311028

JOslick@seyfarth.com | www.seyfarth.com

[https://www.seyfarth.com/dir_docs/publications/Seyfarth_Logo_Signature.png]

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**DEFENDANT'S EXHIBIT O -- July 7·17, 2026 Meet and Confer Record**

*Case No. 2:25-cv-06260-WB | Exhibit O*

**EMAIL 20 OF 20: DEFENDANT RECOMMENDATION OF LUCY MCDERMOTT ROLLING ACCESS (JULY 17, 2026)**
**Date: Fri, 17 Jul 2026 13:49:56 -0400**
**From: Gowtham Rao <gowthamrao.litigation@gmail.com>**
**Subject: Re: EPAM vs Rao - 2026-07-08 - Meet and Confer**
**Source File: data/03_emails_litigation/2026-07-17_Re EPAM vs Rao - 2026-07-08 - Meet and Confer_19f7132e52a67e6b.md**

---

Thank you, Jacob. Since Lucy McDermott is a US based employee subject to court jurisdiction, I have emailed iDS recommending access for her. This authorization is an ongoing additional concession. Now two EPAM employees are on the authorized list - Sarah Lugar (EPAM internal counsel) and EPAM's technical resource (Lucy).

Gowtham