**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EPAM SYSTEMS, INC.,**<br>*Plaintiff/Counterclaim-Defendant,*<br>**v.**<br>**GOWTHAM RAO, MD, PhD,**<br>*Defendant/Counterclaim-Plaintiff.* | **CIVIL ACTION**<br><br>**NO. 2:25-cv-06260-WB** |

**DEFENDANT GOWTHAM RAO'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO SEAL AND TO CLOSE THE COURTROOM (ECF NO. 60)**

Defendant Gowtham Rao, MD, PhD, proceeding pro se, respectfully submits this Memorandum of Law in Opposition to Plaintiff EPAM Systems, Inc.'s ("EPAM") Motion to Seal and to Close the Courtroom (ECF No. 60).

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ..... iii
**PRELIMINARY STATEMENT** ..... 1
**PART ONE — THE MOTION TO SEAL THE EXHIBITS** ..... 2
**I. FACTS** ..... 2
A. I generated the documents by prompting Google Gemini on a subscription EPAM approved and paid for. ..... 2
B. I kept the documents on my personal Google account under a bring-your-own-device arrangement Gregory Klebanov knew about. ..... 3
C. EPAM quoted the exhibits in a public, unredacted memorandum on July 29, 2026. ..... 3
D. EPAM moved to seal nineteen days after it quoted the exhibits publicly. ..... 3
E. I rely on my Declaration and Scope Appendix, both already on this docket. ..... 3
**II. THE SCOPE OF EPAM'S REQUEST** ..... 3
A. EPAM asks for leave to use sealed versions at the September 16 hearing, not to seal anything now public. ..... 3
B. EPAM asserts two grounds, and the non-party privacy ground runs through both of its requests. ..... 4
C. EPAM's entire showing rests on one seven-paragraph declaration from Gregory Klebanov. ..... 4
**III. LEGAL STANDARD** ..... 5
**IV. ARGUMENT** ..... 6
A. EPAM's sole declaration identifies no algorithm, no file, no customer, and no price. ..... 6
1. The declaration adopts a second witness's opinion and supplies no independent technical knowledge. ..... 6
2. The declaration states no investment in Synapse and no revenue from it. ..... 7
3. The documents do not contain what the declaration describes. ..... 9
B. EPAM has not shown that the material is a trade secret. ..... 11
1. EPAM has not shown that it took reasonable measures to keep the material secret. ..... 12
2. EPAM has not shown that the material derives value from not being readily ascertainable. ..... 12
3. EPAM has not shown that disclosure would cause harm now. ..... 13
4. EPAM has not shown that the asserted injury runs to EPAM. ..... 14
C. EPAM quoted these exhibits in a public filing before moving to seal them. ..... 15
D. EPAM's memorandum says the redacted exhibits are both insufficient and sufficient. ..... 15
**PART TWO — THE MOTION TO CLOSE THE COURTROOM** ..... 16
**V. FACTS** ..... 16
A. Exhibits 6 through 8 summarize conversations with three non-parties, two of whom I know professionally. ..... 16
B. EPAM calls Exhibits 6 through 8 AI-generated summaries it cannot affirm are accurate. ..... 16
C. EPAM has already published the substance of the conduct it calls reputationally damaging. ..... 17
D. I proposed continuing the Executive #1, #2, and #3 designations, and EPAM declined. ..... 17
E. EPAM proposes releasing a lightly redacted transcript after the hearing. ..... 17
**VI. THE SCOPE OF EPAM'S REQUEST** ..... 17
A. EPAM asks for closure in two different widths, and does not reconcile them. ..... 17
B. EPAM proposes no duration, no identified portion of the hearing, and no procedure for reopening the courtroom. ..... 18
C. EPAM's transcript proposal names no preparer, no standard for redaction, and no deadline. ..... 18
D. I consent to the Executive #1, #2, and #3 designations. ..... 18
**VII. LEGAL STANDARD** ..... 18
**VIII. ARGUMENT** ..... 19
A. EPAM has not shown an overriding interest, and a later transcript does not lower the standard. ..... 19
B. EPAM has not shown that no less restrictive alternative exists. ..... 20
**IX. THE PUBLIC INTEREST WEIGHS AGAINST BOTH REQUESTS** ..... 22
**CONCLUSION** ..... 22
**CERTIFICATE OF SERVICE** ..... 23

# TABLE OF AUTHORITIES

**Cases**

*Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622 (E.D. Pa. 2017) .......... 12
*Brand Design Co. v. Rite Aid Corp.*, No. 22-1174, ECF No. 234 (E.D. Pa. Mar. 18, 2024) .......... 5, 14
*Corbin v. Bucks Cnty.*, No. 23-2784, ECF No. 55 (E.D. Pa. June 12, 2024) .......... 6
*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019) .......... 6, 11, 21
*In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001) .......... 5
*In re Indian Palms Assocs., Ltd.*, 61 F.3d 197 (3d Cir. 1995) .......... 3
*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) .......... 5, 12
*Littlejohn v. BIC Corp.*, 851 F.2d 673 (3d Cir. 1988) .......... 15
*Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) .......... 13
*Miller v. Ind. Hosp.*, 16 F.3d 549 (3d Cir. 1994) .......... 5
*Nat'l Polymer Prods. v. Borg-Warner Corp.*, 641 F.2d 418 (6th Cir. 1981) .......... 15
*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) .......... 16, 18, 19, 20, 21
*Republic of the Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) .......... 13, 15

**Constitutional Provisions & Statutes**

18 U.S.C. § 1835 .......... 5
18 U.S.C. § 1835(a) .......... 6
18 U.S.C. § 1839(3)(A) .......... 12
18 U.S.C. § 1839(3)(B) .......... 13
12 Pa. Cons. Stat. § 5302 .......... 12
12 Pa. Cons. Stat. § 5306 .......... 5

## PRELIMINARY STATEMENT

I am proceeding pro se, and I have tried to keep this brief narrow. The parties agree on the framework.

EPAM concedes that Exhibits 6 through 10 and 13 "are judicial records subject to the common-law right of access." (ECF No. 60-1 at 3.) EPAM agrees that the exception it invokes protects "genuine" trade secrets. (*Id.* at 2.) In its motion to seal, EPAM has not met its burden of proof.

Its proof is based on one declaration, from Gregory Klebanov, who states that he agrees with a colleague, Dmitrii Ilin. (ECF No. 60-3 ¶ 3.) He identifies no algorithm, no file, no line of code, no customer, and no price. He states that "EPAM considers" the material to be trade secrets and so it should be sealed. (*Id.*)

I generated the documents EPAM wants sealed. I did that by prompting a commercial artificial-intelligence service, Google Gemini, and exporting what it produced to Google Docs using Gemini's native export function. I used a premium Google Gemini subscription on my personal account. EPAM approved it and paid for it, and I did this and similar work for EPAM, as EPAM's employee and at the direction of EPAM. I was the designated Product Owner for the concept that at one point was called "Synapse." I have described this under oath. (ECF No. 62-30 ¶¶ 11, 12, 13, 123 & Ex. A.) These documents were on my personal device and in my personal Google account. I claim no confidentiality in them, and I do not want them sealed.

My request is narrow, and I want to state it plainly. I ask the Court not to receive any of these exhibits under seal, redacted or unredacted, and not to close the courtroom. That is the whole of the relief I seek on this motion.

This is not a merits argument. I am not asking the Court to decide whether the material is a trade secret, who owns it, or whether I did anything wrong. Those questions belong to EPAM's

sanctions motion and to the case itself, and I do not argue them here. I have preserved my denials of EPAM's merits assertions, including its claims of trade-secret status and ownership. (ECF No. 62-29.) The absence of merits argument here preserves those denials; it concedes nothing.

I have agreed to protect the identity of the three non-party individuals in Exhibits 6 through 8. Two of them are professional acquaintances of mine. EPAM's sanctions motion introduced the Executive #1, #2, and #3 designations, and I proposed that we continue them. (ECF No. 60 ¶ 7.) In Part Two of this memorandum I propose an examination protocol that would keep their names out of open court entirely. I do not accept that protecting them requires excluding the public from a federal courtroom.

Because EPAM's two requests rest on different facts and are governed by different standards, I address each separately below, in each case setting out the facts, the scope of what EPAM asks for, the governing standard, and my argument.

## PART ONE — THE MOTION TO SEAL THE EXHIBITS

### I. FACTS

**A. I generated the documents by prompting Google Gemini on a subscription EPAM approved and paid for.** I proposed the Synapse product concept to EPAM leadership on or around June and July 2025 and served as its designated Product Owner. (ECF No. 62-30 ¶ 11.) An internal steering group met weekly to evaluate the concept. (*Id.*) I generated the documents now at issue by prompting Google Gemini and exporting what it produced to Google Docs, using Gemini's native export function. (*Id.* ¶ 13.) I made no substantive changes to the output. The subscription was a premium Google Gemini subscription on my personal account, subscriptionrao@gmail.com, which EPAM approved and paid for on an EPAM corporate credit card ending 4760. (*Id.* ¶¶ 12, 26, 123 & Ex. A; ECF No. 62-29 § 9.)

**B. I kept the documents on my personal Google account under a bring-your-own-device arrangement Gregory Klebanov knew about.** I worked under a bring-your-own-device arrangement that my manager — Gregory Klebanov, EPAM's declarant on this motion — knew about. (ECF No. 62-30 ¶¶ 64, 82, 121.) Exhibit 9 was kept on my personal Google account with its General Access setting at "Anyone with the link," in the role of "Editor." (*Id.* ¶¶ 256-260 & Ex. C.) Exhibit 13 is a Google Docs notification sent from one personal account, inviting a second personal account to edit the Sales Battle Card. (ECF No. 58-16.)

**C. EPAM quoted the exhibits in a public, unredacted memorandum on July 29, 2026.** On July 29, 2026, EPAM moved for terminating sanctions for spoliation of evidence. (ECF No. 58.) In its supporting memorandum — filed publicly and without redaction — EPAM quoted directly from Exhibits 6, 7, 8, 9, 10, and 13. (ECF No. 58-2 at 10-13, 19-21.) It filed the exhibits themselves in redacted form the same day.

**D. EPAM moved to seal nineteen days after it quoted the exhibits publicly.** EPAM first raised sealing with me on August 5, 2026. (ECF No. 60-2 at 4.) I responded on August 10, 2026. (*Id.* at 2-3.) EPAM filed this motion on August 17, 2026 — nineteen days after it quoted the exhibits in a public filing.

**E. I rely on my Declaration and Scope Appendix, both already on this docket.** I rely on my Declaration (ECF No. 62-30) and Scope Appendix (ECF No. 62-29), both on this docket. *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995).

## II. THE SCOPE OF EPAM'S REQUEST

**A. EPAM asks for leave to use sealed versions at the September 16 hearing, not to seal anything now public.** EPAM does not ask the Court to seal anything that is now public. It asks for "an order ... permitting it to introduce unredacted versions of Exhibits 9, 10 and 13 ... and less

redacted versions of Exhibits 6-8 under seal during the September 16, 2026 hearing." (ECF No. 60 at 1; *accord* ECF No. 60-1 at 1, 12.) The redacted versions EPAM filed on July 29 remain on the public docket either way. EPAM states that those redacted versions already give the public sufficient information about what these exhibits contain. (ECF No. 60-1 at 11.)

**B. EPAM asserts two grounds, and the non-party privacy ground runs through both of its requests.** For Exhibits 9, 10, and 13, EPAM asserts trade secrets and competitive injury. (*Id.* at 4-8.) For Exhibits 6 through 8, EPAM states that its "primary concern was not protection of trade secrets or confidential business information, but rather to prevent public identification of the three non-parties." (*Id.* at 8.) EPAM does not seek to seal the business-information redactions in those exhibits at all; it intends to keep using them. (ECF No. 60 ¶ 6 n.1.)

That second ground — keeping three people's names out of the public record — is also the ground on which EPAM asks to close the courtroom. EPAM joins the two in a single sentence: the relief it seeks is "the Court accepting under seal less redacted versions of these documents ... as well as closing the courtroom during testimony that could reveal their identities." (ECF No. 60 ¶ 6.)

One ground, two requests. Answering it in both Parts would say the same thing twice. **Part One therefore addresses only the trade-secret ground. Part Two addresses the non-party privacy ground in full — the exhibits and the courtroom together — because a single protocol answers both.**

**C. EPAM's entire showing rests on one seven-paragraph declaration from Gregory Klebanov.** EPAM's showing rests on a seven-paragraph declaration from Gregory Klebanov. (ECF No. 60-3.) No other EPAM witness has submitted anything on this motion.

I consent to the continued use of the Executive #1, #2, and #3 convention, and that consent is not in dispute. (ECF No. 60 ¶ 7.) The question in this Part is whether EPAM has made the showing required to introduce unredacted Exhibits 9, 10, and 13 under seal.

**III. LEGAL STANDARD**

The Court has set out this standard in its own opinions, and I do not restate it at length.

These exhibits are judicial records, and EPAM concedes it. (ECF No. 60-1 at 3.) The presumption of access attached when EPAM filed them. *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993).

EPAM bears a heavy burden to overcome that presumption. *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994). It must show a clearly defined and serious injury, document by document, and "[i]n delineating the injury to be prevented, specificity is essential. Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Cendant*, 260 F.3d at 194. A movant must supply the Court "with the tools to conduct that analysis," and its own confidentiality designation does not supply them. *Brand Design Co. v. Rite Aid Corp.*, No. 22-1174, ECF No. 234 at 27 (E.D. Pa. Mar. 18, 2024).

Where a movant invokes trade-secret status, sealing reaches materials the Court "determines to be bona fide trade secrets after carefully weighing the factors for and against access." *Leucadia*, 998 F.2d at 167. The determination is the Court's to make.

EPAM also invokes 18 U.S.C. § 1835 and 12 Pa. Cons. Stat. § 5306, which it describes as authorizing the Court to "enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets," to hold "in camera hearings," and to seal "the records of the action." (ECF No. 60-1 at 3.) Section 1835(a) directs those orders

"consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws." 18 U.S.C. § 1835(a). These statutes describe measures the Court may take once material is shown to be a trade secret. They do not make that showing for EPAM.

## IV. ARGUMENT

### A. EPAM's sole declaration identifies no algorithm, no file, no customer, and no price.

#### *1. The declaration adopts a second witness's opinion and supplies no independent technical knowledge.*

The Third Circuit has rejected a corporate declaration of this kind. In *Avandia*, the movant submitted a declaration to establish competitive harm. The court held that it "contains broad, vague, and conclusory allegations of harm that are, standing alone, insufficient to overcome the presumption of public access." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 678 (3d Cir. 2019). The declaration did not connect the asserted harm to any present competitive reality, and "blanket assertions of harm that 'could' come to fruition fall short of the clearly defined and serious injury that GSK must articulate to obtain sealing under any standard." *Id.* at 679.

This Court reached the same conclusion in *Corbin*. Where an official asserted that disclosure would harm an institutional interest but did not explain how, "[the declarant's] brief, conclusory assertion that this is so is not enough to permit the Court to evaluate the strength of this interest." *Corbin v. Bucks Cnty.*, No. 23-2784, ECF No. 55 at 15-16 (E.D. Pa. June 12, 2024).

The Klebanov declaration is seven paragraphs. It states that "EPAM considers the Synapse source code, and the architec[t]ual documents used in Synapse's development, to be not

only be highly confidential, but to be trade secrets." (ECF No. 60-3 ¶ 3.) It identifies no algorithm, no file, no line of code, no customer, and no price.

On the technical question, Mr. Klebanov claims no independent knowledge. His statement about Exhibit 9 begins: "I agree with my colleague Dmitrii Ilin." (*Id.*) Mr. Ilin is the witness EPAM has asked the Court to excuse from appearing in person. (ECF No. 61.)

EPAM had other witnesses. The steering group that met weekly to evaluate Synapse included Greg Killian, Sergey Yezkov, Chris Waller, and Mr. Klebanov, and Jonathan Rioux, EPAM's Vice President of Artificial Intelligence, joined to assist. (ECF No. 62-30 ¶ 11.) Two more people worked with me directly on Exhibit 13 — Senior Sales Director Jim Gatch and marketing lead Gabby Semon. (ECF No. 62-29 § 9.) EPAM submitted a declaration from one of them.

EPAM's declaration also does not fix the identity of the asset it asks the Court to protect. Mr. Klebanov describes "the software solution known internally, at certain times, as 'Synapse.'" (ECF No. 60-3 ¶ 2.) He identifies no repository, no version number, and no release date. He attributes EPAM's recorded hours to a project rather than to Synapse, and he states that EPAM no longer uses the Synapse name. (§§ IV.A.2, IV.B.3.)

EPAM has also declined, in discovery, to identify any specific file as a trade secret. (ECF No. 62-30 ¶¶ 68-69 & Exs. N-O.) Specificity was available to EPAM. EPAM did not supply it.

***2. The declaration states no investment in Synapse and no revenue from it.***

The declaration says EPAM "recorded over 4,600 employee hours logged to the project that included Synapse." (ECF No. 60-3 ¶ 2.) Those hours are attributed to a project that included Synapse, not to Synapse. No timesheet, project code, or accounting record accompanies the figure.

The declaration states no amount EPAM spent, no revenue, no customer, and no executed contract, and it does not say Synapse was funded as a product or capitalized as an asset.

The declaration asserts an injury EPAM says it has already suffered, and it attributes that injury to me rather than to public access. EPAM "believes that it has already suffered an injury" because "Dr. Rao appears to be marketing software that is materially similar to Synapse through his company CoReason," which "inhibits EPAM's ability to sell or license Synapse." (ECF No. 60-3 ¶ 4.) Sealing Exhibit 9 cannot reach that injury.

I already have these documents, because I generated them. (§ I.A.) An order sealing Exhibit 9 at the September 16 hearing governs what the public may see in the Court's file. It does not require me to return or delete anything, and EPAM does not ask for that relief in this motion.

The competition EPAM describes is also already under way, on EPAM's own account. EPAM says I "appear[] to be marketing" competing software now, and an order entered on September 16 cannot undo conduct that EPAM says has already occurred.

EPAM never connects the sealing it requests to the injury it describes. It does not say that any part of that competition was caused by public access to Exhibit 9, or that sealing Exhibit 9 would reduce that competition by any amount.

The declaration's other injury has not happened. EPAM says it "would face a significant, concrete injury if Exhibit 9 became public, and a competitor used it to create a copycat of Synapse." (*Id.*) That injury depends on a sequence of events, and EPAM establishes no step in it.

A competitor would have to want the document. EPAM identifies no competitor, and it does not say why a competitor would seek out Exhibit 9 or what a competitor would learn from it that is not already available. (§ IV.B.3.)

Exhibit 9 would have to be precise enough to build from. The document contains no executable code. (§ IV.A.3.) Mr. Ilin states that the version of Synapse it depicts includes features EPAM never built, and he does not identify them. (Ilin Decl. ¶ 8.) EPAM does not say that a competitor could produce working software from this document, and it does not say what a competitor would have to supply that the document does not.

The resulting product would have to be worth building. EPAM offers no evidence of demand for it. Its own declarant says EPAM no longer uses the Synapse name, and the declaration identifies no customer and no revenue. Its only reference to customers anywhere is to "prospective customers." (ECF No. 60-3 ¶¶ 2, 5, 7; § IV.B.3.) EPAM does not explain why a competitor would spend money to copy a product EPAM does not say it is currently selling, and it does not explain why a document generated in August 2025 would still describe a product worth copying in September 2026. (§ IV.B.3.)

EPAM asserts the end of that sequence and asks the Court to assume the rest.

***3. The documents do not contain what the declaration describes.***

I generated these documents and I have read them, so I know what is in them. But the Court does not have to take my word for it, and I am not asking it to. EPAM's description can be checked against the exhibits EPAM has lodged, and I respectfully ask the Court to check it in camera.

EPAM states that Exhibit 9 sets forth a "comprehensive, step-by-step plan" that "would enable a competent coder to create a Synapse copycat." (ECF No. 60-3 ¶ 3.) Inspection will show that the document contains no function definition, no import statement, and no executable code. It names files it does not contain. In place of code, it contains prompts directing an artificial-intelligence assistant to write code later.

Dmitrii Ilin, EPAM's engineer, states two things about Exhibit 9 in a single paragraph. He says the document would let someone "recreate, from scratch, a software solution substantially similar in its foundational architecture, principal components, and core functionality to Synapse as it exists today." He also says that "[t]he specific version of Synapse depicted in this document incorporates some features that Rao sought to include in Synapse, which we ultimately decided not to include (or, at least, have not yet included) as the development proceeded." (Ilin Decl. ¶ 8.)

Those two statements describe different documents. A document depicting a version of Synapse built from features EPAM never adopted is not a description of Synapse as it exists today. Someone following it would build the product EPAM decided against, in whole or in part.

Mr. Ilin anticipates the point and answers it in one sentence: "Those differences do not alter the document's practical value as a detailed blueprint for building Synapse." (*Id.*) He does not identify any of those features, say how many there are, state what share of the described architecture they represent, or say which components they affect. The Court is asked to find the differences immaterial without being told what they are.

On Exhibit 13, EPAM says the document contains its "plans to price its offerings to prospective customers," and cites the title of the section it says contains them. (ECF No. 60 ¶ 5; ECF No. 60-3 ¶ 7.) Inspection will show that the section states no price, no rate, no discount, and no figure of any kind.

The declaration describes these documents as "highly restricted," and states that "EPAM does not permit access to these documents to anyone but employees working on the Synapse project or otherwise at a certain level within the organization." (ECF No. 60-3 ¶ 3.) Exhibit 13,

described at Part One, § I.B, is a Google Docs notification sent from one personal account to another. EPAM filed it.

EPAM asks the Court to apply two different standards to the same kind of document, and its motion needs both to succeed.

Exhibits 6 through 8 and Exhibit 9 were produced the same way, by prompting an artificial-intelligence service. EPAM says as much about the first group: they "appear to be AI-generated summaries of conversations that Rao had with the non-parties," and "EPAM cannot affirm that every statement attributed to Executives #1-3 reflected in these summaries is completely accurate." (ECF No. 60-1 at 9.) EPAM asks the Court to protect the three individuals because that output may be inaccurate.

EPAM asks the Court to seal Exhibit 9 on the opposite premise. Mr. Ilin states that "a competent coder could draft new code" from the document that would produce "functionality and capabilities similar to" Synapse. (Ilin Decl. ¶ 14.) That request depends on this kind of output being accurate enough to build a working product from.

EPAM is right to be careful about the reliability of artificial-intelligence output. That caution cannot apply to Exhibits 6 through 8 and stop at Exhibit 9. If the Court credits EPAM's doubt about what the service wrote concerning three executives, the same doubt attaches to what it wrote concerning Synapse.

**B. EPAM has not shown that the material is a trade secret.**

EPAM relies on a footnote in *Avandia*. (ECF No. 60-1 at 2.) The footnote observes that the movant in that case "has not claimed that any of the sealed documents contain trade secrets," and identifies trade secrets as "a noted exception to the presumption of public access." *Avandia*, 924 F.3d at 679 n.14. The footnote appears in an opinion vacating two sealing orders and

remanding. And EPAM supplies the operative qualifier itself: the exception protects "genuine" trade secrets. (ECF No. 60-1 at 2.)

EPAM has to establish that the material is a genuine trade secret, and *Leucadia* assigns that determination to the Court. If a movant's own characterization sufficed, the specificity requirement would be satisfied by any party willing to describe its documents favorably. The four elements below are the ones EPAM has not established.

***1. EPAM has not shown that it took reasonable measures to keep the material secret.***

Information qualifies as a trade secret only if "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A); *accord* 12 Pa. Cons. Stat. § 5302.

In *Arkeyo*, a court in this District addressed materials kept as these were. Where a party posted software on the internet without protection, the court held that it "committed the cyber equivalent of leaving its software on a park bench," and that "[t]he posting of materials on the internet without any confidentiality protections makes the information publicly available and renders the materials incapable of trade secret status." *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622, 631-32 (E.D. Pa. 2017). The court reached that conclusion even though the web address was unlisted, because it was guessable and unprotected. *Id.* at 632. (*Arkeyo* applied the Illinois Trade Secrets Act under a choice-of-law provision.)

The facts here are set out in Part One, § I.B. Mr. Klebanov says access to these documents is restricted. EPAM's own exhibit shows where they were kept.

***2. EPAM has not shown that the material derives value from not being readily ascertainable.***

Information qualifies only if it "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person

who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B).

I do not contend that information loses protection merely because its components are public. "A confidential compilation and organization of public information can amount to a trade secret," where a "unique combination" of that information "affords a competitive advantage." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021).

That rule carries a requirement. The subject matter "must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Id.* at 382. A statement amounting to "a list of general categories of business and technical information," of a kind "that could be used to describe documents found in any number of corporations," does not meet it. *Id.*

EPAM has identified neither the combination nor the advantage. Its declaration names categories — architectural documents, sales strategy — and stops.

Inspection will show that the document identifies its audience as a mid-level Python developer familiar with modern web frameworks, and that its stated prerequisites are Python, a virtual environment manager, Docker, and an ordinary API client. Inspection will further show that every software library it names is publicly available at no cost.

***3. EPAM has not shown that disclosure would cause harm now.***

A movant must come forward with "current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm it claims." *Republic of the Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991).

These documents are old, and EPAM says so. Exhibit 9 entered Google Docs on August 10, 2025. (ECF No. 62-30 ¶ 14 & Ex. C.) By the September 16, 2026 hearing it will be more

than thirteen months old. Mr. Klebanov states that the Sales Battle Card "is roughly one year old by now." (ECF No. 60-3 ¶ 7.)

He answers the age of the Sales Battle Card with an assertion: "EPAM's fundamental strategy for marketing and pricing Synapse, as set forth in this document, has not changed." (*Id.*) Nothing supports it. The declaration does not describe EPAM's current strategy, identify what in the document still reflects that strategy, or say what has changed in the intervening year.

EPAM's own declarations establish that things have changed. Mr. Klebanov states that EPAM "no longer uses the Synapse name." (*Id.* ¶ 5.) Mr. Ilin states that the version of Synapse described in Exhibit 9 includes features EPAM decided not to build. (Ilin Decl. ¶ 8; § IV.A.3.) On EPAM's own account, these documents describe a product under a name EPAM has abandoned, containing features EPAM never adopted.

EPAM does not identify the current name, a competitor, or what a competitor would learn from these documents that it could not obtain from the public libraries they name. It does not say what competitive value a plan for an unbuilt product retains thirteen months after it was generated.

***4. EPAM has not shown that the asserted injury runs to EPAM.***

The injury must be one "to the party seeking closure." *Brand Design*, No. 22-1174, ECF No. 234 at 28 n.9 (E.D. Pa. Mar. 18, 2024). Mr. Klebanov makes ownership an element of EPAM's own position: EPAM's "prospects for sales materially depend upon Synapse being its own intellectual property." (ECF No. 60-3 ¶ 5.) The declaration offers no evidence on that point, and the record contains EPAM's own contrary assessment. (ECF No. 33-2; ECF No. 62-29 § 6.) I preserve this issue and do not argue it here. (ECF No. 62-29.)

**C. EPAM quoted these exhibits in a public filing before moving to seal them.**

The release of information in open court "is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use." *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) (quoting *Nat'l Polymer Prods. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981)).

EPAM quoted from these exhibits in a public, unredacted memorandum on July 29, 2026, as set out at Part One, § I.C. It quoted conversation excerpts, technical descriptions, and commercial characterizations, and it moved to seal nineteen days later.

EPAM has also told the Court that the redacted versions already on the public docket are sufficient for the public to understand these exhibits. (ECF No. 60-1 at 11.) Part Two, § VIII.B takes up whether that concession establishes a less restrictive alternative.

Papers filed to invoke this Court's process "are not entitled to be shielded from public access merely because the district court denied the motion rather than granted it." *Westinghouse*, 949 F.2d at 661.

**D. EPAM's memorandum says the redacted exhibits are both insufficient and sufficient.**

EPAM tells the Court two different things about the same documents.

To explain why it needs this motion, EPAM says the redacted versions are not enough: "at the upcoming September 16, 2026, evidentiary hearing, EPAM recognizes that the redacted versions of these documents may be insufficient." (ECF No. 60-1 at 1.)

To explain why the public loses nothing, EPAM says the redacted versions are enough. It "has already publicly filed a redacted version of Exhibits 6-10, and 13, which provides the public with sufficient information about what these exhibits contain, but without the critical details that would threaten EPAM's competitive advantage." (*Id.* at 11.)

Those two sentences describe the same documents, filed on the same day at ECF No. 58. EPAM does not explain what changes between them. It does not identify anything the Court needs to see at the hearing that is missing from the redacted versions. It does not say why the Court cannot examine the unredacted originals in camera without receiving them into a sealed record.

I am not asking the Court to choose between a sealed unredacted exhibit and a sealed redacted one. **I oppose receiving any of these exhibits under seal, redacted or unredacted.** The redacted exhibits are already on the public docket, and EPAM can use them in open court. If a particular line requires protection, that line can be redacted and the document used publicly. If the Court wishes to see an unredacted original, it can inspect it in camera. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1072 (3d Cir. 1984). None of that requires a sealed exhibit.

## PART TWO — THE MOTION TO CLOSE THE COURTROOM

### V. FACTS

**A. Exhibits 6 through 8 summarize conversations with three non-parties, two of whom I know professionally.** Exhibits 6 through 8 are summaries of conversations I had with three people who are not parties to this case. EPAM refers to them as Executive #1, #2, and #3. Two of them are professional acquaintances of mine.

**B. EPAM calls Exhibits 6 through 8 AI-generated summaries it cannot affirm are accurate.** EPAM describes Exhibits 6 through 8 as AI-generated summaries of my conversations with the non-parties, and states that it cannot affirm every statement attributed to Executives #1-3 is completely accurate. (ECF No. 60-1 at 9.) The passage is quoted in full at Part One, § IV.A.3. EPAM's asserted injury is expressed conditionally: "If these descriptions are accurate, they depict Executive #1 as knowingly participating in a deceptive arrangement." (*Id.* at 9-10.)

**C. EPAM has already published the substance of the conduct it calls reputationally damaging.** In this motion, filed publicly, EPAM set out the substance of the conduct it describes as reputationally damaging, including quoted phrases from Exhibit 6 and a description of the arrangement it attributes to Executive #1. (*Id.*) EPAM had earlier quoted these same exhibits in its public sanctions memorandum. (ECF No. 58-2 at 10-13.)

**D. I proposed continuing the Executive #1, #2, and #3 designations, and EPAM declined.** I proposed that we continue the "Executive #1, #2, and #3" convention in open-court testimony and in any exhibit displayed publicly. (ECF No. 60-2 at 2-3; ECF No. 60 ¶ 7.) EPAM declined on two grounds: that the convention would limit its questioning of me, and that it depends on my testifying without error. (ECF No. 60 ¶ 7.) I quote both and answer them at § VIII.B.

**E. EPAM proposes releasing a lightly redacted transcript after the hearing.** EPAM proposes that "after the hearing, the hearing transcript can be publicly disclosed with only redactions to protect the identities of these individuals." (ECF No. 60 ¶ 6; *accord* ECF No. 60-1 at 3, 11.)

## VI. THE SCOPE OF EPAM'S REQUEST

**A. EPAM asks for closure in two different widths, and does not reconcile them.** The order EPAM proposes would close the courtroom "during any testimony during the hearing regarding the sealed information." (ECF No. 60 at 1; *accord* ECF No. 60-1 at 1, 12.) Elsewhere EPAM describes the same request as closure "during testimony that could reveal their identities (or information that would make it easy to determine their names and identities)." (ECF No. 60 ¶ 6.)

Those are not the same request. The second is limited to the identities of three non-parties. The first extends to all testimony about Exhibits 9, 10, and 13 — documents in which no non-party identity appears, and as to which EPAM asserts only commercial injury. On the

broader formulation, the courtroom would close for testimony about software architecture on a rationale addressed to personal privacy.

**B. EPAM proposes no duration, no identified portion of the hearing, and no procedure for reopening the courtroom.** EPAM proposes no duration, identifies no portion of the September 16 hearing it expects to be closed, states no procedure for determining when the courtroom reopens, and does not propose excluding its own personnel.

**C. EPAM's transcript proposal names no preparer, no standard for redaction, and no deadline.** EPAM's sentence names no party to prepare the redactions, states no standard for "lightly," sets no deadline, and identifies no consequence if no one acts.

**D. I consent to the Executive #1, #2, and #3 designations.** I consent to the Executive #1, #2, and #3 convention and to the exclusion of these individuals' names from the record. (ECF No. 60 ¶ 7.) EPAM acknowledges that consent. (ECF No. 60-1 at 3, 10.) The disagreement is not about whether these three people should be protected. It is about whether protecting them requires closing a federal courtroom.

## VII. LEGAL STANDARD

EPAM's second request is governed by a different and higher standard than its first. The public and press have a First Amendment right of access to civil proceedings. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984). To overcome it, the record must show "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 1073; *accord Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984). The party seeking closure bears the burden, and "[t]he injury must be shown with specificity." *Publicker*, 733 F.2d at 1071.

A court "must not relax the standard necessary to close a proceeding simply because a transcript of that closed proceeding can be made available at a later date." *Id.* at 1072.

Sealing a document and excluding the public from a courtroom are not the same act, and *Publicker* does not treat them the same.

## VIII. ARGUMENT

### A. EPAM has not shown an overriding interest, and a later transcript does not lower the standard.

*Publicker* permits some of what EPAM seeks. The Third Circuit held that a district court "acted properly in excluding the public from that part of the hearing that concerned the question of whether certain 'sensitive' information should be kept confidential by a court order," and observed that a court may take such a question "in camera but with counsel present and on the record." *Publicker*, 733 F.2d at 1072. I propose that procedure below.

The same opinion reversed the broader closure. "[T]he hearing's closure extended too far when it included consideration of Publicker's Motion for a Preliminary Injunction," because no overriding interest was articulated and because "there is no indication why a less restrictive alternative such as a bifurcated hearing was not considered." *Id.* at 1074.

EPAM's showing on narrow tailoring is one sentence: "a lightly redacted transcript of the hearing could be made publicly available." (ECF No. 60-1 at 3.) Closing the courtroom does not prevent a name from being spoken; it changes who is in the room when it is spoken. And the transcript exists either way. Under EPAM's proposal the whole closed portion must be reviewed and redacted before release. Under an open hearing, only an inadvertent reference would need redaction. EPAM's approach carries the larger burden and delivers the later access.

The interest EPAM asserts is also qualified by EPAM's own description of it. EPAM says the reputational injury would follow "if these descriptions are accurate," and that it "cannot

affirm" they are. (ECF No. 60-1 at 9-10.) An interest its proponent states conditionally is not the overriding interest *Publicker* requires. And EPAM has already published that substance itself, in this public motion. (§ V.C.) Three names remain unpublished, and the protocol below keeps them unspoken.

**B. EPAM has not shown that no less restrictive alternative exists.**

On protecting the non-party individuals, EPAM and I are not adverse. I proposed the pseudonym convention, and I propose more protections now.

I ask the Court to enter an examination protocol with these terms:

1. The individuals are referred to as Executive #1, #2, and #3 in open court, and the Court so instructs all counsel, all witnesses, and me at the outset.

2. The parties lodge under seal a one-page key identifying each designation by name and employer, pre-marked as a hearing exhibit and provided to the Court, the witness stand, counsel, and me.

3. Where identity or employer is material, counsel may examine by reference to the key, without stating a name aloud.

4. Unredacted exhibits are displayed to the witness and the Court only.

5. Each party identifies, three business days before the hearing, the topics for which it contends identity must be established.

6. Any unanticipated question is raised at sidebar, on the record and under seal.

7. If a name is inadvertently stated, it may be stricken and redacted from the transcript before release.

As to the first, EPAM says the convention would limit its ability to identify Executive #1's employer while questioning me. (ECF No. 60 ¶ 7.) Under the protocol, counsel establishes

identity and employer by directing me to a line on a sealed exhibit. The examination is complete and the record is reviewable. No name is spoken aloud.

As to the second, EPAM says the convention depends on my testifying without error, and that my "natural inclination may be to refer to these individual's names." (*Id.*) That inclination follows from open-ended questioning. Under the protocol, the question that would elicit a name is not asked. A witness confirming a line on a document in front of him is not reaching for a name.

EPAM's remaining concern is that an inadvertent disclosure could not be cured. But EPAM proposes that same cure for the closed portions of the hearing it seeks. (ECF No. 60-1 at 3.) The risk is also symmetrical. EPAM's witnesses know these individuals, and EPAM does not propose closing the courtroom against itself.

I have no interest in naming these individuals. I do not want them named in a public proceeding about a dispute that is not theirs.

Using the public redacted exhibits in open court is a further alternative, and EPAM has already told the Court that those exhibits give the public sufficient information. (Part One, § IV.D.) EPAM asks to close the courtroom during testimony about material it has told the Court is adequately conveyed by documents already public. It does not explain why testimony about those documents cannot proceed in open court using them.

The Court may also inspect any unredacted original in camera. *See Publicker*, 733 F.2d at 1072. Redaction of a particular line containing genuinely sensitive commercial detail is the remedy *Avandia* contemplates, and one EPAM has already used for these same exhibits. Neither requires closing the courtroom, and neither requires a sealed exhibit.

## IX. THE PUBLIC INTEREST WEIGHS AGAINST BOTH REQUESTS.

EPAM frames this as a private commercial dispute. In one respect it is not. The document EPAM asks the Court to seal as its proprietary trade secret designates, as mandatory, an external open-source library maintained by a scientific research community and relied on by academic and public-health researchers who are not parties here. Whether publicly developed scientific tooling may be enclosed within a private trade-secret claim is a question in which the public has a legitimate interest.

EPAM made its allegations publicly, quoting these exhibits in a public memorandum. It now asks that the material answering them be sealed and examined behind a closed door.

I am not asking the Court to protect my reputation. I am asking that allegations already made in public be tested in public. Most of my professional work has been done in the open, in peer-reviewed literature and in open-source scientific software. In that setting, public scrutiny is how the accuracy of a technical claim gets established. It is the same thing I am asking for here.

The privacy of the non-party individuals is fully protected by the protocol in Part Two, § VIII.B. The substance of the allegations remains open.

## CONCLUSION

I respectfully ask the Court to deny EPAM's motion to introduce unredacted Exhibits 9, 10, and 13 and less-redacted Exhibits 6 through 8 under seal, and to deny EPAM's motion to close the courtroom during the September 16, 2026 evidentiary hearing, or any date to which that hearing is continued.

If the Court is inclined to permit EPAM to renew its motion, I ask that any renewed motion be required to identify with particularity the specific information said to constitute a trade secret and the specific competitive advantage it affords.

I further ask the Court to enter the examination protocol set forth in Part Two, § VIII.B.

Any order should state that it reflects no finding on whether the materials at issue constitute trade secrets or on who owns them. I have not asked the Court to decide those questions on this motion, and denying EPAM's motion does not decide them. All I ask is that the material not be sealed and that the hearing be held in open court.

Dated: August 20, 2026
Respectfully submitted,
/s/ Gowtham Rao

**Gowtham Rao, MD, PhD**

*Defendant/Counterclaim-Plaintiff, pro se*

184 Mansgrove Road

Princeton, NJ 08540

gowthamrao.litigation@gmail.com

## CERTIFICATE OF SERVICE

I certify that on August 20, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record, and that I served a courtesy copy by electronic mail on counsel for Plaintiff:

Jacob Oslick, Esq. — joslick@seyfarth.com
James S. Yu, Esq. — jyu@seyfarth.com
Matthew Christoff, Esq. — mchristoff@seyfarth.com
Brooke K. Gary, Esq. — brgary@seyfarth.com
/s/ Gowtham Rao
**Gowtham Rao, MD, PhD**