Seyfarth

**Seyfarth Shaw LLP**
620 Eighth Avenue
New York, New York 10018
**T** (212) 218-5500
**F** (212) 218-5526

joslick@seyfarth.com
T (212) 218-6480

www.seyfarth.com

August 26, 2026

**VIA ECF**

The Honorable Wendy Beetlestone, U.S.D.J.
United States District Court for the Eastern District of Pennsylvania
601 Market Street
Philadelphia, Pennsylvania 19106-1797

**Re: EPAM Systems, Inc. v. Rao, Case No. 2:25-cv-06260-WB**

Dear Judge Beetlestone:

We write on behalf of Plaintiff/Counter-Defendant EPAM Systems, Inc. ("EPAM") to respectfully seek a discovery conference and the Court's intervention concerning Defendant/Counter-Plaintiff Gowtham Rao's service of abusive, bad faith requests for admissions ("RFAs"), pursuant to Your Honor's Individual Policies and Procedures. (*See* Civil Cases § III(c)(2).). As explained below, EPAM requests that the Court enter a protective order pursuant to Fed. R. Civ. P. 26(c) quashing these RFAs, and restricting Rao to no more than 25 RFAs (including subparts). EPAM further requests that the Court extend discovery, which is currently set to close September 30.

**Background**

Between Saturday, August 15 and Monday, August 17, Rao served EPAM with approximately 471 RFAs (disguised as 211 RFAs, but really 471 RFAs including purported subparts).[1] (*See* Exs. 1-5.) Sheer numbers, disproportionality, and irrelevance aside, these RFAs were strategically timed. EPAM's response deadlines fall on September 14-16—right before and coinciding with the September 16 evidentiary hearing on EPAM's sanctions motion, purposefully swamping EPAM with paper to interfere with its preparation for the hearing. Cognizant of the burden he was imposing, Rao – in the midst of serving the RFAs – also sent EPAM an unprompted follow-up communication, writing that "No Rule 26(c) protective order is in place," that EPAM's responses "are due in full and on time," and that EPAM bears "[t]he burden to seek protection." (*See* Ex. 7.)

EPAM immediately sought to meet-and-confer with Rao. Based on its initial review, it noted that: (1) the RFAs were disproportionate; (2) at least dozens of the RFAs, purport to ask EPAM to "admit" if statements exist in documents, or items such as when court events took place – serving no purpose beyond increasing EPAM's burden; (3) at least dozens of the RFAs have negligible or

[1] RFAs 120-211 contain several subparts, which often have little to do with one another. Dr. Rao agrees each subpart seeks admission of a "separate, discrete factual proposition." (See Ex. 6 at 1.) Thus, his subparts should be counted as separate discovery requests. EPAM thus calculates the total number of RFAs as 471. EPAM has lightly redacted Exs. 1-5, including for confidential and/or private information.

no relevance to the dispute; (4) at least dozens of the RFAs would be absurdly burdensome for EPAM to answer, as they would require immense factual investigation (*e.g.*, Ex. 2, RFA 60, that *none* of its "registered copyrights, exclusive commercial licenses, or proprietary intellectual property rights" have been uploaded to "ANY software repository or codebase hosted" by certain organizations, requiring EPAM to go through every file on public databases); (5) many RFAs ask EPAM to "admit" the ultimate facts of the case, despite that EPAM has not yet had the opportunity to take discovery; and (6) Rao's proposed Rule 36 "reasonable inquiry" was *not* reasonable; it would require EPAM to, within 30 days, scour every scrap of paper and fragment of electronic data in its possession or in the control of various non-parties. (*See* Ex. 8 at 12-13.) EPAM proposed that Rao withdraw the RFAs and re-issue 25 of them of his choice. (*Id.* at 13).

In response, Rao made limited efforts to defend the proportionality of his requests. He instead effectively demanded that EPAM spend countless hours preparing a more extensive list of "specific RFAs or subparts" that EPAM wanted eliminated or modified, then insisted that EPAM had not met its "burden" of opposing the RFAs. (*See* Ex. 8 at 3, 9.) He also opposed any extension of time, unless EPAM agreed to extend his time to respond to all discovery (even limited discovery narrowly tailored to the spoliation issues) until after both the spoliation hearing and his noticed deposition date, and further reiterated his opposition to any extension of the September 30 discovery deadline. (*Id* at 4.) His compromise proposal withdrew only two RFAs, leaving 469 remaining. (*Id.* at 1) The parties' meet-and-confer remote conference did not narrow the dispute.

## Discussion

Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). When the discovery sought exceeds the "scope permitted by Rule 26(b)(1)," a party can seek a protective order. Fed. R. Civ. P. 26(c). In deciding if good cause exists for a protective order, courts employ a "balancing test" which weighs a party's need for information against the injury imposed, such as "annoyance, embarrassment, oppression, or undue burden or expense." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *2 (E.D. Pa. 2021). Here, EPAM is entitled to a protective order for four reasons:

***First***, the sheer number of RFAs warrants a protective order. "Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive." *Penn Eng'g & Mfg. Corp.*, 2021 WL 4037857, at *8 (granting protective order quashing 185 RFAs) (cleaned up); *Solomon v. E. Penn Mfg. Co., Inc.*, 2018 WL 1740530, at *2 (E.D. Pa. 2018) (refusing to compel responses to RFAs that exceeded 100); *Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 2007 WL 1300772, at *2-3 (W.D. Pa. 2007) (granting protective order to all but 27 of the 654 RFAs; noting that parties cannot serve "interrogatories in the disguise" of an RFA). Indeed, given the absurd number of RFAs, it would take EPAM's counsel many hours just to go through all of them and identify each reason why particular RFAs may be disproportionate or otherwise objectionable. Even if EPAM devoted just five minutes of attorney time to respond to each RFA, which surely would not be sufficient in all cases, that would take over 39 hours. Full substantive responses, including the factual investigation required, would take immensely longer. *Penn Eng'g & Mfg. Corp.*, 2021 WL 4037857, at *8 (crediting estimates of 31-46 hours of attorney time to respond to 185 RFAs).

***Second***, even a surface reading of the RFAs reflects that they are *not* proportional or often relevant. Many ask EPAM to admit what documents say. But documents speak for themselves. Rao does not need EPAM's attorneys to spend hours going document-by-document to "admit" if words appear on a page. Many others have zilch to do with the case, but would be burdensome to respond to. *See, e.g.*, Ex. 1, RFA 56 (asking EPAM to admit "plans to integrate Large Language Models (LLMs) and prompt engineering into analytics workflows"); Ex. 3, RFA 120(a) (admit that Rao made demonstrations on certain dates); Ex. 5, RFA 203(b) (admit that a non-party CEO complimented a presentation). Some would be ridiculously difficult to answer because of the factual investigation required, yet yield negligible or no probative value – such as RFA 60's demand that EPAM go file-by-file across public databases to assess if any of its intellectual property was somehow loaded. That is not what RFAs are for. *Martin Marietta Materials, Inc.*, 2007 WL 1300772, at *3 (RFAs "cannot . . . require[s] reference to facts in external documents").

***Third***, even if certain RFAs are proper, Rao is misusing the discovery device. Indeed, Rao's defense of his RFAs, essentially, is that he wants RFAs in lieu of other discovery he cannot afford. (*See* Ex. 8 at 3-4.) But RFAs "should not be of such great number and broad scope as to cover all issues of a complex case." *Gannon v. U.S.*, 2006 WL 2927639, at *1 (E.D. Pa. 2006) (cleaned up). Rather, they are a "surgical" device, and are improper if "argumentative and plainly relate to facts that are neither peripheral nor undisputed." *Solomon*, 2018 WL 1740530, at *2 (cleaned up).

***Fourth***, Rao's motive in serving 471 RFAs does not appear to be legitimate, but rather to deluge EPAM with discovery in the critical preparation time for the evidentiary hearing, and to force it to incur unnecessary fees. Indeed, Rao practically gave away the goose with his unprompted warning to EPAM about how "No Rule 26(c) protective order is in place," and "[t]he burden to seek protection rests on the party seeking it." (*See* Ex. 7.) Similarly, Rao's meet-and-confer efforts largely consisted of him not defending the RFA's proportionality, but rather about how EPAM had the burden to oppose them. Serving "copious RFAs to see how many will 'stick'" constitutes "discovery abuse." *Penn Eng'g & Mfg. Corp.*, 2021 WL 4037857, at *9 n.9.

For these reasons, EPAM requests the Court intervene to require that Rao's requests be appropriate and reasonable. Accordingly, EPAM asks that the Court enter a protective order quashing his existing RFAs, and limiting him to 25 RFAs. (Of note: Rao also served EPAM with 84 purported document requests yesterday, spanning 67 pages. With *de facto* subparts, these requests likely number around 175. EPAM has not fully reviewed them, or conferred with Rao as to them).

Relatedly, EPAM writes to address the discovery deadline. Discovery is currently scheduled to close on September 30. As the Court acknowledged during the May 20 hearing, unless EPAM's spoliation motion wholly disposes of the case, that deadline will need to be extended. The pleadings have not closed. Neither party has served an Answer to each other's claims/counterclaims, and both plan to re-file their motions to dismiss after a decision on the spoliation motion. (*See* ECF #49.) EPAM, based on information it learned during the parties' forensic protocol process, will soon file a motion to amend the complaint, which Rao will oppose. Further, formal discovery in this case is in its infancy – with the first requests served (by EPAM) on August 10, after extended settlement discussions proved unsuccessful. Certainly, a significant extension of discovery is needed. Accordingly, EPAM requests that the Court extend the discovery deadline by six months (through March 30, 2027). Rao opposes this request.

Seyfarth



Respectfully submitted,

*/s/ Jacob Oslick*

Jacob Oslick

cc: Gowtham Rao, *pro se* (via email)