# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EPAM SYSTEMS, INC.,**<br>Plaintiff / Counterclaim-Defendant,<br>v.<br>**GOWTHAM RAO,**<br>Defendant / Counterclaim-Plaintiff. | **Civil Action No. 2:25-cv-06260** |

**DEFENDANT DR. GOWTHAM RAO'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF EPAM SYSTEMS, INC. (RFAS 1–57)**

**PROPOUNDING PARTY:** Defendant / Counterclaim-Plaintiff Dr. Gowtham Rao, MD, PhD (*Pro Se*)
**RESPONDING PARTY:** Plaintiff / Counterclaim-Defendant EPAM Systems, Inc.
**SET NUMBER:** One (Set 1: Requests Nos. 1 through 57)

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and Local Civil Rule 26.1 of the United States District Court for the Eastern District of Pennsylvania, Defendant and Counterclaim-Plaintiff Dr. Gowtham Rao ("Dr. Rao"), proceeding *pro se*, hereby requests that Plaintiff and Counterclaim-Defendant EPAM Systems, Inc. ("EPAM") make the following admissions within thirty (30) days after the date of service of this request.

## I. INSTRUCTIONS

1. **Addressee and Scope:** This First Set of Requests for Admission (the "RFAs") is addressed to EPAM Systems, Inc., its subsidiaries, affiliates, divisions, managing agents, officers, directors, employees, forensic investigators, attorneys, or any other persons acting on its behalf.

2. **Separation and Completeness of Responses:** Each matter of which an admission is requested shall be separately stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter, pursuant to Fed. R. Civ. P. 36(a)(4).

3. **Good-Faith Qualification Standard:** A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder, pursuant to Fed. R. Civ. P. 36(a)(4).

4. **Reasonable Inquiry Requirement:** An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny, pursuant to Fed. R. Civ. P. 36(a)(4).

5. **Scope of Reasonable Inquiry:** The reasonable inquiry required by Rule 36(a)(4) encompasses an exhaustive search of all records, communications, electronic mail archives, Slack and Microsoft Teams message histories, Concur expense records, Bitbucket and Git repositories, CloudTrail and Microsoft 365 Unified Audit Logs, endpoint telemetry logs, and all information in the possession, custody, or control of EPAM, its officers, directors, managing agents, employees, forensic vendors, and outside litigation counsel.

6. **Restatement of Request:** The full text of the RFA to which the answer is intended to respond is to be restated immediately preceding such answer.

7. **Conclusiveness of Admissions (Rule 36(b)):** Any matter admitted under Rule 36 is conclusively established in this action unless the Court, on motion, permits the admission to be withdrawn or amended pursuant to Fed. R. Civ. P. 36(b).

8. **Expense-Shifting Sanctions (Rule 37(c)(2)):** If Plaintiff fails to admit what is requested under Rule 36, and Defendant later proves a document to be genuine or the matter true, Defendant will apply to the Court under Fed. R. Civ. P. 37(c)(2) for an order requiring Plaintiff to pay the reasonable expenses, including reasonable expert fees and costs, incurred in making that proof.

9. **Duty to Supplement (Rule 26(e)(1)):** Pursuant to Fed. R. Civ. P. 26(e)(1), Plaintiff is under a continuing duty to supplement or correct its disclosures and responses in a timely manner if Plaintiff learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to Defendant during the discovery process or in writing.

10. **Sufficiency of Answers or Objections (Rule 36(a)(6)):** Pursuant to Fed. R. Civ. P. 36(a)(6), Defendant reserves the right to move the Court to determine the sufficiency of an answer or objection. Unless the Court determines that an objection is justified, it will order that an answer be served. On finding that an answer does not comply with Rule 36, the Court may order either that the matter is admitted or that an amended answer be served.

## II. DEFINITIONS

The following definitions apply to each Request for Admission herein:

1. **"EPAM"**, **"Plaintiff"**, or **"Company"** means Plaintiff EPAM Systems, Inc., including its subsidiaries, affiliates, predecessors, successors, parents, divisions, and its current and former officers, directors, employees, agents, representatives, and attorneys.

2. **"Dr. Rao"** or **"Defendant"** means Defendant Dr. Gowtham Rao, MD, PhD.

3. **"IT Resources"** means all information technology systems, hardware, networks, servers, databases, cloud repositories, applications, software, and communication tools owned, leased, operated, or controlled by EPAM, as described in Section 1.1 ('SCOPE') of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at p. 6).

4. **"Acceptable Use Policy"** or **"IT Policy"** means EPAM's corporate policy entitled *"Acceptable Use of IT Resources Policy"*, bearing effective date July 18, 2025, attached as Exhibit C to EPAM's First Amended Complaint (ECF No. 30-3).

5. **"Bring Your Own Device"** or **"BYOD"** means the utilization of personally owned computing hardware (including desktops, laptops, mobile devices, and peripherals) to access EPAM IT Resources or perform work assignments, pursuant to Sections 3.21, 3.22, and 3.23 of EPAM's Acceptable Use of IT Resources Policy (ECF No. 30-3).

6. **"Workstation A0001"** or **"MSI Desktop Workstation"** means Dr. Rao's personally owned desktop computer designated by neutral forensic examiner iDS as Device A0001 (Make: MSI, Serial Number: MSB0Y2O7S0104130), as inventoried in the Neutral Forensic Extraction Report.

7. **"OneDrive Synchronization Engine"** or **"OneDriveSync"** means the Microsoft OneDrive for Business client application software (`OneDrive.exe` / `SkyDriveSync`) that automatically executes background folder and file synchronization between cloud-hosted Microsoft 365 SharePoint/OneDrive repositories and local client storage.

8. **"FileSyncDownloadedFull"** means the Microsoft Purview and SharePoint Unified Audit Log event indicating that a file was synchronized or downloaded from a cloud document library to a local computing device via the OneDrive synchronization engine (`OneDrive.exe`), as defined by Microsoft and affirmed by EPAM counsel James S. Yu, Esq. (ECF No. 43-2 at p. 3 n.3).

9. **"Forensic Protocol Exhibit B"** or **"Download Audit Spreadsheet"** means the Microsoft 365 SharePoint download audit export spreadsheet produced by EPAM under the Forensic Inspection Protocol, entitled `EPAM Search Terms - Rao SP Download322329263.1.xlsx`.

10. **"Corporate User Account"** means any EPAM-issued digital credential, username, or account assigned to Dr. Rao, including but not limited to `gowtham_rao@epam.com`, Git handle `grao`,

and associated Active Directory domain accounts.

11. **"OPSWAT"** or **"OPSWAT MetaAccess"** means the endpoint security compliance agent software mandated and utilized by EPAM under Sections 3.21, 3.22, and 3.23 of its Acceptable Use of IT Resources Policy to verify endpoint compliance before granting network access to EPAM IT Resources.

12. **"Forensic Inspection Protocol"** or **"Protocol"** means the Stipulated Forensic Inspection Protocol Agreement executed by the parties on December 12, 2025.

13. **"Employment Covenants Agreement"** or **"ECA"** means the Employment Covenants Agreement dated November 15, 2024, attached as Exhibit A to EPAM's Complaint (ECF No. 1-1).

## III. REQUESTS FOR ADMISSION

**Request for Admission No. 1:**

Admit that Section 3.21 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at pp. 26–28) establishes express criteria authorizing employees to use a 'Personally owned computing device' (defined on page 27 as 'devices without EPAM image') for 'processing or accessing EPAM or Client confidential or strictly confidential (sensitive) data.'

**Request for Admission No. 2:**

Admit that Section 3.14 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at p. 17) explicitly provides: 'When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).'

**Request for Admission No. 3:**

Admit that during 2024 and 2025, EPAM employees routinely accessed EPAM corporate network services, SharePoint repositories, and project files from personally owned computing devices pursuant to Sections 3.7, 3.21, and 3.23 of EPAM's Acceptable Use of IT Resources Policy (ECF No. 30-3, Exhibit C).

**Request for Admission No. 4:**

Admit that Paragraph 24 of EPAM's First Amended Complaint (ECF No. 30 at p. 6) explicitly alleges that the underlying software code to EPAM's tools and products was 'accessible only to EPAM employees who work on the development of these products, are senior executives with broad access needs, or otherwise have business need for access to such information.'

**Request for Admission No. 5:**

Admit that Paragraph 32 of EPAM's First Amended Complaint (ECF No. 30 at p. 8) explicitly designates Dr. Rao as one of 'EPAM's executives... who interface directly with existing and potential clients.'

**Request for Admission No. 6:**

Admit that Paragraph 41 of EPAM's First Amended Complaint (ECF No. 30 at p. 10) explicitly alleges that Dr. Rao was 'responsible for heading the data science business unit within EPAM's life sciences group and RWE business unit.'

**Request for Admission No. 7:**

Admit that Paragraph 36 of EPAM's First Amended Complaint (ECF No. 30 at p. 9) explicitly alleges that EPAM's 'trusted senior executives have access' to EPAM Confidential Information and IP 'to enable them to cultivate client relationships, engage on projects, develop new solutions, and expand the business on the Company's behalf.'

**Request for Admission No. 8:**

Admit that all access to EPAM SharePoint repositories, Microsoft OneDrive storage, and internal developer resources by Dr. Rao during his employment was conducted exclusively through official, EPAM-provisioned Single Sign-On (SSO) credentials assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`).

**Request for Admission No. 9:**

Admit that neither Dr. Rao nor any device or user account operated by Dr. Rao bypassed, cracked, or circumvented any password, encryption, firewall, perimeter control, or access security restriction to view or download EPAM corporate or project files.

**Request for Admission No. 10:**

Admit that access permissions for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) to EPAM SharePoint sites and software code repositories were configured, granted, and administered by EPAM IT systems administrators or repository owners.

**Request for Admission No. 11:**

Admit that EPAM never assigned Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`), user permissions or access rights to any source code repository or repositories for EPAM's ETL Conversion Kit.

**Request for Admission No. 12:**

Admit that EPAM possesses no server access log, audit record, or repository log showing that Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`), accessed or cloned any source code repository or repositories for the ETL Conversion Kit during his employment.

**Request for Admission No. 13:**

Admit that neither Dr. Rao nor any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) downloaded the proprietary source code of EPAM's ETL Conversion Kit.

**Request for Admission No. 14:**

Admit that Dr. Rao's responsibilities heading the data science business unit included evaluating, developing, and presenting AI solutions, including the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**Request for Admission No. 15:**

Admit that EPAM granted Dr. Rao, through EPAM-issued corporate user accounts and credentials assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`), access to AI project files, presentations, and solution assets—including materials relating to the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse')—for the purpose of developing solutions and expanding EPAM's business on the Company's behalf.

**Request for Admission No. 16:**

Admit that Dr. Rao used a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform computational tasks and client deliverables for EPAM during his employment.

**Request for Admission No. 17:**

Admit that Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) possessed computational, processing, and memory capacity exceeding the standard Company-owned laptop issued to Dr. Rao by EPAM.

**Request for Admission No. 18:**

Admit that prior to October 15, 2025, EPAM management never issued Dr. Rao any written instruction or notice directing him to cease using his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments or access EPAM IT Resources.

**Request for Admission No. 19:**

Admit that on November 12, 2024, prior to commencing employment, Dr. Rao transmitted a written communication to Vice President Gregory Klebanov inquiring whether EPAM permitted employees to 'bring your own laptop.'

**Request for Admission No. 20:**

Admit that Vice President Gregory Klebanov was aware during Dr. Rao's employment that Dr. Rao utilized his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments and data science deliverables for EPAM.

**Request for Admission No. 21:**

Admit that between November 18, 2024 and October 15, 2025, neither Vice President Gregory Klebanov nor any other EPAM supervisor directed Dr. Rao to cease performing work assignments or accessing EPAM IT Resources on his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**Request for Admission No. 22:**

Admit that prior to October 15, 2025, EPAM management never directed EPAM IT administrators to block, restrict, or terminate enterprise network authentication or access to EPAM IT Resources from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**Request for Admission No. 23:**

Admit that EPAM's enterprise authentication systems, Microsoft Entra ID (Azure AD) sign-in logs, and endpoint telemetry recorded recurring authentications and access to EPAM IT Resources using any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) on dates spanning November 18, 2024 through October 15, 2025.

**Request for Admission No. 24:**

Admit that upon terminating Dr. Rao's employment on October 15, 2025, EPAM IT administrators did not execute a remote wipe or Mobile Device Management (MDM) command to remove data automatically synced up to EPAM online storage (SharePoint, OneDrive) from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**Request for Admission No. 25:**

Admit that Section 3.14 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 17) states: 'When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).'

**Request for Admission No. 26:**

Admit that Exhibit C attached to EPAM's First Amended Complaint (ECF No. 30-3) is a true, correct, and authentic copy of EPAM's Acceptable Use of IT Resources Policy in effect during 2025.

**Request for Admission No. 27:**

Admit that Section 1.1 ('SCOPE') of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 6) provides that the Policy applies to 'all EPAM employees, contractors, temporary employees, or outside consultants working on behalf of an EPAM entity whenever handling IT Resources,' including Dr. Rao throughout the duration of his employment in 2025.

**Request for Admission No. 28:**

Admit that the Microsoft OneDrive synchronization client operates by automatically synchronizing files between local endpoint storage and EPAM online storage (SharePoint, OneDrive) in the background without requiring affirmative user initiation for each individual file.

**Request for Admission No. 29:**

Admit that in October 2025, EPAM's Microsoft 365 enterprise tenant configuration permitted enterprise users, including Dr. Rao, to utilize Microsoft OneDrive's built-in 'Always keep on this device' feature to automatically synchronize and maintain local offline copies of corporate SharePoint document libraries on connected endpoints.

**Request for Admission No. 30:**

Admit that when Dr. Rao selected 'Always keep on this device' on a synchronized EPAM SharePoint library, EPAM's Microsoft 365 and SharePoint tenant audit logs recorded each automatically hydrated file as a server-side download event under any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`).

**Request for Admission No. 31:**

Admit that automated background synchronization executed via Microsoft OneDrive generates local file system hydration metadata, temporary cache files, and synchronization state overlays on connected endpoints rather than manual web browser download artifacts.

**Request for Admission No. 32:**

Admit that in EPAM's Microsoft 365 download audit export produced as Forensic Protocol Exhibit B (`EPAM Search Terms - Rao SP Download322329263.1.xlsx`), over 80% of the total log entries (consisting of at least 44,000 events) represent `FileSyncDownloadedFull` operations executed by the Microsoft OneDrive synchronization client (`OneDriveSync`).

**Request for Admission No. 33:**

Admit that in EPAM's Microsoft 365 download audit export (`EPAM Search Terms - Rao SP Download322329263.1.xlsx`), at least 44,000 entries record the client user-agent string as `Microsoft SkyDriveSync` (the desktop OneDrive synchronization engine), and fewer than 100 entries across the entire dataset record standard web browser user-agents.

**Request for Admission No. 34:**

Admit that in his sworn declaration filed on ECF No. 43-2 at Footnote 3, EPAM counsel of record James Yu affirmed that Microsoft Purview defines `FileSyncDownloadedFull` events as: 'User downloaded a file to their computer from a SharePoint document library or OneDrive using OneDrive sync app (OneDrive.exe).'

**Request for Admission No. 35:**

Admit that the SharePoint document libraries synchronized in `EPAM Search Terms - Rao SP Download322329263.1.xlsx` (including [redacted], [redacted], [redacted], [redacted], and [redacted]) contained zero source code files for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**Request for Admission No. 36:**

Admit that EPAM's Microsoft 365 download audit export (`EPAM Search Terms - Rao SP Download322329263.1.xlsx`) includes log entries recording Dr. Rao downloading his own personnel records archive (`RG Personnel Records.zip`) from the OneDrive folder of EPAM Human Resources Director Jen Loftis ([redacted]).

**Request for Admission No. 37:**

Admit that the `FileDownloaded` entries in `EPAM Search Terms - Rao SP Download322329263.1.xlsx` include entries recording Dr. Rao accessing work files shared directly by EPAM colleagues in official Microsoft Teams chat threads (including files shared by Santanu Sen, Sudeep Ghate, and Bilal Salim).

**Request for Admission No. 38:**

Admit that none of the web browser or Microsoft Teams download entries in `EPAM Search Terms - Rao SP Download322329263.1.xlsx` contain source code files or Git repository archives for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**Request for Admission No. 39:**

Admit that EPAM has not produced in this litigation any server-side audit log, clone log, pull log, or export record from its internal version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) downloaded or cloned source code for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' between September 1, 2025 and October 15, 2025.

**Request for Admission No. 40:**

Admit that EPAM possesses no server-side Bitbucket, Git, or version control log showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) cloned or downloaded any source code repository or repositories for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' during his employment in 2025.

**Request for Admission No. 41:**

Admit that the Microsoft 365 download audit export (`EPAM Search Terms - Rao SP Download322329263.1.xlsx`) constitutes the sole server-side document download telemetry EPAM has produced in this litigation to support its allegations of unauthorized data acquisition against Dr. Rao.

**Request for Admission No. 42:**

Admit that if EPAM's internal Bitbucket or Git source code repository or repositories did not maintain server-side clone and access logs for the 'ETL Conversion Kit,' 'AI Cohort Generator,' and 'AI Accelerator' in 2025, EPAM lacked technical security controls to track or identify which corporate users downloaded or cloned that source code.

**Request for Admission No. 43:**

Admit that no corporate user account or credential assigned to Dr. Rao (including, but not limited to, `gowtham_rao@epam.com`) was provisioned read, write, or clone permissions in EPAM's version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) to any internal source code repository or repositories housing code of the 'ETL Conversion Kit' in 2025.

**Request for Admission No. 44:**

Admit that the data transformation logic utilized in the 'ETL Conversion Kit' was derived in whole or in part from publicly available OHDSI open-source tools, SQL scripts, and OMOP standard vocabularies.

**Request for Admission No. 45:**

Admit that during 2024 and 2025, EPAM employees routinely utilized personal email accounts (including Gmail) and external cloud collaboration tools (including Google Docs and Google Sheets) to draft, collaborate on, and share EPAM work product.

**Request for Admission No. 46:**

Admit that on September 24, 2025 at 3:44 PM EDT, EPAM employee Konstantin Iaroshovets (`konstantin_iaroshovets@epam.com`) transmitted an electronic invitation granting edit permissions for the Google document titled 'MedRAG - AWS Estimates' directly to Dr. Rao's personal Google account (`gowthamrao@gmail.com`) and simultaneously copied the personal Google account of EPAM employee Santanu Sen (`santanu.sens@gmail.com`), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 1).

**Request for Admission No. 47:**

Admit that on July 2, 2025 at 2:03 PM EDT, EPAM employee Naaz Fatima Butt (`naazfatima_butt@epam.com`) transmitted an electronic invitation granting edit permissions for the Google spreadsheet titled 'GCP Foundry CIO Hub Campaign' directly to Dr. Rao's personal Google account (`gowthamrao@gmail.com`), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 2).

**Request for Admission No. 48:**

Admit that EPAM has never issued a written warning, formal reprimand, Performance Improvement Plan, suspension, termination notice, or legal claim against Konstantin Iaroshovets, Santanu Sen, or Naaz Fatima Butt for transmitting, sharing, or receiving EPAM business documents on personal Google or Gmail accounts.

**Request for Admission No. 49:**

Admit that in 2025, Dr. Rao developed the written deliverables for the Takeda Pharmaceutical Generative AI proof-of-concept (POC)—focusing on launch strategy simulation for Takeda's orexin franchise—externally using Google Docs on his personal Google account with the express knowledge and authorization of Takeda client representative Saurin Jani, as set forth in Defendant's Verified Counterclaims (ECF No. 33 ¶ 338 at p. 63).

**Request for Admission No. 50:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account (`gowtham_rao@epam.com`) to Takeda client representative Saurin Jani confirming that project prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**Request for Admission No. 51:**

Admit that in September and October 2025, EPAM did not implement technical Data Loss Prevention (DLP) blocks, gateway filtering rules, or administrative access controls preventing corporate users from transmitting email attachments or sharing Google Workspace documents with external personal '@gmail.com' addresses.

**Request for Admission No. 52:**

Admit that in September and October 2025, EPAM maintained no technical mechanism or administrative procedure to recall, remotely wipe, or audit business documents once shared by corporate personnel to external personal '@gmail.com' accounts.

**Request for Admission No. 53:**

Admit that during Dr. Rao's employment in 2024 and 2025, EPAM formally reviewed, approved, and reimbursed expense reports submitted by Dr. Rao for commercial Generative AI subscriptions (including OpenAI ChatGPT and Google Gemini) registered to a personal email account controlled by Dr. Rao.

**Request for Admission No. 54:**

Admit that for several consecutive months during Dr. Rao's employment, EPAM Vice President Gregory Klebanov reviewed and approved corporate expense reports reimbursing Dr. Rao for commercial Generative AI subscriptions registered to a personal email account.

**Request for Admission No. 55:**

Admit that on June 17, 2026 at 3:08 PM EDT, EPAM Associate General Counsel Sarah Lugar utilized a personal non-EPAM Google account ([redacted]) to transmit an electronic access request directly to Dr. Rao's personal Google account (`gowthamrao@gmail.com`) attempting to open and access a cloud-hosted document entitled '[DELETE] AI-Driven Pharmaceutical Strategy Generation'.

**Request for Admission No. 56:**

Admit that on December 10, 2024, EPAM Vice President Gregory Klebanov and Dr. Rao collaboratively formulated plans to integrate Large Language Models (LLMs) and prompt engineering into analytics workflows for automated case adjudication and feasibility assessments.

**Request for Admission No. 57:**

Admit that when Dr. Rao requested dedicated server infrastructure in December 2024 to deploy vector databases and Atlas instances, EPAM Vice President Gregory Klebanov declined to provision dedicated server instances citing cost and redundancy.

Dated: August 15, 2026

Respectfully submitted,

/s/ Gowtham Rao MD, PhD
**Dr. Gowtham A. Rao, MD, PhD**
*Defendant and Counterclaim-Plaintiff Pro Se*
184 Mansgrove Rd
Princeton, NJ 08540
Phone: (803) 386-7890
Email: `gowthamrao@gmail.com`

## CERTIFICATE OF SERVICE

I hereby certify that on **August 15, 2026**, a true and correct copy of the foregoing **Defendant Dr. Gowtham Rao's First Set of Requests for Admission to Plaintiff EPAM Systems, Inc. (RFAs 1–57)** was served via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E) and the parties' established course of electronic service upon Plaintiff's counsel of record:

- **Jacob Oslick, Esq.** ( `joslick@seyfarth.com` )
- **James S. Yu, Esq.** ( `jyu@seyfarth.com` )
- **Matthew Christoff, Esq.** ( `MChristoff@seyfarth.com` )
- **Brooke Gary, Esq.** ( `brgary@seyfarth.com` )

  Seyfarth Shaw LLP

  620 Eighth Avenue

  New York, NY 10018

/s/ Gowtham Rao MD, PhD
**Dr. Gowtham A. Rao, MD, PhD** (*Defendant Pro Se*)
Email: `gowthamrao@gmail.com`