# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------- x

**EPAM SYSTEMS, INC.,**
Plaintiff / Counterclaim-Defendant,

v.

**GOWTHAM RAO,**
Defendant / Counterclaim-Plaintiff.

**Civil Action No. 2:25-cv-06260-WB**

---------------------------------------------------------- x

**DEFENDANT DR. GOWTHAM RAO'S SECOND SET OF REQUESTS FOR ADMISSION TO PLAINTIFF EPAM SYSTEMS, INC. (RFAS 58–119)**

**PROPOUNDING PARTY:** Defendant / Counterclaim-Plaintiff Dr. Gowtham Rao, MD, PhD (*Pro Se*)
**RESPONDING PARTY:** Plaintiff / Counterclaim-Defendant EPAM Systems, Inc.
**SET NUMBER:** Two (Set 2: Requests Nos. 58 through 119)

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and Local Civil Rule 26.1 of the United States District Court for the Eastern District of Pennsylvania, Defendant and Counterclaim-Plaintiff Dr. Gowtham Rao ("Dr. Rao"), proceeding *pro se*, hereby requests that Plaintiff and Counterclaim-Defendant EPAM Systems, Inc. ("EPAM") make the following admissions within thirty (30) days after the date of service of this request.

## I. INSTRUCTIONS

**1. Addressee and Scope:** This Second Set of Requests for Admission (the "RFAs") is addressed to EPAM Systems, Inc., its subsidiaries, affiliates, divisions, managing agents, officers, directors, employees, forensic investigators, attorneys, or any other persons acting on its behalf.

**2. Separation and Completeness of Responses:** Each matter of which an admission is requested shall be separately stated. The answer shall specifically deny the matter or set forth in

detail the reasons why the answering party cannot truthfully admit or deny the matter, pursuant to Fed. R. Civ. P. 36(a)(4).

3. **Good-Faith Qualification Standard:** A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder, pursuant to Fed. R. Civ. P. 36(a)(4).

4. **Reasonable Inquiry Requirement:** An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny, pursuant to Fed. R. Civ. P. 36(a)(4).

5. **Scope of Reasonable Inquiry:** The reasonable inquiry required by Rule 36(a)(4) encompasses an exhaustive search of all records, communications, electronic mail archives, Slack and Microsoft Teams message histories, client pitch presentations, Concur expense records, Bitbucket and Git repositories, CloudTrail and Microsoft 365 Unified Audit Logs, endpoint telemetry logs, public open-source software repositories, and all information in the possession, custody, or control of EPAM, its officers, directors, managing agents, employees, forensic vendors, and outside litigation counsel.

6. **Restatement of Request:** The full text of the RFA to which the answer is intended to respond is to be restated immediately preceding such answer.

7. **Conclusiveness of Admissions (Rule 36(b)):** Any matter admitted under Rule 36 is conclusively established in this action unless the Court, on motion, permits the admission to be withdrawn or amended pursuant to Fed. R. Civ. P. 36(b).

8. **Expense-Shifting Sanctions (Rule 37(c)(2)):** If Plaintiff fails to admit what is requested under Rule 36, and Defendant later proves a document to be genuine or the matter true, Defendant will apply to the Court under Fed. R. Civ. P. 37(c)(2) for an order requiring Plaintiff to pay the reasonable expenses, including reasonable attorney and expert fees and costs, incurred in making that proof.

9. **Duty to Supplement (Rule 26(e)(1)):** Pursuant to Fed. R. Civ. P. 26(e)(1), Plaintiff is under a continuing duty to supplement or correct its disclosures and responses in a timely manner if Plaintiff learns that in some material respect the disclosure or response is incomplete or

incorrect, and if the additional or corrective information has not otherwise been made known to Defendant during the discovery process or in writing.

10. **Sufficiency of Answers or Objections (Rule 36(a)(6)):** Pursuant to Fed. R. Civ. P. 36(a)(6), Defendant reserves the right to move the Court to determine the sufficiency of an answer or objection. Unless the Court determines that an objection is justified, it will order that an answer be served. On finding that an answer does not comply with Rule 36, the Court may order either that the matter is admitted or that an amended answer be served.

## II. DEFINITIONS

The following definitions apply to each Request for Admission herein:

1. **"EPAM"**, **"Plaintiff"**, or **"Company"** means Plaintiff EPAM Systems, Inc., including its subsidiaries, affiliates, predecessors, successors, parents, divisions, and its current and former officers, directors, employees, agents, representatives, and attorneys.

2. **"Dr. Rao"** or **"Defendant"** means Defendant Dr. Gowtham Rao, MD, PhD.

3. **"Employment Covenants Agreement"** or **"ECA"** means the Employment Covenants Agreement dated November 12, 2024, attached as Exhibit A to EPAM's Complaint (ECF No. 1-1) and First Amended Complaint (ECF No. 30-1).

4. **"OHDSI"** means the Observational Health Data Sciences and Informatics international open-science collaborative community (`ohdsi.org`).

5. **"OMOP Common Data Model"** or **"OMOP CDM"** means the open-source standardized database schema and foundational clinical data architecture maintained by OHDSI.

6. **"Open-Source License"** means permissive, non-exclusive public software copyright licenses, including but not limited to the Apache License 2.0 and the MIT License.

7. **"LlmPromptBuilders"** means the public, open-source Python software repository published on GitHub under the OHDSI organization (`github.com/OHDSI/LlmPromptBuilders`).

8. **"MedRAG"** means the publicly available, open-source Medical Retrieval-Augmented Generation benchmarking toolkit hosted on public repositories including HuggingFace (`huggingface.co/MedRAG`) and GitHub (`github.com/Teddy-XiongGZZ/MedRAG`).

9. **"Prometheus"** means the software architecture, analytics engine, and related developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform.'

10. **"Synapse"** means the healthcare technology initiative, product roadmap, slide decks, and multi-agent simulation workflows variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse.'

11. **"Takeda Master Services Agreement"** or **"Takeda MSA"** means Master Services Agreement CW2719230 entered into between EPAM Systems, Inc. and Takeda Pharmaceuticals.

12. **"Forensic Inspection Protocol"** or **"Protocol"** means the Stipulated Forensic Inspection Protocol Agreement executed by the parties on December 12, 2025.

13. **"Corporate User Account"** means any EPAM-issued digital credential, username, or account assigned to Dr. Rao, including but not limited to `gowtham_rao@epam.com`, Git handle `grao`, and associated Active Directory domain accounts.

## III. REQUESTS FOR ADMISSION

**Request for Admission No. 58:**

Admit that software codebases, schemas, and analytical tools published under ANY repository within the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization (`github.com/OHDSI`, including ATLAS, ACHILLES, WebAPI, CommonDataModel, and DatabaseConnector) are distributed under open-source software licenses (including Apache License 2.0 and MIT License).

**Request for Admission No. 59:**

Admit that the Observational Medical Outcomes Partnership ('OMOP') Common Data Model ('CDM') specifications (including relational database schemas, Data Definition Language scripts, and Standardized Vocabularies) are published and freely accessible to the public in open-access repositories (including `github.com/OHDSI/CommonDataModel` and `athena.ohdsi.org`).

**Request for Admission No. 60:**

Admit that EPAM does not own registered copyrights, exclusive commercial licenses, or proprietary intellectual property rights in ANY software repository or codebase hosted under the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization (`github.com/OHDSI`, including but not limited to `Atlas`, `Achilles`, `WebAPI`, `CommonDataModel`, `DatabaseConnector`, and the `HADES` package ecosystem).

**Request for Admission No. 61:**

Admit that prior to and throughout his employment with EPAM, Dr. Rao served as an active leader of Observational Health Data Sciences and Informatics ('OHDSI') working groups, including the OHDSI Phenotype Development and Evaluation Working Group and the Health Economics and Value Working Group.

**Request for Admission No. 62:**

Admit that prior to November 12, 2024, Dr. Rao had authored, published, and publicly released healthcare data analytics methodologies, software packages, and peer-reviewed scientific studies indexed in PubMed and public GitHub repositories.

**Request for Admission No. 63:**

Admit that EPAM recruited and hired Dr. Rao as Managing Principal with an annual base salary of $250,000 to head its Real-World Evidence data science unit based upon his verified professional credentials as a licensed physician (MD), epidemiologist (PhD), and health data science leader.

**Request for Admission No. 64:**

Admit that EPAM's 'ETL Conversion Kit' utilizes publicly available OHDSI SQL transformation scripts to map healthcare source data into the OMOP Common Data Model.

**Request for Admission No. 65:**

Admit that the data mapping specifications and transformation rules used to convert commercial healthcare databases into the OMOP Common Data Model are published in publicly accessible open-source repositories (including OHDSI/ETL-LambdaBuilder and the Athena vocabulary repository).

**Request for Admission No. 66:**

Admit that EPAM publicly markets its OMOP ETL conversion capabilities on its public website and conducts client training workshops (including for [redacted], [redacted], and [redacted]) describing the functional workflow of profiling source data, mapping vocabularies, and transforming data into the OMOP Common Data Model.

**Request for Admission No. 67:**

Admit that during Dr. Rao's employment at EPAM, Johnson & Johnson maintained and publicly published its own open-source OMOP ETL transformation codebase ('ETL-Lambda') on GitHub without requiring commercial licensing from EPAM.

**Request for Admission No. 68:**

Admit that within EPAM and Odysseus Data Services, the OMOP ETL engineering team was managed separately from the Real-World Evidence data science unit headed by Dr. Rao.

**Request for Admission No. 69:**

Admit that the neutral forensic examiner Intelligent Discovery Solutions (iDS) identified zero files containing proprietary source code of EPAM's 'ETL Conversion Kit' on Dr. Rao's personal workstation (designated by iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**Request for Admission No. 70:**

Admit that despite having direct electronic access to the actual file contents of over 80,000 files extracted by neutral examiner iDS from Device A0001 (Make: MSI, S/N: MSB0Y2O7S0104130) and hosted on the neutral Relativity platform, EPAM has not identified to Dr. Rao any specific file from that collection containing proprietary source code of EPAM's 'ETL Conversion Kit'.

**Request for Admission No. 71:**

Admit that on May 8, 2025, Dr. Rao, using his OHDSI committer identity (`Gowtham Rao <rao@ohdsi.org>`), independently authored, packaged, and published the initial root commit (Commit SHA: `dc37706`, Message: 'Initial root commit on main'), official Release v0.1.0 (Tag SHA: `9f157ed`), and subsequent version releases through Release v0.1.8 (Commit SHA: `dd25c51`) of the open-source Python software repository 'LlmPromptBuilders' on public GitHub under the OHDSI organization (`github.com/OHDSI/LlmPromptBuilders`) under an Apache 2.0 license.

**Request for Admission No. 72:**

Admit that Section 1(b) of the Employment Covenants Agreement signed by Dr. Rao (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly states: 'For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources.'

**Request for Admission No. 73:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) contains no term, condition, or requirement obligating an employee to obtain advance written permission, authorization, or approval from EPAM to develop or publish software for scientific, professional, or community groups without reliance on EPAM Group Confidential Information.

**Request for Admission No. 74:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), EPAM and Odysseus leadership (including Gregory Klebanov) knew that Dr. Rao was an active open-source software contributor to the Observational Health Data Sciences and Informatics (OHDSI) community.

**Request for Admission No. 75:**

Admit that software developed by Dr. Rao for the OHDSI scientific community without reliance on EPAM Group Confidential Information is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**Request for Admission No. 76:**

Admit that the public open-source Python software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**Request for Admission No. 77:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero lines of source code copied, extracted, or derived from any private, internal EPAM proprietary software repository.

**Request for Admission No. 78:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero confidential client data, patient-level clinical records, or proprietary business strategy documents of any EPAM client (including Takeda Pharmaceutical).

**Request for Admission No. 79:**

Admit that as of the date of these responses, EPAM has not identified any specific Python class, method, function, or line of code within the public repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) that constitutes an EPAM proprietary trade secret.

**Request for Admission No. 80:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) relies exclusively on standard public Python libraries and public Large Language Model APIs, without calling or depending upon any closed, internal EPAM proprietary API or microservice.

**Request for Admission No. 81:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is an open-source OHDSI library designed for the healthcare, life sciences, and pharmaceutical informatics domain to decouple prompt engineering from application code and manage agent personas.

**Request for Admission No. 82:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was an advisory consulting demonstration conducted via public Gemini-based prompting and public research data, rather than a custom software development deliverable.

**Request for Admission No. 83:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was developed prior to any assignment or involvement of Dmitrii Ilin or EPAM software developers.

**Request for Admission No. 84:**

Admit that EPAM developers built no proprietary software application, backend microservice, or source code repository or repositories for the initial Takeda orexin proof-of-concept.

**Request for Admission No. 85:**

Admit that the initial Takeda orexin launch planning simulation was powered exclusively by publicly available scientific data and consumer-grade public Large Language Model accounts.

**Request for Admission No. 86:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account (`gowtham_rao@epam.com`) to Takeda client representative Saurin Jani confirming that Generative AI prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**Request for Admission No. 87:**

Admit that the public open-source software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains generic Python classes for prompt formatting and persona management, and contains zero confidential clinical data or business strategy documents of Takeda Pharmaceutical.

**Request for Admission No. 88:**

Admit that under the governing Master Services Agreement between EPAM and Takeda Pharmaceutical (MSA CW2719230), all client deliverables, strategy reports, and work product developed for Takeda Pharmaceutical (including, but not limited to, developments for Takeda's orexin franchise) are owned exclusively by Takeda Pharmaceutical.

**Request for Admission No. 89:**

Admit that Dr. Rao published the genesis root commit (Commit SHA dc37706) of the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) on May 8, 2025, prior to EPAM and Odysseus developing or documenting the internal software architecture variously known within EPAM as 'Synapse,' 'EPAM Synapse,' or 'Takeda-Synapse'.

**Request for Admission No. 90:**

Admit that the final commit to the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) was executed on July 4, 2025 (Release v0.3.0, Commit SHA ce6f6a7), and that zero commits, code modifications, or repository updates were made during September, October, or November 2025.

**Request for Admission No. 91:**

Admit that while Section 5(c)(1) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 5) contains an express requirement for 'first securing the written consent of your Employer,' Section 1(b) of the Agreement contains no requirement for securing employer written consent, permission, or authorization to develop software for scientific or community groups.

**Request for Admission No. 92:**

Admit that during 2024 and 2025, EPAM engineering teams (including data science personnel assigned to Dr. Rao's team) integrated and utilized open-source Python packages developed for the OHDSI community (including `kala`, `cohortalgebra`, `py_document_chunker`, `py_codelist_comparator`, `py_name_entity_recognition`, `pyscientificpdfparser`, and `pyRegularExpression`) to perform commercial client work for [redacted] involving PubMed literature search and codelist extraction.

**Request for Admission No. 93:**

Admit that EPAM developers utilized the public open-source Python packages 'kala' (`github.com/OHDSI/kala`) and 'cohortalgebra' (`github.com/ohdsi/cohortalgebra`) to execute OMOP data processing, cohort manipulation, and analytical pipelines for EPAM client deliverables.

**Request for Admission No. 94:**

Admit that in or before May 2025, EPAM and Odysseus leadership (specifically including Vice President Gregory Klebanov) had actual knowledge that Dr. Rao authored and maintained public open-source repositories under the OHDSI organization on GitHub.

**Request for Admission No. 95:**

Admit that the Python packages 'kala' (`github.com/OHDSI/kala`), 'PhenotypeLibrary' (`github.com/OHDSI/PhenotypeLibrary`), 'py_document_chunker' (`github.com/OHDSI/py_document_chunker`), 'py_codelist_comparator' (`github.com/OHDSI/py_codelist_comparator`), 'py_name_entity_recognition' (`github.com/OHDSI/py_name_entity_recognition`), 'pyscientificpdfparser' (`github.com/OHDSI/pyscientificpdfparser`), 'pyRegularExpression' (`github.com/OHDSI/pyRegularExpression`), and 'cohortalgebra' (`github.com/ohdsi/cohortalgebra`) are publicly accessible on GitHub under the OHDSI organization and published under open-source software licenses.

**Request for Admission No. 96:**

Admit that EPAM internal architecture specifications (including Plaintiff's Exhibits filed at ECF No. 58-9 and ECF No. 58-10) classify 'OHDSI/LlmPromptBuilders' and OHDSI community tools as external third-party open-source dependencies rather than proprietary EPAM source code.

**Request for Admission No. 97:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential Information' both information known to an employee prior to employment with the EPAM Group and information generally available and known by the public.

**Request for Admission No. 98:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential Information' general industry knowledge and skills developed or acquired without reliance on EPAM Group Confidential Information.

**Request for Admission No. 99:**

Admit that Dr. Rao maintained archives of published OHDSI codebases, peer-reviewed scientific literature, and standardized healthcare data models in his lawful personal possession prior to the commencement of his employment with EPAM on November 12, 2024.

**Request for Admission No. 100:**

Admit that between 2017 and November 2024, Odysseus Lead and Vice President Gregory Klebanov communicated continuously with Dr. Rao via Skype regarding observational health data analytics, OMOP conversion frameworks, Hadoop clusters, and OHDSI open-source tools.

**Request for Admission No. 101:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), Odysseus Lead and Vice President Gregory Klebanov informed Dr. Rao that EPAM's restrictive covenants would not restrict Dr. Rao's independent scientific research, academic publications, or open-source health informatics contributions.

**Request for Admission No. 102:**

Admit that on December 4, 2024, Vice President Gregory Klebanov authorized Dr. Rao in writing to assign EPAM personnel (specifically including Lana Shubinsky) to work on the Observational Health Data Sciences and Informatics (OHDSI) phenotype workgroup.

**Request for Admission No. 103:**

Admit that Dr. Rao is a licensed physician (MD), an epidemiologist (PhD), and a board-certified specialist by the American Board of Preventive Medicine and in Medical Informatics, who holds active, unencumbered medical licenses in Pennsylvania (License No. MD476722), New York, South Carolina, and Wisconsin.

**Request for Admission No. 104:**

Admit that prior to November 12, 2024, Dr. Rao acquired extensive domain expertise in healthcare insurance claims systems, clinical data architectures, and pharmaceutical epidemiology through his prior professional career at BlueCross BlueShield, the United States Department of Veterans Affairs, and Johnson & Johnson.

**Request for Admission No. 105:**

Admit that EPAM Systems, Inc. is an information technology consulting and software engineering services provider and is not a pharmaceutical manufacturer, healthcare provider, or health insurance company.

**Request for Admission No. 106:**

Admit that general pharmaceutical industry concepts, healthcare payer claims processing mechanisms, and clinical trial design standards constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**Request for Admission No. 107:**

Admit that statistical methodologies, cohort definition logic, and data conversion principles for the OMOP Common Data Model constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**Request for Admission No. 108:**

Admit that foundational artificial intelligence concepts, large language model (LLM) architectures, prompt engineering techniques, retrieval-augmented generation (RAG) workflows, vector database indexing, and multi-agent reasoning frameworks constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**Request for Admission No. 109:**

Admit that EPAM did not provide Dr. Rao with any proprietary mathematical algorithms, statistical models, or machine learning source code that were not derived from publicly published scientific literature or open-source software libraries.

**Request for Admission No. 110:**

Admit that EPAM executive management officially designated Dr. Rao as the Product Owner and Lead Architect for the internal healthcare technology initiative variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse'.

**Request for Admission No. 111:**

Admit that Dr. Rao's authorized responsibilities as Synapse Product Owner included defining the technical roadmap, authoring architectural presentation decks, and leading commercial positioning for prospective life sciences enterprise clients.

**Request for Admission No. 112:**

Admit that EPAM provisioned Dr. Rao with authorized, enterprise-wide administrative and read/write access across corporate SharePoint repositories, Microsoft Teams channels, and OneDrive workspaces containing Synapse presentations, technical designs, and marketing collateral.

**Request for Admission No. 113:**

Admit that Dr. Rao collaborated continuously and transparently with EPAM senior leadership—including Senior Vice President Sergey Yezhkov, Vice President Gregory Klebanov, Vice President Greg Killian, Jonathan Rioux, Dr. Anastasia Christianson, and Troy Rask—on the conceptual architecture, commercial strategy, and executive slide presentations for Synapse.

**Request for Admission No. 114:**

Admit that slide presentations and architectural workflows regarding Synapse were distributed across EPAM's Life Sciences, Real-World Evidence, and Data Science business units via email distribution lists and open Microsoft Teams channels without technical access restrictions.

**Request for Admission No. 115:**

Admit that EPAM presented technical workflows and architectural overviews of Synapse to prospective enterprise clients without requiring those clients to execute bespoke, project-specific non-disclosure agreements or trade secret protection covenants beyond standard commercial terms.

**Request for Admission No. 116:**

Admit that prior to October 15, 2025, EPAM did not maintain a formal corporate trade secret register, inventory, or asset catalog identifying the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' as proprietary trade secrets.

**Request for Admission No. 117:**

Admit that EPAM executives, including Chief Scientist Chris Waller and Vice President Gregory Klebanov, presented architectural workflows and capability demonstrations of Real-World Evidence and Synapse tools to prospective commercial clients (including AstraZeneca, Johnson & Johnson, and Roche) without requiring bespoke, project-specific non-disclosure agreements or trade secret markings.

**Request for Admission No. 118:**

Admit that at the 2025 OHDSI Global Symposium 'Mind Meets Machines' challenge, EPAM consultant Darya Zhukova publicly submitted and presented the technical architecture and concept reasoning reports for the Prometheus platform, and that this architectural presentation was recorded and published to the public internet on YouTube (URL: https://www.youtube.com/watch?v=7Ek3vF3Pu_E).

**Request for Admission No. 119:**

Admit that 'MedRAG' is a publicly available, open-source Medical Retrieval-Augmented Generation benchmarking toolkit hosted on public repositories including HuggingFace (huggingface.co/MedRAG) and GitHub.

Dated: August 16, 2026

Respectfully submitted,

/s/ Dr. Gowtham A. Rao

**Dr. Gowtham A. Rao, MD, PhD**
*Defendant and Counterclaim-Plaintiff Pro Se*
184 Mansgrove Rd
Princeton, NJ 08540
Phone: (803) 386-7890
Email: `gowthamrao@gmail.com`

## CERTIFICATE OF SERVICE

I hereby certify that on **August 16, 2026**, a true and correct copy of the foregoing **Defendant Dr. Gowtham Rao's Second Set of Requests for Admission to Plaintiff EPAM Systems, Inc. (RFAs 58–119)** was served via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(E) and the parties' established course of electronic service upon Plaintiff's counsel of record:


- **Jacob Oslick, Esq.** (`joslick@seyfarth.com`)
- **James S. Yu, Esq.** (`jyu@seyfarth.com`)
- **Matthew Christoff, Esq.** (`MChristoff@seyfarth.com`)
- **Brooke Gary, Esq.** (`brgary@seyfarth.com`)

  Seyfarth Shaw LLP

  620 Eighth Avenue

  New York, NY 10018


/s/ Dr. Gowtham A. Rao
**Dr. Gowtham A. Rao, MD, PhD** (*Defendant Pro Se*)
Email: `gowthamrao@gmail.com`