# EXHIBIT 8

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Saturday, August 22, 2026 6:38 PM
**To:** Oslick, Jacob
**Cc:** Gowtham Rao; Christoff, Matthew; Sarah Lugar; Comer, Madeline; Etwaru, Simone
**Subject:** Re: EPAM v. Rao: Meet-and-Confer Request Regarding Defendant's 471 RFAs
**Attachments:** 2026-08-24_Notice_of_Correction_Schedule_A_DRAFT.pdf

**External Email – Do Not Click Links or Attachments Unless You Know They Are Safe**

Jacob,

Monday, August 24 at 2:30 PM EDT works. Please send a Teams link. I will be on audio only.

I reviewed all 211 requests over the weekend. On my own initiative, I am proposing corrections to twenty-five of them. The attached Schedule A (Draft) shows the proposed changes side-by-side in a table, so that you can evaluate the actual language rather than a description of it.

Schedule A is a draft for discussion. It is not served, it does not amend what I served earlier, and it does not restart any response period under Rule 36(a)(3). The requests stand as served unless and until I serve a Notice of Correction. I am providing this draft now so that we can discuss the specific words on Monday. If you propose different language I will consider it.

If I serve these corrections, they will not re-serve anything and will not start a new response period. Every corrected request will stay due on the date already applicable to its set.

## Schedule A proposes corrections to twenty-five requests on my own initiative

- Withdrawn: Request No. 173, subparts (b) and (c). Both asked EPAM to confirm entries on this Court's docket. I will rely on ECF Nos. 1 and 10 instead.
- Corrected to ask for the underlying fact rather than what EPAM pleaded: Request Nos. 4, 5, 6, 7, and subparts 128(a)–(b), 129(a), 130(a), and 133(a).
- Corrected to ask what EPAM has identified or contends, rather than what its pleading omits: subparts 128(c), 130(b)–(c), 132(a)–(b), 133(b)–(d), 134(a)–(c), and 135(a)–(b). Each of these previously asked EPAM to admit that its First Amended Complaint does not allege something. Each now asks about EPAM's own position or its own records, which EPAM can answer without reference to the pleading.
- Narrowed: Request No. 60, from any repository in the OHDSI organization to what EPAM contends as to six named repositories.

Schedule A also lists the subparts I am not changing and gives the reason for each, so you are not left to infer where I stand.

## I will withdraw Instruction No. 5 if we stipulate to a mutual definition of reasonable inquiry

You objected that Instruction No. 5 defines the Rule 36(a)(4) inquiry too broadly. I will withdraw it on one condition: the definition of "reasonable inquiry" has to bind both of us equally in this action.

EPAM has served me 18 requests for admission. Whatever standard governs my search governs EPAM's. I propose we stipulate that for both parties, "reasonable inquiry" under Rule 36(a)(4) means:

1. Inquiry of personnel. Inquiry of the responding party's officers, administrators, agents, employees, servants, and other personnel who, in realistic terms, may have information bearing on the request.
2. Review of documents. Review of documents within the responding party's possession, custody, or control that bear on the request, including documents the responding party has already filed in this action or produced in discovery.
3. What "control" means. A responding party controls information it has the practical ability or the legal right to obtain on request. Control is not limited to physical possession, and for both parties it includes information held by:
   a. any business unit, division, subsidiary, parent, or affiliate under common ownership or common management with the responding party;
   b. any vendor, consultant, contractor, or forensic examiner the responding party retained or engaged in connection with this action, or whose work product the responding party has filed or relied on in this action;
   c. the responding party's counsel of record; and
   d. any person whose employment or engagement the responding party directs, funds, or supervises.

4. Carve-out. Neither party need canvass a genuinely independent third party over which it has no practical ability or legal right to obtain information. A party invoking this carve-out shall identify the entity by name and state the basis on which it asserts a lack of control, so the other party can evaluate it. Silence is not an invocation.

These terms track Rule 36(a)(4) and *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38 (S.D.N.Y. 1997), which states that "[r]easonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response," and that "relevant documents and regulations must be reviewed as well." *Id.* (emphasis added). The same opinion recognizes that "under certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit," citing *In re Gulf Oil/Cities Service Tender Offer Litigation*. It excused a failure to subpoena the records of the FDIC as receiver of a failed bank — a stranger to the litigation, not a retained vendor, an affiliated business unit, or counsel of record.

I am proposing paragraph 3 because "we do not control that entity" would swallow the rule. Odysseus Data Services is described in EPAM's own record as a business unit at EPAM led by Gregory Klebanov. EPAM has filed and relied on forensic extractions in this action, and has provided them to Dmitrii Ilin, who is employed by Odysseus.

The standard should be the same for both of us. If you propose different language that applies equally to both of us, I will consider it.

If we do not reach a stipulation, Instruction No. 5 stands as served and I will defend it on the merits.

## The remaining requests are supported by Rule 36 and reported authority

- Sets 1 and 2 contain no lettered subparts. Requests 1 through 119 are single propositions. Every subpart argument EPAM has raised reaches Sets 3 through 5 only. Sets 1 and 2 are 56% of what I served.
- Rule 36 contains no numerical limit. Rule 33(a)(1) caps interrogatories "including all discrete subparts." Rule 36 has neither the cap nor the subpart language. Rule 26(b)(2)(A) permits the Court to limit the number, and I am not arguing otherwise. A cap is relief EPAM must justify.

- Twenty-five requests for fifteen causes of action is 1.67 per claim. EPAM pleads seven counts and proposes thirteen; I plead eight counterclaims. I reject that proposal.
- Courts have denied protective orders against far larger sets. *Sequa Corp. v. Gelmin*, 1993 WL 350029, at *1 (S.D.N.Y. Sept. 7, 1993), denied one as to roughly 90% of 1,441 requests. *Gen. Elec. Co. v. Prince*, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007), denied one as to 573. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 254–55 (N.D. Tex. 2016), denied one that sought a 30-request cap and ordered responses to 564.
- The case has many discrete matters at issue. *Sequa*: "[a]lthough it is true that the requests encompass many separate items, this is a function of the fact that the issues in this case encompass a large number of discrete . . . transactions." 1993 WL 350029, at *1.
- Requests asking a party to confirm the contents of its own filed documents are not burdensome. *Sequa* addressed requests seeking "simply a confirmation that specified copies . . . are true copies and accurately reflect the transactions that they report," and held that responses "would not be extraordinarily burdensome." *Id.*
- A party that did not author a document must still answer. *Sequa*: "purported ignorance does not justify relieving a party of its obligation to respond to a request." *Id.* Rule 36(a)(4) supplies the form of the answer.
- A blanket objection to an entire set does not hold. *Sommerfield v. City of Chicago*, 251 F.R.D. 353 (N.D. Ill. 2008), held 177 requests, 234 counting subparts, "not excessive in number," and found the responding party's position "that not a single one of the 234 requests could or should be answered was untenable."
- EPAM has not stated the burden. *Gen. Elec. Co. v. Prince*: "we have no basis for judging the actual burden involved, since plaintiff has offered no concrete information on that score. This is a gap in the record that it was plaintiff's obligation to fill." 2007 WL 86940, at *2. The Third Circuit requires a movant to show "a particular need for protection," and holds that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" Rule 26(c). *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).

## EPAM bears the burden under Penn Engineering and has not carried it

EPAM carries the burden on a Rule 26(c) motion. *Penn Engineering* states the standard: "In determining whether good cause exists for a protective order, courts employ a balancing test, weighing the requesting party's need for information against the injury that might result if disclosure is compelled," and "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not establish good cause." 2021 WL 4037857, at *2. Peninsula, the party seeking protection in that case, carried that burden by quantifying its own hours. EPAM has not.

The footnote you quoted came after the court had ruled. At that stage the propounding party asked it to "fashion a more measured remedy" rather than quash outright. The court refused that request because the propounding party, having asked for the alternative, gave the court nothing to work with: it "provide[d] the Court with no basis to determine which RFAs should be the 'permissible' ones or even what number should be 'permissible,'" and "cite[d] no legal authority in support of its request." *Id.* at *9 n.9. In the same footnote the court identified what would have worked, citing *Fleming v. Escort, Inc.*, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011), which required responses to 75 of 216 requests where the propounding party explained those requests "were propounded instead of taking depositions" to limit expense.

EPAM must establish that it is entitled to a protective order. The question of a narrower alternative arises only if the Court gets past that. At that stage the propounding party has to give the Court something workable. I set out below the basis I would provide to the Court, without conceding that EPAM has made any showing of good cause, so that the record is in writing before any motion is filed.

## My requests replace depositions I cannot fund and verify documents EPAM already filed

I am taking about four depositions in this case: Gregory Klebanov, an EPAM corporate designee under Rule 30(b)(6), Ram Varma, and possibly one more. I cannot fund depositions of Mr. Sklansky, Mr. Killian, Mr. McKlaine, Mr. Yezhkov, Mr. Ilin, or the other EPAM personnel whose knowledge bears on these claims. Some of my requests ask about matters those witnesses would testify to, and I served them because the deposition will not happen.

*Fleming* ordered responses to 75 of 216 requests, the 75 the propounding party had served instead of deposing Kuhn and Blair. The court gave no credit for the requests concerning Orr, because Orr had already been deposed and that money was spent. No deposition has been taken in this case, so no request of mine falls where Orr's did.

The larger share of my requests ask EPAM to confirm the contents of documents EPAM filed on this docket — its First Amended Complaint, the Klebanov declarations at ECF Nos. 58-25 and 58-28, its Acceptable Use Policy, and its exhibits. Answering those requires deposing no one. The 1,441 requests in *Sequa* sought "simply a confirmation that specified copies of checks or bank statements produced by defendants are true copies and accurately reflect the transactions that they report," and the court held that responding "would not be extraordinarily burdensome." 1993 WL 350029, at *1.

If the Court asks me to designate, I will designate on those two grounds and identify which requests fall in each. I am raising this designation now so that we can resolve it directly rather than burdening the Court.

## The response deadlines for Sets 1 through 5 do not change

The deadlines do not change.

On August 19 I proposed a mutual extension under Rule 29(b), moving both sides' response deadlines to September 25. Your August 20 reply accepted it "only in part, and only on the following conditions." I have proceeded on the basis that the proposal as made was not accepted. If EPAM wants an extension, we can take it up Monday.

I will answer EPAM's 18 requests for admission and respond to RFP Nos. 9 and 40 on the September 10 schedule, which is the schedule already in place. I cannot answer them "without objection," because that waives objections to requests I have not yet evaluated against the documents.

## I will oppose any extension of the schedule

You wrote that the September 30 discovery deadline "will not stick" and proposed extending discovery by six months. I do not agree, and I will oppose that motion if EPAM files it.

Delay in this case prejudices me, and the prejudice is not speculative. EPAM terminated my employment on October 15, 2025 and revoked my access the same day. EPAM filed this action on November 4, 2025, the day after Johnson & Johnson paused contracting activities involving me and CoReason (ECF No. 33-9). I have been without employment income since October 2025 while defending this action without counsel. I am paying the costs of this litigation myself, and I cannot sustain them for another six months on top of the ten months already elapsed.

Every month of extension transfers cost from a party that can carry it to a party that cannot. That is the imbalance Rule 1 addresses. The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The 2015 amendment, effective December 1, 2015, added the words "and employed by the court and the parties," placing that obligation on the parties and not only on the Court.

Fact discovery should close on September 30, 2026 as the Court ordered. I intend to be ready.

Respectfully,

Dr. Gowtham A. Rao, MD, PhD
Defendant and Counterclaim-Plaintiff, Pro Se
184 Mansgrove Rd, Princeton, NJ 08540
Phone: (803) 386-7890
Email: gowthamrao.litigation@gmail.com

On Thu, Aug 20, 2026 at 11:09 AM Oslick, Jacob <JOslick@seyfarth.com> wrote:

Gowtham,

We are of course interested in working through discovery issues with you in good faith. That is why we have twice proposed our compromise solution: you withdrawal your ridiculously abusive 471 RFAs, and reissue 25 RFAs that you actually want us to respond to. That is also why we responded to your extension proposal by agreeing (subject to the conditions below), to extend your time to respond to vast bulk of our discovery requests, so long as you comply before September 10 with the narrow, focused requests that directly relate to pending spoliation motion (*i.e.*, 18 simple RFAs, and 2 document requests). What we have not agreed to do, and will not do, is play your proposed game of wasting dozens of hours cataloguing all of the deficiencies in each of your 471 RFAs. That proposal forces us to incur much of the abusive burden that you have sought to impose. If you want to provide your own proposal in writing, you are certainly welcome to do so.

Regarding your Monday time slots, particularly given our extension proposal, we still fail to see a reason why you are unable to meet either today or Friday. Regardless, to avoid any false accusation that we have failed to appropriately meet-and-confer, if you are unable to meet before Monday, then we can make 2:30 or 3:30 work.

Jacob

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Wednesday, August 19, 2026 10:01 PM
**To:** Oslick, Jacob <JOslick@seyfarth.com>
**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Christoff, Matthew <MChristoff@seyfarth.com>; Sarah Lugar <sarah_lugar@epam.com>; Comer, Madeline <mcomer@seyfarth.com>; Etwaru, Simone <setwaru@seyfarth.com>
**Subject:** Re: EPAM v. Rao: Meet-and-Confer Request Regarding Defendant's 471 RFAs

Jacob,

I want to make sure I'm following this thread correctly, because I think we may be talking past each other.

My offer was, and remains, to work with you to resolve these discovery disputes between ourselves without involving the Court. I'm not sure from your email whether you want to do the same. Two questions:

1. Monday's conference. You haven't confirmed a time. I offered 1:30, 2:30, or 3:30 PM EDT on Monday, August 24. Do you want to meet? If Monday doesn't work, please propose a time that does.
2. Email exchange in the interim. Do you agree to exchange positions by email so that whenever we do speak, the call is productive? If we want to make legal arguments to each other, we can do that too; but I was offering a simpler way.

Separately, regarding my spoliation opposition: I spoke with the EDPA Electronic Document System (EDS) pro se filing office roughly five times today, and they called me back three times. They confirmed they have my documents but have not yet released them to the docket. So that you are not prejudiced by a delay outside my control, I am attaching courtesy copies of my Memorandum of Law and Response in Opposition. Please note these are not stamped by the Court. This is not the full set — it is the two main documents, without the exhibits — and the docketed version controls in the event of any discrepancy. I will forward the docketed versions as soon as EDS releases them.

Respectfully,

Dr. Gowtham A. Rao, MD, PhD
Defendant and Counterclaim-Plaintiff, Pro Se
184 Mansgrove Rd, Princeton, NJ 08540
Phone: (803) 386-7890
Email: gowthamrao.litigation@gmail.com

On Wed, Aug 19, 2026 at 1:05 PM Oslick, Jacob <JOslick@seyfarth.com> wrote:

Gowtham,

We are not going to play your game of preparing an "informal, prioritized list of specific RFAs or subparts" that we object to. You sent us 471 RFAs, an utterly ridiculous amount. Serving "copious RFAs to see how many will 'stick'" constitutes "discovery abuse." *Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *9 n.9 (E.D. Pa. 2021) (granting protective order quashing 185 RFAs). That's exactly what you are suggesting. Indeed, it would take an enormous number of hours to go through those requests and identify each and every one that is improper (or even a "prioritized list" of such requests), as well as the grounds they are improper. In effect, your proposal is that we incur a large portion of the burden that we intend to avoid, and waste dozens of hours of attorneys' fees preparing to confer about blatantly inappropriate discovery, precisely during the time period when we should otherwise be focused on our reply papers. We won't do this. We have instead proposed a simple and fair compromise: withdraw the RFAs, in their entirety, and then reissue up to 25 RFAs that you actually want us to respond to.

We will be responding to your August 12 email separately.

Regarding your proposed "mutual two-way extension" to respond to discovery until September 25 (which – we note -- would give you a longer extension than us) we can agree only in part, and only on the following conditions:

- Our time to respond to all 471 of your RFAs is extended through September 25, without waiver of any objections.

- You agree to answer our 18 RFAs on schedule (by September 10), and without objection. Unlike your RFAs, our RFAs are exceedingly narrow, and none of them require much (if any) investigation on your end. They should not take you more than 1 hour, total, for you respond to. Further, they are focused entirely on issues that are central to the spoliation hearing and should be cleared up before then—such as the provenance of expected exhibits—in order to reduce the need for testimony at the hearing itself.

- You further agree to provide documents responsive to RFP No. 9 ("All audio or video recordings, transcripts, or other documents, data, or materials which were used to generate the documents attached hereto as Exhibits A-G") and RFP No. 40 ("All documents concerning any "refresh" or "reset" that you performed on your MSI Codex R2 Desktop Computer in or about November 2025) by

September 10. These two requests are similarly focused on discovery that is highly relevant to the spoliation hearing. And they seek narrow, discrete categories of documents that you should be able to locate and produce with minimal effort.

- Your time to respond to our remaining requests (68 RFPs and 16 Interrogatories) is extended through September 25, provided that you agree to adjourn the current noticed date for your deposition (September 24) until a mutually-agreeable date after your respond to discovery, with you to be deposed first, before you depose any EPAM witnesses.

Separately, it is abundantly clear that the current September 30 discovery deadline will not stick. The Court recognized as much at the April conference. We propose that discovery be extended by six months. Please let us know your position on that.

Jacob

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Wednesday, August 19, 2026 11:56 AM
**To:** Oslick, Jacob <JOslick@seyfarth.com>
**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Christoff, Matthew <MChristoff@seyfarth.com>; Sarah Lugar <sarah_lugar@epam.com>; Comer, Madeline <mcomer@seyfarth.com>; Etwaru, Simone <setwaru@seyfarth.com>
**Subject:** Re: EPAM v. Rao: Meet-and-Confer Request Regarding Defendant's 471 RFAs

Jacob,

Thank you for your follow-up. I completely understand and respect the intense time pressure your team is under preparing for the September 16 hearing while managing active discovery.

Suggesting Monday was in no way an attempt to delay. As a pro se litigant, having just finalized and submitted my spoliation opposition brief and 20 exhibits ahead of today's deadline, I am now fully committed through Friday drafting responses to EPAM's 104 inbound discovery requests (70 RFPs, 16 ROGs, 18 RFAs) and addressing third-party subpoena and deposition notices.

Rather than waiting idly until Monday, I propose we use Wednesday through Friday to actively negotiate and align on discovery over email, so that our Monday conference can finalize a single, comprehensive Discovery Framework:

1. Active Email Exchange This Week (RFA Trimming & Compromise): To make our Monday call maximally efficient, please send me an informal, prioritized list of specific RFAs or subparts EPAM would most like to see eliminated, narrowed, or rephrased. No formal legal briefing is required, and this is completely without prejudice to EPAM's legal positions. I will review your list in good faith before our call to see where I can make voluntary concessions, withdrawals, or stipulations.

2. Finalizing the August 12 Discovery Logistics & ESI Protocol: As noted in my follow-up email this morning, let us also use the next two days to finalize the Discovery Logistics and ESI Protocol proposal I sent on August 12 (covering Rule 5(b)(2)(E) electronic service consent, native/Git bundle production formats, iDS Relativity cross-referencing, and a court-entered Rule 502(d) clawback order). Please confirm via email whether EPAM agrees to those terms or provide your firm's standard ESI/502(d) template by today if possible.

3. Mutual Two-Way Extension (Rule 29(b)): Let us formally agree to extend discovery response deadlines both ways to Friday, September 25, 2026 (for EPAM's responses to Defendant's RFAs, and Defendant's responses to EPAM's discovery requests). This gives both sides over a full month to respond and keeps hearing week completely clear for hearing preparation.

By exchanging our written positions on both items over the next two days, our Monday call can quickly finalize a joint stipulation resolving all pending discovery logistics smoothly without any need for Court intervention.

Please let me know if 1:30 PM, 2:30 PM, or 3:30 PM EDT on Monday, August 24 works best for the wrap-up call, and please send over a Teams link or dial-in.

Warm regards,

Dr. Gowtham A. Rao, MD, PhD Defendant and Counterclaim-Plaintiff Pro Se 184 Mansgrove Rd, Princeton, NJ 08540
Phone: (803) 386-7890 Email: gowthamrao.litigation@gmail.com

On Wed, Aug 19, 2026 at 11:04 AM Oslick, Jacob <JOslick@seyfarth.com> wrote:

Gowtham,

It is Wednesday morning. I find it difficult to believe that you are unavailable to discuss anytime today, tomorrow, or even Friday. Delaying a conference until Monday afternoon would place our call just three weeks before our response deadline comes due – and that's not counting the time it would take to seek court relief, for you to respond to our letter, or for a court conference to be scheduled. It's fairly likely that, by the time a court conference was scheduled, it would be less than 2 weeks from our response deadline (and, not coincidentally, two weeks from the September 16 spoliation hearing). While we fully expect the Court to quash your requests in their entirety, that's an untenably short amount of time to respond to discovery such as this. Please provide your availability before Monday or, alternatively, confirm that as part of your "compromise" proposal, you are extending the response deadlines in order to facilitate meet-and-confer discussions.

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

**From:** Gowtham Rao <gowthamrao.litigation@gmail.com>
**Sent:** Wednesday, August 19, 2026 10:49 AM
**To:** Oslick, Jacob <JOslick@seyfarth.com>

**Cc:** Gowtham Rao <gowthamrao@gmail.com>; Christoff, Matthew <MChristoff@seyfarth.com>; Sarah Lugar <sarah_lugar@epam.com>; Comer, Madeline <mcomer@seyfarth.com>; Etwaru, Simone <setwaru@seyfarth.com>
**Subject:** Re: EPAM v. Rao: Meet-and-Confer Request Regarding Defendant's 471 RFAs

Jacob,

I am writing to acknowledge receipt of your email of this morning, August 19, 2026, regarding Defendant's Requests for Admission (Sets 1–5).

I am unavailable to meet tomorrow, Thursday, August 20, 2026. However, consistent with the Local Rules and Chief Judge Beetlestone's Policies and Procedures, I am available to meet and confer by teams on Monday afternoon, August 24, 2026, at 1:30 PM, 2:30 PM or 3:30 PM EDT. Please let me know which of these times works best for your team, and provide the conference dial-in or telephone number you wish to use.

In advance of our conference, I will send you a follow-up email today or tomorrow morning setting forth my detailed rebuttal and concrete compromise proposals to ensure our discussion on Monday is focused, substantive, and productive.

Respectfully,

Dr. Gowtham A. Rao, MD, PhD
Defendant and Counterclaim-Plaintiff Pro Se
184 Mansgrove Rd, Princeton, NJ 08540
Phone: (803) 386-7890
Email: gowthamrao.litigation@gmail.com

On Wed, Aug 19, 2026 at 9:33 AM Oslick, Jacob <JOslick@seyfarth.com> wrote:

Gowtham,

Consistent with the Local Rules and Judge Beetlestone's Individual Practices, we are writing to meet-and-confer with you regarding your requests for admissions ("RFA"). To date, you have served approximately 471 RFAs (disguised as 211 RFAs, but really about 471 RFAs including purported subparts – which often

have little to do with one another). We intend to move to seek a protective order quashing these RFAs in their entirety. Our intended motion would further seek an order that would: (a) limit you 25 RFAs; (b) clarify that any subpart be considered a separate RFA. Please provide your availability to meet-and-confer at some point before close of business on Thursday. Given the outrageous number of RFAs you served, the immense amount of time it would take to respond to them, the limited 30-day deadline, and EPAM's pressing need to prepare for the September 16 hearing, not waste time responding to grossly improper discovery, we cannot wait any longer.

The grounds for EPAM's motion would be as follows:

1. Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Further, discovery cannot be leveled for an improper purpose, such as harassment or increasing your opponent's litigation costs.

2. It is abundantly clear that serving roughly 471 RFAs (including subparts), is not proportional to the needs of the case. Instead, your RFAs are an improper attempt by you to harass EPAM and magnify its litigation costs.

3. Indeed, the fact that you sent an unprompted follow-up to us regarding your requests, raising the prospect of a motion for a protective order and how the "burden to seek protection rests on the party seeking it" strongly suggests that you know your requests are improper – but nevertheless want to force EPAM into spending time and wasting attorneys' fees preparing a protective order to quash them. Given that you will be opposing EPAM's motion for sanctions on Wednesday, and that EPAM will have just one week to reply, we cannot help but believe that you have a bad faith motive in wanting to force EPAM into unnecessary motion practice.

4. The contents of your RFAs further establish that they, overwhelmingly, do not seek legitimate discovery, but instead have been served to harass EPAM and increase its litigation costs. By way of examples:

   a. Dozens, and perhaps hundreds, of the RFAs purport to ask EPAM to "admit" whether statements exist in documents, or items such as the dates when court events took place. *See e.g.* RFA 128(a) (asking EPAM to admit that EPAM stated various matters in Paragraphs 1, 33 of the First Amended Complaint); RFA 162(c) (asking EPAM to "admit" that ECF No. 58-28 ¶ 3 contains quoted language); RFA 173(b) (asking EPAM to admit when the Complaint was filed); RFA 175(e) (asking EPAM to admit that ECF #58-25 contains quoted language); RFA 182(a) (asking EPAM to admit that a document publicly filed at ECF #33-9 says something). A document either says something or it doesn't. The dates of court events are readily apparent from the public docket. Demanding that EPAM answer mountains of discovery requests on these topics serves no purpose other than increasing EPAM's burden. Further, EPAM cannot admit anything regarding the provenance of documents that did not originate with it, such as RFA 182(a), which asks for admissions about an email allegedly between Johnson & Johnson and Dr. Rao.

   b. Dozens, and perhaps hundreds, of the RFAs appear to have no discernable relevance or, at best, negligible relevance to the dispute—even if one considers your baseless counterclaims that will be dismissed after EPAM's motion is refiled. *See e.g.*, RFA 90 (asking EPAM to admit the date of a "final commit" to a "public Github repository"); RFA

120(a) (asking EPAM to admit that Dr. Rao made demonstrations on May 9 and 25, 2025); RFA 152(c) (asking EPAM to admit that EPAM corporate records showed meetings, calls, and written discussions); RFA 203(b) (asking EPAM to admit that a non-party CEO complimented a presentation by Dr. Rao in July/August 2025).

c. Dozens, and perhaps hundreds, of the RFAs would be absurdly burdensome for EPAM to answer even if the 30-day period was generously extended. For just one example, RFA 60 asks EPAM to effectively "prove a negative" and admit that none of its "registered copyrights, exclusive commercial licenses, or proprietary intellectual property rights" have been uploaded to "ANY software repository or codebase hosted underthe Observational Health Data Sciences and Informatics ('OHDSI') public GitHuborganization," a request that would require EPAM to search every single file in all of these databases to determine whether any of its intellectual property was uploaded (including uploaded improperly or inadvertently).

On this point, it is notable that each of the RFAs demand that EPAM undertake a so-called "reasonable inquiry" that purports to require it to conduct an "exhaustive search of all records, communications, electronic mail archives, Slack and Microsoft Teams message histories, client pitch presentations, Concur expense records, Bitbucket and Git repositories, CloudTrail and Microsoft 365 Unified Audit Logs, endpoint telemetry logs, public open-source software repositories, and all information in the possession, custody, or control of EPAM, its officers, directors, managing agents, employees, forensic vendors, and outside litigation counsel." That is not a "reasonable inquiry" under Fed. R. Civ. P. 36(a)(4).

d. Numerous RFAs purport to ask EPAM to "admit" supposed facts that go to the ultimate issues in the case, despite EPAM not yet having the opportunity to take discovery on these issues. For example, RFA 182(c) asks EPAM to "admit" that it "does not contend" that a proof-of-concept engagement between Rao/CoReason and Johnson & Johnson "would have used or disclosed any EPAM trade secret." If such RFAs are ever appropriate, they are grossly premature. EPAM has not had any opportunity to take discovery regarding what this proof-of-concept engagement consisted of.

e. Some of the RFAs seek attorney-client communications and materials protected by the work product doctrine, such as demands that EPAM admit whether it shared certain documents with a particular witness. See RFA 141(d),

5. We further note that you strategically timed your requests to fall due just days before or on the date of the September 16 evidentiary hearing on our motion for sanctions, apparently hoping that you can prevent EPAM for preparing for the evidentiary hearing by tying it up with paperwork.

You can avoid this unnecessary motion by agreeing to withdraw your RFAs in their entirety, or by agreeing to designate 25 RFAs – but just 25 – for us to respond to, with each discrete subpart considered a separate RFA.

**Jacob Oslick** | Counsel | Seyfarth Shaw LLP
620 Eighth Avenue | New York, New York 10018-1405
Direct: +1-212-218-6480 | Mobile: +1-917-613-2523
N.Y. Bar No. 4275699; Pa. Bar No. 311028
JOslick@seyfarth.com | www.seyfarth.com

Seyfarth

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.