**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

EPAM SYSTEMS, INC. v. GOWTHAM RAO
Civil Action No. 2:25-cv-06260-WB

# REQUEST-BY-REQUEST APPENDIX

## Source, Legal Theory, and Judicial Utility

*Requests for Admission Nos. 1–211 (of record as ECF Nos. 70-1 to 70-5)*

Enclosure to Dr. Rao's Response to ECF No. 70

# REQUEST-BY-REQUEST APPENDIX

## Source, Legal Theory, and Judicial Utility

**Matter:** *EPAM Systems, Inc. v. Rao*, No. 2:25-cv-06260-WB (E.D. Pa.)

**Submitted with:** Defendant's response to ECF No. 70

**Prepared by:** Dr. Gowtham A. Rao, MD, PhD, Defendant and Counterclaim-Plaintiff, Pro Se

---

### How to read this appendix

The requests are not restated in this appendix. The served requests control, and all five sets are already of record as ECF Nos. 70-1 through 70-5, filed by EPAM with its letter. Each numbered entry gives three short points: the source from which EPAM can answer, the legal issue the request affects, and what an admission would narrow. Headings group related requests. The appendix does not ask the Court to accept any proposition as true. Schedule A (Exhibit A to the letter) states my proposed corrections, and entries note where it applies.

An admission conclusively establishes the matter. Fed. R. Civ. P. 36(b). A specific denial also narrows the case, because it shows exactly what remains disputed. Rule 36(a)(1) reaches facts, the application of law to fact, and the genuineness of documents; entries say plainly when a request applies a contract term or a legal standard.

RFAs 1–119 contain no subparts. In RFAs 120–211, lettered subparts break a single episode into separately answerable steps, so EPAM can admit what it does not dispute. Counting subparts measures drafting style, not burden.

I plan three depositions: Gregory Klebanov, my former manager; Ram Varma, a Gilead Sciences witness; and EPAM's Rule 30(b)(6) designee. I cannot afford to depose the other people named below. For most of these facts, the alternative to a Rule 36 answer is a deposition I cannot take or a contested foundation at trial.

### SET 1 — IT policy, authorization, and corporate systems

***RFAs 1–7 — the governing IT policy and EPAM's pleaded access model. Each is answerable from a document EPAM itself filed, and together they frame authorization under the CFAA and reasonable secrecy measures under the DTSA and PUTSA.***

---

### RFA No. 1

- **Source:** ECF No. 30-3
- **Issue:** CFAA authorization and DTSA/PUTSA reasonable secrecy measures: what EPAM's own Acceptable Use Policy authorized for personally owned devices.
- **Narrows:** An admission fixes the policy text that governs whether BYOD access was authorized, removing any need for a policy-custodian witness or cross-examination on § 3.21 at summary judgment or trial.

**RFA No. 2**

- **Source:** ECF No. 30-3; EPAM system records identified in the request
- **Issue:** CFAA authorization and secrecy measures: the policy provision requiring confidential data to sync automatically to EPAM online storage.
- **Narrows:** The quoted sync requirement is the innocent mechanism behind the events EPAM counts as downloads. An admission anchors the OneDrive requests (RFAs 28–35, 198–199) in EPAM's own policy and spares policy-custodian testimony.

**RFA No. 3**

- **Source:** ECF No. 30-3; EPAM system records identified in the request
- **Issue:** CFAA authorization and secrecy measures: whether BYOD use was a routine, policy-consistent practice across EPAM in 2024–2025.
- **Narrows:** An admission establishes course-of-conduct authorization without deposing EPAM IT operations personnel or sampling employee witnesses I cannot economically reach. A denial would identify a real dispute about EPAM's own practice, which targeted document discovery can then resolve.

**RFA No. 4**

- **Source:** ECF No. 30
- **Issue:** CFAA and DTSA/PUTSA: EPAM's need-based access model for its source code. Schedule A rewrites this request to ask the underlying fact rather than what the pleading says.
- **Narrows:** As corrected, an admission establishes the access model against which authorization is judged and eliminates testimony about who could reach the code and why.

**RFA No. 5**

- **Source:** ECF No. 30
- **Issue:** Role and authorization: EPAM's designation of me as a client-facing executive. Schedule A rewrites the request to the underlying fact.
- **Narrows:** An admission fixes my executive, client-facing role — the role that carried the broad access EPAM's complaint describes — and shortens both the authorization analysis and any fiduciary-duty testimony about my responsibilities.

**RFA No. 6**

- **Source:** ECF No. 30
- **Issue:** Role scope: my responsibility for the data science unit. Schedule A rewrites the request to the underlying fact.
- **Narrows:** An admission settles the scope of the position, a foundation fact for authorization, fiduciary-duty, and damages issues, without examining Mr. Klebanov or an HR designee about the organization chart.

**RFA No. 7**

- **Source:** ECF No. 30
- **Issue:** Authorization by role: trusted senior executives were given access to confidential information to develop solutions and expand the business. Schedule A rewrites the request to the underlying fact.
- **Narrows:** An admission establishes that access of exactly the kind at issue was granted for business purposes, narrowing the CFAA and improper-means disputes to whatever, if anything, exceeded that grant.

***RFAs 8–24 — how my access actually occurred and what EPAM management knew and permitted. These requests substitute for testimony from EPAM's IT administrators, its identity-management designee, and Mr. Klebanov.***

**RFA No. 8**

- **Source:** EPAM system records identified in the request
- **Issue:** CFAA authorization and forensic attribution: whether every access ran through EPAM-provisioned single sign-on credentials.
- **Narrows:** An admission eliminates any intrusion or credential-misuse theory and the identity-management testimony needed to rebut one. Whatever remains contested is then a defined set of events rather than an open accusation.

**RFA No. 9**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** CFAA circumvention and DTSA improper means: the absence of any bypass of passwords, encryption, firewalls, or access restrictions.
- **Narrows:** An admission removes the aggravated form of both claims and the security-operations testimony and expert reconstruction otherwise needed. A denial obliges EPAM to say which control was circumvented, which its own monitoring records will show.

**RFA No. 10**

- **Source:** EPAM system records identified in the request
- **Issue:** Authorization provenance: access permissions were configured and granted by EPAM's own administrators.
- **Narrows:** An admission establishes that whatever I could reach, EPAM gave me, confining the dispute to use rather than acquisition of access. It substitutes for a systems-administration designee.

**RFA No. 11**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** DTSA/PUTSA acquisition and CFAA authorization as to the ETL Conversion Kit: whether I was ever provisioned repository access at all.

- **Narrows:** The ETL Kit is one of the three named secrets. An admission that I had no repository access to it removes the acquisition element for that asset.

---

**RFA No. 12**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Forensic attribution: whether EPAM's own logs contain any record of access to or cloning of ETL Kit repositories.
- **Narrows:** An admission fixes the absence of server-side acquisition evidence for the ETL Kit and spares a telemetry designee and log authentication. A denial identifies the log entry EPAM relies on, and discovery narrows to that entry.

---

**RFA No. 13**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** The central acquisition fact for the ETL Kit misappropriation claim.
- **Narrows:** An admission resolves an entire branch of Counts I and II without expert analysis, repository discovery, or trial time. If EPAM cannot admit or deny, Rule 36(a)(4) requires it to say so after reasonable inquiry, and that response itself defines the state of its records.

---

**RFA No. 14**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Scope of authorized duties under ECA § 1(d): evaluating, developing, and presenting the AI tools now at issue.
- **Narrows:** An admission establishes that working with the accused AI materials was my assignment, the predicate for authorized access and use. It substitutes for examination of Mr. Klebanov on job duties.

---

**RFA No. 15**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Express authorization: EPAM granted access to the AI project materials for business development on the Company's behalf.
- **Narrows:** An admission that access to the very materials in suit was granted for EPAM's benefit confines the misappropriation dispute to post-access conduct.

---

**RFA No. 16**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Forensic attribution and authorization: the identity and work use of the personal workstation the neutral examiner designated Device A0001.
- **Narrows:** An admission ties the examined device to the work history without a foundation fight, so the iDS results (RFAs 69, 144) attach to an undisputed object. EPAM's own filings already assume this fact.

**RFA No. 17**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Supporting fact: the workstation's capacity exceeded the issued laptop.
- **Narrows:** A modest foundation fact that explains why a personal workstation was used for computational work. It is inexpensive to answer — a specification comparison — and I rank it as supporting, not core.

**RFA No. 18**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Management knowledge and acquiescence: no written instruction to stop using the workstation before termination.
- **Narrows:** An admission establishes eleven months of acquiescence bearing on authorization and on pretext, and eliminates an HR-records dispute.

**RFA No. 19**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Pre-employment disclosure: the November 12, 2024 bring-your-own-laptop inquiry to Mr. Klebanov.
- **Narrows:** An admission fixes that the practice was disclosed before employment began, shortening the Klebanov deposition I plan to take.

**RFA No. 20**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Management knowledge: Mr. Klebanov's awareness of the workstation's use for EPAM deliverables.
- **Narrows:** Knowledge by the supervisor who later recommended termination bears on authorization and on the credibility of the for-cause narrative. An admission removes a contested topic from the Klebanov deposition.

**RFA No. 21**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Acquiescence: no supervisor directed cessation between November 2024 and October 2025.
- **Narrows:** An admission completes the authorization-by-conduct record and avoids serial supervisor depositions to prove a negative each of them controls.

**RFA No. 22**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** EPAM's own control decisions: management never directed IT to block the device.

- **Narrows:** An admission establishes that EPAM's access-control systems permitted the device throughout — a secrecy-measures and authorization fact provable only from EPAM's side. It substitutes for network-administration testimony.

---

**RFA No. 23**

- **Source:** iDS neutral-forensic records identified in the request; EPAM system records identified in the request
- **Issue:** Forensic attribution: EPAM's identity systems openly recorded the device's recurring authentications for eleven months.
- **Narrows:** An admission negates concealment — the device was visible to EPAM's telemetry the entire time — and establishes the log foundation for both sides without authentication witnesses.

---

**RFA No. 24**

- **Source:** iDS neutral-forensic records identified in the request; EPAM system records identified in the request
- **Issue:** Post-termination conduct: no remote wipe or MDM command was issued at offboarding.
- **Narrows:** An admission explains why synced corporate data remained on the device after October 15 — EPAM's own offboarding choice — which reframes the retention allegations and bears on secrecy measures.

***RFAs 25–27 — policy text and authenticity. Rule 36(a)(1)(B) genuineness and verbatim-text requests that remove foundation witnesses for EPAM's own exhibit.***

---

**RFA No. 25**

- **Source:** ECF No. 30-3; EPAM system records identified in the request
- **Issue:** Policy text: the same § 3.14 sentence quoted in RFA 2.
- **Narrows:** This request repeats RFA 2's quotation as a standalone text confirmation and can be answered identically; I will accept a single admission as answering both. The marginal burden is zero.

---

**RFA No. 26**

- **Source:** ECF No. 30-3
- **Issue:** Rule 36(a)(1)(B) genuineness: Exhibit C to the Amended Complaint is an authentic copy of the operative policy.
- **Narrows:** Authenticating a document EPAM itself filed costs nothing and eliminates a records-custodian witness under Fed. R. Evid. 901 and 902(11) for every later use of the policy at summary judgment, the hearing, or trial.

---

**RFA No. 27**

- **Source:** ECF No. 30-3

- **Issue:** Policy applicability: § 1.1 makes the policy govern all employees, including me, in 2025.
- **Narrows:** An admission applies EPAM's own scope clause to me — an application of a document to fact within Rule 36(a)(1)(A) — so the policy's coverage never has to be litigated.

***RFAs 28–43 — OneDrive synchronization, EPAM's audit export, and repository logs. These address forensic attribution: whether server-side records show automated syncing or intentional acquisition of source code. The answers sit in EPAM's Microsoft 365 tenant, its version-control systems, and the export it produced.***

---

**RFA No. 28**

- **Source:** EPAM system records identified in the request
- **Issue:** Forensic attribution: OneDrive synchronization runs automatically, without per-file user initiation.
- **Narrows:** This is the technical premise for reinterpreting EPAM's download counts. An admission from the party that administers the tenant narrows, and may eliminate, dueling expert testimony on sync mechanics.

---

**RFA No. 29**

- **Source:** EPAM system records identified in the request
- **Issue:** Forensic attribution: EPAM's tenant permitted the Always-keep-on-this-device feature in October 2025.
- **Narrows:** Only EPAM can state its own tenant configuration. An admission establishes that bulk local retention was an enabled, ordinary feature, and spares a Microsoft 365 administration designee.

---

**RFA No. 30**

- **Source:** EPAM system records identified in the request
- **Issue:** Forensic attribution: EPAM's audit logs record automated hydration as server-side download events under the user's account.
- **Narrows:** This is the log-semantics fact on which the 44,960-file narrative rests. An admission converts a forensic-expert dispute into an undisputed record property; a denial isolates precisely what EPAM contends its logs mean.

---

**RFA No. 31**

- **Source:** EPAM system records identified in the request
- **Issue:** Forensic attribution: sync produces hydration metadata and cache artifacts rather than browser download artifacts.
- **Narrows:** A technical opinion within Rule 36(a)(1)(A) that EPAM's IT function can confirm. An admission lets device-side evidence be read consistently with the server-side records without a second expert round.

**RFA No. 32**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Composition of EPAM's own produced export: over 80% of entries are FileSyncDownloadedFull operations by the OneDrive client.
- **Narrows:** An admission fixes the composition of EPAM's central forensic exhibit and forecloses summary-exhibit disputes under Fed. R. Evid. 1006.

**RFA No. 33**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Attribution by user-agent: at least 44,000 entries record the sync engine; fewer than 100 record a web browser.
- **Narrows:** An admission attributes the overwhelming mass of events to background software rather than human browsing — the central inference in the acquisition story.

**RFA No. 34**

- **Source:** ECF No. 43-2; EPAM system records identified in the request
- **Issue:** Record statement: EPAM counsel's declaration quotes Microsoft's definition of FileSyncDownloadedFull.
- **Narrows:** Confirming a footnote EPAM's own declarant placed in the record removes any later dispute over Purview event definitions.

**RFA No. 35**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Content of the synchronized libraries: none held source code for the three named tools.
- **Narrows:** This request separates 44,960 files from the trade-secret claims: if the libraries contained no accused code, the sync events cannot be code acquisition. EPAM controls the libraries and can answer from content inventories; a denial must locate code in a named library, which becomes the single follow-up target.

**RFA No. 36**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Content of the export: entries record me retrieving my own personnel-records archive from HR's folder.
- **Narrows:** An admission illustrates the innocuous character of logged FileDownloaded events and corroborates the personnel-records request that is part of the CEPA chronology.

**RFA No. 37**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM communications and calendar records identified in the request
- **Issue:** Content of the export: FileDownloaded entries include ordinary work files shared by named colleagues over Teams.
- **Narrows:** An admission converts the anonymous log rows into ordinary collaboration, without deposing Mr. Sen, Mr. Ghate, or Mr. Salim.

**RFA No. 38**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM communications and calendar records identified in the request
- **Issue:** Negative content fact: no browser or Teams entry in the export contains source code or repository archives.
- **Narrows:** An admission closes the last route from the export to code acquisition.

**RFA No. 39**

- **Source:** public repositories or publications identified in the request; EPAM system records identified in the request
- **Issue:** Production-state fact: no server-side version-control log showing acquisition in September–October 2025 has been produced.
- **Narrows:** An admission fixes the state of the record for summary judgment; a denial identifies a production that should already exist, and one targeted request replaces motion practice.

**RFA No. 40**

- **Source:** EPAM system records identified in the request
- **Issue:** Possession fact: EPAM holds no server-side clone log showing that I acquired the three named codebases in 2025.
- **Narrows:** This is the decisive acquisition record for the repository-based theory. Either answer is valuable: an admission removes direct acquisition evidence from the case; a denial identifies the specific log, and the dispute collapses to one document.

**RFA No. 41**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Scope of the forensic record: the produced export is the only server-side download telemetry supporting the acquisition allegations.
- **Narrows:** An admission defines the evidentiary universe the parties and the Court are working with and prevents late expansion without production.

**RFA No. 42**

- **Source:** EPAM system records identified in the request

- **Issue:** Secrecy measures, stated conditionally: if no clone logs were kept, EPAM lacked technical means to track code acquisition.
- **Narrows:** I acknowledge that this request is conditional in form. It presents an application of fact to the reasonable-measures element, and a qualified answer under Rule 36(a)(4) would serve its purpose: either answer states EPAM's position on its own logging.

---

**RFA No. 43**

- **Source:** public repositories or publications identified in the request; EPAM system records identified in the request
- **Issue:** Access-control fact: none of my credentials was provisioned read, write, or clone permissions to ETL Kit repositories in 2025.
- **Narrows:** With RFA 11 it forecloses the repository-access route to the ETL Kit; it adds the named systems and the year scope so the admission is precise enough to use at summary judgment.

***RFAs 44–57 — EPAM's actual information-handling practices: personal accounts, external tools, expense approvals, and infrastructure decisions. These bear on reasonable secrecy measures and on whether the conduct alleged against me was consistent with practices EPAM permitted, and they substitute for depositions of the named employees and approvers.***

---

**RFA No. 44**

- **Source:** public repositories or publications identified in the request
- **Issue:** Trade-secret existence: the ETL Kit's transformation logic derives at least in part from public OHDSI tools and OMOP vocabularies.
- **Narrows:** An admission — even a qualified one — performs the identification work the DTSA requires: it separates the public foundation from whatever EPAM claims as its proprietary remainder, and the case then concerns only the remainder.

---

**RFA No. 45**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Reasonable secrecy measures and comparator practice: routine employee use of personal email and Google tools for EPAM work.
- **Narrows:** An admission establishes the practice without deposing a sample of EPAM employees, which I cannot fund. It bears both on the DTSA measures element and on whether conduct alleged against me was condoned when others did it.

---

**RFA No. 46**

- **Source:** ECF No. 33-10
- **Issue:** A documented instance of that practice: the September 24, 2025 Google-document share to personal accounts, reflected in a filed exhibit (ECF No. 33-10).
- **Narrows:** An admission authenticates and fixes one concrete, dated instance, converting the comparator practice from generality to record fact; the underlying invitation is already filed. Without it, proof requires examining Mr. Iaroshovets.

**RFA No. 47**

- **Source:** ECF No. 33-10
- **Issue:** A second documented instance: the July 2, 2025 Google-spreadsheet share (ECF No. 33-10 at 2).
- **Narrows:** The same function as RFA 46 for a different sender and date, showing the practice was not isolated.

**RFA No. 48**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Selective enforcement: no discipline of the three named employees for personal-account sharing.
- **Narrows:** An admission supplies the comparator half of the CEPA pretext analysis — the same conduct, tolerated — and simultaneously bears on secrecy measures.

**RFA No. 49**

- **Source:** ECF No. 33
- **Issue:** Authorized practice with client knowledge: the Takeda POC deliverables were drafted on personal Google Docs with the client representative's knowledge.
- **Narrows:** An admission removes improper-means significance from the very workflow EPAM now characterizes as misconduct, and avoids third-party discovery of Takeda's representative on a point EPAM's own communications can settle.

**RFA No. 50**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** A fixed communication: my corporate email to the Takeda representative confirming an open-source methodology.
- **Narrows:** An admission establishes contemporaneous transparency about the open-science approach — relevant to secrecy, ownership, and later to the CEPA ownership escalation — without authentication testimony.

**RFA No. 51**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Secrecy measures as implemented: no DLP or gateway controls blocked external personal-account sharing in September–October 2025.
- **Narrows:** The measures element turns on what EPAM actually did, not what its policies recite. An admission fixes the technical posture from EPAM's own security configuration and substitutes for security-operations testimony.

**RFA No. 52**

- **Source:** EPAM records or personnel identified in the request

- **Issue:** Secrecy measures: no recall, wipe, or audit mechanism existed for documents once shared to personal accounts.
- **Narrows:** Completes the implemented-measures picture and spares the same security-operations testimony.

---

**RFA No. 53**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Authorization and consistent practice: EPAM reviewed, approved, and reimbursed my personal-account AI subscriptions.
- **Narrows:** An admission establishes institutional approval of the AI tooling now cast as suspect, without an expense-system designee.

---

**RFA No. 54**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Managerial knowledge: Mr. Klebanov approved those reimbursements month over month.
- **Narrows:** An admission attributes the approvals to the supervisor central to the case, narrowing his deposition and the pretext inquiry.

---

**RFA No. 55**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Consistency of practice, post-filing: an EPAM in-house lawyer used a personal account to request access to a cloud document in June 2026.
- **Narrows:** I acknowledge that this concerns a post-suit event and involves EPAM's counsel's office. It is included solely because the access request is logged and shows the personal-account channel remained ordinary, and I identify it as a natural candidate for the prioritization offered in the letter.

---

**RFA No. 56**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Development chronology and knowledge: my December 10, 2024 planning with Mr. Klebanov on LLM integration.
- **Narrows:** An admission establishes that LLM work was collaborative and known from the outset, undermining any later suggestion that the AI work was covert. It shortens the Klebanov deposition.

---

**RFA No. 57**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Infrastructure history: Mr. Klebanov declined dedicated servers for vector databases in December 2024.

- **Narrows:** An admission explains why development ran on external and public infrastructure — EPAM's own resourcing decision — bearing on authorization and on the origin of the accused tools.

**SET 2 — public sources, prior work, and ownership**

***RFAs 58–70 — public OHDSI and OMOP material, and what the neutral examination found. These separate public, openly licensed components from anything EPAM can claim as a secret, and they fix the results of the iDS inspection.***

---

**RFA No. 58**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability: OHDSI repositories are distributed under open-source licenses.
- **Narrows:** The licenses are on the public repositories the request names. An admission removes the entire OHDSI ecosystem from any secrecy claim and gives the § 1(b) carve-out its factual footing; no witness is needed to prove what the license files say.

---

**RFA No. 59**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability: OMOP Common Data Model specifications are freely published.
- **Narrows:** The same function as RFA 58, for the data model at the core of the ETL domain.

---

**RFA No. 60**

- **Source:** public repositories or publications identified in the request
- **Issue:** Ownership boundary: EPAM claims no proprietary rights in OHDSI-organization repositories. Schedule A narrows the wording of this request.
- **Narrows:** As narrowed, an admission draws the line between community property and anything EPAM can assert, shrinking the identification dispute at the threshold. A denial would have to name the OHDSI repository EPAM claims, which is itself clarifying.

---

**RFA No. 61**

- **Source:** public repositories or publications identified in the request
- **Issue:** Pre-existing role: my OHDSI working-group leadership before and during employment.
- **Narrows:** Foundation for the § 1(b) community-work exclusion and for the recruitment narrative; publicly verifiable, and EPAM's recruitment records show it knew. An admission avoids proving professional history through testimony.

---

**RFA No. 62**

- **Source:** public repositories or publications identified in the request
- **Issue:** Prior expertise: pre-employment publications and public software packages.
- **Narrows:** This establishes the knowledge-and-skills baseline that § 1(b) excludes from Confidential Information, without a resume trial.

**RFA No. 63**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Recruitment fact: hired at a $250,000 base salary for verified credentials.
- **Narrows:** An admission ties compensation to pre-existing expertise — relevant to the general-knowledge carve-out and to inducement damages — and comes straight from EPAM's offer and payroll records.

**RFA No. 64**

- **Source:** public repositories or publications identified in the request
- **Issue:** Composition: the ETL Kit uses public OHDSI SQL transformation scripts.
- **Narrows:** Like RFA 44, the answer performs DTSA identification: admit the public componentry and the claim narrows to the remainder; deny it and the dispute becomes a concrete code comparison instead of an abstraction.

**RFA No. 65**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability: OMOP mapping specifications and transformation rules are published.
- **Narrows:** An admission forecloses secrecy claims over the mapping layer.

**RFA No. 66**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** EPAM's own disclosure: public marketing and client training on the OMOP ETL workflow.
- **Narrows:** An admission establishes voluntary disclosure of the functional workflow — fatal to secrecy over that workflow — from EPAM's marketing materials and training records, without deposing marketing personnel.

**RFA No. 67**

- **Source:** public repositories or publications identified in the request
- **Issue:** Independent public art: Johnson & Johnson publishes its own open-source OMOP ETL codebase.
- **Narrows:** A public-record fact that undercuts independent economic value from secrecy for OMOP ETL generally.

**RFA No. 68**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Access architecture: the ETL engineering team was managed separately from my unit.
- **Narrows:** An admission supports the no-access showing for the ETL Kit organizationally, complementing the log-based requests, and substitutes for organization-chart testimony.

**RFA No. 69**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Neutral-examiner result: iDS found zero ETL Kit source files on the workstation.
- **Narrows:** An admission converts the neutral inspection result into an established fact, eliminating examiner testimony on the point and anchoring summary judgment on the possession element for the ETL Kit.

**RFA No. 70**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Post-inspection identification: EPAM has identified no ETL Kit file among the 80,000-plus extracted files it can access.
- **Narrows:** This fixes the state of the record after months of Relativity access. An admission supports absence-of-identification arguments; a denial must identify the file, ending the search.

***RFAs 71–81 — the LlmPromptBuilders repository and the Employment Covenants Agreement § 1(b) exclusions. The repository's commit history is public and cryptographically fixed; the contract is EPAM's own filed exhibit.***

**RFA No. 71**

- **Source:** public repositories or publications identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Public provenance and chronology: the May 8, 2025 root commit and releases of LlmPromptBuilders under OHDSI and Apache 2.0.
- **Narrows:** Git metadata is public and cryptographically fixed; the request quotes the hashes. An admission authenticates the development chronology of the one repository EPAM's papers single out, with no forensic witness.

**RFA No. 72**

- **Source:** ECF No. 30-1
- **Issue:** Contract text: the § 1(b) exclusion of community and professional work from Confidential Information.
- **Narrows:** The clause is quoted from EPAM's own filed contract. An admission establishes the governing text for the central contract-interpretation issue and removes any custodian or authenticity dispute.

**RFA No. 73**

- **Source:** ECF No. 30-1
- **Issue:** Absence of a term: § 1(b) imposes no advance-permission requirement for community software work.

- **Narrows:** A document-comparison answer. An admission forecloses EPAM's no-permission theory as a textual matter and tees the interpretation up for summary judgment on an agreed text.

---

**RFA No. 74**

- **Source:** ECF No. 30-1; public repositories or publications identified in the request
- **Issue:** Formation knowledge: EPAM and Odysseus leadership knew of my open-source activity before I signed the ECA.
- **Narrows:** Knowledge at formation frames § 1(b)'s application and any acquiescence argument. An admission removes a Klebanov examination topic.

---

**RFA No. 75**

- **Source:** ECF No. 30-1; public repositories or publications identified in the request
- **Issue:** Application of the contract to fact: OHDSI software built without EPAM confidential information falls within § 1(b).
- **Narrows:** Rule 36(a)(1)(A) expressly reaches this. An admission resolves the category; a denial defines the interpretive dispute for briefing rather than testimony. Either answer shortens summary judgment.

---

**RFA No. 76**

- **Source:** ECF No. 30-1; public repositories or publications identified in the request
- **Issue:** The same application to the specific repository: LlmPromptBuilders is within § 1(b).
- **Narrows:** This moves RFA 75 from category to the accused repository itself. An answer either removes the repository from the case or isolates exactly why EPAM contends the carve-out fails.

---

**RFA No. 77**

- **Source:** public repositories or publications identified in the request
- **Issue:** Content fact: the repository contains no code copied or derived from EPAM internal repositories.
- **Narrows:** EPAM can compare a public repository against its own private code — an exercise entirely within its means. A denial must rest on identified code, which is the identification the DTSA demands anyway; an admission ends the derivation theory for this repository.

---

**RFA No. 78**

- **Source:** public repositories or publications identified in the request
- **Issue:** Content fact: the repository contains no client confidential data, including Takeda's.
- **Narrows:** The same structure as RFA 77 for client material. The repository is public; the comparison set is EPAM's own client data.

---

**RFA No. 79**

- **Source:** public repositories or publications identified in the request
- **Issue:** Identification-state fact: EPAM has identified no class, method, or line in the repository as its trade secret.
- **Narrows:** This fixes the as-of-today record for summary judgment. If EPAM has since made an identification, the answer will say so and discovery narrows to it.

---

**RFA No. 80**

- **Source:** public repositories or publications identified in the request
- **Issue:** Composition: the repository depends only on public libraries and public LLM APIs.
- **Narrows:** An admission forecloses any argument that the package embeds EPAM internals.

---

**RFA No. 81**

- **Source:** public repositories or publications identified in the request
- **Issue:** Descriptive foundation: what the repository is and does.
- **Narrows:** A foundation admission that lets later filings describe the repository without a characterization dispute. I rank it as supporting.

***RFAs 82–91 — the origin of the Takeda proof-of-concept and ownership of Takeda deliverables. These fix the development chronology and the contractual allocation of ownership, the two facts on which EPAM's claim to the accused AI work depends.***

---

**RFA No. 82**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Origin of the accused AI work: the first Takeda orexin POC was an advisory demonstration on public Gemini with public data.
- **Narrows:** An admission fixes what existed at the origin — no proprietary platform — and reframes everything later built on it. It substitutes for examining Mr. Yezhkov and Mr. Klebanov about demonstrations they attended.

---

**RFA No. 83**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Chronology: the POC predated any assignment of EPAM developers.
- **Narrows:** Sequencing matters to derivation and ownership: what I made before developers arrived cannot be their work. Project records answer it.

---

**RFA No. 84**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Negative development fact: no proprietary application, backend, or repository was built for the initial POC.
- **Narrows:** This confines the proprietary-development claim to later phases, if any, and is answerable from EPAM's project and repository records.

**RFA No. 85**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public inputs: the initial simulation ran on public scientific data and consumer LLM accounts.
- **Narrows:** This completes the origin picture; an admission removes the initial phase from any secrecy claim.

**RFA No. 86**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** The written client communication confirming the open-source methodology for the Takeda GenAI work.
- **Narrows:** This substantially overlaps RFA 50, and I expect one answer to serve both; it is retained because this sequence frames the Takeda engagement specifically.

**RFA No. 87**

- **Source:** public repositories or publications identified in the request
- **Issue:** Content fact: the repository holds generic prompt-engineering classes and no Takeda data.
- **Narrows:** This overlaps RFA 78 in part; the addition is the affirmative characterization of what the code is. A single qualified answer covering both is acceptable to me.

**RFA No. 88**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Contract ownership: under MSA CW2719230, Takeda owns the deliverables.
- **Narrows:** This is the ownership allocation at the heart of the trade-secret, conversion, and replevin claims. An admission removes any need to draw Takeda into ownership discovery and frames summary judgment on EPAM's right to claim the deliverables.

**RFA No. 89**

- **Source:** public repositories or publications identified in the request
- **Issue:** Chronology: the public root commit predates EPAM's internal Synapse architecture documentation.
- **Narrows:** An admission establishes independent, prior creation of the public work — a complete answer to derivation as to that code — from dated records both public and internal to EPAM.

**RFA No. 90**

- **Source:** public repositories or publications identified in the request
- **Issue:** Repository inactivity: final commit July 4, 2025; no commits in September–November 2025.

- **Narrows:** An admission detaches the repository from the termination-period narrative: nothing was published to it during the events at issue.

---

**RFA No. 91**

- **Source:** ECF No. 30-1
- **Issue:** Textual contrast: § 5(c)(1) contains an express written-consent requirement; § 1(b) contains none.
- **Narrows:** A drafting-contrast fact that guides interpretation — where the parties required consent, they said so. It is answerable by reading the filed contract and useful at summary judgment without extrinsic evidence.

***RFAs 92–96 — EPAM's own use and classification of OHDSI open-source packages, including in its filed architecture exhibits.***

---

**RFA No. 92**

- **Source:** public repositories or publications identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** EPAM's own use: its teams used the named OHDSI packages for Amgen client work.
- **Narrows:** An admission establishes that EPAM itself treated these packages as ordinary open-source tools in commercial work — inconsistent with secrecy claims over them — without deposing the team members involved.

---

**RFA No. 93**

- **Source:** public repositories or publications identified in the request
- **Issue:** The same use fact for kala and cohortalgebra in client pipelines.
- **Narrows:** Narrower and concrete; an admission forecloses re-characterizing those packages later.

---

**RFA No. 94**

- **Source:** public repositories or publications identified in the request
- **Issue:** Knowledge: leadership knew by May 2025 that I authored public OHDSI repositories.
- **Narrows:** Contemporaneous knowledge defeats surprise and supports acquiescence; it is provable from EPAM's own communications, and an admission spares that examination.

---

**RFA No. 95**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability of the eight named packages.
- **Narrows:** The admission fixes the public status of every package the later requests rely on — once — instead of through eight separate foundation disputes.

**RFA No. 96**

- **Source:** ECF No. 58-9; ECF No. 58-10; public repositories or publications identified in the request
- **Issue:** EPAM's own classification: its filed architecture exhibits list LlmPromptBuilders and OHDSI tools as external third-party dependencies.
- **Narrows:** EPAM's engineering documents, already on the docket, call the accused repository external. An admission aligns the case with EPAM's own records and can be answered by reading ECF Nos. 58-9 and 58-10.

***RFAs 97–109 — the § 1(b) carve-outs, my pre-existing expertise, and general industry knowledge. Several expressly apply contract language to identified categories; Rule 36(a)(1)(A) reaches that application, and the answers define the interpretive dispute for summary judgment.***

**RFA No. 97**

- **Source:** ECF No. 30-1
- **Issue:** Contract text: § 1(b) excludes prior-known and publicly available information.
- **Narrows:** Together with RFAs 72–73, this fixes the full text of the operative exclusions; a reading exercise on EPAM's own exhibit.

**RFA No. 98**

- **Source:** ECF No. 30-1
- **Issue:** Contract text: § 1(b) excludes general industry knowledge and skills.
- **Narrows:** The same as RFA 97, for the clause that carries the general-knowledge defense.

**RFA No. 99**

- **Source:** public repositories or publications identified in the request
- **Issue:** Prior possession: I lawfully held archives of public codebases and literature before employment.
- **Narrows:** I acknowledge EPAM may need to qualify its answer from the forensic inventory rather than personal knowledge; even a qualified admission distinguishes pre-employment material on my devices from EPAM material, narrowing the forensic-attribution dispute.

**RFA No. 100**

- **Source:** public repositories or publications identified in the request
- **Issue:** Prior relationship: my years of technical correspondence with Mr. Klebanov before hire.
- **Narrows:** This frames what expertise predated EPAM — the § 1(b) baseline — and shortens the planned Klebanov deposition.

**RFA No. 101**

- **Source:** ECF No. 30-1

- **Issue:** Formation representation: Mr. Klebanov's assurance that the covenants would not restrict independent scientific and open-source work.
- **Narrows:** This bears on § 1(b) interpretation and inducement. If admitted, a central formation fact is settled; if denied, the dispute is confined to one conversation with a witness I am already deposing.

---

**RFA No. 102**

- **Source:** public repositories or publications identified in the request
- **Issue:** Documented corporate support: the December 4, 2024 written authorization to assign EPAM personnel to OHDSI work.
- **Narrows:** A dated writing in EPAM's systems. An admission shows institutional endorsement of the OHDSI channel, inconsistent with later treating that channel as diversion.

---

**RFA No. 103**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Credentials foundation: licensure and board certifications.
- **Narrows:** An admission removes any need to prove qualifications at trial and supports the general-expertise and damages baselines. I rank it foundational and low-cost.

---

**RFA No. 104**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Prior career expertise at named employers.
- **Narrows:** The same function, from EPAM's own hiring file; it forecloses re-litigating where my domain knowledge came from.

---

**RFA No. 105**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Corporate-status foundation: EPAM is an IT consultancy, not a pharmaceutical company, provider, or insurer.
- **Narrows:** A one-line admission that frames the general-industry-knowledge analysis; effectively cost-free.

---

**RFA No. 106**

- **Source:** ECF No. 30-1
- **Issue:** Application of § 1(b) to a category: pharmaceutical-industry concepts as general industry knowledge.
- **Narrows:** Rule 36(a)(1)(A) reaches the application of contract language to fact. An admission removes the category from the Confidential Information dispute; a reasoned denial or qualification defines the interpretive question for summary-judgment briefing instead of witness time. I accept that qualification is a legitimate answer here.

**RFA No. 107**

- **Source:** ECF No. 30-1
- **Issue:** The same application for OMOP methods and cohort-definition logic.
- **Narrows:** As with RFA 106, either a concession or a crisply framed dispute results; both are progress compared with litigating the category through experts.

**RFA No. 108**

- **Source:** ECF No. 30-1
- **Issue:** The same application for foundational AI and LLM concepts.
- **Narrows:** This is the category most central to the accused AI tools. The answer determines whether EPAM claims proprietary rights in concepts the industry publishes, or concedes the fight is only about specific implementations.

**RFA No. 109**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Negative provenance: EPAM provided no proprietary algorithms or models not derived from public sources.
- **Narrows:** I acknowledge the breadth of this request; a partial admission with identified exceptions is a fully useful answer, because each exception performs the identification the DTSA requires.

***RFAs 110–119 — my designated Synapse role, internal circulation, external disclosure, and trade-secret governance. These test secrecy measures and independent economic value from records and events EPAM controls.***

**RFA No. 110**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Designated role: Product Owner and Lead Architect for Synapse.
- **Narrows:** EPAM's own designation makes me the authorized creator of the material later claimed against me. An admission fixes the role from personnel records and removes an executive-testimony topic.

**RFA No. 111**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Role scope: roadmap, architecture decks, and commercial positioning.
- **Narrows:** This completes RFA 110 and establishes that authoring and presenting the accused materials was the assignment itself.

**RFA No. 112**

- **Source:** EPAM system records identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Provisioned access: enterprise-wide read-write access to Synapse workspaces.

- **Narrows:** The access grant is recorded in EPAM's permission systems. An admission ends the unauthorized-access theory for the Synapse materials specifically.

---

**RFA No. 113**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Openness of development: continuous collaboration with six named executives.
- **Narrows:** One admission substitutes for six executive depositions I cannot fund; it establishes that the work proceeded in the open, inconsistent with improper means.

---

**RFA No. 114**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Internal secrecy practice: decks and workflows circulated on open channels without access restrictions.
- **Narrows:** This bears directly on reasonable measures for the very materials at issue;

---

**RFA No. 115**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** External secrecy practice: client presentations without bespoke NDAs beyond standard terms.
- **Narrows:** An admission fixes EPAM's disclosure posture toward prospects, narrowing the measures element; sales records answer it.

---

**RFA No. 116**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Trade-secret governance: no register or inventory named the three tools before termination.
- **Narrows:** An admission establishes that the claimed secrets were never identified as such in EPAM's own governance — probative on identification and measures — and replaces a Rule 30(b)(6) IP-governance deposition.

---

**RFA No. 117**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Named executive disclosures to AstraZeneca, Johnson & Johnson, and Roche without NDAs or markings.
- **Narrows:** Concrete instances of RFA 115's practice; an admission avoids examining Dr. Waller and Mr. Klebanov on their own presentations.

---

**RFA No. 118**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public disclosure by EPAM: the Prometheus architecture presented at a public symposium and published on YouTube.

- **Narrows:** An admission ends secrecy claims over what the presentation disclosed, with no subpoena to the symposium and no witness.

---

**RFA No. 119**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability: MedRAG is an open-source public toolkit.
- **Narrows:** Because EPAM's declarant defines the AI Accelerator as Synapse plus MedRAG, the public status of MedRAG halves that composite claim.

### SET 3 — development history, funding, and forensic records

***RFAs 120–127 — development history and funding of the accused tools, and the October 12, 2025 license commit EPAM cites as a termination reason. Lettered subparts trace single episodes step by step.***

---

**RFA No. 120**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Development history: the May 2025 demonstrations were consumer-Gemini prompt experiments presented to seek internal R&D funding.
- **Narrows:** The subparts walk one episode — the events, their nature, their purpose, their setting. Admissions fix the origin of the Accelerator effort as authorized, public-tool experimentation, sparing examination of Mr. Yezhkov and the other attendees.

---

**RFA No. 121**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Funding provenance: internal investment codes, corporate-overhead funding, and their exclusion from Odysseus revenue targets.
- **Narrows:** The answers matter twice: to ownership (what was EPAM-funded versus client-funded) and to Mr. Klebanov's financial motive in the CEPA chronology, otherwise provable only through a finance designee.

---

**RFA No. 122**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Commercialization record: the team, the pricing framework, and the revenue projection for the Accelerator.
- **Narrows:** An admission fixes EPAM's internal valuation posture — projections without realized sales — which disciplines any later damages theory, and establishes the collaborative, management-approved character of the commercialization work without deposing the people named.

---

**RFA No. 123**

- **Source:** iDS neutral-forensic records identified in the request

- **Issue:** Collaborative creation and custody of the Synapse architecture artifacts, and their absence from my inspected devices.
- **Narrows:** Subparts (a)–(c) fix authorship and custody from EPAM's systems; subpart (d) fixes a neutral-examiner result. Together they answer both ownership and possession for the architecture materials without examiner or developer testimony.

---

**RFA No. 124**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Authorized funding initiatives: the AWS sponsorship pitch and the Johnson & Johnson go-to-market proposal.
- **Narrows:** Approved, documented business initiatives negate any covert-diversion characterization of the same activity and set the damages context. EPAM's records and the named executives can answer.

---

**RFA No. 125**

- **Source:** public repositories or publications identified in the request
- **Issue:** Public availability of OMOP ETL concepts across workshops, academies, and repositories, and their functional implementability from public sources.
- **Narrows:** An admission establishes that the domain knowledge is public at the level the request states, narrowing any ETL secret to specific implementations if EPAM identifies them.

---

**RFA No. 126**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Fraudulent-inducement elements: the recruitment representations about autonomy, resources, and mandate, and the post-hire reality.
- **Narrows:** The subparts pair representation with outcome — the structure of the inducement counterclaim. Admissions would resolve the representation element without deposition; denials isolate which representation EPAM disputes, focusing the Klebanov examination.

---

**RFA No. 127**

- **Source:** ECF No. 3-6; EPAM system records identified in the request
- **Issue:** The October 12, 2025 license commit: GitLab's auto-populated header, EPAM's written acknowledgment that the attachment may not have been intentional, and its citation of the event as a termination reason.
- **Narrows:** This single episode carries much of the for-cause narrative. Admissions fix the mechanics (a template artifact), EPAM's own written concession, and the reliance on the event — after which the pretext question is briefed on an agreed record instead of through examiner and HR testimony.

***RFAs 128–135 — what EPAM's operative pleading does and does not assert. Schedule A rewrites most of these to ask the underlying fact or EPAM's present contention; either form defines the claims that actually require proof.***

---

**RFA No. 128**

- **Source:** ECF No. 30
- **Issue:** Claim definition: the aggregated defined term, the 44,960-file allegation under it, and the absence of an itemizing schedule. Schedule A rewrites these subparts to ask the underlying facts and contentions.
- **Narrows:** As corrected, the answers establish what EPAM actually asserts was taken, which controls the scope of every downstream element. The alternative — motion practice or a contention-style deposition — costs far more than reading the operative pleading against its own record.

---

**RFA No. 129**

- **Source:** ECF No. 30; ECF No. 30-1
- **Issue:** Pleaded authorization: EPAM's allegations of granted access and § 1(d)'s permission to use confidential information in authorized duties. Schedule A corrects subpart (a); subpart (b) asks what the filed contract says.
- **Narrows:** Admissions align the CFAA and fiduciary theories with EPAM's own pleading and contract, eliminating the access-authorization dispute at its source.

---

**RFA No. 130**

- **Source:** ECF No. 30
- **Issue:** Trade-secret identification: functional descriptions, and the absence of any allegation identifying a specific algorithm or structure. Schedule A corrects subparts (b) and (c).
- **Narrows:** The answers frame the identification question that precedes everything else in a trade-secret case. An admission narrows discovery to whatever EPAM later particularizes; a denial must point to the identifying allegation.

---

**RFA No. 131**

- **Source:** ECF No. 30
- **Issue:** Composition of the defined term: client contracts and compensation data swept into the trade-secret counts.
- **Narrows:** An admission concedes that the defined term includes categories that are not plausibly statutory trade secrets, trimming Counts I and II to a reviewable core.

---

**RFA No. 132**

- **Source:** ECF No. 30
- **Issue:** Use and disclosure: the pleading identifies no post-termination disclosure and no commercialization. Schedule A rewrites both subparts to present-contention form.

- **Narrows:** As corrected, admissions confine the misappropriation theory to acquisition and retention — a decisive narrowing for summary judgment and for the scope of remaining discovery.

---

**RFA No. 133**

- **Source:** ECF No. 30
- **Issue:** Ownership pleading: client-developed material, no differentiation of client property, and no pleaded assignment or license authority. Schedule A corrects three of the four subparts.
- **Narrows:** The answers fix whether EPAM has pleaded — or now asserts — a right to claim client deliverables as its own secrets, the standing question underlying the Takeda cluster.

---

**RFA No. 134**

- **Source:** ECF No. 30
- **Issue:** Derivative counts: Counts IV–VII incorporate the same facts and the same defined property. Schedule A corrects all three subparts.
- **Narrows:** Admissions establish that the tort counts stand or fall with the same property definition, so preemption and duplication can be briefed without separate discovery for each count.

---

**RFA No. 135**

- **Source:** ECF No. 30; ECF No. 3-13
- **Issue:** Contract damages and pre-suit notice: no named lost client, no pleaded quantum, and no pre-suit identification of specific files. Schedule A corrects (a) and (b); (c) asks about EPAM's own correspondence.
- **Narrows:** The answers fix the damages-and-notice posture of Count III from EPAM's own pleading and letters, informing both summary judgment and proportionality.

***RFAs 136–146 — the stipulated forensic protocol: what it required, what the neutral examiner found, and what EPAM designated. These confine examiner and expert testimony to actually disputed points.***

---

**RFA No. 136**

- **Source:** ECF No. 20; ECF No. 55; iDS neutral-forensic records identified in the request; public repositories or publications identified in the request; EPAM system records identified in the request
- **Issue:** Forensic-process history: surrender of the five devices under the Consent Order and completion of imaging and collections.
- **Narrows:** Admissions establish the neutral-process foundation both sides rely on, eliminating process testimony from iDS and any authentication dispute about the inspection's scope.

**RFA No. 137**

- **Source:** ECF No. 55; iDS neutral-forensic records identified in the request
- **Issue:** Protocol requirements, and the absence of any identified post-notice deletion by me.
- **Narrows:** This fixes what the protocol mandated and the current state of EPAM's deletion allegations, answerable from the protocol text and EPAM's own review. It confines the preservation dispute to specifics, if EPAM has any.

**RFA No. 138**

- **Source:** EPAM system records identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Preservation trigger: when EPAM reasonably anticipated litigation and what its own duty covered.
- **Narrows:** This applies a legal standard to dates in EPAM's control — a use Rule 36(a)(1)(A) permits. I acknowledge that EPAM may qualify its answer; even so, the response fixes EPAM's position on the trigger date, which governs both sides' Rule 37(e) arguments and would otherwise consume a Rule 30(b)(6) preservation deposition.

**RFA No. 139**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Forensic-methodology history: the April 2026 de-NISTing proposal, EPAM's declination, and search terms that included open-source and generic strings.
- **Narrows:** Admissions establish why the hit counts are inflated, from correspondence and the protocol exhibits, disciplining how the forensic numbers can be characterized at the hearing and afterward — without a methodology expert on each side.

**RFA No. 140**

- **Source:** EPAM system records identified in the request
- **Issue:** Control and production state: EPAM controls the server-side logs, produced spreadsheets, and has produced no raw version-control logs.
- **Narrows:** The answers fix what exists, who holds it, and what has been produced — converting a potential motion-to-compel fight into one targeted request or a clean summary-judgment record.

**RFA No. 141**

- **Source:** ECF No. 58-12 and 58-13
- **Issue:** Custody of forensic materials: unredacted extractions provided to a non-attorney developer abroad, over objection.
- **Narrows:** These are stated as record facts, not accusation: who received what, and when I objected. Admissions fix the handling record so any later dispute about protocol compliance is narrow and documentary.

---

**RFA No. 142**

- **Source:** ECF No. 3-4; EPAM system records identified in the request
- **Issue:** Foundation of EPAM's lead declaration: the declarant's credentials as disclosed, the log-row source of the 44,960 figure, and the absence of content examination before signing.
- **Narrows:** These are the cross-examination points that would otherwise require deposing EPAM's CISO. Admissions establish the basis and limits of the declaration EPAM filed to seek emergency relief; denials identify exactly what EPAM claims its declarant did.

---

**RFA No. 143**

- **Source:** ECF No. 43-3; ECF No. 55; ECF No. 54-6; iDS neutral-forensic records identified in the request
- **Issue:** Record statements and protocol duties: counsel's on-the-record statement, the five-day designation obligation, and the undesignated files.
- **Narrows:** Each subpart is fixed by a transcript, the protocol text, or the iDS reports. Admissions carry the designation history into summary judgment without witnesses.

---

**RFA No. 144**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Neutral-examiner results: the targeted search list and the zero hits on the workstation.
- **Narrows:** This is the possession element for the Cohort Generator and ETL Kit, answered by the examiner's own report. An admission makes the inspection result usable at summary judgment without testimony; no cheaper proof exists for either side.

---

**RFA No. 145**

- **Source:** iDS neutral-forensic records identified in the request; public repositories or publications identified in the request
- **Issue:** Forensic methodology: de-NISTing as standard practice, and hash-list entries matching empty files and Git templates.
- **Narrows:** Subpart (a) is a methodology opinion Rule 36(a)(1)(A) reaches, and I accept a qualified answer; subpart (b) is arithmetic on EPAM's own exhibit. Together they calibrate the weight of the hash-match evidence without competing experts.

---

**RFA No. 146**

- **Source:** ECF No. 55; iDS neutral-forensic records identified in the request
- **Issue:** Composition of the global review listings: keyword and filename matches predominate; exact-hash matches are a small fraction and include collisions.
- **Narrows:** Admissions prevent the raw hit totals from being presented as more than they are, narrowing the forensic dispute to any specific, substantive match EPAM identifies.

---

**RFA No. 147**

- **Source:** ECF No. 30-1

- **Issue:** Recruitment representations: the financial baseline, team, and infrastructure described to induce the ECA.
- **Narrows:** This is the representation element of inducement, fixed in one answer instead of examination; EPAM's recruitment communications and Mr. Klebanov can answer. Denials would identify which representation EPAM disputes, focusing the Klebanov deposition.

**SET 4 — whistleblower chronology, ownership, and third-party effects**

***RFAs 148–153 — CEPA background: managerial motive, the contemporaneous performance record, and the systems that record employee locations.***

---

**RFA No. 148**

- **Source:** ECF No. 33-2; ECF No. 43-7
- **Issue:** CEPA background: the prior Roche business loss over background IP and the in-house legal advice relayed in a filed chat.
- **Narrows:** Both sides filed the chat. Admissions fix the background against which the September 2025 ownership escalation occurred — EPAM already knew deliverable-IP problems could cost business — without deposing Ms. Barista.

---

**RFA No. 149**

- **Source:** ECF No. 43-7
- **Issue:** Genuineness and content of the filed September 23, 2025 chat, and the absence of any written correction to it.
- **Narrows:** A Rule 36(a)(1)(B) authentication plus content facts for an exhibit EPAM itself filed; admissions remove every foundation dispute for one of the central CEPA documents.

---

**RFA No. 150**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Managerial motive: the Odysseus acquisition, Mr. Klebanov's earn-out structure, and the 2025 revenue decline.
- **Narrows:** These are motive facts provable only from EPAM's finance and compensation records. Admissions establish the pressure on the decision-maker in the CEPA analysis; denials confine the dispute to identified figures a finance designee could otherwise spend a day on.

---

**RFA No. 151**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Inducement representations: P&L authority, a CMO trajectory, the growth mandate, and the undeployed data network.
- **Narrows:** The subparts pair each representation with its status at signing. Admissions would resolve falsity for identified statements; the answers otherwise require examining the recruiting executives.

**RFA No. 152**

- **Source:** EPAM system records identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Pretext record: the Star Magnet program and the clean contemporaneous performance file as of September 17, 2025.
- **Narrows:** EPAM's HR system either contains discipline or it does not. An admission establishes the performance record on which the shifting-explanations analysis rests and replaces an HR-designee deposition.

**RFA No. 153**

- **Source:** ECF No. 30-3; EPAM system records identified in the request
- **Issue:** Systems foundation for the location facts: the work-location system of record, managed VPN and posture tooling, and the policy provision on device location.
- **Narrows:** Admissions establish that EPAM's own systems recorded where people actually worked — the predicate making the Gilead location facts knowable to EPAM — so the later requests can be answered from records rather than recollection.

***RFAs 154–158 — the Gilead staffing concern and my escalation: the protected-activity, employer-knowledge, and timing elements of the CEPA counterclaim, answerable from EPAM's contracts, HR systems, telemetry, and named managers.***

**RFA No. 154**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** The regulated context: Gilead engagements, licensed patient-level data, and location restrictions in the governing instruments.
- **Narrows:** The objective-reasonableness element of CEPA turns on what the instruments required. EPAM holds the contracts; admissions fix the compliance framework without third-party discovery of Gilead.

**RFA No. 155**

- **Source:** EPAM system records identified in the request
- **Issue:** The core staffing facts: restricted-jurisdiction personnel on the Gilead account, and a location representation EPAM's own records could contradict.
- **Narrows:** These are the facts I reasonably believed unlawful when I objected. Admissions would spare much of the planned Gilead deposition and avoid Rule 45 practice; specific denials would confine the dispute to named individuals and dates, which EPAM's telemetry can settle either way.

**RFA No. 156**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Mechanism facts: directed bypassing of protocols, session sharing, and routing through foreign gateways.

- **Narrows:** Concrete, checkable practices recorded in EPAM's network infrastructure. Either answer disciplines the whistleblower narrative: admissions establish it; denials commit EPAM to positions its own network records can verify or refute in targeted production.

---

**RFA No. 157**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Protected activity and employer knowledge: the client's concern, my escalation to named managers, my refusal to participate, and the timing before the termination steps.
- **Narrows:** The prima facie CEPA chain in four steps, each documented in EPAM's systems. Admissions replace examinations of Mr. Klebanov and Ms. McDermott on the escalation; the timing subpart fixes the causation window.

---

**RFA No. 158**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Employer response: no documented investigation, no outside review, no report, and no interview in the six weeks before termination.
- **Narrows:** Causation and pretext evidence. An admission establishes institutional silence; a denial identifies the investigation, which then becomes a discrete discovery item.

***RFAs 159–164 — Takeda contract ownership and what EPAM's own personnel said about it in September 2025. These fix both the ownership defense to the trade-secret claims and the second protected disclosure in the CEPA chronology.***

---

**RFA No. 159**

- **Source:** ECF No. 33-1
- **Issue:** Contract ownership text: the Takeda MSA's work-for-hire and assignment provisions, as filed.
- **Narrows:** A genuineness-and-text request on an exhibit already of record. An admission makes the ownership clause usable at summary judgment without foundation testimony from either side.

---

**RFA No. 160**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Ownership allocation in practice: accused functionality developed under Takeda work orders and billed to Takeda codes.
- **Narrows:** Admissions connect the accused Cohort Generator and Prometheus work to client funding — the operative fact for who owns what the pleadings claim.

---

**RFA No. 161**

- **Source:** ECF No. 33-2
- **Issue:** Contemporaneous ownership statements: the ETL rewrite for Takeda and my September 20, 2025 email stating there was no pre-existing IP, received on EPAM systems.

- **Narrows:** Admissions fix that EPAM heard the ownership problem stated plainly, in writing, before termination — feeding both the ownership defense and the protected-disclosure chronology — without testimony.

---

**RFA No. 162**

- **Source:** ECF No. 3-6; ECF No. 58-2; ECF No. 58-28
- **Issue:** Identification instability: the takeda-synapse-infra namespace, the not-final-tradename statement, the Synapse-plus-MedRAG gloss, and the absence of any pre-termination product release.
- **Narrows:** Each subpart quotes or describes EPAM's own filings. Admissions pin down what the accused asset actually is — the question that must be answered before secrecy, value, or damages can be tried — and keep the definition from shifting between briefs.

---

**RFA No. 163**

- **Source:** ECF No. 33-2
- **Issue:** The second protected disclosure: written requests for legal review before any third-party demo, received on EPAM systems.
- **Narrows:** These are filed writings; admissions establish protected activity and employer knowledge for the Takeda-IP escalation without examining the recipients.

---

**RFA No. 164**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** In-house knowledge: Legal's relayed conclusions that the MSA gives Takeda everything, and the absence of any produced contrary advice.
- **Narrows:** The request fixes what was communicated to me — the basis of my belief, and EPAM's knowledge — not the correctness of legal advice. Admissions rest on the already-filed relay messages and avoid a privilege skirmish.

***RFAs 165–173 — the separation chronology, September 17 through November 4, 2025, and the explanation given at each step. The sequence frames causation and pretext; nearly every step is already memorialized in writing.***

---

**RFA No. 165**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Separation chronology, step one: the September 17 communication, its budgetary explanation, the transfer option, and the absence of any stated cause.
- **Narrows:** The first stated reason is the benchmark against which the later explanations are judged. Admissions fix it from Mr. Klebanov's own communication, narrowing the planned deposition to actually contested ground.

---

**RFA No. 166**

- **Source:** EPAM communications and calendar records identified in the request

- **Issue:** Step two: the Killian meetings, the redeployment discussion, and the positive performance characterization.
- **Narrows:** An admission removes any need to examine Mr. Killian at all — testimony I have no practical means to obtain otherwise.

---

**RFA No. 167**

- **Source:** ECF No. 33-7
- **Issue:** Step three: the HR meetings, the refusal to resign, and the September 30 memorializing email EPAM never disputed in writing.
- **Narrows:** The email is filed; receipt and non-response are EPAM-side facts. Admissions establish the sequence without HR testimony.

---

**RFA No. 168**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Step four: the September 26 PIP with a $2.5 million target, the missed-targets assertion, the absence of prior documented targets, and the unit's actual peak revenue.
- **Narrows:** The pretext arithmetic — a target several multiples of the unit's history, imposed after the fact — is answerable from EPAM's performance systems and finance records. Admissions replace an HR designee and a finance witness.

---

**RFA No. 169**

- **Source:** ECF No. 20
- **Issue:** Adverse action and inconsistent positions: involuntary termination, the unemployment-proceeding posture, and the consent-order concession.
- **Narrows:** Admissions align EPAM's litigation position with what it told the State of New Jersey and stipulated in ECF No. 20, foreclosing a for-cause recharacterization at trial without agency subpoenas.

---

**RFA No. 170**

- **Source:** ECF No. 30
- **Issue:** The shifting-explanations core: budget on September 17, performance on September 26, for-cause in the pleading, and conduct grounds never communicated before October 12.
- **Narrows:** This is the CEPA pretext case in one request. Admissions establish the sequence from EPAM's own communications; specific denials identify which step EPAM disputes, and only that step needs testimony.

---

**RFA No. 171**

- **Source:** ECF No. 3-7; ECF No. 33-5
- **Issue:** Exhibit provenance: the Teams exchange EPAM excerpted, the unredacted version I filed, and the undisclosed initiator.
- **Narrows:** These are completeness facts, stated neutrally. Admissions fix the full exchange as the operative record, avoiding witness time on who wrote what first.

---

**RFA No. 172**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** The October 2 written record: the E01–E04 emails, HR's written acknowledgment, and the later declarations.
- **Narrows:** admissions fix receipt and acknowledgment, framing the declarations against the contemporaneous record without depositions.

---

**RFA No. 173**

- **Source:** ECF No. 10
- **Issue:** Timing of suit versus investigation: the cease-and-desist letter, and the absence of any completed internal investigation by November 4. Schedule A withdraws subparts (b) and (c) as docket facts.
- **Narrows:** The remaining subparts fix the sequence — suit first, investigation not completed — which bears on retaliatory causation and on the weight of the emergency-relief narrative. EPAM's legal and compliance records answer them.

***RFAs 174–180 — identification and commingling of the accused assets, and post-termination conduct affecting my professional standing.***

---

**RFA No. 174**

- **Source:** ECF No. 58-2; ECF No. 33-1
- **Issue:** Commingling: accused tools stored in repositories alongside Takeda-funded code, and no EPAM-only repository.
- **Narrows:** Admissions establish that the accused assets cannot be separated from client property as stored — central to ownership and identification — without a developer deposition.

---

**RFA No. 175**

- **Source:** ECF No. 58-25
- **Issue:** No independent product: no standalone Synapse without Takeda deliverables, no independent budget line, and no sales outside the Takeda context.
- **Narrows:** Finance-record facts that carry ownership and damages consequences at once: what was never independently built or sold cannot anchor lost-sale damages. A finance designee is the only alternative source.

---

**RFA No. 176**

- **Source:** public repositories or publications identified in the request
- **Issue:** Rollup: public OMOP foundations, the ETL Kit's function, contemporaneous knowledge of the open-source work, and the absence of any instruction to stop.
- **Narrows:** This consolidates points made piecemeal earlier (RFAs 58–59, 64, 94, 102) into the Takeda timeline; I am prepared to prioritize among them, and a single set of admissions here could substitute for several of the earlier requests.

---

**RFA No. 177**

- **Source:** ECF No. 58-28
- **Issue:** Component identification: Synapse and MedRAG as distinct codebases and functions, and the composite download allegation that does not distinguish them.
- **Narrows:** Admissions resolve the composite AI Accelerator claim into components — one of which is public (RFA 119) — so secrecy, value, and damages are tried against a defined object. EPAM's declarant supplied the definitions; its engineering records supply the answers.

---

**RFA No. 178**

- **Source:** iDS neutral-forensic records identified in the request; EPAM system records identified in the request
- **Issue:** Compliance telemetry and the forensic chain: OPSWAT-compliant access, Entra-recorded sessions, surrender, examination, and the examiner's report.
- **Narrows:** Admissions assemble the attribution-and-inspection foundation in one place from EPAM's systems and the neutral record, eliminating several small foundation disputes at the hearing and at trial.

---

**RFA No. 179**

- **Source:** iDS neutral-forensic records identified in the request
- **Issue:** Billing-to-repository linkage: project codes, time allocation, and iDS-inventoried paths matching those codes.
- **Narrows:** This connects the accounting records to the artifacts — the documentary spine of the ownership defense. Without admissions it requires both a finance witness and examiner testimony.

---

**RFA No. 180**

- **Source:** public repositories or publications identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Post-termination conduct: withdrawal of OHDSI support, and later communications with Gilead personnel about me that referenced the suit or alleged misconduct.
- **Narrows:** These are the continuing-retaliation and interference facts. Admissions establish them from EPAM's communications records; specific denials narrow third-party discovery to named custodians instead of a subpoena program I cannot run.

***RFAs 181–186 — third-party effects, EPAM's damages record, and the litigation context relevant to Rule 26(c) balancing.***

---

**RFA No. 181**

- **Source:** ECF No. 33-9; ECF No. 58-28
- **Issue:** Interference timeline: CoReason's post-termination incorporation, the Johnson & Johnson negotiation, and J&J's client relationship with EPAM.

- **Narrows:** Dated, documentary facts fixing the competitive landscape for the interference and CEPA-damages theories; the sources are filed exhibits and EPAM's own records.

---

**RFA No. 182**

- **Source:** ECF No. 33-9
- **Issue:** Causation timing: the November 3 pause email after weeks of negotiation, the next-day filing, and the scope of EPAM's contentions about the paused work.
- **Narrows:** Admissions fix the sequence on which interference causation will be argued. The filing-date subpart is a docket fact, and I stand ready to establish it by stipulation; it is included only so the sequence can be answered in one place.

---

**RFA No. 183**

- **Source:** ECF No. 37; ECF No. 37-4; ECF No. 43-1; ECF No. 37-1; ECF No. 20
- **Issue:** Claim scope: the withdrawn noncompete count, the no-justiciable-controversy statement, § 5(c)'s voluntary-resignation trigger, and the absence of later enforcement efforts.
- **Narrows:** Admissions conform the case to EPAM's own stated abandonment of noncompete enforcement, removing a shadow issue from discovery, from mitigation disputes, and from trial.

---

**RFA No. 184**

- **Source:** ECF No. 43-1
- **Issue:** Damages reality: the segment revenues EPAM cited, and the absence of any identified lost client, sale, or revenue stream.
- **Narrows:** An admission establishes that no concrete loss has been identified against a half-billion-dollar segment — disciplining damages discovery and the proportionality analysis alike. EPAM's finance function can answer from its own records.

---

**RFA No. 185**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Disclosure state: no damages computation, no supplement, no damages expert, and no quantifying documents.
- **Narrows:** Rule 26(a)(1)(A)(iii) facts. Admissions fix the damages record entering expert discovery, so the expert phase — if any — starts from an agreed baseline.

---

**RFA No. 186**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Litigation-conduct record: the July 8 meet-and-confer notice, its receipt, and the unchanged demands.
- **Narrows:** I acknowledge that this request is the least merits-central in the set. It fixes conferral history relevant to Rule 26(c) balancing and the Court's management of the

discovery relationship, and I flag it as a candidate for prioritization if the Court limits the requests.

**SET 5 — preservation, forensic arithmetic, and damages**

***RFAs 187–197 — litigation holds and preservation of identified ESI in EPAM's control. These requests mirror the preservation obligations EPAM has pressed against me and would otherwise require a Rule 30(b)(6) preservation deposition.***

---

**RFA No. 187**

- **Source:** ECF No. 58-4; ECF No. 1 and 3
- **Issue:** Preservation: whether and when EPAM issued a litigation hold, measured at the three natural trigger dates.
- **Narrows:** Admissions replace a Rule 30(b)(6) preservation deposition and give both sides a fixed baseline for any Rule 37(e) argument — the same information EPAM demanded of me from the outset.

---

**RFA No. 188**

- **Source:** EPAM system records identified in the request
- **Issue:** Hold scope: transmission to the leadership, HR, legal, and account-team categories involved in the events at issue.
- **Narrows:** An admission establishes coverage of the relevant custodians; a denial identifies the gap. Either way, custodian-by-custodian discovery becomes unnecessary.

---

**RFA No. 189**

- **Source:** ECF No. 1 and 3
- **Issue:** Preservation mechanics: suspension of auto-deletion and preservation of local ESI for the identified categories.
- **Narrows:** Fixes whether the ordinary destruction cycles were actually stopped.

---

**RFA No. 190**

- **Source:** ECF No. 30-3; ECF No. 30; iDS neutral-forensic records identified in the request; EPAM system records identified in the request
- **Issue:** Preservation of the specific logs both merits clusters need: Entra sign-in records for my accounts, and the VPN and gateway telemetry recording personnel locations.
- **Narrows:** These logs are simultaneously the attribution evidence for EPAM's claims and the location evidence for the CEPA claim. An admission that they exist and are preserved makes them producible on request; any other answer surfaces a preservation issue now, while it can still be addressed.

---

**RFA No. 191**

- **Source:** EPAM system records identified in the request; EPAM communications and calendar records identified in the request

- **Issue:** Preservation of version-control audit logs and of my own mailbox and Teams archive as of termination.
- **Narrows:** The clone logs are the acquisition evidence; the mailbox is the protected-activity evidence. One admission secures both for orderly production.

---

**RFA No. 192**

- **Source:** ECF No. 3-6
- **Issue:** Preservation of the accused repositories with full commit histories in native form.
- **Narrows:** Commit histories date and attribute every line of the accused code — the best ownership and derivation evidence in the case. An admission fixes their integrity without a systems deposition.

---

**RFA No. 193**

- **Source:** ECF No. 33; EPAM system records identified in the request
- **Issue:** Preservation of staffing rosters, location records for the named individuals, and the associated network records.
- **Narrows:** The whistleblower facts are provable from these records if they exist. Admissions establish that, replacing a records-custodian examination and framing targeted production.

---

**RFA No. 194**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Preservation of the Serbia gateway records and the related IT communications.
- **Narrows:** This is the routing infrastructure at the center of the location allegations; only EPAM can say whether its records survive. The subparts confine the question to identified systems and years.

---

**RFA No. 195**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Preservation of the decision-makers' communications about me and my separation.
- **Narrows:** This is the termination-decision record. An admission secures the corpus from which pretext will be tested; a denial or qualification identifies now what no longer exists.

---

**RFA No. 196**

- **Source:** ECF No. 30; ECF No. 1; EPAM system records identified in the request
- **Issue:** Negative-event state: no identified deletion of communications about me or this litigation, and no reports of any.
- **Narrows:** Symmetrical to the representations EPAM has demanded of me. An admission establishes a clean record; anything else discloses an issue better known before the close of discovery.

---

**RFA No. 197**

- **Source:** ECF No. 33-2; ECF No. 43-7
- **Issue:** Preservation of client location-commitment instruments and of client complaints or audits about staffing locations.
- **Narrows:** These documents give the CEPA claim its objective footing. Admissions fix their existence and preservation, so production becomes a request rather than a fight, and no Gilead-side discovery is needed to locate them.

***RFAs 198–204 — arithmetic and record-state facts: row counts in EPAM's own produced export, statements in the hearing transcript, and what has and has not been identified after inspection.***

---

**RFA No. 198**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request; EPAM communications and calendar records identified in the request
- **Issue:** Arithmetic of EPAM's export: 54,900 rows, a fourteen-day window, and the split between sync and manual operations.
- **Narrows:** Every subpart is a count or date-range check in the spreadsheet EPAM produced. Admissions replace a summary witness and fix the quantitative frame: the entire download dataset spans two weeks and is dominated by automated sync events.

---

**RFA No. 199**

- **Source:** Forensic Protocol Exhibit B (Microsoft 365 audit export); EPAM system records identified in the request
- **Issue:** Attribution arithmetic: the user-agent composition of the same export.
- **Narrows:** An admission ends the characterization dispute over how many events a human initiated in a browser — fifty-three — versus background software.

---

**RFA No. 200**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Post-termination safeguards: the CoReason clean-room protocol EPAM received, its stated provisions, and the absence of any written critique of them.
- **Narrows:** This bears on the use element and on any forward-looking relief: EPAM has the document and has identified no inadequacy in it. Admissions fix that record; a denial identifies the critique, which can then be litigated concretely.

---

**RFA No. 201**

- **Source:** ECF No. 58-25; iDS neutral-forensic records identified in the request
- **Issue:** Inspection-state facts: months of Relativity access, and no identified CoReason file or line of code claimed as EPAM's.

- **Narrows:** After full neutral collection and access, the absence of identification is the record. Admissions carry it into summary judgment on use and threatened use; a denial supplies the identification the claims have so far lacked.

---

**RFA No. 202**

- **Source:** ECF No. 30
- **Issue:** Markings: no pre-termination document designated the three tools as trade secrets on their face.
- **Narrows:** Admissions bear on secrecy measures and on notice — what I could have understood to be claimed as secret while employed.

---

**RFA No. 203**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Value and performance context: EPAM's public GenAI marketing, the incoming CEO's recorded praise of my work, and preservation of the recording.
- **Narrows:** The praise weeks before termination is both pretext evidence and context for the claimed secrecy of the same work. Admissions authenticate the event and secure the recording without executive depositions.

---

**RFA No. 204**

- **Source:** ECF No. 58-6; iDS neutral-forensic records identified in the request; EPAM system records identified in the request
- **Issue:** Hearing-record state: the undisputed OneDrive statement at the preliminary-injunction hearing, and the absence of contrary evidence or of any disabled-telemetry showing.
- **Narrows:** Admissions prevent re-litigation of what happened at the November 5 hearing and confine any new theory to evidence EPAM actually offers.

***RFAs 205–211 — the remaining pretext, interference, inducement, and damages records.***

---

**RFA No. 205**

- **Source:** ECF No. 33; ECF No. 33-6; EPAM system records identified in the request
- **Issue:** Contemporaneous performance record: the 2025 HEROES award, the announced backfill, and the empty expectations field in EPAM's own system.
- **Narrows:** Admissions complete the pretext baseline alongside RFAs 152 and 168 and remove an HR-designee examination.

---

**RFA No. 206**

- **Source:** ECF No. 33-7; ECF No. 33
- **Issue:** The written PIP contradiction: the September 25 no-PIP confirmation and the September 26 PIP response.

- **Narrows:** Both writings are filed. Admissions fix the twenty-four-hour reversal that anchors the shifting-explanations analysis, without testimony.

---

**RFA No. 207**

- **Source:** ECF No. 33; ECF No. 33-6; EPAM system records identified in the request
- **Issue:** Performance-policy compliance: where expectations must be recorded, and the absence of recorded targets or a written PIP before the stated dates.
- **Narrows:** EPAM's own policy plus its own system state. Admissions establish that the asserted performance grounds have no contemporaneous documentation — the cleanest pretext evidence available — from a bounded records check.

---

**RFA No. 208**

- **Source:** EPAM communications and calendar records identified in the request
- **Issue:** Post-termination statements to Takeda: who spoke, what was conveyed, the absence of any retraction, and the absence of any identified statement by me to clients.
- **Narrows:** This is the interference and continuing-retaliation core. Admissions establish the communications from EPAM's own records and forgo Takeda subpoenas; specific denials reduce third-party discovery to named custodians and dates.

---

**RFA No. 209**

- **Source:** ECF No. 33-5; ECF No. 3-7; ECF No. 3; ECF No. 33-3; ECF No. 58
- **Issue:** Exhibit completeness: the full Teams thread versus the excerpt, and the omitted inbound messages.
- **Narrows:** Document-comparison facts fixing the operative version of a key exhibit under the completeness principle, so the hearing and trial proceed on the whole exchange without witness time.

---

**RFA No. 210**

- **Source:** ECF No. 33
- **Issue:** Inducement baseline and damages: the unit's pre-hire revenue, the Bayer delivery, and what I gave up to join.
- **Narrows:** Admissions fix the baseline for both falsity (what was represented versus what existed) and damages (what leaving Johnson & Johnson cost), sparing a finance witness and part of the Klebanov examination.

---

**RFA No. 211**

- **Source:** EPAM records or personnel identified in the request
- **Issue:** Damages computation state: no royalty model, no lost-profits ledger, no head-start or unjust-enrichment computation, and the public financial statements' silence.
- **Narrows:** Rule 26(a)(1)(A)(iii) and DTSA remedy facts. Admissions define what damages case, if any, remains for experts and summary judgment — the final proportionality datum: the burden of answering weighed against a monetary claim EPAM has yet to quantify.

**What this appendix permits the Court to do**

The Court can evaluate EPAM's request for protective relief the way Rule 26(b)(1) directs: request by request, comparing the burden of answering each proposition against the proof its answer displaces. The sections distinguish requests that authenticate or quote documents EPAM filed, requests answerable from EPAM's own systems and records, requests that substitute for depositions of named personnel, and requests that fix the state of the record on identification, preservation, and damages. A contention that a particular request is improper or unusually burdensome can be tested against the specific section rather than against the total.

My position remains that the requests should be answered as served. Schedule A is a proposal, not an amendment: the requests stand as served unless I serve a notice of correction. I stand ready to serve Schedule A's corrections and its withdrawal of RFA 173(b) and (c) without awaiting EPAM's agreement; only the withdrawal of Instruction No. 5 is conditioned on the mutual definition of reasonable inquiry offered there, or on the Court's direction. If the Court nonetheless concludes that some limitation is warranted, this appendix supplies a principled basis for selection rather than an arbitrary cap: the letter offers a prompt, prioritized designation that would preserve, first, the requests that substitute for depositions I cannot take and, second, the requests that ask EPAM to confirm the text, authenticity, or arithmetic of its own filed documents and produced records.