**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

EPAM SYSTEMS, INC. v. GOWTHAM RAO
Civil Action No. 2:25-cv-06260-WB

# EXHIBIT C

## EPAM's First Written Discovery Requests

*Requests for Admission, Interrogatories, and Requests for Production*
*Served August 10, 2026*

Names of three non-party individuals are redacted.
An unredacted copy will be provided to the Court on request.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff | ) | Civil Action No. 2:25-cv-06260 |

**EPAM'S FIRST SET OF REQUESTS FOR ADMISSIONS TO GOWTHAM RAO**

Pursuant to Rules 36 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant EPAM Systems, Inc., by and through its attorneys Seyfarth Shaw LLP, request that Defendant/Counter-Plaintiff Gowtham Rao make the following admissions, within thirty (30) days after the date of service of this request.

**INSTRUCTIONS**

1. This First Set of Requests for Admissions (the "RFAs") is addressed to Rao, his respective agents, representatives, or attorneys, if any, or any of them.

2. These RFAs use the same definitions and defined terms as set forth in EPAM's First Requests for Production of Documents ("RFPs") and First Set of Interrogatories, in addition to any supplemental definitions and defined terms set forth herein.

3. The full text of the RFA to which the answer is intended to respond is to be restated immediately preceding such answer.

4. Rao shall answer each of the RFAs based on his current knowledge. If Rao later realizes that any of his answers are incorrect, these RFAs are continuing, and Rao should serve supplemental answers with corrected information.

## REQUESTS FOR ADMISSIONS

**Request to Admit No. 1**:

Admit that you had conversations with [redacted] on September 18-19, 2025.

**Request to Admit No. 2**:

Admit that Exhibit A is a true and accurate copy of a memorandum prepared by a generative artificial intelligence program, summarizing conversations you had with [redacted] on September 18-19, 2025.

**Request to Admit No. 3**:

Admit that you had a conversation with [redacted] on September 21, 2025.

**Request to Admit No. 4**:

Admit that Exhibit B is a true and accurate copy of a memorandum prepared by a generative artificial intelligence program, summarizing a conversation you had with [redacted] on September 21, 2025.

**Request to Admit No. 5**:

Admit that you had a conversation with [redacted] on September 21, 2025.

**Request to Admit No. 6**:

Admit that Exhibit C is a true and accurate copy of a memorandum prepared by a generative artificial intelligence program, summarizing a conversation you had with [redacted] on September 21, 2025.

**<u>Request to Admit No. 7</u>**:

Admit that you had a conversation with Gaurav Dravida on September 18, 2025.

**<u>Request to Admit No. 8</u>**:

Admit that Exhibit D is a true and accurate copy of a memorandum prepared by a generative artificial intelligence program, summarizing a conversation you had with Gaurav Dravida on September 18, 2025.

**<u>Request to Admit No. 9</u>**:

Admit that Exhibit E is a true and accurate copy of a document that you generated, at least in part, by inputting, into a generative AI program, documents relating to EPAM's Synapse software.

**<u>Request to Admit No. 10</u>**:

Admit that Exhibit F is a true and accurate copy of a document that you generated, at least in part, by inputting, into a generative AI program, documents relating to EPAM's Synapse software.

**<u>Request to Admit No. 11</u>**:

Admit that the "Strategic Recipes" identified in Exhibit G originated with Recipes that were circulated within EPAM while you were still employed at EPAM.

**<u>Request to Admit No. 12</u>**:

Admit that you caused the domain name "coreason.ai" to be registered on or about September 18, 2025.

**<u>Request to Admit No. 13</u>**:

Admit that you conduced a "refresh" of your MSI Codex R2 Desktop Computer on or about November 14, 2025.

**Request to Admit No. 14**:

Admit that the “refresh” of your MSI Codex R2 Desktop Computer that you conducted on or about November 14, 2025 involved reinstalling the Windows operating system on the device.

**Request to Admit No. 15**:

Admit that you did not inform EPAM or its attorneys of the “refresh” until after it was discovered by iDS.

**Request to Admit No. 16**:

Admit that you did not disclose the “refresh” to iDS until after iDS discovered it.

**Request to Admit No. 17**:

Admit that, during and after your EPAM employment, you stored EPAM Confidential Information and Work (as defined by your Employment Covenants Agreement) on your MSI Codex R2 Desktop, as well as your personal Google Drive account.

**Request to Admit No. 18**:

Admit that, between the end of your EPAM employment and the court hearing on November 5, 2025, you deleted files from your MSI Codex R2 Desktop Computer.

Dated: August 10, 2026

EPAM SYSTEMS, INC.,

By: */s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (*pro hac vice* admitted)
jyu@seyfarth.com
Brooke Gary (admitted *pro hac vice*)
brgary@seyfarth.com
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, the foregoing was served upon the following pro se party via email, and a copy was also served via FedEx at the following:

GOWTHAM ADAMANE ROA
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao@gmail.com

*/s/ Jacob Oslick*
Jacob Oslick

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff/Counterclaim-Defendant | ) | Civil Action No. 2:25-cv-06260 |
| v. | ) | |
| GOWTHAM RAO, Defendant/Counterclaim-Plaintiff | ) | |

## EPAM'S FIRST SET OF INTERROGATORIES TO GOWTHAM RAO

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant EPAM Systems, Inc., by and through its attorneys Seyfarth Shaw LLP, request that Defendant/Counter-Plaintiff Gowtham Rao answer the following interrogatories separately and fully, in writing and under oath, within thirty (30) days after the date of service of these interrogatories.

## DEFINITIONS AND INSTRUCTIONS

In addition to the rules set forth in Rule 33(a) of the Federal Rules of Civil Procedure, which are hereby incorporated by reference, the following definitions and instructions apply to these interrogatories:

1. This First Set of Interrogatories ("Interrogatories") is addressed to Rao, his respective agents, representatives, or attorneys, if any, or any of them. If the requested information is known to Rao to exist, but is not presently in the possession, custody or control of Rao, his agents, representatives, attorneys, or any of them, Rao should confirm this fact and identify any

person or entity that he believes possesses such information, and supplement his responses when such information comes into his or their possession, custody, or control.

2. These Interrogatories use the same definitions and defined terms as set forth in EPAM's First Requests for Production of Documents ("RFPs"), in addition to any supplemental definitions and defined terms set forth herein.

3. "Identify" (with respect to persons) means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in response to one Interrogatory, only the name of that person need be listed in response to subsequent Interrogatories or other discovery requests.

4. Where the identification of an oral Communication is requested, the following information should be provided: (i) the substance of such Communication; (ii) the persons or entities who participated in such Communication; (iii) the date and place of such Communication; and (iv) the mode of such Communication (e.g., by telephone, videoconference, or face-to-face).

5. The full text of the Interrogatory to which the answer is intended to respond is to be restated immediately preceding such answer.

6. These Interrogatories are deemed to be continuing, requiring Rao to provide verified supplemental answers setting forth any additional information within the scope of these Interrogatories as may be acquired by Rao and Rao's agents and attorneys after service of Rao's initial responses. Such supplemental responses shall be served upon the undersigned counsel for EPAM promptly after receipt of such information.

7. To the extent that you believe that any of the Interrogatories herein call for any information that is subject to a privilege or immunity from disclosure, answer so much of each

Interrogatory and each part thereof that does not call for such information and set forth the basis for your claim of privilege or immunity with respect to the information that you refuse to give.

8. With respect to any document or other Communication required to be identified that you presently contend you are not required to disclose because of any privilege or immunity, state the nature of the privilege or immunity asserted (*e.g.*, attorney-client or work-product).

9. Unless otherwise instructed, Rao shall produce information concerning the time period from the beginning of Rao's employment with EPAM, through the date of Rao's responses (the "Relevant Time Period"), but with these Interrogatories being continuing, with supplementation required if new information becomes available that is responsive to any Interrogatory for the duration of the lawsuit captioned above.

## INTERROGATORIES

**Interrogatory No. 1:**

Identify each and every individual who has knowledge of any facts concerning any allegation, claim, counterclaim or defense asserted by any Party in this litigation and, for each such individual, identify the subjects about which they have knowledge.

**Interrogatory No. 2:**

Identify any and all individuals, other than your attorney(s), with whom you have discussed or communicated regarding any allegation, claim, counterclaim, or defense asserted by any Party in this litigation, including, without limitation, any person with whom you have corresponded about this matter via email, text message, instant message, chat message, social media, or by other electronic means and, for each such individual, identify the subjects relating to this matter that you discussed or communicated with them about. This request includes family members, current or former co-workers, friends, religious counselors, industry group colleagues,

employees and other relations of CoReason, potential or actual investors in Rao's Companies, and any other individuals besides your attorneys.

**Interrogatory No. 3:**

Identify all individuals who have provided you or your counsel with a written statement (including both informal statements, such as responses to emails or text messages, and formal statements such as declarations or affidavits) concerning any allegation, claim, or defense asserted by any Party in this litigation.

**Interrogatory No. 4:**

Identify each and every individual you expect to call at trial as a fact witness, expert witness, or treating medical practitioner, and, for each such individual, set forth the subjects they will testify about.

**Interrogatory No. 5:**

Identify all documents that you know exist and that are responsive to the RFPs, or are otherwise relevant to any allegation, claim, counterclaim, or defense asserted by any Party in this litigation, but are not within your possession, custody, and control and, for each document, identify any person or entity whom you believe may have possession, custody, or control of such documents.

**Interrogatory No. 6:**

Identify the location(s) of all electronically stored information that concerns any allegation, claim, counterclaim or defense asserted by any Party in this litigation, including but not limited to computers, hard drives, external storage devices (such as USB devices, CDs, or DVDs), smart phones, tablets, mobile devices, network storage locations, cloud storage platforms, source code repositories, AI Platforms, etc.

**Interrogatory No. 7:**

Identify all Communications you have had with non-parties concerning the development of CoReason, including but not limited to Communications concerning whether to form CoReason (or a company similar in purpose or offerings as compared to CoReason), Communications concerning identifying and securing investors for CoReason or otherwise raising funding for CoReason, Communications concerning developing software, processes, workflows, or technology for CoReason, Communications concerning locating potential clients/customers for CoReason, and/or Communications concerning recruiting or retaining employees, independent contractors, consultants, or other service providers for CoReason.

**Interrogatory No. 8:**

Identify all Communications you have had with non-parties concerning the potential or actual sale, license, or other use of any software, processes, workflows, or technology, or other services by CoReason.

**Interrogatory No. 9:**

Identify all investments in CoReason, including by identifying the investor and the amount of the investment.

**Interrogatory No. 10:**

Identify all non-parties who have requested a "demo" through CoReason's website.

**Interrogatory No. 11:**

Identify any current or former employee, consultant, independent contractor, or service provider of EPAM who is now (or previously was) an employee, consultant, independent contractor, or service provider of CoReason and, for each such individual, set forth their position at CoReason.

**Interrogatory No. 12:**

Identify all personal email addresses and social and business networking accounts (*e.g.* LinkedIn, Snapchat, Facebook, X (formerly Twitter), Instagram, etc.), cloud-storage platform accounts, source code platform accounts, and AI Platform accounts you have created, maintained, or used during the Relevant Time Period.

**Interrogatory No. 13:**

Identify all CoReason email addresses, and social and business networking accounts (*e.g.* LinkedIn, Snapchat, Facebook, X (formerly Twitter), Instagram, etc.), cloud-storage platform accounts, source code platform accounts, and AI Platform accounts you have created, maintained, used, or are aware of during the Relevant Time Period.

**Interrogatory No. 14:**

If you contend that you experienced any physical or mental health condition (or an exacerbation of such a condition) that is relevant to this litigation (such as emotional distress or depression), identify each and every facility or person that you haves consulted with or been treated by in connection with such conditions, including but not limited to, physicians, doctors, chiropractors, psychologists, psychiatrists, therapists, social workers, counselors, clergy, religious lay leaders, twelve-step program sponsors, and purported practitioners of the paranormal (such as purported psychics) and, for each such facility or person, identify the condition(s) that this facility or person consulted on or treated.

**Interrogatory No. 15:**

Provide a detailed computation of all damages or other relief you believe you are entitled to recover through this lawsuit, and for each of the alleged items, identify the documents or other evidence supporting your computation.

**<u>Interrogatory No. 16:</u>**

Provide the case name, parties, and case number of all other legal actions (including, but not limited to, proceedings before a bankruptcy, civil, or criminal court, an arbitrator, civil service or an administrative agency) to which you have been a party or in which you have testified as a witness, and describe the nature of the action.

Dated: August 10, 2026

EPAM SYSTEMS, INC.,

By: */s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (*pro hac vice* admitted)
jyu@seyfarth.com
Brooke Gary (admitted *pro hac vice*)
brgary@seyfarth.com
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, the foregoing was served upon the following pro se party via email, and a copy was also served via FedEx at the following:

GOWTHAM ADAMANE ROA
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao@gmail.com

*/s/ Jacob Oslick*
Jacob Oslick



327016925v.4

**IUNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC., Plaintiff/Counterclaim-Defendant v. GOWTHAM RAO, Defendant/Counterclaim-Plaintiff | ) | Civil Action No. 2:25-cv-06260 |

**EPAM'S FIRST REQUEST FOR THE PRODUCTION**
**OF DOCUMENTS TO GOWTHAM RAO**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant EPAM Systems, Inc., by and through its attorneys Seyfarth Shaw LLP, request that Defendant/Counter-Plaintiff Gowtham Rao produce the following documents at the offices of Seyfarth Shaw LLP, 620 Eighth Avenue, New York, New York 10018, within thirty (30) days after the date of service of this request.

## INSTRUCTIONS

1. This First Requests for Production of Documents (the "Requests") is addressed to Rao, his respective agents, representatives, or attorneys, if any, or any of them. If Rao knows that the requested documents exist, but the documents are not presently in the possession, custody or control of Rao, his agents, representatives, attorneys, or any of them, Rao should produce such documents when they do come into his or their possession, custody, or control.

2. If any document falling within the description contained in any of the following Requests is withheld under a claim of privilege, Rao shall serve upon the undersigned attorneys for EPAM a written list of the withheld documents, including the following information as to each

such item: (a) its date; (b) the name(s) of the person(s) or other entity(ies) who or which drafted, authorized, or prepared it; (c) its title; (d) the type of document (e.g., letter, memorandum, notes of meetings, conversations); (e) the name(s) of each person(s) or other entity(ies) to whom it was addressed; (f) the name(s) of each person(s) or other entity(ies) to whom the item or any copy or reproduction thereof was ever directed, addressed, sent, delivered, mailed, given, or in any other manner disclosed; (g) the subject matter of the document; and (h) a statement of the ground or grounds on which each such document is considered to be privileged from production. All responsive documents that are neither privileged nor otherwise protected from disclosure must be produced, notwithstanding the fact that the Request(s) to which they are responsive may also call for documents that are privileged or otherwise protected from disclosure.

3. In the event that any document called for by these Requests has been destroyed, lost, discarded or otherwise disposed of, any such document is to be identified as completely as possible including, without limitation, the following information: date of disposal, manner of disposal, reason for disposal, person authorizing or directing the disposal and person disposing of the document.

4. Any document responsive to any Request should be identified as being responsive to the specific request involved. If the same document is responsive to more than one Request, all Requests to which it is responsive should be identified.

5. Consistent with the Federal Rules of Civil Procedure, these Requests shall be continuing so as to require Rao to supplement his responses when and if he obtains any further documentation subsequent to the service of his response to these Requests.

6. Documents produced in response to these Requests shall be produced as they are kept in the usual course of business or shall be organized and labeled to indicate the specific

paragraph or paragraphs to which they respond. If multiple copies of a document were prepared or if additional copies were made after the original document was prepared, and if any such copies were not or are no longer identical by reason of subsequent notation or modification of any kind, including notations on the front or back of the document, such non-identical copies must be produced.

7. Unless otherwise agreed to by the parties, all responsive electronically stored information ("ESI") is to be produced in single-page TIFF format (300 DPI resolution), except that Excel spreadsheets (.xls, .xlsx), Comma delimited text files (.csv), and media files (e.g., video and audio files) should be produced in native format. Each file will be produced along with corresponding document-level extracted text and a Concordance-delimited DAT file containing the following metadata fields: BEGBATES ("The beginning bates number for the document."); ENDBATES ("The ending bates number for the document."); BEGATTACH ("BEGBATES of the "first" child of a family."); ENDATTACH ("ENDBATES of the last "child" of a family."); CUSTODIAN ("The name of any custodians of the file or email."); FROM ("Contains text from the FROM field of an email."); TO ("Contains text from the TO field of an email, separated by semi-colons."); CC ("Contains text from the CC field of an email, separated by semi-colons."); BCC ("Contains text from the BCC field of an email, separated by semi-colons."); SUBJECT ("Contains text from the SUBJECT of an email"); DATETIME_SENT ("Date and time an email was sent."); FILENAME ("The name of a file."); FILEEXT ("The file extension of a document."); MD5 HASH ("The MD5 hash for the original native file"); DATETIME_CREATED ("Date and time a document was created."); DATETIME_MODIFIED ("Date and time a document was last modified"); FILEPATH ("Path where the original document was collected. "); NATIVELINK ("Path to the native file as included in the production for any files produced in native format.");

TEXTPATH ("Extracted text of the document. All documents in a family should be in sequential order with the parent document containing the lowest bates label of the family. To the extent that a document contains visible revision or "tracked changes" information, those tracked changes are to be included in the TIFF production images. All ESI so produced shall be produced on a generally and mutually accepted encrypted electronic medium or secure file transfer site.

8. Unless otherwise instructed, Rao shall produce information concerning the time period from the beginning of his employment with EPAM, through the date of his responses (the "Relevant Time Period"), but with these Requests being continuing, with supplementation required if new information becomes available at any time during the course of the above-captioned litigation.

**DEFINITIONS**

1. In construing these Requests: (i) the singular shall include the plural and the plural shall include the singular; (ii) the masculine, feminine, or neutral pronouns, respectively, shall include the other genders; (iii) "and" as well as "or" shall be construed either disjunctively or conjunctively so as to bring within the scope of these Requests all documents that might otherwise be construed to be outside their scope; and (iv) the present tense of a verb shall include its past tense and vice versa.

2. The word "all" shall be construed to include the word "any" and the word "any" shall be construed to include the word "all."

3. "AI Platform" means any software, application, platform, program, service, tool, system, model, algorithm, product, feature, functionality, website, cloud-based service, application programming interface ("API"), chatbot, virtual assistant, large language model, machine learning system, generative artificial intelligence system, predictive analytics system, automated decision-

making system, or other technology that utilizes artificial intelligence, machine learning, deep learning, neural networks, natural language processing, computer vision, statistical modeling, algorithmic processing, or any similar or successor technology to generate, create, analyze, summarize, classify, predict, recommend, transform, modify, interpret, translate, retrieve, synthesize, automate, or otherwise produce any output, content, communication, data, decision, recommendation, response, image, audio, video, code, document, text, or other information based on inputs provided by a user or obtained from any other source. Inexhaustive examples of AI Platforms include, but are not limited to, ChatGPT (including OpenAI products and services), Microsoft Copilot, DeepSeek, GitHub Copilot, Claude, Google Gemini, Grok, Harvey, Meta AI, Perplexity, Otter AI, as well as any non-commercial and/or personal or local generative AI platforms or models.

4. "Use" of an AI Platform means accessing, consulting, querying, prompting, interacting with, training, fine-tuning, testing, evaluating, deploying, integrating, relying upon, receiving output from, uploading information to, inputting information into, processing information through, or otherwise employing an AI Platform for any purpose.

5. “EPAM” shall refer to EPAM Systems, Inc., including its affiliates, subsidiaries, parents, predecessors, successors, officers, directors, employees, representatives, agents, and attorneys, or other persons or entities acting on its behalf.

6. “Rao,” “You,” and “Your” shall mean and refer to Defendant/Counter-Plaintiff Gowtham Rao, to whom these document requests are directed, and all employees, representatives, successors, agents, investigators, attorneys, or other persons or entities acting on his behalf.

7. “CoReason” means CoReason Inc., along with any other entity that offers products or services through the CoReason.ai domain name or does business using the name CoReason,

together with all of its or their employees, representatives, successors, agents, investigators, attorneys, or other persons or entities acting on its or their behalf.

8. The "Complaint" shall refer to the Complaint filed by EPAM in this action. The "Amended Complaint" shall refer to the Amended Complaint filed by EPAM in this action

9. "Person" includes natural persons, proprietorships, corporations, partnerships, limited liability companies, trusts, joint ventures, groups, associations, organizations, governments (including all instrumentalities, officers, agents, and subdivisions thereof), and all other business, legal, or artificial entities.

10. "Concerning" means or relating to, referring to, describing, evidencing, constituting, supporting, reflecting, mentioning, resulting from, impeaching, undermining, refuting, or in any way pertaining to, in whole or in part.

11. "Document" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or other graphic material, or ESI (as defined below) in the custody, possession, or control of Rao wherever held, or in the possession, control, or custody of any of Rao's employees, attorneys, accountants, or other representatives, of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to text messages, accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, communications, computer data, computer disks, contracts, correspondence, date books, diaries, diskettes, drawings, ESI (as defined below), email messages, faxes, guidelines, instructions, Communications (as defined below), invoices, ledgers, licenses, letters, logs, manuals, memoranda, microfilm, minutes, notes, opinions, payments, plans, receipts, records, regulations, reports, sound recordings, statements, studies,

surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval in fixed form.

12. "Communication" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure, and for avoidance of doubt includes, but is not limited to, any utterance, notation, depiction, or statement intended to convey information in any form and of any sort whatsoever (in the form of facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium including, but not limited to, ESI (as defined below), in the possession, custody, or control of you wherever held, or in the possession, control, or custody of any of your employees, attorneys, accountants, or other representatives, of any kind and nature. The term "Communication" further includes all documents that concern any Communication, such as transcripts, summaries, or memoranda based upon Communications.

13. "EPAM Source" means any physical device or electronic account where EPAM stored or stores "ESI" (as defined herein), including but not limited to computers, hard drives, external storage devices (such as USB devices, CDs, or DVDs), smart phones, tablets, mobile devices, network storage locations, cloud storage platforms (such as OneDrive), source code repositories (such as GitHub), or AI Platforms.

14. "Rao Source" means any physical device or electronic account where you stored or store "ESI" (as defined herein), irrespective of whether the ESI is stored on your own behalf, or on behalf of a company where you are or were engaged in any capacity or have or had an equity interest, including but not limited to computers, hard drives, external storage devices (such as USB devices, CDs, or DVDs), smart phones, tablets, mobile devices, network storage locations, cloud storage platforms (such as OneDrive), source code repositories (such as GitHub), or AI Platforms.

15. “ESI” shall mean information created, manipulated, communicated, stored, or utilized in digital form. ESI includes, without limitation, data stored on or in computer servers, computer hard drives, computer desktops, laptops, handheld or tablet computers, portable digital media, backup media, CD-ROMs, DVD-ROMs, floppy disks, non-volatile memory including flash memory devices, external hard drives, personal digital assistants (such as Palm, iPhone, or Blackberry devices), cell phones, electronic voicemail systems, text messages, instant messages, e-mails and attachments to e-mails, or any device or medium capable of storing data in any format. All ESI produced shall include sufficient metadata fields to identify, at minimum, its author, recipient, date and time of creation and modification, and where the document was located.

16. “Party” means either EPAM or Rao. If additional defendants (such as potentially CoReason) are later joined in this action, they will also be included within the definition of “Party.”

**<u>DOCUMENTS REQUESTED</u>**

1. All documents you downloaded from any EPAM Source to any Rao Source.

2. All documents concerning your contention that EPAM authorized or permitted you to download documents from an EPAM Source to a Rao Source.

3. All documents that EPAM identified through search terms in accordance with the Stipulated Forensic Inspection Protocol Agreement, including but not limited to: (a) all documents made available to EPAM through the iDS document review platform; (b) all documents that you withheld from EPAM’s review; and (c) all documents that EPAM identified through search terms but, during the process associated with the Stipulated Forensic Inspection Protocol Agreement, did not seek to promote for review.

4. All documents concerning EPAM or CoReason stored on Rao Sources not previously identified or produced for inspection in accordance with the Stipulated Forensic Inspection Protocol Agreement.

5. All documents concerning your contention that the information you downloaded or transmitted from an EPAM Source to a Rao Source was not intentionally downloaded, such as documents that concern your contention that the documents were downloaded due to background synchronization of routine data, system artifacts, and open-source libraries.

6. All documents concerning your employment with EPAM, work you performed for EPAM, or actions that you took in the course of your EPAM duties.

7. All documents concerning your Use of an AI Platform (for the sake of clarity, note that here and in all requests hereinafter this shall include without limitation prompts, questions, inputs, outputs, summaries, and other data *regardless of subject matter* that you exchanged with, transferred, inputted, or otherwise supplied to an AI Platform, and all data, documents, and information received from the AI Platform) where your Use of the AI Platform was paid for or reimbursed by EPAM.

8. All documents concerning your Use of an AI Platform that relate to: (a) Real World Evidence, or to the life sciences; (b) any product or service offered by EPAM; (c) any document, data or materials which you either downloaded or received from EPAM, or developed, generated, modified, or contributed to while employed at EPAM; (d) any product or service you discussed in conversations with [redacted], Guarav Dravida, [redacted], or [redacted]; (e) any potential or existing product or service offered by CoReason.

9. All audio or video recordings, transcripts, or other documents, data, or materials which were used to generate the documents attached hereto as Exhibits A-G, or which otherwise relate to the documents attached hereto as Exhibits A-G.

10. All Communications with non-parties concerning: (a) your EPAM employment; (b) the possibility that your EPAM employment will end (voluntarily or involuntarily); (c) the end of your EPAM employment; (d) your contractual obligations to EPAM and/or potential ways to avoid those contractual obligations; (e) the possibility or actuality of starting a business competitive with EPAM; (f) whether you are a “free agent” and/or an EPAM competitor; (g) the development, preview, or demo of any software, technology, or business that may be competitive with EPAM; (h) hiring employees, contractors, or advisors or otherwise retaining persons to perform services for a business that is competitive with EPAM; and (i) any activity that is competitive with EPAM.

11. All documents concerning “Work,” as defined in your Employment Covenants Agreement, which you made, collected, developed, conceived, discovered, learned, or used during your EPAM employment – irrespective of whether you believe EPAM has any property interest in such “Work,” and/or whether you believe that such Work is open-source.

12. All documents concerning any actions you took in copying, printing, sharing, disseminating, uploading, transmitting, altering, or otherwise using any “Confidential Information,” as defined in your Employment Covenants Agreement, for any purpose other than as part of your former duties as an EPAM employee.

13. All documents concerning whether any software, program, source code, or other technology developed by you, any other EPAM employees, and/or with EPAM resources should be designated as open-source.

14. All documents concerning whether any workflows, methodologies, or processes developed by you, any other EPAM employees, and/or with EPAM resources should be designated as publicly available.

15. All documents concerning any "Agentic AI" technology or other software that you discussed with [redacted]. This request includes, but is not limited to: (a) the source code, including any drafts thereof, for each version of the technology/software; (b) all documents regarding its development; (c) all documents regarding discussions with programmers or developers (including offshore developers) regarding its development; (d) all documents concerning raising funds for such development; (e) all documents regarding clients, potential clients, or seed clients and information sharing with such individuals.

16. All documents concerning any AI technology, other technology, or other software that has been developed, marketed, or commercialized by CoReason Inc. and/or Scientific Informatics, LLC (collectively, "Rao's Companies"). This request includes, but is not limited to: (a) the source code, including any drafts thereof, for each version of the technology/software; (b) all documents regarding its development; (c) all documents regarding discussions with programmers or developers (including offshore developers) regarding its development; (d) all documents concerning raising funds for such development; (e) all documents regarding clients, potential clients, or seed clients.

17. All documents concerning [redacted]'s direct or indirect role in any company in which you hold an equity interest, including but not limited to whether Dravida's role or investment was structured in such a way so as to hide Dravida's involvement.

18. All documents evidencing your ownership or interest in each of Rao's Companies.

19. All documents concerning Communications with investors, funders, or other backers of Rao's Companies, or any other company where you hold or held an equity interest, during or after your EPAM employment.

20. All documents concerning Communications for the purpose of securing services (such as coding) in connection with developing technology/software for Rao's Companies, or any other company in which you hold an equity interest.

21. All documents concerning Communications, on or after June 1, 2025, with: (a) [redacted]; (b) Guarav Dravida; (c) [redacted]; (d) [redacted]; (e) Troy Sarich; (f) Trilok Parkeh; (g) Amit Parikh; (h) Asha Mahesh; (i) David Youmans; (j) Ammar Shallal; (k) Johnson & Johnson; (l) Boehringer Ingelheim; or (m) Takeda Pharmaceuticals.

22. All documents concerning Communications with persons who are or were EPAM employees, including but not limited to all Communications with Sudeep Ghate and/or Dhanush Ghate, regarding the possibility that such employees would leave their EPAM employment, begin employment with a business that is competitive with EPAM, or otherwise perform services for a business that is competitive with EPAM.

23. All documents concerning any refactoring (or other editing/revisions) of Synapse code, or representations that you were refactoring Synapse code (or otherwise editing/revising Synapse code).

24. All documents concerning any statement by you that you were a "free agent" and/or a competitor with EPAM.

25. All documents, including Communications, concerning the actual or potential investment of anyone in Rao's Companies, or any other company in which you hold an equity interest.

26. All documents, if not otherwise covered by other requests, concerning the formation and development of the company now called CoReason, including all documents and Communications relating to any technology or software that it is marketing, and all documents and Communications regarding its incorporation as a legal entity or legal entities (including but not limited to all drafts of incorporation-related documents, and all Communications regarding its incorporation).

27. All documents concerning the registration of the CoReason.ai domain name.

28. Your calendar, daily planner, smartphone calendar, outlook calendar, schedule, agendas, itineraries, and any other documents concerning your day-to-day business activities from March 1, 2025 to the present.

29. To the extent you claim that your termination of employment from EPAM was unlawful, all documents concerning such claim.

30. All telephone logs that you have used reflecting communications sent or received from July 1, 2025 to present, including text messages and calls.

31. All documents concerning Communications, including emails, text or chat messages, audio recordings, video recordings, or communications over social media, as well as documents reflecting the Use of an AI Platform, that you sent or received concerning any allegation, claim, or defense asserted by any Party in this action. This request includes written communications with family members, current or former EPAM employees, current or former employees of EPAM clients, potential investors in Rao's Companies, employees or other persons affiliated with Rao's Companies, and/or any individual besides your attorneys.

32. Any witness statements (including informal statements, such as those made over email, text message, instant message, social media, or audio or video recording transcripts),

declarations, affidavits, or testimony concerning the claims or allegations in this action, as well as statements that you claim are admissions or statements against interest.

33. All documents concerning any lawsuits, grievances, arbitrations, bankruptcy proceedings, or administrative proceedings, past or pending, other than the instant action, in which you are or were involved either as a party or a witness, including, but not limited to, deposition and hearing transcripts, opinions, orders, settlement or release agreements in the last ten (10) years.

34. All documents concerning any activity or conduct you engaged in, during or after your EPAM employment, which you believe is protected by the New Jersey Conscientious Employee Protection Act and/or the Defend Trade Secrets Act.

35. All documents concerning any allegedly retaliatory conduct by EPAM, or any other conduct by EPAM that you challenge in this action.

36. All documents reviewed, relied upon, or used in preparing your Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Complaint ("Answer").

37. All documents you receive pursuant to any subpoena issued in this lawsuit.

38. All online profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, and online communications, including communications that are maintained or posted on any social or business networking account (e.g., Facebook, Twitter, X, Threads, Instagram, Yelp, Foursquare, Tumblr, Flickr, LinkedIn, MySpace, etc.), concerning the allegations, claims, counterclaims, or defenses set forth in the Complaint, the Amended Complaint, or the Answer.

39. All documents concerning any income that you received from any source, whether as an employee, owner, partner, independent contractor, agency recipient or otherwise, between the end of your EPAM employment and the present, including, but not limited to, income of any kind from Rao's Companies (including loans taken from such companies), unemployment insurance benefits, welfare or other government benefits, and all federal, state and local income tax returns and Internal Revenue Service W-2 and 1099 tax forms for 2022 through the present. In addition to providing all documents that are responsive to this request, provide EPAM's attorneys with fully executed authorization forms/releases permitting them to obtain your federal income tax records, and unemployment insurance benefits records. Authorization forms are attached hereto as Exhibit H.

40. All documents concerning any "refresh" or "reset" that you performed on your MSI Codex R2 Desktop Computer in or about November 2025.

41. All documents concerning any damages or remedies that you are seeking in this action, including, but not limited to, all documents that identify, specify, or describe the nature and type of actual damages allegedly incurred by you, documents which list, compute, analyze, calculate, estimate, or describe the amount of actual damages allegedly incurred by you, and all documents concerning your efforts to mitigate damages. This requests includes, but is not limited to, all documents concerning any allegation, claim, or counterclaim that you have incurred damages for intangible injuries such as emotional distress and reputational harm.

42. All documents (including emails, text messages, and social media posts) concerning any treatment or counseling sought or received by you for any alleged physical, mental, psychological, or emotional condition or injury for which you seek damages in this action (including but not limited to any treatment or counseling you have received from non-

healthcare providers, such as treatment or counseling from clergy, religious lay leaders, twelve-step programs, and purported psychics or other purported practitioners of the paranormal arts). This request includes, but is not limited to, all documents concerning any alleged emotional distress, reputational harm, or "clinically documented psychiatric injury" that you asserted in your Answer. In addition to providing all documents that are responsive to this request, provide fully executed authorization forms and/or releases permitting EPAM's attorneys to obtain any and all confidential records or documents that might be responsive to this request. Authorization forms are attached hereto as Exhibit I.

43. All documents prepared or maintained by any physician, hospital, clinic, physical therapist, psychologist, psychotherapist, counselor, social worker, any other healthcare provider, or any other person (*e.g.*, clergy, religious lay leaders, twelve-step programs, and purported psychics or other purported practitioners of the paranormal arts) who evaluated or treated you from October 2022 to the present for any physical, medical, or mental health condition. This request includes but, is not limited to, medical records, reports, consultation notes, prescriptions, MRI records, X-rays, statements made for the purpose of obtaining or maintaining benefits, and statements of charges for services, products or medications provided to you. In addition to providing all documents that are responsive to this request, to the extent they were not previously produced, provide EPAM's attorneys with fully-executed authorization forms or releases permitting EPAM's attorneys to obtain any and all confidential records or documents that might be responsive to this request. Authorization forms are attached hereto as Exhibit I.

44. All documents concerning your contention that documents, data, or materials that EPAM claims as its Confidential Information and/or as its property is actually open source.

45. All documents concerning your contention that documents, data, or materials that EPAM claims as its Confidential Information and/or as its property is publicly available.

46. All documents concerning whether you purposefully underperformed, or intended to underperform during your EPAM employment, with the hope that EPAM would involuntarily terminate your employment.

47. All documents concerning any act by you, during or after your EPAM employment, to directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication (including but not limited to electronic or other mail, phone, fax, instant message, or social media) or otherwise meet with, or Communications with, EPAM's current, former, or prospective clients, for purposes of offering services on behalf of yourself, CoReason, or any of Rao's Companies. This request is binding, irrespective of whether you believe that your conduct violated your non-solicitation obligations to EPAM. This request further includes all documents concerning any act by you, during or after your EPAM employment, to respond to any contact (even a contact which you claim was unsolicited and/or not initiated by you) from EPAM's current, former, or prospective clients, for purposes of you offering services similar to or competitive with those offered by EPAM.

48. All documents concerning the generation of the CoReason Proof of Concept and Statement of Work that was allegedly approved by Johnson & Johnson on October 20, 2025, including but not limited to all documents concerning your and/or CoReason's Communications and/or negotiations with Johnson & Johnson. (Answer ¶ 396.)

49. All documents concerning your and/or CoReason's Communications and/or negotiations with Boehringer Ingelheim regarding a potential business relationship. (Answer ¶ 398.)

50. All documents concerning your contentions regarding CoReason's potential annual revenue, valuation, and/or "unicorn" status. (Answer ¶ 399.)

51. All documents concerning your contention that you have been unable or inhibited in your ability to commercially launch CoReason. (Answer ¶ 399.)

52. All documents concerning your role in negotiating, drafting, or reviewing the Master Services Agreement, or any amendment, annex, statement of work, project work order, or other document related thereto, between EPAM and Takeda Pharmaceuticals.

53. All documents concerning your recruitment and/or hiring by EPAM, including all documents regarding your negotiation of the Employment Covenants Agreement, and all documents concerning any alleged representations made to you by EPAM during the recruitment and/or hiring process.

54. All documents concerning your reliance upon alleged representations made to you by EPAM during the recruitment and/or hiring process.

55. All documents concerning your contention that EPAM misrepresented, masked, or concealed the physical locations of its workforce.

56. All documents and data concerning supposedly "independent scientific innovations" that you created, ideated, and/or developed during your EPAM employment. (Answer ¶ 328.)

57. All documents concerning the status of your employment at Johnson & Johnson as of the time of your recruitment and/or hiring by EPAM, including your last two formal performance reviews, documents sufficient to identify compensation changes and/or bonuses over the preceding two years, and any documents concerning the possibility that your Johnson & Johnson employment may end involuntarily.

58. All documents concerning any effort by you to find employment outside of Johnson & Johnson during 2024, including all documents that reflect, relate to, concern, or constitute correspondence with prospective employers, headhunters, recruiters, and/or executive search agencies.

59. All documents concerning the codebase that you allegedly “independently authored and published” under “the package name llmpromptbuilders,” including all documents reflecting that you had EPAM’s approval, authorization, and/or permission for such acts. (Answer ¶ 339.)

60. A complete, current copy of your curriculum vitae.

61. With respect to any person expected to give expert testimony in this action, including but not limited to any financial, psychological or medical expert, a written report containing: (a) a complete statement of all opinions the witness will express and the basis and reasons for them; (b) the facts or data considered by the witness in forming his or her expert opinion; (c) any exhibits that will be used to summarize or support his or her expert opinion; (d) the witness’ qualifications, including a list of all publications authored in the previous 10 years; (e) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (f) a statement of the compensation to be paid for the study and testimony in this action.

62. All documents identified or relied upon in your answers to EPAM’s First Set of Interrogatories.

63. All patent or copyright applications that you and/or CoReason has filed.

64. All insurance policies that could potentially be used by you to satisfy a judgment in this matter.

65. All documents identified or relied upon in your Federal Rule Civil Procedure 26(a)(1) Initial Disclosures, dated February 27, 2026.

66. All documents previously hosted on gowthamrao.com, including but not limited to screenshots or other documents regarding what the website displayed.

67. All documents and information associated with your personal cloud-based accounts whose primary purpose is to host source code, such as https://github.com/gowthamrao, including but not limited to all current and historical source code, repositories, and branches (regardless of whether those items have been, or are publicly available), all auditable events and history associated with the accounts (including any information related to uploading, cloning, transferring, downloading, exporting, branching, using, accessing, synchronizing, committing, revising, or deleting source code or documents from your accounts), all information regarding users that have accessed, downloaded, or used information stored on your accounts, and all information related to development machines, systems, or platforms synchronizing with these accounts.

68. All documents and information associated with CoReason's cloud-based accounts whose primary purpose is to host source code, such as https://github.com/CoReason-AI, including but not limited to all current and historical source code, repositories, and branches (regardless of whether those items have been, or are publicly available), all auditable events and history associated with the accounts (including any information related to uploading, cloning, transferring, downloading, exporting, branching, using, accessing, synchronizing, committing, revising, or deleting source code or documents from the accounts), all information regarding users that have accessed, downloaded, or used information stored on the accounts, and all

information related to development machines, systems, or platforms synchronizing with these accounts.

69. All documents concerning any allegation, claim, counterclaim, or defense asserted by any Party in this Litigation, that are not otherwise produced in response to these Requests.

70. All documents and/or other materials, not otherwise requested, that you intend to use or offer into evidence at any deposition or proceeding in this matter, or that you otherwise believe are relevant to this matter.

Dated: August 10, 2026

EPAM SYSTEMS, INC.,

By: */s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (*pro hac vice* admitted)
jyu@seyfarth.com
Brooke Gary (admitted *pro hac vice*)
brgary@seyfarth.com
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2026, the foregoing was served upon the following pro se party via email, and a copy was also served via FedEx at the following:

GOWTHAM ADAMANE ROA
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao@gmail.com

*/s/ Jacob Oslick*
Jacob Oslick