**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff | X<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>X | Civil Action No. 2:25-cv-06260 |

**PLAINTIFF/COUNTER-DEFENDANT EPAM SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO SEAL**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. Exhibits 9 And 10 Must Be Sealed To Protect Highly Sensitive Technical Information Concerning Epam's Synapse Platform .......... 2

II. Exhibit 13 Must Be Sealed To Protect Confidential Business Information .......... 5

III. Rao's Suggestion of *In Camera* Review Does Not Work .......... 6

IV. Rao's Proposed Framework For Executives #1-3 Is Unworkable .......... 7

V. The Public Interest in Open Courts is Not Meaningfully Impeded By Closing The Courtroom During Any Testimony Regarding The Sealed Information .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna, Inc. v. Mednax, Inc.*,
2021 WL 5987205 (E.D. Pa. 2021) ....................6

*Katz v. Katz*,
356 Pa. Super. 461 (Pa. Super. 1986) ....................8

*Littlejohn v. BIC Corp.*,
851 F.2d 673 (3d Cir. 1988)....................5

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ....................4

*Prior v. IntegriChain, Inc.*,
2026 WL 561046 (E.D. Pa. 2026) ....................4

*Publicker Indus., Inc. v. Cohen*,
733 F.2d 1059(3d Cir. 1984)....................8, 9

## PRELIMINARY STATEMENT

Defendant/Counter-Plaintiff Gowtham Rao's ("Rao") Opposition to EPAM's Motion to Seal confirms there is no basis to deny EPAM's motion, and that EPAM's limited sealing and courtroom-closure requests should be granted.

At the outset, it is notable what Rao does *not* assert. Specifically, Rao does not claim any recognizable legal interest in the documents becoming public, or in EPAM being unable to use unredacted copies at the spoilation hearing. For a good reason: at least as to Exhibits 9, 10, and 13, Rao's position is that these are *EPAM* documents which he supposedly created as part of his EPAM duties. (*See* ECF #66-1 at 1.) The fact that Rao claims "no confidentiality" in these documents and "do[es] not want them sealed" is irrelevant. (*Id.*) While the Court must consider the public interests, Rao's only plausible reasons for opposing sealing would be inflicting competitive harm on EPAM, impeding EPAM's ability to adduce testimony at the September 16, 2026 hearing on its spoliation motion, or simply being obstructive. None of these reasons warrants denying EPAM's motion.

As for what Rao does argue, he devotes substantial portions of his briefing to disputing whether the exhibits contain source code, specific pricing figures, or other details that EPAM never contended were required for sealing. But Rao never meaningfully rebuts EPAM's central showing: that disclosure of the information at issue would cause substantial competitive harm to EPAM and significant reputational harm to non-parties. (*See* ECF #60-1 at 4-11.)

At bottom, Rao's Opposition elevates immaterial distinctions over substance. Rao repeatedly argues that Exhibits 9 and 10 do not contain executable source code and that Exhibit 13 does not disclose specific pricing figures. The question is not whether the exhibits reveal every aspect of EPAM's proprietary information, it is whether disclosing the information they do contain would injure EPAM by providing competitors with valuable insight into EPAM's proprietary information and business strategy. They do.

Similarly unpersuasive is Rao's contention that EPAM failed to identify a specific competitor that might exploit the information at issue. EPAM is not required to identify a precise future competitor. Once disclosed in a public judicial proceeding, the information would be available to all competitors, current and future alike. The harm arises from the disclosure itself.

Rao's remaining arguments fare no better. For instance, EPAM's public filing of redacted versions of the exhibits, and its descriptions of what the documents contain (*i.e.*, a "comprehensive, step-by-step" guide to rebuilding Synapse) does not waive protection for the specific information EPAM withheld (*i.e.*, the actual details that would permit facilitate rebuilding Synapse).

Nor does Rao offer a viable alternative to protect the interests at stake. For example, Rao acknowledges the need to protect the identities of Executives #1, #2, and #3 (collectively, "the Executives"). Yet he opposes the only measures that would ensure that protection. His proposed alternative, which requires compliance with a complicated seven-step protocol, is not workable. Any "slip up" would publicly reveal the identities of Executives #1, #2, and #3 to whomever was sitting in court that day, rendering any future transcript redaction futile.

Because Rao fails to rebut EPAM's showing of concrete competitive harm, non-party privacy concerns, and the need for narrowly tailored protections, the Court should grant EPAM's Motion in its entirety.

## ARGUMENT

### I. Exhibits 9 And 10 Must Be Sealed To Protect Highly Sensitive Technical Information Concerning Epam's Synapse Platform

Rao does not meaningfully dispute the sensitivity of the information contained in Exhibits 9 and 10. Instead, he focuses almost entirely on what those documents purportedly do not contain, repeatedly emphasizing that they do not include executable source code, function definitions, algorithms, or other technical details. (*See* ECF #66-1 at 9-11.) That argument misses the point.

EPAM did not argue that Exhibits 9 and 10 must be sealed because they contain the specific details Rao mentions. Rather, EPAM demonstrated through the declarations of Dmitrii Ilin and Gregory Klebanov that Exhibit 9 contains a "comprehensive, step-by-step plan" for recreating Synapse and that Exhibit 10 reveals highly detailed information concerning Synapse's architecture, functionality, governance, and internal processes. (ECF #58-25 ¶¶ 8-14, 16-20; ECF #60-3 ¶¶ 3-6.) These are precisely the types of confidential technical materials that would provide competitors with a roadmap for understanding, replicating, or improving upon EPAM's proprietary technology.

Rao quibbles that, in his view, Exhibit 9 would not permit a "competent coder to create a Synapse copycat," but instead contains "prompts directing an artificial-intelligence assistant to write code later." (ECF #66-1 at 9.) And he similarly nitpicks that Exhibit 9 would not permit the recreation of Synapse "as it exists today," but rather a version that EPAM did not build. (*Id.* at 10.) These are alleged distinctions without a difference. What matters is that, by Rao's very admission, an unredacted copy of Exhibit 9 would enable a competitor to recreate a version of Synapse. Whether the competitor could use this document to recreate Synapse by hiring a human coder or utilizing an artificial intelligence program to do the coding is irrelevant. Similarly, whether Exhibit 9 would facilitate recreating Synapse precisely as it exists today, or a highly similar product based on work product that EPAM developed (and thus is EPAM's intellectual property) but has chosen to not yet include in Synapse is irrelevant. All of these possibilities would result in the misappropriation of EPAM's trade secrets and/or confidential information.

Notably, Rao never actually disputes that disclosure of these materials would be valuable to a competitor. Instead, he argues that EPAM failed to identify a particular competitor. (*See* ECF #66-1 at 8-9, 14.) The law imposes no such requirement. The relevant inquiry is whether public disclosure would cause a clearly defined and serious competitive injury, not whether EPAM can

identify the particular competitor who would exploit that information. *See generally Prior v. IntegriChain, Inc.*, 2026 WL 561046, at *4 (E.D. Pa. 2026) (finding it sufficient that public disclosure would place party at "competitive disadvantage"; there is no indication that the party identified specific competitors). Once such information is disclosed in open court, it becomes available to all. Rao's argument would create an impossible standard under which a company could not protect commercially sensitive information unless it first identified the precise competitor poised to misuse it. Indeed, the use of this very information is at the center of this litigation – and if Rao is permitted disclose this information in open court then he is able to freely continue misappropriating it in his competitive company – which cannot be a benefit bestowed upon him.

Nor is it significant that Exhibits 9 and 10 may not contain complete source code. A competitor does not need the precise "recipe" down to the last milligram of each ingredient to gain a substantial competitive advantage. A detailed blueprint explaining how a product is structured, how it functions, and how it may be recreated can be equally valuable. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 386 (3d Cir. 2021) (recognizing a confidential compilation and organization of information may constitute a trade secret where the combination affords a competitive advantage). Exhibit 9 is a self-described "comprehensive, step-by-step plan" for recreating Synapse, while Exhibit 10 explains how Synapse and MedRag were designed to achieve their functionality and competitive advantages. (ECF #58-12 at 8; ECF #58-25 ¶¶ 8-14, 16-20; ECF #60 ¶¶ 3-6.) Disclosure of this information would permit competitors to shortcut years of development effort by leveraging EPAM's work, as well as gain valuable insight on how to improve their own products to compete with Synapse. (*See* ECF #58-25 ¶ 14, ECF #60-3 ¶¶ 3, 4, 6.)

Contrary to Rao's suggestion, these are not "broad," "vague," or "conclusory" allegations of harm. (*See* ECF #66-1 at 6) (citing *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924

F.3d 662, 678 (3d Cir. 2019)). The Ilin and Klebanov declarations establish precisely *why* EPAM would suffer concrete, competitive injuries (*i.e.*, Exhibit 9 would enable a competitor to literally recreate Synapse, while Exhibit 10 would give a competitor invaluable insight into how to better compete with Synapse).

Rao's waiver argument fares no better. Rao argues that EPAM waived any right to seal the exhibits by quoting from them in a public filing. *See* ECF #66-1 at 15. This argument is mistaken. EPAM's brief quoted highly-limited, selected passages for the purpose of framing its sanctions motion. The present sealing motion concerns the unredacted, full-text versions of those documents that contain substantially more information. The case Rao cites addresses situations where a party releases information "in open court" and makes "no effort … to limit its disclosure." *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 (3d Cir. 1988) (citation omitted). Here, EPAM made such an "effort." It quoted limited excerpts, appropriately redacted what it publicly filed, and now seeks to admit unredacted versions only under seal.

Rao further argues that EPAM contradicts itself by calling the redacted exhibits both "insufficient" for the hearing and "sufficient" for public understanding. (*See* ECF #66-1 at 15-16.) There is no contradiction. A document can be redacted enough to give the public an understanding of the case and the document, while still being too redacted for the Court to conduct a maximally effective evidentiary hearing. For example, Exhibit 9, as redacted, still provides a general *outline* of the "comprehensive, step-by-step plan" for rebuilding Synapse (ECF #58-12 at 8), which is more than sufficient for the public to understand what the document is. (*See generally* ECF #58-12.) But it is redacted of all the *details* that would actually enable a competitor to rebuild Synapse.

Accordingly, the Court should permit EPAM to introduce unredacted versions of Exhibits 9 and 10 under seal during the September 16 hearing.

## II. Exhibit 13 Must Be Sealed To Protect Confidential Business Information

Rao similarly fails to rebut EPAM's showing that Exhibit 13 warrants protection. Exhibit 13 is EPAM's Synapse "Sales Battle Card," which contains confidential information as to EPAM's sales strategy, competitive positioning, product differentiation, marketing, and commercialization efforts. As EPAM's opening brief explained, the document serves as a playbook detailing how EPAM markets and sells Synapse and the related MedRag program. (ECF #60-1 at 6-8.)

Rather than addressing the substance of that showing, Rao focuses on the lack of specific pricing figures. (*See* ECF #66-1 at 10.) But confidential commercial information is not limited to pricing data. Competitive positioning, go-to-market strategies, and sales approaches all constitute commercially sensitive information that competitors could use to their advantage if publicly disclosed. Courts routinely recognize that disclosure of such strategic business information may cause the precise competitive injury that warrants sealing. (*See* ECF #60-1 at 7-8.) Once again, these are not "broad," "vague," or "conclusory" allegations of harm. (*See* ECF #66-1 at 6.) They are facts which show that EPAM would suffer a concrete injury – the disclosure of its competitive strategy for Synapse and MedRag, to the entire universe of potential competitors. *See Aetna, Inc. v. Mednax, Inc.*, 2021 WL 5987205, at *5 (E.D. Pa. 2021) (permanently sealing "sensitive commercial information").

Rao also repeats his argument that EPAM failed to identify a specific competitor who would seek to exploit the information. (*See* ECF #66-1 at 14.) But, once again, EPAM is not required to identify a particular competitor.

For these reasons, the Court should permit Exhibit 13 to be introduced under seal during the September 16 hearing.

## III. Rao's Suggestion of *In Camera* Review Does Not Work

Rao appears to suggest that the Court inspect unredacted copies of Exhibits 9-10, and 13 *in camera*, in lieu of admitting them under seal. (ECF #66-1 at 16.) This proposal achieves nothing.

The public would have no greater access to *in camera* documents than to sealed documents. But Rao's alternative proposal would frustrate EPAM's and Rao's ability to question witnesses about the documents, as they could not direct witnesses to portions of the documents that had been redacted from the publicly-filed version. The Court should reject this alternative.

To be clear, if the Court wishes to review Exhibits 9-10, and 13 *in camera* in order to assess EPAM's motion to seal, then EPAM is happy to provide unredacted *in camera* copies for that purpose. But the Court's *in camera* review is not a substitute for EPAM and Rao being able to freely question witnesses about the documents at the hearing, including by referencing text that EPAM redacted from the publicly-filed version.

## IV. Rao's Proposed Framework For Executives #1-3 Is Unworkable

Rao acknowledges the need to protect the identities of the Executives in Exhibits 6-8 but objects to EPAM admitting, under seal, less redacted[1] copies of the documents containing the identities of the Executives. (*See* ECF #66 at 1.) Rao instead proposes using a complicated seven-step protocol that involves pseudonyms, cipher keys, providing unredacted copes to the witness and court, and striking mistakes from the public transcript. (*See* ECF #66-1 at 20.) Rao's proposal suffers from two central defects.

*First*, it requires EPAM's attorneys and Rao as a witness to comply perfectly with a highly-complex series of steps that simply does not reflect how ordinary people talk or testify. The likelihood that EPAM's attorneys or Rao will make a mistake and disclose the identities of Executives #1-3 is significant. And, if members of the public are in court that day, including the

[1] As noted in EPAM's opening papers, EPAM would still redact a small amount of confidential business information and references to other non-parties that are not germane to its sanctions motion. (*See* ECF #60-1 at 2 n.1)

media, redacting a subsequent transcript cannot erase their memories or delete news stories about the court testimony.

*Second*, while EPAM believes its spoliation motion should result in case ending sanctions, EPAM admits this result is not guaranteed. And, if EPAM, Rao, this Court, or the Third Circuit (on any potential appeal) needs to rely on the September 16 transcript for any future proceeding, the use of pseudonyms, cipher keys, *in camera* documents not formally admitted as exhibits, and other measures may hinder the useability of the transcript and related materials. Entering the exhibits under seal ensures an appropriate record for future proceedings.

Conversely, the public interest in open court proceedings is only minimally impacted by closing the courtroom while permitting a lightly-redacted transcript to be filed later. Under EPAM's proposal, the general public and news media would be freely permitted to know precisely what transpired, with minimal redactions to protect the privacy and reputation of non-parties. Meanwhile, the parties and Court would maintain a clear record for future proceedings. For these reasons, the Court should grant EPAM's motion to seal less redacted versions of Exhibits 6–8, and close the courtroom.

## V. The Public Interest in Open Courts is Not Meaningfully Impeded By Closing The Courtroom During Any Testimony Regarding The Sealed Information

Turning more generally to EPAM's request to close the courtroom, Rao muddles EPAM's position. EPAM asks that the courtroom be closed in two distinct circumstances: (i) when any witness is discussing the trade secrets or confidential information that belongs to EPAM; and (ii) when any witness is discussing the identities of the Executives. The Court has authority to close the courtroom in either instance. *See Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 10772(3d Cir. 1984) ("the district court acted properly in excluding the public" from portion of hearing about whether "'sensitive' information should be kept confidential"); *Katz v. Katz*, 356 Pa. Super. 461,

468 (Pa. Super. 1986) ("the public may be excluded, temporarily or permanently, from court proceedings" to "protect private as well as public interests: to protect trade secrets, or the privacy and reputations" of third-parties) (cleaned up). Further, as EPAM explained, the public's right of access can be largely protected by making a lightly redacted transcript available.

Rao argues that "sealing a document and excluding the public" are not the same, and that courts should not "relax" the applicable standards. (*See* ECF #66-1 at 19.) But the presumption of open judicial proceedings yields where necessary to protect "a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm." *Publicker*, 733 F.2d at 1071. That standard is met here, because testimony that will reveal EPAM's trade secrets and confidential information will inflict a severe competitive injury on EPAM, while testimony that will identify the non-parties would harm their privacy and reputational interests.

Rao also argues that "Closing the courtroom does not prevent a name from being spoken; it changes who is in the room when it is spoken. And the transcript exists either way." (ECF #66-1 at 19.) That is EPAM's point. The public should *not* be in the room when witnesses are discussing trade secrets, confidential information, or information that will unjustifiably damage non-parties. Conversely, the transcript "exists either way," and can be lightly redacted to inform the public about virtually all of what went on, with minimal details redacted.

Rao further argues that EPAM's interest is "qualified" because EPAM does not currently know if Exhibits 6-8 are entirely accurate. (*Id.* at 19-20.) But, again, that is essentially EPAM's point. While EPAM has *no interest* in inflicting a privacy or reputational interest on non-parties, it *especially* does not want to do so if it later turns out that it inflicted this injury based upon inaccurate information attributed to those non-parties. That is *why* the courtroom should be sealed.

Rao additionally claims that EPAM failed to propose a duration or portion of the hearing it expects to be closed. (*Id.* at 18.) In fact, EPAM laid out the circumstances in which the courtroom would need to be closed to the public, *i.e.*, when any witness is discussing EPAM's trade secrets, confidential information, or the identities of the Executives. (ECF #60-1 at 1, 8.) Rao also notes EPAM did not propose excluding its own personnel. (ECF #66-1 at 18.) But EPAM does not have to exclude its own employees from the courtroom when discussing its own trade secrets or confidential information. If Rao wishes to have EPAM's employees (other than EPAM's in-house counsel, Sarah Lugar) excused during testimony about the identities of Executives #1-3, then EPAM has no objection. Rao similarly claims that EPAM has not spelled out every last detail regarding transcript redactions. (*See* ECF #66-1 at 18.) But suggesting redactions from transcripts is fairly commonplace, and a procedure could surely be agreed to or ordered (such as EPAM proposes redactions, Rao serves any objections, and the Court decides).

Accordingly, the Court should grant EPAM's request to close the courtroom during limited portions of the September 16, 2026 proceedings.

## CONCLUSION

For the foregoing reasons and the reasons stated in EPAM's opening brief, the Court should grant EPAM's Motion to Seal.

Dated: August 27, 2026

Respectfully submitted,


*/s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue,
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

*Attorneys for Plaintiff/Counterclaim-Defendant EPAM Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, I electronically filed the foregoing Plaintiff/Counterclaim-Defendant EPAM Systems Inc.'s Reply in Support of Its Motion to Seal, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record, and a courtesy copy sent via electronic mail to the following:

GOWTHAM ADAMANE RAO
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao.litigation@gmail.com
gowthamrao@gmail.com

*/s/ Jacob Oslick*
Jacob Oslick