**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**EPAM SYSTEMS, INC.,**
Plaintiff/Counterclaim-Defendant,

v.

**GOWTHAM RAO,**
Defendant/Counterclaim-Plaintiff.

**Civil Action No.**
**2:25-cv-06260-WB**
Hon. Wendy Beetlestone, C.J.

## RESPONSE IN OPPOSITION TO EPAM'S EMERGENCY MOTION TO TOLL REQUESTS FOR ADMISSION DEADLINE (ECF NO. 76)

## PRELIMINARY STATEMENT

I am Gowtham Rao, the defendant in this action, representing myself. I oppose EPAM's emergency motion to toll its response deadlines (ECF No. 76).

EPAM asks the Court to suspend all of its response deadlines for requests for admission indefinitely, without proposing any date when answers would come due. ECF No. 76 ¶ 12; ECF No. 76-2 at 1. It brings this emergency request under Rule 26(c), ahead of a motion to quash or limit the requests that it says it will file by September 18. ECF No. 76 at 1, ¶¶ 3, 12–13. But EPAM never explains why its workload or hearing preparation requires freezing all 471 propositions—rather than answering what it can—or why it needs an open-ended suspension instead of a date certain. ECF No. 76 ¶¶ 5–8, 12–13.

Before EPAM came to the Court, I offered a mutual, fixed extension to September 25, and I gave EPAM specific proposed narrowed requests in Schedule A. ECF No. 70-8 at 10; ECF No. 72-2 at 2–6. When EPAM refused to engage, I filed a request-by-request appendix explaining the source, factual issue, and trial purpose of every request. ECF No. 72-1 at 2.

I am preparing for the very same September 16 hearing, yet I answered all 104 discovery requests EPAM served on me—18 requests for admission, 16 interrogatories, and 70 document

requests—and produced my documents. ECF No. 72-4 at 5, 13, 35; Ex. 4 § I.A–C; Ex. 1, Email ¶¶ 3, 5–6. Now, I need EPAM's admissions and denials so I know where EPAM stands on the critical facts before we walk into the courtroom. Ex. 1, Email ¶¶ 3, 6.

I ask the Court to deny this emergency motion on the papers and keep the schedule intact: EPAM's responses remain due September 14–16, the spoliation hearing proceeds on September 16, and fact discovery closes on September 30.

## PART ONE — FACTS

### § I. I served my requests for admission thirty days before their response deadlines.

At the Rule 26(f) conference on February 24–25, EPAM's counsel and my then-counsel jointly agreed to propose a September 30 fact-discovery cutoff. ECF No. 25 at 1, 9. The Court entered that deadline on March 5 (ECF No. 27 at 1 ¶ 1), and on June 18, scheduled the evidentiary hearing for September 16 (ECF No. 52 at 1).

In June, I supported a 40-day extension for EPAM's spoliation brief, which moved its filing deadline from June 19 to July 29. ECF No. 49 at 1; ECF No. 51 at 1–2; ECF No. 52 at 1. When requesting that relief, EPAM told the Court it would not object if I needed additional time to respond. ECF No. 50 ¶ 5.

Yet when I asked for an extension on July 31, EPAM opposed the date I proposed, citing its counsel's travel plans over Labor Day weekend and its hearing preparation. Ex. 2, Email ¶ 3. EPAM suggested either a shorter extension or postponing the hearing altogether. Ex. 2, Email ¶¶ 4–5. On August 4, the Court denied my request without extending the schedule. ECF No. 59 at 1. I complied with that ruling and filed my opposition on August 19, exactly on the deadline the Court had set. ECF No. 52 at 1; ECF No. 62 at 1.

Between August 15 and August 17, I served five sets of requests for admission. ECF No. 76 ¶ 1. EPAM calculates that these sets contain 211 numbered requests and 471 separately answerable propositions, and it acknowledges response deadlines running from September 14 to September 16. ECF No. 76 ¶¶ 1–2; ECF Nos. 70-1–70-5.

**§ II. I proposed narrowed requests and a mutual extension before EPAM filed its discovery letter.**

On August 19, I asked EPAM to identify any specific requests or subparts for elimination, narrowing, or rephrasing before our meet-and-confer. ECF No. 70-8 at 10, item 1. To accommodate both sides' hearing preparation, I also proposed extending all discovery-response deadlines to September 25. ECF No. 70-8 at 10, item 3.

EPAM refused to identify any requests to narrow, responding: "We are not going to play your game." ECF No. 70-8 at 8. Instead, EPAM demanded that I withdraw all 471 propositions and replace them with no more than 25, claiming that preparing a list of objections would impose part of the burden it sought to avoid. ECF No. 70-8 at 8.

EPAM did offer to extend its own RFA deadline to September 25, but only on unilateral terms. It demanded that I answer its 18 RFAs and produce documents for RFPs 9 and 40 by September 10 without objection, postpone my own deposition, and agree to be deposed before EPAM's witnesses. ECF No. 70-8 at 8–9. Because EPAM rejected my mutual proposal and attached conditions I could not accept, I informed EPAM on August 22 that the existing response deadlines remained in place. ECF No. 70-8 at 5.

Even so, I continued working to narrow the dispute. On August 22, I sent EPAM a proposed Schedule A containing 25 specific entries across 13 numbered requests. ECF No. 72-2 at 2–6. Among other compromises, I offered to narrow RFA 60, withdraw subparts 173(b) and 173(c), and adopt a mutual standard for reasonable inquiry. ECF No. 72-2 at 3–4, 6.

**§ III. EPAM insisted on an unyielding 25-request demand during our meet-and-confer.**

When we conferred on August 24, counsel for EPAM opened by accusing me of using artificial intelligence to generate as many requests as possible without considering relevance or burden. ECF No. 72 at 4. When I asked whether counsel had read my August 22 proposal to narrow specific requests and define reasonable inquiry, counsel confirmed having read it. But counsel still insisted that I must withdraw all requests and reissue no more than 25. ECF No. 72-3 at 2. The conference concluded without any discussion of the substance of a single individual request. ECF No. 72 at 4.

I memorialized that discussion in an email sent that afternoon. ECF No. 72-3 at 2.

**§ IV. I responded to EPAM's discovery letter and served my responses on time.**

EPAM filed its discovery letter on August 26, raising objections to RFAs 56, 60, 120(a), and 203(b). ECF No. 70 at 1–3. I responded the next day, August 27, with a request-by-request explanation of the sources, factual issues, and trial purposes of my RFAs. ECF No. 72 at 1; ECF No. 72-1 at 2. I also filed my Schedule A compromise proposals and my conference memorialization. ECF No. 72-2 at 2; ECF No. 72-3 at 2.

Meanwhile, I timely served responses and objections to all 18 RFAs on August 28, all 16 interrogatories on September 1, and all 70 document requests on September 5, along with subsequent supplements. Ex. 4 § I.A–C; ECF No. 72-4 at 5, 13, 35; Ex. 1, Email ¶ 5. EPAM does not identify an overdue written response or a missed discovery deadline on my part. ECF No. 76 ¶¶ 1–14.

Regarding document production, EPAM offered on August 20 to treat my production obligations as satisfied if I simply authorized delivery of the entire iDS forensic database with all native files, text, and metadata. Ex. 4 § II.A. I declined that blanket authorization because the database contains personal and nonresponsive material, proposing instead a targeted production

protocol. Ex. 4 § II.B. On September 4, EPAM accepted my proposed production format subject to readability and access, disputed my selection criteria, and stated that it was open to other production methods. Ex. 4 § II.C.

I then completed a separate production from my own sources—providing searchable Bates-stamped PDFs, native files, extracted text, and load files, including copies of material preserved in iDS's forensic images. Ex. 4 §§ I.C, III.A. On September 8, EPAM acknowledged receiving my production and confirmed that it was reviewing the documents for possible use as additional hearing exhibits or for impeachment against me. Ex. 4 § III.B.

That same day, September 8, I emailed Chambers requesting that the Court preserve the response deadlines and the September 30 discovery cutoff. Ex. 1, Email ¶¶ 2–3, 5–7. I explained that postponing EPAM's responses would severely prejudice my preparation for the September 16 hearing. EPAM is already using my discovery to prepare against me, while I would be denied EPAM's sworn positions on the very facts at issue. Ex. 1, Email ¶ 3. EPAM did not include that email in the chambers correspondence it attached to its motion. ECF No. 76-1 at 2–8.

Finally, the disparity in resources between the parties is substantial. I have had no employment income since October 2025 and handle all of this litigation on my own. ECF No. 72 at 1–2. EPAM, by contrast, reported $5.457 billion in 2025 revenue and $1.301 billion in cash, cash equivalents, and restricted cash at December 31, 2025. Ex. 3 § I. Seyfarth Shaw reports its inclusion in the 2025 Am Law 100, and EPAM lists three of its attorneys as counsel on this motion. Ex. 3 § II; ECF No. 76 at 4.

**§ V. Chambers requested formal motion briefing on September 9 without granting or addressing tolling.**

On the morning of September 9, Chambers instructed the parties that the Court wanted a formal motion presenting the legal issues raised in the discovery letters. ECF No. 76-1 at 5, 7.

When EPAM followed up by email to ask about tolling its upcoming deadlines, I immediately opposed extending the time. ECF No. 76-1 at 2–4.

As EPAM acknowledges in its motion, Chambers' correspondence did not address tolling. ECF No. 76 ¶ 4. Yet EPAM filed this emergency motion asking the Court to halt all deadlines, submitting a proposed order that suspends its obligations indefinitely. ECF No. 76 ¶ 12; ECF No. 76-2 at 1.

**§ VI. I explained how RFAs 137–139 directly bear on preservation and the evidentiary hearing.**

In my August 27 filing, I specifically explained how RFAs 137 through 139 bear on the issues set for the September 16 spoliation hearing. ECF No. 72-1 at 29. These three numbered requests contain eight separately answerable propositions. ECF No. 70-3 at 10–11. While EPAM summarily dismisses their relevance (ECF No. 76 ¶¶ 9–10), these requests go directly to the core of EPAM's spoliation claims.

RFA 137 addresses the forensic protocol's imaging requirements and whether EPAM has identified any post-notice deletion. Subpart (b) asks EPAM to admit that:

> Plaintiff has identified zero instances where any responsive file, document, or communication was deleted, purged, or destroyed following the transmission of Plaintiff's October 31, 2025 cease-and-desist letter.
>
> ECF No. 70-3 at 10.

RFA 139 covers my April 2026 proposal to filter out system files and public open-source software, what EPAM said in response, and the search terms it chose. Subpart (b) asks whether:

> Plaintiff did not agree to de-NISTing or the algorithmic exclusion of public open-source software files from the review sets; and
>
> ECF No. 70-3 at 11.

RFA 138 asks when EPAM's own duty to preserve evidence arose and which records it reached, establishing EPAM's position on the preservation trigger date. ECF No. 70-3 at 10; ECF No. 72-1 at 29.

On September 9, I asked the Court to consider these requests together, in the context of my defenses, counterclaims, and overall discovery plan. ECF No. 76-1 at 2.

## PART TWO — SCOPE OF EPAM'S REQUEST

### § VII. EPAM seeks an open-ended suspension of all response deadlines without a replacement date.

What EPAM actually asks for is an open-ended freeze: it moves to toll its RFA response deadlines "pending further order of the Court." ECF No. 76 ¶¶ 12, 14. EPAM states that it plans to file a broader protective-order motion on or before September 18, or whenever the Court orders. ECF No. 76 ¶ 13. Yet its proposed order contains no end date, no deadline for that motion, and no date on which any response would ever come due. ECF No. 76-2 at 1.

EPAM brings this emergency request under Rule 26(c) and the Court's extension policies. ECF No. 76 at 1. It contends that without immediate relief, it will be forced to perform the very work its future motion seeks to avoid. ECF No. 76 ¶¶ 5, 11. To support that claim, EPAM calculates that responding to 471 propositions at five minutes each would require more than 39 attorney hours, and it points to its hearing preparation and lead counsel's weekend religious observance. ECF No. 76 ¶¶ 7–8. EPAM submits this workload estimate and factual narrative solely through the assertions of counsel in its motion, without any supporting declaration or evidentiary record. ECF No. 76 at 1–5; ECF No. 76-1.

My opposition here addresses only this emergency motion to suspend deadlines. In its August 26 letter, EPAM also asked to quash all RFAs, cap future requests at 25, and extend fact

discovery by six months. ECF No. 70 at 1, 3. I preserve my full opposition to those broader requests if and when EPAM files its motion.

## PART THREE — LEGAL STANDARD

### § VIII. Rules 6 and 26 require a specific showing of good cause for an extension or protective relief.

Under Rule 6(b)(1)(A) and Rule 26(c)(1), an extension or protective order requires a showing of good cause. While Rule 36(a)(3) allows the Court to order a longer response period, the party seeking protection bears the burden of persuasion. It must establish a particular need through specific examples or articulated reasoning, rather than broad allegations of harm. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Under Rule 26(b)(1), proportionality requires the Court to evaluate the parties' relative resources, their access to relevant information, and the importance of the discovery, alongside burden and expense. The 2015 Advisory Committee Note to Rule 26 calls for a realistic assessment of burden and of the available means of reducing it, with the parties' resources as one part of that balance.

This Court's policies require that opposed extension requests be made by formal motion and describe discovery extensions in terms of a definite period, a specific need, and a specific purpose. Policies, Civil Cases §§ II, III.A. To the extent an extension impacts the Court's scheduling order, Rule 16(b)(4) requires good cause and the judge's consent, an inquiry that depends in part on the moving party's diligence. *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

### § IX. Rule 36 governs nonresponse, proper answers, and relief from admissions.

Under Rule 36(a)(3), a matter is admitted unless the responding party serves a signed written answer or objection within 30 days. Merely filing a motion for protective relief does not

suspend that clock; the deadline runs unless and until the Court enters an order extending the time.

When answering, a party may admit, deny, qualify its response, or explain in detail why it cannot do so after a reasonable inquiry. Fed. R. Civ. P. 36(a)(4). Objections must state specific grounds and cannot rest solely on the assertion that a request presents a genuine issue for trial. Fed. R. Civ. P. 36(a)(5). Under Rule 36(a)(6), the requesting party may challenge the sufficiency of an answer or objection.

Under Rule 36(b), a court may permit withdrawal or amendment of an admission if doing so would promote presentation of the merits and would not prejudice the requesting party. While courts may consider whether the moving party had good cause for delay, they are not required to do so. *Gwynn v. City of Philadelphia*, 719 F.3d 295, 298–99 (3d Cir. 2013). Once a deadline has passed, however, Rule 6(b)(1)(B) independently requires a showing of excusable neglect.

**§ X. The discovery rules require substantive conferral and permit determination on the papers.**

Before seeking a protective order under Rule 26(c)(1), the moving party must certify that it conferred in good faith to resolve the dispute without court action. Local Civil Rule 26.1(f) and this Court's policies (§ III.C.5) require that certification to reflect genuine, reasonable efforts. In addition, Local Civil Rule 26.1(b) requires the movant to identify and reproduce the relevant discovery language.

The Court may direct a shortened briefing schedule under Local Civil Rule 7.1(c) and decide discovery motions on the papers without oral argument under Local Civil Rule 7.1(f).

## PART FOUR — ARGUMENT

### § XI. EPAM has not shown why the known schedule requires emergency suspension of every response.

The schedule EPAM complains of has been known for months. The Court scheduled the September 16 evidentiary hearing back in June. ECF No. 52 at 1. When I served my requests for admission on August 15–17, EPAM had a full 30 days—until September 14–16—to respond. ECF No. 76 ¶¶ 1–2. Yet EPAM's motion never tells the Court what work it actually completed during those 30 days, or how many hours it invested. Nor does EPAM explain why its counsel could not schedule response work around a hearing date fixed three months ago. ECF No. 76 ¶¶ 3–8.

EPAM raised the overlapping hearing and response deadlines in its August 26 discovery letter and asked for a six-month discovery extension. ECF No. 70 at 1, 3. But while filing that letter was the proper initial step under local practice, it did not stay the clock. Under Rule 36(a)(3), response deadlines continue to run unless the Court orders otherwise. EPAM offers no explanation for why waiting for Chambers to provide briefing instructions prevented it from preparing answers in the interim. ECF No. 76 ¶¶ 3–8, 12–13.

Instead, EPAM argues that answering now would force it to do work that its contemplated protective order might ultimately excuse. ECF No. 76 ¶¶ 5–6, 11. But Rule 26(c)(1) requires good cause for the specific relief requested. An emergency motion cannot wipe out every deadline for an indefinite period simply because a party hopes to get a protective order later. EPAM seeks a blanket freeze covering all 471 propositions with zero replacement dates. ECF No. 76 ¶¶ 12–13; ECF No. 76-2 at 1. It identifies no requests it could answer on time, and offers no timeline for answering the remainder. ECF No. 76 ¶¶ 5–8.

The Court has already enforced this schedule strictly. When EPAM needed a 40-day extension in June for its spoliation brief, I consented. ECF No. 51 at 1–2. But when I asked for more time on July 31 to file my opposition, EPAM vigorously opposed my date, citing its counsel's travel schedule and hearing preparation. Ex. 2, Email ¶ 3. The Court denied my request on August 4, keeping the August 19 deadline in place (ECF No. 59 at 1), and I worked through that schedule to file on time (ECF No. 62 at 1). The same standards apply to EPAM: an extension requires a concrete showing of specific need for a definite time period. Policies, Civil Cases §§ II, III.A.

**§ XII. EPAM has not shown that it meaningfully addressed my proposed revisions before seeking blanket relief.**

Before coming to the Court demanding emergency relief, EPAM had an obligation to confer meaningfully to narrow the dispute. It did not do so. In its August 26 letter, for example, EPAM singled out RFA 60, complaining that as drafted, it would require searching every file across public databases. ECF No. 70 at 1–3. But I had already addressed that exact concern: in Schedule A, I proposed narrowing RFA 60 to a single, straightforward question—whether EPAM claims intellectual property rights in six specific repositories. ECF No. 72-2 at 3. That concrete revision eliminated the need for any broad public search. Yet EPAM ignored that proposal entirely and ignores it again in this emergency motion. ECF No. 76 ¶¶ 3, 5–8.

That pattern defined the entire meet-and-confer process. Schedule A contained 25 proposed revisions across 13 numbered requests. ECF No. 72-2 at 2–6. When I raised these compromises during our August 24 conference, counsel for EPAM refused to discuss the substance of any individual request. Instead, counsel questioned how I had prepared the requests and insisted that I withdraw all 471 propositions and reissue just 25. ECF No. 72 at 4; ECF No. 72-3 at 2. EPAM's position was an ultimatum, not a meet-and-confer.

Nor did EPAM ever confer about the specific emergency relief it now requests. On August 19, I proposed a mutual extension to September 25, which EPAM rejected with unilateral demands. ECF No. 70-8 at 5, 8–10. In its emergency motion, EPAM points to that earlier exchange and to our brief September 9 email string where it raised tolling and I objected. ECF No. 76 ¶ 3; ECF No. 76-1 at 2–4. But at no point did EPAM ever discuss the duration of a suspension, propose an interim schedule, or explore answering subsets of requests on their due dates. Rule 26(c)(1), Local Civil Rule 26.1(f), and this Court's policies (§ III.C.5) require substantive, good-faith conferral on the actual relief sought—not an unyielding demand followed by an emergency motion for an indefinite stay.

**§ XIII. EPAM has not shown that its estimated workload exceeds the time and resources available.**

To justify an emergency suspension, EPAM offers a back-of-the-envelope calculation: multiplying 471 propositions by five minutes to claim it faces more than 39 attorney hours of work. ECF No. 76 ¶ 7. But that rough arithmetic is just a theoretical floor. EPAM never provides an actual estimate of the hours required, never discloses how many hours its team has already spent answering requests since August 15, and never states how many additional hours it genuinely needs. Nor does EPAM explain why its three attorneys of record from Seyfarth Shaw could not divide 39 hours of work over the 30-day response period. ECF No. 76 at 4, ¶¶ 1–2, 5–8.

Under Rule 26(b)(1), proportionality requires considering the parties' resources. I have had no employment income since October 2025 and handle this litigation entirely pro se. ECF No. 72 at 1–2. EPAM is a global corporation with $5.457 billion in annual revenue and over $1.3 billion in cash reserves, represented by an Am Law 100 law firm. Ex. 3 §§ I–II; ECF No. 76 at 4. I answered all 104 requests EPAM served on me: 18 RFAs, 16 interrogatories, and 70 document

requests. ECF No. 72-4 at 5, 13, 35; Ex. 4 § I.A–C. I also made a substantial document production and served supplements, all while preparing for the September 16 hearing. Ex. 1, Email ¶¶ 3, 5–6; Ex. 4 § III.A. EPAM does not identify a single missed deadline on my part. ECF No. 76 ¶¶ 1–14.

EPAM cites *Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857 (E.D. Pa. 2021), where the court credited a 31–46 hour estimate and granted protection against 185 RFAs. *Id.* at *4, *8, *10. I recognize that a party's financial resources do not automatically disqualify it from obtaining protective relief against genuinely abusive discovery. But *Penn Engineering* involved a fully briefed, final protective order motion, not an emergency bid for an indefinite suspension on unsworn attorney assertions. Even if 39 hours of work were credited, that alone does not justify freezing every response indefinitely without proposing a date certain. ECF No. 76 ¶¶ 5–8, 12–13; ECF No. 76-2 at 1.

Furthermore, EPAM's workload argument ignores the structure of the requests. Sets 1 and 2 contain 119 straightforward, numbered requests without subparts. ECF Nos. 70-1, 70-2; ECF No. 72-1 at 2. While EPAM points to a handful of contested examples from other sets, it never explains why it cannot answer these 119 initial requests on time. ECF No. 70 at 2–3; ECF No. 76 ¶¶ 5–8, 11–13. Similarly, while EPAM's letter cited *Martin Marietta* as allowing only 27 requests (ECF No. 70 at 2), that court actually allowed 91 requests while trimming others. *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 2007 WL 1300772, at *3, *5 (W.D. Pa. 2007). Courts regularly distinguish between requests that must be answered and those that warrant protection; EPAM has offered no justification for treating all 471 propositions as an undifferentiated emergency.

**§ XIV. EPAM has not shown why RFA fact gathering must displace hearing preparation.**

EPAM also claims an emergency because its hearing preparation overlaps with lead counsel's religious observance over the upcoming weekend. ECF No. 76 ¶¶ 7–8. I fully respect counsel's religious observance. But EPAM never explains why responding to RFAs must conflict with hearing preparation, or why the work cannot be handled by the other attorneys on the team. ECF No. 76 ¶¶ 5–8.

Answering requests for admission is fundamentally an exercise in consulting the client and its witnesses to ascertain facts. EPAM does not identify which inquiries require lead counsel, what factual questions require employee input, or why consulting its forensic examiner would interfere with hearing preparation. ECF No. 76 ¶¶ 5–8.

For example, RFAs 137 and 139 (quoted in Part One, § VI) focus squarely on EPAM's own actions: what the forensic protocol required, what its forensic review uncovered, and what search terms it ran. ECF No. 70-3 at 10–11. Under Rule 36(a)(4), EPAM must make a reasonable inquiry into information readily obtainable within its organization before answering. EPAM never explains which inquiries remain incomplete, or why answering them now would disrupt hearing preparation rather than complement it. ECF No. 76 ¶¶ 7–10.

Under Rule 36(a)(4)–(5), EPAM remains entirely free to admit, deny, qualify its answers, or state specific legal objections. While counsel must review those responses, conducting that review is standard litigation work under ordinary deadlines. EPAM has shown no reason why all review must grind to a halt while it pursues a motion to quash. ECF No. 76 ¶¶ 5–8, 11–13.

**§ XV. EPAM has not shown that its proposed suspension accounts for prejudice to my preparation and the discovery cutoff.**

Finally, EPAM's requested stay does not account for the prejudice to me. EPAM already has my full set of discovery responses and is reviewing my documents to prepare hearing

exhibits and impeachment. Ex. 1, Email ¶ 3; Ex. 4 § III.B. Meanwhile, EPAM seeks to freeze its own deadlines so that I receive zero answers before the September 16 hearing. ECF No. 76 ¶¶ 9–13. As I explained to Chambers on September 8, I urgently need EPAM's formal admissions or denials on deletion and forensic methodology to know what factual disputes remain for the hearing. ECF No. 72-1 at 29; Ex. 1, Email ¶¶ 3, 6. Granting EPAM's motion would create a one-sided playing field: EPAM would walk into court armed with my discovery, while I am deprived of theirs.

EPAM argues that many of my requests—such as RFA 138 regarding its preservation trigger date—relate to broader claims rather than the September 16 hearing. ECF No. 70-3 at 10; ECF No. 76 ¶¶ 9–10. But under Rule 36(a)(3), discovery deadlines do not vanish simply because a request serves general litigation purposes rather than a specific upcoming motion. To obtain an extension on those broader requests, EPAM still must demonstrate good cause.

Moreover, suspending deadlines indefinitely threatens the entire case schedule. Back in February, EPAM agreed to a September 30 fact-discovery cutoff, which the Court ordered in March. ECF No. 25 at 9; ECF No. 27 at 1 ¶ 1. Barely twenty days remain before discovery closes. Yet EPAM's proposed order sets no replacement date for its responses—either before or after September 30. ECF No. 76-2 at 1. Freezing responses indefinitely would derail the close of fact discovery and prejudice my ability to follow up on admissions or prepare dispositive motions.

The straightforward solution is to deny this emergency motion on the papers. EPAM's responses should remain due on September 14–16, the spoliation hearing should proceed on September 16, and fact discovery should close on September 30. ECF No. 76 ¶ 2; ECF No. 52 at 1; ECF No. 27 at 1 ¶ 1. If EPAM believes particular requests warrant protection, it can file its

planned motion by September 18 as promised. The Court can then address those specific issues on an expedited briefing schedule under Local Civil Rule 7.1(c). ECF No. 76 ¶ 13.

## CONCLUSION

I request that the Court:

1. Deny EPAM's Emergency Motion (ECF No. 76) on the papers under Local Civil Rule 7.1(f);
2. Maintain the existing RFA response deadlines of September 14–16, 2026, as acknowledged in ECF No. 76 ¶ 2;
3. Confirm that Rule 36(a)(3) applies to any matter for which EPAM fails to serve a timely signed answer or objection, subject to an applicable order or stipulation changing the response period and to Rule 36(b); and
4. Preserve the September 16, 2026 evidentiary hearing and the September 30, 2026 fact-discovery cutoff.

I seek a ruling on ECF No. 76 only. I preserve my positions on the merits of the RFAs, the sufficiency of any future response, and EPAM's separate request in ECF No. 70 to extend fact discovery, which I also oppose.

When the Court declined to extend my deadline in August, I worked through the schedule, met my deadline, and served all my discovery responses. ECF No. 59 at 1; ECF No. 62 at 1; Ex. 4 § I.A–C. I respectfully ask the Court to hold EPAM to that same schedule.

Dated: September 10, 2026
Respectfully submitted,
/s/ Gowtham Rao

**Gowtham A. Rao, MD, PhD**
Defendant and Counterclaim-Plaintiff, *pro se*
184 Mansgrove Rd., Princeton, NJ 08540
(803) 386-7890
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on September 10, 2026, I served this response, Exhibits 1–4, and the proposed order by ________________________________ on Jacob Oslick (joslick@seyfarth.com), James S. Yu (jyu@seyfarth.com), and Brooke Gary (brgary@seyfarth.com), counsel for EPAM.

/s/ Gowtham Rao
________________________________
Gowtham A. Rao