EPAM Systems, Inc. v. Rao, No. 2:25-cv-06260-WB (E.D. Pa.)

Defendant's Motion for Leave to Supplement the Record on Plaintiff's Motion for Sanctions (ECF No. 58) Concerning the August 10, 2025 Document (Oslick Exhibit 9), With Discovery Served After Briefing Closed

# EXHIBIT 1

The August 10, 2025 document (Oslick Exhibit 9, ECF No. 58-12): my served explanation and the records that accompany it

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO, MD, PhD,<br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260-WB |

**THE AUGUST 10, 2025 DOCUMENT (OSLICK EXHIBIT 9, ECF NO. 58-12): MY SERVED EXPLANATION AND THE RECORDS THAT ACCOMPANY IT**

This packet, submitted for the September 16, 2026 hearing on ECF No. 58, sets out the explanation I served on August 28, September 5, and September 7, 2026 and the records I produced with it. EPAM has held them since service; I do not know whether EPAM, Mr. Ilin, or its other fact witnesses have reviewed them.

Short forms; exhibit numbers below refer to the exhibits to the motion (the served text is Parts A through D of Exhibit 5; Ghate Decl. is Exhibit 3):

- RFA: Responses to Requests for Admission (Aug. 28, 2026), Exhibit 5, Part A
- RFP-S5: Responses to the First Request for Production (Sept. 5, 2026), Part B
- RFP-S7: First Supplemental RFP Responses (Sept. 7, 2026), Part C
- ROG-S7: Second Supplemental Interrogatory Answers (Sept. 7, 2026), Part D

**1. EPAM's theory**

EPAM's motion calls Oslick Exhibit 9 (ECF 58-12) a "step-by-step plan" for rebuilding Synapse that "was very likely generated by providing a generative AI program with highly confidential and proprietary information about Synapse." (ECF 58-2 at 13.) Its source is Dmitrii Ilin, who states that "it would be impossible to draft the 'Architectural Vision' without access to extremely sensitive, confidential, and propriety EPAM data relating to Synapse" (ECF 58-25 ¶ 10), that "This is not a document that EPAM created for any business purpose" (¶ 13), and that I once "mentioned that [I] had started 'refactoring' the Synapse code" (¶ 15), without giving any date, prompt, input, or record for the document (¶¶ 8-14). EPAM's reply brief adds that "nowhere in

Rao's brief, or his 30 page declaration, or his 11 page 'Scope Appendix' does Rao supply such a reason." (ECF 71 at 10.) The explanation and records below were served after it.

**2. My served explanation**

My served explanation is that Google Gemini generated the document on August 10, 2025, during my work for EPAM as Product Owner of a proposed product concept that, as far as I know and remember, was never built and that is distinct from the Takeda deliverable also called Synapse. "I prompted Google Gemini with my own product ideas and publicly available information," and "I did not input EPAM trade secrets, EPAM source code, or client source code to generate the output." (RFA No. 9 at 4-5.)

The document describes "a comprehensive, step-by-step plan for building the modular backend of the EPAM Synapse platform" (ECF 58-12 at 9) and carries a tab headed "Jules based vibe coding" (id. at 14). That evening I shared it with Dr. Sudeep Ghate, an EPAM employee who reported to me (Ghate Decl. ¶¶ 4-6), and gave the plan to two AI coding agents whose output is in the record.

**3. The records in time order (all times Eastern)**

| When | What the record shows | Produced at | Served in |
|---|---|---|---|
| Aug. 10, 2025, 5:54 to 9:39 AM | "Research - Agents": Gemini Deep Research reports on publicly documented agent frameworks; versions from 5:54 AM to a 9:39 AM current version, before the architecture document existed; among the inputs to the later prompts; Dr. Ghate declares he had editor access on Aug. 10, 2025, India time (Ghate Decl. ¶ 4). | GRAO007214–GRAO007390; GRAO007392–GRAO007399 (native export, captures, version history) | RFP-S7 No. 8 at 7-8; ROG-S7 No. 12 at 2-3; Ghate Decl. ¶ 4 |
| Aug. 10, 2025, 7:50 PM | Drive activity shows the document's creation in my personal Google Drive and its sharing, with editor access, with Dr. Sudeep Ghate, then an EPAM Systems India employee who reported to me, and with "Anyone on the internet with the link" as editor (Exhibit 4; see ECF 66 at 3); last edit Aug. 13, 2025. | GRAO007391 (Drive activity; filed as Exhibit 4); GRAO000448–GRAO000451 (version history, share settings) | RFP-S7 No. 9 at 10; RFP-S5 No. 9 at 77; ROG-S7 No. 1 at 4; Ghate Decl. ¶¶ 5-6 |

| When | What the record shows | Produced at | Served in |
|---|---|---|---|
| Aug. 10, 2025, 8:15 to 9:10 PM | Three public GitHub repositories, each with an Apache-2.0 license from its first commit: synapse-core (created 8:15 PM; its Codex pull request opened 8:41 PM), synapse-mcp-client (8:24 PM), synapse-retrievers (9:10 PM). Jules session 8031755035392793862, prompted with the document's build plan, generated the synapse-core scaffolding. | GRAO007204–GRAO007213 (git bundles with every commit; Jules session archive; captures) | RFP-S7 Nos. 67 and 8 at 3-7; ROG-S7 Nos. 12 and 6 at 1-4 |
| Aug. 11, 2025 (recollection) | I showed or described the work to Mr. Ilin and others at EPAM as "vibe coded," meaning generated by an AI coding agent from the plan. I also recall sending links to the repositories inside EPAM over Teams, but not when or to whom; EPAM holds its Teams records. | EPAM's Teams system | ROG-S7 No. 1 at 5; RFP-S7 No. 67 at 4 |
| Sept. 21 to Dec. 12, 2025 | I made synapse-core private Sept. 21 (settings change 6:40 AM); I restricted Dr. Ghate's access to the document Nov. 2, with no content change after Aug. 13 (Exhibit 4; GRAO000448–GRAO000451); I made the other repositories private Nov. 19, after this action was filed, on counsel's advice; iDS collected the GitHub and Google accounts on Dec. 12. | GRAO007210–GRAO007213; GRAO007391 | RFP-S7 No. 67 at 4-5, No. 9 at 10; ROG-S7 No. 6 at 4 |

### 4. What the code contains and why it matters

My served responses state that, after a search of "every file of every commit in the three repositories," "none contains EPAM source code, client material, or any reference to Takeda, MedRAG, or Johnson & Johnson" (RFP-S7 No. 67 at 3-4), and that "The code in those repositories was not refactored from anything of EPAM's" (RFP-S7 No. 23 at 11). For the August 10 work, the record therefore shows the origin, the identified inputs, the tools, the times, the output, and the disclosure. Those facts bear on restoration, prejudice, and intent under Rule 37(e).

Mr. Ilin describes Synapse as software he has coded for about the past year and says the document would let someone recreate a solution "substantially similar ... to Synapse as it exists today" (ECF 58-25 ¶¶ 1, 6, 8). My served position is that the deliverable Mr. Ilin describes was built for Takeda under a Master Services Agreement (ECF 62-30 ¶ 17; ECF 33 ¶¶ 215-220), and

that, as far as I know and remember, the concept in Oslick Exhibit 9 (ECF 58-12) was never built (RFA No. 9 at 4; RFP-S7 No. 23 at 11-12).

**5. The repositories and Mr. Ilin's paragraph 15**

The repositories, https://github.com/gowthamrao/synapse-core, synapse-mcp-client, and synapse-retrievers, in my personal GitHub account, were public when I set them up on August 10, 2025 and while Dr. Ghate had them, each with an Apache License 2.0 file from its first commit, and no code was added to or changed in any of them afterward (RFP-S7 No. 67 at 4-5; No. 23 at 11).

Mr. Ilin says that, to the best of his knowledge, I "did not store this code ... on any EPAM system, device, or account" (ECF 58-25 ¶ 15). I recall sending links to the repositories inside EPAM over Teams, though not when or to whom, and I do not claim that I gave Mr. Ilin the code (ROG-S7 No. 1 at 5-6). The code was one evening's experiment: "I did not test the code the agent generated, I could not tell whether it was working code or something the model had invented, and to the best of my knowledge it has never been used" (ROG-S7 No. 1 at 5). Four days earlier Google had announced that Jules was "officially out of beta and launching publicly" (Exhibit 6). In my view nothing here is refactoring, which reworks existing code: the Jules prompt was the plan (GRAO007208), and "To the best of my knowledge and recollection, I did not give EPAM source code, client material, or any part of the Takeda deliverable to either coding agent" (RFP-S7 No. 8 at 7).

**6. The Takeda-Synapse archives in my files**

My September 5 response to Request No. 1 identifies six archives in my OneDrive named for the Takeda-Synapse project, produced as exact-byte natives at GRAO001507–GRAO001512. Together they are 23,175 bytes, about 23 kilobytes: smaller than a single small photograph, and

smaller than the 47-kilobyte bundle of one of my repositories from the evening of August 10 (RFP-S7 No. 67 at 3). Five hold a single README.md of about six kilobytes, the sixth a README.md and Terraform deployment configuration. A README is a repository's front-page description, and these are "the default text GitLab writes when a repository is created." The same contents sit in the iDS workspace under control numbers RAO0012666, RAO0002017, and RAO0012673, and of the 405 hash values on Exhibit C to the Forensic Protocol (ECF 55 at 11) only three match content inside them, each a README.md. My served conclusion is that "the archives bearing the project's name hold documentation and deployment configuration, not an application." (RFP-S5 No. 1 at 27-28.)

In my view, I held only the repositories' initial state, and the inference quoted in section 1 depends on my having had that code.

**7. How EPAM's filings describe Synapse**

The amended complaint says the AI Accelerator "was also developed by EPAM in 2025" (ECF 37 ¶ 23, at 6). Mr. Klebanov says that "Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator" (ECF 58-28 ¶ 3, at 1) and that EPAM logged "over 4,600 employee hours" to "the project that included Synapse" (ECF 60-3 ¶ 2, at 1).

The one repository EPAM has put in the record is its GitLab project "takeda-synapse-infra" (ECF 58-20 at 2). EPAM's product manager relayed EPAM Legal's reading of the Takeda agreements to me on September 23, 2025: "everything we build belongs to Takeda and the MSA controls over the SOW in the event of a conflict between the terms of the two documents" (ECF 43-7 at 3; ECF 33-2 at 1).

Dated: September 14, 2026. /s/ Gowtham A. Rao, MD, PhD, Defendant and Counterclaim-Plaintiff, pro se, 184 Mansgrove Rd., Princeton, NJ 08540, Telephone: (803) 386-7890, gowthamrao.litigation@gmail.com