**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

----------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| EPAM SYSTEMS, INC., | : | Civ. A. No. 2:25-cv-06260-WB |
| Plaintiff, Counter Claim Defendant | : | |
| | : | |
| - against - | : | |
| | : | |
| GOWTHAM RAO (pro-se), | : | |
| | : | |
| Defendant, Counter Claim Plaintiff | : | |

----------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

I. INTRODUCTION AND PRELIMINARY STATEMENT ........ 5
II. APPLICABLE LEGAL STANDARDS........ 7
III. STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT ........ 8
IV. ARGUMENT........ 9
A. Counts I and II: What Is EPAM's Trade Secret?........ 9
B. I Need EPAM to Identify Its Rights in the Client-Owned Material........ 13
C. Counts I and II: EPAM Does Not Plausibly Plead Statutory Misappropriation ........ 15
D. Counts IV–VII: The Common-Law Claims Are Statutorily Displaced and Legally Defective ........ 22
E. Count III: EPAM Fails to Plead Any Actionable Breach of the ECA or Any Resultant Damages........ 25
F. I Request Dismissal With Prejudice or, Alternatively, Limited Leave to Cure ........ 27
V. CONCLUSION........ 30

**TABLE OF AUTHORITIES**


| **Authority** | **Pages** |
| --- | --- |
| *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168 (3d Cir. 2020) | 7, 15 |
| *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994) | 7, 17 |
| *Alpha Card Servs., LLC v. Toombs*, 2026 WL 1161448 (E.D. Pa. Apr. 29, 2026) | 10, 11, 12, 19 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 7, 10, 18 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 7 |
| *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174 (3d Cir. 1985) | 23 |
| *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102 (3d Cir. 2010) | 20, 21 |
| *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378 (E.D. Pa. 2009) | 23 |
| *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) | 27 |
| *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) | 7, 10 |
| *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968) | 8 |
| *Foman v. Davis*, 371 U.S. 178 (1962) | 27 |
| *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509 (E.D. Pa. 2018) | *passim* |
| *IQVIA Inc. v. Breskin*, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) | *passim* |
| *Mallet & Co. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) | 8, 9, 10, 11 |
| *Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) | 7, 8 |
| *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263 (3d Cir. 2016) | 20 |
| *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) | *passim* |
| *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) | 7 |
| *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) | 27 |
| *TCS Black Label Realty, LLC v. Serhant Pa., LLC*, 352 A.3d 528 (Pa. Super. Ct. 2026) | 6, 23, 24 |
| *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606 (Del. 2003) | 25, 27 |
| *Ware v. Rodale Press, Inc.*, 322 F.3d 218 (3d Cir. 2003) | 25, 27 |

| **Authority** | **Pages** |
|---|---|
| **Statutes and Rules** | |
| 18 U.S.C. § 1836 | 7, 14, 21 |
| 18 U.S.C. § 1839 | *passim* |
| 12 Pa. C.S. § 5301 *et seq.* | 7 |
| 12 Pa. C.S. § 5302 | 7, 11, 16, 20, 29 |
| 12 Pa. C.S. § 5303 | 24 |
| 12 Pa. C.S. § 5308 | 6, 22, 23, 31 |
| Fed. R. Civ. P. 12(b)(6) | 5, 7, 9 |
| Fed. R. Civ. P. 12(d) | 9 |
| Fed. R. Civ. P. 15(a) | 27 |

## I. INTRODUCTION AND PRELIMINARY STATEMENT

I move to dismiss all seven counts of EPAM Systems, Inc.'s First Amended Complaint (FAC), ECF 37, pursuant to Federal Rule of Civil Procedure 12(b)(6).

This action arises from a fundamental overreach: EPAM seeks to transform ordinary executive access and lawful post-employment competition into federal trade-secret theft and commercial espionage. EPAM pleads broad executive access (ECF 37 ¶¶ 24, 36) and incorporates policies allowing local storage under stated conditions (ECF 37-3 §§ 3.14, 3.21, at 16–17, 26–27). I challenge whether the FAC adequately explains why the alleged downloads fell outside those conditions and my authorized duties. On October 15, 2025, EPAM terminated my employment. On October 31, 2025, I returned my company-issued laptop. ECF 37 ¶¶ 3, 72. Today, nearly a year later—following neutral forensic imaging of my personal devices in December 2025 (ECF 25 at 7), the Court's denial with prejudice of EPAM's motion for terminating and spoliation sanctions under Rule 37(e) (ECF 86), and three successive iterations of pleadings—EPAM has failed to plead a single plausible claim for relief.

This motion demonstrates that the FAC fails as a matter of law across each substantive theory:

1. **Failure to Identify a Trade Secret (Sections IV.A & IV.B):** Counts I and II fail to define the boundaries of the information EPAM claims as a trade secret. Instead, EPAM bundles approximately 44,960 unspecified documents under an omnibus label—"EPAM Confidential Information and IP"—without distinguishing the claimed secrets from information covered only by contractual confidentiality (*Section IV.A*). For Count I, EPAM also must identify its title or license in the client-owned software it claims (*Section IV.B*).

2. **Absence of Statutory Misappropriation (Section IV.C):** I challenge whether EPAM adequately pleads improper acquisition under the employment and policy restrictions it identifies (*Section IV.C.1*). Separately, the FAC does not adequately connect the downloaded information to actual use or disclosure (*Section IV.C.2*), or explain why the alleged circumstances make threatened misappropriation plausible (*Section IV.C.3*).

3. **Preemption and Deficiencies in Common-Law Torts (Section IV.D):** Counts IV through VII are displaced by 12 Pa. C.S. § 5308 to the extent based on trade-secret misappropriation (*Section IV.D.1*). Independently, unjust enrichment cannot override an express contract, conversion and replevin fail because intangible electronic records are not personal property under Pennsylvania law (*TCS Black Label Realty*, 352 A.3d at 545–46), and the fiduciary-duty allegations do not adequately explain the resulting injury (*Section IV.D.2*).

4. **Failure to Plead Actionable Contract Breach or Resultant Damages (Section IV.E):** Count III fails to distinguish covered files from § 1(b)'s express public and community exclusions, EPAM fails to plead non-conclusory facts placing pre-termination downloads outside authorized employment duties under § 1(d) or conditional IT policies, and EPAM does not adequately connect the alleged breach to the injury it claims.

5. **Dismissal of Defective Claims and Limits on Amendment (Section IV.F):** I request dismissal of Counts I and II with prejudice based on the continued identification defects and prejudice from further amendment. If the Court finds a defect curable, I request limited leave requiring EPAM to define its claimed secrets and plead a plausible route of misappropriation, without automatically expanding discovery.

I respectfully request dismissal of Counts I and II with prejudice and dismissal of Counts III through VII. If the Court permits amendment, I request the limited relief described in Section IV.F.3 and the accompanying Proposed Order.

## II. APPLICABLE LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court sets aside legal conclusions and assumes the veracity of well-pleaded factual allegations to assess whether they give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Court may consider the complaint, its exhibits, matters of public record, and authentic documents upon which claims are based (*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)), and where an attached exhibit contradicts the complaint, the exhibit controls. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).

The DTSA (18 U.S.C. § 1836 *et seq.*) and PUTSA (12 Pa. C.S. § 5301 *et seq.*) both require plausible allegations of a protectable trade secret deriving independent economic value from secrecy and subject to reasonable secrecy measures, as well as misappropriation through improper acquisition or nonconsensual use or disclosure. 18 U.S.C. § 1839(3), (5); 12 Pa. C.S. § 5302; *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021); *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509, 518 (E.D. Pa. 2018) (Beetlestone, J.). For federal claims under the DTSA, the plaintiff must also establish an interstate commerce nexus and statutory ownership—meaning rightful legal or equitable title or a license. 18 U.S.C. §§ 1836(b)(1), 1839(4). Under PUTSA, lawful possession may suffice (*Advanced Fluid Sys., Inc. v. Huber*, 958

F.3d 168, 177–79 (3d Cir. 2020)), but under both statutes, every trade-secret claim "is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380–81 (3d Cir. 2021). The claimed secret must be described with sufficient particularity to separate it from general knowledge in the trade and permit the defendant to ascertain the boundaries within which it lies (*Oakwood*, 999 F.3d at 906, quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)); pointing to broad corporate document categories and asserting that something within them is secret does not suffice. *Oakwood*, 999 F.3d at 906–07; *Mallet*, 16 F.4th at 382–84.

## III. STATEMENT OF FACTS AS ALLEGED IN THE AMENDED COMPLAINT

EPAM alleges that I "downloaded approximately 44,960 documents and data files" between September 11 and October 14, 2025, to "one or more personal external devices" (ECF 37 ¶ 74). It describes them by category (ECF 37 ¶¶ 76–77, 79), and pleads seven confidentiality measures (ECF 37 ¶ 39). It pleads that "[b]y virtue of his employment at EPAM and performance of responsibilities for EPAM, Rao was given access to and possessed" the information it now calls its trade secrets (ECF 37 ¶¶ 90, 103; *see also* ECF 37 ¶¶ 24, 36, 41), but it also alleges that the downloads were "unauthorized and in violation of Company policy" (ECF 37 ¶ 2), with "many of the stolen files" relating to "historical data, clients, or projects about which Rao was not involved or had no need for his work with EPAM" (ECF 37 ¶ 78).

**EPAM's own later filings.** The FAC does not name Synapse, Takeda, or CoReason. When discussing those subjects, the forensic process, the discovery schedule, or the spoliation sanctions ruling, I cite EPAM's filings to show what EPAM represented, and the Court's orders and hearing rulings to show what the Court decided. I do not present disputed hearing testimony as facts. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). If any of those filings fall

outside the Rule 12(b)(6) record, I ask the Court to exclude them under Rule 12(d) rather than deny my motion.

## IV. ARGUMENT

### A. Counts I and II: What Is EPAM's Trade Secret?

#### 1. EPAM Conflates Trade Secrets with Confidential Information

EPAM must identify the information it claims as secret with sufficient particularity to allow the Court to assess protectability and misappropriation, and to give me fair notice to defend myself. *Oakwood*, 999 F.3d at 905–06; *Mallet*, 16 F.4th at 380–81.

EPAM introduces this collective term, "EPAM Confidential Information and IP," for over 44,000 files it claims contain "confidential and/or trade-secret information." ECF 37 ¶ 1. In paragraph 33, it lists "client information, bid proposals, RFP responses, pricing information, client contracts, project data, P&L analysis, sales and growth strategies, employee compensation data, and other similarly sensitive information," but hedges by calling them "confidential, proprietary, and/or trade-secret information." ECF 37 ¶ 33. It also adds "source code and other intellectual property" (ECF 37 ¶ 2) and a compilation it calls "highly confidential and trade secret information." ECF 37 ¶ 34.

In Counts I and II, EPAM refers to this collective category as "EPAM Confidential Information and IP" and says it is "considered a trade secret under" each statute. It justifies this declaration of 'trade secret' by saying EPAM "derives independent economic value" from information "not being generally known" and that the information is subject to "reasonable efforts to maintain its secrecy." ECF 37 ¶¶ 92–93, 105–106. Statutory recitals alone do not supply the required facts.

The Court must assess the supporting factual allegations under *Iqbal*. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016).

In *Alpha Card Servs., LLC v. Toombs*, No. 25-cv-4907, 2026 WL 1161448, at *9–10 (E.D. Pa. Apr. 29, 2026), this Court found that identifying broad business and customer data categories was sufficient at the pleading stage. EPAM pleads comparable categories. ECF 37 ¶¶ 27, 31. But these categories may also include information that is not a trade secret. In *Mallet & Co. v. Lacayo*, 16 F.4th 364, 382–84 (3d Cir. 2021), reviewing a preliminary injunction, the Third Circuit cautioned that general categories "could be used to describe documents found in any number of corporations." *Id.* at 382. The Third Circuit explained: "While some information falling within those categories may very well include trade secrets, there is a fair probability that many of the categories – and perhaps all of them – also include information that does not qualify for trade secret protection." *Id. IQVIA Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023), applied that exact distinction at the pleading stage. The court found that descriptions of nearly 10,000 downloaded files—roughly a quarter of the volume EPAM pleads here—"do not distinguish between information claimed to be trade secrets and information simply claimed to be confidential," and dismissed the DTSA and PUTSA claims with leave to amend. *Id.* at *4, *6–7.

EPAM also claims protection for "bid proposals, RFP responses, pricing information," "pricing arrangements," and "client contracts." ECF 37 ¶¶ 27, 31, 33. It alleges that pricing is "calculated based upon a number of factors" and "incorporated into EPAM's RFP responses and bid proposals." ECF 37 ¶ 27. In *Freedom Medical, Inc. v. Whitman*, 343 F. Supp. 3d 509, 519–20 (E.D. Pa. 2018), this Court distinguished prices freely disclosed to customers from internal pricing and budgeting information that could remain protected. The FAC does not establish that

EPAM's proposals or contracts were freely disclosed without confidentiality protections, and I do not ask the Court to assume that fact. My objection is that its collective category does not distinguish the claimed secret information from other material in those documents. Business strategies and compensation information may also qualify if adequately pleaded; their inclusion in the same list does not resolve which information EPAM claims as secret. *Alpha Card*, 2026 WL 1161448, at *9–10; ECF 37 ¶¶ 1, 33.

EPAM itself distinguishes confidential from trade-secret information by using "and/or" (ECF 37 ¶ 33), yet Counts I and II apply the trade-secret label to the collective category without explanation. ECF 37 ¶¶ 92–93, 105–106. By appending catchalls like "other intellectual property" (¶ 2), "other similarly sensitive information" (¶ 33), and "other EPAM Confidential Information and IP" (¶¶ 94, 107), EPAM obscures its boundaries. Even accounting for the tools' code and the compilation described in paragraph 34, I cannot tell what additional information EPAM claims as a trade secret, denying me the particularity required to defend myself. *Oakwood*, 999 F.3d at 906; *Mallet*, 16 F.4th at 382–84.

To make this more confusing to me, the Employment Covenants Agreement (ECA) I signed with EPAM separately defines "Confidential Information" and expressly excludes certain information. ECF 37-1 § 1(a)–(b), at 2. Contractual confidentiality alone does not establish trade-secret protection under 18 U.S.C. § 1839(3) or 12 Pa. C.S. § 5302. Indeed, in discovery correspondence regarding the forensic protocol, EPAM's counsel confirmed that "Confidential Information has the definition found in his Employment Covenants Agreement" (ECF 56 at 3), confirming that the forensic protocol used the contractual definition. That definition does not itself resolve which information satisfies the statutes. I cannot tell from EPAM's collective term which information it seeks to protect by contract alone and which it claims is a statutory trade

secret. ECF 37 ¶¶ 1, 33, 93, 106. I address the ECA's exclusions under Count III in Section IV.E.1.

**2. EPAM Names the Tools, but I Cannot Tell What Information Within Them It Claims as Secret**

I recognize that software code can qualify as a trade secret at the pleading stage. *Alpha Card Servs., LLC v. Toombs*, No. 25-cv-4907, 2026 WL 1161448, at *9–10 (E.D. Pa. Apr. 29, 2026). But merely giving product names to software does not plead a trade secret. EPAM names three tools—the "ETL Conversion Kit" (ECF 37 ¶ 21), the "AI Cohort Generator" (ECF 37 ¶ 22), and the "AI Accelerator" (ECF 37 ¶ 23). EPAM alleges that I was "responsible for heading the data science business unit." ECF 37 ¶ 41. Even with that background, I cannot tell from its functional descriptions what separates the claimed technology from general knowledge in the trade. ECF 37 ¶¶ 21–24, 34.

EPAM describes cleaning and harmonizing medical data (ECF 37 ¶ 21), generating patient cohorts using "the latest AI technologies" (ECF 37 ¶ 22), a "biomedical knowledge layer" (ECF 37 ¶ 23), and restricted access to the underlying code (ECF 37 ¶ 24). I do not ask EPAM to disclose every algorithm or technical detail in its complaint. I ask it to describe the claimed secret sufficiently to separate it from general knowledge and let me understand its boundaries. *Oakwood*, 999 F.3d at 906. Even if these allegations identify the tools' code adequately, they do not explain the additional information claimed under the collective term. ECF 37 ¶¶ 94, 107; *IQVIA*, 2023 WL 2588450, at *4.

Worse, EPAM commingles these tools with "thousands of data files" and "other EPAM Confidential Information and IP." ECF 37 ¶¶ 94, 107. By lumping three software tools into an uncataloged sea of thousands of data files, EPAM denies me fair notice of what is allegedly

secret. Even if the tools' code were adequately identified, EPAM must define the boundaries of its trade secrets rather than forcing me to guess which of thousands of data files I am defending against. *Oakwood*, 999 F.3d at 906; *IQVIA*, 2023 WL 2588450, at *4.

**B. I Need EPAM to Identify Its Rights in the Client-Owned Material**

EPAM includes client-owned material in Counts I and II without separating client property from its own software. ECF 37 ¶¶ 4, 35. I object on two grounds: first, neither count identifies the boundaries between EPAM's proprietary code and third-party client property; and second, Count I fails to identify EPAM's legal or equitable title or license in the client-owned portion.

**1. EPAM Fails to Separate Its Own Software from Client-Owned Property (Counts I and II)**

EPAM alleges that many of the downloaded files are "comprised of information that belongs to EPAM's clients," including "source code to tools comprised of intellectual property owned by EPAM's clients that have been entrusted to EPAM." ECF 37 ¶¶ 2, 4. In paragraph 35, EPAM admits that custom code delivered to clients "sometimes becomes the intellectual property of the client and sometimes is retained as intellectual property of EPAM but is licensed to the client." In paragraph 76, it alleges that the downloaded files included "custom built or customized software built by EPAM for clients."

Yet EPAM lumps all of these files into a single undifferentiated category of "EPAM Confidential Information and IP." ECF 37 ¶¶ 33, 94, 107. Read together, these allegations leave me unable to tell which claimed code belongs to EPAM and which belongs to a client. For example, EPAM declarant Klebanov states that "Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator," and includes Synapse code in the download assertion. ECF 58-28 ¶ 3, at 1. EPAM also filed a repository image named "takeda-

synapse-infra" (ECF 3-6 at 2; ECF 58-20 at 2; ECF 3-5 ¶ 13; ECF 58-19 ¶ 13), while its brief identifies Takeda as the client for that project. ECF 43-1 at 12. In internal Teams messages filed by EPAM in moving to dismiss my whistleblower counterclaim under the New Jersey Conscientious Employee Protection Act (ECF 43-1 at 12; ECF 43-2 ¶ 11), its employee noted that while the Statement of Work "provides Takeda with a non-exclusive license to the accelerator code and identifies the accelerator code as pre-existing IP that Odysseus presumably owns," EPAM Legal concluded that "the MSA makes no allowance for pre-existing IP," that "everything we build belongs to Takeda," and that "the MSA controls over the SOW in the event of a conflict between the terms of the two documents." ECF 43-7 at 3. I cite these statements as EPAM's representations, not as findings resolving disputed ownership on this motion.

The FAC itself never places AI Accelerator or any other tool within either ownership category described in paragraph 35. By commingling client-owned code with its own claimed proprietary software, EPAM fails to identify the boundaries within which its claimed secrets lie. *Oakwood*, 999 F.3d at 906.

**2. Count I Requires EPAM to Identify Its Title or License in Client-Owned Material**

Even if the client-owned code is adequately identified, Count I must satisfy the DTSA's ownership requirement. The measures used to protect the information do not by themselves identify EPAM's title or license.

*First*, the DTSA grants a private cause of action only to the "owner" of a trade secret, defined as the person or entity "in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. §§ 1836(b)(1), 1839(4). For the client-owned category, the FAC alleges entrustment, software development and delivery, and contractual confidentiality duties, but identifies no legal title, equitable title, or license held by EPAM. ECF 37 ¶¶ 2, 4, 35.

A contractual duty to safeguard client data does not, by itself, identify which statutory interest EPAM holds. I ask EPAM to identify that statutory interest. While Pennsylvania law under PUTSA allows a party in lawful possession to sue without owning the secret (*Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177–79 (3d Cir. 2020)), the federal DTSA strictly limits standing to an "owner." I do not claim that EPAM must own the only copy or hold an exclusive license (18 U.S.C. § 1839(4)), but Count I must be dismissed as to client-owned material because EPAM fails to plead any statutory ownership.

The DTSA also requires that "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A). A client may do so through confidentiality duties imposed on a custodian. The FAC alleges those duties and EPAM's internal safeguards. ECF 37 ¶¶ 35, 39. Those allegations may support reasonable measures; they do not answer which client-owned information EPAM claims as a trade secret or what title or license EPAM holds in it. My Count I objection concerns those missing distinctions.

**C. Counts I and II: EPAM Does Not Plausibly Plead Statutory Misappropriation**

Even if EPAM adequately identifies a trade secret, it must plausibly explain how I misappropriated it. Its theory relies on (a) the downloads, (b) alleged retention, and (c) the statement, the day after termination, "In full disclosure I am now a competitor for EPAM." ECF 37 ¶¶ 6, 80. The FAC adds circumstances concerning my departure, the timing and scope of the downloads, and other conduct. ECF 37 ¶¶ 5, 63–67, 70–71, 75, 78, 81–83. Even read together, those allegations do not plausibly allege (1) acquisition by improper means (Section IV.C.1), (2) actual use or disclosure without consent (Section IV.C.2), or (3) threatened misappropriation (Section IV.C.3).

**1. EPAM Fails to Plead Facts Showing Downloads Exceeded Authorized Executive Access or Conditional IT Permissions**

EPAM must plead facts that make at least one statutory route plausible: (a) acquisition by improper means or (b) use or disclosure without consent under the circumstances the statutes specify, including knowledge of improper acquisition or a duty of secrecy. 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302.

The DTSA and PUTSA define "improper means" to include theft, misrepresentation, and breach of a duty to maintain secrecy, but the DTSA explicitly excludes "any other lawful means of acquisition." 18 U.S.C. § 1839(6); 12 Pa. C.S. § 5302. EPAM alleges that I acquired trade secrets by improper means by "surreptitiously downloading without authorization thousands of data files . . . to a personal external device outside of EPAM's network and control" and failing to return them after termination. ECF 37 ¶ 94; *see also* ¶ 107.

The FAC affirmatively alleges that EPAM granted me broad access for my work: (a) the code was accessible to "senior executives with broad access needs" and others with a business need (ECF 37 ¶ 24); (b) EPAM's "trusted senior executives have access" to cultivate clients and develop solutions (ECF 37 ¶ 36); and (c) I "was given access to and possessed" the information "[b]y virtue of [my] employment at EPAM and performance of responsibilities for EPAM" (ECF 37 ¶¶ 90, 103). It describes my role as "Managing Principal, Life Sciences Consulting," responsible for "business development, revenue generation, portfolio management." ECF 37 ¶¶ 40–41.

My employment access does not excuse copying that breaches an enforceable restriction, but EPAM must still explain what made these downloads improper when they occurred. It alleges that they were "without the Company's authorization" and "in violation of Company policy."

ECF 37 ¶¶ 2, 74, 78. The ECA provision it identifies, § 1(d), restricts copying and removal "except as required in the performance of [my] authorized employment (and then, only within the limits and to the extent of such duties or consent)." ECF 37-1 § 1(d), at 3; ECF 37 ¶ 45.

Paragraph 78 alleges that "many of the stolen files relate to historical data, clients, or projects about which Rao was not involved or had no need for his work with EPAM." ECF 37 ¶ 78. That allegation matters, but the FAC also describes executive access to cultivate clients, develop solutions, and expand EPAM's business, and a September transition to "developing EPAM's AI capabilities with regard to certain solutions for specific clients." ECF 37 ¶¶ 36, 41, 59. I challenge whether those allegations, read together, adequately explain which downloads fell outside my authorized duties. Paragraph 78 does not identify the files or explain how their subject matter placed them outside the responsibilities EPAM pleads. ECF 37 ¶¶ 45, 59, 78 (Section IV.E.2).

Paragraph 56 describes the policy's prohibition on local storage. ECF 37 ¶ 56. The policy itself also permits storage on stated conditions: "[w]hen storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive)." Ex. C § 3.14, ECF 37-3 at 16–17. It also sets out criteria for using personally owned devices (*id.* § 3.21, ECF 37-3 at 26) and directs departing employees to place company data into company storage and remove it from personal devices upon termination (*id.* § 3.28, ECF 37-3 at 31).

Under *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994), an attached exhibit controls an allegation it actually contradicts. The policy therefore prevents treating storage on a personal device, by itself, as necessarily unauthorized. It does not establish that every download complied with the synchronization, encryption, eligibility, and security requirements. ECF 37-3 §§ 3.14,

3.21, at 16–17, 26–27. A breach of a secrecy duty can constitute improper means even without hacking or bypassing access controls. 18 U.S.C. § 1839(6). My argument is that the FAC's allegations of unauthorized copying, including paragraph 78, do not adequately explain why the downloads fell outside the employment exception and policy conditions, given the executive duties EPAM itself pleads. ECF 37 ¶¶ 24, 36, 41, 45, 74, 78, 94.

**2. EPAM Does Not Connect an Identified Trade Secret to Actual Use or Disclosure**

EPAM relies first on (a) the downloads between September 11 and October 14, 2025 (ECF 37 ¶ 74); (b) alleged non-return after the October 15 termination (ECF 37 ¶ 94); and (c) the October 16 external Teams statement, "In full disclosure I am now a competitor for EPAM" (ECF 37 ¶¶ 6, 80).

The FAC then alleges (a) knowledge of a secrecy duty (ECF 37 ¶¶ 95, 97, 108, 110); (b) that "Rao has used and disclosed, intends to use and disclose and/or threatens to use or disclose EPAM's trade secrets" (ECF 37 ¶¶ 96, 109; *see also* ECF 37 ¶¶ 98, 111); (c) that "[u]pon information and belief, Rao intends to leverage the information . . . to compete with EPAM" (ECF 37 ¶ 79); and (d) that I "will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate" the information (ECF 37 ¶¶ 99, 112). Those statutory recitals do not plead facts explaining how I used or disclosed any trade secret. *Iqbal*, 556 U.S. at 678.

Downloading or retaining files does not, without more, establish their use or disclosure, although improper acquisition remains a separate statutory route. 18 U.S.C. § 1839(5). In *Freedom Medical*, the Court denied a preliminary injunction after crediting testimony that an employee emailed pricing schedules to complete employer work, deleted the email before departure, and had no need for the schedules in his new role. 343 F. Supp. 3d at 521. That evidentiary finding

does not decide this motion, but it shows why possession and timing must be connected to the alleged misuse. *IQVIA* dismissed the trade-secret claims for inadequate identification, and separately dismissed unfair competition against the new employer for lack of facts supporting unlawful use of confidential information. 2023 WL 2588450, at *4, *6–7. The employee's contract, unfair-competition, unjust-enrichment, and CFAA claims survived. *Id.* at *6–7.

Statutory "use" includes exploitation likely to injure the owner or enrich the defendant, such as accelerated research, product development, or customer solicitation, and may be inferred from circumstantial allegations. *Alpha Card*, 2026 WL 1161448, at *11; *Oakwood*, 999 F.3d at 909–10. The FAC's possession and competition allegations must plausibly connect the claimed secret to that exploitation. ECF 37 ¶¶ 74, 79–80, 94, 96, 109. If EPAM adequately pleads improper acquisition, it need not also plead actual use. My challenge to acquisition is therefore addressed separately in Section IV.C.1.

Stripped of conclusory rhetoric, the FAC nowhere alleges that I used any EPAM information for a commercial purpose since termination; that I disclosed any file to a third party or prospective employer; that any client was solicited; that any trade secret appeared in a product, proposal, or competitor system; or that any file migrated to a third-party repository.

Direct evidence is not required, but surrounding facts must make use or disclosure plausible. In *Alpha Card*, the plaintiff pleaded specific exploitation: performance reports accessed while recruiting sales team members, hidden partner identities followed by in-person meetings, and merchant analytics disclosed directly to the competitor that hired him. 2026 WL 1161448, at *2–4, *11. The FAC alleges downloads to personal devices and an intent to use the information to compete, but does not connect an identified trade secret to any solicitation, diversion, product, recipient, or other act of use or disclosure. ECF 37 ¶¶ 74, 79–80, 96, 98, 109, 111.

Nor do EPAM's collateral allegations supply that missing link: EPAM does not allege how an attempted deletion where no files were lost (ECF 37 ¶¶ 68, 81), personal-account emails (¶ 82), a disputed repository copyright notice (¶¶ 3, 67), or an industry conference discussion (¶¶ 65–66) involved the commercial use or third-party disclosure of any identified trade secret.

EPAM emphasizes that downloads occurred "just days before his termination" (ECF 37 ¶ 75), and alleges upon information and belief that I "engineered" my discharge. ECF 37 ¶¶ 5, 70–71. EPAM also pleads that it terminated me on October 15 (ECF 37 ¶ 3), after management had "again reiterated that EPAM was not terminating him" (ECF 37 ¶¶ 61, 64). Even if the timing supports an inference that I anticipated departure, the Court must still assess whether the pleaded circumstances plausibly connect the information to misuse. A plaintiff may plead upon information and belief when facts are uniquely within a defendant's control, but it must still allege facts supporting a plausible inference of use or disclosure. *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016). I submit that the downloads, their timing and scope, alleged retention, and competitor statement do not together supply that connection.

**3. The FAC Does Not Plausibly Plead Threatened Misappropriation**

Competition alone is not trade-secret misappropriation. 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302. Threatened misappropriation requires a sufficient likelihood, or substantial threat, of use or disclosure. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 113–14 (3d Cir. 2010); *Freedom Medical*, 343 F. Supp. 3d at 521. At the pleading stage, the FAC must plausibly allege such a threat, not merely speculate about one.

The October 16, 2025 Teams message does not adequately connect competition to threatened misuse of an identified trade secret. The FAC alleges that EPAM terminated me on October 15 and that I then said, "In full disclosure I am now a competitor for EPAM." ECF 37 ¶¶ 3, 80. At

the TRO hearing, EPAM's counsel described an employee inquiry about client work and confirmed that I was speaking to someone within EPAM. ECF 58-6 at 36–38 (Tr. 35:5–37:13). Counsel also argued that I was offering to meet the client. ECF 58-6 at 38 (Tr. 37:16–21). Even accepting that account for this argument, the FAC must plausibly connect the proposed meeting to misuse of an identified trade secret.

The FAC alleges that the non-competition covenant applied to voluntary resignation and that EPAM terminated me; Count III alleges no breach of the non-solicitation covenant. ECF 37 ¶¶ 3, 5, 121–122. That does not eliminate confidentiality or trade-secret duties. It means that a statement of competitive status, by itself, does not establish a breach of those duties.

In *Bimbo Bakeries*, threatened misappropriation required demonstrating a sufficient likelihood—or substantial threat—of disclosure, established under a preliminary-injunction record where a senior executive with access to trade-secret formulas accepted a comparable executive position with a direct competitor. 613 F.3d at 106–08, 113–16. While courts evaluate factors such as the similarity of positions and industry competition (*Freedom Medical*, 343 F. Supp. 3d at 521), a new employer or identical position is not an indispensable pleading requirement. Here, EPAM relies on the downloads, retention, timing, and competitor statement, but I submit that those allegations do not adequately connect an identified secret to threatened misuse. ECF 37 ¶¶ 74–80, 94, 99, 107, 112. Beyond that, the DTSA expressly bars enjoining employment relationships based "merely on the information the person knows." 18 U.S.C. § 1836(b)(3)(A)(i)(I). Lawful competition and general trade knowledge cannot substitute for a plausible threat of misappropriation.

**D. Counts IV–VII: The Common-Law Claims Are Statutorily Displaced and Legally Defective**

The common-law counts allege (a) breach of fiduciary duty (Count IV), (b) replevin (Count V), (c) conversion (Count VI), and (d) unjust enrichment (Count VII). To the extent these claims repeat the alleged downloading, retention, or threatened use of trade secrets, they are displaced by 12 Pa. C.S. § 5308. I address the non-trade-secret theories separately below. The Pennsylvania displacement and property arguments apply to claims governed by Pennsylvania law; the ECA's Delaware choice-of-law clause must be considered if its application to those claims is disputed. ECF 37-1 § 9, at 8.

**1. Section 5308 Displaces the Common-Law Claims to the Extent They Rest on Trade Secrets**

PUTSA explicitly displaces "conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." 12 Pa. C.S. § 5308(a). It preserves only contractual remedies and civil remedies "not based upon misappropriation of a trade secret." § 5308(b)(1)–(2).

Counts IV through VII each incorporate and repeat the factual nucleus of Count II: Count IV alleges "stealing data . . . including EPAM Confidential Information and IP" and resulting "loss and misuse of its confidential and trade secret information" (ECF 37 ¶¶ 129(b), 130); Count V seeks replevin of "EPAM property, including EPAM Confidential Information" on a personal device (¶¶ 133–134); Count VI alleges conversion of "EPAM Confidential Information and IP" (¶ 140); and Count VII alleges that "theft of EPAM Confidential Information and IP has unjustly enriched Rao" (¶ 148).

Each of these claims seeks common-law remedies for the identical copying, retention, and threatened use of protected information alleged in Count II. ECF 37 ¶¶ 74, 94, 103, 107. Section 5308 therefore displaces Counts IV through VII to the extent the claimed information is protected as a trade secret. *See Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 408–10, 418–19 (E.D. Pa. 2009) (noting § 5308 displaces claims seeking civil remedies for trade-secret misappropriation, while preserving independent torts); *IQVIA*, 2023 WL 2588450, at *6–7.

**2. The Non-Trade-Secret Theories Fail Under Established Contract, Tort, and Property Principles**

Where the claimed information is not a trade secret, EPAM's claims fail under settled legal principles without needing to wade into its collateral grievances:

*First, unjust enrichment (Count VII) cannot replace an enforceable contract governing the same benefit.* The ECA governs confidential information and its return. ECF 37-1 § 1(a)–(d), at 2–3. To the extent Count VII seeks recovery for that same contractual subject matter, the express-contract bar applies. *Benefit Trust Life Ins. Co. v. Union Nat'l Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985). EPAM also alleges compensation received during disloyal service. ECF 37 ¶ 149. That theory requires separate analysis; the ECA's confidentiality terms do not automatically dispose of it. *IQVIA* dismissed the competitor's unjust-enrichment claim after its underlying tort claims failed, but allowed the employee's claim to proceed with her unfair-competition claim. 2023 WL 2588450, at *5–7. Here, I challenge whether the alleged conduct makes retention of compensation unjust, for the reasons concerning disloyalty and injury below.

*Second, conversion and replevin (Counts V and VI) do not apply to the digital property alleged here under Pennsylvania law. TCS Black Label Realty, LLC v. Serhant Pennsylvania, LLC*, 352 A.3d 528, 545–46 & n.14 (Pa. Super. Ct. 2026), applied Pennsylvania's rule limiting those

claims to tangible property and intangible rights merged in or identified with a document. It rejected claims concerning a client database, social-media account, digital marketing materials, and a website. Footnote 14 acknowledged federal decisions treating trade secrets as convertible property, but followed the Pennsylvania limitation. I rely on that legal rule, not the opinion's separate summary-judgment findings about proof of taking and damages. Here, EPAM alleges that its laptop was returned and seeks electronic information retained on personal devices, without identifying a withheld physical asset or a right merged into a document of the kind *TCS* recognizes. ECF 37 ¶¶ 72, 133–145. Its allegation that copying deprived it of "exclusive rights" does not identify such property. ECF 37 ¶ 143. The requested destruction of electronic copies may be available under contract or trade-secret law if those claims are established, but does not itself state conversion or replevin. ECF 37, Prayer ¶ 2; 12 Pa. C.S. § 5303; ECF 37-1 § 1(d), at 3.

*Third, Count IV must connect the alleged disloyalty to the injury claimed.* EPAM alleges a client-facing statement, attempted deletion, and efforts to avoid the non-compete. ECF 37 ¶¶ 65–66, 68, 71, 81, 129. It also alleges that I staffed an employee on a personal website and asked another to ghostwrite a blog. ECF 37 ¶ 83. Those resource allegations cannot be dismissed merely because EPAM identifies no lost client or profit; they can bear on injury and unjust benefit. My objection is that Count IV describes its injury in terms of threatened loss and misuse of information without explaining the injury caused by the separate workplace conduct. ECF 37 ¶¶ 130–131. I ask the Court to test that causal connection separately from the trade-secret allegations and the compensation theory in paragraph 149.

**E. Count III: EPAM Fails to Plead Any Actionable Breach of the ECA or Any Resultant Damages**

To state a claim for breach of contract, EPAM must plead (1) the existence of a contract, (2) a breach of an obligation imposed by that contract, and (3) resultant damages. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). While a contract claim can survive dismissal of a trade-secret claim if an independent breach is adequately pleaded (*see IQVIA*, 2023 WL 2588450, at *6), EPAM fails to plead facts establishing either a breach of the ECA's express terms or any resulting injury.

**1. EPAM Fails to Distinguish Covered Information from the ECA's Express Public and Community Exclusions**

The ECA selects Delaware law, while Count III does not identify the governing law. ECF 37-1 § 9, at 8. Under any applicable contract law, EPAM must plead a breach of a duty the agreement imposes.

The Employment Covenants Agreement (ECA) defines Confidential Information, but explicitly restricts that definition. Section 1(b) provides that Confidential Information "expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources." ECF 37-1 § 1(b), at 2.

EPAM's breach claim groups everything under its omnibus label, "EPAM Confidential Information and IP" (ECF 37 ¶¶ 1, 121–122). But contractual confidentiality cannot be pleaded through blanket labels. EPAM alleges downloads of "thousands of data files" without identifying

which files fall within the contract's definition and which fall within § 1(b)'s explicit exclusions—qualifying community-developed software or general industry knowledge covered by those exclusions. Because the FAC fails to delineate what information falls on either side of § 1(b)'s line, it fails to give fair notice of what covered information I allegedly misused. ECF 37 ¶¶ 118–122.

**2. EPAM Does Not Adequately Plead Copying Outside ECA § 1(d) or the Policy Conditions**

EPAM's first breach theory is that downloading to a personal device violated the ECA during employment. ECF 37 ¶ 121. Section 1(d) permits copying within authorized employment duties or consent while restricting copying outside those limits. ECF 37-1 § 1(d), at 3; ECF 37 ¶ 45. As explained in Section IV.C.1, the policy also allows local storage subject to synchronization, encryption, eligibility, and security conditions. ECF 37-3 §§ 3.14, 3.21, at 16–17, 26–27. Those exceptions do not establish my compliance. They require the Court to assess whether the FAC adequately pleads copying outside their limits. I challenge whether paragraph 78 supplies sufficient facts for that conclusion when read with EPAM's allegations about my executive responsibilities and changed role. ECF 37 ¶¶ 24, 36, 41, 59, 78.

**3. EPAM Does Not Adequately Connect the Alleged Non-Return to Resultant Damages**

EPAM's second theory of breach—that I failed to return covered information upon termination (ECF 37 ¶ 122)—must identify a breach of the return obligation and adequately connect that breach to the claimed injury.

Under Section 1(d), an employee must return company equipment and information upon termination. ECF 37-1 § 1(d), at 3. EPAM acknowledges that I returned the company-issued laptop on October 31, 2025 (ECF 37 ¶ 72), and identifies no physical equipment retained. For

electronic data, EPAM alleges only an omnibus failure to return "EPAM Confidential Information and IP" (ECF 37 ¶ 122). It identifies no specific covered files allegedly retained, leaving me unable to determine what EPAM claims I failed to return as opposed to § 1(b) exclusions or client materials.

Count III must also plead resultant damage caused by the alleged breach. *VLIW Tech.*, 840 A.2d at 612; *Ware*, 322 F.3d at 225. EPAM alleges injury to its "legitimate business interests" and loss of the benefit of its bargain, and demands damages exceeding $150,000. ECF 37 ¶¶ 123–125, Prayer ¶ 5. I do not ask EPAM to calculate damages now or to show a lost client as the only possible injury. I ask it to explain the connection between the covered information allegedly retained and the resulting injury. A damages demand does not supply that factual connection. The FAC's failure to distinguish the covered material makes both the alleged non-return and its asserted consequences unclear. ECF 37 ¶¶ 118–125.

**F. I Request Dismissal With Prejudice or, Alternatively, Limited Leave to Cure**

I seek dismissal of all seven counts of the First Amended Complaint. With respect to Counts I and II, dismissal should be with prejudice, with the alternative remedies below if the Court considers narrower relief.

**1. I Request Dismissal With Prejudice Based on EPAM's Opportunities to Define Its Claim and the Existing Schedule**

Under Rule 15(a), leave to amend may properly be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). I request

dismissal with prejudice based on the continuing identification problem and the prejudice of expanding an undefined claim as discovery closes. The Court must separately decide whether a proposed correction could cure the pleading defect.

EPAM has described substantial opportunities to identify the information at issue: its security head reported a download listing in November 2025 (ECF 3-4 ¶ 10); the neutral imaged five personal devices on December 15, 2025, and began issuing reports on January 6, 2026 (ECF 25 at 7); and EPAM says it obtained some information by May and technical confirmation in late July 2026 (ECF 80-1 at 7). I ask why, after those opportunities, its claimed trade secrets remain grouped with other confidential information. ECF 37 ¶¶ 1, 33, 94, 107.

EPAM used the collective term in its original complaint, attempted amendment, and operative FAC. ECF 1 ¶ 1; ECF 30 ¶ 1; ECF 37 ¶ 1. Its proposed SAC retains that term but adds allegations concerning J&J, CoReason materials, particular recipes, and alleged use of Synapse information. ECF 80-2 ¶¶ 107–114, 132–134. Those proposed allegations do not cure the operative FAC by themselves. They must, however, be assessed when deciding whether amendment could cure a defect; repetition of the label alone does not prove futility. My objection remains that EPAM must define the boundaries of every trade secret it claims, including any information beyond the identified tools or compilation.

*IQVIA* granted leave to amend its identification defects. 2023 WL 2588450, at *6–7. Here, fact discovery is scheduled to close on September 30, 2026. ECF 27 ¶ 1. I ask the Court to consider the burden of allowing an undefined claim to expand at that stage. I recognize that the March procedural strike, the May dismissal of the earlier motions without prejudice, and the September sanctions denial were not merits rulings requiring EPAM to cure these trade-secret pleading

defects. ECF 32; ECF 49 ¶ 3; ECF 86 at 1. If the Court finds the defects curable, I request the limited amendment described below.

**2. Alternatively, Dismiss the Unidentified Portion and Require Defined Boundaries**

If the Court finds the tools' code or a defined compilation adequately identified, I request dismissal of the additional, unidentified portion of Counts I and II. ECF 37 ¶¶ 21–24, 34, 94, 107. The Court need not accept an undefined residual category merely because some identified material may qualify.

Customer proposals, client contracts, compensation data, and business strategies are not categorically excluded from trade-secret protection. Whether they qualify depends on the information claimed, its value from secrecy, and reasonable protection. 18 U.S.C. § 1839(3); 12 Pa. C.S. § 5302; *Freedom Medical*, 343 F. Supp. 3d at 519–20. My request is to dismiss the inadequately identified claim as pleaded, rather than to declare that those categories can never qualify.

EPAM must distinguish the trade secrets it claims from information it protects only by contract. *IQVIA*, 2023 WL 2588450, at *4. Its collective term and catchalls do not tell me what additional information I must defend against. ECF 37 ¶¶ 1, 33, 94, 107. If that defect can be cured, any leave should require the distinctions below.

**3. Any Leave Should Require a Defined Claim and Should Not Automatically Reopen Discovery**

EPAM has described records that could help define its claim: a download listing (ECF 3-4 ¶ 10, at 3), exact-hash-match reports (ECF 58-7 at 3–4), and surviving user-created files and file-table records discussed by the neutral (Sept. 16, 2026 Hr'g Tr. 59:20, 60:1–2, 75:13–18). If the Court

permits amendment, I request fourteen days to cure the identified deficiencies. For Counts I and II, EPAM should (a) identify the claimed information by filename, repository path, document identifier, or a comparably specific description of a defined compilation; (b) distinguish that information from material protected only by contract and plead the facts supporting secrecy and economic value; and (c) plead a plausible statutory route of misappropriation involving that information. For client-owned information under Count I, it should also identify its legal or equitable title or license. 18 U.S.C. §§ 1839(3)–(6); *Oakwood*, 999 F.3d at 905–06. This request does not limit a claim to files recovered by the forensic examination or require a separate claim for every file.

Leave to cure should not itself add parties or claims or change the discovery schedule. Those requests, including ECF 80, should be decided separately on their own grounds. Until the Court orders otherwise, the existing schedule should remain in effect. ECF 27 ¶ 1.

## V. CONCLUSION

I ask the Court to require EPAM to identify the information it claims as a trade secret and to explain how the pleaded conduct satisfies a statutory route of misappropriation. The FAC's named tools and compilation do not define every item swept into its collective term, and I challenge whether its allegations adequately connect that information to improper acquisition, use, disclosure, or threatened misuse. ECF 37 ¶¶ 21–24, 34, 74–80, 94–99, 107–112. The contract and common-law claims require separate analysis under their own elements; contractual confidentiality does not resolve the trade-secret defects.

For the reasons set forth above, I respectfully request that this Court: 1. **Dismiss Counts I and II with prejudice** for failure to identify a protectable trade secret or plausibly plead misappropriation under the DTSA and PUTSA; 2. **In the alternative**, dismiss Counts I and II to

the extent they rest on information the First Amended Complaint fails to identify adequately as a trade secret, with any curative leave subject to paragraph 5 below; 3. **Dismiss Count III** for failure to plead an actionable breach of the Employment Covenants Agreement or any resultant damages; 4. **Dismiss Counts IV, V, VI, and VII** to the extent displaced by 12 Pa. C.S. § 5308 and on the separate grounds in Section IV.D, including the Pennsylvania property rule for Counts V and VI; and 5. **If amendment is permitted**, allow fourteen (14) days to cure the deficiencies identified by the Court, require the distinctions described in Section IV.F.3 for Counts I and II, and preserve the existing schedule unless separately modified. Any request to add parties or claims, including ECF 80, should be decided separately.

A proposed Order is submitted with this motion.

**Dated:** September 22, 2026

**Respectfully submitted,**

/s/ Gowtham A Rao, MD, PhD

**Gowtham A Rao, MD, PhD** *Pro Se*

184 Mansgrove Rd, Princeton, New Jersey 08540

803-386-7890 · gowthamrao@gmail.com