**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EPAM SYSTEMS, INC.,<br>Plaintiff, Counterclaim-Defendant,<br><br>- against -<br><br>GOWTHAM RAO (pro se),<br><br>Defendant, Counterclaim-Plaintiff. | : | Civ. A. No. 2:25-cv-06260-WB |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ECF 80)**

## I. INTRODUCTION

EPAM seeks to expand this lawsuit from seven counts to thirteen counts and to add a second defendant, CoReason, Inc. ECF 37, Counts I–VII; ECF 80 at 1–2; ECF 80-2, Counts I–XIII. While the proposed complaint adds specific allegations about Synapse, artificial-intelligence tools, and contacts with clients, it fails to explain which materials in the broad category EPAM calls "EPAM Confidential Information and IP" are statutorily its trade secrets. ECF 80-2 ¶¶ 1, 37–39, 126–127, 143–144.

The Court should deny leave to file the Second Amended Complaint as drafted. First, Counts I and II add an undefined residual category, claiming all "other EPAM Confidential Information and IP" as statutory trade secrets without identifying their boundaries (ECF 80-2 ¶¶ 127, 144). Adding allegations about Synapse does not cure this defect. Second, EPAM asserts ownership claims that it cannot justify. The plain text of EPAM's employment covenants agreement contains statutory and contractual exceptions that refute this global assertion. In Count IV, EPAM points to conversations about "refactoring" computer code during my employment (id. ¶ 64; see id. ¶ 169). But it does not state whether this refactoring was an assigned employment task or whether that work used EPAM equipment or facilities. Instead, EPAM relies on the flawed premise that everything created by an employee during employment automatically belongs to EPAM (id. ¶ 168), ignoring the contract's explicit exceptions and statutory protections for outside work. In Count XII, EPAM expands this overreach by demanding a declaration that it owns "all of CoReason's intellectual property and technology" (id. ¶¶ 254–255).

If the Court allows any amendment, EPAM should be required to identify the specific information or compilations it claims as trade secrets and to state the specific contractual basis for its ownership claims. I also oppose this motion because this late amendment appears

designed to reopen discovery. EPAM filed this motion nineteen days before the September 30 fact-discovery deadline. ECF 80 at 1; ECF 27 ¶ 1. The parties’ September 18 agreement allowed narrow exceptions for rolling production and two depositions, but confirmed that there was no agreement on a general extension. Exhibit B at 1–2. Any broader change requires a separate showing of good cause under Rule 16(b)(4).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural history and the pending motion to dismiss

The operative First Amended Complaint asserts seven counts. ECF 37, Counts I–VII. On May 21, 2026, the Court ordered on consent that the parties' motions to dismiss “are DISMISSED WITHOUT PREJUDICE and may be refiled within thirty (30) days of a decision on the spoliation motion.” ECF 49 ¶ 3.

On September 16, following an evidentiary hearing, the Court denied EPAM’s sanctions motion with prejudice. ECF 86 at 1. On September 22, 2026, within the thirty-day window under ECF 49 ¶ 3, I refiled my Motion to Dismiss the First Amended Complaint (ECF 89), which is pending before the Court.

The scheduling order requires fact discovery to be completed by September 30, 2026, opening expert reports by October 30, and dispositive motions by February 12, 2027. ECF 27 ¶¶ 1, 2, 5. It sets no deadline for amending pleadings.

Discovery status: On September 18, 2026, the parties agreed to a narrow bilateral accommodation: a) EPAM may produce documents through December 31 on a rolling basis in good faith and without purposeful holdbacks, b) EPAM's written-RFP response date moved from September 24 to September 28, c) EPAM witnesses list was shortened and the personnel I would

depose were limited to Gregory Klebanov on September 29 and Larry McKlaine (non-party) on a mutually agreed future October date, d) and both parties agreed that I may rely on responses to already-served subpoenas to Gilead and Takeda received by December 31. Exhibit B at 1–2. On my side, I have served responses to EPAM's Requests for Admission, Interrogatories, and Requests for Production, together with my document productions (see, e.g., ECF 77-5 at 2–3). The parties expressly confirmed that there was no agreement on a general extension: "Except as stated below there is no agreement on discovery extension and this topic is at impasse as Dr. Rao will not consider an extension under any terms." Exhibit B at 1. These private accommodations are not a court order and do not modify the Court's September 30 cutoff under ECF 27.

**B. The timing and expanded scope of EPAM's proposed amendment**

EPAM states that it "uncovered some of this information by May 2026," asserting that review disputes under the Forensic Protocol delayed confirmation by its technical staff until late July. ECF 80-1 at 7. EPAM counsel sent proposed amendment papers on August 10; I promptly responded on August 14, explaining why I could not consent. ECF 80-3 at 2–4. EPAM then waited another four weeks until September 11 to file its motion—nineteen days before the close of fact discovery. ECF 80-1 at 13–14.

The proposed pleading replaces the single contract count in the FAC with three separate contract claims, expands the disloyalty allegations, and adds new counts for tortious interference, false advertising, unfair competition, and declaratory judgment. ECF 37, Counts III–VII; ECF 80-2, Counts III–XIII. Its new allegations focus on: (a) generating a plan to recreate Synapse; (b) conversations regarding a new venture prior to my October 15, 2025 termination; (c) discussions with J&J and an October 20, 2025 statement of work; and (d) six AI recipes. ECF 80-2 ¶¶ 63–79,

106–113, 134, 151. These new theories expand the litigation far beyond the file-download and retention allegations in the FAC. Compare ECF 37 ¶¶ 73–83 with ECF 80-2 ¶¶ 63–79, 106–113.

## III. SCOPE OF THIS OPPOSITION

I appear *pro se* in my individual capacity. In this Circuit, a corporation may appear in federal court only through licensed counsel. *Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3d Cir. 1966). I do not represent CoReason, Inc., and I do not assert defenses personal to it. I cannot represent CoReason on the merits of Count VII (which names CoReason alone, ECF 80-2 ¶¶ 188–195). That distinction answers EPAM's argument that I cannot litigate a co-defendant's defenses. ECF 80-1 at 28–29; *Raab Family Partnership v. Borough of Magnolia*, 2009 WL 10689669, at *4 (D.N.J. Oct. 30, 2009). My opposition addresses the claims asserted against me, the facial sufficiency of the proposed complaint under Rule 12(b)(6), and the prejudice to my own defense under the Court's schedule.

The futility arguments in this brief test a) the proposed Second Amended Complaint and b) its exhibits under the Rule 12(b)(6) standard, taking well-pleaded factual allegations as true. EPAM's brief and correspondence are cited for its explanation of timing; Exhibit B documents the parties' limited discovery agreement. Nothing in this opposition concedes that EPAM's substantive allegations are true.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), the Court should freely give leave to amend "when justice so requires." Leave should be denied, however, upon a showing of undue delay, bad faith, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if the proposed complaint fails to state a claim

upon which relief can be granted under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Adding a new party also requires an order under Rule 21 on just terms. While the need for some additional discovery does not alone establish undue prejudice, *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487–88 (3d Cir. 1990), injecting substantial new claims at the close of discovery is prejudicial when it forces significant new preparation without an adequate opportunity to complete discovery. *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 227–28 (E.D. Pa. 2012). Any modification of the Court's discovery schedule requires a showing of good cause under Rule 16(b)(4), and Rule 29(b) requires court approval for any extension that interferes with the discovery cutoff.

## V. ARGUMENT

### A. Counts I and II fail to identify the claimed trade secrets with required specificity

#### 1. Contractual confidentiality cannot be claimed as statutory trade secret

EPAM defines its collective term to include "confidential and/or trade-secret information." ECF 80-2 ¶ 1. It describes the categories in paragraph 37 as "confidential, proprietary, and/or trade-secret information." Yet the trade-secret counts characterize information covered by that term as "considered a trade secret under" the DTSA and PUTSA, and allege misappropriation of the named tools' code "and other EPAM Confidential Information and IP." ECF 80-2 ¶¶ 126–127, 143–144.

Under both the DTSA and PUTSA, a trade secret requires independent economic value derived from secrecy and reasonable measures to maintain secrecy. 18 U.S.C. § 1839(3); 12 Pa. C.S.A. § 5302. Contractual confidentiality alone does not create a statutory trade secret. In *IQVIA Inc. v.*

*Breskin*, this Court dismissed trade-secret claims that failed to distinguish statutory trade secrets from broader confidential information. 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023).

The proposed Second Amended Complaint repeats this defect. The complaint describes specific tools, including the ETL Conversion Kit, AI Cohort Generator, and AI Accelerator (ECF 80-2 ¶¶ 25–28, 38; stamped pp. 8–9, 11). But in Counts I and II, EPAM also appends an undefined catch-all category of "other EPAM Confidential Information and IP" (id. ¶¶ 127, 144). EPAM never identifies the boundaries of this catch-all category. If EPAM claims particular compilations as trade secrets, it must identify them clearly. It cannot convert its entire contractual confidentiality definition into statutory tort claims.

**2. Pleading standards require fair notice of a trade secret's boundaries**

A complaint must identify the trade secrets with enough specificity to distinguish them from general knowledge and give fair notice of the claim's boundaries. *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892, 905–07 (3d Cir. 2021). While a plaintiff need not disclose source code or prove misappropriation at the pleading stage, it must provide reasonable notice of what it claims.

In *Alpha Card Services, LLC v. Timothy Toombs Paycompass LLC*, this Court found that descriptions of customer lists, pricing, and business processes adequately identified protectable information when supported by factual allegations of confidentiality measures. 2026 WL 1161448, at *9–10 (E.D. Pa. Apr. 29, 2026). Here, EPAM's new allegations describe Synapse and the Recipes in greater detail (ECF 80-2 ¶¶ 63–68, 109–113). If the Court finds those descriptions sufficient, it should limit Counts I and II to those identified technologies and exclude the undefined remainder of confidential information.

**3. Adding allegations regarding Synapse does not cure the defect of undefined catch-all secrets**

The proposed complaint alleges that I supplied Synapse source code or architecture to an AI tool to generate recreation instructions for a competing product, and points to overlap in specific Recipes. ECF 80-2 ¶¶ 65–68, 109, 134, 151. Under *Oakwood*, using trade secrets to accelerate development can constitute misappropriation. 999 F.3d at 908–10. But alleging specific use of Synapse cannot support a statutory claim encompassing all "other EPAM Confidential Information and IP" (ECF 80-2 ¶¶ 127, 144). Adding allegations of Synapse use does not identify the rest of the 'other' claimed secrets.

Misappropriation requires a factual connection between an identified trade secret and an alleged act of misuse. Finding that EPAM plausibly alleged misuse of Synapse does not justify allowing statutory claims over an undefined universe of company data. EPAM must identify the specific secret or defined compilation implicated by each alleged act of misuse.

**4. EPAM fails to plead statutory ownership or licensing of client software under the DTSA**

The proposed complaint acknowledges that client code "sometimes becomes the intellectual property of the client" and "sometimes is retained as intellectual property of EPAM but is licensed to the client." ECF 80-2 ¶ 39. Yet it alleges that downloaded materials included software built for clients. ECF 80-2 ¶ 95. Under the DTSA, a plaintiff must be an "owner," defined as a person holding rightful legal or equitable title or a license. 18 U.S.C. §§ 1836(b)(1), 1839(4).

An obligation to safeguard client data does not establish ownership or a license under the DTSA. While lawful possession can support PUTSA claims even if a customer owns the material,

*Advanced Fluid Systems, Inc. v. Huber*, 958 F.3d 168, 177–79 (3d Cir. 2020), Count I requires EPAM to plead an ownership or license interest in the client code it claims.

**B. EPAM claims ownership over technology it does not legally own**

The employment agreement assigns Work made, developed, learned, or used "in connection with or in the course of your employment." ECF 80-2 ¶ 50; ECF 80-2, Ex. A § 2, stamped pp. 57–58. In the proposed complaint, EPAM rewrites this provision to claim that "anything that Rao developed, during his employment, was EPAM's property." ECF 80-2 ¶ 51; see also ¶¶ 37–39, 167–171, 253–255. Calendar overlap alone does not satisfy the contract's requirement of an employment connection. Covenants capturing employee inventions without a reasonable employment nexus are unenforceable. *Guth v. Minnesota Mining & Mfg. Co.*, 72 F.2d 385, 388–89 (7th Cir. 1934); *Ingersoll-Rand Co. v. Ciavatta*, 110 N.J. 609, 627–38, 542 A.2d 879 (1988).

This limit is reinforced by Section 2(a), which governs employees whose primary work location is in New Jersey. Pursuant to state law, Section 2(a) provides that assignment obligations do "not apply to, any invention that you develop entirely on your own time without using EPAM Groups' equipment, supplies, facilities, or trade secret information," except for inventions directly related to EPAM's business, demonstrably anticipated research, or work performed for EPAM. ECF 80-2, Ex. A § 2(a), stamped p. 58. Section 2(a)'s advance-notice clause is not an assignment of ownership. Section 1(b) similarly provides that Confidential Information "expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources." ECF 80-2, Ex. A § 1(b), stamped p. 56. Under governing Delaware law, contracts must be read as a whole and specific provisions

qualify general terms. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005); *see also In re Alloy Mfg. Co. Emps. Tr.*, 411 Pa. 492, 496, 192 A.2d 394, 396 (1963).

This contractual distinction exposes the core defect in Counts IV and XII. In Count IV, EPAM alleges that I breached the agreement by claiming ownership of code developed during my employment (ECF 80-2 ¶ 169). EPAM points to a conversation where I mentioned "refactoring" code (id. ¶ 64). However, EPAM never alleges that refactoring was an assigned job duty. It does not plead that this coding used company equipment, supplies, or facilities. In Count XII, EPAM expands this claim even further. It demands a declaratory judgment that EPAM owns "all of CoReason's intellectual property and technology" (id. ¶¶ 254–255). Section 2(a) protects inventions developed on an employee's own time unless they directly relate to the employer's business or demonstrably anticipated research. EPAM cannot bypass those contractual limits by treating the entire period of employment as an automatic assignment of all outside work. If Counts IV and XII proceed, EPAM must plead facts connecting my assigned duties or statutory exceptions to the specific technology it claims. It cannot simply claim ownership over all technology developed by CoReason.

**C. The Lanham Act claim is futile because a failure to give attribution is not false advertising**

In Count X, EPAM asserts false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), alleging that CoReason's website stated its data models are "deeply informed by" my experience without crediting EPAM (ECF 80-2 ¶¶ 215–221), and that promoting CoReason technology misleads purchasers into believing CoReason owns software allegedly derived from EPAM (id. ¶¶ 222–226). In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the Supreme Court held that Section 43(a) creates no duty to disclose intellectual ancestry

or credit the origin of ideas. 539 U.S. 23, 37–38 (2003). While subsection (B) covers false or misleading representations regarding the nature, characteristics, or qualities of commercial goods, and implied statements may be actionable under narrow circumstances, *Advanced Fluid Systems, Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014), EPAM pleads no misrepresentation regarding the actual function, efficacy, or performance of CoReason's software. Nor does disputing underlying intellectual property ownership convert a breach of contract or copyright grievance into commercial false advertising under the Lanham Act. To the extent Count X rests on failing to credit EPAM or asserting ownership over disputed technology, it merely repackages an uncredited authorship and ownership dispute as false advertising to bypass *Dastar*. If Count X is permitted at all, its scope should be strictly confined to verifiable commercial statements rather than underlying authorship or ownership claims.

**D. Common-law claims that duplicate trade-secret misappropriation are displaced under PUTSA**

Section 5308(a) of PUTSA displaces conflicting tort and common-law remedies for misappropriation of a trade secret, while Section 5308(b) preserves contractual remedies and claims not based on trade-secret misappropriation. 12 Pa. C.S.A. § 5308(a)–(b). Where a complaint alleges independent misconduct or where trade-secret status remains unresolved at the pleading stage, common-law claims typically are not dismissed under Section 5308. *Advanced Fluid Systems*, 28 F. Supp. 3d at 324–25; *IQVIA*, 2023 WL 2588450, at *6–7. Here, the proposed complaint alleges independent contractual and fiduciary conduct alongside its trade-secret claims, including client solicitation (Count V), pretermination disloyalty (Count VI), and wage recovery (Count XIII). ECF 80-2 ¶¶ 173–187, 260. The appropriate distinction is between claims that duplicate trade-secret misappropriation and claims that rest on independent contractual

duties or separate tortious conduct. Testing the contract and loyalty claims on their own terms preserves statutory trade-secret boundaries without conflating ordinary confidential information with statutory secrets.

**E. Expanding the lawsuit to thirteen claims on the eve of the discovery deadline causes severe prejudice**

EPAM moved for leave to amend on September 11, 2026—nineteen days before the September 30 fact-discovery cutoff. ECF 80 at 1; ECF 27 ¶ 1. The proposed complaint injects extensive new factual disputes: Synapse AI prompting, broad ownership claims over CoReason technology, client solicitation, false advertising, and wage forfeiture. ECF 80-2 ¶¶ 63–79, 106–113, 167–171, 174–178, 213–227, 260. Defending against these thirteen counts requires substantial new preparation far beyond the file-download allegations of the First Amended Complaint.

During scheduling colloquy at the September 16, 2026 hearing, the Court cautioned EPAM about aggressive litigation tactics: "I know you have a large company behind you and you seem to be doing some very aggressive litigation tactics, not that Mr. Rao is, I don't know. But you are not going to clog the Court's docket with this clannish stuff." Sept. 16, 2026 Tr. 9:20–25. When EPAM raised extending the discovery deadline, the Court declined to decide discovery extensions at that hearing, stating: "We are not doing that, this is a spoliation hearing" (id. at 8:21–22), and directed the parties to confer and resolve their discovery issues (id. at 9:9–19). Following the hearing, the Court denied EPAM's sanctions motion with prejudice. ECF 86.

Injecting six new claims and joining a corporate entity nineteen days before the September 30 discovery cutoff threatens the very docket clogging and attrition the Court cautioned against. Discovery must be administered "in an even-handed manner that will prevent use of discovery to wage a war of attrition." Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015); *Penn*

*Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *4 (E.D. Pa. Sept. 3, 2021). In my view as a pro se litigant, multiplying the claims from seven to thirteen at this late stage imposes this very burden of attrition and causes severe practical prejudice under Rule 15(a)(2).

Although EPAM states that it uncovered some of this information by May 2026 and confirmed its nature in late July (ECF 80-1 at 7), it waited until nineteen days before the cutoff to seek leave to add six claims. While additional discovery alone does not bar amendment, *Dole*, 921 F.2d at 488, late amendments forcing substantial new preparation without an adequate opportunity to conduct discovery are prejudicial. In *Synthes, Inc. v. Marotta*, this Court granted leave where prejudice arguments were conclusory and the new claims closely tracked the original issues. 281 F.R.D. 217, 227–28 (E.D. Pa. 2012). Here, the prejudice is concrete and structural. Defending against six new claims requires discovery that cannot be supplied by my existing discovery requests or the single upcoming deposition of Gregory Klebanov on September 29 (which is already fully occupied by the operative complaint's file-download claims). Specifically, the new claims require: (a) deposing EPAM technical staff regarding the independent development and secrecy of the Recipes; (b) taking third-party discovery from commercial clients regarding contractual ownership terms; and (c) seeking evidence regarding alleged customer confusion and purchasing materiality under Count X. None of this discovery can be completed before September 30. While the Court retains discretion to modify the pretrial schedule for good cause under Rule 16(b)(4), reopening full-scale discovery to accommodate six late-added claims would disrupt the proceedings and impose severe prejudice on an unrepresented litigant. The parties' September 18 agreement was a narrow bilateral accommodation that confirmed there was no agreement on a general discovery extension. Exhibit B at 1–2.

**F. Any leave granted should define the permitted scope and coordinate deadlines with ECF 89**

If the Court grants leave to amend, I respectfully request that the order: (a) require EPAM to identify specific trade secrets rather than relying on a blanket confidentiality definition; (b) enforce the contractual employment connection in any ownership claims; and (c) maintain the September 30 discovery cutoff, subject only to the September 18 exceptions (Exhibit B). The Court should also coordinate this proceeding with my pending Motion to Dismiss the First Amended Complaint (ECF 89), refiled on September 22, 2026 under ECF 49 ¶ 3. If leave is denied, the FAC remains operative and ECF 89 proceeds. If leave is granted, establishing the scope of amendment and the response deadline under Rule 15(a)(3) will coordinate the schedule and prevent duplicative motion practice.

**VI. CONCLUSION**

For the foregoing reasons, I respectfully request that the Court deny EPAM's Motion for Leave to File a Second Amended Complaint (ECF 80). Alternatively, if leave is granted, I request an order defining the permitted pleading boundaries, establishing response deadlines under Rule 15(a)(3), and preserving the existing case schedule as described in Section V.F.

**Dated:** September 23, 2026

**Respectfully submitted,**

/s/ Gowtham A Rao, MD, PhD

**Gowtham A Rao, MD, PhD** *Pro Se*
184 Mansgrove Rd, Princeton, New Jersey 08540
803-386-7890 | gowthamrao@gmail.com