# EXHIBIT A

**Employment Covenants Agreement (Confidentiality/Assignment/Non-Compete/Non-Solicitation/Arbitration)**

This Employee Agreement ("**Agreement**") is entered into by and between EPAM Systems, Inc., with its principal place of business located at 41 University Drive, Suite 202, Newtown PA ("EPAM") on behalf of itself and its owned affiliates, and successors and assigns (each individually, and all collectively, the "**EPAM Group**"), and Gowtham Rao ("**you** or **your**"), residing at 184 Mansgrove Rd, Princeton, NJ, as of Nov 12th, 2024 (the "**Effective Date**"), as a condition of your employment with EPAM or an entity within the EPAM Group.

*WHEREAS,* all entities in the EPAM Group work globally and collectively on a day to day basis on EPAM Group initiatives and in the provision of services including by sharing information, working on joint-objectives and work product, and cross-sourcing personnel from entities within the EPAM Group. The business model of the EPAM Group further involves staffing from on-shore and off-shore entities within the EPAM Group.

*IT IS AGREED*, in light of the above, and in consideration of your employment by an entity within the EPAM Group, and all other promises made hereunder including without limitation EPAM Group's sharing of proprietary information with you, which you acknowledge to be good and valuable consideration for your obligations hereunder, EPAM Group and you hereby agree as follows:

**1. Confidential Information**. You understand and acknowledge that during the course of employment you will have access to and learn about Confidential Information.

(a) Confidential Information Defined. "Confidential Information" includes, without limitation, all information not generally known to the public, in spoken, printed, electronic, or any other form, relating to the EPAM Group's: business processes, practices, policies, plans, publications, research, operations, services, strategies, techniques, contracts, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, software, applications, design, databases, records, systems, supplier and vendor information, financial information, accounting information, legal information, marketing, pricing, payroll, staffing, personnel, internal controls, security, formulae, algorithms, ideas, inventions, patent applications, original works of authorship, discoveries, experimental processes/results, specifications, and client information of the EPAM Group or any existing or prospective client, supplier, investor, or other person or entity that has entrusted information to the EPAM Group in confidence.

(b) You understand this list is not exhaustive and also includes other information treated as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary. It is also understood and agreed that Confidential Information includes information developed by you in the course of employment. Confidential Information shall not include information generally available and known by the public at the time of disclosure to you, provided the disclosure is through no direct or indirect fault of you in whole or part, information known to you prior to your employment with the EPAM Group, or information regarding your pay, benefits, and other employment terms and conditions. For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources.

(c) EPAM Group Creation and Use of Confidential Information. You understand and acknowledge that the EPAM Group has and continues to invest substantial time, money, and specialized knowledge into developing its offerings and resources, creating a client base, generating potential client lists, training its employees, and improving its offerings. You understand and acknowledge that as a result, EPAM Group has created, and continues to use and create Confidential Information that

provides a competitive advantage in the marketplace.

(d) Disclosure and Use Restrictions. You agree you will: (i) treat all Confidential Information as strictly confidential; (ii) not directly or indirectly disclose Confidential Information, or allow it to be disclosed in whole or part, to any entity or person whatsoever outside of the direct employ of the EPAM Group except as required in the performance of your authorized employment duties (and then, only within the limits and to the extent of such duties); and (iii) not access, use, or copy Confidential Information or any documents, records, files, media, or other resources containing any Confidential Information, or remove any such items from the premises or control of the EPAM Group, except as required in the performance of your authorized employment (and then, only within the limits and to the extent of such duties or consent).

Nothing herein shall prevent disclosure of Confidential Information as required by applicable law or regulation, or pursuant to a valid court order of competent jurisdiction or an authorized government agency, provided the disclosure does not exceed that required by such law, regulation, or order. You shall promptly provide written notice of any such order to EPAM Systems, Inc.'s General Counsel.

You understand and acknowledge these obligations regarding Confidential Information continue during and after your employment until such time as such Confidential Information becomes public knowledge, except as a result of your breach of this Agreement, or by those acting in concert with you.

If/when your employment terminates, you shall immediately return any and all Confidential Information and other EPAM Group equipment or information in your possession.

(e) Immunity Under the Economic Espionage Act of 1996, amended by the Defend Trade Secrets Act of 2016. Notwithstanding any other provision of this Agreement, you will not be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that (a) is made: (ii) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding. If you file a lawsuit for retaliation by EPAM Group for reporting a suspected violation of law, you may disclose EPAM Group's trade secrets to your attorney and use the trade secret information in the court proceeding if you: (i) file any document containing the trade secret under seal; and (ii) do not disclose the trade secret, except pursuant to court order.

(f) Other Permitted Disclosures. Nothing in this Agreement prohibits or restricts you (or your attorney) from filing a charge or complaint or communicating with the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), any other securities regulatory agency or authority, the Occupational Safety and Health Administration (OSHA), the National Labor Relations Board (NLRB), the Equal Employment Opportunity Commission (EEOC), or any other federal, state, or local governmental organization or authority, legislative body, or official (or staff member to the foregoing) ("The Agencies"). You further understand this Agreement does not limit your ability to participate in any investigation or proceeding conducted by The Agencies in connection with reporting a possible violation of law without notice to the EPAM Group. This Agreement does not limit your right to receive an award for information provided to any Agencies/to the SEC staff, or any other securities regulatory agency or authority. Additionally, nothing in this Agreement prohibits or restricts you from exercising any rights under Section 7 of the National Labor Relations Act (NLRA), and any rule or regulation promulgated by The Agencies. Additionally, nothing in this Agreement limits you from good faith disclosure of information about alleged unlawful acts in the workplace including but not limited to discrimination, harassment, assault, retaliation, wage and hour violations, violations of public policy, or any other conduct that you have reason to believe is unlawful.

**2. Ownership of Work Product.** Any Confidential Information, design, program, product, invention, package, prototype, model, innovation, data, improvement, new technique, process, discovery, concept, know how, trade secret, work product and original work of authorship, whether or not patentable, copyrightable or otherwise legally protectable, (individually and collectively "Work") made, collected, developed, conceived, discovered, learned, or used by you in connection with or in the course of your employment, whether during or after normal business hours, shall constitute "work made for hire" as that term is defined by the Copyright Act of 1978, as amended from time to time, and shall be deemed to have been made or developed by you solely for the benefit of your employer within the EPAM Group ("Employer") and shall be the

sole and exclusive property of Employer. In order to effectuate the terms of this Agreement and in the event any Work created by or on behalf of you would not be deemed to be the sole and exclusive property of Employer, you assign and agree to assign to Employer all your rights in and to the Work including, without limitation, any trademarks, copyrights, patents, moral rights, and all other proprietary interest that you may have in any such Work without additional compensation. You shall not during the course of employment or at any time after, use or (to the extent that the Work constitutes Confidential Information) disclose to any other person any such Work, except as expressly authorized in writing by Employer. You hereby irrevocably and unconditionally appoint Employer as your attorney-in-fact to execute and deliver any documents necessary or desirable by Employer to protect Employer's ownership in the Work in furtherance of this Section. This power of attorney is coupled with an interest and shall survive any incapacity. You shall assist Employer or its designee, at Employer's expense, in every proper way to secure Employer's or its designee's rights in the Works and all intellectual property rights relating thereto throughout the world requested by Employer or its designee in order to apply for, obtain, maintain and transfer rights (or if not transferable, then waive such rights). You represent that at the time of signing this Agreement, you possess no intellectual property rights, solely or jointly with others, that relate in any way to any of EPAM Group's business, products, services, assets (tangible or intangible) or research and development.

(a) For those working within California, Delaware, Illinois, Kansas, Minnesota, New Jersey, North Carolina, Utah, or Washington. In the event your primary work location is within or changes in the course of employment to within California, Delaware, Illinois, Kansas, Minnesota, New Jersey, North Carolina, Utah, or Washington, then pursuant to the applicable state law, this section shall supplement the language above and apply solely with respect to the time period while working in that state. In such case, you understand and acknowledge that the provisions in this Agreement requiring you to assign (or otherwise providing for ownership by Employer of) rights to Work does not apply to, any invention that you develop entirely on your own time without using EPAM Groups' equipment, supplies, facilities, or trade secret information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention directly to Employer's business or actual or demonstrably anticipated research or development of Employer; or (ii) result from any work performed by you for Employer. Notwithstanding, you agree to provide Employer advance written notice in the event you anticipate engaging in activities which would produce Work while employed but that would not be for the benefit of and owned by Employer so that a discussion can be made to ensure such activity would be appropriate under the Code of Conduct and this Agreement.

3. **Warranty Regarding Past Employer/Client Obligations**. You represent and warrant you are not a party to any non-compete restrictive covenant or other contractual limitation that would interfere with or hinder your ability to undertake the obligations and expectations of employment. You furthermore shall not disclose to the EPAM Group or use any intellectual property, confidential or non-public proprietary information or materials belonging to any of your previous client(s) or employer(s).

4. **Processing of Employee Information**. You acknowledge and agree that during the term of your employment, the EPAM Group has your permission to process and transfer data relating to you for legal, personnel, administrative, and business management purposes, including as examples, but without limitation: personal information (i) required to monitor sick time or other leave of absence eligibility; (ii) required to monitor compliance with equal opportunity policies and related government legislation; and (iii) relating to fitness for duty, including regarding background check criteria and results, to comply with policies, legal requirements, and contractual obligations to third parties. The EPAM Group may make such information available to those who provide products or services to it (such as advisors, payroll and benefits administrators), regulatory authorities, government or quasi-governmental organizations, clients to whom EPAM Group has contractual obligations, and any other cases where EPAM Group considers it reasonably necessary for legitimate business purposes, including within the U.S. or across country borders, to the extent permitted by law.

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in

your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(c) Non-Competition.

1. In the event you voluntarily resign employment, then you agree that for the term of your employment plus 12 months following termination of employment not to become (whether directly or indirectly) an employee, contractor or fiduciary, of any EPAM Group client who you were actively engaged with in the last 6 months prior to the termination of your employment, to perform work of a similar nature as compared to work you performed for the client in the last 6 months of your EPAM employment, without first securing the written consent of your Employer, which may be given or denied at the sole discretion of your Employer. The restrictions in this subsection shall not apply in case of an involuntary termination.; and

2. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell) any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section 5(c) shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(d) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

(e) Transfer Outside of State. In the event your primary work location changes in the course of employment to within California, Colorado, Hawaii, Illinois, Massachusetts, Minnesota, Nevada, North Dakota, Oklahoma, Washington, D.C., or Washington State, then Section 5 above, in its entirety, shall become void and will be replaced with the relevant provision in Exhibit A solely with respect to the time period following the transfer. If you subsequently return to working in a state outside California, Colorado, Hawaii, Illinois, Massachusetts, Minnesota, Nevada, North Dakota, Oklahoma, Washington, D.C., or Washington State, then the above Section 5 shall be reinstated and applicable following that move.

**6. Non-Disparagement**. You agree that you will not make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the EPAM Group or its businesses, or any of its employees, officers, and existing and prospective clients, suppliers, investors, and other associated third parties. Notwithstanding the foregoing, this provision is limited by the same exceptions outlined in Sections 1(d)-(e), and any other legally required exclusions, including that nothing in this Agreement prohibits you from (a) disclosing information in good faith to any federal, state, or local governmental agency, legislative body, or official (or staff member to the foregoing) regarding an alleged violation of law or regulation; (b) from discussing or disclosing information about unlawful acts in the workplace, such as harassment, discrimination, retaliation, wage and hour violations, sexual assault, violations of public policy, or any other conduct that you have reason to believe is unlawful; or (c) otherwise making disclosures that are protected under applicable law, including, without limitation, the National Labor Relations Act, the Defend Trade Secrets Act, and any rule or regulation promulgated by the Securities and Exchange Commission (SEC), the National Labor Relations Board (NLRB), the Equal Employment Opportunity Commission (EEOC), or any other federal, state, or local government agency.

**7. Remedies, Arbitration, and Class Waiver.** You understand and acknowledge that any breach of any covenant or agreement in this Agreement by you will cause irreparable harm to the EPAM Group, and that such harm will usually be difficult if not impossible to ascertain.

Any claim, dispute, or controversy between you and the EPAM Group (including its officers, directors, supervisors, managers, employees, or agents ), arising out of or relating to your employment, the termination of your employment, or this Agreement, shall be resolved by final and binding arbitration before a single arbitrator under the rules of the American Arbitration Association ("AAA") pertaining to employment matters ("AAA Rules"). The claims covered by this arbitration provision include, but are not limited to, claims relative to alleged breach of contract (express or implied), tort, wrongful termination, discrimination or harassment, wages or other compensation, and any other federal, state, or other governmental law, statute, regulation, or ordinance.

EPAM Group is engaged in interstate commerce; thus, interpretation and enforcement of this arbitration provision shall be governed by the substantive provisions of the Federal Arbitration Act (FAA). If for any reason the substantive provisions of the FAA do not apply, interpretation and enforcement of this arbitration provision shall be governed by the law of the state where you worked for EPAM Group. The arbitrator shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this arbitration provision, except for any claim that the class or collective action waiver below is unenforceable, which will be determined only by a court of competent jurisdiction, and not an arbitrator. If any portion of this arbitration provision is held to be invalid or unenforceable, in whole or in part, the

remaining portions shall continue to be valid and any unenforceable or conflicting provision shall be automatically severed. If the waiver of class and collective claims is found to be unenforceable despite this severability provision, then any claim brought on a class or collective action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims, but the portion of the waiver of class and collective claims that is enforceable shall be enforced in arbitration. The AAA Rules may be found as of the Effective Date at https://www.adr.org/Rules. AAA contact information for other questions about the process can be found as of the Effective Date at https://www.adr.org/Rules. The arbitrator shall be a retired judge or attorney with experience in the general area of the dispute. The arbitrator shall be selected by mutual agreement of the parties to the arbitration or, if the parties cannot agree, then by striking from a list of 11 arbitrators supplied by AAA. Each party shall have 10 calendar days from the postmark date on the list to strike all names on it deemed unacceptable. If only one common name remains on the list of all parties, the individual shall be designated as the arbitrator. If more than one common name remains, the parties shall strike names alternatively with the party striking first to be determined by coin toss, until only one common name remains. If no common names remain, then AAA shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party striking first to be determined by a coin toss, until only one name remains. That person shall be designated as the Arbitrator.

The arbitrator will have the power to decide dispositive motions prior to any arbitration hearing.

You and EPAM Group furthermore agree that to the maximum effect permitted by law, all claims covered by this provision may only be brought in the party's individual capacity, and you and EPAM Group waive any right to bring, maintain, or to participate in any class or collective action(or any action involving class or collective certification procedures). Claims asserted under the Private Attorneys General Act (PAGA) involving any violations suffered by a party individually shall be arbitrated on an individual basis only. The parties agree that any non-individual claim asserted under PAGA involving any violations suffered by other individuals will be stayed pending the outcome of the arbitration involving any violations suffered by a party individually.

The decision of the arbitrator will be in writing and contain findings of fact and conclusions of law.

The obligation to arbitrate is mutual, and binding on you and the EPAM Group. The venue for such arbitration shall be the county and state of your employment at the time the alleged cause of action arose. Any arbitral award determination shall be final and binding. **It is understood and agreed that by agreeing to arbitration, the right to a jury trial, as well as normal-course appeal rights in court, are waived.** The EPAM Group will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing except for the filing fee if a claim is initiated by you, in which case you will be responsible to pay the filing fee up to a maximum of the amount you would have paid if you filed a complaint the court of general jurisdiction in the state in which you are/were employed. Each side bears its own deposition, witness, expert and attorney's fees and other expenses to the same extent as if the matter were being heard in court. If, however, any party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, then the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to who is a prevailing party and/or the reasonableness of any fee or costs shall be resolved by the arbitrator.

Additionally, in the event of any breach of this Agreement, the prevailing party shall be entitled to recovery of damages arising under this Agreement including, without limitation, reasonable attorneys' fees and all other costs and expenses incurred in securing a judgement for breach aside from the arbitrator's fees and arbitration expenses unique to arbitration; however, nothing in this Agreement shall be construed to permit a party to recover any damages, fees, or other costs or expenses in connection with court proceedings to initiate, compel, or oppose arbitration.

This arbitration provision does not preclude you from filing a charge with any state or federal agency such as for example with any federal, state or local equal employment opportunity or fair employment practices agency, or any other federal, state or local government official or office – this arbitration provision applies solely to the waiver of a court filing by you in favor of an arbitration filing. Also excluded are claims under any employee benefit plan that specifies a different arbitration procedure, claims for workers' compensation, claims for unemployment compensation benefits, or any other claims that, as a matter of law, cannot be compelled to arbitration. In addition, to the extent permitted by applicable law, this arbitration provision does not preclude either you or EPAM Group from seeking injunctive relief in a court of law.

8. **Successors and Assigns**. To the extent permitted by law, the EPAM Group may assign this Agreement to any subsidiary or corporate affiliate in the EPAM Group, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation, or otherwise) to all or substantially all of the business or assets of the EPAM Group, and you hereby consent to any such assignment. This Agreement shall inure to the benefit of the EPAM Group and permitted successors and assigns and is enforceable by any member of the EPAM GROUP and permitted successors and assigns. You however may not assign this Agreement or any part hereof given the personal nature of the obligations. Any purported assignment by you shall be null and void.

9. **Choice of Law and Forum Selection**. Except as specifically provided in Section 7, this Agreement and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute, are governed by, and construed in accordance with, the laws of the State of Delaware without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the laws of any jurisdiction other than the State of Delaware to apply. Subject to Section 7, to the extent that any lawsuit is nonetheless permitted under this Agreement, any action or proceeding shall be brought in the court closest in proximity to and with jurisdiction over Bucks County, Pennsylvania. The parties to this Agreement hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue. Only in the event that at the time a cause of action arose,(i) your primary work location is within California, Hawaii, Massachusetts, Nevada, North Dakota, Oklahoma or Washington, or (ii) your primary work location is in another state in which the choice of law or forum selection requirements in this section 9 is unlawful and/or unenforceable, then in either case the choice of law and/or forum selection requirements, as applicable, will be replaced with the state of your work at the time the cause of action arose. Nothing in this section shall restrict a party from filing in, or removal to, federal court.

10. **Modification and Waiver**. No provision of this Agreement may be amended or modified unless agreed to in writing and signed by you and an Officer of EPAM. No waiver of any breach shall be deemed a waiver of any similar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay in exercising any right, power, or privilege under this Agreement operate as a waiver to preclude any other or further exercise of any right, power, or privilege. Additionally, if you believe any future conduct by you could even arguably be in violation of any of the covenants and agreements in this Agreement, you commit to providing written notice to EPAM Systems, Inc's General Counsel before engaging in such conduct, with a description of the anticipated conduct and any request for a modification of the term(s) you believe could be offended, at which time the EPAM Group may decide in its sole discretion whether or not to agree to a modification of any provision of this Agreement.

11. **Severability**. If any provision of this Agreement is held by a court or arbitral authority of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held unenforceable and thus stricken, that holding shall not affect the validity of the remainder of this Agreement, with the balance being binding with any modification to become a part of and treated as though originally set forth in this Agreement. It is further agreed that any such court or arbitral authority is expressly authorized to modify any unenforceable provision of this Agreement instead of severing it from this Agreement, whether by rewriting the offending provision, deleting any or all of the provision, adding additional language to this Agreement, or by making any other modifications it deems warranted to carry out the intent and agreement as embodied in this Agreement to the maximum extent permitted by law. The parties to this Agreement agree that this Agreement as so modified shall be binding upon and enforceable against each of them.

12. **Counterparts**. This Agreement may be executed in counterparts. Delivery of an executed signature page by facsimile, pdf attached to email, or any other electronic means intended to preserve the original graphic and appearance of the document has the same effect as delivery of an executed original.

13. **Notice to Third Parties/Subsequent Employers**. If/when your employment within the EPAM Group terminates, whether voluntarily or involuntarily, you agree that for twelve months following termination of your employment, you will provide to any subsequent employer a copy of this Agreement. In addition, you authorize EPAM Group to provide a copy of this Agreement to third parties, including but not limited to, any subsequent, anticipated, or possible future employer.

14. **At-Will Employment and Status.** Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine, or otherwise modify the "at-will" status of the employment relationship, pursuant to which you or your

Employer may terminate the employment relationship at any time, with or without cause, and with or without notice. Furthermore, nothing in this Agreement implies or creates an employment relationship between you and any other entity in the EPAM Group, except between you and your Employer.

BY SIGNING BELOW YOU ACKNOWLEDGE YOU HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND HAVE READ AND UNDERSTOOD ALL PROVISIONS OF THIS AGREEMENT AND THE ATTACHED EXHIBIT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION THEREOF.

**IN WITNESS WHEREOF**, this Agreement, including Exhibit A, has been executed as of the Effective Date above.

EPAM SYSTEMS, INC.:

Signature: [signature]

Print Name: Larry Solomon

Title: SVP, Chief People Officer

EMPLOYEE:

Signature: [signature]

Print Name: Gowtham Rao

## EXHIBIT A

In the event your primary work location changes to California, Colorado, Hawaii, Illinois, Massachusetts, Minnesota, Nevada, North Dakota, Oklahoma, Washington D.C., or Washington State during your employment, then Section 5 of the Agreement in its entirety shall become void and will be replaced with the relevant provision below with respect to the time period spent in such state.

**In the event your primary work location changes to California**:

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain skills and non-public knowledge relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not use the EPAM Group's trade secrets to directly or indirectly solicit or recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information (much of which is non-public), such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not use EPAM Group trade secrets to directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(c) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

(d) Transfer Outside of State. In the event your primary work location changes in the course of employment to outside California, then Section 5 above, in its entirety, shall become void and will be replaced with the relevant provision in Exhibit A solely with respect to the time period following the transfer. If you subsequently return to working in California, then the above Section 5 shall be reinstated and applicable following that move.

**In the event your primary work location changes to Colorado:**

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that:

(i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Scope and Coverage. You and the EPAM Group agree that Section 5(d) will not be enforceable against you unless you earn annualized cash compensation equivalent to or greater than the threshold amount for highly compensated workers (as determined by the division of labor standards and statistics in the Colorado department of labor and employment), both at the time this Agreement is executed by you and at the time it is enforced. For purposes of this section, "annualized cash compensation" shall mean: (i) the amount of gross salary or wage amount, the fee amount, or other compensation amount for a full year of work; or (ii) if you were not employed for a full year, the annual compensation you would have earned, based on your gross salary, wage amount, fee amount, or other compensation. You and the EPAM Group further agree that Section 5(c) (Non-Solicitation of Clients) will not be enforceable against you unless you earn annualized cash compensation equivalent to or greater than sixty (60) percent of the threshold amount for highly compensated workers, both at the time this Agreement is executed by you and at the time it is enforced.

(b) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(c) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's confidential client information and trade secrets, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to clients about whom you possess trade secret or confidential information gained during the last 12 months of your employment. The restriction applies broadly, without this limitation, while you remain employed.

(d) Non-Competition.

1. In the event you voluntarily resign employment, then you agree that for the term of your employment plus 12 months following termination of employment not to become (whether directly or indirectly) an employee, contractor or fiduciary, of any EPAM Group client who you were actively engaged with in the last 6 months prior to the termination of your employment, to perform work of a similar nature as compared to work you performed for the client in the last 6 months of your EPAM employment, without first securing the written consent of your Employer, which may be given or denied at the sole discretion of your Employer. The restrictions in this subsection shall not apply in case of an involuntary termination.; and

2. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell)

any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(e) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Hawaii, North Dakota, or Oklahoma:**

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. Unless employed within Hawaii, in which case you are exempt from this Section (a) restriction for such period of employment, you agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM

Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(c) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Illinois**:

**5. Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Notice of Employer Election of Non-Competition and Non-Solicitation Provisions. You and the EPAM Group agree that if your employment by your Employer within the EPAM Group is terminated for any reason, the EPAM Group will notify you whether it will (A) not enforce Sections 5(c), (d), and (e) against you or (B) if it will enforce Sections 5(c), (d) and/or (e) against you and will pay you compensation equivalent to: (i) 50% of your final annualized base pay at the time of termination minus the amount of any compensation you earn from other sources after termination, which you agree to disclose to the EPAM Group in full, provided that in no event shall your compensation be less than 30% of your final annualized base pay at the time of termination; or, if your Employer terminates your employment as the result of business circumstances or governmental orders related to the COVID-19 pandemic or under circumstances that are similar to the COVID-19 pandemic, (ii) 110% of your final annualized base pay at the time of termination minus the amount of any compensation you earn from other sources after termination, which you agree to disclose to the EPAM Group in full, provided that in no event shall your compensation be less than 70% of your final annualized base pay at the time of termination. If EPAM does not make the designation as between (A) and (B) to you in writing within 14 days of your employment termination date, then (A) shall apply by default. Payments made under this Section shall be monthly, with 1/12th of the applicable pay rate due on or before the final day of the month.

(b) Scope and Coverage. You and the EPAM Group agree that Sections 5(c) & (d) will not be enforceable against you unless your earnings from your Employer within the EPAM Group exceed the following annual compensation thresholds, reflected as wages, tips, and any other form of taxable compensation on your IRS Form W-2: (i) $45,000 for agreements entered into on or after January 1, 2022 and prior to January 1, 2027; (ii) $47,500 for agreements entered into on or after January 1, 2027 and prior to January 1, 2032; (iii) $50,000 for agreements entered into on or after January 1, 2032 and prior to January 1, 2037; and (iv) $52,500 for agreements entered into on or after January 1, 2037. You and the EPAM Group further agree that Section 5(e) will not be enforceable against you unless your earnings from your Employer within the EPAM Group exceed the following annual compensation thresholds, reflected as wages, tips, and any other form of taxable compensation on your IRS Form W-2: (i) $75,000 for agreements entered into on or after January 1, 2022 and prior to January 1, 2027; (ii) $80,000 for agreements entered into on or after January 1, 2027 and prior to January 1, 2032; (iii) $85,000 for agreements entered into on or after January 1, 2032 and prior to January 1, 2037; and (iv) $90,000 for agreements entered into on or after January 1, 2037.

(c) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months

preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(d) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(e) Non-Competition.

1. In the event you voluntarily resign employment, then you agree that for the term of your employment plus 12 months following termination of employment not to become (whether directly or indirectly) an employee, contractor or fiduciary, of any EPAM Group client who you were actively engaged with in the last 6 months prior to the termination of your employment, to perform work of a similar nature as compared to work you performed for the client in the last 6 months of your EPAM employment, without first securing the written consent of your Employer, which may be given or denied at the sole discretion of your Employer. The restrictions in this subsection shall not apply in case of an involuntary termination.; and

2. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell) any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM

Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(f) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Massachusetts**:

**5. Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(c) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Minnesota:**

**5. Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(c) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Nevada:**

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(b) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or

prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

c. Non-Competition. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell) any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(c) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Washington, D.C.:**

**5. Restrictive Covenants.** You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i)your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Scope and Coverage. You and the EPAM Group agree that Section 5(d) will not be enforceable against you unless you earn minimum qualifying annual compensation equivalent to or greater than the threshold amount for highly compensated employees. For purposes of this section, "minimum qualifying annual compensation" shall mean: (i) prior to January 1, 2024, $150,000; and (ii) on and after January 1, 2024, an amount equal to the previous calendar year's minimum qualifying annual compensation, increased in proportion to the annual average increase, if any, in the Consumer Price Index for All

Urban Consumers in the Washington Metropolitan Statistical Area published by the Bureau of Labor Statistics of the United States Department of Labor for the previous calendar year adjusted to the nearest whole dollar.

(b) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group who is or has been employed/engaged by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(c) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(d) Non-Competition.

1. In the event you voluntarily resign employment, then you agree that for the term of your employment plus 12 months following termination of employment not to become (whether directly or indirectly) an employee, contractor or fiduciary, of any EPAM Group client who you were actively engaged with in the last 6 months prior to the termination of your employment, to perform work of a similar nature as compared to work you performed for the client in the last 6 months of your EPAM employment, without first securing the written consent of your Employer, which may be given or denied at the sole discretion of your Employer. The restrictions in this subsection shall not apply in case of an involuntary termination; and

2. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell) any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of

any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(e) Tolling: If you violate any of the terms of the restrictive covenant obligations in this Agreement, the term for all such restrictions shall automatically be extended by the period you were in violation of them.

**In the event your primary work location changes to Washington State:**

5. **Restrictive Covenants**. You understand the nature of your position gives you access to and knowledge of Confidential Information and places you in a position of trust and confidence with the EPAM Group. You acknowledge and agree that: (i) your services to be rendered to the EPAM Group are of a special and unique character; (ii) that you will obtain knowledge and skill relevant to the EPAM Group's industry, methods of doing business, inventions, marketing strategies and/or other Confidential Information by virtue of your employment; and (iii) that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interests of the EPAM Group. As a result, and in return for employment and access to Confidential Information you will be provided in your role, you agree to the following restrictive covenants, regardless of the reason for any future employment termination:

(a) Scope and Coverage. You and the EPAM Group agree that Section 5(b), (c) and (d) will not be enforceable against you unless you earn from your Employer within the EPAM Group at least $100,000 annually in W-2 Box 1 compensation, as adjusted annually for inflation after January 1, 2020, by the Washington State Department of Labor & Industries. You further agree (and acknowledge that you have received notice from the EPAM Group through this Agreement) that if, at the time you sign this Agreement, you do not earn from your Employer within the EPAM Group at least $100,000 annually in total W-2 Box 1 compensation (adjusted for inflation), then Section 5(b), (c), and (d) will automatically become enforceable against you if and when you begin earning from your Employer within the EPAM Group at least $100,000 annually in total W-2 Box 1 compensation (adjusted for inflation).

(b) Non-Solicitation of Employees. You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, hire, engage, recruit, or attempt such acts, with respect to any employee or contractor of the EPAM Group or any employee who has been employed by the EPAM Group in the 3 months preceding your termination of employment (collectively, "Covered Employee/Contractor"), or induce the termination of employment or services of any Covered Employee/Contractor.

(c) Non-Solicitation of Clients. You understand and acknowledge that because of your relationship to the EPAM Group, you will have access to and learn about the EPAM Group's client information, such as for example: names, phone numbers, addresses, email addresses, service history, structure, pricing, and other information specific to the client and relevant to the provision of services by EPAM Group. You further understand and acknowledge that loss of any client relationship or goodwill will cause significant and irreparable harm to the EPAM Group.

You agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit, contact, or attempt to solicit or contact, using any form of oral, written, or electronic communication, including, but not limited to, electronic or other mail, phone, fax, instant message, or social media, or meet with the EPAM Group's current, former, or prospective clients, for purposes of offering services similar to or competitive with those offered by the EPAM Group. Following termination of employment, this restriction shall only apply to: (i) any clients or

prospective clients you had any contact with during the 12 months preceding termination of employment; and separately, (ii) any clients about whom you possess trade secret or confidential information gained during the 12 months preceding termination of your employment. The restriction applies broadly, without the limitations in (i) and (ii), while you remain employed.

(d) Non-Competition.

1. In the event you voluntarily resign employment, then you agree that for the term of your employment plus 12 months following termination of employment not to become (whether directly or indirectly) an employee, contractor or fiduciary, of any EPAM Group client who you were actively engaged with in the last 6 months prior to the termination of your employment, to perform work of a similar nature as compared to work you performed for the client in the last 6 months of your EPAM employment, without first securing the written consent of your Employer, which may be given or denied at the sole discretion of your Employer. The restrictions in this subsection shall not apply in case of an involuntary termination.; and

2. In the event you voluntarily resign employment, then you agree that for 12 months following termination of your employment, not to engage in activity in which you contribute directly or indirectly in a senior management role as an employee, employer, owner, contractor, fiduciary, or in any other capacity, to a direct competitor of the EPAM Group for purposes of performing similar duties as compared to your EPAM position during the last 12 months preceding your termination. A direct competitor for purpose of this provision is an individual or entity that sells (or seeks to sell) any of the same or similar nature services as compared to the services you were involved with by providing support for, having management oversight over, or possessing confidential information about, during your last 12 months of employment. A senior management role is defined for purpose of this provision as any role that: is involved in setting strategic direction, oversees a functional area that performs any activities competitive with the EPAM Group, supports mergers and acquisition activity, manages client accounts or relationships from a business or delivery perspective, or is involved in new business or new client generation. This prohibition also includes any activity that requires or inevitably requires disclosure of trade secrets, proprietary information, or Confidential Information. The geographic scope of the restriction applies to any country in which you had any contact with clients or potential clients of the EPAM Group or performed any services for the EPAM Group within the last 12 months preceding your termination. The restrictions in this subsection shall not apply in case of an involuntary termination.

Nothing herein shall prohibit you from purchasing or owning less than five percent (5%) of the publicly traded securities of any company, provided such ownership represents a passive investment and you are not a controlling person of, or a member of a group that controls, such Company.

Additionally, nothing in this Section shall restrict you from engaging in the practice of medicine that is not in competition with the EPAM Group and which does not otherwise present a conflict of interest, such as for example your providing volunteer physician services at the Ann Silverman Clinic or providing physician services at the Veterans Health Administration. These nature activities will be performed independent of your EPAM Group employment. You agree that in case your outside activities might increase in scope or become in any way competitive with the services of the EPAM Group or involve working directly with EPAM Group clients, you will disclose such expanded scope of activities in order for a conflicts of interest review to be completed.

(e) Tolling: If you violate any of the terms of the restrictive covenant obligations in Section 5(b), (c), or (d), the term for all such restrictions shall automatically be extended by the period you were in violation of them.

(f) Layoff; Garden Leave Payments. You and the EPAM Group agree that if your employment by your Employer within the EPAM Group is terminated as the result of a layoff, the EPAM Group will notify you whether it will (i) not enforce Section 5(b), (c), and (d) against you and instead you will be subject to the restrictions outlined under Section 5(g), or (ii) if it will enforce Sections 5(b), (c) and (d) against you and will pay you compensation equivalent to your final base pay at the time of termination minus the amount of any compensation you earn from other sources after termination, which you agree to disclose to the EPAM Group in full. If EPAM does not make this designation as between (i) or (ii) to you in writing within 14 days of your employment termination date then (i) shall apply by default. You understand and agree that for purposes of this Section 5, "layoff" means termination of employment by your Employer for reasons of the EPAM

Group's insolvency or other purely economic factors, and specifically excludes termination of your employment for any other reason, either with or without cause.

(g) Non-solicitation of Employees and Clients – Lower-Compensated Employees, and Layoff. If you are not covered by Section 5(b), (c), and (d) above because you do not earn the required compensation as described in Section 5(a), or because you were subject to a Layoff as defined by Section 5(f) and the Company has waived Section 5(b), (c) and (d) pursuant to 5(f), you nonetheless agree that for the term of your employment plus 12 months following termination of employment, you will not directly or indirectly solicit any employee of the EPAM Group to leave employment with the EPAM Group, or solicit any client of the EPAM Group with whom you had contact or confidential information about in the last 12 months to cease or reduce the extent to which it is doing business with the EPAM Group.