**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br>Plaintiff, Counterclaim-Defendant<br><br>- against -<br><br>GOWTHAM RAO and COREASON, INC.,<br>Defendants. | Civ. A. No. 2:25-cv-06260-WB |
| GOWTHAM RAO,<br>Counterclaim-Plaintiff,<br><br>- against -<br><br>EPAM SYSTEMS, INC.,<br>Counterclaim-Defendant. | |

**DEFENDANT GOWTHAM RAO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED PURSUANT TO POLICIES § IV.C**

## TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL POSTURE ... 5
II. APPLICABLE LEGAL STANDARDS ... 8
III. STATEMENT OF FACTS AS ALLEGED IN THE SECOND AMENDED COMPLAINT . 9
IV. ARGUMENT ... 11
A. Counts I and II: Particularity and Scope of Claimed Trade Secrets ... 11
B. Counts I and II: Qualifying Rights in Client Software ... 13
C. Counts I and II: Misappropriation Scope Under *Oakwood* ... 14
D. Counts VIII, IX, and XI: Common-Law Property Torts and Statutory Displacement ... 15
E. Count X: Lanham Act False Advertising (15 U.S.C. § 1125(a)(1)(B)) ... 19
F. Count XII: Declaratory Judgment ... 21
V. CONCLUSION AND REQUESTED RELIEF ... 23

# TABLE OF AUTHORITIES



| **Authority** | **Pages** |
|---|---|
| *Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168 (3d Cir. 2020) | 14 |
| *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450 (E.D. Pa. 1992) | 18 |
| *Alpha Card Servs., LLC v. Toombs*, No. 25-cv-04907, 2026 WL 1161448 (E.D. Pa. Apr. 29, 2026) | 5, 12, 13, 14 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 8, 15 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 8 |
| *Cenveo Corp. v. Slater*, No. 06-cv-2632, 2007 WL 527720 (E.D. Pa. Feb. 12, 2007) | 18 |
| *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) | 8 |
| *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) | 7, 19, 20, 24 |
| *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968) | 9 |
| *EXL Labs., LLC v. Egolf*, No. 10-2118, 2011 WL 880453 (E.D. Pa. Mar. 11, 2011) | 18 |
| *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320 (D. Del. 2017) | 16, 17 |
| *IQVIA Inc. v. Breskin*, No. 22-1088, 2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) | 6, 12, 24 |
| *Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) | 8 |
| *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634 (3d Cir. 2000) | 18 |
| *Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620 (Pa. Super. Ct. 1983) | 17 |
| *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) | *passim* |
| *Parks, LLC v. Tyson Foods, Inc.*, 863 F.3d 220 (3d Cir. 2017) | 7, 19, 24 |
| *Peruto v. Roc Nation*, 386 F. Supp. 3d 471 (E.D. Pa. 2019) | 17 |
| *State Auto Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000) | 7, 21 |
| *TCS Black Label Realty, LLC v. Serhant Pa., LLC*, 352 A.3d 528 (Pa. Super. Ct. 2026) | 7, 16, 17, 18, 24 |
| *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659 (E.D. Pa. 2018) | 18 |
| *West v. AT&T Co.*, 311 U.S. 223 (1940) | 18 |
| *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) | 21 |
| **Statutes and Rules** | |
| 15 U.S.C. § 1125(a)(1)(B) (Lanham Act § 43(a)) | 7, 19, 21, 24 |
| 18 U.S.C. § 1833(b) | 15 |
| 18 U.S.C. § 1836 *et seq.* (Defend Trade Secrets Act) | *passim* |
| 18 U.S.C. § 1838 | 15 |
| 18 U.S.C. § 1839 | *passim* |

| **Authority** | **Pages** |
|---|---|
| 12 Pa. C.S. § 5301 *et seq.* (PUTSA) | 8 |
| 12 Pa. C.S. § 5302 | 8, 14 |
| 12 Pa. C.S. §§ 5303–5305 | 22 |
| 12 Pa. C.S. § 5308 | *passim* |
| 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act) | 7, 21 |
| Fed. R. Civ. P. 12(b)(6) | 5, 8, 9 |
| Fed. R. Civ. P. 57 | 21 |

## I. INTRODUCTION AND PROCEDURAL POSTURE

I respectfully move on my own behalf under Federal Rule of Civil Procedure 12(b)(6) to dismiss certain of the claims asserted against me in EPAM's Second Amended Complaint (SAC), ECF No. 93. I appear *pro se* and seek no relief on behalf of corporate co-defendant CoReason, Inc., including on Count VII, which is asserted against CoReason alone. ECF No. 93 ¶¶ 188–195, at 40–41. This motion tests the legal sufficiency of the SAC's allegations and the terms of the agreements attached to it; it does not ask the Court to resolve disputed facts about how any software was developed.

On September 24, 2026, the Court granted EPAM leave to amend (ECF No. 91). EPAM filed the SAC on September 28 (ECF No. 93), and the Court denied my prior motion directed to the First Amended Complaint as moot (ECF No. 95). This motion addresses the SAC.

**Scope of Motion.** This motion does not seek dismissal of Counts Three, Four, Five, Six, or Thirteen. I do not concede liability on those counts, and reserve all defenses for responsive pleadings, summary judgment, and trial.

The Second Amended Complaint spans 261 paragraphs and asserts thirteen counts. This motion challenges only the claims and theories identified below:

1. **Particularity and Scope of Claimed Trade Secrets (Counts I & II, ECF No. 93 ¶¶ 121–153, at 28–34; Sections IV.A & IV.B):** EPAM identifies software codebases (the ETL Conversion Kit, AI Cohort Generator, and AI Accelerator, including MedRag and Synapse), compilation categories, and six SharePoint recipes (ECF No. 93 ¶¶ 24–28, at 7–8; ¶¶ 37–38, at 9–10; ¶¶ 63–68, at 16–17; ¶ 95, at 23; ¶¶ 112–114, at 27). Under *Alpha Card Services LLC v. Toombs*, No. 25-cv-04907, 2026 WL 1161448, at *9–10 (E.D. Pa.

Apr. 29, 2026), that identification prevents whole-count dismissal on specificity grounds. EPAM cannot expand its trade-secret claims simply by pointing to the number of downloaded files or describing them under broad omnibus labels (*IQVIA, Inc. v. Breskin*, No. 22-1088, 2023 WL 2588450, at *4 (E.D. Pa. Mar. 20, 2023)). I ask the Court to limit Counts I and II to the alleged trade secrets EPAM describes in the SAC. EPAM should not be allowed to expand those claims to files or categories of information it has not described (*Section IV.A*).

Separately, to the extent Count I asserts client-owned trade secrets for which the SAC does not plausibly allege that EPAM holds rightful legal or equitable title or a license under 18 U.S.C. § 1839(4) (ECF No. 93 ¶ 4, at 2; ¶ 39, at 10; ¶ 95, at 23; ¶ 97, at 23; Prayer ¶ 3, at 52), it fails to state a federal claim, warranting dismissal without prejudice with fourteen days' leave to plead title or license (*Section IV.B*).

2. **Misappropriation Scope Under *Oakwood* (Counts I & II; Section IV.C):** While *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910–13 (3d Cir. 2021), recognizes that circumstantial evidence can support an inference of use at the pleading stage for identified software and recipes, that inference cannot be stretched across unpleaded subject matter or thousands of downloads. EPAM alleges approximately 44,960 downloads, including code for the named software products (ECF No. 93 ¶¶ 93–97, at 23), but the number of downloads does not, by itself, identify additional trade-secret subject matter. The actionable scope of Counts I and II is bounded by the trade secrets actually described in the pleading.

3. **Statutory Displacement and Tangible Property Bar (Counts VIII, IX, & XI, ECF No. 93 ¶¶ 196–211, 229–247, at 41–43, 46–49; Section IV.D):** Under Pennsylvania law,

12 Pa. C.S. § 5308(a) displaces common-law tort and restitution remedies predicated on trade-secret misappropriation (*Section IV.D.1*). Independently, under *TCS Black Label Realty, LLC v. Serhant Pa., LLC*, 352 A.3d 528, 545–46 (Pa. Super. Ct. 2026), replevin (Count VIII) and conversion (Count IX) are strictly confined to tangible property or intangible rights merged into a physical document. Because EPAM seeks the return of electronic files and digital data stored on personal devices and accounts (ECF No. 93 ¶¶ 198, 204–205, at 41–42), and concedes that it received its company computer on October 31, 2025 (id. ¶ 91, at 22), Counts VIII and IX fail as a matter of law and should be dismissed with prejudice (*Section IV.D.2*).

4. **Lanham Act False Advertising (Count X, ECF No. 93 ¶¶ 212–228, at 43–46; Section IV.E):** Under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34–38 (2003), and *Parks, LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226–27, 229 (3d Cir. 2017), § 43(a)(1)(B) does not create an attribution requirement for software concepts, ideas, or code origin. Because EPAM pleads no false statement concerning the nature, characteristics, or qualities of commercial goods, its attribution and origin theory (ECF No. 93 ¶¶ 213–227, at 43–46) fails as a matter of law, warranting dismissal with prejudice, with leave to amend confined to an identified product-characteristic representation (*Section IV.E*).

5. **Declaratory Judgment (Count XII, ECF No. 93 ¶¶ 248–256, at 50; Section IV.F):** Discretionary declaratory relief should be declined under *State Auto Insurance Cos. v. Summy*, 234 F.3d 131, 133–34 (3d Cir. 2000). I ask the Court to dismiss Paragraphs 253 and 255 without prejudice as to me to the extent they seek a transfer of title based solely on statutory trade-secret misappropriation. ECF No. 93 ¶¶ 253, 255, at 50. In addition,

Paragraph 254 (id. ¶ 254, at 50) duplicates the declaratory relief already sought in Count IV (id. ¶ 171, at 37) as to me (*Section IV.F*).

---

**II. APPLICABLE LEGAL STANDARDS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions and formulaic recitations are set aside, and the Court evaluates whether the remaining well-pleaded factual allegations give rise to a plausible entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

The Court's review is confined to the complaint, its attached exhibits, matters of public record, and undisputedly authentic documents upon which claims are based. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Both the Defend Trade Secrets Act (DTSA, 18 U.S.C. § 1836 *et seq.*) and the Pennsylvania Uniform Trade Secrets Act (PUTSA, 12 Pa. C.S. § 5301 *et seq.*) require plausible allegations of: (1) a protectable trade secret deriving independent economic value from secrecy and subject to reasonable secrecy measures; and (2) misappropriation through improper acquisition or nonconsensual use or disclosure. 18 U.S.C. § 1839(3), (5); 12 Pa. C.S. § 5302; *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). For federal DTSA claims, the plaintiff must also establish statutory ownership—meaning the person or entity "in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. §§ 1836(b)(1), 1839(4).

The claimed secret must be described with sufficient particularity to separate it from general knowledge in the trade and permit the defendant to ascertain the boundaries within which it lies. *Oakwood*, 999 F.3d at 906 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

---

## III. STATEMENT OF FACTS AS ALLEGED IN THE SECOND AMENDED COMPLAINT

Accepting the well-pleaded factual allegations in the Second Amended Complaint (ECF No. 93) and its attached exhibits as true solely for purposes of this Rule 12(b)(6) motion, the SAC alleges the following:

**Employment and Policy Framework.** EPAM employed me as Managing Principal, Life Sciences Consulting, from on or about November 18, 2024, until my termination on October 15, 2025. ECF No. 93 ¶ 3, at 2; ¶ 44, at 11. In that role, I headed the data science business unit within EPAM's life sciences and real-world evidence practice, with responsibilities for business development, revenue generation, portfolio management, and team oversight. ECF No. 93 ¶ 45, at 12. In connection with that work, EPAM granted me access to its systems, files, client communications, and software tools. ECF No. 93 ¶ 122, at 28; ¶ 139, at 31.

EPAM attaches to the SAC its Employment Covenants Agreement (ECA, Ex. 1, ECF No. 93-1), Code of Ethical Conduct (Ex. 2, ECF No. 93-2), and Acceptable Use of IT Resources Policy (Ex. 3, ECF No. 93-3). The ECA restricts copying and removal of company information except "as required in the performance of your authorized employment." ECF No. 93-1 § 1(d), at 3. The IT policy sets conditions for storage and personal-device use (ECF No. 93-3 § 3.14, at 16–17; § 3.21, at 26). Section 3.28 requires employees to review Company and Client data on personal devices and personal cloud storage, place or return Company data to Company storage, and

remove Company and Client data from those personal locations. ECF No. 93-3 § 3.28, at 31. Following my termination on October 15, 2025, EPAM received my company-issued computer on October 31, 2025. ECF No. 93 ¶ 91, at 22.

**The Downloaded Files and Software Allegations.** EPAM alleges that between September 11 and October 14, 2025, I downloaded approximately 44,960 data files from company systems to external storage devices. ECF No. 93 ¶¶ 93–96, at 23. It alleges that many of these files related to historical data, clients, or projects with which I had no involvement, involved information I did not need for my work at EPAM, or contained client-owned information. ECF No. 93 ¶ 97, at 23. With respect to software, EPAM identifies an "AI Accelerator" containing components such as "Synapse" and "MedRag." ECF No. 93 ¶ 27, at 7–8. It alleges that while heading data science, I worked on Synapse, refactored its code, inputted concepts into an AI model on August 10, 2025, and used six Strategic Recipes bearing the same names and, "with some differences in wording, the same material information" (id. ¶ 113, at 27). ECF No. 93 ¶¶ 64–68, at 16–17; ¶ 113, at 27; ¶ 134, at 30.

**Pre- and Post-Termination Activities.** EPAM alleges that during a September 18, 2025 discussion, I proposed moving current EPAM work to a separate company, and that an executive at an EPAM client committed to provide half-a-million in work over the next five to six months. ECF No. 93 ¶¶ 71–72, at 18–19. It further alleges discussions on September 21 regarding launching a competitor using a rebuilt version of Synapse, alongside registration of the coreason.ai domain on September 18. ECF No. 93 ¶¶ 74–75, at 19–20.

Following my termination, CoReason, Inc. was incorporated in Delaware on October 16, 2025 (ECF No. 93 ¶ 105, at 25), and that same day I stated on an external platform: "In full disclosure I am now a competitor for EPAM" (id. ¶ 104, at 25). On October 16–17, 2025, I participated in

meetings with representatives of Johnson & Johnson (id. ¶¶ 106–107, at 25), and CoReason published a website (www.coreason.ai) describing its software platform (id. ¶¶ 110–111, at 26; ¶¶ 214–216, at 43–44).

---

**IV. ARGUMENT**

**A. Counts I and II: Particularity and Scope of Claimed Trade Secrets**

A trade-secret plaintiff must identify the information it claims as secret with sufficient particularity to allow the Court to assess protectability and to provide fair notice for the defense. *Oakwood*, 999 F.3d at 905–06.

In the SAC, EPAM identifies certain specific software products and commercial categories, but simultaneously relies on an omnibus collective label—"EPAM Confidential Information and IP, including trade secrets" (ECF No. 93 ¶¶ 132, 133, 149, 150, at 30, 33)—to sweep in approximately 44,960 downloads (id. ¶ 1, at 1; ¶ 37, at 9–10; ¶¶ 93–97, at 23; ¶¶ 121–153, at 28–34). EPAM alleges approximately 44,960 downloads, including code for the named software products (id. ¶¶ 93–97, at 23), but the number of downloads does not, by itself, identify additional trade-secret subject matter. Specifically, the pleading identifies three categories of alleged trade-secret subject matter alongside an allegation of volume: (1) named software codebases and architecture, including the ETL Conversion Kit, the AI Cohort Generator, and the AI Accelerator (with MedRag and Synapse) (¶¶ 24–28, at 7–8; ¶¶ 63–68, at 16–17; ¶ 95, at 23); (2) commercial business categories in paragraph 37—such as client information, bid proposals, pricing, and compensation data—which EPAM frames in paragraph 38 as a protectable "playbook" compilation (¶¶ 37–38, at 9–10); and (3) six recipes in a CoReason toolkit allegedly

matching six EPAM SharePoint recipes (¶¶ 112–114, at 27), alongside the alleged volume of approximately 44,960 files downloaded to external media (¶¶ 93–97, at 23).

In *Alpha Card Services LLC v. Toombs*, No. 25-cv-04907, 2026 WL 1161448, at *9–10 (E.D. Pa. Apr. 29, 2026), this Court (Chief Judge Beetlestone) held that commercial information categories—including merchant client lists, prospective merchant client lists, pricing strategies, sales processes, referral partner information, and internal business strategies—are sufficient to survive a motion to dismiss. The Court explained that a plaintiff is not required at the outset to "spell out the details" of each trade secret, recognizing the "Catch-22" plaintiffs face before discovery. *Id.* at *10 (quoting *Oakwood*, 999 F.3d at 906). Because EPAM's pleaded commercial categories and access controls substantially track those sustained in *Alpha Card*, my identification challenge does not seek whole-count dismissal of software or compilation theories where specific products and categories have been described.

Instead, the governing boundary is established by *IQVIA, Inc. v. Breskin*, No. 22-1088, 2023 WL 2588450, at *4, *6–7 (E.D. Pa. Mar. 20, 2023). In *IQVIA*, the court dismissed DTSA and PUTSA claims without prejudice where an employee downloaded nearly 10,000 files to external drives, holding that a complaint describing general categories of confidential and proprietary information fails when it "do[es] not distinguish between information claimed to be trade secrets and information simply claimed to be confidential." *Id.* at *4.

Under the principles recognized in *IQVIA*, EPAM cannot use the sheer number of ~44,960 downloaded files, or omnibus labels describing materials as “confidential, proprietary, and/or trade-secret” (ECF No. 93 ¶ 37, at 9–10), to convert information the SAC does not identify as trade-secret subject matter into statutory trade secrets. A large download count alleges a means of acquisition; it does not identify secret subject matter. While whole-count dismissal on

identification is unavailable where specific products, compilation categories, and recipes are pleaded (*Alpha Card*, 2026 WL 1161448, at *9–10), I ask the Court to limit Counts I and II to the alleged trade secrets EPAM describes in the SAC: the three named software products with their code and architecture (¶¶ 25–28, at 7–8; ¶¶ 63–68, at 16–17; ¶ 95, at 23), the paragraph 37 categories and paragraph 38 compilation (at 9–10), and the six SharePoint recipes (¶ 113, at 27). EPAM should not be allowed to expand those claims to files or categories of information it has not described, such as unidentified "other similarly sensitive information" (¶ 37, at 9–10) or "other EPAM Confidential Information and IP" (¶ 127, at 29; ¶ 144, at 32).

**Dismissal Requested: Counts I and II should be dismissed to the extent they assert trade-secret subject matter not identified in Paragraphs 25–28, 37–38, 63–68, 95, and 113 of the Second Amended Complaint.**

---

**B. Counts I and II: Qualifying Rights in Client Software**

EPAM alleges that while some client software becomes the client's intellectual property, other code remains EPAM's and is licensed to clients. ECF No. 93 ¶ 39, at 10. The federal DTSA requires a qualifying ownership interest, which may include a license. 18 U.S.C. §§ 1836(b)(1), 1839(4).

My challenge concerns client-owned trade secrets for which the SAC does not allege that EPAM holds legal title or a qualifying license. Client ownership alone does not defeat Count II, because *Advanced Fluid Systems, Inc. v. Huber*, 958 F.3d 168, 177 (3d Cir. 2020), recognizes that lawful possession can suffice under Pennsylvania's PUTSA. But under the federal statute, where EPAM alleges that software was developed exclusively for clients without pleading that EPAM retained

title or a license under 18 U.S.C. § 1839(4) (e.g., ECF No. 93 ¶ 4, at 2; ¶ 39, at 10; ¶ 95, at 23; ¶ 97, at 23; Prayer ¶ 3, at 52), Count I fails to state a claim. Count I should therefore be dismissed without prejudice to the extent it asserts client-owned trade secrets for which the SAC does not plausibly allege EPAM's title or license, with fourteen days' leave to amend.

**Dismissal Requested: Count I should be dismissed without prejudice to the extent it asserts client-owned trade secrets for which the SAC does not plausibly allege that EPAM holds rightful legal or equitable title or a license under 18 U.S.C. § 1839(4), with fourteen (14) days' leave to plead facts demonstrating a qualifying title or license under 18 U.S.C. §§ 1836(b)(1) and 1839(4).**

---

### C. Counts I and II: Misappropriation Scope Under *Oakwood*

Under both the DTSA and PUTSA, misappropriation requires improper acquisition, disclosure, or nonconsensual use. 18 U.S.C. § 1839(5); 12 Pa. C.S. § 5302. In evaluating misappropriation at the pleading stage, the Third Circuit has explained that circumstantial evidence can support an inference of use, and that actionable use is not limited to identical replication. *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910–13 (3d Cir. 2021).

That principle has boundaries. While circumstantial allegations may support an inference of use for specifically described software codebases and recipes (*Oakwood*, 999 F.3d at 910–13; *Alpha Card*, 2026 WL 1161448, at *11), that inference cannot be stretched across undescribed files or unpleaded subject matter. Formulaic assertions that a defendant "misappropriated" or "used" confidential material cannot substitute for well-pleaded facts under *Iqbal*, 556 U.S. at 678.

Counts I and II are therefore bounded by the trade-secret subject matter actually described in the SAC.

**Relief Requested: Counts I and II must be confined to the trade-secret subject matter actually described in the Second Amended Complaint.**

---

### D. Counts VIII, IX, and XI: Common-Law Property Torts and Statutory Displacement

#### 1. PUTSA Displaces Common-Law Tort Remedies for Trade-Secret Misappropriation (Count XI)

While the federal Defend Trade Secrets Act preserves state-law remedies (18 U.S.C. § 1838), Pennsylvania's Uniform Trade Secrets Act explicitly displaces them. Under 12 Pa. C.S. § 5308(a), PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." Section 5308(b) preserves contractual remedies (§ 5308(b)(1)), civil remedies not based on trade-secret misappropriation (§ 5308(b)(2)), and criminal remedies (§ 5308(b)(3)).

In Count XI, EPAM asserts common-law unfair competition, claiming in part that Rao and CoReason used its confidential information and trade secrets to develop and launch CoReason's software platform (ECF No. 93 ¶ 235(a), at 47; ¶¶ 238–242, at 48–49). To the extent Count XI seeks common-law tort relief for trade-secret misappropriation, Section 5308(a) bars it directly.

This challenge is strictly bounded. Section 5308(b)(1) preserves breach of contract remedies, so on this motion I do not challenge EPAM's contractual ownership claims under the employment agreement (ECF No. 93 ¶ 235(b), at 47; ¶ 239, at 48). Nor do I seek dismissal here of EPAM's separate commercial allegations in Paragraph 243 (alleged commercial rights) or Paragraph 245

(alleged misuse of business plans, bid proposals, and pricing, at 49), reserving all defenses on those matters for summary judgment and trial. But EPAM cannot repackage statutory trade-secret misappropriation into a common-law unfair competition tort. I seek dismissal of Count XI only insofar as it requests a common-law tort remedy for alleged misappropriation of trade secrets.

**Dismissal Requested: Count XI (Common-Law Unfair Competition) should be dismissed with prejudice to the extent predicated on trade-secret misappropriation (Paragraphs 230–242, 244) under 12 Pa. C.S. § 5308(a).**

**2. Tangible Property Bar to Replevin and Conversion (Counts VIII & IX)**

Counts VIII and IX seek replevin and conversion for electronic data—specifically source code, database records, and digital documents stored on computers and accounts owned by me or controlled by CoReason (ECF No. 93 ¶¶ 197–201, 204–209, at 41–43).[1] Under settled Pennsylvania law, these claims fail as a matter of law.

In *TCS Black Label Realty, LLC v. Serhant Pennsylvania, LLC*, 352 A.3d 528, 545–46 (Pa. Super. Ct. 2026), the Superior Court affirmed summary judgment dismissing replevin and conversion claims directed at a client database, digital marketing materials, a website, and a social-media account. The court held that "only tangible property is recoverable for actions of replevin or conversion," and that the historical expansion to intangibles "has stopped with the

[1] EPAM previously analyzed conversion and replevin under Pennsylvania law. ECF No. 3-1, at 25–26 (printed pp. 18–19). My prior motion addressed Pennsylvania law conditionally while noting the employment agreement's Delaware choice-of-law clause. ECF No. 89-1, at 22–24; ECF No. 93-1 § 9, at 8. That distinction does not save these claims. Even under Delaware common law and the other authorities EPAM cited, courts reject conversion and replevin where a plaintiff seeks electronic data rather than physical storage media. *See Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 335 (D. Del. 2017) (dismissing Delaware common-law conversion and Michigan statutory replevin claims without prejudice because the plaintiffs sought control of intangible information rather than physical recordings). The Pennsylvania analysis in this motion applies to the extent Pennsylvania law governs; it does not concede that Delaware law produces the identical result across every cause of action.

kind of intangible rights which are customarily merged in or identified with some document" (quoting *Northcraft v. Edward C. Michener Assocs., Inc.*, 466 A.2d 620, 625 (Pa. Super. Ct. 1983)). Courts applying Pennsylvania law "have considered digital property interests but have consistently found that these interests are unable to support a conversion or replevin claim." *TCS Black Label*, 352 A.3d at 545 (citing *Peruto v. Roc Nation*, 386 F. Supp. 3d 471, 476 (E.D. Pa. 2019), for the rule that computer data and digital files are not subject to replevin).

That holding squarely disposes of Counts VIII and IX. Although the SAC contains passing references to "equipment" (ECF No. 93 ¶ 199, at 41) or "misappropriat[ion] of property" (id. ¶ 204, at 42), it identifies no EPAM-owned physical object retained by me. To the contrary, EPAM concedes in its pleading that it received its company laptop on October 31, 2025 (id. ¶ 91, at 22). What EPAM actually seeks is the return or deletion of electronic information located on my personal or company systems (id. ¶¶ 198, 205–206, at 41–42). EPAM does not allege any intangible rights merged into a physical document or title certificate, such as a deed or stock certificate. Because electronic code, databases, and digital files are intangible property, *TCS Black Label* bars both replevin and conversion.

This rule is not unique to Pennsylvania. In *Hydrogen Master Rights, Ltd. v. Weston*, 228 F. Supp. 3d 320, 335 (D. Del. 2017), the court dismissed Delaware-law conversion and Michigan statutory replevin claims without prejudice because the plaintiffs sought control of intangible information and did not claim ownership of the physical recordings. Whether evaluated under Pennsylvania law or the multi-jurisdictional authorities EPAM cited in prior briefing (ECF No. 3-1, at 25–26; ECF No. 80-1, at 21), intangible digital files cannot support these common-law property claims.

EPAM cannot avoid dismissal by asking the Court to defer statutory displacement until summary judgment. In earlier decisions, district courts occasionally deferred displacement at the pleading stage on the theory that trade secrets might also be convertible property under Pennsylvania law (*Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 676, 680 (E.D. Pa. 2018); *Cenveo Corp. v. Slater*, No. 06-cv-2632, 2007 WL 527720, at *3–5 & n.5 (E.D. Pa. Feb. 12, 2007); *EXL Labs., LLC v. Egolf*, No. 10-2118, 2011 WL 880453, at *8 (E.D. Pa. Mar. 11, 2011)).

That deferral logic does not apply here. A deferral makes sense only if an alternative common-law property claim could legally survive. Under *TCS Black Label*, it cannot. In *TCS*, the Superior Court explicitly confronted that federal district court line—citing *Teva* by name in note 14—and rejected the idea that electronic data is convertible property in Pennsylvania. 352 A.3d at 545 n.14. Under Third Circuit law, intermediate state appellate decisions on state law bind a federal court absent persuasive evidence that the state supreme court would rule otherwise. *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)).

EPAM faces an inescapable dilemma: if the electronic files are trade secrets, PUTSA § 5308(a) displaces common-law tort claims seeking their recovery; if they are not trade secrets, *TCS Black Label* bars conversion and replevin because intangible data cannot support those torts in Pennsylvania. Because neither conversion nor replevin can lie for intangible computer data, deferring statutory displacement would serve no purpose.

EPAM's prior citation to *Advanced Power Systems, Inc. v. Hi-Tech Systems, Inc.*, 801 F. Supp. 1450, 1458 (E.D. Pa. 1992), is equally unavailing; that decision addressed whether a plaintiff waived property rights by delaying its demand, not whether intangible computer files can be converted or replevied. Moreover, by Stipulated Consent Order entered on December 10, 2025

(ECF No. 20, first ¶ B, at 2; ¶ 3, at 3–4; ¶ 5, at 4), the Court already established an agreed inspection, recovery, and remediation protocol through an independent vendor (iDiscovery Solutions), while expressly reserving both parties' substantive legal rights and claims (id. ¶ 7, at 5). Counts VIII and IX fail as a matter of law and should be dismissed with prejudice.

**Dismissal Requested: Counts VIII (Replevin) and IX (Conversion) should be dismissed with prejudice as to all electronic copies of information, digital files, and intangible computer data.**

---

**E. Count X: Lanham Act False Advertising (15 U.S.C. § 1125(a)(1)(B))**

Count X asserts false advertising under Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), alleging that CoReason was marketed "as CoReason's own original product" without disclosing that it allegedly embodied concepts or functionality derived from EPAM's Synapse, thereby misleading purchasers and exposing them to competing ownership claims. ECF No. 93 ¶¶ 213–215, at 43; ¶¶ 222–226, at 45–46.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), the Supreme Court held that the phrase "origin of goods" in Section 43(a) refers to the producer of tangible goods offered for sale, and not to the author of ideas, concepts, or communications embodied in those goods. The Court cautioned that recognizing a Lanham Act claim based on using ideas or concepts without attribution "would create a species of mutant copyright law." *Id.* at 34. In *Parks, LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 227, 229 (3d Cir. 2017), the Third Circuit applied *Dastar* to Section 43(a)(1)(B) false advertising claims, holding that the statute reaches commercial misrepresentations concerning the nature, characteristics, qualities, or geographic

origin of the goods themselves, and does not reach disputes over authorship or the source of ideas embodied in a product (*id.* at 227), adhering to *Dastar* in rejecting any extension of origin to the author of underlying concepts (*id.* at 229).

EPAM does not plead that CoReason made false commercial statements regarding the technical capabilities, performance, or functionality of its software. Its grievance is that CoReason represented itself as the originator and failed to credit EPAM as the author of underlying concepts (ECF No. 93 ¶¶ 222–225, at 45–46). Paragraph 226 (ECF No. 93 ¶ 226, at 46) asserts that omitted origin information is commercially important because it bears on whether a purchaser faces competing ownership or injunction risks. But asserting that provenance is commercially important does not transform an unactionable failure-to-credit grievance into false advertising under § 43(a)(1)(B). Because Section 43(a)(1)(B) creates no duty to attribute underlying ideas, EPAM's attribution and origin theory fails as a matter of law.

For clarity, this Lanham Act argument addresses Count X. I do not seek dismissal of Count XI's parallel common-law unfair competition claim on attribution grounds at this stage, reserving all state-law defenses for summary judgment and trial. (As set forth in Section IV.D.1, Count XI is challenged on this motion solely to the extent it asserts common-law tort claims displaced by PUTSA § 5308(a).)

**Dismissal Requested: Count X should be dismissed with prejudice to the extent based on failure to identify EPAM as the author or source of ideas, concepts, or software, with fourteen (14) days' leave to amend solely to plead an identified, actionable false or misleading statement of commercial fact regarding product characteristics under 15 U.S.C. § 1125(a)(1)(B), leaving any distinct commercial-rights, licensing, or title allegations in Paragraphs 222–226 pending.**

**F. Count XII: Declaratory Judgment**

Count XII seeks declarations that EPAM "owns all work product and/or intellectual property developed by misappropriating its Confidential Information and/or trade secrets" (ECF No. 93 ¶ 253, at 50), that EPAM owns all Work developed by me during my employment under ECA § 2 (id. ¶ 254, at 50), and that EPAM "owns all of CoReason's intellectual property and technology" because it is derived from misappropriated information (id. ¶ 255, at 50). ECF No. 93 ¶¶ 253–255, at 50. While Count XII is asserted jointly against CoReason, Inc. and me, I move solely on my own behalf *pro se*.

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, district courts possess broad discretion in determining whether to entertain declaratory actions. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133–34 (3d Cir. 2000) (noting that the statute "confers a discretion on the courts rather than an absolute right upon the litigant" (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995))). While Federal Rule of Civil Procedure 57 provides that the existence of another adequate remedy does not bar declaratory relief that is otherwise appropriate, courts routinely decline to exercise jurisdiction over declaratory claims that are redundant of coercive breach of contract claims and serve no useful independent purpose.

Here, Paragraph 254 (ECF No. 93 ¶ 254, at 50; read with ¶ 251, at 50) demands a declaration that EPAM owns my Work and post-employment derivatives pursuant to ECA § 2. That declaration substantially duplicates the relief demanded in Count IV at Paragraph 171, which likewise requests a declaration of ownership reaching work product developed during employment and "derivatives of that work product that continued to be developed after Rao's employment." ECF No. 93 ¶ 171, at 37. Both claims involve the identical contract provision

(ECA § 2, ECF No. 93-1 at 3–4) and the identical work product and post-employment derivatives. While Paragraph 254 adds the phrase "and/or intellectual property," that phrasing is fully encompassed by ECA § 2's comprehensive contractual definition of "Work" (designs, programs, inventions, data, and works of authorship). Adjudicating the breach of contract claim in Count IV will definitively determine whether I breached the assignment clause of ECA § 2; retaining a duplicate declaratory claim in Paragraph 254 against me serves no clarifying or prospective purpose. Paragraph 254 should therefore be dismissed as duplicative of the declaratory relief sought in Count IV as to me.

As to Paragraphs 253 and 255 (ECF No. 93 ¶¶ 253, 255, at 50), discretionary relief should be declined because neither the DTSA (18 U.S.C. § 1836(b)(3)) nor the PUTSA (12 Pa. C.S. §§ 5303–5305) authorizes an involuntary transfer or forfeiture of title to a defendant's or third party's technology as a statutory remedy for trade-secret misappropriation. Congress and the Pennsylvania General Assembly established specific statutory remedies for misappropriation: injunctive relief, compensatory damages, unjust enrichment, reasonable royalties, exemplary damages, and attorney's fees. Neither statute vests title to a defendant's corporate property in the trade-secret plaintiff merely because confidential data was allegedly utilized. While EPAM may contend that Paragraph 252 (ECF No. 93 ¶ 252, at 50) and the "other EPAM intellectual property" clause of Paragraph 255 (id. ¶ 255, at 50) invoke existing contractual title under ECA § 2, that question is already fully encompassed by the breach of contract claim in Count IV. To the extent Paragraphs 253 and 255 seek a judicial decree transferring title to CoReason's technology grounded solely on trade-secret misappropriation, neither statute authorizes title forfeiture as a statutory remedy. Paragraphs 253 and 255 should therefore be dismissed without prejudice as to me to the extent grounded solely on statutory trade-secret misappropriation.

**Dismissal Requested: Paragraphs 253 and 255 should be dismissed without prejudice as to Defendant Rao to the extent grounded solely on statutory trade-secret misappropriation; and Paragraph 254 should be dismissed as to Defendant Rao as duplicative of the declaratory relief sought in Count IV.**

---

## V. CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, I respectfully request that the Court enter an Order:

1. **Counts One and Two (Trade Secrets):** Dismissing Counts One and Two (ECF No. 93 ¶¶ 121–153, at 28–34) to the extent they assert trade-secret subject matter not identified in Paragraphs 25–28, 37–38, 63–68, 95, and 113 of the Second Amended Complaint (ECF No. 93 ¶¶ 25–28, at 7–8; ¶¶ 37–38, at 9–10; ¶¶ 63–68, at 16–17; ¶ 95, at 23; ¶ 113, at 27); and dismissing Count One without prejudice to the extent it asserts client-owned trade secrets for which the SAC does not plausibly allege that EPAM holds rightful legal or equitable title or a license under 18 U.S.C. § 1839(4) (id. ¶ 4, at 2; ¶ 39, at 10; ¶ 95, at 23; ¶ 97, at 23; Prayer ¶ 3, at 52) with fourteen (14) days' leave to plead title or license under 18 U.S.C. §§ 1836(b)(1) and 1839(4);

2. **Counts Eight and Nine (Replevin and Conversion):** Dismissing Counts Eight and Nine (ECF No. 93 ¶¶ 196–211, at 41–43) with prejudice as to all electronic copies of information, digital files, and intangible computer data;

3. **Count Ten (Lanham Act False Advertising):** Dismissing Count Ten (ECF No. 93 ¶¶ 212–228, at 43–46) with prejudice to the extent based on failure to identify EPAM as the author or source of ideas, concepts, or software (Paragraphs 213–227, at 43–46); granting

fourteen (14) days' leave to amend limited to an identified product-characteristic representation under 15 U.S.C. § 1125(a)(1)(B); and leaving any distinct commercial-rights, licensing, or title allegations in Paragraphs 222–226 pending;

4. **Count Eleven (Common-Law Unfair Competition):** Dismissing Count Eleven (ECF No. 93 ¶¶ 229–247, at 46–49) with prejudice under 12 Pa. C.S. § 5308(a) to the extent predicated on trade-secret misappropriation (Paragraphs 230–242, 244); and leaving Paragraphs 243 and 245 (at 49) pending;

5. **Count Twelve (Declaratory Judgment):** Dismissing Paragraphs 253 and 255 (ECF No. 93 ¶¶ 253, 255, at 50) without prejudice as to me to the extent grounded solely on statutory trade-secret misappropriation; and dismissing Paragraph 254 (ECF No. 93 ¶ 254, at 50) as duplicative of the declaratory relief sought in Count Four (id. ¶ 171, at 37) as to me; and

6. **Scope of Adjudication:** Confirming that this Order adjudicates only the claims asserted against Defendant Gowtham Rao and does not adjudicate any claim against Defendant CoReason, Inc. (including the joint counts and Count Seven, ECF No. 93 ¶¶ 188–195, at 40–41); and confirming that my Counterclaims (ECF No. 33) remain pending.

A proposed Order is submitted with this motion. Pursuant to Section IV.C of the Court's Individual Policies and Procedures, I respectfully request that the Court schedule oral argument on this Motion to address the dispositive legal questions presented, including the statutory ownership requirement for client software under 18 U.S.C. § 1839(4), the *IQVIA* identification boundary, the *TCS Black Label* tangible property bar to digital conversion and replevin, and the Lanham Act attribution limits under *Dastar* and *Parks*.

**Dated:** October 1, 2026

**Respectfully submitted,**

/s/ Gowtham A Rao, MD, PhD

**Gowtham A Rao, MD, PhD** *Pro Se*

184 Mansgrove Rd, Princeton, NJ 08540

803-386-7890 · gowthamrao@gmail.com