**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

**CIVIL ACTION**
**NO. 2:25-cv-06260-WB**

v.

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

# DEFENDANT'S EXHIBIT PX-02

## *Governing Client Master Services Agreement CW2719230 (Takeda Pharmaceuticals)*

Source / Locator: Dep. Ex. 3 / ECF No. 33-1 (5 pp. marked; 13 pp. whole)
Date / Timestamp: 2019-06-01
Target Claims: Count II (DJ: Exclusive Client Ownership under § 12 Work for Hire)

Evidentiary Summary & Purpose:
Section 12 mandates that all software, deliverables, and work product vest exclusively in client Takeda as works made for hire. Destroys EPAM trade secret ownership over Synapse.

*Authentication & Admissibility:*
*Authenticated pursuant to Fed. R. Evid. 901 and 28 U.S.C. § 1746 in Part IX (¶ 51) of the Declaration of Dr. Gowtham Rao, MD, PhD in Support of Motion for Leave to File First Amended Counterclaims.*

## MASTER SERVICES AGREEMENT

**THIS MASTER SERVICES AGREEMENT** ("Agreement") is entered into as of June 1, 2019 (the "Effective Date") by and between Millennium Pharmaceuticals, Inc., a wholly owned subsidiary of **Takeda Pharmaceutical Limited Company**, with offices located at 40 Landsdowne Street, Cambridge, MA 02139 ("Takeda") and **Odysseus Data Services, Inc.** with offices located at 245 First Street, Riverview II, 18th Floor, Cambridge MA 02142 ("Company").

**WHEREAS,** Takeda is engaged in the business of developing, marketing and distributing ethical ;pharmaceutical products

**WHEREAS,** Company is engaged in the business of providing Software Engineering and OMOP CDM Data Management and related services and products;

**WHEREAS,** Takeda desires to obtain from Company, and Company desires to provide to Takeda, the Services (as defined below) in accordance with the terms and conditions of this Agreement.

**NOW THEREFORE,** in consideration of the mutual covenants and promises set forth below, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereby agree as follows:

**1. SERVICES.**

**A. Generally.** Takeda hereby engages Company on a non-exclusive basis to perform, and Company hereby agrees to perform, certain services from time to time on a project-by-project basis, as more particularly described in this Agreement and in applicable project work orders or purchase orders (the "Services"). Generally, Services may be commenced only after the parties have executed a project work order conforming to the requirements set forth below (each a "PWO") and Takeda has issued a corresponding purchase order (each a "Purchase Order"). However, in certain limited circumstances as determined by Takeda in its sole discretion and communicated to Company, Services may be commenced upon Takeda's issuance of a Purchase Order alone. In such instances: (i) the Purchase Order shall be deemed a PWO for purposes of this Agreement and all references in this Agreement to a PWO shall be deemed references to such Purchase Order where contextually appropriate; and (ii) Company's performance in response to receipt of a Purchase Order shall signify Company's agreement that such Purchase Order shall constitute a PWO under this Agreement.

**B. PWOs.**

(i) Any PWO shall be in the format of Exhibit A, and shall: (a) identify the applicable project and describe the activities and duties for which Company is responsible; (b) include an estimated budget of Company's Fees (as defined in Section 4(A) below) for the project and any Authorized Expenses (as defined in Section 4(B) below) for which Takeda will be responsible as permitted hereunder including any applicable formula for determining such Fees or Authorized Expenses (e.g., hourly rates or otherwise); (c) be signed by both parties prior to commencing work on any project; and (d) be governed by this Agreement and made a part hereof.

EXHIBIT 003

**11. TERMINATION.**

A. Either party may terminate this Agreement for convenience and without cause by providing written notice to the other party at least thirty (30) days in advance of the intended termination date. Any such termination shall automatically terminate all PWOs then in effect. However, unless otherwise agreed by the parties in writing, termination of this Agreement by Company shall take effect only upon Company's completion and Takeda's acceptance of all Services to be performed pursuant to any PWO in effect as of the date of Company's notice of termination.

B. Takeda may terminate any PWO for convenience and without cause by providing written notice to Company at least thirty (30) days in advance of the intended termination date, which notice must expressly state to which specific PWO such termination relates. Any such termination shall be effective only with respect to such specific PWO. A termination of all outstanding PWOs shall operate as a termination of this Agreement.

C. Either party may terminate this Agreement or any PWO immediately upon any breach of this Agreement or the PWO, as the case may be, by the other party and the failure of the breaching party to cure such breach within thirty (30) days of receipt of written notice of such breach from the non-breaching party. Any such termination of this Agreement shall automatically terminate all PWOs then in effect.

D. Upon receiving any notice of termination from Takeda, Company shall use its best efforts to: (i) promptly wind down its work on the Services to be performed pursuant to any PWO being terminated; (ii) refrain from entering into any non-cancelable commitments with respect to any PWO being terminated; and (iii) mitigate any further Fees or Authorized Expenses associated with the PWO being terminated.

E. Takeda's liability for any PWO terminated prior to completion of all Services to be performed pursuant to the PWO shall be limited to the pro rata portion of Company's compensation under this Agreement or the applicable PWO, as the case may be, based on Services performed prior to termination and for any non-cancelable commitments entered into by Company prior to notice of termination. Notwithstanding the foregoing, in the event that Takeda terminates this Agreement or a PWO as a result of a breach of this Agreement by Company, Takeda will be liable for the pro rata portion of Company's compensation under this Agreement or the applicable PWO, as the case may be, based on Services performed prior to the date of the notice of breach by Takeda and for any non-cancelable commitments entered into by Company prior to such notice of breach. Upon receiving payment from Takeda, Company shall promptly provide to Takeda all work product in process and/or completed through the date of termination. Payment for Services shall be Company's sole and exclusive remedy upon any early termination of a PWO by Takeda.

F. Unless terminated earlier pursuant to Section 11(A), 11(B) or 11(C) above, each PWO shall terminate upon expiration of its stated term or, if no term is stated or the completion date is only an estimate, upon Company's completion and Takeda's acceptance of all Services to be performed pursuant to the PWO.

**12. INTELLECTUAL PROPERTY AND RESTRICTIONS ON PUBLICATIONS.** Any information, data, concepts, reports, discoveries, inventions, innovations or other intellectual property that is conceived, discovered, reduced to practice, made or developed by Company in the course of performing the Services shall be promptly disclosed to Takeda, and title thereto shall immediately vest in Takeda. Company further agrees that all information and materials prepared in the

performance of Services (collectively, the "Deliverable(s)") are "works for hire," shall be the sole and exclusive property of Takeda and copyright therein shall immediately vest in Takeda. To the extent that any such property, ideas, and materials are not "work for hire," Company hereby assigns and agrees to assign to Takeda, and shall require anyone working for Company to assign to Takeda, all rights including copyright in such property, ideas and materials. Company agrees to execute and obtain execution of any documents (including assignments) necessary to accomplish the intent of this paragraph with no obligation for additional payment by Takeda beyond that identified in the purchase order and specific work requests. During the term of this Agreement and thereafter Company shall fully cooperate with, and assist Takeda in filing and prosecuting patent, trademark and copyright applications and otherwise protecting its rights to the Deliverable(s) and other intellectual property described in this Section. In this regard, Company shall execute such assignments and other documents as Takeda deems necessary to protect its right, title and interest in and to any such Deliverable(s) or other intellectual property.

13. **PUBLICATIONS.** Company shall not publish any articles or papers or make any presentations or communications (nor assist any other person in publishing any articles or papers or in making any presentations or communications) relating or referring to any of the Services, Deliverable(s) or any data, information or materials obtained or generated in the performance of Company's obligations hereunder, in whole or in part, without the prior written consent of Takeda, which consent may be granted or withheld in Takeda's sole discretion.

14. **BUSINESS IDENTIFIERS.** Neither party shall use the trade name, logos or trademarks of the other party and/or its products or services without the other party's prior written consent.

15. **RETURN OF MATERIALS.** Upon the expiration or termination of this Agreement, or at any other time upon either party's written request, each party shall promptly deliver to the other party all Confidential Information of the other party. Company, upon expiration or termination of the Agreement, or upon Takeda's written request, shall promptly deliver to Takeda any and all Deliverable(s) and materials (including preliminary outlines, notes, sketches, plans, unpublished memoranda and other documents) provided by, or prepared for Takeda hereunder. Return of all such materials to Takeda shall be a condition to Company receiving any final payment due hereunder. Company shall have the right to retain one (1) copy of any such items in a secure location for the sole purpose of confirming its compliance with its obligations hereunder.

16. **INDEPENDENT CONTRACTOR.** Company's status hereunder shall be that of an independent contractor and not an agent or employee of Takeda. In no event shall Company have any authority to enter into any contract or commitment in the name of or on behalf of Takeda, and Company shall not hold itself out as having authority to do so without Takeda's prior written authorization.

17. **NO DEBARMENT.** Company hereby represents and warrants to Takeda that:

A. Company is not, has never been, and will not employ or use in any capacity to perform Services, a person or entity sanctioned by the Office of Inspector General ("OIG") of the Department of Health and Human Services, barred from participating in government health care programs, or convicted of a criminal offense with respect to health care reimbursement, nor is Company employed by, in partnership with, a stockholder in, or otherwise affiliated with, a person or entity who has been so sanctioned, barred, or convicted; and

21. **CONTROLLING LAW.** The validity, interpretation and performance of this Agreement and any dispute connected herewith shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflict of laws principles.

22. **AMENDMENT; NO WAIVER.** Any amendments or modifications to this Agreement shall be done in writing and signed by authorized representatives of both parties. Either party's failure to insist on compliance or enforcement of any provision of this Agreement shall not affect its validity or enforceability or constitute a waiver of future enforcement of that provision or of any other provision of this Agreement.

23. **SURVIVAL**. The provisions of Sections 4, 5, 6, 7, 8, 11(E), 12, 13, 14, 15, 18, 21, 23, and 24 contained herein shall survive the expiration or other termination of this Agreement.

24. **PUBLICITY.** Neither party shall identify the other party as a prospective, current or former client in any press release, publicity, advertising, or other disclosure without prior written consent of the other party.

25. **ENTIRE AGREEMENT.** This Agreement (including any Exhibits, Schedules or Addenda attached hereto) and any PWOs incorporated herein contain the entire agreement of the parties with respect to the subject matter hereof and supersede any prior written or oral agreements or understandings. No representations were made or relied upon by either party other than those that are expressly set forth in this Agreement. In the event of any conflict between the provisions of this Agreement and the provisions of any PWO, the terms of this Agreement shall prevail. No term, condition, proposal or other document provided or generated by Company shall have any force and effect with respect to the subject matter hereof unless Takeda has expressly and specifically agreed to that term, condition, proposal or document in writing.

26. **HEADINGS.** The captions to the Sections hereof are not a part of this Agreement, but are included merely for convenience of reference only and shall not affect its meaning or interpretation.

27. **COUNTERPARTS.** This Agreement may be executed in one (1) or more duplicate originals, all of which together shall be deemed one and the same instrument.

28. **GOVERNMENT SUBCONTRACTS.** Pursuant to the Federal Acquisitions Regulation (FAR), Title 48, Code of Federal Regulations, Chapter 1, Takeda is required to notify its vendors that certain federal contract clauses may be applicable to such vendors, including Company. These clauses set forth requirements including, but not limited to affirmative action programs and subcontracting with small businesses, small disadvantaged businesses, women-owned businesses, veteran-owned small businesses, service-disabled veteran-owned small businesses, and HUB Zone small businesses. To the extent applicable, all such clauses that are in effect during the term of this Agreement are hereby incorporated into this Agreement with the same force and effect as though they had been set forth herein. BY ACCEPTANCE OF THIS AGREEMENT, COMPANY HEREBY CERTIFIES THAT NEITHER COMPANY NOR ANY OF COMPANY'S PRINCIPALS IS PRESENTLY DEBARRED, SUSPENDED, PROPOSED FOR DEBARMENT, OR DECLARED INELIGIBLE FOR THE AWARD OF CONTRACTS BY ANY FEDERAL AGENCY.

29. **SUPPLIER DIVERSITY.** Company acknowledges Takeda's commitment to diversity, both for its own workforce, and within its supplier base through Takeda's Supplier Diversity Program. Takeda's Supplier Diversity Program seeks to increase opportunities for small businesses and diverse businesses (businesses owned or operated by historically underutilized population groups, such as women, minorities, veterans, persons with disabilities , persons representing a variety of sexual

Case 2:25-cv-03260-WB Document 1-3 Filed 10/15/25 Page 16 of 16

orientation or identity and others) to participate in Takeda's contracts and subcontracts. To that end, for any permitted subcontract under this Agreement, Company agrees to seek out and provide commercially reasonable opportunities for small and diverse businesses as described above to participate in such subcontracts to the extent consistent with the efficient performance of the Services. Takeda invites and encourages small and diverse suppliers to identify themselves as part of the contracting process. Company agrees, upon the request of Takeda, to report spend with small and diverse businesses subcontracted under this Agreement.

30. **SUPPLIER CODE OF CONDUCT**. Takeda is a signatory of the United Nations Global Compact (www.unglobalcompact.org). Takeda is committed to upholding the UN Global Compact's 10 universally accepted principles in the areas of human rights, labor, environment and anticorruption, as applied to Takeda's supplier community. Takeda intends to evaluate its supplier's fulfillment of the principles set forth in the Supplier Code of Conduct in connection with awarding business to and maintaining business with its suppliers. Takeda expects Laboratory to engage in good faith discussions regarding any areas in which the principles set forth in the Supplier Code of Conduct are not fulfilled, and actions Laboratory will take to better fulfill the expectations set forth in the Supplier Code of Conduct. Failure of Laboratory to meet the expectations in the Supplier Code may affect Takeda's willingness to continue to award business to or maintain business with Laboratory.

31. **EQUAL OPPORTUNITY AND COMPLIANCE WITH EMPLOYMENT LAWS.** If applicable to Company's Services hereunder, Company warrants that in providing the goods and/or Services specified herein, Company will comply with the following laws, executive order, and the regulations promulgated thereunder, as the same may be amended, when applicable: (i) the Vietnam Era Veterans Readjustment Assistance Act of 1974, (ii) Executive Order 11246, and (iii) the Rehabilitation Act of 1973. Any clause required to be set forth in a document of this type by such laws, administrative regulations or executive orders shall be deemed to be incorporated herein by this reference. Company shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, disability, or covered veteran status.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the first above written date.

| **MILLENNIUM PHARMACEUTICALS, INC.** | **ODYSSEUS DATA SERVICES, INC.** |
|---|---|
| DocuSigned by: Yan Ge 2087DA1D9C8042A... | |
| By________ duly authorized | By________ duly authorized |
| Print Name Yan Ge | Print Name Gregory Klebanov |
| Title Director of Data Analytics | Title CTO / Vice President |
| Date 23-Jun-2020 \| 23:37 JST | Date May 31, 2019 |