**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

v.

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

**CIVIL ACTION**
**NO. 2:25-cv-06260-WB**

# DEFENDANT'S EXHIBIT PX-27

## *Dr. Rao Written Proposal for Mutual Separation and Restrictive Covenant Release*

Source / Locator: ECF No. 33-7 (9 pp.)
Date / Timestamp: 2025-09-30
Target Claims: Count II (DJ: Covenant Voidance)

Evidentiary Summary & Purpose:
Dr. Rao submits written proposal for mutual separation and formal confirmation of release from restrictive covenants under ECA § 5(c) to remain a 'free agent', directly corroborating his Sept 26, 2025 subcontracting proposal to SVP Troy Rask to partner with EPAM under an MSA/SOW, refuting EPAM's 'engineered exit' smear.

*Authentication & Admissibility:*
*Authenticated pursuant to Fed. R. Evid. 901 and 28 U.S.C. § 1746 in Part IX (¶ 51) of the Declaration of Dr. Gowtham Rao, MD, PhD in Support of Motion for Leave to File First Amended Counterclaims.*

Gmail **Gowtham Rao <gowthamrao@gmail.com>**

## RE: Gowtham and EPAM - concrete (documented) next steps

**Gowtham Rao** <gowtham_rao@epam.com> Tue, Sep 30, 2025 at 4:37 PM
To: Larry McKlaine <Larry_McKlaine@epam.com>, Gregory Klebanov <gregory_klebanov@epam.com>
Cc: Greg Killian <Greg_Killian@epam.com>, June Dinitz <June_Dinitz@epam.com>, Gowtham Rao <gowthamrao@gmail.com>

Dear Larry,

Thank you for the candid and professional conversation earlier today. I appreciate you taking the time to understand my perspective and clarify the options regarding my future at EPAM.

I am writing to formally document the path forward we agreed during our discussion. As I articulated in our meeting, the sequence of events over the past few weeks—specifically the transition from an initial separation communication to the subsequent proposal for a role redefinition and Performance Improvement Plan—has unfortunately led to an irreparable breakdown in trust. Given this context, a change is in order.

Crucially, I want to reiterate the point we clarified today: **I am not resigning, nor is it my intention to do so.**

Instead, I am formally requesting that we pursue the path of a **Mutually Agreed Separation**. My objective is to facilitate a **clean and free** transition executed in **good faith**. I believe the most constructive way to resolve this apparent untenable situation is through a simple, "no questions asked" exit based on the following terms:

1. **Waiver of Compensation:** I am not seeking a severance package or any other financial **compensation**. I do not wish to be financial burden for EPAM, you are welcome to offer it to me in good faith but without restrictions.
2. **Release of Restrictive Covenants:** In exchange for waiving severance and ensuring an efficient exit, the agreement must include a complete release of all post-employment **restrictions** (including, but not limited to, non-competition and non-solicitation covenants). This is essential to ensure I am a "**free agent**" and can continue my profession without impediment. The language would be mutually agreed and I am considering seeking a legal counsel to help me ensure the language is favorable.
3. **Mutual Non-Disparagement:** The agreement should include a standard provision for mutual **non-disparagement** and a confirmation of EPAM's non-retaliation policies.

This proposal offers the cleanest and simplest way to resolve the current situation, allowing both EPAM and me to disengage amicably and move forward immediately.

Thank you for committing to escalate this proposal to June, Gregory, and Greg. I look forward to a swift and positive resolution so we can finalize the agreement promptly.

Best regards,

Gowtham Rao

---

**From:** Larry McKlaine <Larry_McKlaine@epam.com>
**Sent:** Tuesday, September 30, 2025 11:18 AM
**To:** Gowtham Rao <gowtham_rao@epam.com>; Gregory Klebanov <gregory_klebanov@epam.com>
**Cc:** Greg Killian <Greg_Killian@epam.com>; June Dinitz <June_Dinitz@epam.com>; Gowtham Rao

<gowthamrao@gmail.com>
**Subject:** Re: Gowtham and EPAM - concrete (documented) next steps

Good morning, Gowtham

The agenda is to discuss your prior email. I recommend and suggest that we keep our scheduled call for today at 1:30pm. Also please see the inline responses your other questions as well

1. The current EPAM Employee Handbook or Policy Manual.
   a. Employee Handbook
2. Any specific internal policy documents governing Performance Management processes and progressive discipline (including the criteria and procedures for implementing Performance Improvement Plans).
   a. EPAM Performance Management - EPAM Performance Development - EPAM Knowledge Base
3. Policies governing role redefinition, restructuring, or potential demotions.
   a. **Please refer to the EPAM offer letter that was provided to you**
4. Internal policy documents regarding separations, layoffs, and severance guidelines.
   a. **These documents are not made publicly available; however, please note that if an employee is impacted by a layoff or severance situation, we provide the relevant severance plan details as part of their severance agreement package at that time.**
5. The official procedure for an employee to access and review their personnel file and any documented performance feedback (e.g., stored in People Central or mid-year conversation records).
   a. **An employee can always request a copy of their employee file by contacting WFAPeoplereportingUSA@epam.com**

I look forward to speaking with at later on today.

## Larry McKlaine

Senior Manager, People Partner




**Office:** +1 267 759 9000x71531 **Mobile:** [redacted]

Princeton, NJ USA **Office Timezone:** (UTC-04:00)

Working Remotely **Timezone:** (UTC-04:00)

Microsoft Teams

EPAM.COM

confidentiality caution and disclaimer
This message is intended only for the use of the individual(s) or entity(ies) to which it is addressed and contains confidential information that may be legally privileged. If you are not the intended recipient, or authorized to read this message on behalf of the intended recipient, do not read, disseminate, distribute or copy this message and please delete this message and destroy any printed copies.

---

**From:** Gowtham Rao <gowtham_rao@epam.com>
**Sent:** Tuesday, September 30, 2025 7:12 AM
**To:** Gregory Klebanov <gregory_klebanov@epam.com>
**Cc:** Larry McKlaine <Larry_McKlaine@epam.com>; Greg Killian <Greg_Killian@epam.com>; June Dinitz <June_Dinitz@epam.com>; Gowtham Rao <gowthamrao@gmail.com>
**Subject:** Re: Gowtham and EPAM - concrete (documented) next steps

Dear Larry,

Thank you for scheduling time to meet with me today.

To ensure I am fully prepared and can participate as constructively as possible, could you please share the proposed agenda for our discussion?

Given the context of our recent communications (referenced in the email chain below) and the potential gravity of the topics—such as the proposed role changes and the mention of a Performance Improvement Plan—I realize I need to better understand EPAM's established internal procedures.

To help facilitate a transparent and informed conversation, I would deeply appreciate it if you could provide me with the following documents and guidelines:

1. The current EPAM Employee Handbook or Policy Manual.
2. Any specific internal policy documents governing Performance Management processes and progressive discipline (including the criteria and procedures for implementing Performance Improvement Plans).
3. Policies governing role redefinition, restructuring, or potential demotions.
4. Internal policy documents regarding separations, layoffs, and severance guidelines.
5. The official procedure for an employee to access and review their personnel file and any documented performance feedback (e.g., stored in People Central or mid-year conversation records).

I recognize that in your role in HR and management, you are very familiar with these procedural frameworks, whereas I do not have ready access to them. My goal is simply to be as informed as possible so that our discussion is balanced, fair, and grounded in a shared understanding of EPAM's processes.

I understand it may take some time to gather this information. If you would prefer to reschedule our meeting today to allow me adequate time to review these documents first, I am completely open to that.

Thank you for your understanding and your commitment to fairness and transparency during this challenging time.

Best regards,

Gowtham

---

**From:** Gowtham Rao
**Sent:** Friday, September 26, 2025 3:49:19 PM
**To:** Gregory Klebanov <gregory_klebanov@epam.com>
**Cc:** Larry McKlaine <Larry_McKlaine@epam.com>; Greg Killian <Greg_Killian@epam.com>; June Dinitz <June_Dinitz@epam.com>; Gowtham Rao <gowtham_rao@epam.com>; Gowtham Rao <gowthamrao@gmail.com>
**Subject:** RE: Gowtham and EPAM - concrete (documented) next steps

Dear Larry,

(I am CC my personal email so that I may keep track of this communication in the event of separation from EPAM. Please consider including that email in your response.)

I am writing to you (and cc'ing June) following the email exchange with Greg Klebanov earlier today. I appreciate you staying involved, as I value your guidance and HR perspective during this time.

I have reviewed the email carefully, but I must be honest, Larry, I am feeling very confused and quite distressed by the content. The proposal and the justifications provided today are significantly inconsistent with my understanding of previous conversations—particularly my 1:1 with Greg Killian. This lack of clarity and the shifting narrative over the past week are causing me considerable anxiety and are significantly affecting my mental health.

I want to reiterate that I am deeply committed to EPAM and genuinely enjoy my work and the team here. It is my strong desire to find an amicable path forward. However, I am struggling to reconcile the recent proposal with a transparent and supportive process, and I sincerely need your help to understand several critical points.

**1. Confusion Regarding the Proposed Role Change**

I was very surprised by the proposal to transition my position into an "individual contributor Lead" role. This possibility was never discussed previously. As you know, I was hired into a strategic leadership role (VP/Senior Director level) focused on P&L management, strategy, and team leadership. This proposed change represents a substantial shift in responsibilities and feels like a demotion. I am dedicated to contributing at the strategic level I was hired for.

**2. Confusion Regarding Performance Feedback (Objective vs. Subjective)**

I am also very surprised by the assertions regarding performance gaps. Specifically, the email introduces concerns regarding "Team management challenges" and "Recurring feedback" related to leadership effectiveness.

Larry, this is the first time I am hearing about these subjective concerns. This seems inconsistent with my discussion with Greg Killian, where I understood that any performance considerations were based on objective metrics (e.g., revenue and margins), not subjective feedback.

It is unsettling to receive this feedback now, in this context, without any prior discussion or opportunity for me to address it through standard management channels. Please help me understand the specifics of this "recurring feedback." While I respect the privacy of my colleagues, I need to know the substance of the concerns and why this was not shared with me before now.

**3. Concerns about the PIP Process**

The suggestion that a Performance Improvement Plan (PIP) will be implemented immediately is also confusing. It is my understanding that a PIP is typically implemented when there have been ongoing, documented performance issues against established goals.

Given that I have not had formal performance evaluations or documented goals/KPIs set during my time here, the immediate leap to a PIP feels premature and punitive, rather than a supportive measure to facilitate success. I worry this approach may be setting me up for failure, though I sincerely hope that is not the intent.

**4. Clarification on My Employment Status**

Given the gravity of these proposed changes and my confusion regarding their basis, I need to ask a direct question to ensure I fully understand the situation:

If I do not accept this proposal for a redefined (individual contributor) role and an immediate PIP, does this mean that EPAM intends to involuntarily terminate my employment?

**Moving Forward**

Larry, my goal is to find a path forward that we can all agree on. However, the inconsistencies in the recent communications have left me feeling very unsettled. I sincerely hope that this current proposal is not EPAM's best offer for a mutually beneficial resolution.

As I mentioned, this entire situation is heavily impacting my mental health, and I need time to process this distressing information and seek advice once I have the clarity requested above.

I cannot voluntarily accept this proposal as presented.

Therefore, I must ask that EPAM please pause any organizational changes, transitions, or announcements regarding my role until we have resolved these inconsistencies and had a chance to align. I look forward to receiving the requested clarifications so we can work toward a constructive solution.

Best regards,

Gowtham Rao

---

**From:** Gowtham Rao
**Sent:** Friday, September 26, 2025 2:01 PM
**To:** Gregory Klebanov <gregory_klebanov@epam.com>
**Cc:** Larry McKlaine <Larry_McKlaine@epam.com>; Greg Killian <Greg_Killian@epam.com>
**Subject:** RE: Gowtham and EPAM - concrete (documented) next steps

Thank you. Greg Klebanov – I will think about this offer. This is inconsistent with my understanding. I will have to think about this. For now, I am unable to accept this voluntarily.

---

**From:** Gregory Klebanov <gregory_klebanov@epam.com>
**Sent:** Friday, September 26, 2025 1:34 PM
**To:** Gowtham Rao <gowtham_rao@epam.com>
**Cc:** Larry McKlaine <Larry_McKlaine@epam.com>; Greg Killian <Greg_Killian@epam.com>
**Subject:** Re: Gowtham and EPAM - concrete (documented) next steps

Dear Gowtham,

Thank you for sharing the summary. We have reviewed it, please find some important clarifications and corrections below inline in *italic*.

Please review the responses. For any clarification, please reach out to any of us, including Larry McKlaine for any HR related questions.

Regardless of your decision, we appreciate your support during this transition.

Thank you,

Greg

**From:** Gowtham Rao <gowtham_rao@epam.com>
**Date:** Thursday, September 25, 2025 at 3:54 PM
**To:** Greg Killian <Greg_Killian@epam.com>, Gregory Klebanov <gregory_klebanov@epam.com>
**Cc:** Larry McKlaine <Larry_McKlaine@epam.com>
**Subject:** RE: Gowtham and EPAM - concrete (documented) next steps

Dear Greg Killian, Greg Klebanov, and Larry McKlaine,

Please review this summary and respond either agreeing or with changes. I need your response for my mental sanity and to help me contribute to EPAM.

**Role Stability and Status**

- We confirmed there are no organizational changes impacting my position and no change in role. No layoffs.
- It was explicitly stated that there is no performance improvement plan (PIP) in place. My performance is fine.

*I would like to provide clarification regarding the points above that you have raised.  While you stated that there is no performance issue, this is not accurate. There are specific concerns about performance, and that was/is the focus of this discussion.*

*Regarding changes to your role, we want to emphasize that the responsibilities of the current Data Science Team Lead position will be transitioned. Your role will be refocused to address performance gaps and better align with the organization's strategic objectives. This decision has been made based on the following:*

- *Failure to meet core role expectations: Critical goals, such as achieving target revenue and maintaining required profit margins, have not been met.*
- *Team management challenges: Recurring feedback from multiple team members has highlighted concerns related to leadership, engagement, and overall management effectiveness. These issues have contributed to attrition risks within critical team members.*

*Should you choose to continue in this revised role, a Performance Improvement Plan (PIP) will be implemented to ensure that clear goals and expectations are established for future success.*

**Prioritization and AI Focus**

- I have been asked to prioritize AI initiatives.
- The primary objective is to ensure client satisfaction and successful delivery of the Takeda AI project. The Boehringer Ingelheim PPF project is also a key responsibility.

*Our intention is to redefine this position to ensure organizational priorities are met and to provide you with more focused support and direction necessary for*
*success moving forward. Specifically, you have been asked to prioritize named client projects and secondarily support business development and marketing.  There is likely to be an AI component to these.*

*The new role will be an individual contributor Lead and will be focused on your key strength and achievements:*

1. *a) Continuing leading the delivery and expansion of a key selected projects in strategic accounts (up to 65%), including:*
    - *Agentic AI Insights in Takeda (Q4-Q1, 2025)*

- *Phenotypic Library tool in BI (Q4, 2025)*
- *PPF in BI (Q4, 2025)*
- *Cost and Utilization in BI (Q3/Q4, 2025)*

1. *b) Assist EPAM in BD (up to 25%):*
   - *RWE portfolio*
   - *EPAM in clinical and medical domain, including RFIs/RFPs (for example, BMS PV RFP, J&J BD and other).*

1. *c) Assist EPAM in broader RWE/Clinical/Medical marketing and brand recognition (up to 10%)*

**'Delivery' Ownership and Authority**

- I have been given explicit accountability of these AI projects (e.g., Takeda).
- *yes, in partnership with the delivery organization*
- I put 'Delivery' in quotes intentionally because we are a business unit and we are not traditionally doing delivery. What I mean here is client satisfaction and client-centric delivery.
- *RWE / Odysseus BU does have a responsibility for delivery of projects in its portfolio*
- However, I am authorized to influence (in broader EPAM delivery unit) /implement (inside Odysseus unit) changes to the delivery strategy, team structure, and work assignments. This includes control of Delivery Management (DM), Project Management (PM), and execution.
- I will have the 'final' say on the production employees on the project.
- *To ensure clarity with respect to the point you make about "final say", let me characterize it this way: Within delivery of assigned strategic projects, you will have an authority to propose team changes, provided such changes fall within reasonable organizational constraints and align with established processes. These changes should be aimed at achieving the project's P&L targets (revenue and margin) and ensuring customer satisfaction. For instance, if a team member lacks the required skill set or is underperforming, they may be replaced with a more qualified individual, subject to availability.*
-

**Collaboration and Resources**

- I have been approved and encouraged to contact anyone in the AI space across EPAM with the intent to leverage their support, resources, and tools for client deliverables to achieve client satisfaction.
- *Yes, as previously was the case, you are empowered to collaborate and build synergies with others in the AI space across EPAM*
- I will matrix with the broader EPAM delivery organization (what I call the power of EPAM) and am enabled to leverage support for funded projects (e.g., EPAM DIAL, CodeMie), facilitating the breaking down of silos and encouraging collaboration.
- *Yes, assuming focus on project P&L success and customer satisfaction*

**Workload and Boundaries**

- We agreed to a reduction in my workload, establishing standard working hours of 7.5–8 hours per day. I am empowered and expected to say no when work hours go beyond reasonable.
- *To provide clarity and manage expectations, I want to address your note regarding workload. As per the U.S. Fair Labor Standards Act (FLSA), exempt employees are salaried and are expected to work the hours necessary to complete their job duties, with no specific limitation on daily hours. While EPAM defines a standard workweek as 40 hours, employees are encouraged to exercise effective time management by prioritizing tasks and focusing on core responsibilities to ensure their workload remains manageable. Please note that there is no formal agreement limiting daily work hours to 7.5–8 hours, nor an expectation that work can always be declined beyond reasonable limits. Ultimately, responsibilities must be fulfilled based on job expectations.*

- 
- While I can support RFPs as an SME where possible, I have the discretion to prioritize project deliverables and decline requests based on my judgment.

  *Your involvement will be directed to the identified key RFPs and the time allocated for them. Any new RFP requests will be reviewed by the LS Leadership Team, and your participation in those efforts will be decided in consultation with you, based on priority and availability*

**Business Development and Marketing**

- I will have no formal BD or marketing responsibilities, though my support is welcome. (Btw I love to do Business development, we are just saying that is going over and above and not part of my required work).
- We however agreed to actively work on promoting the Takeda like AI projects externally as an EPAM success story.

  *Please see the responsibilities listed above (b and c). Some BD and marketing support will be expected but will not be a primary responsibility*

I want to reaffirm my professional commitment to the reasonable delivery (best foot forward as Larry said) of these prioritized projects based on this clarified scope.

Please review this summary and respond with your confirmation that this accurately reflects our conversation. Your response is equivalent to an agreement of the change. I need this response for my personal sanity and continued commitment to EPAM.

Best regards,

Gowtham Rao