**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

**CIVIL ACTION**
**NO. 2:25-cv-06260-WB**

v.

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

# DEFENDANT'S EXHIBIT PX-36

***Pre-Separation Written Transparency & ECA Statutory IP Carveout Notices***

Source / Locator: EPAM000009-010, EPAM000033-0036, EPAM000114-0116 (9 pp.)
Date / Timestamp: 2025-10-01 to 2025-10-03
Target Claims: Count II (DJ: Covenant Voidance & OHDSI Carveout), Count I

Evidentiary Summary & Purpose:
Tab A: Dr. Rao email to HR attaching ECA. Tab B: June Dinitz HR email on IP ownership & covenants. Tab C: Dr. Rao formal written Notice E04 under ECA §§ 1(b) & 2(a).

*Authentication & Admissibility:*
*Authenticated pursuant to Fed. R. Evid. 901 and 28 U.S.C. § 1746 in Part IX (¶ 51) of the Declaration of Dr. Gowtham Rao, MD, PhD in Support of Motion for Leave to File First Amended Counterclaims.*

# PRE-SEPARATION WRITTEN TRANSPARENCY & ECA STATUTORY IP CARVEOUT NOTICES

| | |
|---|---|
| **Bates Locator:** | **EPAM000009** |
| **Document Date:** | 2025-10-01 |
| **From:** | Gowtham Rao [gowthamrao@gmail.com] |
| **To / Recipients:** | June Dinitz [june_dinitz@epam.com]; Larry McKlaine [larry_mcklaine@epam.com]; Gregory Klebanov [gregory_klebanov@epam.com]; Gowtham Rao [gowtham_rao@epam.com] |
| **Subject / Title:** | Fwd: NDA interpretation |
| **Evidentiary Note:** | Tab A: Dr. Rao Pre-Separation Written Transparency to HR (Bates EPAM000009–010) |

From : Gowtham Rao [gowthamrao@gmail.com]
Sent : 10/1/2025 5:07:38 PM
To : June Dinitz [june_dinitz@epam.com]; Larry McKlaine [larry_mcklaine@epam.com]; Gregory Klebanov [gregory_klebanov@epam.com]; Gowtham Rao [gowtham_rao@epam.com]
Subject : Fwd: NDA interpretation
Attachments : epam contract.pdf

This per my records is the executed copy of the EPAM contract. Please confirm that my copy is the same as yours.

As part of my original employment negotiation with EPAM, we had modified the terms of the original standard language to make restrictions significantly less than standard. In our amicable separation discussion, my expectation is the offer to be significantly less restrictive than the attached original contract.

Gowtham

---------- Forwarded message ---------
From: Gowtham Rao <gowthamrao@gmail.com>
Date: Tue, Nov 12, 2024 at 6:25 PM
Subject: Re: NDA interpretation
To: Gregory Klebanov <gregory_klebanov@epam.com>, Yvonne Schuster <Yvonne_Schuster@epam.com>

Dear Greg,

Thank you for forwarding Sarah's email clarifying the interpretation of the NDA. The clarification regarding health systems, payors, and pharma businesses not being considered competitors is helpful. Based on this information, I have signed the updated NDA.

I look forward to working with EPAM.

Sincerely,
Gowtham

On Tue, Nov 12, 2024 at 5:14 PM Gregory Klebanov <gregory_klebanov@epam.com> wrote:

FYI

Begin forwarded message:

From: Sarah Lugar <Sarah_Lugar@epam.com>
Date: November 12, 2024 at 5:12:33 PM EST
To: Gregory Klebanov <gregory_klebanov@epam.com>
Subject: NDA interpretation

Hi Greg, I am confirming per our chat that entities that are primarily health systems, payors and pharma business would not typically be providing the same services to end-clients as EPAM does. So, I'd agree that these would not fall into the definition of competitor under 5c2. Those types of entities are possible end-clients of EPAM, and not likely to be competitors of EPAM.

You can forward this email along to the extent helpful in interpreting our NDA.

Sarah Lugar
Director, Associate General Counsel, Global Employment Law

Office: +1 267 759 9000x49808
Working Remotely Timezone: (UTC-04:00)
Microsoft Teams

image001.png
epam.com
confidentiality caution and disclaimer
This message is intended only for the use of the individual(s) or entity(ies) to which it is addressed and contains confidential information that may be legally privileged. If you are not the intended recipient, or authorized to read this message on behalf of the intended recipient, do not read, disseminate, distribute or copy this message and please delete this message and destroy any printed copies.

# PRE-SEPARATION WRITTEN TRANSPARENCY & ECA STATUTORY IP CARVEOUT NOTICES

| | |
|---|---|
| **Bates Locator:** | **EPAM000033** |
| **Document Date:** | 2024-05-13 |
| **From:** | EPAM Systems, Inc. |
| **To / Recipients:** | |
| **Subject / Title:** | Special Employment Agreement / Restrictive Covenants |
| **Evidentiary Note:** | Tab B: June Dinitz Oct 3 HR Email on IP Ownership & Covenants (Bates EPAM000033–0036) |

From : June Dinitz [June_Dinitz@epam.com]
Sent : 10/3/2025 4:19:06 PM
To : Gowtham Rao [gowtham_rao@epam.com]
CC : Larry McKlaine [Larry_McKlaine@epam.com]; Gowtham Rao [gowthamrao@gmail.com]
Subject : RE: E04 - Gowtham and EPAM - Clarification and Shared Understanding: Intellectual Property Ownership (Sections 1b and 2a)

Hi Gowtham,
To address your multiple emails, we cannot respond to your various, individual scenarios, as life is rarely as defined as the examples you have provided. The guiding principles Larry has reviewed with you are accurate in terms of our expectations.

As per Larry's response to email E01, regarding your interest to revisit the possibility of a mutual separation in the future if the terms and conditions of the current covenants change in a way that would be agreeable to both parties, this is something we will review with leadership and revert back to you accordingly. Please note that due to travel schedules, this response may take some additional time. Thank you for your patience.

Kind Regards,
June
June Dinitz
Senior Director, Head of People, USA and Canada

Office: +1 267 759 9000x59223 Mobile: +1 646 345 0451

From: Gowtham Rao <gowtham_rao@epam.com>
Sent: Thursday, October 2, 2025 4:15 PM
To: Larry McKlaine <Larry_McKlaine@epam.com>
Cc: June Dinitz <June_Dinitz@epam.com>; Gowtham Rao <gowthamrao@gmail.com>
Subject: E04 - Gowtham and EPAM - Clarification and Shared Understanding: Intellectual Property Ownership (Sections 1b and 2a)

Dear Larry, please have the appropriate authority in EPAM reply with agreement or corrections for documentation. I have CC'd my personal email. This is an email for clarification as a current employee.

I appreciate the opportunity to continue our constructive dialogue regarding the Employment Covenants Agreement. In this

email, I wish to formally document our shared understanding of the clauses related to Intellectual Property (IP) ownership, specifically focusing on the exceptions clearly defined within the agreement.

Ensuring we have a precise interpretation of these provisions is crucial for preventing future misunderstandings. This is particularly important given my active involvement in the scientific and open-source communities within life sciences, healthcare, and AI. My intent is to fully respect EPAM's proprietary interests while ensuring that my ability to continue participating in, and contributing to, public-domain scientific advancement-and developing independent projects-is not restricted by ambiguity. This request is for clarification of the existing terms as a current employee, not a modification of the agreement. These terms were also verbally agreed with EPAM and my current manager Gregory Klebanov (CC'd).

Contractual Context

We focused our discussion on two critical sections of the Agreement that delineate what is and is not considered EPAM property.

Section 1(b) provides a crucial exclusion from the definition of Confidential Information:

"For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources."

Furthermore, Section 2(a), which applies as my primary work location is New Jersey, supplements the standard "Ownership of Work Product" (Section 2) by recognizing employee ownership of independent developments:

"...you understand and acknowledge that the provisions in this Agreement requiring you to assign (or otherwise providing for ownership by Employer of) rights to Work does not apply to, any invention that you develop entirely on your own time without using EPAM Groups' equipment, supplies, facilities, or trade secret information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention directly to Employer's business or actual or demonstrably anticipated research or development of Employer; or (ii) result from any work performed by you for Employer."

Shared Interpretation and Industry Context

Our shared understanding is that these two sections work together to protect an employee's right to utilize public knowledge and develop intellectual property independently, provided specific conditions are met.

1. The Public Domain and Scientific Community Exception (Sec. 1(b)) Section 1(b) explicitly acknowledges that general industry knowledge and skills are not confidential. Crucially, it also states that software developed for community, professional, or scientific purposes, derived from general industry sources and without reliance on EPAM Confidential Information, is expressly excluded from EPAM's claim.

This interpretation is vital in the fields of life sciences, healthcare, and Artificial Intelligence. These fields prioritize scientific discussion, community validation, public ideation with public release, as transparency is often required for trust and adoption.

Much of my work involves participation in groups like OHDSI (Observational Health Data Sciences and Informatics), an open-source, multi-stakeholder collaborative that develops and relies on public-domain standards and tools. Similarly, the

broader AI and software communities function through the exchange of open-source code and public research.

We agree that knowledge, skills, and methodologies acquired from these public sources constitute "general industry knowledge" and are "reasonably available through general industry sources."

2. The Independent Development Exception (Sec. 2(a)) Section 2(a) establishes that EPAM does not own work developed entirely on my own time, using my own resources, and without using EPAM trade secrets.

Clarification of Ownership: What Does NOT Constitute EPAM IP

To ensure complete alignment, the following illustrates activities and work products that, based on the contractual language, are not owned by EPAM.

1. Utilization of General Industry Knowledge and Community Contributions Learning and applying concepts, algorithms, or methodologies published in scientific papers, open-source documentation (e.g., OHDSI standards, public AI frameworks), or presented at public conferences. This also includes developing software or methodologies for projects, provided the development does not rely on EPAM Confidential Information.

2. Independent Personal Projects (Past, Present, and Future) Any code, software, or invention I have developed, or will develop, that meets the criteria of being created:

Entirely on my personal time.
Using my personal computer and equipment.
Using personal infrastructure (e.g., personal GitHub account, personal cloud services);
At my personal expense, AND
Without incorporating EPAM trade secrets.

Specific Example: The Code Evaluation Adjudication Engine

As a concrete example of independent development for learning and potential future ventures, I maintain a project in my personal GitHub repository: The Code Evaluation Adjudication Engine
(https://github.com/gowthamrao/codeeval_adjudication_engine/tree/develop
). This is a project I am developing for the OHDSI Symposium workshop on October 9th 2025 as announced here https://forums.ohdsi.org/t/confirmed-hyrbid-and-in-person-ohdsi-symposium-2025-phenotype-development-and-evaluation-work-group-call-for-collaboration-collaborative-intelligence-humans-and-ai-in-concept-set-development-in-phenotyping/24349

I assert that this project, and others like it, fall squarely within the exceptions of Sections 1(b) and 2(a). It was developed entirely on my personal computer, on my personal time, and at my personal expense. It does not utilize or rely upon any EPAM Confidential Information, nor does it result from work performed for EPAM. It references my OHDSI affiliation as rao@ohdsi.org.

Therefore, it is our shared understanding that I solely own this code, I am free to declare my ownership publicly, and I retain the right to assign any license of my choice (e.g., MIT, Apache 2.0, proprietary) to this work product.

Acknowledged Restrictions: What DOES Constitute EPAM IP

For completeness and to demonstrate good faith, I acknowledge that the following would be owned by EPAM under

Section 2 (Ownership of Work Product):
Work developed using EPAM equipment, infrastructure, or resources. E.g. EPAM gitlab account, EPAM computer, EPAM servers.
Work developed as part of assigned duties for EPAM business ("in the course of your employment"). This excluded work that was done for self-learning or self-improvement in preparation for EPAM business but not paid directly by EPAM, as this would be covered under general independent work.
Work that specifically incorporates or relies upon EPAM Confidential Information or trade secrets.

To the best of my knowledge and recollection, I have not used any EPAM Confidential Information in the development of my personal projects or my public scientific contributions.

I trust these points accurately reflect the clear language of the agreement and our shared understanding of intellectual property ownership. Documenting these clarifications provides necessary assurance and a clear framework moving forward. Please have the appropriate authority in EPAM reply with agreement or corrections for documentation.

Best regards,

Gowtham Rao

# PRE-SEPARATION WRITTEN TRANSPARENCY & ECA STATUTORY IP CARVEOUT NOTICES

| | |
|---|---|
| **Bates Locator:** | **EPAM000114** |
| **Document Date:** | 2024-05-13 |
| **From:** | EPAM Systems, Inc. |
| **To / Recipients:** | |
| **Subject / Title:** | Special Employment Agreement / Restrictive Covenants |
| **Evidentiary Note:** | Tab C: Dr. Rao Oct 2 Formal Written Notice E04 under ECA §§ 1(b) & 2(a) (Bates EPAM000114–0116) |

From : Gowtham Rao [gowtham_rao@epam.com]
Sent : 10/2/2025 4:14:56 PM
To : Larry McKlaine [Larry_McKlaine@epam.com]
CC : June Dinitz [June_Dinitz@epam.com]; Gowtham Rao [gowthamrao@gmail.com]
Subject : E04 - Gowtham and EPAM - Clarification and Shared Understanding: Intellectual Property Ownership (Sections 1b and 2a)

Dear Larry, please have the appropriate authority in EPAM reply with agreement or corrections for documentation. I have CC'd my personal email. This is an email for clarification as a current employee.

I appreciate the opportunity to continue our constructive dialogue regarding the Employment Covenants Agreement. In this email, I wish to formally document our shared understanding of the clauses related to Intellectual Property (IP) ownership, specifically focusing on the exceptions clearly defined within the agreement.

Ensuring we have a precise interpretation of these provisions is crucial for preventing future misunderstandings. This is particularly important given my active involvement in the scientific and open-source communities within life sciences, healthcare, and AI. My intent is to fully respect EPAM's proprietary interests while ensuring that my ability to continue participating in, and contributing to, public-domain scientific advancement-and developing independent projects-is not restricted by ambiguity. This request is for clarification of the existing terms as a current employee, not a modification of the agreement. These terms were also verbally agreed with EPAM and my current manager Gregory Klebanov (CC'd).

Contractual Context

We focused our discussion on two critical sections of the Agreement that delineate what is and is not considered EPAM property.

Section 1(b) provides a crucial exclusion from the definition of Confidential Information:

"For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources."

Furthermore, Section 2(a), which applies as my primary work location is New Jersey, supplements the standard "Ownership of Work Product" (Section 2) by recognizing employee ownership of independent developments:

"...you understand and acknowledge that the provisions in this Agreement requiring you to assign (or otherwise providing for ownership by Employer of) rights to Work does not apply to, any invention that you develop entirely on your own time without using EPAM Groups' equipment, supplies, facilities, or trade secret information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention directly to Employer's business or actual or demonstrably anticipated research or development of Employer; or (ii) result from any work performed by you for Employer."

Shared Interpretation and Industry Context

Our shared understanding is that these two sections work together to protect an employee's right to utilize public knowledge and develop intellectual property independently, provided specific conditions are met.

1. The Public Domain and Scientific Community Exception (Sec. 1(b)) Section 1(b) explicitly acknowledges that general industry knowledge and skills are not confidential. Crucially, it also states that software developed for community, professional, or scientific purposes, derived from general industry sources and without reliance on EPAM Confidential Information, is expressly excluded from EPAM's claim.

This interpretation is vital in the fields of life sciences, healthcare, and Artificial Intelligence. These fields prioritize scientific discussion, community validation, public ideation with public release, as transparency is often required for trust and adoption.

Much of my work involves participation in groups like OHDSI (Observational Health Data Sciences and Informatics), an open-source, multi-stakeholder collaborative that develops and relies on public-domain standards and tools. Similarly, the broader AI and software communities function through the exchange of open-source code and public research.

We agree that knowledge, skills, and methodologies acquired from these public sources constitute "general industry knowledge" and are "reasonably available through general industry sources."

2. The Independent Development Exception (Sec. 2(a)) Section 2(a) establishes that EPAM does not own work developed entirely on my own time, using my own resources, and without using EPAM trade secrets.

Clarification of Ownership: What Does NOT Constitute EPAM IP

To ensure complete alignment, the following illustrates activities and work products that, based on the contractual language, are not owned by EPAM.

1. Utilization of General Industry Knowledge and Community Contributions Learning and applying concepts, algorithms, or methodologies published in scientific papers, open-source documentation (e.g., OHDSI standards, public AI frameworks), or presented at public conferences. This also includes developing software or methodologies for projects, provided the development does not rely on EPAM Confidential Information.

2. Independent Personal Projects (Past, Present, and Future) Any code, software, or invention I have developed, or will develop, that meets the criteria of being created:

Entirely on my personal time.

Using my personal computer and equipment.
Using personal infrastructure (e.g., personal GitHub account, personal cloud services);
At my personal expense, AND
Without incorporating EPAM trade secrets.

Specific Example: The Code Evaluation Adjudication Engine

As a concrete example of independent development for learning and potential future ventures, I maintain a project in my personal GitHub repository: The Code Evaluation Adjudication Engine (https://github.com/gowthamrao/codeeval_adjudication_engine/tree/develop
). This is a project I am developing for the OHDSI Symposium workshop on October 9th 2025 as announced here https://forums.ohdsi.org/t/confirmed-hyrbid-and-in-person-ohdsi-symposium-2025-phenotype-development-and-evaluation-work-group-call-for-collaboration-collaborative-intelligence-humans-and-ai-in-concept-set-development-in-phenotyping/24349

I assert that this project, and others like it, fall squarely within the exceptions of Sections 1(b) and 2(a). It was developed entirely on my personal computer, on my personal time, and at my personal expense. It does not utilize or rely upon any EPAM Confidential Information, nor does it result from work performed for EPAM. It references my OHDSI affiliation as rao@ohdsi.org.

Therefore, it is our shared understanding that I solely own this code, I am free to declare my ownership publicly, and I retain the right to assign any license of my choice (e.g., MIT, Apache 2.0, proprietary) to this work product.

Acknowledged Restrictions: What DOES Constitute EPAM IP

For completeness and to demonstrate good faith, I acknowledge that the following would be owned by EPAM under Section 2 (Ownership of Work Product):

Work developed using EPAM equipment, infrastructure, or resources. E.g. EPAM gitlab account, EPAM computer, EPAM servers.
Work developed as part of assigned duties for EPAM business ("in the course of your employment"). This excluded work that was done for self-learning or self-improvement in preparation for EPAM business but not paid directly by EPAM, as this would be covered under general independent work.
Work that specifically incorporates or relies upon EPAM Confidential Information or trade secrets.

To the best of my knowledge and recollection, I have not used any EPAM Confidential Information in the development of my personal projects or my public scientific contributions.

I trust these points accurately reflect the clear language of the agreement and our shared understanding of intellectual property ownership. Documenting these clarifications provides necessary assurance and a clear framework moving forward. Please have the appropriate authority in EPAM reply with agreement or corrections for documentation.

Best regards,

Gowtham Rao