**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

v.

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

**CIVIL ACTION**
**NO. 2:25-cv-06260-WB**

# DEFENDANT'S EXHIBIT PX-38

## *EPAM's Responses and Objections to Defendant's Requests for Admission (Sets 1-5)*

Source / Locator: Served Discovery Responses (Tab A: Initial Sets 1-3 [328 pp.]; Tab B: Initial Sets 4 & 5 [454 pp.]; Tab C: Amended Sets 1-3 [338 pp.]; Tab D: Amended Sets 4 & 5 [459 pp.]; Total 1,579 pp.)
Date / Timestamp: Served 2026-09-14, 2026-09-18, & 2026-10-12
Target Claims: Count I, Count II, Count III; 244 Conclusively Established Admissions under Fed. R. Civ. P. 36(b)

Evidentiary Summary & Purpose:
244 binding admissions under Rule 36(b) across Sets 1-5 establishing remote work, governing agreements, involuntary termination, and restrictive covenant voidance, incorporating October 12, 2026 amended service while preserving initial admissions under Rule 36(b) withdrawal restrictions.

*Authentication & Admissibility:*
*Authenticated pursuant to Fed. R. Evid. 901 and 28 U.S.C. § 1746 in Part IX (¶ 51) of the Declaration of Dr. Gowtham Rao, MD, PhD in Support of Motion for Leave to File First Amended Counterclaims.*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260 |

**EPAM SYSTEMS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR ADMISSION**

Plaintiff/Counterclaim-Defendant EPAM SYSTEMS, INC. ("EPAM"), by and through its attorneys, Seyfarth Shaw LLP, hereby submits its Responses and Objections to Defendant/Counterclaim-Plaintiff GOWTHAM RAO's First, Second, and Third Set of Requests For Admission.

**RESERVATION OF RIGHTS**

Any responses to Defendant's Requests for Admission will be subject to EPAM's right to object to the admission into evidence of any and all such responses on the grounds that they, or any of them, are not relevant to the issues in this action or are otherwise inadmissible. The responses and objections contained herein are based on EPAM's current knowledge, information and belief. These responses and objections are subject to amendment and supplementation as EPAM acquires additional information and completes its review and analysis of the facts and issues presented by the pleadings.

**PRELIMINARY STATEMENT**

1. The following responses are given without prejudice to EPAM's right to produce

evidence of any subsequently discovered fact or facts. EPAM accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made and/or documents are discovered.

2. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of EPAM in relation to further discovery, research or analysis.

3. The Requests for Admission have been interpreted and answered in accordance with plain English usage. Many of the Requests, however, are vague and ambiguous. EPAM has done its best to interpret these requests as it understands them.

4. EPAM will not produce any information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

**RESPONSES AND OBJECTIONS**

**REQUEST FOR ADMISSION NO. 1:**

Admit that Section 3.21 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at pp. 26–28) establishes express criteria authorizing employees to use a 'Personally owned computing device' (defined on page 27 as 'devices without EPAM image') for 'processing or accessing EPAM or Client confidential or strictly confidential (sensitive) data.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**<u>REQUEST FOR ADMISSION NO. 2:</u>**

Admit that Section 3.14 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at p. 17) explicitly provides: 'When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 3:**

Admit that during 2024 and 2025, EPAM employees routinely accessed EPAM corporate network services, SharePoint repositories, and project files from personally owned computing devices pursuant to Sections 3.7, 3.21, and 3.23 of EPAM's Acceptable Use of IT Resources Policy (ECF No. 30-3, Exhibit C).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Paragraph 24 of EPAM's First Amended Complaint (ECF No. 30 at p. 6) explicitly alleges that the underlying software code to EPAM's tools and products was 'accessible only to EPAM employees who work on the development of these products, are senior executives with broad access needs, or otherwise have business need for access to such information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Paragraph 32 of EPAM's First Amended Complaint (ECF No. 30 at p. 8) explicitly designates Dr. Rao as one of 'EPAM's executives... who interface directly with existing and potential clients.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Paragraph 41 of EPAM's First Amended Complaint (ECF No. 30 at p. 10) explicitly alleges that Dr. Rao was 'responsible for heading the data science business unit within EPAM's life sciences group and RWE business unit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Paragraph 36 of EPAM's First Amended Complaint (ECF No. 30 at p. 9) explicitly alleges that EPAM's 'trusted senior executives have access' to EPAM Confidential Information and IP 'to enable them to cultivate client relationships, engage on projects, develop new solutions, and expand the business on the Company's behalf.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 8:**

Admit that all access to EPAM SharePoint repositories, Microsoft OneDrive storage, and internal developer resources by Dr. Rao during his employment was conducted exclusively through official, EPAM-provisioned Single Sign-On (SSO) credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 9:**

Admit that neither Dr. Rao nor any device or user account operated by Dr. Rao bypassed, cracked, or circumvented any password, encryption, firewall, perimeter control, or access security restriction to view or download EPAM corporate or project files.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Denied. Dr. Rao violated corporate policy by locally downloading certain information to his personal device.

**REQUEST FOR ADMISSION NO. 10:**

Admit that access permissions for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) to EPAM SharePoint sites and software code repositories were configured, granted, and administered by EPAM IT systems administrators or repository owners.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are

disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 11:**

Admit that EPAM never assigned Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), user permissions or access rights to any source code repository or repositories for EPAM's ETL Conversion Kit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies this Request. Defendant had access to number of GitLab repositories as part of RWE team group access, including ETL Conversion Kit. EPAM audit logs from GitLab system confirms that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 12:**

Admit that EPAM possesses no server access log, audit record, or repository log showing that Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), accessed or cloned any source code repository or repositories for the ETL Conversion Kit during his employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding those objections, denied. EPAM audit logs from GitLab system confirms that Gowtham opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 13:**

Admit that neither Dr. Rao nor any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) downloaded the proprietary source code of EPAM's ETL Conversion Kit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding those objections, denied. EPAM audit logs from GitLab system confirms that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 14:**

Admit that Dr. Rao’s responsibilities heading the data science business unit included evaluating, developing, and presenting AI solutions, including the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding the foregoing objections, EPAM admits that Dr. Rao's responsibilities heading the data science business unit included evaluating, developing, and presenting AI solutions, including the AI Cohort Generator and AI Accelerator. EPAM further admits that the AI Cohort Generator included developments variously known within EPAM as "Prometheus," "Prometheus Platform," or "Prometheus Federated Data Analytics Platform," and that the AI Accelerator was also known as "EPAM Synapse" or "Synapse." EPAM denies the remaining portions of the request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that EPAM granted Dr. Rao, through EPAM-issued corporate user accounts and credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), access to AI project files, presentations, and solution assets—including materials relating to the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse')—for the purpose of developing solutions and expanding EPAM's business on the Company's behalf.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Dr. Rao used a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform computational tasks and client deliverables for EPAM during his employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) possessed computational, processing, and memory capacity exceeding the standard Company-owned laptop issued to Dr. Rao by EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 18:**

Admit that prior to October 15, 2025, EPAM management never issued Dr. Rao any written instruction or notice directing him to cease using his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments or access EPAM IT Resources.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; Defendant received written policies disallowing certain activities on a personal device.

**REQUEST FOR ADMISSION NO. 19:**

Admit that on November 12, 2024, prior to commencing employment, Dr. Rao transmitted a written communication to Vice President Gregory Klebanov inquiring whether EPAM permitted employees to 'bring your own laptop.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are

disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Vice President Gregory Klebanov was aware during Dr. Rao's employment that Dr. Rao utilized his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments and data science deliverables for EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 21:**

Admit that between November 18, 2024 and October 15, 2025, neither Vice President Gregory Klebanov nor any other EPAM supervisor directed Dr. Rao to cease performing work assignments or accessing EPAM IT Resources on his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; Defendant received written policies disallowing certain activities on a personal device.

**REQUEST FOR ADMISSION NO. 22:**

Admit that prior to October 15, 2025, EPAM management never directed EPAM IT administrators to block, restrict, or terminate enterprise network authentication or access to EPAM IT Resources from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 23:**

Admit that EPAM's enterprise authentication systems, Microsoft Entra ID (Azure AD) sign-in logs, and endpoint telemetry recorded recurring authentications and access to EPAM IT Resources using any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) on dates spanning November 18, 2024 through October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 24:**

Admit that upon terminating Dr. Rao's employment on October 15, 2025, EPAM IT administrators did not execute a remote wipe or Mobile Device Management (MDM) command to remove data automatically synced up to EPAM online storage (SharePoint, OneDrive) from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 25:**

Admit that Section 3.14 of EPAM’s Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 17) states: 'When storage of strictly confidential or confidential

data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 26:**

Admit that Exhibit C attached to EPAM's First Amended Complaint (ECF No. 30-3) is a true, correct, and authentic copy of EPAM's Acceptable Use of IT Resources Policy in effect during 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 27:**

Admit that Section 1.1 ('SCOPE') of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 6) provides that the Policy applies to 'all EPAM employees, contractors, temporary employees, or outside consultants working on behalf of an EPAM entity whenever handling IT Resources,' including Dr. Rao throughout the duration of his employment in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 28:**

Admit that the Microsoft OneDrive synchronization client operates by automatically synchronizing files between local endpoint storage and EPAM online storage (SharePoint, OneDrive) in the background without requiring affirmative user initiation for each individual file.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in October 2025, EPAM’s Microsoft 365 enterprise tenant configuration permitted enterprise users, including Dr. Rao, to utilize Microsoft OneDrive’s built-in 'Always keep on this device' feature to automatically synchronize and maintain local offline copies of corporate SharePoint document libraries on connected endpoints.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 30:**

Admit that when Dr. Rao selected 'Always keep on this device' on a synchronized EPAM SharePoint library, EPAM's Microsoft 365 and SharePoint tenant audit logs recorded each automatically hydrated file as a server-side download event under any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 31:**

Admit that automated background synchronization executed via Microsoft OneDrive generates local file system hydration metadata, temporary cache files, and synchronization state overlays on connected endpoints rather than manual web browser download artifacts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 32:**

Admit that in EPAM's Microsoft 365 download audit export produced as Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), over 80% of the total log entries (consisting of at least 44,000 events) represent FileSyncDownloadedFull operations executed by the Microsoft OneDrive synchronization client ( OneDriveSync ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM

declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 33:**

Admit that in EPAM's Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), at least 44,000 entries record the client user-agent string as Microsoft SkyDriveSync (the desktop OneDrive synchronization engine), and fewer than 100 entries across the entire dataset record standard web browser user-agents.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 34:**

Admit that in his sworn declaration filed on ECF No. 43-2 at Footnote 3, EPAM counsel of record James Yu affirmed that Microsoft Purview defines FileSyncDownloadedFull events as:

'User downloaded a file to their computer from a SharePoint document library or OneDrive using OneDrive sync app (OneDrive.exe).'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The sworn declaration referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 35:**

Admit that the SharePoint document libraries synchronized in EPAM Search Terms - Rao SP Download322329263.1.xlsx (including EPAMRWEpurpleteam , EPAMEPAMAlteraHealthModernizationTransformation , crm-187399cbfbe942 , EPAMPrometheusAI , and EPAMPfizerPresales ) contained zero source code files for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 36:**

Admit that EPAM's Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) includes log entries recording Dr. Rao downloading his own personnel records archive ( RG Personnel Records.zip ) from the OneDrive folder of EPAM Human Resources Director Jen Loftis ( .../personal/jen_loftis_epam_com/.../Personal records requests/Gowtham, Rao/ ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 37:**

Admit that the FileDownloaded entries in EPAM Search Terms - Rao SP Download322329263.1.xlsx include entries recording Dr. Rao accessing work files shared directly by EPAM colleagues in official Microsoft Teams chat threads (including files shared by Santanu Sen, Sudeep Ghate, and Bilal Salim).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 38:**

Admit that none of the web browser or Microsoft Teams download entries in EPAM Search Terms - Rao SP Download322329263.1.xlsx contain source code files or Git repository archives for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 39:**

Admit that EPAM has not produced in this litigation any server-side audit log, clone log, pull log, or export record from its internal version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) downloaded or cloned source code for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' between September 1, 2025 and October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta* Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits insofar as the request seeks EPAM’s production to date; notably, EPAM’s deadline to respond to Defendant’s document requests has not yet run.

**REQUEST FOR ADMISSION NO. 40:**

Admit that EPAM possesses no server-side Bitbucket, Git, or version control log showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) cloned or downloaded any source code repository or repositories for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' during his employment in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the request; EPAM audit logs from GitLab system confirms that Defendant opened and downloaded the repository copy together with many other repositories.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) constitutes the sole server-side document download telemetry EPAM has produced in this litigation to support its allegations of unauthorized data acquisition against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits insofar as the request seeks EPAM's production to date; notably, EPAM's deadline to respond to Defendant's document requests has not yet run.

**REQUEST FOR ADMISSION NO. 42:**

Admit that if EPAM's internal Bitbucket or Git source code repository or repositories did not maintain server-side clone and access logs for the 'ETL Conversion Kit,' 'AI Cohort Generator,' and 'AI Accelerator' in 2025, EPAM lacked technical security controls to track or identify which corporate users downloaded or cloned that source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 43:**

Admit that no corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) was provisioned read, write, or clone permissions in EPAM's version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) to any internal source code repository or repositories housing code of the 'ETL Conversion Kit' in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request. Defendant had group access to a number of GitLab repositories as part of RWE team group access, including ETL

Conversion Kit. EPAM audit logs from GitLab system confirms that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 44:**

Admit that the data transformation logic utilized in the 'ETL Conversion Kit' was derived in whole or in part from publicly available OHDSI open-source tools, SQL scripts, and OMOP standard vocabularies.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a small portion of the logic of its ETL Conversion Kit is re-used from open source materials. EPAM otherwise denies the Request, as the remainder of the ETL logic was developed for EPAM.

**<u>REQUEST FOR ADMISSION NO. 45:</u>**

Admit that during 2024 and 2025, EPAM employees routinely utilized personal email accounts (including Gmail) and external cloud collaboration tools (including Google Docs and Google Sheets) to draft, collaborate on, and share EPAM work product.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "routinely")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 46:**

Admit that on September 24, 2025 at 3:44 PM EDT, EPAM employee Konstantin Iaroshovets ( konstantin_iaroshovets@epam.com ) transmitted an electronic invitation granting edit permissions for the Google document titled 'MedRAG - AWS Estimates' directly to Dr. Rao's personal Google account ( gowthamrao@gmail.com ) and simultaneously copied the personal Google account of EPAM employee Santanu Sen ( santanu.sens@gmail.com ), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 1).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 47:**

Admit that on July 2, 2025 at 2:03 PM EDT, EPAM employee Naaz Fatima Butt ( naazfatima_butt@epam.com ) transmitted an electronic invitation granting edit permissions for the Google spreadsheet titled 'GCP Foundry CIO Hub Campaign' directly to Dr. Rao's personal Google account ( gowthamrao@gmail.com ), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are

disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 48:**

Admit that EPAM has never issued a written warning, formal reprimand, Performance Improvement Plan, suspension, termination notice, or legal claim against Konstantin Iaroshovets, Santanu Sen, or Naaz Fatima Butt for transmitting, sharing, or receiving EPAM business documents on personal Google or Gmail accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 49:**

Admit that in 2025, Dr. Rao developed the written deliverables for the Takeda Pharmaceutical Generative AI proof-of-concept (POC)—focusing on launch strategy simulation for Takeda's orexin franchise—externally using Google Docs on his personal Google account

with the express knowledge and authorization of Takeda client representative Saurin Jani, as set forth in Defendant's Verified Counterclaims (ECF No. 33 ¶ 338 at p. 63).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 50:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account ( gowtham_rao@epam.com ) to Takeda client representative Saurin Jani confirming that project prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 51:**

Admit that in September and October 2025, EPAM did not implement technical Data Loss Prevention (DLP) blocks, gateway filtering rules, or administrative access controls preventing corporate users from transmitting email attachments or sharing Google Workspace documents with external personal '@gmail.com' addresses.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 52:**

Admit that in September and October 2025, EPAM maintained no technical mechanism or administrative procedure to recall, remotely wipe, or audit business documents once shared by corporate personnel to external personal '@gmail.com' accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 53:**

Admit that during Dr. Rao's employment in 2024 and 2025, EPAM formally reviewed, approved, and reimbursed expense reports submitted by Dr. Rao for commercial Generative AI subscriptions (including OpenAI ChatGPT and Google Gemini) registered to a personal email account controlled by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that EPAM approved expenses associated with commercial AI subscriptions. EPAM otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 54:**

Admit that for several consecutive months during Dr. Rao’s employment, EPAM Vice President Gregory Klebanov reviewed and approved corporate expense reports reimbursing Dr. Rao for commercial Generative AI subscriptions registered to a personal email account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that EPAM approved expenses associated with commercial AI subscriptions. EPAM otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 55:**

Admit that on June 17, 2026 at 3:08 PM EDT, EPAM Associate General Counsel Sarah Lugar utilized a personal non-EPAM Google account ( sarahjlugar@gmail.com ) to transmit an electronic access request directly to Dr. Rao’s personal Google account ( gowthamrao@gmail.com ) attempting to open and access a cloud-hosted document entitled '[DELETE] AI-Driven Pharmaceutical Strategy Generation'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 56:**

Admit that on December 10, 2024, EPAM Vice President Gregory Klebanov and Dr. Rao collaboratively formulated plans to integrate Large Language Models (LLMs) and prompt engineering into analytics workflows for automated case adjudication and feasibility assessments.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 57:**

Admit that when Dr. Rao requested dedicated server infrastructure in December 2024 to deploy vector databases and Atlas instances, EPAM Vice President Gregory Klebanov declined to provision dedicated server instances citing cost and redundancy.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 58:**

Admit that software codebases, schemas, and analytical tools published under ANY repository within the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization ( github.com/OHDSI , including ATLAS, ACHILLES, WebAPI, CommonDataModel, and DatabaseConnector) are distributed under open-source software licenses (including Apache License 2.0 and MIT License).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Notwithstanding its objections, denied. Among other problems, the above statement is not always true. For instance, proprietary or other materials published maliciously and/or

without the permission of the owner of such materials do not become open source merely by being illicitly published on an open source repository.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the Observational Medical Outcomes Partnership ('OMOP') Common Data Model ('CDM') specifications (including relational database schemas, Data Definition Language scripts, and Standardized Vocabularies) are published and freely accessible to the public in open-access repositories (including github.com/OHDSI/CommonDataModel and athena.ohdsi.org ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 60:**

Admit that EPAM does not own registered copyrights, exclusive commercial licenses, or proprietary intellectual property rights in ANY software repository or codebase hosted under the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization ( github.com/OHDSI , including but not limited to Atlas , Achilles , WebAPI , CommonDataModel , DatabaseConnector , and the HADES package ecosystem).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 61:**

Admit that prior to and throughout his employment with EPAM, Dr. Rao served as an active leader of Observational Health Data Sciences and Informatics ('OHDSI') working groups, including the OHDSI Phenotype Development and Evaluation Working Group and the Health Economics and Value Working Group.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "routinely")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 62:**

Admit that prior to November 12, 2024, Dr. Rao had authored, published, and publicly released healthcare data analytics methodologies, software packages, and peer-reviewed scientific studies indexed in PubMed and public GitHub repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public record referenced speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation.

On these bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 63:**

Admit that EPAM recruited and hired Dr. Rao as Managing Principal with an annual base salary of $250,000 to head its Real-World Evidence data science unit based upon his verified professional credentials as a licensed physician (MD), epidemiologist (PhD), and health data science leader.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that Dr. Rao's annual base salary was $250,000, as a Managing Principal, to EPAM's Real-World Evidence data science unit. EPAM otherwise objects and refuses to admit or deny the Request.

**REQUEST FOR ADMISSION NO. 64:**

Admit that EPAM's 'ETL Conversion Kit' utilizes publicly available OHDSI SQL transformation scripts to map healthcare source data into the OMOP Common Data Model.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 65:**

Admit that the data mapping specifications and transformation rules used to convert commercial healthcare databases into the OMOP Common Data Model are published in publicly accessible open-source repositories (including OHDSI/ETL-LambdaBuilder and the Athena vocabulary repository).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public record referenced speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation. On that basis EPAM objects to the Request, declines to admit or deny, and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 66:**

Admit that EPAM publicly markets its OMOP ETL conversion capabilities on its public website and conducts client training workshops (including for Pfizer, C-Path, and Gilead) describing the functional workflow of profiling source data, mapping vocabularies, and transforming data into the OMOP Common Data Model.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding its objections, EPAM admits the Request.

<u>**REQUEST FOR ADMISSION NO. 67:**</u>

Admit that during Dr. Rao's employment at EPAM, Johnson & Johnson maintained and publicly published its own open-source OMOP ETL transformation codebase ('ETL- Lambda') on GitHub without requiring commercial licensing from EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 68:**

Admit that within EPAM and Odysseus Data Services, the OMOP ETL engineering team was managed separately from the Real-World Evidence data science unit headed by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the neutral forensic examiner Intelligent Discovery Solutions (iDS) identified zero files containing proprietary source code of EPAM's 'ETL Conversion Kit' on Dr. Rao's personal workstation (designated by iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 70:**

Admit that despite having direct electronic access to the actual file contents of over 80,000 files extracted by neutral examiner iDS from Device A0001 (Make: MSI, S/N: MSB0Y2O7S0104130) and hosted on the neutral Relativity platform, EPAM has not identified to Dr. Rao any specific file from that collection containing proprietary source code of EPAM's 'ETL Conversion Kit'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding those objections, denied. EPAM does not have direct electronic access to the actual file contents of over 80,000 files extracted by neutral examiner iDS from Device A0001.

**REQUEST FOR ADMISSION NO. 71:**

Admit that on May 8, 2025, Dr. Rao, using his OHDSI committer identity ( Gowtham Rao <rao@ohdsi.org> ), independently authored, packaged, and published the initial root commit (Commit SHA: dc37706 , Message: 'Initial root commit on main'), official Release v0.1.0 (Tag SHA: 9f157ed ), and subsequent version releases through Release v0.1.8 (Commit SHA: dd25c51 ) of the open-source Python software repository 'LlmPromptBuilders' on public GitHub under the OHDSI organization ( github.com/OHDSI/LlmPromptBuilders ) under an Apache 2.0 license.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 72:**

Admit that Section 1(b) of the Employment Covenants Agreement signed by Dr. Rao (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly states: 'For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 73:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) contains no term, condition, or requirement obligating an employee to obtain advance written permission, authorization, or approval from EPAM to develop or publish software for scientific, professional, or community groups without reliance on EPAM Group Confidential Information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely

quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 74:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), EPAM and Odysseus leadership (including Gregory Klebanov) knew that Dr. Rao was an active open-source software contributor to the Observational Health Data Sciences and Informatics (OHDSI) community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 75:**

Admit that software developed by Dr. Rao for the OHDSI scientific community without reliance on EPAM Group Confidential Information is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. Oppenheimer Fund, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. See Penn Eng'g, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); Martin Marietta Materials, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. See Solomon, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document.

Notwithstanding the foregoing objections, EPAM denies the Request. The above statement is not always accurate. By way of example, the Ownership of Work Product provision in the above mentioned Agreement states that any "trade secret, work product and original work of authorship" made in connection with or in the course of Rao's employment with EPAM is the exclusive property of EPAM.

**REQUEST FOR ADMISSION NO. 76:**

Admit that the public open-source Python software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 77:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero lines of source code copied, extracted, or derived from any private, internal EPAM proprietary software repository.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to

investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero confidential client data, patient-level clinical records, or proprietary business strategy documents of any EPAM client (including Takeda Pharmaceutical).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 79:**

Admit that as of the date of these responses, EPAM has not identified any specific Python class, method, function, or line of code within the public repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) that constitutes an EPAM proprietary trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 80:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) relies exclusively on standard public Python libraries and public Large Language Model APIs, without calling or depending upon any closed, internal EPAM proprietary API or microservice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 81:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is an open-source OHDSI library designed for the healthcare, life sciences, and pharmaceutical informatics domain to decouple prompt engineering from application code and manage agent personas.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to

investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was an advisory consulting demonstration conducted via public Gemini-based prompting and public research data, rather than a custom software development deliverable.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 83:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was developed prior to any assignment or involvement of Dmitrii Ilin or EPAM software developers.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 84:**

Admit that EPAM developers built no proprietary software application, backend microservice, or source code repository or repositories for the initial Takeda orexin proof-of-concept.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-

*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the initial Takeda orexin launch planning simulation was powered exclusively by publicly available scientific data and consumer-grade public Large Language Model accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 86:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account ( gowtham_rao@epam.com ) to Takeda client representative Saurin Jani confirming that Generative AI prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 87:**

Admit that the public open-source software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains generic Python classes for prompt formatting and persona management, and contains zero confidential clinical data or business strategy documents of Takeda Pharmaceutical.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 88:**

Admit that under the governing Master Services Agreement between EPAM and Takeda Pharmaceutical (MSA CW2719230), all client deliverables, strategy reports, and work product developed for Takeda Pharmaceutical (including, but not limited to, developments for Takeda's orexin franchise) are owned exclusively by Takeda Pharmaceutical.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding the foregoing objections, EPAM denies the Request.

**REQUEST FOR ADMISSION NO. 89:**

Admit that Dr. Rao published the genesis root commit (Commit SHA dc37706) of the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) on May 8, 2025, prior to EPAM and Odysseus developing or documenting the internal software architecture variously known within EPAM as 'Synapse,' 'EPAM Synapse,' or 'Takeda- Synapse'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**REQUEST FOR ADMISSION NO. 90:**

Admit that the final commit to the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) was executed on July 4, 2025 (Release v0.3.0, Commit SHA ce6f6a7), and that zero commits, code modifications, or repository updates were made during September, October, or November 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny..

**REQUEST FOR ADMISSION NO. 91:**

Admit that while Section 5(c)(1) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 5) contains an express requirement for 'first securing the written consent of your Employer,' Section 1(b) of the Agreement contains no requirement for securing employer written consent, permission, or authorization to develop software for scientific or community groups.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM denies the above request and refers Defendant to the Ownership of Work Product provisions in the above mentioned Agreement.

**REQUEST FOR ADMISSION NO. 92:**

Admit that during 2024 and 2025, EPAM engineering teams (including data science personnel assigned to Dr. Rao's team) integrated and utilized open-source Python packages developed for the OHDSI community (including kala , cohortalgebra , py_document_chunker , py_codelist_comparator , py_name_entity_recognition , pyscientificpdfparser , and pyRegularExpression ) to perform commercial client work for Amgen involving PubMed literature search and codelist extraction.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 93:**

Admit that EPAM developers utilized the public open-source Python packages 'kala' ( github.com/OHDSI/kala ) and 'cohortalgebra' ( github.com/ohdsi/cohortalgebra ) to execute OMOP data processing, cohort manipulation, and analytical pipelines for EPAM client deliverables.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**<u>REQUEST FOR ADMISSION NO. 94:</u>**

Admit that in or before May 2025, EPAM and Odysseus leadership (specifically including Vice President Gregory Klebanov) had actual knowledge that Dr. Rao authored and maintained public open-source repositories under the OHDSI organization on GitHub.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 95:**

Admit that the Python packages 'kala' ( github.com/OHDSI/kala ), 'PhenotypeLibrary' ( github.com/OHDSI/PhenotypeLibrary ), 'py_document_chunker' ( github.com/OHDSI/py_document_chunker ), 'py_codelist_comparator' ( github.com/OHDSI/py_codelist_comparator ), 'py_name_entity_recognition' ( github.com/OHDSI/py_name_entity_recognition ), 'pyscientificpdfparser' ( github.com/OHDSI/pyscientificpdfparser ), 'pyRegularExpression' ( github.com/OHDSI/pyRegularExpression ), and 'cohortalgebra' ( github.com/ohdsi/cohortalgebra ) are publicly accessible on GitHub under the OHDSI organization and published under open-source software licenses.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 96:**

Admit that EPAM internal architecture specifications (including Plaintiff's Exhibits filed at ECF No. 58-9 and ECF No. 58-10) classify 'OHDSI/LlmPromptBuilders' and OHDSI

community tools as external third-party open-source dependencies rather than proprietary EPAM source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the contents of documents, which are written instruments that speaks for themselves and are the best evidence of their own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged documents out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced documents, or what documents are supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged documents themselves for their full and accurate contents.

**REQUEST FOR ADMISSION NO. 97:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential Information' both information known to an employee prior to employment with the EPAM Group and information generally available and known by the public.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 98:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential

Information' general industry knowledge and skills developed or acquired without reliance on EPAM Group Confidential Information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 99:**

Admit that Dr. Rao maintained archives of published OHDSI codebases, peer-reviewed scientific literature, and standardized healthcare data models in his lawful personal possession prior to the commencement of his employment with EPAM on November 12, 2024.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM lacks knowledge or information sufficient to admit or deny the above request. EPAM does not have personal knowledge about what Defendant kept in "his lawful personal possession prior to the commencement of his employment with EPAM," nor does EPAM have the means to travel backwards in time and conduct a forensic inspection of Defendant's electronic devices or other property to determine what was in Defendant's "lawful personal possession."

**REQUEST FOR ADMISSION NO. 100:**

Admit that between 2017 and November 2024, Odysseus Lead and Vice President Gregory Klebanov communicated continuously with Dr. Rao via Skype regarding observational health data analytics, OMOP conversion frameworks, Hadoop clusters, and OHDSI open-source tools.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-

*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "routinely")

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (i.e., requiring the meaning of "continuously")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 101:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), Odysseus Lead and Vice President Gregory Klebanov informed Dr. Rao that EPAM's restrictive covenants would not restrict Dr. Rao's independent scientific research, academic publications, or open-source health informatics contributions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 102:**

Admit that on December 4, 2024, Vice President Gregory Klebanov authorized Dr. Rao in writing to assign EPAM personnel (specifically including Lana Shubinsky) to work on the Observational Health Data Sciences and Informatics (OHDSI) phenotype workgroup.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 103:**

Admit that Dr. Rao is a licensed physician (MD), an epidemiologist (PhD), and a board certified specialist by the American Board of Preventive Medicine and in Medical Informatics, who holds active, unencumbered medical licenses in Pennsylvania (License No. MD476722), New York, South Carolina, and Wisconsin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM objects to this Request because it seeks admission of matters of public record equally available to Defendant. The information referenced are matters of public record that speaks for themselves, are the best evidence of their own contents and date, and areas readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 104:**

Admit that prior to November 12, 2024, Dr. Rao acquired extensive domain expertise in healthcare insurance claims systems, clinical data architectures, and pharmaceutical epidemiology through his prior professional career at BlueCross BlueShield, the United States Department of Veterans Affairs, and Johnson & Johnson.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "extensive")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 105:**

Admit that EPAM Systems, Inc. is an information technology consulting and software engineering services provider and is not a pharmaceutical manufacturer, healthcare provider, or health insurance company.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. Oppenheimer Fund, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. See Penn Eng'g, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); Martin Marietta Materials, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. See Solomon, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding those objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 106:**

Admit that general pharmaceutical industry concepts, healthcare payer claims processing mechanisms, and clinical trial design standards constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "general")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 107:**

Admit that statistical methodologies, cohort definition logic, and data conversion principles for the OMOP Common Data Model constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or

deny.

**REQUEST FOR ADMISSION NO. 108:**

Admit that foundational artificial intelligence concepts, large language model (LLM) architectures, prompt engineering techniques, retrieval-augmented generation (RAG) workflows, vector database indexing, and multi-agent reasoning frameworks constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the above request. While certain of the above concepts/materials may be "general industry knowledge," others would be proprietary.

**REQUEST FOR ADMISSION NO. 109:**

Admit that EPAM did not provide Dr. Rao with any proprietary mathematical algorithms, statistical models, or machine learning source code that were not derived from publicly published scientific literature or open-source software libraries.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, Denied.

**REQUEST FOR ADMISSION NO. 110:**

Admit that EPAM executive management officially designated Dr. Rao as the Product Owner and Lead Architect for the internal healthcare technology initiative variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that Defendant had a leadership role as to the initiative known as Synapse and was designated as Product Owner. EPAM otherwise denies the Request insofar as it misstates the facts; for example, the Request improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

**REQUEST FOR ADMISSION NO. 111:**

Admit that Dr. Rao's authorized responsibilities as Synapse Product Owner included defining the technical roadmap, authoring architectural presentation decks, and leading commercial positioning for prospective life sciences enterprise clients.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

Notwithstanding its objections, EPAM admits that his responsibilities included leading commercial positioning; EPAM denies that Rao's responsibilities included being solely responsible for "defining" the technical roadmap or "authoring" architectural presentation decks, although his team had those responsibilities.

**REQUEST FOR ADMISSION NO. 112:**

Admit that EPAM provisioned Dr. Rao with authorized, enterprise-wide administrative and read/write access across corporate SharePoint repositories, Microsoft Teams channels, and OneDrive workspaces containing Synapse presentations, technical designs, and marketing collateral.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 113:**

Admit that Dr. Rao collaborated continuously and transparently with EPAM senior leadership —including Senior Vice President Sergey Yezhkov, Vice President Gregory Klebanov, Vice President Greg Killian, Jonathan Rioux, Dr. Anastasia Christianson, and Troy

Rask—on the conceptual architecture, commercial strategy, and executive slide presentations for Synapse.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "continuously and transparently").

Notwithstanding its objections, EPAM denies the Request. The evidentiary record reflects that Defendant was not "transparent[]" in his communications with EPAM leadership, particularly as to "commercial strategy," but rather schemed to misappropriate Synapse for himself.

**REQUEST FOR ADMISSION NO. 114:**

Admit that slide presentations and architectural workflows regarding Synapse were distributed across EPAM's Life Sciences, Real-World Evidence, and Data Science business units via email distribution lists and open Microsoft Teams channels without technical access restrictions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies this Request.

**REQUEST FOR ADMISSION NO. 115:**

Admit that EPAM presented technical workflows and architectural overviews of Synapse to prospective enterprise clients without requiring those clients to execute bespoke, project specific non-disclosure agreements or trade secret protection covenants beyond standard commercial terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring an opinion on what is “bespoke” as compared to “standard commercial terms”)

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 116:**

Admit that prior to October 15, 2025, EPAM did not maintain a formal corporate trade secret register, inventory, or asset catalog identifying the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' as proprietary trade secrets.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 117:**

Admit that EPAM executives, including Chief Scientist Chris Waller and Vice President Gregory Klebanov, presented architectural workflows and capability demonstrations of Real-World Evidence and Synapse tools to prospective commercial clients (including AstraZeneca, Johnson & Johnson, and Roche) without requiring bespoke, project-specific non-disclosure agreements or trade secret markings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring an opinion on what is "bespoke" as compared to a non-"bespoke" agreement).

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 118:**

Admit that at the 2025 OHDSI Global Symposium 'Mind Meets Machines' challenge, EPAM consultant Darya Zhukova publicly submitted and presented the technical architecture and concept reasoning reports for the Prometheus platform, and that this architectural presentation was recorded and published to the public internet on YouTube (URL: https://www.youtube.com/watch?v=7Ek3vF3Pu_E).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The presentation referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 119:**

Admit that 'MedRAG' is a publicly available, open-source Medical Retrieval-Augmented Generation benchmarking toolkit hosted on public repositories including HuggingFace (huggingface.co/MedRAG) and GitHub.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public

record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation.

Notwithstanding its objections, EPAM denies the Request; while other packages may be known as "MedReg," EPAM's MedRag is proprietary.

**REQUEST FOR ADMISSION NO. 120(a):**

Admit that on May 9 and May 22, 2025, Dr. Rao presented demonstrations to Sergey Yezhkov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 121: (*i.e.* PURPORTED REQUEST NO. 120(b))**

Admit that said demonstrations consisted of prompt engineering experiments conducted on the public consumer-grade Google Gemini web chat interface (utilizing zero backend API integrations, zero dedicated software developers, and zero proprietary EPAM source code).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 122: (*i.e.* PURPORTED REQUEST NO. 120(c))**

Admit that Dr. Rao presented said experiments for the purpose of seeking internal corporate R&D investment budget to build the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 123: (*i.e.* PURPORTED REQUEST NO. 120(d))**

Admit that Dr. Rao presented said demonstrations in scheduled meetings with EPAM senior leadership, and no EPAM supervisor directed Dr. Rao to cease said demonstrations or prompt engineering experiments.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 124: (*i.e.* PURPORTED REQUEST NO. 121(a))**

Admit that EPAM assigned internal non-billable corporate investment project codes (including, but not limited to, 'EPMC-SYNP') to fund and supplement client-billable project budgets (including, but not limited to, 'TKDA-DSFX' for Takeda Synapse development) under Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral

matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 125: (*i.e.* PURPORTED REQUEST NO. 121(b)):**

Admit that hours logged by personnel under internal 'EPMC' investment codes were funded by EPAM corporate overhead rather than client billings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 126: (*i.e.* PURPORTED REQUEST NO. 121(c))**

Admit that hours logged under said internal investment codes did not count toward the commercial revenue or margin targets of the Odysseus Data Services acquisition overseen by Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 127: (*i.e.* PURPORTED REQUEST NO. 121(d))**

Admit that EPAM's project-accounting systems accepted and recorded time entries logged by Dr. Rao and assigned technical personnel (including Dmitrii Ilin) against said corporate investment codes.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 128: (*i.e.* PURPORTED REQUEST NO. 122(a))**

Admit that during 2025, Dr. Rao collaborated with members of EPAM's Synapse commercialization team (including Sergey Yezhkov, Greg Killian, Chris Waller, Anastasia Christianson, Jonathan Rioux, and James Gatch).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 129: (*i.e.* PURPORTED REQUEST NO. 122(b))**

Admit that members of said commercialization team engaged in strategy meetings and internal EPAM Microsoft Teams chats evaluating commercial billing models and a 3-tier pricing framework (ranging from ≤$50,000 pilots to ≥$1,000,000 enterprise programs) for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, EPAM admits that it discussed various pricing models for Synapse; EPAM otherwise denies the Request to the extent it misstates the facts; for example, the Request improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Based on its objections, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 130: (*i.e.* PURPORTED REQUEST NO. 122(c))**

Admit that said commercialization team projected a $5,000,000 to $10,000,000 recurring annual revenue opportunity for EPAM Life Sciences resulting from the deployment and commercialization of said tool.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 131: (*i.e.* PURPORTED REQUEST NO. 123(a))**

Admit that during Dr. Rao's employment, technical architectures, step-by-step brand launch workflows, pilot Statement of Work (SOW) templates, and knowledge graph blueprints for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') were created collaboratively for EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request except that it denies the Request insofar as the Request improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 132: (*i.e.* PURPORTED REQUEST NO. 123(b))**

Admit that Jonathan Rioux created architectural wire diagrams on enterprise collaborative diagramming platforms using conceptual prompts provided by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 133: (*i.e.* PURPORTED REQUEST NO. 123(c))**

Admit that EPAM maintained custody of said architectural wire diagrams on its corporate enterprise systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 134: (*i.e.* PURPORTED REQUEST NO. 123(d))**

Admit that from the forensic search hit reports generated by neutral examiner iDS across Dr. Rao's inspected devices, EPAM has identified zero files, records, or instances showing that Dr. Rao downloaded, synced, or retained copies of said architectural wire diagrams created by Jonathan Rioux onto any personal device.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects to the Request because Rao spoliated evidence, rendering it impossible to determine if Rao engaged in the kinds of conduct referenced in the above request.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 135: (*i.e.* PURPORTED REQUEST NO. 124(a))**

Admit that in collaboration with Jim Gatch and Santanu Sen, and with the approval of Sergey Yezhkov, Dr. Rao led strategic funding initiatives for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') and MedRAG.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request except that it denies the Request insofar as the Request improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 136: (*i.e.* PURPORTED REQUEST NO. 124(b))**

Admit that said initiatives included pitching a $1,000,000 to $2,000,000 AWS compute sponsorship to Amazon Web Services.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a business relationship with Amazon Web Services was discussed. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 137: (*i.e.* PURPORTED REQUEST NO. 124(c))**

Admit that said initiatives included structuring a joint AWS-EPAM go-to-market proposal to Johnson & Johnson for a $250,000 engagement to retain Johnson & Johnson on AWS infrastructure.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a business relationship with Amazon Web Services which involved a proposal to Johnson & Johnson was discussed. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 138: (*i.e.* PURPORTED REQUEST NO. 125(a))**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): have been published, discussed, and demonstrated across public technical workshops, client training sessions, academic symposia, and European regulatory training programs (including EHDEN Academy).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are

disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 139: (*i.e.* PURPORTED REQUEST NO. 125(b))</u>**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): are available in public open-source repositories and toolchains (including OHDSI/ETL- LambdaBuilder, OHDSI/WhiteRabbit, OHDSI/Usagi, OHDSI/DataQualityDashboard, and Johnson & Johnson's public ETL-Lambda repository).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 140: (*i.e.* PURPORTED REQUEST NO. 125(c))**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): can be implemented in a functional, working OMOP ETL conversion solution using only publicly available open-source software tools and published informatics methodologies, without access to any EPAM source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-

*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 141: (*i.e.* PURPORTED REQUEST NO. 126(a))**

Admit that during October and November 2024, Gregory Klebanov engaged in recruitment communications (including Skype messaging and virtual meetings) with Dr. Rao to induce Dr. Rao to resign from Johnson & Johnson and execute the Employment Covenants Agreement (ECA).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; while Klebanov had communications with Defendant over Defendant's potential employment at EPAM; Klebanov

did not need to "induce" Defendant to leave Johnson & Johnson. Defendant was informed on or before October 7, 2024 that his Johnson & Johnson employment would end.

**ACTUAL REQUEST FOR ADMISSION NO. 142: (*i.e.* PURPORTED REQUEST NO. 126(b))**

Admit that during said communications, Gregory Klebanov represented that Dr. Rao would lead an autonomous life sciences practice with full Profit and Loss (P&L) authority, dedicated engineering resources, and a multi-million-dollar growth mandate.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 143: (*i.e.* PURPORTED REQUEST NO. 126(c))**

Admit that upon commencing employment, EPAM did not provide Dr. Rao with autonomous P&L authority or dedicated engineering headcount.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 144: (*i.e.* PURPORTED REQUEST NO. 127(a))**

Admit that on October 12, 2025, Dr. Rao committed an open-source license file to the internal GitLab repository 'takeda-synapse-infra' (Commit 3d8b15ac, ECF No. 3-6) with the commit message 'Was missing license'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 145: (*i.e.* PURPORTED REQUEST NO. 127(b))**

Admit that the phrase 'Copyright 2025 Gowtham Rao' was inserted into the license header by GitLab's default template automatically populating the authenticated user's profile name.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 146: (*i.e.* PURPORTED REQUEST NO. 127(c))**

Admit that Plaintiff acknowledged in writing in its proposed amended pleading transmitted to Defendant that the attachment of said phrase 'may not have been intentional' but was nevertheless 'one of the reasons for Rao's termination' on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 147: (*i.e.* PURPORTED REQUEST NO. 127(d))**

Admit that the text of the MIT-0 license committed in Exhibit A to the McDermott Declaration (ECF No. 3- 6) expressly grants permission 'to deal in the Software without restriction, including without limitation the rights to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the Software.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 148: (*i.e.* PURPORTED REQUEST NO. 128(a))**

Admit that in Paragraphs 1 and 33 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff defined 'EPAM Confidential Information and IP' as an aggregated category encompassing source code, RFP information, bid proposals, pricing information, client contracts, project data, P&L analysis, and employee compensation data.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 149: (*i.e.* PURPORTED REQUEST NO. 128(b))**

Admit that in Paragraph 74 of the First Amended Complaint, Plaintiff alleged that Dr. Rao downloaded approximately 44,960 documents and data files and designated the entirety of said files under the collective defined term 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 150: (*i.e.* PURPORTED REQUEST NO. 128(c))**

Admit that the First Amended Complaint contains no itemized schedule, file manifest, or paragraph specifying which individual files among the 44,960 downloaded files constitute statutory trade secrets under 18 U.S.C. § 1839(3) as distinguished from non-trade-secret confidential information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 151: (*i.e.* PURPORTED REQUEST NO. 129(a))**

Admit that in Paragraphs 24, 32, and 41 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff affirmatively pleaded that by virtue of his employment with EPAM, Dr. Rao was granted authorized access to EPAM's files, software tools, P&L data, and client materials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 152: (*i.e.* PURPORTED REQUEST NO. 129(b))**

Admit that Section 1(d) of the Employment Covenants Agreement (ECF No. 30-1, Exhibit A at p. 3, quoted at ECF No. 30 ¶ 45) expressly provides that employees are permitted to access, use, and copy confidential information 'as required in the performance of your authorized employment duties.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 153: (*i.e.* PURPORTED REQUEST NO. 130(a))**

Admit that in Paragraphs 21, 22, and 23 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff describes the 'ETL Conversion Kit,' 'AI Cohort Generator,' and 'AI Accelerator' by their general operational functions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 154: (*i.e.* PURPORTED REQUEST NO. 130(b))**

Admit that the First Amended Complaint contains no factual allegation identifying any specific proprietary algorithm, mathematical formula, source code architecture, or data structure claimed as a trade secret within said tools.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 155: (*i.e.* PURPORTED REQUEST NO. 130(c))**

Admit that Counts I and II of the First Amended Complaint assert trade secret misappropriation over the collective defined term 'EPAM Confidential Information and IP' without identifying any individual algorithm, formula, code module, or data structure as a distinct statutory trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 156: (*i.e.* PURPORTED REQUEST NO. 131(a))**

Admit that Plaintiff included 'client contract documents' and 'client contracts' within its defined term 'EPAM Confidential Information and IP' (ECF No. 30 ¶¶ 1, 33), which documents were shared with thirdparty commercial clients upon execution.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admit that client contractual documents are included in EPAM Confidential Information and that these documents are shared with the party that also executes them. EPAM otherwise objects to the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 157: (*i.e.* PURPORTED REQUEST NO. 131(b))**

Admit that Plaintiff included 'employee compensation data' within said defined term (ECF No. 30 ¶ 33), which data constitutes internal personnel administrative records.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 158: (*i.e.* PURPORTED REQUEST NO. 131(c))**

Admit that Plaintiff did not separate or distinguish said commercial contracts and personnel records from statutory trade secrets in Counts I and II of the First Amended Complaint.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 159: (*i.e.* PURPORTED REQUEST NO. 132(a))**

Admit that the First Amended Complaint (ECF No. 30) alleges no specific instance where Dr. Rao disclosed any EPAM document or data file to any third party following his October 15, 2025 termination.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 160: (*i.e.* PURPORTED REQUEST NO. 132(b))**

Admit that the First Amended Complaint alleges no specific instance where Dr. Rao incorporated, deployed, or commercialized any EPAM trade secret into any product, service, or commercial deliverable.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 161: (*i.e.* PURPORTED REQUEST NO. 133(a))**

Admit that in Paragraphs 2, 4, 35, 76, and 77 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff affirmatively pleaded that software code, clinical project data, and deliverables at issue were developed for commercial clients.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 162: (*i.e.* PURPORTED REQUEST NO. 133(b))**

Admit that the First Amended Complaint does not differentiate between property allegedly owned by EPAM and property owned by said commercial clients within its trade secret claims in Counts I and II.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 163: (*i.e.* PURPORTED REQUEST NO. 133(c))**

Admit that the First Amended Complaint does not plead the terms of any client agreement assigning title, granting an exclusive license, or conferring legal authority to EPAM to assert statutory trade secret claims over client-owned property.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 164: (*i.e.* PURPORTED REQUEST NO. 133(d))**

Admit that the First Amended Complaint alleges zero facts regarding reasonable measures taken by EPAM's commercial clients to maintain the secrecy of client-owned materials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 165: (*i.e.* PURPORTED REQUEST NO. 134(a))**

Admit that in Paragraphs 126, 132, 139, and 146 of the First Amended Complaint (ECF No. 30), Plaintiff realleged and incorporated by reference the identical factual allegations that support its trade secret claims in Counts I and II.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 166: (*i.e.* PURPORTED REQUEST NO. 134(b))**

Admit that in each of Counts IV (Breach of Fiduciary Duty), Count V (Replevin), Count VI (Conversion), and Count VII (Unjust Enrichment), Plaintiff identified the property allegedly taken, retained, or converted as 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 167: (*i.e.* PURPORTED REQUEST NO. 134(c))**

Admit that the First Amended Complaint alleges no taking, detention, or conversion of any physical property or non-confidential asset separate from the digital files and data encompassed within the defined term 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 168: (*i.e.* PURPORTED REQUEST NO. 135(a))**

Admit that in Count III (Breach of Contract, Paragraphs 118–125) of the First Amended Complaint (ECF No. 30), Plaintiff does not identify by name any commercial client that terminated, reduced, or failed to renew a contract with EPAM as a result of Dr. Rao’s alleged conduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 169: (*i.e.* PURPORTED REQUEST NO. 135(b))**

Admit that in Count III, Plaintiff does not set forth any specific dollar amount of lost profits or historical revenue incurred by EPAM prior to the filing of the complaint.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 170: (*i.e.* PURPORTED REQUEST NO. 135(c))**

Admit that prior to initiating this action on November 4, 2025 (including in Plaintiff's October 31, 2025 cease-and-desist letter, ECF No. 3-13), Plaintiff sent no written communication to Dr. Rao identifying specific documents or data files by name or file path and demanding their return.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 171: (*i.e.* PURPORTED REQUEST NO. 136(a))**

Admit that neutral forensic examiner iDS reported to Plaintiff that on December 12, 2025, Defendant physically surrendered five (5) computing and storage devices (including Device A0001 [MSI Desktop Workstation, S/N: MSB0Y2O7S0104130], HP Laptop, two legacy laptops, and Samsung S23 mobile device) pursuant to the Court's Consent Order (ECF No. 20) and the Forensic Inspection Protocol (ECF No. 55).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 172: (*i.e.* PURPORTED REQUEST NO. 136(b))**

Admit that iDS reported to Plaintiff that in or about mid-December 2025, iDS completed forensic bit-stream imaging of said devices and forensically sound collections of Defendant's email and cloud accounts (including Defendant's Microsoft OneDrive, personal and CoReason GitHub repositories, and CoReason email account gowtham.rao@coreason.ai ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 173: (*i.e.* PURPORTED REQUEST NO. 136(c))**

Admit that iDS reported to Plaintiff that Defendant provided all requested administrative credentials, volume passcodes, and multi-factor authentication tokens required to complete imaging.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what

document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 174: (*i.e.* PURPORTED REQUEST NO. 137(a))**

Admit that pursuant to Sections I(f) and II(a) of the Forensic Inspection Protocol (ECF No. 55), neutral examiner iDS was mandated to create a 'Forensic Image' (contractually defined in Protocol § I(f) as 'a full forensic bitstream image of a device') of Defendant's surrendered computing devices and forensically sound collections of associated email and cloud repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, EPAM admits that Section I(f) of the Forensic Inspection Protocol defines "Forensic Image" as "a full forensic bitstream image of a device," and that Section II(a) required iDS to create Forensic Images of the devices identified therein. EPAM denies that Sections I(f) and II(a) required the creation of forensically sound collections of associated email and cloud repositories. EPAM states that such collections are addressed separately in Section II(b) of the Forensic Inspection Protocol. Except as expressly admitted herein, EPAM denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 175: (*i.e.* PURPORTED REQUEST NO. 137(b))**

Admit that Plaintiff has identified zero instances where any responsive file, document, or communication was deleted, purged, or destroyed following the transmission of Plaintiff's October 31, 2025 cease-and-desist letter.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM denies the Request. Defendant spoliated forensic data after receiving EPAM’s October 31, 2025 cease-and-desist letter. Defendant further

spoliated evidence by refreshing or resetting his device, thereby destroying forensic evidence that could have shown what documents were deleted and when. The data that was spoliated could be deemed files and communications, depending on one's definition of those terms. Further, Defendant's destruction of forensic evidence impaired EPAM's ability to identify the full extent of the responsive files, documents, and communications that were deleted, purged, or destroyed.

**ACTUAL REQUEST FOR ADMISSION NO. 176: (*i.e.* PURPORTED REQUEST NO. 138(a))**

Admit that on or about October 15, 2025, when Plaintiff decided to terminate Dr. Rao's employment and initiated steps leading to the filing of this lawsuit, Plaintiff reasonably anticipated litigation against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 177: (*i.e.* PURPORTED REQUEST NO. 138(b))**

Admit that as a sophisticated corporate enterprise, Plaintiff's legal duty to preserve all relevant electronically stored information (ESI)—including server-side GitLab clone and audit logs, Entra ID telemetry, internal Teams and email communications regarding Dr. Rao's termination, and SharePoint administrative logs—attached on or about October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 178: (*i.e.* PURPORTED REQUEST NO. 139(a))**

Admit that Plaintiff's legal duty to preserve relevant ESI attached irrespective of whether Dr. Rao served a formal litigation hold notice or cease-and-desist letter on Plaintiff.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 179: (*i.e.* PURPORTED REQUEST NO. 139(b))**

Admit that in April 2026, Defendant formally proposed in writing that the parties instruct neutral examiner iDS to de-NIST the file listings against the National Software Reference Library (NSRL) and exclude standard operating-system files, virtual environments, Git infrastructure files, and public open-source software libraries.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is

the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 180: (*i.e.* PURPORTED REQUEST NO. 139(c))**

Admit that Plaintiff did not agree to de-NISTing or the algorithmic exclusion of public open-source software files from the review sets.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 181: (*i.e.* PURPORTED REQUEST NO. 139(d))**

Admit that Plaintiff designated keyword search strings in Exhibit A of the Forensic Protocol that included open-source packages ('uvicorn', 'beego', 'quarto', 'picard', 'Arachne', 'cyclops'), public OMOP database columns ('concept_id', 'cohort_definition_id', 'covariateid'), public medical vocabulary ('rxnorm'), clinical condition terms ('afib', 'Thrombosis', 'LUPUS'), and third-party entity names ('epic', 'cerner', 'j&j', 'Cloudera'), to evaluate file retention under the Forensic Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 182: (*i.e.* PURPORTED REQUEST NO. 140(a))**

Admit that Plaintiff maintains custody and control over internal server-side Git clone logs, GitLab access audit trails, and Entra ID authentication telemetry associated with corporate user accounts or credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 183: (*i.e.* PURPORTED REQUEST NO. 140(b))**

Admit that Plaintiff produced spreadsheets reflecting automated SharePoint download log rows in this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 184: (*i.e.* PURPORTED REQUEST NO. 140(c))**

Admit that as of the date of this Request, Plaintiff has produced no raw server-side Git clone logs, GitLab access audit trails, or repository cloning telemetry associated with Dr. Rao's corporate user accounts or credentials in this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 185: (*i.e.* PURPORTED REQUEST NO.**

**141(a))**

Admit that Plaintiff provided unredacted copies of forensic search extractions and documents obtained under the Forensic Inspection Protocol (including exhibits filed as ECF Nos. 58-12 and 58-13) to Dmitrii Ilin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM additionally objects to the Request because it seeks information protected by the attorney-client privilege and the work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 186: (*i.e.* PURPORTED REQUEST NO. 141(b))**

Admit that Dmitrii Ilin is employed by Odysseus Data Services s.r.o. in Prague, Czech Republic, is an active commercial software developer, is not an attorney of record, and resides outside the territorial jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 187: (*i.e.* PURPORTED REQUEST NO. 141(c))**

Admit that Defendant communicated written objections to Plaintiff regarding non-attorney employees (including Dmitrii Ilin) receiving access to unredacted forensic extractions under the Forensic Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-

*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not understand what Defendant means by the phrase "unredacted forensic extractions."

Notwithstanding its objections, EPAM admits that Defendant asserted frivolous, bad faith objections to non-attorneys receiving access to materials obtained through the forensic protocol, despite Defendant admitting that no attorney's eyes only provision governed the materials, and despite the forensic protocol permitting EPAM to use the materials for litigation purposes. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 188: (*i.e.* PURPORTED REQUEST NO. 141(d))**

Admit that the forensic search extractions provided to Dmitrii Ilin included personal records of Defendant and materials associated with the email account gowtham.rao@coreason.ai.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects to the Request because it seeks information protected by the attorney-client privilege and the work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 189: (*i.e.* PURPORTED REQUEST NO. 142(a))**

Admit that Miroslav Sklansky, who executed the declaration filed as ECF No. 3-4 in support of Plaintiff's ex parte motion for temporary restraining order, is an employee of Plaintiff,

and neither the declaration nor Plaintiff's Rule 26 disclosures identify any professional digital forensic certification (such as EnCE, CFCE, CCE, GCFA, or GCFE) held by Miroslav Sklansky.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 190: (*i.e.* PURPORTED REQUEST NO. 142(b))**

Admit that the 44,960 download figure asserted in the declaration of Miroslav Sklansky (ECF No. 3-4 ¶ 9) was calculated from automated SharePoint and OneDrive log rows.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 191: (*i.e.* PURPORTED REQUEST NO. 142(c))**

Admit that prior to executing the declaration on November 4, 2025 (ECF No. 3-4), Miroslav Sklansky did not examine the contents of the 44,960 files, cross-reference the file paths against public opensource software repositories, or determine that each individual file contained proprietary trade secrets of Plaintiff as opposed to third-party or open-source software.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 192: (*i.e.* PURPORTED REQUEST NO. 143(a))**

Admit that during the November 5, 2025 preliminary injunction hearing before Chief Judge Beetlestone, Plaintiff's counsel of record James S. Yu stated in the record: 'Did we actually open up every single document of the 44,000 files? No.' (ECF No. 43-3 at 8:17–18).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The hearing referenced is a matter of public record that speaks

for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 193: (*i.e.* PURPORTED REQUEST NO. 143(b))**

Admit that Section III(b)(ii) of the Forensic Inspection Protocol (ECF No. 55) required Plaintiff, within five (5) business days of receiving Initial Reports from neutral examiner iDS, to provide a listing of records by unique identifier that Plaintiff reasonably believes contain Confidential Information and/or Work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 194: (*i.e.* PURPORTED REQUEST NO. 143(c))**

Admit that Plaintiff did not designate or promote approximately 79,000 files identified in said Initial Reports within said five-day period, and Plaintiff's counsel of record Jacob Oslick confirmed in writing that 'the 79,000 documents that were not promoted for review were, unsurprisingly, not reviewed' and that Plaintiff's promotion decisions were based on metadata 'and not review of the content of every single file' (ECF No. 54-6 at p. 3).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 195: (*i.e.* PURPORTED REQUEST NO. 143(d))**

Admit that with respect to the subset of 6,693 files Plaintiff promoted for review, Plaintiff's counsel of record Matthew Christoff stated in written correspondence dated July 20, 2026 that under the Forensic Protocol a document 'must be remediated' if it contains EPAM's Confidential Information and/or Work 'even if it does not contain a trade secret under the DTSA'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The correspondence referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 196: (*i.e.* PURPORTED REQUEST NO. 143(e))**

Admit that as of the date of this Request, Plaintiff has not served or produced an individualized trade secret identification list specif.ying which specific files among either said 79,000 unpromoted files or said 6,693 promoted files constitute protectable trade secrets of Plaintiff.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 197: (*i.e.* PURPORTED REQUEST NO. 144(a))**

Admit that Exhibit B of the Forensic Protocol mandated targeted searches across Defendant's devices for over 100 specific source code filenames for Plaintiff's AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and eight (8) specific Python packages and wheels for Plaintiff's 'ETL Kit' (including cdmkit and cdmkit-1.7.8-py2.py3-noneany.whl ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 198: (*i.e.* PURPORTED REQUEST NO. 144(b))**

Admit that the neutral forensic scan conducted by neutral examiner iDS across Defendant's personally owned desktop workstation (designated by iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) returned zero (0) hits for the targeted Cohort Generator source code and zero (0) hits for the targeted cdmkit Python wheels.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

EPAM additionally objects because Defendant spoliated evidence, thereby impacting what iDS could find.

For the above reasons, EPAM objects to the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 199: (*i.e.* PURPORTED REQUEST NO. 144(c))**

Admit that the neutral forensic scan conducted by neutral examiner iDS across all ten (10) collected computing devices returned zero (0) matching source code files for Plaintiff's AI Cohort Generator, ETL Kit ( cdmkit ), or AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the

sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

EPAM additionally objects because Defendant spoliated evidence, thereby impacting what iDS could find.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 200: (*i.e.* PURPORTED REQUEST NO. 145(a))**

Admit that 'de-NISTing' (filtering candidate and collected file hashes against public reference databases such as the NIST National Software Reference Library (NSRL) pursuant to NIST SP 800-86 and the CIRCL HashLookup database) is an established digital forensic practice to exclude known benign operating system and public third-party software.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 201: (*i.e.* PURPORTED REQUEST NO. 145(b))**

Admit that the candidate hash list Plaintiff submitted as Exhibit C of the Forensic Protocol included cryptographic hashes representing empty or 0-byte files (including standard

empty-file hashes MD5 d41d8cd98f00b204e9800998ecf8427e and SHA-256 e3b0c44298fc1c149afbf4c8996fb92427ae41e4649b934ca495991b7852b855 ) and generic Git repository templates (such as .git/info/exclude and applypatch-msg.sample ) on Defendant's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 202: (*i.e.* PURPORTED REQUEST NO. 145(c))**

Admit that Plaintiff rejected Defendant's formal written demand in April 2026 to instruct neutral examiner iDS to perform automated de-NISTing, with the result that known benign operating-system files, empty-file hash collisions, and Git-template artifacts remained throughout Plaintiff's discovery review spreadsheet EPAMR-06448.A0001-III-a-i-KWResponsive.xlsx.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 203: (*i.e.* PURPORTED REQUEST NO. 145(d))**

Admit that at least 755 of the cryptographic hashes Plaintiff designated for searching are verified in the public CIRCL HashLookup database as corresponding directly to publicly available, benign opensource software files (including Ubuntu dependencies and Boost C++ libraries).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 204: (*i.e.* PURPORTED REQUEST NO. 146(a))**

Admit that in the global forensic review listings produced by neutral examiner iDS across all ten (10) collected computing devices pursuant to Section III(a) of the Forensic Protocol (ECF No. 55), the overwhelming majority of all entries flagged as matching Plaintiff's search criteria were identified by textual keyword strings or filenames (Protocol Exhibits A, B, and BC) rather than exact cryptographic file hashes (Protocol Exhibit C).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 205: (*i.e.* PURPORTED REQUEST NO. 146(b))**

Admit that entries attributable to exact cryptographic file hashes from Protocol Exhibit C constituted only a small fraction of all matching entries globally across said collected devices, and included hash collisions mapping to empty files and standard Git repository templates (including .git/info/exclude and applypatch-msg.sample ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 206: (*i.e.* ACTUAL REQUESTS NO. 146(c))**

Admit that the most frequent criteria matches reflected in said listings across Defendant's devices consisted of generic software licensing, graphical, and developer boilerplate terms — including 'LICENSE', '1.svg', 'Core', 'index', 'Threads', 'BUILD', and the standard Python package initializer ' __init__.py ' — each of which generated thousands of matching entries in said listings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 207: (*i.e.* PURPORTED REQUEST NO. 147(a))**

Admit that during recruitment discussions in October and November 2024, Gregory Klebanov represented to Dr. Rao that EPAM's Life Sciences Data Science practice had an existing baseline annual revenue of approximately $2,000,000, that Dr. Rao would manage a dedicated team of 8 to 10 data scientists upon joining EPAM, and that the acquired Odysseus Data Services business line possessed an operational enterprise data network generating stable commercial margins.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 208: (*i.e.* PURPORTED REQUEST NO. 147(b))**

Admit that Gregory Klebanov made said financial, team, and infrastructure representations to induce Dr. Rao to accept EPAM's offer of employment and execute the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g &*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 209: (*i.e.* PURPORTED REQUEST NO. 147(c))**

Admit that following Dr. Rao's commencement of employment on November 18, 2024, the actual baseline annual revenue of the practice, the dedicated billable data science staffing,

and the funded Odysseus client pipeline were materially below the figures and resources Gregory Klebanov had described during recruitment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 210: (*i.e.* PURPORTED REQUEST NO. 147(d))**

Admit that EPAM's internal financial records reflect that the Life Sciences Data Science practice's actual annual revenue baseline at the time of Dr. Rao's recruitment was materially below the approximately $2,000,000 figure represented by Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

Dated: September 14, 2026

SEYFARTH SHAW LLP

By: /s/ *Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted pro hac vice)
jyu@seyfarth.com
Brooke K. Gary (admitted pro hac vice)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted pro hac vice)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 14th day of September 2026, a copy of PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR ADMISSION was sent via electronic mail to:

GOWTHAM ADAMANE RAO
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

*<u>/s/ Brooke K. Gary</u>*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260 |

**EPAM SYSTEMS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FOURTH AND FIFTH SETS OF REQUESTS FOR ADMISSION**

Plaintiff/Counterclaim-Defendant EPAM SYSTEMS, INC. ("EPAM"), by and through its attorneys, Seyfarth Shaw LLP, hereby submits its Responses and Objections to Defendant/Counterclaim-Plaintiff GOWTHAM RAO's Fourth and Fifth Set of Requests For Admission.

**RESERVATION OF RIGHTS**

Any responses to Defendant's Requests for Admission will be subject to EPAM's right to object to the admission into evidence of any and all such responses on the grounds that they, or any of them, are not relevant to the issues in this action or are otherwise inadmissible. The responses and objections contained herein are based on EPAM's current knowledge, information and belief. These responses and objections are subject to amendment and supplementation as EPAM acquires additional information and completes its review and analysis of the facts and issues presented by the litigation.

**PRELIMINARY STATEMENT**

1. The following responses are given without prejudice to EPAM's right to produce

evidence of any subsequently discovered fact or facts. EPAM accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made and/or documents are discovered.

2. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of EPAM in relation to further discovery, research or analysis.

3. The Requests for Admission have been interpreted and answered in accordance with plain English usage. Many of the Requests, however, are vague and ambiguous. EPAM has done its best to interpret these requests as it understands them.

4. EPAM will not produce any information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

**RESPONSES AND OBJECTIONS**

**ACTUAL REQUEST FOR ADMISSION NO. 211: (*i.e.* PURPORTED REQUEST NO. 148(a))**

Admit that prior to September 23, 2025, EPAM or Odysseus Data Services, Inc. lost business of Roche, Genentech, or an affiliated Roche entity in connection with a dispute concerning deliverables or intellectual property developed for that client.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 212: (*i.e.* PURPORTED REQUEST NO. 148(b))**

Admit that in the internal chat filed by Dr. Rao as Exhibit B to his Answer and Counterclaims (ECF No. 33-2 at p. 2) and separately filed by EPAM (ECF No. 43-7), EPAM

employee Katie Barista transmitted to Dr. Rao a written message relaying EPAM In-House Legal's advice that Odysseus 'should not demo this for anyone else unless the MSA has been amended' to provide for background intellectual property ownership 'or Takeda gives express permission to share it'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 213: (*i.e.* PURPORTED REQUEST NO. 148(c))**

Admit that the same relayed written legal advice stated, in substance, that EPAM 'lost all of Roche's business,' would not 'get it back for a generation,' and 'barely avoided lawsuit with Roche'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 214: (*i.e.* PURPORTED REQUEST NO. 148(d))**

Admit that between September 23, 2025 and October 15, 2025, no EPAM officer, manager, or in-house counsel transmitted any written communication to Dr. Rao stating that the statements described in subparts (b) and (c) were inaccurate or incorrect.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. Objecting further, this Request seeks to "prove a negative" (*i.e.*, that "no EPAM officer, manager, or in-house counsel transmitted any written communication"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM officer, manager, or in-house counsel" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted that EPAM is unaware of any EPAM officer, manager, or in-house counsel that transmitted a written communication to Dr. Rao stating that the statements described in subparts (b) and (c) were inaccurate or incorrect,

and that to EPAM's knowledge, Dr. Rao did not share the statements described in subparts (b) and (c) with any EPAM officer, manager, or in-house counsel for them to respond to.

**ACTUAL REQUEST FOR ADMISSION NO. 215: (*i.e.* PURPORTED REQUEST NO. 149(a))**

Admit that the Microsoft Teams chat filed at ECF No. 43-7 is a true and correct copy of a September 23, 2025 written exchange between Dr. Rao and EPAM employee Katie Barista conducted on EPAM's corporate messaging systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 216: (*i.e.* PURPORTED REQUEST NO. 149(b))**

Admit that in that exchange, at approximately 3:59 PM, Dr. Rao transmitted a written message stating, in substance, that he needed to do a demo but could not demo 'what we built for takeda to another potential client'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, denied. Dr. Rao made no statement that, in substance, stated that he or EPAM "could not demo." EPAM refers Dr. Rao to the referenced document for its full contents and context.

**ACTUAL REQUEST FOR ADMISSION NO. 217: (*i.e.* PURPORTED REQUEST NO. 149(c))**

Admit that in that exchange, Katie Barista transmitted written replies stating 'legal confirmed this yesterday' and identifying the subject of that confirmation as 'the roche/sanofi problem'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 218: (*i.e.* PURPORTED REQUEST NO. 149(d))**

Admit that no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao on or before October 15, 2025 disputing the statements described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. EPAM will not disclose communications from counsel, or confirm the lack of such communications – the scope of what EPAM's counsel communicated with Dr. Rao about is privileged. Objecting further, this Request seeks to "prove a negative" (*i.e.*, that "no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM manager, executive, or in-house counsel" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted that no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao on or before October 15, 2025 disputing the statements described in subpart (b), and that to EPAM's knowledge, Dr. Rao did not share the purported text from subpart (b) with any EPAM manager, executive, or in-house counsel for them to respond to.

**ACTUAL REQUEST FOR ADMISSION NO. 219: (*i.e.* PURPORTED REQUEST NO. 150(a))**

Admit that in or around 2024, EPAM acquired Odysseus Data Services, Inc., and following the acquisition Gregory Klebanov served as a Vice President with profit-and-loss responsibility for the Odysseus / life sciences data science practice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 220: (*i.e.* PURPORTED REQUEST NO. 150(b))</u>**

Admit that Gregory Klebanov's compensation or acquisition consideration included earn-out or performance linked targets tied to the post-acquisition financial performance of that practice.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 221: (*i.e.* PURPORTED REQUEST NO. 150(c))**

Admit that during 2025, the revenue generated by that practice declined below its historical pre-acquisition levels and fell in the lower thresholds of the financial performance targets or benchmarks established for Gregory Klebanov's post-acquisition earn-out compensation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 222: (*i.e.* PURPORTED REQUEST NO. 150(d))**

Admit that prior to EPAM's 2024 corporate acquisition of Odysseus Data Services, Inc., Gregory Klebanov and EPAM Founder, CEO, and Chairman Arkadiy Dobkin maintained a pre-existing direct or indirect relationship, acquaintance, or commercial connection.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Klebanov and Dobkin spoke on more than one occasion. Whether Klebanov and Dobkin maintained a "pre-existing direct or indirect relationship, acquaintance, or commercial connection" is a statement of opinion, not a factual contention that can be admitted or denied. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 223: (*i.e.* PURPORTED REQUEST NO. 150(e))**

Admit that during Dr. Rao's recruitment, Gregory Klebanov represented to Dr. Rao that his pre-existing relationship with Arkadiy Dobkin afforded him direct executive access and operational autonomy within EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 224: (*i.e.* PURPORTED REQUEST NO. 151(a))**

Admit that during Dr. Rao's 2024 recruitment, EPAM personnel (including Gregory Klebanov or SVP Greg Killian) represented to Dr. Rao that he would receive full Profit and Loss (P&L) authority, a trajectory toward a Chief Medical Officer role, and a mandate to scale the life sciences unit from approximately $400 million toward $1 billion.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 225: (*i.e.* PURPORTED REQUEST NO. 151(b))**

Admit that during the same recruitment, EPAM personnel represented to Dr. Rao that EPAM possessed an operational, enterprise-grade 'distributed data network'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the undefined term "distributed data network" as the term is vague and unclear as to what Defendant is referring to.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 226: (*i.e.* PURPORTED REQUEST NO. 151(c))**

Admit that as of November 12, 2024 — the date Dr. Rao executed the Employment Covenants Agreement — the 'distributed data network' described in subpart (b) was not deployed in production for any paying client.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g &*

*Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the undefined term “distributed data network” as the term is vague and unclear as to what Defendant is referring to.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 227: (*i.e.* PURPORTED REQUEST NO. 151(d))**

Admit that prior to Dr. Rao's execution of the Employment Covenants Agreement, no EPAM representative disclosed to him in writing that Gregory Klebanov held acquisition-related earn-out targets tied to the financial performance of the unit Dr. Rao was being recruited to lead.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Objecting further, this Request seeks to "prove a negative" (i.e., that "no EPAM representative disclosed to him in writing that Gregory Klebanov held acquisition-related earn-out targets"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM representative" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones). On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 228: (*i.e.* PURPORTED REQUEST NO. 152(a))**

Admit that EPAM executive leadership authorized and launched an internal marketing initiative designated the 'Star Magnet' program built around Dr. Rao's public scientific profile, with sponsorship that included Head of Marketing Jim Gatch, SVP Greg Killian, and Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 229: (*i.e.* PURPORTED REQUEST NO. 152(b))**

Admit that as of September 17, 2025, Dr. Rao's records in EPAM's Telescope human-resources system contained no written reprimand, no disciplinary notice, and no documented performance deficiency, and included a March 31, 2025 '2.2 Meets' project rating and a February 10, 2025 assessment by Project Manager Raman Loseu rating Dr. Rao's impact as 'High'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 230: (*i.e.* PURPORTED REQUEST NO. 152(c))**

Admit that EPAM's corporate records (including Outlook calendar entries, Microsoft Teams meeting logs, adhoc call records, and chat communications) reflect recurring scheduled and ad-hoc meetings, calls, and written discussions between Dr. Rao and SVP Greg Killian or

VP Troy Rask concerning Life Sciences and Real-World Data practice strategy during the period February 3, 2025 through August 11, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 231: (*i.e.* PURPORTED REQUEST NO. 152(d)):**

Admit that on or about September 17 and September 22, 2025, Gregory Klebanov and SVP Greg Killian each verbally characterized Dr. Rao's performance to him in positive terms, including as 'wonderful,' 'stellar,' or 'solid.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 232: (*i.e.* PURPORTED REQUEST NO. 153(a))**

Admit that during 2022 through 2025, EPAM maintained human-resources systems of record (including the system known within EPAM as 'Telescope') that recorded each employee's assigned work country or work location.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 233: (*i.e.* PURPORTED REQUEST NO. 153(b))**

Admit that during the same period, EPAM required corporate network access to occur through managed security tooling — including GlobalProtect VPN and the OPSWAT posture-checking agent referenced in EPAM's Acceptable Use of IT Resources Policy — that generated log records reflecting the connecting device and connection origin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 234: (*i.e.* PURPORTED REQUEST NO. 153(c))**

Admit that EPAM's Acceptable Use of IT Resources Policy (filed with EPAM's own moving papers, ECF No. 30-3) stated that it is 'forbidden to allow the computer device accessing the Company's network to act as a gateway between the Company's network and another network'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 235: (*i.e.* PURPORTED REQUEST NO. 153(d))**

Admit that during 2022 through 2025, EPAM operated a formal relocation program through which employees' assigned work countries were updated in its human-resources systems upon approved relocation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 236: (*i.e.* PURPORTED REQUEST NO. 154(a))**

Admit that during 2024 and 2025, EPAM or Odysseus Data Services, Inc. performed data science, analytics, or software services for Gilead Sciences, Inc. under one or more Master Services Agreements, Statements of Work, or work orders.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 237: (*i.e.* PURPORTED REQUEST NO. 154(b))**

Admit that the work performed for Gilead included processing or analyzing longitudinal patient-level healthcare claims datasets licensed by Gilead from one or more third-party data vendors.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 238: (*i.e.* PURPORTED REQUEST NO. 154(c))**

Admit that one or more instruments governing that work — including client data-security requirements or datavendor license terms applicable to U.S. Medicare or Medicaid data — restricted or prohibited access to the licensed data by personnel located in one or more designated foreign jurisdictions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 239: (*i.e.* PURPORTED REQUEST NO. 154(d))</u>**

Admit that EPAM was contractually obligated to Gilead to comply with the data-access restrictions described in subpart (c).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. If Dr. Rao can provide evidence to support this claim, EPAM will consider amending its answer.

**ACTUAL REQUEST FOR ADMISSION NO. 240: (*i.e.* PURPORTED REQUEST NO. 155(a))**

Admit that during 2024 or 2025, one or more individuals performing work on the Gilead Sciences account were physically located in Belarus, Russia, or Serbia while performing that work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that a person in Belarus performed work for Gilead, as was disclosed to the client during onboarding. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 241: (*i.e.* PURPORTED REQUEST NO. 155(b))**

Admit that EPAM represented to Gilead Sciences that an individual performing work on the account, Anna Tauetekova, was operating from within the United States.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 242: (*i.e.* PURPORTED REQUEST NO. 155(c))**

Admit that at one or more times when the representation described in subpart (b) was outstanding, Anna Tauetekova was physically located in and working from Serbia.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, admits that Anna Tauetekova was located in Serbira. The remainder of the Request is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 243: (*i.e.* PURPORTED REQUEST NO. 155(d))**

Admit that EPAM's own human-resources or telemetry records (including Telescope work-location entries, GlobalProtect connection logs, or Entra ID sign-in logs) reflected, at the relevant times, the actual physical locations of one or more personnel described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 244: (*i.e.* PURPORTED REQUEST NO. 156(a))**

Admit that Gregory Klebanov directed a Belarus-based employee, Alexander Alexeuk, to perform work in a manner that bypassed one or more federal or client security protocols applicable to the account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 245: (*i.e.* PURPORTED REQUEST NO. 156(b))**

Admit that one or more personnel located in Belarus, Russia, or another restricted jurisdiction participated in Gilead account work through screen-sharing sessions or through access under another individual's session or credentials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 246: (*i.e.* PURPORTED REQUEST NO. 156(c))**

Admit that network connections for one or more such personnel were routed through intermediate VPN gateways, proxy nodes, or egress points located outside the personnel's actual physical jurisdiction (including, but not limited to, gateway infrastructure in the Republic of Serbia).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 247: (*i.e.* PURPORTED REQUEST NO. 156(d))**

Admit that no written authorization from Gilead Sciences approved the practices described in subparts (a) through (c).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM denies that the "practices described in subparts (a) through (c)" occurred. Therefore, it is admitted that "no

written authorization from Gilead Sciences approved" these practices insofar there was no reason to seek such written authorization in the first place.

**ACTUAL REQUEST FOR ADMISSION NO. 248: (*i.e.* PURPORTED REQUEST NO. 157(a))**

Admit that in or before September 2025, an employee of Gilead Sciences communicated to Dr. Rao a concern regarding the physical locations of EPAM personnel performing work on the Gilead account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM lacks knowledge sufficient to admit or deny. EPAM admits that Dr. Rao claimed that such a communication occurred, but has not been able to verify whether Dr. Rao's claims are accurate. EPAM further avers a representative of Gilead raised certain concerns to a different employee, not to Dr. Rao, in 2024 (not 2025).

**ACTUAL REQUEST FOR ADMISSION NO. 249: (*i.e.* PURPORTED REQUEST NO. 157(b))**

Admit that in or around September 2025, Dr. Rao escalated concerns regarding the staffing and location practices on the Gilead account to his supervisor Gregory Klebanov and to Senior Program Manager Lucy McDermott, and objected to those practices.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 250: (*i.e.* PURPORTED REQUEST NO. 157(c))**

Admit that Dr. Rao declined to participate in staffing or location-reporting practices on the Gilead account that he identified as inconsistent with client or legal requirements.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 251: (*i.e.* PURPORTED REQUEST NO. 157(d))**

Admit that the escalation and objection described in subparts (b) and (c) occurred before September 17, 2025, the date on which Gregory Klebanov first communicated to Dr. Rao that his position was being eliminated.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. The alleged "escalations" did not happen.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 252: (*i.e.* PURPORTED REQUEST NO. 158(a))</u>**

Admit that between September 1, 2025 and October 15, 2025, EPAM did not open a documented internal compliance investigation into the Gilead staffing and location practices described in Dr. Rao's escalation.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that EPAM did not open an internal compliance investigation of the kind described in this Request, because there was no need for any such investigation. It is denied that Dr. Rao engaged in any "escalation."

**ACTUAL REQUEST FOR ADMISSION NO. 253: (*i.e.* PURPORTED REQUEST NO. 158(b))**

Admit that during the same period, EPAM did not engage any outside counsel, auditor, or consultant to investigate those practices.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product

doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted. Answering further, the Dr. Rao raised no "escalation," so there was nothing brought to EPAM's attention to investigate.

**ACTUAL REQUEST FOR ADMISSION NO. 254: (*i.e.* PURPORTED REQUEST NO. 158(c))**

Admit that during the same period, EPAM did not report the escalated concerns to Gilead Sciences or to any governmental authority.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that EPAM did not (and could not) "report the" alleged "escalated concerns" because it denies that there were any such escalated concerns.

**ACTUAL REQUEST FOR ADMISSION NO. 255: (*i.e.* PURPORTED REQUEST NO. 158(d))**

Admit that prior to October 15, 2025, no EPAM compliance, legal, or HR function interviewed Dr. Rao regarding the substance of his Gilead escalation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that "no EPAM compliance, legal, or HR function interviewed Dr. Rao" regarding the alleged escalation; it is denied that there was any escalation – thus, there was nothing to "interview[]" Dr. Rao about.

**ACTUAL REQUEST FOR ADMISSION NO. 256: (*i.e.* PURPORTED REQUEST NO. 159(a))**

Admit that the Master Services Agreement filed as Exhibit A to Dr. Rao's Answer and Counterclaims (ECF No. 33-1) was entered into as of June 1, 2019 by and between Millennium Pharmaceuticals, Inc., a wholly owned subsidiary of Takeda Pharmaceutical Company Limited, and Odysseus Data Services, Inc.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 257: (*i.e.* PURPORTED REQUEST NO. 159(b))**

Admit that Section 12 of that Agreement provides that materials prepared in the performance of services 'are "works for hire," shall be the sole and exclusive property of Takeda and copyright therein shall immediately vest in Takeda'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 258: (*i.e.* PURPORTED REQUEST NO. 159(c))**

Admit that Section 12 further provides that, to the extent any such property is not a work for hire, the company 'hereby assigns and agrees to assign to Takeda... all rights including copyright in such property, ideas and materials'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 259: (*i.e.* PURPORTED REQUEST NO. 159(d))**

Admit that Section 25 of that Agreement provides that '[i]n the event of any conflict between the provisions of this Agreement and the provisions of any PWO, the terms of this Agreement shall prevail.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

**ACTUAL REQUEST FOR ADMISSION NO. 260: (*i.e.* PURPORTED REQUEST NO. 160(a))**

Admit that software functionality that EPAM's pleadings describe as the 'AI Cohort Generator' and as the Prometheus platform (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') was developed in whole or in part pursuant to work orders or Statements of Work funded by Takeda.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. Solomon, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 261: (*i.e.* PURPORTED REQUEST NO. 160(b))**

Admit that developer time for that work was billed or allocated to Takeda-related project, client, or corporate investment billing codes (including, but not limited to, codes containing 'TKDA', 'TKDA-DSFX', 'TKDA-ESFX', 'TKDA-OSFX', 'TKDA-SYNPS', 'TAKEDA', 'TAKEDA-SYNAPSE', 'SYNP', or 'EPMC-SYNP').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 262: (*i.e.* PURPORTED REQUEST NO. 160(c))**

Admit that during that development, Dr. Rao served in a technical leadership role on the Takeda engagement pursuant to his assigned EPAM duties.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied. EPAM would not describe Dr. Rao’s role as “a technical leadership role.”

**ACTUAL REQUEST FOR ADMISSION NO. 263: (*i.e.* PURPORTED REQUEST NO. 160(d))**

Admit that the source code repositories containing that work were not segregated into a repository designated as EPAM-proprietary and separate from the Takeda deliverable repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 264: (*i.e.* PURPORTED REQUEST NO. 161(a))**

Admit that data loading or ETL scripts associated with the toolset EPAM's pleadings describe as the 'ETL Conversion Kit' were revised, rewritten, or further developed during the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied. Answering further, ETL scripts are customized for each client. Clients, including Takeda, have different data sets and thus it is necessary to customize the scripts for each client.

**ACTUAL REQUEST FOR ADMISSION NO. 265: (*i.e.* PURPORTED REQUEST NO. 161(b))**

Admit that on September 20, 2025, Dr. Rao transmitted a written communication to EPAM employee Katie Barista via corporate email (filed within ECF No. 33-2 at p. 3) stating, among other things, that 'we do not have any pre-existing IP in this solution' and that the prior data loading scripts 'were all sphagetti and incomplete before and we re-did all of those for Takeda'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm

matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao, among other things, claimed in the referenced communication: "we do not have any pre-existing IP in this solution – everything was built on Takeda's dime (like the backend, front end, we had some data loading scripts but they were all sphagetti and incomplete before and we re-did all of those for Takeda)." The reference to "prior data loading scripts" is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 266: (*i.e.* PURPORTED REQUEST NO. 161(c))**

Admit that EPAM received the September 20, 2025 communication described in subpart (b) on its corporate email, Microsoft Teams, or other corporate messaging systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 267: (*i.e.* PURPORTED REQUEST NO. 161(d))**

Admit that no EPAM manager, executive, or in-house counsel transmitted a written response to Dr. Rao via email, Microsoft Teams, or other corporate messaging systems on or before October 15, 2025 disputing the statements quoted in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity.

Objecting further, this Request seeks to “prove a negative” (*i.e.*, that “no EPAM manager, executive, or in-house counsel transmitted a written response”). EPAM cannot prove a negative, as it cannot review every single written response that any “EPAM manager, executive, or in-house counsel” throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted, as to EPAM's knowledge, Dr. Rao did not share the above-referenced communications with Barista with any EPAM manager, executive, or in-house counsel, and so there would have been no response.

**ACTUAL REQUEST FOR ADMISSION NO. 268: (*i.e.* PURPORTED REQUEST NO. 162(a))**

Admit that EPAM source-code repository or infrastructure paths associated with the software variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse' included a repository or namespace designated takeda-synapse-infra , as reflected in EPAM's own exhibit filed at ECF No. 3-6.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same. Except as expressly denied above, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 269: (*i.e.* PURPORTED REQUEST NO. 162(b))**

Admit that as EPAM stated at ECF No. 58-2 at 3 n.2, "Synapse' is not the final tradename for the software, only an in-development name'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 270: (*i.e.* PURPORTED REQUEST NO. 162(c))**

Admit that as EPAM's declarant Gregory Klebanov stated at ECF No. 58-28 ¶ 3, 'Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 271: (*i.e.* PURPORTED REQUEST NO. 162(d))**

Admit that prior to October 15, 2025, EPAM had not released or licensed any product under the name 'Synapse' to any client other than in connection with the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that it did not release or license any software at issue in this litigation “under the name 'Synapse' to any client other than in connection with the Takeda engagement.” EPAM objects to answering whether it

ever, in the entire history of the company, had a different product or service that used the name "Synapse" and which may have been released or licensed.

**ACTUAL REQUEST FOR ADMISSION NO. 272: (*i.e.* PURPORTED REQUEST NO. 163(a))**

Admit that on or about September 9, 2025 and September 20, 2025, Dr. Rao transmitted written communications via EPAM's corporate email, Microsoft Teams, or other corporate messaging systems (filed within ECF No. 33-2 at pp. 3–4) requesting legal review of whether work built under the Takeda engagement could be demonstrated to a third party.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product

doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, denied. Answering further, EPAM admits that, on September 20, 2025, Dr. Rao wrote in full:

"Hi Katie, Did you get the legal opinion? I am now confused.

There is a request to do a demo from J&J, but is it something we truly can demo? I re-read the SOW and then decided to read the MSA (both re-attached). Unless I am wrong, the MSA supersedes the SOW as written.

The problem is we do not have any pre-existing IP in this solution – everything was built on Takeda's dime (like the backend, front end, we had some data loading scripts but they were all sphagetti and incomplete before and we re-did all of those for Takeda).

We need absolute clarity from Legal on this before we schedule anything. If we have not done this already can you please forward to the legal person? There is so much opportunity lined up and I heard about the disaster with Roche

If we are told that its Takeda's and not EPAM's that fine – I can ask Takeda for permission (they are friends). In these cases its always better (legally safer?) to ask permission than to beg for forgiveness 😀"

**ACTUAL REQUEST FOR ADMISSION NO. 273: (*i.e.* PURPORTED REQUEST NO. 163(b))**

Admit that the September 20, 2025 written communication stated, among other things, 'There is a request to do a demo from J&J, but is it something we truly can demo?' and 'We need absolute clarity from Legal on this before we schedule anything'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao’s September 20 email contains the above quotations, and refers to its prior request for the full contents of Dr. Rao’s email.

**ACTUAL REQUEST FOR ADMISSION NO. 274: (*i.e.* PURPORTED REQUEST NO. 163(c))**

Admit that EPAM received the written communications described in subpart (a) on its corporate email, Microsoft Teams, or other corporate messaging systems before October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted that EPAM as an entity received it; denied that any specific recipient at EPAM received the communication.

**ACTUAL REQUEST FOR ADMISSION NO. 275: (*i.e.* PURPORTED REQUEST NO. 163(d))**

Admit that Dr. Rao declined to conduct a demonstration of Takeda-funded work for Johnson & Johnson unless and until such legal clarity was obtained.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 276: (*i.e.* PURPORTED REQUEST NO. 164(a))**

Admit that in September 2025, EPAM employee Katie Barista consulted EPAM In-House Legal regarding ownership of work built under the Takeda engagement and relayed Legal's responses to Dr. Rao in writing.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, EPAM admits that Barista and Dr. Rao had a written exchange on September 23, 2025, and refers Dr. Rao to the contents of that exchange. EPAM objects on the grounds of attorney-client privilege to providing any other

information about "consult[ations] with in-house legal," and objects based on the overbroad characterization of the request.

**ACTUAL REQUEST FOR ADMISSION NO. 277: (*i.e.* PURPORTED REQUEST NO. 164(b))**

Admit that one such relayed written response stated, in substance, that the SOW identified the accelerator code as pre-existing IP that Odysseus presumably owns, but that 'the MSA makes no allowance for preexisting IP,' that 'everything we build belongs to Takeda,' and that 'the MSA controls over the SOW in the event of conflict between the terms of the two documents'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted; however, EPAM refers Dr. Rao to the full document for the relevant context.

**ACTUAL REQUEST FOR ADMISSION NO. 278: (*i.e.* PURPORTED REQUEST NO. 164(c))**

Admit that one such relayed written message stated 'legal said nope. You were right SOW said cool but MSA is not'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted; however, EPAM refers Dr. Rao to the full document for the relevant context.

**ACTUAL REQUEST FOR ADMISSION NO. 279: (*i.e.* PURPORTED REQUEST NO. 164(d))**

Admit that EPAM has not produced or identified in this litigation any written legal opinion dated prior to October 15, 2025 concluding that EPAM or Odysseus, rather than Takeda, owned the work built under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to

obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, EPAM admits that it has not waived privilege, and thus has not produced or identified any "written legal opinion[s]" on any subject, and furthermore that it has not made any productions to date in this case. Denied that no legal opinions exist

**ACTUAL REQUEST FOR ADMISSION NO. 280: (*i.e.* PURPORTED REQUEST NO. 165(a))**

Admit that on September 17, 2025, Gregory Klebanov communicated to Dr. Rao that his position was being eliminated or that he was being separated from his role.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 281: (*i.e.* PURPORTED REQUEST NO. 165(b))**

Admit that in that communication, Mr. Klebanov cited corporate budgetary constraints and a flat or declining Real-World Data pipeline as the reason.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the foregoing Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, denied. .

**ACTUAL REQUEST FOR ADMISSION NO. 282: (*i.e.* PURPORTED REQUEST NO. 165(c))**

Admit that in or around the same communication, a transfer of Dr. Rao to the consulting group led by Dr. Chris Waller was proposed or discussed as an alternative.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM admits that there was a discussion of Dr. Rao moving to Waller's group. Denied that termination was raised as an alternative, as there was no intention of terminating Rao, and the remainder of the Request is denied. .

**ACTUAL REQUEST FOR ADMISSION NO. 283: (*i.e.* PURPORTED REQUEST NO. 165(d))**

Admit that in that September 17, 2025 communication, Mr. Klebanov did not state that Dr. Rao was being separated for poor performance or for cause.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, EPAM admits that on September 17,

2025 “Mr. Klebanov did not state that Dr. Rao was being separated” for any reason, and thus had no reason to identify poor performance, for cause, or any other reason – as no statement of a separation was communicated then.

**ACTUAL REQUEST FOR ADMISSION NO. 284: (*i.e.* PURPORTED REQUEST NO. 166(a))**

Admit that on or about September 18, 2025, SVP Greg Killian met with Dr. Rao following Gregory Klebanov's September 17, 2025 layoff notice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. There was no September 17, 2025 layoff notice. .

**ACTUAL REQUEST FOR ADMISSION NO. 285: (*i.e.* PURPORTED REQUEST NO. 166(b))**

Admit that in that meeting, transfer or redeployment options within EPAM for Dr. Rao were discussed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. There was no September 17, 2025 layoff notice. Answering further, EPAM admits that sometime in September 2025, Killian discussed a potential new role with Dr. Rao.

**ACTUAL REQUEST FOR ADMISSION NO. 286: (*i.e.* PURPORTED REQUEST NO. 166(c))**

Admit that in that meeting, Mr. Killian did not state that Dr. Rao was being separated for poor performance or misconduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects as the Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, EPAM admits that, in or about September 2025, "Mr. Killian did not state that Dr. Rao was being separated" for any reason.

.

**ACTUAL REQUEST FOR ADMISSION NO. 287: (*i.e.* PURPORTED REQUEST NO. 166(d))**

Admit that on or about September 22, 2025, Mr. Killian characterized Dr. Rao's performance to him in positive terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. In September, Killian spoke with Dr. Rao about both strengths and weaknesses.

**ACTUAL REQUEST FOR ADMISSION NO. 288: (*i.e.* PURPORTED REQUEST NO. 167(a))**

Admit that on or about September 22, 2025, Dr. Rao met with EPAM HR leader Larry McKlaine concerning his separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied..

**ACTUAL REQUEST FOR ADMISSION NO. 289: (*i.e.* PURPORTED REQUEST NO. 167(b))**

Admit that on or about September 23, 2025, Dr. Rao communicated to HR that he would not resign voluntarily and would accept a performance plan only if EPAM produced objective, pre-existing, documented goals.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny. EPAM's ESI review is ongoing, and EPAM will supplement this answer if it locates evidence during that review.

**ACTUAL REQUEST FOR ADMISSION NO. 290: (*i.e.* PURPORTED REQUEST NO. 167(c))**

Admit that on or about September 30, 2025, Dr. Rao transmitted a written email on EPAM's corporate systems under the subject 'Gowtham and EPAM - concrete (documented) next steps' (filed at ECF No. 33-7) memorializing his requests for documented terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao transmitted a "written email on EPAM's corporate systems under the subject 'Gowtham and EPAM - concrete (documented) next steps" on September 30, 2025. The email speaks for itself,

and will be produced in discovery. EPAM denies Dr. Rao's characterization of the email as being about "requests for documented terms."

**ACTUAL REQUEST FOR ADMISSION NO. 291: (*i.e.* PURPORTED REQUEST NO. 167(d))**

Admit that EPAM received the September 30, 2025 email described in subpart (c), and no EPAM representative responded in writing disputing Dr. Rao's account of the September meetings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that, as an entity, it received the September 30th email. EPAM denies that no EPAM representative submitted a "writing disputing Dr. Rao's account of the September meetings." EPAM's ESI review is ongoing and EPAM will supplement the request if necessary. .

**ACTUAL REQUEST FOR ADMISSION NO. 292: (*i.e.* PURPORTED REQUEST NO. 168(a))**

Admit that on or about September 26, 2025, Gregory Klebanov communicated to Dr. Rao a performance improvement plan or proposed performance conditions that included a revenue target of approximately $2.5 million.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 293: (*i.e.* PURPORTED REQUEST NO. 168(b))**

Admit that the September 2025 communication alleged that Dr. Rao had failed to achieve 'target revenue' and 'profit margins'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. Answering further, EPAM admits that a communication to him from Greg Klebanov, on September 26, 2025, stated, in pertinent part, as follows: "Failure to meet core role expectations: Critical goals, such as achieving target revenue and maintaining required profit margins, have not been met."

**ACTUAL REQUEST FOR ADMISSION NO. 294: (*i.e.* PURPORTED REQUEST NO. 168(c))**

Admit that prior to September 18, 2025, EPAM had not established, communicated, or documented any specific revenue targets for Dr. Rao's role in its performance-management systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of

the case. On those bases, EPAM objects and declines to admit or deny. EPAM's ESI review is ongoing and EPAM will supplement if appropriate.

**ACTUAL REQUEST FOR ADMISSION NO. 295: (*i.e.* PURPORTED REQUEST NO. 168(d))**

Admit that the practice unit's historical peak revenue was approximately $700,000.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the request is ambiguous. EPAM does not know what "the practice unit" referred to in this Request is. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 296: (*i.e.* PURPORTED REQUEST NO. 169(a))**

Admit that EPAM terminated Dr. Rao's employment on October 15, 2025, and Dr. Rao did not resign.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, Rao provided notice of intent to resign, but retracted that notice because EPAM would not waive post-employment covenants.

EPAM admits that it subsequently terminated Rao on October 15, 2025, and admits that Rao's termination was not coded as a resignation. .

**ACTUAL REQUEST FOR ADMISSION NO. 297: (*i.e.* PURPORTED REQUEST NO. 169(b))**

Admit that in submissions or responses to the State of New Jersey Department of Labor and Workforce Development concerning Dr. Rao's unemployment claim, EPAM did not classify the separation as a termination for misconduct, and the State thereafter awarded Dr. Rao unemployment benefits.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted as it was a regular practice of the HR team to not contest unemployment. .

**ACTUAL REQUEST FOR ADMISSION NO. 298: (*i.e.* PURPORTED REQUEST NO. 169(c))**

Admit that in the Stipulated Consent Order entered December 10, 2025 (ECF No. 20), EPAM agreed that 'because Defendant's employment was involuntarily terminated, Section 5(c) of the Employee Covenants Agreement... regarding Noncompetition is not at issue'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 299: (*i.e.* PURPORTED REQUEST NO. 169(d))**

Admit that EPAM did not contest or appeal the State of New Jersey's award of unemployment benefits to Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted as it was a regular practice of the HR team to not contest unemployment. .

**ACTUAL REQUEST FOR ADMISSION NO. 300: (*i.e.* PURPORTED REQUEST NO. 170(a))**

Admit that on September 17, 2025, the reason communicated to Dr. Rao for his separation was budgetary (as described in RFA No. 165).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. There was no notice of separation on or about September 17, 2025.

**ACTUAL REQUEST FOR ADMISSION NO. 301: (*i.e.* PURPORTED REQUEST NO. 170(b))**

Admit that on or about September 26, 2025, the reason communicated shifted to performance, in the form of the PIP conditions described in RFA No. 168.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request assumes denied facts. Subject to and without waiving the foregoing objections, denied. Answering further, the factual premise of this question is mistaken. There was no notice of separation on September 16, and no "PIP conditions" were implemented.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 302: (*i.e.* PURPORTED REQUEST NO. 170(c))</u>**

Admit that in its Amended Complaint, EPAM alleged that Dr. Rao 'was terminated for cause on October 15, 2025' (ECF No. 30 ¶ 3).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a pleading, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the pleading out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 303: (*i.e.* PURPORTED REQUEST NO. 170(d))**

Admit that prior to October 12, 2025, EPAM had not communicated to Dr. Rao any of the conduct grounds recited in ECF No. 30 ¶ 3 as a basis for his separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because it does not know what every single employee may have communicated to Dr. Rao. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 304: (*i.e.* PURPORTED REQUEST NO. 171(a))**

Admit that on October 16, 2025, EPAM employee Gaurav Dravida initiated contact with Dr. Rao via Microsoft Teams.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 305: (*i.e.* PURPORTED REQUEST NO. 171(b))**

Admit that the Microsoft Teams exchange filed by EPAM in support of its emergency application (ECF No. 3-7) is an excerpt of the same exchange filed unredacted as Exhibit E to Dr. Rao's Answer and Counterclaims (ECF No. 33-5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 306: (*i.e.* PURPORTED REQUEST NO. 171(c))**

Admit that in the version filed at ECF No. 3-7, the name and identity of the EPAM employee counterparty were redacted or not disclosed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 307: (*i.e.* PURPORTED REQUEST NO. 171(d))**

Admit that EPAM's emergency application did not disclose to the Court that the exchange was initiated by a current EPAM employee.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, EPAM denies any suggestion it had a duty to "disclose" any purported initiation. EPAM admits that its papers speak for themselves, and admits that it did not claim that an EPAM employee initiated the exchange.

**ACTUAL REQUEST FOR ADMISSION NO. 308: (*i.e.* PURPORTED REQUEST NO. 172(a))**

Admit that on or about October 2, 2025, Dr. Rao transmitted to EPAM Senior Manager Larry McKlaine, with copy to June Dinitz, a series of written emails designated E01 through E04, including E01 titled 'Documentation of Agreed Position and Employment Status' and E04 concerning his independent, non-proprietary development work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao sent four communications with the subjects E01 through E04, including E01 titled "Documentation of Agreed Position and Employment Status." EPAM denies that E04 concerned Dr. Rao's "independent, non-proprietary development work." Answering further, EPAM refers Dr. Rao to E04 for its full contents, which included Dr. Rao's assertions, legal positions, and requests for "dialogue" about contractual obligations he owed to EPAM under the Employment Covenants Agreement.

**ACTUAL REQUEST FOR ADMISSION NO. 309: (*i.e.* PURPORTED REQUEST NO. 172(b))**

Admit that on October 2, 2025, Larry McKlaine transmitted a written reply stating 'This is to confirm that I have received your emails (E01 through E04) and will respond accordingly,' and acknowledging Dr. Rao's 'request to withdraw your previous request for a mutually agreed separation'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 310: (*i.e.* PURPORTED REQUEST NO. 172(c))**

Admit that Larry McKlaine and June Dinitz each executed declarations submitted in support of EPAM's emergency application in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 311: (*i.e.* PURPORTED REQUEST NO. 172(d))**

Admit that the declarations described in subpart (c) did not disclose to the Court the E01–E04 communications or McKlaine's October 2, 2025 written acknowledgment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies that it had any duty to "disclose," in the aforementioned declarations, the emails titled E01 to E04, or McKlaine's acknowledgment. EPAM admits that the contents of the declarations do not mention the emails titled E01 to E04, or McKlaine's acknowledgment, and avers there was no reason to do so.

**ACTUAL REQUEST FOR ADMISSION NO. 312: (*i.e.* PURPORTED REQUEST NO. 173(a))**

Admit that on October 31, 2025, EPAM's counsel James Yu transmitted to Dr. Rao a letter titled 'Cease and Desist and Notice Pursuant to Fed. R. Civ. P. 65 on Behalf of EPAM Systems, Inc.'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 313: (*i.e.* PURPORTED REQUEST NO. 173(b))**

Admit that on November 4, 2025, EPAM filed its Complaint and an application for emergency injunctive relief in this Court.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 314: (*i.e.* PURPORTED REQUEST NO. 173(c))**

Admit that by Order dated November 7, 2025 (ECF No. 10), the Court denied EPAM's Motion for a Temporary Restraining Order and Expedited Discovery and scheduled a preliminary-injunction hearing.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The order referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 315: (*i.e.* PURPORTED REQUEST NO. 173(d))**

Admit that as of November 4, 2025, EPAM had not completed any documented internal investigation into the Gilead staffing escalation or the Takeda IP escalation described in RFAs 157 and 163.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because the Request assumes denied facts. EPAM denies that the alleged escalations occurred. EPAM admits that it did not "complete" any such investigations, because it had no reason to begin such investigations.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 316: (*i.e.* PURPORTED REQUEST NO. 174(a))**

Admit that the software tools EPAM identifies in this litigation as trade secrets include the ETL Conversion Kit, the AI Cohort Generator, and the software variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse' (ECF No. 58-2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same. EPAM otherwise admits the Request with the clarification that its trade secrets are not limited to the items identified in the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 317: (*i.e.* PURPORTED REQUEST NO. 174(b))**

Admit that prior to October 15, 2025, source code for one or more of those tools resided in repositories that also contained code authored, funded, or deliverable under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 318: (*i.e.* PURPORTED REQUEST NO. 174(c))**

Admit that prior to October 15, 2025, EPAM did not maintain a separate repository, designated as containing only EPAM-proprietary code and no client-deliverable code, for the tools described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 319: (*i.e.* PURPORTED REQUEST NO. 174(d))**

Admit that prior to October 15, 2025, Takeda and EPAM (or Odysseus) had not executed any written amendment to the governing Master Services Agreement (ECF No. 33-1) granting EPAM or Odysseus a license, assignment, or carve-out to commercialize or demonstrate for other clients work product developed under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request because it does not understand what the Request is seeking. EPAM additionally objects because the Request builds in numerous assumptions which may be incorrect. Subject to and without waiving the foregoing objections, EPAM interprets the request to the best of its ability and, with that interpretation, denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 320: (*i.e.* PURPORTED REQUEST NO. 175(a))**

Admit that prior to October 15, 2025, EPAM did not develop, maintain, or possess a separate, standalone software product named 'EPAM Synapse' that was independently built without incorporating source code, architecture, or deliverables created under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM additionally objects because the phrase "separate, standalone software product" is ambiguous. Subject to and without waiving the foregoing objections, EPAM admits that "EPAM Synapse" was not a final tradename. EPAM otherwise denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 321: (*i.e.* PURPORTED REQUEST NO. 175(b))**

Admit that prior to October 15, 2025, EPAM maintained no internal budget line, capitalized development project, or funded R&D workstream for a 'Synapse' software product independent of client-funded engagements.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 322: (*i.e.* PURPORTED REQUEST NO. 175(c))**

Admit that prior to October 15, 2025, EPAM had not sold, licensed, or deployed 'Synapse' (variously labeled in EPAM's pleadings as 'EPAM Synapse,' 'AI Cohort Generator,' or 'AI Accelerator') to any client other than in connection with the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies that AI Cohort generator is the same as Synapse. EPAM admits that, as of October 15, 2025, it had not sold, licensed, or deployed a version of 'Synapse' to any client other than Takeda. EPAM denies the remainder of the Request. .

**ACTUAL REQUEST FOR ADMISSION NO. 323: (*i.e.* PURPORTED REQUEST NO. 175(d))**

Admit that the software functionality that EPAM claims as proprietary trade secrets in this action embodies the same essential architecture and components developed during the Takeda engagement period.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Based on its objections, EPAM objects to the request and will not admit or deny it.

**ACTUAL REQUEST FOR ADMISSION NO. 324: (*i.e.* PURPORTED REQUEST NO. 175(e))**

Admit that EPAM's declarant stated at ECF No. 58-25 ¶ 8 that the 'Architectural Vision' document 'would provide a substantial foundation for recreating Synapse as it exists today.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 325: (*i.e.* PURPORTED REQUEST NO. 176(a))**

Admit that the OMOP Common Data Model and associated OHDSI vocabularies and tooling were publicly available prior to June 1, 2019, the effective date of the Takeda MSA.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 326: (*i.e.* PURPORTED REQUEST NO. 176(b))**

Admit that the ETL Conversion Kit identified in EPAM's filings performs extraction, transformation, and loading of data into OMOP-based structures.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and

confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 327: (*i.e.* PURPORTED REQUEST NO. 176(c))**

Admit that EPAM managers or executives had contemporaneous knowledge, during Dr. Rao's employment, of his public open-source releases through OHDSI GitHub repositories (including the LlmPromptBuilders package).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because it does not know whom the “EPAM managers or executives” referred to are. EPAM cannot “prove a negative,” and determine what every single manager or executive may have known during Rao’s employment. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 328: (*i.e.* PURPORTED REQUEST NO. 176(d))**

Admit that EPAM did not instruct Dr. Rao to cease his OHDSI open-source activities at any time prior to October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because it does not know whom the request means by "EPAM." EPAM cannot "prove a negative," and determine what every single manager or executive may have communicated to Rao during Rao's employment. EPAM would consider a narrower request which asks it to identify whether particular managers provided instructions to Dr. Rao.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 329: (*i.e.* PURPORTED REQUEST NO. 177(a))**

Admit that as stated in the Klebanov Supplemental Declaration (ECF No. 58-28 ¶ 3), 'Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. y.

**ACTUAL REQUEST FOR ADMISSION NO. 330: (*i.e.* PURPORTED REQUEST NO. 177(b))**

Admit that MedRAG and Synapse are separate software developments with distinct codebases and distinct primary functions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Synapse and MedRag have "distinct codebases." EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 331: (*i.e.* PURPORTED REQUEST NO. 177(c))**

Admit that MedRAG's primary function concerns biomedical literature retrieval or retrieval-augmented generation, and it is not a cohort-analytics platform.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 332: (*i.e.* PURPORTED REQUEST NO. 177(d))**

Admit that EPAM's allegation that Dr. Rao downloaded 'AI Accelerator' source code (Klebanov Decl. ¶ 40, as glossed by ECF No. 58-28 ¶ 3) does not identify which of the two components — Synapse or MedRAG — any particular file belonged to.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM's allegations in Klebanov's declarations are written documents which speak for themselves and are the best evidence of their contents. EPAM additionally objects to the Request because it is confusing and ambiguous.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 333: (*i.e.* PURPORTED REQUEST NO. 178(a))**

Admit that during Dr. Rao's employment, Workstation A0001 accessed EPAM systems while the OPSWAT MetaAccess agent reported the device as compliant with EPAM's security policy.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 334: (*i.e.* PURPORTED REQUEST NO. 178(b))**

Admit that EPAM's identity and endpoint management tenant records (including Microsoft Entra ID sign-in logs) reflect authenticated sessions originating from Workstation A0001 during Dr. Rao's employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 335: (*i.e.* PURPORTED REQUEST NO. 178(c))**

Admit that the personally owned desktop workstation designated by neutral forensic examiner iDS as Device A0001 (Make: MSI, S/N: MSB0Y2O7S0104130) was surrendered for inspection and examined by iDS pursuant to the parties' stipulated Forensic Inspection Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 336: (*i.e.* PURPORTED REQUEST NO. 178(d))**

Admit that iDS transmitted its forensic investigation report concerning Device A0001 to counsel for both parties on or about January 12, 2026.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, multiple reports issued by iDS may reflect information specific to that device. EPAM will consider a more specific request that enables definitive identification of the "report" referred to herein.

**ACTUAL REQUEST FOR ADMISSION NO. 337: (*i.e.* PURPORTED REQUEST NO. 179(a))**

Admit that during Dr. Rao's employment, EPAM assigned to him or utilized for his work one or more internal employee project codes, corporate investment codes, or client billing codes (including, but not limited to, codes containing 'TKDA', 'TKDA-DSFX', 'TKDA-ESFX', 'TKDA-OSFX', 'TKDA- SYNPS', 'ODUS-TKDA', 'TAKEDA', 'TAKEDA-SYNAPSE', 'SYNP', 'EPMC-SYNP', 'AMNA- ODYS', 'AMNA', 'AMNA-AIRN', 'CCC-ARCH', 'CCC', or 'ODYS').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials,* 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 338: (*i.e.* PURPORTED REQUEST NO. 179(b))**

Admit that developer time recorded by or for Dr. Rao was allocated in EPAM's timekeeping systems against one or more of the codes described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. EPAM additionally objects to the request as vague and ambiguous. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 339: (*i.e.* PURPORTED REQUEST NO. 179(c))**

Admit that repository or directory paths inventoried by neutral forensic examiner iDS from the examined devices and accounts (including, but not limited to, paths containing 'amna-airn', 'amna-odys', 'takeda-synapse', or 'synapse') correspond to client engagements or corporate projects associated with the codes described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 340: (*i.e.* PURPORTED REQUEST NO. 179(d))**

Admit that EPAM's records do not reflect any written revocation, during Dr. Rao's employment, of his authorization to access repositories or directory paths associated with the codes described in subpart

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself (*e.g.*, presumably, all EPAM records in existence). Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 341: (*i.e.* PURPORTED REQUEST NO. 180(a))**

Admit that on or about September 23, 2025, EPAM (through or at the direction of Gregory Klebanov) withdrew or reduced its support for Dr. Rao's activities in the OHDSI open-science community, as communicated through EPAM employee Lana Shubinsky.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 342: (*i.e.* PURPORTED REQUEST NO. 180(b))**

Admit that after October 15, 2025 – including in or around late October 2025 and in or around January and February 2026 – one or more EPAM executives or managers (including Gregory Klebanov) communicated with personnel of Gilead Sciences (including Alex Cash, also known as Alex Asiimwe, or Ram Varma) regarding Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM objects to the request as overbroad, failing to identify any managers other than Klebanov. On those bases, EPAM objects and declines to admit or deny. EPAM's ESI review is ongoing and EPAM reserves the right to supplement.

**ACTUAL REQUEST FOR ADMISSION NO. 343: (*i.e.* PURPORTED REQUEST NO. 180(c))**

Admit that one or more of the communications described in subpart (b) referenced this lawsuit, alleged data taking, or alleged misconduct by Dr. Rao, and concerned Dr. Rao in his individual professional capacity.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request poses numerous conjunctives and differing possibilities (i.e., "referenced this lawsuit, alleged data taking, or alleged misconduct by Dr. Rao, and concerned Dr. Rao in his individual professional capacity"), creating the risk of any response being materially misleading. EPAM will consider responding to a narrower request, which poses a single specific question – not whether one of numerous possibilities happened. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 344: (*i.e.* PURPORTED REQUEST NO. 180(d))**

Admit that EPAM has never transmitted to Gilead Sciences any correction or retraction of the statements described in subpart (c).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request requires the assumption of disputed facts and/or facts not in evidence. EPAM incorporates its objections to Request 180(c) by reference. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 345: (*i.e.* PURPORTED REQUEST NO. 181(a))**

Admit that CoReason, Inc. was incorporated in Delaware on or about October 16, 2025 – after Dr. Rao's October 15, 2025 termination – and EPAM has no documents showing CoReason conducted commercial operations before that date.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections. EPAM admits that CoReason, Inc. was incorporated in Delaware on or about October 16, 2025 which was after Dr. Rao's October 15, 2025 termination. EPAM objects to the phrase "commercial operations" as ambiguous. EPAM admits that CoReason did not have a formal legal existence until October 16, 2026, and thus could not conduct commercial operations as a formal legal entity. Answering further, even if CoReaosn did not have a formal legal existence, Dr. Rao was already, before

October 15, 2025, plotting improper commercial operations, and was doing so using the CoReason name. EPAM denies any remaining portion of the Request.

.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 346: (*i.e.* PURPORTED REQUEST NO. 181(b))</u>**

Admit that the email correspondence filed at ECF No. 33-9 reflects that on November 3, 2025, a Johnson & Johnson representative corresponded regarding a draft Statement of Work and terms for a proof-ofconcept engagement for technical and scientific services to be performed by Dr. Rao (whether individually or through CoReason, Inc.).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 347: (*i.e.* PURPORTED REQUEST NO. 181(c))**

Admit that as stated in the Klebanov Supplemental Declaration, 'Johnson & Johnson ("J&J") is an EPAM client' (ECF No. 58-28 ¶ 5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 348: (*i.e.* PURPORTED REQUEST NO. 181(d))**

Admit that after October 15, 2025, one or more EPAM personnel communicated with Johnson & Johnson personnel regarding Dr. Rao personally, CoReason, Inc., or this lawsuit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM additionally objects because it cannot assess what every single individual who may be “EPAM personnel” might have communicated with every single individual who might be “Johnson & Johnson personnel.” Subject to and without waiving the foregoing objections, EPAM admits that Klebanov received a call from a Johnson & Johnson representative after

October 15, 2025, regarding Dr. Rao. EPAM denies that this call mentioned CoReason. EPAM otherwise objects to the request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 349: (*i.e.* PURPORTED REQUEST NO. 182(a))**

Admit that the email filed at ECF No. 33-9 reflects that on November 3, 2025, a Johnson & Johnson representative wrote regarding prospective technical services by Dr. Rao and CoReason: 'We had a change in business priorities and have decided to not pursue the... activities. I have asked the team to pause the contracting activities.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 350: (*i.e.* PURPORTED REQUEST NO. 182(b))**

Admit that as of November 3, 2025, the proof-of-concept Statement of Work involving Dr. Rao referenced in that thread had been under active negotiation since at least October 21, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of Dr. Rao's and/or CoReason's relationship with Johnson & Johnson, or any associated documents, and cannot authenticate either Dr. Rao's contentions regarding this relationship or the documents.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 351: (*i.e.* PURPORTED REQUEST NO. 182(c))**

Admit that EPAM filed its Complaint and emergency application in this Court on November 4, 2025, the day after the communication described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

EPAM admits that it filed the Complaint on November 4, 2025. Otherwise, on the bases set forth above, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 352: (*i.e.* PURPORTED REQUEST NO. 182(d))**

Admit that EPAM does not contend that the proof-of-concept engagement involving Dr. Rao or CoReason described in ECF No. 33-9 would have used or disclosed any EPAM trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng’g,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. .

**ACTUAL REQUEST FOR ADMISSION NO. 353: (*i.e.* PURPORTED REQUEST NO. 183(a))**

Admit that Count VII of EPAM's original Complaint asserted a breach of contract claim related to the noncompetition provision, and EPAM withdrew that claim in its Amended Complaint (ECF No. 37. redline at ECF No. 37-4 p. 31).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng’g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 354: (*i.e.* PURPORTED REQUEST NO. 183(b))**

Admit that EPAM stated in its motion papers that '[b]ecause EPAM does not seek to enforce the noncompetition provisions of Rao's Agreement, there is no justiciable controversy' (ECF No. 43-1 at p. 30).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 355: (*i.e.* PURPORTED REQUEST NO. 183(c))**

Admit that Section 5(c) of the Employment Covenants Agreement (ECF No. 37-1) imposes its post-employment restriction '[i]n the event you voluntarily resign employment'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 356: (*i.e.* PURPORTED REQUEST NO. 183(d))**

Admit that since the entry of the Stipulated Consent Order (ECF No. 20), EPAM has not sought any judicial relief enforcing a non-competition restriction against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials,* 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing, or lack thereof, referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 357: (*i.e.* PURPORTED REQUEST NO. 184(a))**

Admit that EPAM's motion papers describe its Life Sciences and Healthcare business as earning revenue of approximately $490 million in 2023 and over $574 million in 2024 (ECF No. 43-1 at p. 12, citing EPAM's Form 10-K for the year ended December 31, 2024).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The SEC filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 358: (*i.e.* PURPORTED REQUEST NO. 184(b))**

Admit that no client of EPAM has terminated, cancelled, or reduced any engagement with EPAM as a result of conduct by Dr. Rao alleged in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng’g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. .

**ACTUAL REQUEST FOR ADMISSION NO. 359: (*i.e.* PURPORTED REQUEST NO. 184(c))**

Admit that EPAM has not lost any specific, identified sale or license of the software described in its pleadings as a result of conduct by Dr. Rao alleged in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 360: (*i.e.* PURPORTED REQUEST NO. 184(d))**

Admit that EPAM has not identified any customer, contract, license, or revenue stream lost to Dr. Rao individually, to CoReason, Inc., or to Scientific Informatics, LLC.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 361: (*i.e.* PURPORTED REQUEST NO. 185(a))**

Admit that EPAM's initial disclosures served under Fed. R. Civ. P. 26(a)(1) in this action did not state a computation of any category of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 362: (*i.e.* PURPORTED REQUEST NO. 185(b))**

Admit that as of the date of these responses, EPAM has not served a supplemental disclosure stating a computation of any category of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 363: (*i.e.* PURPORTED REQUEST NO. 185(c))**

Admit that as of the date of these responses, EPAM has not disclosed any expert witness on the subject of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 364: (*i.e.* PURPORTED REQUEST NO. 185(d))**

Admit that as of the date of these responses, EPAM has not produced documents quantifying any claimed monetary loss caused by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted. EPAM's ESI review is ongoing, and EPAM will supplement if appropriate.

**ACTUAL REQUEST FOR ADMISSION NO. 365: (*i.e.* PURPORTED REQUEST NO. 186(a))**

Admit that on July 8, 2026, Dr. Rao transmitted a written meet-and-confer email to EPAM's counsel of record stating, among other things, that EPAM's litigation conduct was 'actively causing me documented physical and mental health harm.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 366: (*i.e.* PURPORTED REQUEST NO. 186(b))**

Admit that EPAM's counsel received the July 8, 2026 email and transmitted a written response in the same thread on or about July 9, 2026.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 367: (*i.e.* PURPORTED REQUEST NO. 186(c))**

Admit that after receiving the July 8, 2026 notice, EPAM did not withdraw or modify the discovery demands addressed in that meet-and-confer thread.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn En'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 368: (*i.e.* PURPORTED REQUEST NO. 186(d))**

Admit that as of July 8, 2026, Dr. Rao was appearing pro se in this action and personally conducting his own defense.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao is appearing *pro se*. EPAM lacks personal knowledge regarding the remainder of the Request (*e.g.*, EPAM does not know, and cannot know, if Dr. Rao is receiving assistance from counsel who has not appeared), and thus cannot admit or deny. .

**ACTUAL REQUEST FOR ADMISSION NO. 369: (*i.e.* PURPORTED REQUEST NO. 187(a))**

Admit that on or before October 15, 2025 (the date Dr. Rao's employment with EPAM was terminated), EPAM issued a written litigation hold notice concerning disputes involving Dr. Rao (including disputes concerning EPAM trade secrets, ownership of client products, and the geographic location of employees).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 370: (*i.e.* PURPORTED REQUEST NO. 187(b))**

Admit that on or before October 31, 2025 (the date EPAM served its cease-and-desist letter and preservation demand, filed as ECF No. 58-4), EPAM issued a written litigation hold notice concerning disputes involving Dr. Rao (including disputes concerning EPAM trade secrets, ownership of client products, and the geographic location of employees).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 371: (*i.e.* PURPORTED REQUEST NO. 187(c))**

Admit that on or before November 4, 2025 (the date EPAM filed its initial Complaint and ex parte TRO application, ECF Nos. 1 and 3), EPAM issued a written litigation hold notice concerning this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 372: (*i.e.* PURPORTED REQUEST NO. 187(d))</u>**

Admit that as of the date of these responses, EPAM has not released, suspended, or narrowed the scope of any litigation hold issued concerning this dispute.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 373: (*i.e.* PURPORTED REQUEST NO. 188(a))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former executive leadership, Practice Leaders, and business unit heads with managerial or supervisory responsibility for EPAM's Healthcare and Life Sciences practice or the Odysseus business unit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 374: (*i.e.* PURPORTED REQUEST NO. 188(b))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former Human Resources, People Operations, Employee Relations, and In-House Legal personnel involved in Dr. Rao's hiring, performance management, compliance escalations, or separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 375: (*i.e.* PURPORTED REQUEST NO. 188(c))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former Delivery Managers, Project Managers, and technical leads responsible for client engagements or software projects in which Dr. Rao participated or provided technical input.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 376: (*i.e.* PURPORTED REQUEST NO. 188(d))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former IT Security, Systems Engineering, and Microsoft 365 Tenant Administration personnel responsible for endpoint security, user account telemetry, and data retention policies.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 377: (*i.e.* PURPORTED REQUEST NO. 189(a))**

Admit that on or before November 4, 2025 (the date EPAM filed its initial Complaint and ex parte TRO application, ECF Nos. 1 and 3), EPAM suspended automatic deletion and data-purge policies for Microsoft Teams messages, Exchange Online mailboxes (including inactive or departed employee mailboxes), and cloud storage accounts for current and former personnel within the functional categories identified in RFA No. 188.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 378: (*i.e.* PURPORTED REQUEST NO. 189(b))**

Admit that on or before November 4, 2025, EPAM issued instructions to preserve, or implemented technical measures to preserve, all local ESI stored on or generated through interactions with EPAM computers, EPAM agents' computers, mobile devices, or other computing devices assigned to those same current and former personnel.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

EPAM further objects because legal hold notices (including instructions to preserve) are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 379: (*i.e.* PURPORTED REQUEST NO. 189(c))</u>**

Admit that EPAM maintains written administrative change logs or audit records documenting the date and execution of each suspension described in subparts (a) and (b).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention measures as to specific individuals and specific kinds of documents.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 380: (*i.e.* PURPORTED REQUEST NO. 189(d))**

Admit that as of the date of these responses, EPAM has not produced in this action any administrative change log or audit record documenting the suspension of automatic deletion policies or the forensic preservation of local device storage for those current and former personnel.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, admitted as of the date of this response.

**ACTUAL REQUEST FOR ADMISSION NO. 381: (*i.e.* PURPORTED REQUEST NO. 190(a))**

Admit that EPAM has preserved the complete Microsoft Entra ID interactive and non-interactive sign-in and audit logs (including source IP addresses, client application identifiers, and device compliance telemetry) for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) covering November 18, 2024 through October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 382: (*i.e.* PURPORTED REQUEST NO. 190(b))**

Admit that EPAM has preserved the GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records that record, or permit determination of, the physical geographic locations of personnel assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen) for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 383: (*i.e.* PURPORTED REQUEST NO. 190(c))**

Admit that EPAM has preserved the compliance, posture-verification, and network telemetry logs generated by the OPSWAT MetaAccess agent required under Section 3.21 of EPAM's 'Acceptable Use of IT Resources' policy (ECF No. 30-3) for a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 384: (*i.e.* PURPORTED REQUEST NO. 190(d))**

Admit that after anticipating litigation against Dr. Rao, EPAM took affirmative administrative steps to extend retention of its Microsoft 365 Unified Audit Log (UAL) beyond the tenant's default retention period for the user accounts and software repositories identified in its Amended Complaint (ECF No. 30).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 385: (*i.e.* PURPORTED REQUEST NO. 191(a))**

Admit that EPAM has preserved the server-side GitLab and Bitbucket access, clone, and administrative audit logs for the software repositories associated with the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform'), ETL Kit (including 'cdmkit'), and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 386: (*i.e.* PURPORTED REQUEST NO. 191(b))**

Admit that EPAM has preserved the complete corporate Microsoft Exchange mailbox and Microsoft Teams message archive for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) in its native state as it existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 387: (*i.e.* PURPORTED REQUEST NO. 191(c))**

Admit that EPAM has preserved all electronic files and forensic artifacts resulting from any interaction by Dr. Rao with EPAM computers, EPAM agents' computers, server instances, or other devices that store ESI.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 388: (*i.e.* PURPORTED REQUEST NO. 191(d))**

Admit that prior to reassigning, reimaging, wiping, or disposing of the EPAM-issued laptop computer hardware (or any other computing device provisioned to Dr. Rao during his employment), EPAM created a bit-stream forensic disk image of that hardware.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 389: (*i.e.* PURPORTED REQUEST NO. 192(a))**

Admit that EPAM has preserved the software repositories and infrastructure configuration files associated with the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' 'Takeda-Synapse,' or 'takeda-synapse-infra'), including their full Git commit histories, in native format as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 390: (*i.e.* PURPORTED REQUEST NO. 192(b))**

Admit that EPAM has preserved the software repositories associated with the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform'), ETL Kit (including 'cdmkit'), and MedRAG, including their full Git commit histories, in native format as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 391: (*i.e.* PURPORTED REQUEST NO. 192(c))**

Admit that EPAM has preserved the October 12, 2025 commit 3d8b15ac referenced in EPAM's own Exhibit A (ECF No. 3-6) and its surrounding repository history in native form.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 392: (*i.e.* PURPORTED REQUEST NO. 192(d))**

Admit that since November 4, 2025, no commit that was reachable in the history of those repositories as of October 15, 2025 has been deleted, force-pushed over, rebased, squashed, or otherwise rewritten.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 393: (*i.e.* PURPORTED REQUEST NO. 193(a))**

Admit that EPAM has preserved the staffing rosters, assignment schedules, and Telescope work-location records for all personnel assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen) for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 394: (*i.e.* PURPORTED REQUEST NO. 193(b))**

Admit that EPAM has preserved any Telescope work-location history and any relocation-program records for Anna Tauetekova, Alexander Alexeuk, and the personnel identified in Dr. Rao's Answer and Counterclaims (ECF No. 33 ¶¶ 320–327) reflecting any approved or pending work-country changes during 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 395: (*i.e.* PURPORTED REQUEST NO. 193(c))**

Admit that EPAM has preserved all source IP address records, VPN session logs, and multi-account access histories that record, or permit determination of, the actual physical work locations of personnel assigned to those same pharmaceutical client accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 396: (*i.e.* PURPORTED REQUEST NO. 193(d))**

Admit that EPAM has not destroyed, deleted, or failed to preserve any internal record documenting a discrepancy between the recorded Telescope work locations of developers assigned to pharmaceutical client accounts and their physical network connection locations.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for

Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 397: (*i.e.* PURPORTED REQUEST NO. 194(a))**

Admit that EPAM has preserved the VPN gateway and network-egress infrastructure located in the Republic of Serbia, including IP routing tables and network configuration records, for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because the Request is based on a denied fact. The assertion that Anna Arksenova performed work for Gilead is false.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 398: (*i.e.* PURPORTED REQUEST NO. 194(b))**

Admit that the records described in subpart (a) record, or permit determination of, the external IP addresses, routing paths, and multi-account proxy sign-in configurations used for connections to client environments from Serbia.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because the Request is based on a denied fact. The assertion that Anna Arksenova performed work for Gilead is false.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 398: (*i.e.* PURPORTED REQUEST NO. 194(c))**

Admit that EPAM has preserved all written communications between EPAM IT infrastructure personnel and life sciences account leadership concerning the physical hosting, proxy routing, and egress locations of remote developers assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands

for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because there is no time frame associated with the request.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that no employee within "EPAM IT infrastructure personnel and life sciences account leadership" ever accidentally deleted a single email or other electronic communication.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 400: (*i.e.* PURPORTED REQUEST NO. 194(d))**

Admit that as of the date of these responses, EPAM has not produced in this litigation the network routing tables, external IP logs, or VPN gateway records reflecting remote developer connections into pharmaceutical client environments during 2024–2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 401: (*i.e.* PURPORTED REQUEST NO. 195(a))**

Admit that EPAM has preserved all email, Microsoft Teams, and messaging communications between Gregory Klebanov and Greg Killian concerning Dr. Rao for the period September 1, 2025 through December 31, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that neither Klebanov nor Killian did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

Notwithstanding those objections, EPAM is not aware of any email, Microsoft Teams, and messaging communications between Gregory Klebanov and Greg Killian concerning Dr. Rao for the period September 1, 2025 through December 31, 2025 being deleted or destroyed and, to the best of its knowledge, all such records have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 402: (*i.e.* PURPORTED REQUEST NO. 195(b))**

Admit that EPAM has preserved all communications between Gregory Klebanov and either Arkadiy Dobkin or Balázs Fejes, or any other member of EPAM executive leadership or the Board of Directors, concerning Dr. Rao's separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that Klebanov did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

EPAM additionally objects because the request is overbroad insofar as it covers EPAM's Board of Directors and Executive Leadership, who had nothing to do with Rao's separation.

On those bases, EPAM objects and declines to admit or deny.

Notwithstanding those objections, EPAM is not aware of any communication/record referenced in the Request being deleted or destroyed and, to the best of its knowledge, all such records/communications have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 403: (*i.e.* PURPORTED REQUEST NO. 195(c))**

Admit that EPAM has preserved all communications among its human resources and legal personnel (including at least June Dinitz, Larry McKlaine, Larry Solomon, and Sarah Lugar) concerning Dr. Rao's separation, irrespective of the country in which those personnel are employed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that none of the referenced persons did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

Notwithstanding those objections, EPAM is not aware of any communication/record referenced in the Request being deleted or destroyed and, to the best of its knowledge, all such records/communications have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 404: (*i.e.* PURPORTED REQUEST NO. 195(d))**

Admit that EPAM has preserved all written communications, across all global subsidiaries, among EPAM personnel concerning client contractual commitments, developer physical work locations, and location-masking practices on pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon "all written communications, across all global subsidiaries, among EPAM personnel concerning client contractual commitments, developer physical work locations, and location-masking practices on pharmaceutical client accounts." Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 405: (*i.e.* PURPORTED REQUEST NO. 196(a))**

Admit that EPAM has not identified any instance in which an EPAM officer, employee, or agent deleted, purged, wiped, or destroyed any internal communication in Microsoft Exchange, Microsoft Teams, or Slack concerning Dr. Rao since October 15, 2025 (the date Dr. Rao's employment with EPAM was terminated, Amended Complaint, ECF No. 30 ¶ 7).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the request is wildly overbroad insofar as it covers every single "EPAM officer, employee, or agent" worldwide, which is tens of thousands of people.

Subject to and without waiving the foregoing objections, admitted as stated.

**ACTUAL REQUEST FOR ADMISSION NO. 406: (*i.e.* PURPORTED REQUEST NO. 196(b))**

Admit that EPAM has not identified any instance in which an EPAM officer, employee, or agent deleted, purged, wiped, or destroyed any internal communication in Microsoft

Exchange, Microsoft Teams, or Slack concerning this litigation since November 4, 2025 (the date EPAM filed its initial Complaint, ECF No. 1).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the request is wildly overbroad insofar as it covers every single "EPAM officer, employee, or agent" worldwide, which is tens of thousands of people.

Subject to and without waiving the foregoing objections, admitted as stated.

**ACTUAL REQUEST FOR ADMISSION NO. 407: (*i.e.* PURPORTED REQUEST NO. 196(c))**

Admit that EPAM has not received any report or notification from its IT security or compliance personnel indicating that communications or ESI on computers or devices of custodians of this dispute (including, but not limited to, the custodians referenced in RFA No. 188) were deleted, wiped, or auto-purged after October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the "custodians" referenced throughout Rao's requests are overbroad.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 408: (*i.e.* PURPORTED REQUEST NO. 196(d))**

Admit that EPAM maintains an immutable administrative audit log capable of discovery forensics to independently verify whether any custodian communication, email, chat message, or device-stored ESI was deleted, purged, or wiped after October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM additionally objects because it does not understand the meaning of "immutable."

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 409: (*i.e.* PURPORTED REQUEST NO. 197(a))**

Admit that EPAM has preserved all client contracts, Master Services Agreements, Statements of Work, and written communications representing EPAM's commitments to clients regarding the physical geographic work locations of assigned personnel (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands

for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 410: (*i.e.* PURPORTED REQUEST NO. 197(b))**

Admit that EPAM has preserved all client communications received during 2023 through 2025 raising questions, objections, compliance audits, or disputes regarding the physical geographic locations or staffing representations of EPAM personnel across pharmaceutical client accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 411: (*i.e.* PURPORTED REQUEST NO. 197(c))**

Admit that EPAM has preserved all internal and external records concerning any formal or informal accommodations, exceptions, side-letters, or waivers negotiated or arrived at with clients regarding employee physical locations.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 412: (*i.e.* PURPORTED REQUEST NO. 197(d))**

Admit that EPAM has preserved the complete file of any internal ethics, compliance, or whistleblower investigation concerning Dr. Rao or concerning the staffing practices he reported.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request assumes denied facts. EPAM denies that it "preserved the complete file of any internal ethics, compliance, or whistleblower investigation concerning Dr. Rao or concerning the staffing practices he reported" because it denies that Dr. Rao "reported" any such staffing practices, and further denies that any internal ethics, compliance, or whistleblower investigation too place. EPAM avers that there was no reason for

any internal ethics, compliance, or whistleblower investigation. On these bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 413: (*i.e.* PURPORTED REQUEST NO. 197(e))**

Admit that EPAM has preserved the complete, native Microsoft Teams chat thread involving Katie Barista referenced in ECF No. 33-2 and ECF No. 43-7 containing the statement: 'everything we build belongs to Takeda and the MSA controls over the SOW'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted. .

**ACTUAL REQUEST FOR ADMISSION NO. 414: (*i.e.* PURPORTED REQUEST NO. 198(a))**

Admit that the Microsoft 365 download audit log produced by EPAM as Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) contains exactly 54,900 total rows of event records.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the file titled "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" contained 54,900 event records.

**ACTUAL REQUEST FOR ADMISSION NO. 415: (*i.e.* PURPORTED REQUEST NO. 198(b))**

Admit that every single event record in the 54,900-row export bears a timestamp falling exclusively within the 14-day calendar window from September 30, 2025 through October 13, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained a "Start Time" field with values exclusively between September 30, 2025 through October 13, 2025. EPAM denies any remaining portion of this Request.

**ACTUAL REQUEST FOR ADMISSION NO. 416: (*i.e.* PURPORTED REQUEST NO. 198(c))**

Admit that of the 54,900 event records in the export, exactly 44,742 records (81.50%) designate the operation type as FileSyncDownloadedFull.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 44,741 records with an "O365_Operation (custom)" value of "FileSyncDownloadedFull". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 417: (*i.e.* PURPORTED REQUEST NO. 198(d))**

Admit that of the 54,900 event records in the export, exactly 10,158 records (18.50%) designate the operation type as FileDownloaded.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 10,157 records with an "O365_Operation (custom)" value of "FileDownloaded". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 418: (*i.e.* PURPORTED REQUEST NO. 199(a))**

Admit that of the 54,900 event records in Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), exactly 44,702 records (81.42%) designate the client user-agent as Microsoft SkyDriveSync (versions 25.170, 25.174, or 25.179).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 8 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.170.0901.0002 ship; Windows NT 10.0 (26100)", 10 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.174.0907.0003 ship; Windows NT 10.0 (26100)", and 44,684 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.179.0914.0003 ship; Windows NT 10.0 (26100)". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 419: (*i.e.* PURPORTED REQUEST NO. 199(b))**

Admit that across the entire 54,900-row dataset in Exhibit B, exactly 53 records (0.097%) designate a standard interactive web browser user-agent (i.e., a user-agent string identifying a consumer web browser such as Chrome, Edge, Firefox, or Safari).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 3 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36", 1 record with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36 Edg/140.0.0.0 Teams/25241.203.3947.4411/49", 37 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36", 1 record with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153 (49)", and 11 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153/49". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 420: (*i.e.* PURPORTED REQUEST NO. 199(c))**

Admit that exactly 8,745 records in Exhibit B record no user-agent string ( N/A ) representing automated serverside events.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 8,745 records with a "user-agent (custom)" value of "N/A".

Based on its objections, EPAM objects to the remaining portion of the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 421: (*i.e.* PURPORTED REQUEST NO. 199(d))**

Admit that exactly 1,393 records in Exhibit B designate the server-side transformation user-agent OneDriveMpc-Transform_Zip/1.0.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 1,393 records with a "user-agent (custom)" value of "OneDriveMpc-Transform_Zip/1.0". EPAM denies any remaining portion of the request.

**ACTUAL REQUEST FOR ADMISSION NO. 422: (*i.e.* PURPORTED REQUEST NO. 200(a))**

Admit that EPAM received in discovery the document titled 'CoReason Clean Room Protocol & Trade Secret Protection Standard (P-IP-001),' Version 1.0, dated November 20, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Based on its objections, EPAM objects and declines to admit or deny. EPAM's review of Dr. Rao's discovery production is on-going, and EPAM reserves the right to supplement this response. EPAM requests that Dr. Rao supply a Bates number associated with the alleged document.

**ACTUAL REQUEST FOR ADMISSION NO. 423: (*i.e.* PURPORTED REQUEST NO. 200(b))**

Admit that Section 1.1 of P-IP-001 defines a 'Temporal Firewall Date' and establishes Standard P-102 requiring a Genesis Commit for all new repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because the information requested is not within its personnel knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether the document "establishes" any policy or procedure that was actually in effect at CoReason.

Based on its objections, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 424: (*i.e.* PURPORTED REQUEST NO. 200(c))**

Admit that Section 1.3 of P-IP-001 establishes the 'Human Assumption of Transformative Authorship' protocol requiring human review, substantive modification, and contamination checks before merging code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM

declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because the information requested is not within its personnel knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether the document "establishes" any policy or procedure that was actually in effect at CoReason.

Based on its objections, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 425: (*i.e.* PURPORTED REQUEST NO. 200(d))**

Admit that as of the date of these responses, EPAM has not identified to Dr. Rao any written technical critique asserting that the provisions of P-IP-001 are inadequate to prevent IP contamination.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because Dr. Rao has not made any request for the "identify[cation]" requested in the Request. EPAM additionally objects because, irrespective of what a document might purport to say, the associated information is not within its personnel knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether any "provisions" within the alleged referenced document were actually enforced or used at CoReason. Subject to those objections, EPAM admits that as of the date of these responses, it has not produced a "written technical critique" of the alleged document.

**ACTUAL REQUEST FOR ADMISSION NO. 426: (*i.e.* PURPORTED REQUEST NO. 201(a))**

Admit that during the period between December 12, 2025 and the date of these responses, Plaintiff and its designated forensic experts have had electronic access, or the contractual opportunity under the Forensic Protocol to obtain access via file promotion and release, to inspect all files on the Relativity workspace hosted by neutral forensic examiner iDS.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g,* 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 427: (*i.e.* PURPORTED REQUEST NO. 201(b))**

Admit that as of the date of these responses, EPAM has not identified by file name or path any specific file in the collected CoReason repositories that it contends contains EPAM proprietary source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because it is ambiguous what constitutes a "CoReason repositor[y]" given the overlap between Dr. Rao and CoReason.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced and, in fact, only received the document production a short time ago. EPAM has not had the opportunity to fully review this production.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 428: (*i.e.* PURPORTED REQUEST NO. 201(c))**

Admit that as of the date of these responses, EPAM has not identified any specific line, block, or routine of source code in the collected CoReason repositories that was copied from any EPAM repository.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because it is ambiguous what constitutes a "CoReason repositor[y]" given the overlap between Dr. Rao and CoReason.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced and, in fact, only received the document production a short time ago. EPAM has not had the opportunity to fully review this production.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 429: (*i.e.* PURPORTED REQUEST NO. 201(d))**

Admit that the sworn Declaration of Dmitrii Ilin (ECF No. 58-25) does not identify any CoReason source code file or directory path by name.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 430: (*i.e.* PURPORTED REQUEST NO. 202(a))**

Admit that EPAM has not identified any document, repository README, or source code header file in existence prior to October 15, 2025 that designated the ETL Conversion Kit (including cdmkit ) source code as a 'trade secret' on its face.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 431: (*i.e.* PURPORTED REQUEST NO. 202(b))**

Admit that EPAM has not identified any document, repository README, or source code header file in existence prior to October 15, 2025 that designated the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') source code as a 'trade secret' on its face.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 432: (*i.e.* PURPORTED REQUEST NO. 202(c))**

Admit that EPAM has not identified any presentation slide deck produced or filed in this action in existence prior to October 15, 2025 for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') that bore the word 'Trade Secret' on its title slide or body pages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives

were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 433: (*i.e.* PURPORTED REQUEST NO. 202(d))</u>**

Admit that Dr. Rao's offboarding from EPAM on October 15, 2025 (Amended Complaint, ECF No. 30 ¶ 7) did not include an exit interview in which EPAM identified any specific repository, file, or document for return.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao did not have an exit interview. EPAM denies any suggestion that during offboarding Dr. Rao was not reminded of his contractual obligations to EPAM, including returning EPAM property and information.

**ACTUAL REQUEST FOR ADMISSION NO. 434: (*i.e.* PURPORTED REQUEST NO. 203(a))**

Admit that during 2024 and 2025, EPAM publicly marketed commercial services offering automated software modernization, code conversion, and rapid application rebuilding using Generative AI and LLM tooling.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 435: (*i.e.* PURPORTED REQUEST NO. 203(b))**

Admit that during the July/August 2025 executive meeting introducing incoming CEO Balázs Fejes, Balázs Fejes commended Dr. Rao's Generative AI presentation and workflows, stating, in words or in substance: 'I really loved what Gautam and Sara was presenting, this is really helpful to the industry, and it's not just chat GPT prompts which others are selling'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM

will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 436: (*i.e.* PURPORTED REQUEST NO. 203(c))**

Admit that the July/August 2025 executive meeting referenced in subpart (b) was electronically recorded by EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 437: (*i.e.* PURPORTED REQUEST NO. 203(d))**

Admit that EPAM has preserved the complete audio/video recording and any transcript thereof of the meeting described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 438: (*i.e.* PURPORTED REQUEST NO. 203(e))**

Admit that EPAM does not contend that utilizing a commercial LLM to generate original source code from functional requirements constitutes, in itself, the misappropriation of a trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects as the term "functional requirements" is too vague and broad as to allow a response.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 439: (*i.e.* PURPORTED REQUEST NO. 204(a))**

Admit that at the November 5, 2025 preliminary injunction hearing, neither EPAM's counsel nor any EPAM witness disputed Dr. Rao's statement in the record that 'all EPAM employees use OneDrive and those files gets downloaded to our local machines' (Hearing Tr., ECF No. 58-6, at 19:9–10).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 440: (*i.e.* PURPORTED REQUEST NO. 204(b))**

Admit that the transcript of the November 5, 2025 hearing (ECF No. 58-6) contains no statement by EPAM's counsel, and no testimony or exhibit offered by EPAM, contradicting the statement quoted in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 441: (*i.e.* PURPORTED REQUEST NO. 204(c))**

Admit that EPAM did not present any witness, declaration, or testimonial evidence at the November 5, 2025 hearing establishing that Dr. Rao disabled or bypassed any security telemetry agent (including OPSWAT MetaAccess or GlobalProtect VPN) on a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 442: (*i.e.* PURPORTED REQUEST NO. 204(d))**

Admit that the transcript of the November 5, 2025 hearing (ECF No. 58-6) contains no statement or exhibit by EPAM's counsel identifying any specific trade secret formula, algorithm, or customer record alleged to have been disclosed to any third party.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 443: (*i.e.* PURPORTED REQUEST NO. 205(a))**

Admit that in 2025, Dr. Rao was awarded the corporate 'EPAM HEROES 2025' award recognizing his professional contributions to the company (Answer & Counterclaims, ECF No. 33 ¶ 359).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 444: (*i.e.* PURPORTED REQUEST NO. 205(b))**

Admit that on September 17, 2025, Gregory Klebanov informed Dr. Rao that his role would be backfilled by Sarah Seager (ECF No. 33 ¶ 352).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that on or about September 17, 2025, Greg Klebanov informed Rao that his position would be changing and that the title of Head of Data Science would be moved to Sarah Seager. Except as to so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 445: (*i.e.* PURPORTED REQUEST NO. 205(c))**

Admit that Dr. Rao's role was backfilled by Sarah Seager following his separation (ECF No. 33 ¶ 352).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that Sarah Seager took on the title of Head of Data Science and certain aspects of Rao's prior role. Denied that Sarah Seager assumed a role that was exactly the same as Rao's prior role. Except as so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 446: (*i.e.* PURPORTED REQUEST NO. 205(d))**

Admit that Dr. Rao's official profile in EPAM's Telescope performance portal, as reflected in Exhibit F (ECF No. 33-6), stated 'No expectations found'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 447: (*i.e.* PURPORTED REQUEST NO. 206(a))**

Admit that on September 25, 2025 at 3:54 PM, Dr. Rao transmitted an email to Greg Killian and Gregory Klebanov, copying Larry McKlaine (Exhibit G, ECF No. 33-7), stating: 'We confirmed there are no organizational changes impacting my position and no change in role. No layoffs. It was explicitly stated that there is no performance improvement plan (PIP) in place.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the above objections, admitted that Rao made this false unilateral statement in an email.

**ACTUAL REQUEST FOR ADMISSION NO. 448: (*i.e.* PURPORTED REQUEST NO. 206(b))**

Admit that on September 26, 2025, Gregory Klebanov responded in writing stating: 'Should you choose to continue in this revised role, a Performance Improvement Plan (PIP) will be implemented to ensure that clear goals and expectations are established for future success' (ECF No. 33-7).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 449: (*i.e.* PURPORTED REQUEST NO. 206(c))**

Admit that in or around mid-September 2025, Gregory Klebanov stated to Dr. Rao that the legacy data science pipeline was 'close to zero' (ECF No. 33 ¶ 361).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 450: (*i.e.* PURPORTED REQUEST NO. 206(d))**

Admit that in September or October 2025, EPAM executive Alvin Ow stated internally that EPAM was 'abusing' Dr. Rao in connection with the sudden performance demands and role changes (ECF No. 33 ¶ 357).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 451: (*i.e.* PURPORTED REQUEST NO. 207(a))**

Admit that EPAM's official 'Performance Management process at EPAM' policy directs that employee expectations and goals be recorded in the Expectations section of the Performance tab of the employee's Telescope profile.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 452: (*i.e.* PURPORTED REQUEST NO. 207(b))**

Admit that the same policy directs that project performance evaluations focus on how well the employee met the project expectations and goals so recorded.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 453: (*i.e.* PURPORTED REQUEST NO. 207(c))**

Admit that prior to September 17, 2025, EPAM management never entered any specific numeric revenue target for Dr. Rao into the Telescope system (ECF No. 33 ¶ 354, Exhibit F. ECF No. 33-6).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 454: (*i.e.* PURPORTED REQUEST NO. 207(d))**

Admit that prior to September 26, 2025, EPAM management never delivered to Dr. Rao a written PIP setting forth structured performance targets, criteria, or review periods.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that Rao was not placed on a formal written Performance Improvement Plan despite the fact that he was given constructive performance feedback.

**ACTUAL REQUEST FOR ADMISSION NO. 455: (*i.e.* PURPORTED REQUEST NO. 208(a))**

Admit that after October 15, 2025, EPAM personnel or representatives communicated with Takeda Pharmaceuticals personnel (including Sunil Dravida) regarding Dr. Rao's departure and this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 456: (*i.e.* PURPORTED REQUEST NO. 208(b))**

Admit that in one or more such communications, EPAM stated, in words or in substance, that Dr. Rao had engaged in unlawful data exfiltration or trade secret theft.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 457: (*i.e.* PURPORTED REQUEST NO. 208(c))**

Admit that EPAM has never transmitted any written retraction, clarification, or correction to Takeda Pharmaceuticals regarding the statements described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objections as this Request assumes a disputed fact.

Subject to and without waiving the foregoing objections, admitted that no written retraction, clarification, or correction was issued, as the alleged statement is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 458: (*i.e.* PURPORTED REQUEST NO. 208(d))**

Admit that EPAM has not identified any written or oral statement by Dr. Rao to any commercial client of EPAM (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, or Amgen) disparaging EPAM's technical capabilities or business integrity.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks to "prove a negative" (*i.e.*, that "no EPAM officer, manager, or in-house counsel transmitted any written communication"). EPAM cannot prove a negative, as it cannot review every single written communication or oral statement that Rao made to any commercial client of EPAM throughout the entire company (including informal formats such as text messages on personal cellphones).

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 459: (*i.e.* PURPORTED REQUEST NO. 209(a))**

Admit that the complete October 2025 Microsoft Teams thread filed as Exhibit E (ECF No. 33-5) shows that Gaurav Dravida transmitted messages to Dr. Rao on October 14, 2025 and at 10:49 AM on October 16, 2025, before any responsive message from Dr. Rao shown in ECF No. 3-7.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 460: (*i.e.* PURPORTED REQUEST NO. 209(b))**

Admit that the 10:49 AM October 16, 2025 message from Gaurav Dravida requested Dr. Rao's technical assistance concerning ETL processing of STD_COST_YR and type-of-service cost fields (ECF No. 33-5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 461: (*i.e.* PURPORTED REQUEST NO. 209(c))**

Admit that the screenshot filed by EPAM as Exhibit B to the Declaration of Gregory Klebanov (ECF No. 3-7) does not display the text of any inbound message from Gaurav Dravida transmitted before Dr. Rao's first reply, including the substance of the 10:49 AM October 16, 2025 message shown in ECF No. 33-5.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 462: (*i.e.* PURPORTED REQUEST NO. 209(d))**

Admit that EPAM's emergency motion for a temporary restraining order and preliminary injunction filed on November 4, 2025 (ECF No. 3) did not attach or disclose the October 2–3, 2025 'E01–E04' email thread between Dr. Rao and HR leadership (Exhibit C, ECF No. 33-3).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted the email was not attached, but denied that EPAM had any duty to disclose or that absence of disclosure is dispositive of any issue.

**ACTUAL REQUEST FOR ADMISSION NO. 463: (*i.e.* PURPORTED REQUEST NO. 209(e))**

Admit that EPAM transmitted its proposed Second Amended Complaint to Dr. Rao on August 11, 2026, while its Motion for Terminating Sanctions (ECF No. 58) remained pending and undecided before the Court.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that EPAM first shared a draft of its Proposed Second Amended Complaint on August 10, 2026.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 464: (*i.e.* PURPORTED REQUEST NO. 210(a))</u>**

Admit that during the approximately six-month period preceding Dr. Rao's November 2024 hire, the Odysseus unit's rolling six-month revenue was approximately $200,000 (Answer & Counterclaims, ECF No. 33 ¶¶ 347, 471).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 465: (*i.e.* PURPORTED REQUEST NO. 210(b)**

Admit that within his first four months of employment at EPAM, Dr. Rao originated and delivered a commercial contract with Bayer generating approximately $150,000 in revenue (ECF No. 33 ¶ 351).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 466: (*i.e.* PURPORTED REQUEST NO. 210(c))**

Admit that Dr. Rao joined EPAM from Johnson & Johnson, an established enterprise in the healthcare and life sciences industry.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 467: (*i.e.* PURPORTED REQUEST NO. 210(d))**

Admit that during recruitment discussions, EPAM was informed that Dr. Rao would forfeit unvested compensation and benefits at Johnson & Johnson by accepting EPAM's employment offer.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at specific individuals.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 468: (*i.e.* PURPORTED REQUEST NO. 211(a))**

Admit that as of the date of these responses, EPAM has not produced any economic model, expert calculation, or document computing a claimed reasonable royalty under 18 U.S.C. § 1836(b)(3)(B) or 12 Pa. C.S. § 5304 for the software assets identified in its pleadings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,*

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 469: (*i.e.* PURPORTED REQUEST NO. 211(b))**

Admit that as of the date of these responses, EPAM has not produced any financial ledger, customer loss statement, or document calculating actual lost profits resulting from Dr. Rao's alleged conduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 470: (*i.e.* PURPORTED REQUEST NO. 211(c))**

Admit that as of the date of these responses, EPAM has not produced any expert computation or document quantifying alleged head-start or unjust enrichment damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 471: (*i.e.* PURPORTED REQUEST NO. 211(d))**

Admit that the consolidated financial statements and accompanying notes in Item 8 of EPAM Systems, Inc.'s Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (filed February 26, 2026) do not recognize any impairment charge, loss contingency accrual, or material loss attributable to the alleged misappropriation of the software at issue in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The SEC filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

Dated: September 18, 2026

SEYFARTH SHAW LLP

By: /s/ Jacob Oslick

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September 2026, a copy of PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S REQUESTS FOR ADMISSION was sent via electronic and first-class mail, postage prepaid, to:

GOWTHAM ADAMANE ROA
184 Mansgrove Rd
Princeton, NJ 08540
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

*/s/ Jacob Oslick*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260 |

**EPAM SYSTEMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR ADMISSION**

Plaintiff/Counterclaim-Defendant EPAM SYSTEMS, INC. ("EPAM"), by and through its attorneys, Seyfarth Shaw LLP, hereby submits its Amended Responses and Objections to Defendant/Counterclaim-Plaintiff GOWTHAM RAO's First, Second, and Third Sets of Requests For Admission.

**RESERVATION OF RIGHTS**

Any responses to Defendant's Requests for Admission will be subject to EPAM's right to object to the admission into evidence of any and all such responses on the grounds that they, or any of them, are not relevant to the issues in this action or are otherwise inadmissible. The responses and objections contained herein are based on EPAM's current knowledge, information and belief. These responses and objections are subject to amendment and supplementation as EPAM acquires additional information and completes its review and analysis of the facts and issues presented by the pleadings.

**PRELIMINARY STATEMENT**

1. The following responses are given without prejudice to EPAM's right to produce evidence of any subsequently discovered fact or facts. EPAM accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made and/or documents are discovered.

2. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of EPAM in relation to further discovery, research or analysis.

3. The Requests for Admission have been interpreted and answered in accordance with plain English usage. Many of the Requests, however, are vague and ambiguous. EPAM has done its best to interpret these requests as it understands them.

4. EPAM will not produce any information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

**RESPONSES AND OBJECTIONS**

**REQUEST FOR ADMISSION NO. 1:**

Admit that Section 3.21 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at pp. 26–28) establishes express criteria authorizing employees to use a 'Personally owned computing device' (defined on page 27 as 'devices without EPAM image') for 'processing or accessing EPAM or Client confidential or strictly confidential (sensitive) data.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the Policy lists requirements for use of a personally owned computing device. Except as so stated, denied. EPAM refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Section 3.14 of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3, Exhibit C at p. 17) explicitly provides: 'When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the Policy contains the referenced text, but for full context to avoid mischaracterization, it must be also noted that the Policy also says right before that referenced text, "strictly confidential or Confidential data must not be stored on local workstations. When possible, strictly confidential or confidential data must be processed in online tools or storage without downloading it to a local workstation."

**REQUEST FOR ADMISSION NO. 3:**

Admit that during 2024 and 2025, EPAM employees routinely accessed EPAM corporate network services, SharePoint repositories, and project files from personally owned computing devices pursuant to Sections 3.7, 3.21, and 3.23 of EPAM's Acceptable Use of IT Resources Policy (ECF No. 30-3, Exhibit C).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that there are employees within EPAM who have accessed EPAM corporate network services, SharePoint repositories, and project files from personally owned computing devices pursuant to Sections 3.7, 3.21, and 3.23 of EPAM's Acceptable Use of IT Resources Policy. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Paragraph 24 of EPAM's First Amended Complaint (ECF No. 30 at p. 6) explicitly alleges that the underlying software code to EPAM's tools and products was 'accessible only to EPAM employees who work on the development of these products, are senior executives with broad access needs, or otherwise have business need for access to such information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the text is accurately quoted.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Paragraph 32 of EPAM’s First Amended Complaint (ECF No. 30 at p. 8) explicitly designates Dr. Rao as one of 'EPAM’s executives... who interface directly with existing and potential clients.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the text is accurately quoted.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Paragraph 41 of EPAM's First Amended Complaint (ECF No. 30 at p. 10) explicitly alleges that Dr. Rao was 'responsible for heading the data science business unit within EPAM's life sciences group and RWE business unit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the text is accurately quoted.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Paragraph 36 of EPAM’s First Amended Complaint (ECF No. 30 at p. 9) explicitly alleges that EPAM's 'trusted senior executives have access' to EPAM Confidential Information and IP 'to enable them to cultivate client relationships, engage on projects, develop new solutions, and expand the business on the Company’s behalf.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the text is accurately quoted.

**REQUEST FOR ADMISSION NO. 8:**

Admit that all access to EPAM SharePoint repositories, Microsoft OneDrive storage, and internal developer resources by Dr. Rao during his employment was conducted exclusively through official, EPAM-provisioned Single Sign-On (SSO) credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

In addition to the stated objections, EPAM further notes that it does not have sufficient knowledge to admit or deny given the scope and content of this request.

**REQUEST FOR ADMISSION NO. 9:**

Admit that neither Dr. Rao nor any device or user account operated by Dr. Rao bypassed, cracked, or circumvented any password, encryption, firewall, perimeter control, or access security restriction to view or download EPAM corporate or project files.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Denied. Dr. Rao violated corporate policy by locally downloading certain information to his personal device.

**REQUEST FOR ADMISSION NO. 10:**

Admit that access permissions for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) to EPAM SharePoint sites and software code repositories were configured, granted, and administered by EPAM IT systems administrators or repository owners.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to

investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted.

**REQUEST FOR ADMISSION NO. 11:**

Admit that EPAM never assigned Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), user permissions or access rights to any source code repository or repositories for EPAM's ETL Conversion Kit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies this Request. Defendant had access to number of GitLab repositories as part of RWE team group access, including ETL Conversion

Kit. EPAM audit logs from GitLab system confirm that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 12:**

Admit that EPAM possesses no server access log, audit record, or repository log showing that Dr. Rao, or any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), accessed or cloned any source code repository or repositories for the ETL Conversion Kit during his employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding those objections, denied. EPAM audit logs from GitLab system confirm that Gowtham opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 13:**

Admit that neither Dr. Rao nor any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) downloaded the proprietary source code of EPAM’s ETL Conversion Kit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding those objections, denied. EPAM audit logs from GitLab system confirm that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 14:**

Admit that Dr. Rao's responsibilities heading the data science business unit included evaluating, developing, and presenting AI solutions, including the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding the foregoing objections, EPAM admits that Dr. Rao’s responsibilities heading the data science business unit included evaluating, developing, and presenting AI solutions, including the AI Cohort Generator and AI Accelerator. EPAM further admits that the AI Cohort Generator included developments variously known within EPAM as “Prometheus,” “Prometheus Platform,” or “Prometheus Federated Data Analytics Platform,” and that the AI Accelerator was also known as “EPAM Synapse” or “Synapse.” EPAM denies the remaining portions of the request.

**REQUEST FOR ADMISSION NO. 15:**

Admit that EPAM granted Dr. Rao, through EPAM-issued corporate user accounts and credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ), access to AI project files, presentations, and solution assets—including materials relating to the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse')—for the purpose of developing solutions and expanding EPAM's business on the Company's behalf.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

Notwithstanding its objections, admitted that Dr. Rao's EPAM credentials granted him access to written materials related to AI Cohort Generator and AI Accelerator for the purpose of enabling sales to Clients. Admitted that Dr. Rao was also involved in aspects of development of AI Accelerator. Denied that Dr. Rao was involved in development of AI Cohort Generator of components thereof. EPAM objects to the remainder of the Request and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 16:**

Admit that Dr. Rao used a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform computational tasks and client deliverables for EPAM during his employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, admitted that Dr. Rao downloaded EPAM data from EPAM's systems to the identified device. Except as so stated EPAM restates its objections and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 17:**

Admit that Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) possessed computational, processing, and memory capacity exceeding the standard Company-owned laptop issued to Dr. Rao by EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 18:**

Admit that prior to October 15, 2025, EPAM management never issued Dr. Rao any written instruction or notice directing him to cease using his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments or access EPAM IT Resources.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; Defendant received written policies disallowing certain activities on a personal device.

**REQUEST FOR ADMISSION NO. 19:**

Admit that on November 12, 2024, prior to commencing employment, Dr. Rao transmitted a written communication to Vice President Gregory Klebanov inquiring whether EPAM permitted employees to 'bring your own laptop.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is

the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, Mr. Klebanov has no recollection of receiving such a written communication and following reasonable search has not located such a written communication. Discovery is ongoing and this response will be updated in the event further responsive information is discovered.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Vice President Gregory Klebanov was aware during Dr. Rao's employment that Dr. Rao utilized his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) to perform work assignments and data science deliverables for EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, denied.

**REQUEST FOR ADMISSION NO. 21:**

Admit that between November 18, 2024 and October 15, 2025, neither Vice President Gregory Klebanov nor any other EPAM supervisor directed Dr. Rao to cease performing work assignments or accessing EPAM IT Resources on his personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; Defendant received written policies disallowing certain activities on a personal device.

**REQUEST FOR ADMISSION NO. 22:**

Admit that prior to October 15, 2025, EPAM management never directed EPAM IT administrators to block, restrict, or terminate enterprise network authentication or access to EPAM IT Resources from Dr. Rao’s personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because the request requires assumption of a disputed fact, that “EPAM management”, which is also a vague undefined term, had knowledge of the use of the device.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 23:**

Admit that EPAM’s enterprise authentication systems, Microsoft Entra ID (Azure AD) sign-in logs, and endpoint telemetry recorded recurring authentications and access to EPAM IT Resources using any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) from Dr. Rao’s personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) on dates spanning November 18, 2024 through October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 24:**

Admit that upon terminating Dr. Rao's employment on October 15, 2025, EPAM IT administrators did not execute a remote wipe or Mobile Device Management (MDM) command to remove data automatically synced up to EPAM online storage (SharePoint, OneDrive) from Dr. Rao's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted. EPAM had no technical ability to execute a remote wipe because Dr. Rao downloaded the content to his personal device and not an EPAM device.

**<u>REQUEST FOR ADMISSION NO. 25:</u>**

Admit that Section 3.14 of EPAM’s Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 17) states: 'When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the Policy contains this text, but for full context to avoid mischaracterization, it must be also noted that the Policy also says right before that, "strictly confidential or Confidential data must not be stored on local workstations. When possible, strictly confidential or confidential data must be processed in online tools or storage without downloading it to a local workstation."

**REQUEST FOR ADMISSION NO. 26:**

Admit that Exhibit C attached to EPAM's First Amended Complaint (ECF No. 30-3) is a true, correct, and authentic copy of EPAM's Acceptable Use of IT Resources Policy in effect during 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted.

**REQUEST FOR ADMISSION NO. 27:**

Admit that Section 1.1 ('SCOPE') of EPAM's Acceptable Use of IT Resources Policy (Amended Complaint, ECF No. 30-3 at p. 6) provides that the Policy applies to 'all EPAM employees, contractors, temporary employees, or outside consultants working on behalf of an EPAM entity whenever handling IT Resources,' including Dr. Rao throughout the duration of his employment in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted.

**REQUEST FOR ADMISSION NO. 28:**

Admit that the Microsoft OneDrive synchronization client operates by automatically synchronizing files between local endpoint storage and EPAM online storage (SharePoint, OneDrive) in the background without requiring affirmative user initiation for each individual file.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that only after a user intentionally installs and/or configures the Microsoft OneDrive synchronization client by selecting or identifying specific folders to be synchronized, would the Microsoft OneDrive client then automatically synchronize the files within the selected or identified online folders to local storage. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 29:**

Admit that in October 2025, EPAM’s Microsoft 365 enterprise tenant configuration permitted enterprise users, including Dr. Rao, to utilize Microsoft OneDrive’s built-in 'Always keep on this device' feature to automatically synchronize and maintain local offline copies of corporate SharePoint document libraries on connected endpoints.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM’s Microsoft 365 enterprise tenant configuration technically did not restrict enterprise users from utilizing Microsoft OneDrive’s 'Always keep on this device' feature to automatically synchronize and maintain local offline copies of corporate SharePoint document libraries. Only users with BYOD approval are permitted to download locally on the BYOD device, and only in compliance with EPAM policies. EPAM denies the remainder of the request.

**REQUEST FOR ADMISSION NO. 30:**

Admit that when Dr. Rao selected 'Always keep on this device' on a synchronized EPAM SharePoint library, EPAM’s Microsoft 365 and SharePoint tenant audit logs recorded each automatically hydrated file as a server-side download event under any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that if an EPAM user selected 'Always keep on this device' on a synchronized EPAM SharePoint library, EPAM’s Microsoft 365 and SharePoint tenant audit logs would record each automatically hydrated file as a server-side download event under any EPAM-issued corporate user account or credential assigned to that account. Except as so stated, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 31:**

Admit that automated background synchronization executed via Microsoft OneDrive generates local file system hydration metadata, temporary cache files, and synchronization state overlays on connected endpoints rather than manual web browser download artifacts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 32:**

Admit that in EPAM's Microsoft 365 download audit export produced as Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), over 80% of the total log entries (consisting of at least 44,000 events) represent FileSyncDownloadedFull operations executed by the Microsoft OneDrive synchronization client ( OneDriveSync ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document.

Notwithstanding its objections, admitted that the “EPAM Search Terms - Rao SP Download(322329263.1).xlsx” file contained 44,742 records with a "FileSyncDownloadedFull" value in the "O365_Operation (custom)" field.

**REQUEST FOR ADMISSION NO. 33:**

Admit that in EPAM’s Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), at least 44,000 entries record the client user-agent string as Microsoft SkyDriveSync (the desktop OneDrive synchronization engine), and fewer than 100 entries across the entire dataset record standard web browser user-agents.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document.

Notwithstanding its objections, admitted that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 8 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.170.0901.0002 ship; Windows NT 10.0 (26100)", 10 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.174.0907.0003 ship; Windows NT 10.0 (26100)", 44,684 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.179.0914.0003 ship; Windows NT 10.0 (26100)", 3 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36", 1 record with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36 Edg/140.0.0.0 Teams/25241.203.3947.4411/49", 37 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36", 1 record with a

"user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153 (49)", 11 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153/49", 1,393 records with a "user-agent (custom)" value of "OneDriveMpc-Transform_Zip/1.0", and 8,745 records with a "user-agent (custom)" value of "N/A".

**REQUEST FOR ADMISSION NO. 34:**

Admit that in his sworn declaration filed on ECF No. 43-2 at Footnote 3, EPAM counsel of record James Yu affirmed that Microsoft Purview defines FileSyncDownloadedFull events as: 'User downloaded a file to their computer from a SharePoint document library or OneDrive using OneDrive sync app (OneDrive.exe).'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The sworn declaration referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

Notwithstanding its objections, admitted this text is accurately quoted.

**REQUEST FOR ADMISSION NO. 35:**

Admit that the SharePoint document libraries synchronized in EPAM Search Terms - Rao SP Download322329263.1.xlsx (including EPAMRWEpurpleteam , EPAMEPAMAlteraHealthModernizationTransformation , crm-187399cbfbe942 ,

EPAMPrometheusAI , and EPAMPfizerPresales ) contained zero source code files for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that the aforementioned document libraries did not contain source code files for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**REQUEST FOR ADMISSION NO. 36:**

Admit that EPAM's Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) includes log entries recording Dr. Rao downloading his own personnel records archive ( RG Personnel Records.zip ) from the OneDrive folder of EPAM Human Resources Director Jen Loftis ( .../personal/jen_loftis_epam_com/.../Personal records requests/Gowtham, Rao/ ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted.

**REQUEST FOR ADMISSION NO. 37:**

Admit that the FileDownloaded entries in EPAM Search Terms - Rao SP Download322329263.1.xlsx include entries recording Dr. Rao accessing work files shared directly by EPAM colleagues in official Microsoft Teams chat threads (including files shared by Santanu Sen, Sudeep Ghate, and Bilal Salim).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that the files include without limitation entries recording Dr. Rao accessing work files shared directly by EPAM colleagues in official Microsoft Teams chat threads (including files shared by Santanu Sen, Sudeep Ghate, and Bilal Salim).

**REQUEST FOR ADMISSION NO. 38:**

Admit that none of the web browser or Microsoft Teams download entries in EPAM Search Terms - Rao SP Download322329263.1.xlsx contain source code files or Git repository archives for the ETL Conversion Kit, AI Cohort Generator, or AI Accelerator.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted.

**REQUEST FOR ADMISSION NO. 39:**

Admit that EPAM has not produced in this litigation any server-side audit log, clone log, pull log, or export record from its internal version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) downloaded or cloned source code for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' between September 1, 2025 and October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits insofar as the request seeks EPAM's production to date; notably, EPAM's deadline to respond to Defendant's document requests has not yet run.

**REQUEST FOR ADMISSION NO. 40:**

Admit that EPAM possesses no server-side Bitbucket, Git, or version control log showing that any corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) cloned or downloaded any source code repository or repositories for the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' during his employment in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the request; EPAM audit logs from GitLab system confirm that Defendant opened and downloaded the repository copy together with many other repositories.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Microsoft 365 download audit export ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) constitutes the sole server-side document download telemetry EPAM has produced in this litigation to support its allegations of unauthorized data acquisition against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits insofar as the request seeks EPAM’s production to date; notably, EPAM’s deadline to respond to Defendant’s document requests has not yet run.

**REQUEST FOR ADMISSION NO. 42:**

Admit that if EPAM’s internal Bitbucket or Git source code repository or repositories did not maintain server-side clone and access logs for the 'ETL Conversion Kit,' 'AI Cohort Generator,' and 'AI Accelerator' in 2025, EPAM lacked technical security controls to track or identify which corporate users downloaded or cloned that source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, denied.

**REQUEST FOR ADMISSION NO. 43:**

Admit that no corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) was provisioned read, write, or clone permissions in EPAM's version control systems (including Atlassian Bitbucket, GitLab, or GitHub Enterprise) to any internal source code repository or repositories housing code of the 'ETL Conversion Kit' in 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request. Defendant had group access to a number of GitLab repositories as part of RWE team group access, including ETL Conversion Kit. EPAM audit logs from GitLab system confirm that Defendant opened and downloaded the repository copy as archive on October 11, 2025 together with many other repositories.

**REQUEST FOR ADMISSION NO. 44:**

Admit that the data transformation logic utilized in the 'ETL Conversion Kit' was derived in whole or in part from publicly available OHDSI open-source tools, SQL scripts, and OMOP standard vocabularies.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a small portion of the logic of its ETL Conversion Kit is re-used from open source materials. EPAM otherwise denies the Request, as the remainder of the ETL logic was developed for EPAM.

**REQUEST FOR ADMISSION NO. 45:**

Admit that during 2024 and 2025, EPAM employees routinely utilized personal email accounts (including Gmail) and external cloud collaboration tools (including Google Docs and Google Sheets) to draft, collaborate on, and share EPAM work product.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of “routinely”).

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 46:**

Admit that on September 24, 2025 at 3:44 PM EDT, EPAM employee Konstantin Iaroshovets ( konstantin_iaroshovets@epam.com ) transmitted an electronic invitation granting edit permissions for the Google document titled 'MedRAG - AWS Estimates' directly to Dr. Rao's personal Google account ( gowthamrao@gmail.com ) and simultaneously copied the personal Google account of EPAM employee Santanu Sen ( santanu.sens@gmail.com ), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 1).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 47:**

Admit that on July 2, 2025 at 2:03 PM EDT, EPAM employee Naaz Fatima Butt ( naazfatima_butt@epam.com ) transmitted an electronic invitation granting edit permissions for the Google spreadsheet titled 'GCP Foundry CIO Hub Campaign' directly to Dr. Rao's personal Google account ( gowthamrao@gmail.com ), as reflected in Exhibit J to Defendant's Verified Counterclaims (ECF No. 33-10 at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 48:**

Admit that EPAM has never issued a written warning, formal reprimand, Performance Improvement Plan, suspension, termination notice, or legal claim against Konstantin Iaroshovets, Santanu Sen, or Naaz Fatima Butt for transmitting, sharing, or receiving EPAM business documents on personal Google or Gmail accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 49:**

Admit that in 2025, Dr. Rao developed the written deliverables for the Takeda Pharmaceutical Generative AI proof-of-concept (POC)—focusing on launch strategy simulation for Takeda's orexin franchise—externally using Google Docs on his personal Google account with the express knowledge and authorization of Takeda client representative Saurin Jani, as set forth in Defendant's Verified Counterclaims (ECF No. 33 ¶ 338 at p. 63).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 50:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account ( gowtham_rao@epam.com ) to Takeda client representative Saurin Jani confirming that project prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM has not completed ESI for this matter, but if this document exists and is discovered it will be produced. Except as so stated, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 51:**

Admit that in September and October 2025, EPAM did not implement technical Data Loss Prevention (DLP) blocks, gateway filtering rules, or administrative access controls preventing corporate users from transmitting email attachments or sharing Google Workspace documents with external personal '@gmail.com' addresses.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that in September and October 2025 EPAM did not have in place technical controls that would disable EPAM credentialed users from transmitting email attachments or sharing Google Workspace documents with external personal @gmail addresses, but that EPAM’s Employee Covenants Agreement and policies do restrict the sharing of certain types of information to external email addresses.

**REQUEST FOR ADMISSION NO. 52:**

Admit that in September and October 2025, EPAM maintained no technical mechanism or administrative procedure to recall, remotely wipe, or audit business documents once shared by corporate personnel to external personal '@gmail.com' accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that in September and October EPAM maintained no technical mechanism to recall or remotely wipe business documents once shared by corporate personnel to external personal "gmail.com" accounts. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 53:**

Admit that during Dr. Rao's employment in 2024 and 2025, EPAM formally reviewed, approved, and reimbursed expense reports submitted by Dr. Rao for commercial Generative AI subscriptions (including OpenAI ChatGPT and Google Gemini) registered to a personal email account controlled by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that EPAM approved expenses associated with commercial AI subscriptions. EPAM otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 54:**

Admit that for several consecutive months during Dr. Rao's employment, EPAM Vice President Gregory Klebanov reviewed and approved corporate expense reports reimbursing Dr. Rao for commercial Generative AI subscriptions registered to a personal email account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that EPAM approved expenses associated with commercial AI subscriptions. EPAM otherwise denies the Request.

**REQUEST FOR ADMISSION NO. 55:**

Admit that on June 17, 2026 at 3:08 PM EDT, EPAM Associate General Counsel Sarah Lugar utilized a personal non-EPAM Google account ( sarahjlugar@gmail.com ) to transmit an electronic access request directly to Dr. Rao’s personal Google account ( gowthamrao@gmail.com ) attempting to open and access a cloud-hosted document entitled '[DELETE] AI-Driven Pharmaceutical Strategy Generation'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that Sarah Lugar attempted to open a file that she was unaware was housed on Dr. Rao's personal Google account and that in doing so Ms. Lugar's request defaulted to being sent from a personal email, which was not purposeful, nor was realized by Ms. Lugar at the time.

**REQUEST FOR ADMISSION NO. 56:**

Admit that on December 10, 2024, EPAM Vice President Gregory Klebanov and Dr. Rao collaboratively formulated plans to integrate Large Language Models (LLMs) and prompt engineering into analytics workflows for automated case adjudication and feasibility assessments.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, the request is neither admitted or denied as Mr. Klebanov does not have a specific memory of this conversation.

**REQUEST FOR ADMISSION NO. 57:**

Admit that when Dr. Rao requested dedicated server infrastructure in December 2024 to deploy vector databases and Atlas instances, EPAM Vice President Gregory Klebanov declined to provision dedicated server instances citing cost and redundancy.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, the request is neither admitted or denied as Mr. Klebanov does not have a specific memory of this conversation.

**REQUEST FOR ADMISSION NO. 58:**

Admit that software codebases, schemas, and analytical tools published under ANY repository within the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization ( github.com/OHDSI , including ATLAS, ACHILLES, WebAPI, CommonDataModel, and DatabaseConnector) are distributed under open-source software licenses (including Apache License 2.0 and MIT License).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Notwithstanding its objections, denied. Among other problems, the above statement is not always true. For instance, proprietary or other materials published maliciously and/or without the permission of the owner of such materials do not become open source merely by being illicitly published on an open source repository.

**REQUEST FOR ADMISSION NO. 59:**

Admit that the Observational Medical Outcomes Partnership ('OMOP') Common Data Model ('CDM') specifications (including relational database schemas, Data Definition Language scripts, and Standardized Vocabularies) are published and freely accessible to the public in open-access repositories (including github.com/OHDSI/CommonDataModel and athena.ohdsi.org ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 60:**

Admit that EPAM does not own registered copyrights, exclusive commercial licenses, or proprietary intellectual property rights in ANY software repository or codebase hosted under the Observational Health Data Sciences and Informatics ('OHDSI') public GitHub organization (

github.com/OHDSI , including but not limited to Atlas , Achilles , WebAPI , CommonDataModel , DatabaseConnector , and the HADES package ecosystem).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 61:**

Admit that prior to and throughout his employment with EPAM, Dr. Rao served as an active leader of Observational Health Data Sciences and Informatics ('OHDSI') working groups, including the OHDSI Phenotype Development and Evaluation Working Group and the Health Economics and Value Working Group.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (i.e., requiring the meaning of “active leader”).

EPAM admits that prior to and during employment Dr. Rao was involved in OHDSI working groups. Except as so stated, based on its objections, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 62:**

Admit that prior to November 12, 2024, Dr. Rao had authored, published, and publicly released healthcare data analytics methodologies, software packages, and peer-reviewed scientific studies indexed in PubMed and public GitHub repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public record referenced speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation.

On these bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 63:**

Admit that EPAM recruited and hired Dr. Rao as Managing Principal with an annual base salary of $250,000 to head its Real-World Evidence data science unit based upon his verified professional credentials as a licensed physician (MD), epidemiologist (PhD), and health data science leader.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that Dr. Rao's annual base salary was $250,000, as a Managing Principal, to EPAM's Real-World Evidence data science unit. EPAM otherwise objects and refuses to admit or deny the Request.

**REQUEST FOR ADMISSION NO. 64:**

Admit that EPAM's 'ETL Conversion Kit' utilizes publicly available OHDSI SQL transformation scripts to map healthcare source data into the OMOP Common Data Model.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, denied. Some publicly available logic and scripts may be used but in general the ETL Conversion Kit was developed internally and does not use publicly published OHDSI SQL transformation scripts.

**REQUEST FOR ADMISSION NO. 65:**

Admit that the data mapping specifications and transformation rules used to convert commercial healthcare databases into the OMOP Common Data Model are published in publicly accessible open-source repositories (including OHDSI/ETL-LambdaBuilder and the Athena vocabulary repository).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public record referenced speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it

would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation. On that basis EPAM objects to the Request, declines to admit or deny, and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 66:**

Admit that EPAM publicly markets its OMOP ETL conversion capabilities on its public website and conducts client training workshops (including for Pfizer, C-Path, and Gilead) describing the functional workflow of profiling source data, mapping vocabularies, and transforming data into the OMOP Common Data Model.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 67:**

Admit that during Dr. Rao's employment at EPAM, Johnson & Johnson maintained and publicly published its own open-source OMOP ETL transformation codebase ('ETL- Lambda') on GitHub without requiring commercial licensing from EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 68:**

Admit that within EPAM and Odysseus Data Services, the OMOP ETL engineering team was managed separately from the Real-World Evidence data science unit headed by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn

Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 69:**

Admit that the neutral forensic examiner Intelligent Discovery Solutions (iDS) identified zero files containing proprietary source code of EPAM's 'ETL Conversion Kit' on Dr. Rao's personal workstation (designated by iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, denied as stated. Answering further, iDS was not asked to identify whether any files “containing proprietary source code of EPAM's 'ETL Conversion Kit'” was located on “Dr. Rao's personal workstation”; therefore, the statement that it “identified zero files” is inaccurate as iDS did not engage in any analysis, one way or another, to identify such files.

**REQUEST FOR ADMISSION NO. 70:**

Admit that despite having direct electronic access to the actual file contents of over 80,000 files extracted by neutral examiner iDS from Device A0001 (Make: MSI, S/N: MSB0Y2O7S0104130) and hosted on the neutral Relativity platform, EPAM has not identified

to Dr. Rao any specific file from that collection containing proprietary source code of EPAM's 'ETL Conversion Kit'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Notwithstanding those objections, denied. EPAM does not have direct electronic access to the actual file contents of over 80,000 files extracted by neutral examiner iDS from Device A0001.

**REQUEST FOR ADMISSION NO. 71:**

Admit that on May 8, 2025, Dr. Rao, using his OHDSI committer identity ( Gowtham Rao <rao@ohdsi.org> ), independently authored, packaged, and published the initial root commit (Commit SHA: dc37706 , Message: 'Initial root commit on main'), official Release v0.1.0 (Tag SHA: 9f157ed ), and subsequent version releases through Release v0.1.8 (Commit SHA: dd25c51 ) of the open-source Python software repository 'LlmPromptBuilders' on public GitHub under the OHDSI organization ( github.com/OHDSI/LlmPromptBuilders ) under an Apache 2.0 license.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. Further, EPAM is unaware of Dr. Rao’s conduct in this

regard and unable to therefore admit or deny this conduct. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 72:**

Admit that Section 1(b) of the Employment Covenants Agreement signed by Dr. Rao (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly states: 'For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, admitted this text is accurately quoted.

**REQUEST FOR ADMISSION NO. 73:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) contains no term, condition, or requirement obligating an employee to obtain advance written permission, authorization, or approval from EPAM to develop or publish software for scientific, professional, or community groups without reliance on EPAM Group Confidential Information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a portion of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context, and because the question is confusing as stated. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm

whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

**REQUEST FOR ADMISSION NO. 74:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), EPAM and Odysseus leadership (including Gregory Klebanov) knew that Dr. Rao was an active open-source software contributor to the Observational Health Data Sciences and Informatics (OHDSI) community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the vague undefined term of "EPAM and Odysseus leadership" and the subjective undefined term of "active." Notwithstanding its objections, Greg Klebanov was aware prior to November 12, 2024, that Dr. Rao was engaged in the OHDSI community and made open source contributions. Except as so stated, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 75:**

Admit that software developed by Dr. Rao for the OHDSI scientific community without reliance on EPAM Group Confidential Information is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. Oppenheimer Fund, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. See Penn Eng'g, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); Martin Marietta Materials, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. See Solomon, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an alleged document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of

Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced alleged document.

Notwithstanding the foregoing objections, EPAM denies the Request. The above statement is not always accurate. By way of example, the Ownership of Work Product provision in the above mentioned Agreement states that any “trade secret, work product and original work of authorship” made in connection with or in the course of Rao’s employment with EPAM is the exclusive property of EPAM.

**REQUEST FOR ADMISSION NO. 76:**

Admit that the public open-source Python software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is excluded from the definition of 'Confidential Information' pursuant to Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the repository and document itself for full and accurate contents of each.

**REQUEST FOR ADMISSION NO. 77:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero lines of source code copied, extracted, or derived from any private, internal EPAM proprietary software repository.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 78:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains zero confidential client data, patient-level clinical records, or proprietary business strategy documents of any EPAM client (including Takeda Pharmaceutical).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to

investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 79:**

Admit that as of the date of these responses, EPAM has not identified any specific Python class, method, function, or line of code within the public repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) that constitutes an EPAM proprietary trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 80:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) relies exclusively on standard public Python libraries

and public Large Language Model APIs, without calling or depending upon any closed, internal EPAM proprietary API or microservice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 81:**

Admit that the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) is an open-source OHDSI library designed for the healthcare, life sciences, and pharmaceutical informatics domain to decouple prompt engineering from application code and manage agent personas.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn*

*Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 82:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was an advisory consulting demonstration conducted via public Gemini-based prompting and public research data, rather than a custom software development deliverable.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was an advisory consulting

demonstration that utilized proprietary prompting and considered public research data, and was run using Gemini and an internal Takeda LLM. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 83:**

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was developed prior to any assignment or involvement of Dmitrii Ilin or EPAM software developers.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Admit that the initial Generative AI multi-agent simulation proof-of-concept for Takeda Pharmaceutical's orexin franchise was developed prior to the assignment of Dmitrii Ilin specifically to the Takeda account. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 84:**

Admit that EPAM developers built no proprietary software application, backend microservice, or source code repository or repositories for the initial Takeda orexin proof-of-concept.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that the initial proof-of-concept did not ultimately run on a proprietary software application, but denied that no proprietary code was developed as part of the project. Further denied that no repositories existed related to the project, and the remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 85:**

Admit that the initial Takeda orexin launch planning simulation was powered exclusively by publicly available scientific data and consumer-grade public Large Language Model accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc., 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, admitted that the proof-of-concept was run using Gemini and an internal Takeda LLM. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 86:**

Admit that Dr. Rao transmitted an electronic mail communication from his corporate email account ( gowtham_rao@epam.com ) to Takeda client representative Saurin Jani confirming that Generative AI prototyping for the Takeda orexin franchise engagement would be conducted using an open-source, open-science collaborative methodology with the scientific community.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request

accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM'S ESI is ongoing. This email will be produced if it is discovered.

**REQUEST FOR ADMISSION NO. 87:**

Admit that the public open-source software repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) contains generic Python classes for prompt formatting and persona management, and contains zero confidential clinical data or business strategy documents of Takeda Pharmaceutical.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 88:**

Admit that under the governing Master Services Agreement between EPAM and Takeda Pharmaceutical (MSA CW2719230), all client deliverables, strategy reports, and work product developed for Takeda Pharmaceutical (including, but not limited to, developments for Takeda's orexin franchise) are owned exclusively by Takeda Pharmaceutical.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding the foregoing objections, EPAM denies the Request.

**REQUEST FOR ADMISSION NO. 89:**

Admit that Dr. Rao published the genesis root commit (Commit SHA dc37706) of the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) on May 8, 2025, prior to EPAM and Odysseus developing or documenting the internal software architecture variously known within EPAM as 'Synapse,' 'EPAM Synapse,' or 'Takeda- Synapse'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**REQUEST FOR ADMISSION NO. 90:**

Admit that the final commit to the public GitHub repository 'LlmPromptBuilders' (github.com/OHDSI/LlmPromptBuilders) was executed on July 4, 2025 (Release v0.3.0, Commit SHA ce6f6a7), and that zero commits, code modifications, or repository updates were made during September, October, or November 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 91:**

Admit that while Section 5(c)(1) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 5) contains an express requirement for 'first securing the written consent of your Employer,' Section 1(b) of the Agreement contains no requirement for securing employer written consent, permission, or authorization to develop software for scientific or community groups.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM denies the above request and refers Defendant to the Ownership of Work Product provisions in the above mentioned Agreement.

**REQUEST FOR ADMISSION NO. 92:**

Admit that during 2024 and 2025, EPAM engineering teams (including data science personnel assigned to Dr. Rao's team) integrated and utilized open-source Python packages developed for the OHDSI community (including kala , cohortalgebra , py_document_chunker , py_codelist_comparator , py_name_entity_recognition , pyscientificpdfparser , and pyRegularExpression ) to perform commercial client work for Amgen involving PubMed literature search and codelist extraction.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 93:**

Admit that EPAM developers utilized the public open-source Python packages 'kala' ( github.com/OHDSI/kala ) and 'cohortalgebra' ( github.com/ohdsi/cohortalgebra ) to execute OMOP data processing, cohort manipulation, and analytical pipelines for EPAM client deliverables.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 94:**

Admit that in or before May 2025, EPAM and Odysseus leadership (specifically including Vice President Gregory Klebanov) had actual knowledge that Dr. Rao authored and maintained public open-source repositories under the OHDSI organization on GitHub.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the vague and undefined term “EPAM and Odysseus leadership.” Notwithstanding its objections, admitted that Gregory Klebanov had knowledge that Dr. Rao authored public open-source repositories under the OHDSI organization on GitHub prior to his EPAM employment. Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 95:**

Admit that the Python packages 'kala' ( github.com/OHDSI/kala ), 'PhenotypeLibrary' ( github.com/OHDSI/PhenotypeLibrary ), 'py_document_chunker' ( github.com/OHDSI/py_document_chunker ), 'py_codelist_comparator' ( github.com/OHDSI/py_codelist_comparator ), 'py_name_entity_recognition' ( github.com/OHDSI/py_name_entity_recognition ), 'pyscientificpdfparser' ( github.com/OHDSI/pyscientificpdfparser ), 'pyRegularExpression' ( github.com/OHDSI/pyRegularExpression ), and 'cohortalgebra' ( github.com/ohdsi/cohortalgebra ) are publicly accessible on GitHub under the OHDSI organization and published under open-source software licenses.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 96:**

Admit that EPAM internal architecture specifications (including Plaintiff's Exhibits filed at ECF No. 58-9 and ECF No. 58-10) classify 'OHDSI/LlmPromptBuilders' and OHDSI community tools as external third-party open-source dependencies rather than proprietary EPAM source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the contents of documents, which are written instruments that speaks for themselves and are the best evidence of their own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged documents out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced documents, or what documents are supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or

deny, and refers Defendant to the alleged documents themselves for their full and accurate contents.

**REQUEST FOR ADMISSION NO. 97:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential Information' both information known to an employee prior to employment with the EPAM Group and information generally available and known by the public.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, admitted that confidential information does not include information known to the employee prior to the start of employment. Dr. Rao has paraphrased and inaccurately represented the remainder of the text in that section. Accordingly, except as so stated, denied.

**REQUEST FOR ADMISSION NO. 98:**

Admit that Section 1(b) of the Employment Covenants Agreement (Amended Complaint, ECF No. 30-1, Exhibit A at p. 2) explicitly excludes from the definition of 'Confidential Information' general industry knowledge and skills developed or acquired without reliance on EPAM Group Confidential Information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, denied that Dr. Rao's paraphrasing contains the full text of the topic referred to, which contains additional qualifiers for the exclusion to Confidential Information. EPAM refers Dr. Rao to the full text of the document, and the Request is denied as it is inconsistent with the document's full text.

**REQUEST FOR ADMISSION NO. 99:**

Admit that Dr. Rao maintained archives of published OHDSI codebases, peer-reviewed scientific literature, and standardized healthcare data models in his lawful personal possession prior to the commencement of his employment with EPAM on November 12, 2024.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM lacks knowledge or information sufficient to admit or deny the above request. EPAM does not have personal knowledge about what Defendant kept in "his lawful personal possession prior to the commencement of his employment with EPAM," nor does EPAM have the means to travel backwards in time and conduct a forensic inspection of Defendant's electronic devices or other property to determine what was in Defendant's "lawful personal possession."

**REQUEST FOR ADMISSION NO. 100:**

Admit that between 2017 and November 2024, Odysseus Lead and Vice President Gregory Klebanov communicated continuously with Dr. Rao via Skype regarding observational health data analytics, OMOP conversion frameworks, Hadoop clusters, and OHDSI open-source tools.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-

*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "routinely")

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (i.e., requiring the meaning of "continuously")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 101:**

Admit that prior to Dr. Rao executing the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A), Odysseus Lead and Vice President Gregory Klebanov informed Dr. Rao that EPAM's restrictive covenants would not restrict Dr. Rao's independent scientific research, academic publications, or open-source health informatics contributions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Admitted that Dr. Rao was told in general terms that his contributions to industry groups is valued and that EPAM would not seek to restrict those contributions, provided the activities otherwise comply with the Employment Covenants Agreement and EPAM policies, including its Code of Conduct.  Except as so stated, denied.

**REQUEST FOR ADMISSION NO. 102:**

Admit that on December 4, 2024, Vice President Gregory Klebanov authorized Dr. Rao in writing to assign EPAM personnel (specifically including Lana Shubinsky) to work on the Observational Health Data Sciences and Informatics (OHDSI) phenotype workgroup.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, admitted that Gregory Klebanov approved some reasonable contribution to OHDSI for all Odysseus employees as a regular practice, and that Lana Shubinsky was approved to help with organizing an upcoming symposium, with intended time contribution of up to approximately ten hours per month. This task went beyond the duties originally discussed between Dr. Rao and Ms. Shubinsky, and Ms. Shubinsky ultimately requested to be removed from the task.

**REQUEST FOR ADMISSION NO. 103:**

Admit that Dr. Rao is a licensed physician (MD), an epidemiologist (PhD), and a board certified specialist by the American Board of Preventive Medicine and in Medical Informatics, who holds active, unencumbered medical licenses in Pennsylvania (License No. MD476722), New York, South Carolina, and Wisconsin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM objects to this Request because it seeks admission of matters of public record equally available to Defendant. The information referenced are matters of public record that speaks for themselves, are the best evidence of their own contents and date, and areas readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**REQUEST FOR ADMISSION NO. 104:**

Admit that prior to November 12, 2024, Dr. Rao acquired extensive domain expertise in healthcare insurance claims systems, clinical data architectures, and pharmaceutical epidemiology through his prior professional career at BlueCross BlueShield, the United States Department of Veterans Affairs, and Johnson & Johnson.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of "extensive")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 105:**

Admit that EPAM Systems, Inc. is an information technology consulting and software engineering services provider and is not a pharmaceutical manufacturer, healthcare provider, or health insurance company.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. Oppenheimer Fund, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. See Penn Eng'g, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); Martin Marietta Materials, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. See Solomon, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding those objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 106:**

Admit that general pharmaceutical industry concepts, healthcare payer claims processing mechanisms, and clinical trial design standards constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of “general”)

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 107:**

Admit that statistical methodologies, cohort definition logic, and data conversion principles for the OMOP Common Data Model constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, denied. While there are some principles and code that are public knowledge there are many that are not and which were developed internally.

**REQUEST FOR ADMISSION NO. 108:**

Admit that foundational artificial intelligence concepts, large language model (LLM) architectures, prompt engineering techniques, retrieval-augmented generation (RAG) workflows, vector database indexing, and multi-agent reasoning frameworks constitute 'general industry knowledge' within the meaning of Section 1(b) of the Employment Covenants Agreement (ECF No. 30-1, Ex. A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the above request. While certain of the

above concepts/materials may be "general industry knowledge," others would be proprietary.

**REQUEST FOR ADMISSION NO. 109:**

Admit that EPAM did not provide Dr. Rao with any proprietary mathematical algorithms, statistical models, or machine learning source code that were not derived from publicly published scientific literature or open-source software libraries.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, denied.

**REQUEST FOR ADMISSION NO. 110:**

Admit that EPAM executive management officially designated Dr. Rao as the Product Owner and Lead Architect for the internal healthcare technology initiative variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that Defendant had a leadership role as to the initiative known as Synapse and was designated as Product Owner.  EPAM otherwise denies

the Request insofar as it misstates the facts; for example, the Request improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

**REQUEST FOR ADMISSION NO. 111:**

Admit that Dr. Rao's authorized responsibilities as Synapse Product Owner included defining the technical roadmap, authoring architectural presentation decks, and leading commercial positioning for prospective life sciences enterprise clients.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

Notwithstanding its objections, EPAM admits that his responsibilities included leading commercial positioning; EPAM denies that Rao's responsibilities included being solely responsible for "defining" the technical roadmap or "authoring" architectural presentation decks, although his team had those responsibilities.

**REQUEST FOR ADMISSION NO. 112:**

Admit that EPAM provisioned Dr. Rao with authorized, enterprise-wide administrative and read/write access across corporate SharePoint repositories, Microsoft Teams channels, and OneDrive workspaces containing Synapse presentations, technical designs, and marketing collateral.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 113:**

Admit that Dr. Rao collaborated continuously and transparently with EPAM senior leadership —including Senior Vice President Sergey Yezhkov, Vice President Gregory Klebanov, Vice President Greg Killian, Jonathan Rioux, Dr. Anastasia Christianson, and Troy Rask—on the conceptual architecture, commercial strategy, and executive slide presentations for Synapse.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring the meaning of “continuously and transparently”).

Notwithstanding its objections, EPAM denies the Request. The evidentiary record reflects that Defendant was not “transparent[]” in his communications with EPAM leadership, particularly as to “commercial strategy,” but rather schemed to misappropriate Synapse for himself.

**REQUEST FOR ADMISSION NO. 114:**

Admit that slide presentations and architectural workflows regarding Synapse were distributed across EPAM's Life Sciences, Real-World Evidence, and Data Science business units

via email distribution lists and open Microsoft Teams channels without technical access restrictions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies this Request.

**REQUEST FOR ADMISSION NO. 115:**

Admit that EPAM presented technical workflows and architectural overviews of Synapse to prospective enterprise clients without requiring those clients to execute bespoke, project specific non-disclosure agreements or trade secret protection covenants beyond standard commercial terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn

Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring an opinion on what is "bespoke" as compared to "standard commercial terms")

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 116:**

Admit that prior to October 15, 2025, EPAM did not maintain a formal corporate trade secret register, inventory, or asset catalog identifying the 'ETL Conversion Kit,' 'AI Cohort Generator,' or 'AI Accelerator' as proprietary trade secrets.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the

volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 117:**

Admit that EPAM executives, including Chief Scientist Chris Waller and Vice President Gregory Klebanov, presented architectural workflows and capability demonstrations of Real-World Evidence and Synapse tools to prospective commercial clients (including AstraZeneca, Johnson & Johnson, and Roche) without requiring bespoke, project-specific non-disclosure agreements or trade secret markings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Engineering & Manufacturing Corp., 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this request because it does not seek admission of a purported fact, but rather asks EPAM to answer a subjective opinion-based question (*i.e.*, requiring an opinion on what is “bespoke” as compared to a non-“bespoke” agreement).

On those bases, EPAM objects and declines to admit or deny.

**REQUEST FOR ADMISSION NO. 118:**

Admit that at the 2025 OHDSI Global Symposium 'Mind Meets Machines' challenge, EPAM consultant Darya Zhukova publicly submitted and presented the technical architecture and concept reasoning reports for the Prometheus platform, and that this architectural presentation was recorded and published to the public internet on YouTube (URL: https://www.youtube.com/watch?v=7Ek3vF3Pu_E).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The presentation referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

Notwithstanding its objections, EPAM admits the Request.

**REQUEST FOR ADMISSION NO. 119:**

Admit that 'MedRAG' is a publicly available, open-source Medical Retrieval-Augmented Generation benchmarking toolkit hosted on public repositories including HuggingFace (huggingface.co/MedRAG) and GitHub.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it appears to seek admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such alleged public-record recitation.

Notwithstanding its objections, EPAM denies the Request; while other packages may be known as “MedReg,” EPAM’s MedRag is proprietary.

**REQUEST FOR ADMISSION NO. 120(a):**

Admit that on May 9 and May 22, 2025, Dr. Rao presented demonstrations to Sergey Yezhkov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 121: (*i.e.* PURPORTED REQUEST NO. 120(b))**

Admit that said demonstrations consisted of prompt engineering experiments conducted on the public consumer-grade Google Gemini web chat interface (utilizing zero backend API integrations, zero dedicated software developers, and zero proprietary EPAM source code).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 122: (*i.e.* PURPORTED REQUEST NO. 120(c))**

Admit that Dr. Rao presented said experiments for the purpose of seeking internal corporate R&D investment budget to build the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 123: (*i.e.* PURPORTED REQUEST NO. 120(d))**

Admit that Dr. Rao presented said demonstrations in scheduled meetings with EPAM senior leadership, and no EPAM supervisor directed Dr. Rao to cease said demonstrations or prompt engineering experiments.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 124: (*i.e.* PURPORTED REQUEST NO. 121(a))**

Admit that EPAM assigned internal non-billable corporate investment project codes (including, but not limited to, 'EPMC-SYNP') to fund and supplement client-billable project budgets (including, but not limited to, 'TKDA-DSFX' for Takeda Synapse development) under Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 125: (*i.e.* PURPORTED REQUEST NO. 121(b)):**

Admit that hours logged by personnel under internal 'EPMC' investment codes were funded by EPAM corporate overhead rather than client billings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 126: (*i.e.* PURPORTED REQUEST NO. 121(c))**

Admit that hours logged under said internal investment codes did not count toward the commercial revenue or margin targets of the Odysseus Data Services acquisition overseen by Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp.*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 127: (*i.e.* PURPORTED REQUEST NO. 121(d))**

Admit that EPAM's project-accounting systems accepted and recorded time entries logged by Dr. Rao and assigned technical personnel (including Dmitrii Ilin) against said corporate investment codes.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 128: (*i.e.* PURPORTED REQUEST NO. 122(a))**

Admit that during 2025, Dr. Rao collaborated with members of EPAM's Synapse commercialization team (including Sergey Yezhkov, Greg Killian, Chris Waller, Anastasia Christianson, Jonathan Rioux, and James Gatch).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 129: (*i.e.* PURPORTED REQUEST NO. 122(b))**

Admit that members of said commercialization team engaged in strategy meetings and internal EPAM Microsoft Teams chats evaluating commercial billing models and a 3-tier pricing framework (ranging from ≤$50,000 pilots to ≥$1,000,000 enterprise programs) for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, EPAM admits that it discussed various pricing models for Synapse; EPAM otherwise denies the Request to the extent it misstates the facts; for example, the Request improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 130: (*i.e.* PURPORTED REQUEST NO. 122(c))**

Admit that said commercialization team projected a $5,000,000 to $10,000,000 recurring annual revenue opportunity for EPAM Life Sciences resulting from the deployment and commercialization of said tool.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed. EPAM further objects because this Request presumes the admission of RFA 122(b), which is not an admitted Request.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 131: (*i.e.* PURPORTED REQUEST NO. 123(a))**

Admit that during Dr. Rao's employment, technical architectures, step-by-step brand launch workflows, pilot Statement of Work (SOW) templates, and knowledge graph blueprints for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') were created collaboratively for EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request except that it denies the Request insofar as the Request improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 132: (*i.e.* PURPORTED REQUEST NO. 123(b))**

Admit that Jonathan Rioux created architectural wire diagrams on enterprise collaborative diagramming platforms using conceptual prompts provided by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 133: (*i.e.* PURPORTED REQUEST NO. 123(c))**

Admit that EPAM maintained custody of said architectural wire diagrams on its corporate enterprise systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 134: (*i.e.* PURPORTED REQUEST NO. 123(d))**

Admit that from the forensic search hit reports generated by neutral examiner iDS across Dr. Rao's inspected devices, EPAM has identified zero files, records, or instances showing that Dr. Rao downloaded, synced, or retained copies of said architectural wire diagrams created by Jonathan Rioux onto any personal device.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects to the Request because Rao spoliated evidence, rendering it impossible to determine if Rao engaged in the kinds of conduct referenced in the above request.

EPAM further objects to the Request because discovery and document review is ongoing.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 135: (*i.e.* PURPORTED REQUEST NO. 124(a))**

Admit that in collaboration with Jim Gatch and Santanu Sen, and with the approval of Sergey Yezhkov, Dr. Rao led strategic funding initiatives for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') and MedRAG.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request except that it denies the Request insofar as the Request improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 136: (*i.e.* PURPORTED REQUEST NO. 124(b))**

Admit that said initiatives included pitching a $1,000,000 to $2,000,000 AWS compute sponsorship to Amazon Web Services.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a business relationship with Amazon Web Services was discussed. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 137: (*i.e.* PURPORTED REQUEST NO. 124(c))**

Admit that said initiatives included structuring a joint AWS-EPAM go-to-market proposal to Johnson & Johnson for a $250,000 engagement to retain Johnson & Johnson on AWS infrastructure.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that a business relationship with Amazon Web Services which involved a proposal to Johnson & Johnson was discussed. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 138: (*i.e.* PURPORTED REQUEST NO. 125(a))**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): have been published, discussed, and demonstrated across public technical workshops, client training sessions, academic symposia, and European regulatory training programs (including EHDEN Academy).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 139: (*i.e.* PURPORTED REQUEST NO. 125(b))**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): are available in public open-source repositories and toolchains (including OHDSI/ETL- LambdaBuilder,

OHDSI/WhiteRabbit, OHDSI/Usagi, OHDSI/DataQualityDashboard, and Johnson & Johnson's public ETL-Lambda repository).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 140: (*i.e.* PURPORTED REQUEST NO. 125(c))**

Admit that the concepts, data models, source-to-target mapping rules, transformation algorithms, and functional architectures for converting healthcare data into the OMOP Common Data Model (such as those embodied in OMOP ETL conversions): can be implemented in a functional, working OMOP ETL conversion solution using only publicly available open-source software tools and published informatics methodologies, without access to any EPAM source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 141: (*i.e.* PURPORTED REQUEST NO. 126(a))**

Admit that during October and November 2024, Gregory Klebanov engaged in recruitment communications (including Skype messaging and virtual meetings) with Dr. Rao to induce Dr. Rao to resign from Johnson & Johnson and execute the Employment Covenants Agreement (ECA).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM denies the Request; while Klebanov had communications with Defendant over Defendant's potential employment at EPAM; Klebanov did not need to "induce" Defendant to leave Johnson & Johnson. Defendant was informed on or before October 7, 2024 that his Johnson & Johnson employment would end.

**ACTUAL REQUEST FOR ADMISSION NO. 142: (*i.e.* PURPORTED REQUEST NO. 126(b))**

Admit that during said communications, Gregory Klebanov represented that Dr. Rao would lead an autonomous life sciences practice with full Profit and Loss (P&L) authority, dedicated engineering resources, and a multi-million-dollar growth mandate.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, admitted that Mr. Klebanov represented to Dr. Rao that he would lead a dedicated Data Science unit, with a team, and would have a multi-million dollar growth mandate. Except as so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 143: (*i.e.* PURPORTED REQUEST NO. 126(c))**

Admit that upon commencing employment, EPAM did not provide Dr. Rao with autonomous P&L authority or dedicated engineering headcount.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, admitted that Dr. Rao did not have "autonomous" P&L authority. Dr. Rao was intended to run and grow a dedicated sub-unit with a team of resources within the constraints of a larger P&L and BU. Further admitted that Dr. Rao inherited a data science team, but did not have "dedicated engineering headcount."

**ACTUAL REQUEST FOR ADMISSION NO. 144: (*i.e.* PURPORTED REQUEST NO. 127(a))**

Admit that on October 12, 2025, Dr. Rao committed an open-source license file to the internal GitLab repository 'takeda-synapse-infra' (Commit 3d8b15ac, ECF No. 3-6) with the commit message 'Was missing license'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, admitted that on October 12, 2025, Dr. Rao wrongfully committed, with an open-source license, a file to the internal GitLab repository “takeda-synapse-infa" with the commit message “Was missing license” while fully aware that open-source was not the correct or intended license. The action was later undone by EPAM before deployment to the client.  EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 145: (*i.e.* PURPORTED REQUEST NO. 127(b))**

Admit that the phrase 'Copyright 2025 Gowtham Rao' was inserted into the license header by GitLab's default template automatically populating the authenticated user's profile name.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Admitted that the text itself showing Dr. Rao’s name was auto populated based on Dr. Rao’s selection of license, but the license Dr. Rao selected was knowingly incorrect.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 146: (*i.e.* PURPORTED REQUEST NO. 127(c))</u>**

Admit that Plaintiff acknowledged in writing in its proposed amended pleading transmitted to Defendant that the attachment of said phrase 'may not have been intentional' but was nevertheless 'one of the reasons for Rao's termination' on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Admitted that the text itself showing Dr. Rao's name was auto populated based on Dr. Rao's selection of license, but the license Dr. Rao selected was knowingly incorrect. Further admitted that the conduct by Dr. Rao was one of the cumulative reasons for the termination decision.

**ACTUAL REQUEST FOR ADMISSION NO. 147: (*i.e.* PURPORTED REQUEST NO. 127(d))**

Admit that the text of the MIT-0 license committed in Exhibit A to the McDermott Declaration (ECF No. 3- 6) expressly grants permission 'to deal in the Software without restriction, including without limitation the rights to use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies of the Software.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, admitted that the quoted language accurately reflects the text of the MIT-0 license file contained in Exhibit A to the McDermott Declaration. EPAM denies that the MIT-0 license was the correct or applicable license for the software at issue. Dr. Rao wrongfully committed the file with an open-source license, and EPAM subsequently removed it before deployment to the client.

**ACTUAL REQUEST FOR ADMISSION NO. 148: (*i.e.* PURPORTED REQUEST NO. 128(a))**

Admit that in Paragraphs 1 and 33 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff defined 'EPAM Confidential Information and IP' as an aggregated category encompassing source code, RFP information, bid proposals, pricing information, client contracts, project data, P&L analysis, and employee compensation data.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, EPAM admits that the Request accurately reflects the referenced text.

**ACTUAL REQUEST FOR ADMISSION NO. 149: (*i.e.* PURPORTED REQUEST NO. 128(b))**

Admit that in Paragraph 74 of the First Amended Complaint, Plaintiff alleged that Dr. Rao downloaded approximately 44,960 documents and data files and designated the entirety of said files under the collective defined term 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Paragraph 74 of the First Amended Complaint alleges that Dr. Rao downloaded approximately 44,960 documents and data files. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 150: (*i.e.* PURPORTED REQUEST NO. 128(c))**

Admit that the First Amended Complaint contains no itemized schedule, file manifest, or paragraph specifying which individual files among the 44,960 downloaded files constitute statutory trade secrets under 18 U.S.C. § 1839(3) as distinguished from non-trade-secret confidential information.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that the Request accurately reflects the referenced portions of the document.

**ACTUAL REQUEST FOR ADMISSION NO. 151: (*i.e.* PURPORTED REQUEST NO. 129(a))**

Admit that in Paragraphs 24, 32, and 41 of Plaintiff’s First Amended Complaint (ECF No. 30), Plaintiff affirmatively pleaded that by virtue of his employment with EPAM, Dr. Rao was granted authorized access to EPAM’s files, software tools, P&L data, and client materials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Paragraphs 24, 32, and 41 of the First Amended Complaint allege that Dr. Rao was an EPAM executive with certain responsibilities and that EPAM employees with a business need could access the underlying code for certain EPAM tools and products. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 152: (*i.e.* PURPORTED REQUEST NO. 129(b))**

Admit that Section 1(d) of the Employment Covenants Agreement (ECF No. 30-1, Exhibit A at p. 3, quoted at ECF No. 30 ¶ 45) expressly provides that employees are permitted to access, use, and copy confidential information 'as required in the performance of your authorized employment duties.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, denied insofar as it is denied that this paraphrasing represents the full text and qualifiers on this topic.

**ACTUAL REQUEST FOR ADMISSION NO. 153: (*i.e.* PURPORTED REQUEST NO. 130(a))**

Admit that in Paragraphs 21, 22, and 23 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff describes the 'ETL Conversion Kit,' 'AI Cohort Generator,' and 'AI Accelerator' by their general operational functions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Paragraphs 21, 22, and 23 of the First Amended Complaint describe the operational functions of the ETL Conversion Kit, AI Cohort Generator, and AI Accelerator.

**ACTUAL REQUEST FOR ADMISSION NO. 154: (*i.e.* PURPORTED REQUEST NO. 130(b))**

Admit that the First Amended Complaint contains no factual allegation identifying any specific proprietary algorithm, mathematical formula, source code architecture, or data structure claimed as a trade secret within said tools.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

EPAM further objects on the grounds that phrases such as “specific algorithm, mathematical formula, source code architecture, or data structure” are incredibly vague and ambiguous (*e.g.*, is source code a form of “data structure”?). EPAM additionally objects on the grounds that the Second Amended Complaint has superseded the First Amended Complaint.

Based on its objections, EPAM objects to the Request in its entirety and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 155: (*i.e.* PURPORTED REQUEST NO. 130(c))**

Admit that Counts I and II of the First Amended Complaint assert trade secret misappropriation over the collective defined term 'EPAM Confidential Information and IP' without identifying any individual algorithm, formula, code module, or data structure as a distinct statutory trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

EPAM further objects on the grounds that phrases such as "specific algorithm, mathematical formula, source code architecture, or data structure" are incredibly vague and ambiguous (*e.g.*, is source code a form of "data structure"?). EPAM additionally objects on the grounds that the Second Amended Complaint has superseded the First Amended Complaint.

Based on its objections, EPAM objects to the Request in its entirety and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 156: (*i.e.* PURPORTED REQUEST NO. 131(a))**

Admit that Plaintiff included 'client contract documents' and 'client contracts' within its defined term 'EPAM Confidential Information and IP' (ECF No. 30 ¶¶ 1, 33), which documents were shared with thirdparty commercial clients upon execution.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that client contractual documents are included in EPAM Confidential Information and that these documents are shared with the party that also executes them. EPAM otherwise objects to the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 157: (*i.e.* PURPORTED REQUEST NO. 131(b))**

Admit that Plaintiff included 'employee compensation data' within said defined term (ECF No. 30 ¶ 33), which data constitutes internal personnel administrative records.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Paragraph 33 of the First Amended Complaint identifies employee compensation data as information that EPAM treats as confidential, proprietary, and/or trade-secret information. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 158: (*i.e.* PURPORTED REQUEST NO. 131(c))**

Admit that Plaintiff did not separate or distinguish said commercial contracts and personnel records from statutory trade secrets in Counts I and II of the First Amended Complaint.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Counts I and II of the First Amended Complaint do not separately distinguish client contracts and employee compensation data from the other information encompassed within the term "EPAM Confidential Information and IP."

**ACTUAL REQUEST FOR ADMISSION NO. 159: (*i.e.* PURPORTED REQUEST NO. 132(a))**

Admit that the First Amended Complaint (ECF No. 30) alleges no specific instance where Dr. Rao disclosed any EPAM document or data file to any third party following his October 15, 2025 termination.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, EPAM admits only that the First Amended Complaint does not identify a specific third party to whom Dr. Rao disclosed an EPAM document or data file following his termination. EPAM denies the Request to the extent it suggests that Dr. Rao

made no such disclosure. EPAM's Second Amended Complaint, filed September 28, 2026, alleges that Dr. Rao disclosed EPAM Confidential Information and IP to CoReason.

**ACTUAL REQUEST FOR ADMISSION NO. 160: (*i.e.* PURPORTED REQUEST NO. 132(b))**

Admit that the First Amended Complaint alleges no specific instance where Dr. Rao incorporated, deployed, or commercialized any EPAM trade secret into any product, service, or commercial deliverable.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, EPAM admits only that the First Amended Complaint does not identify a specific instance of the conduct described in the Request. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 161: (*i.e.* PURPORTED REQUEST NO. 133(a))**

Admit that in Paragraphs 2, 4, 35, 76, and 77 of Plaintiff's First Amended Complaint (ECF No. 30), Plaintiff affirmatively pleaded that software code, clinical project data, and deliverables at issue were developed for commercial clients.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that the First Amended Complaint alleges that certain software code was customized or built for EPAM clients. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 162: (*i.e.* PURPORTED REQUEST NO. 133(b))**

Admit that the First Amended Complaint does not differentiate between property allegedly owned by EPAM and property owned by said commercial clients within its trade secret claims in Counts I and II.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 163: (*i.e.* PURPORTED REQUEST NO. 133(c))**

Admit that the First Amended Complaint does not plead the terms of any client agreement assigning title, granting an exclusive license, or conferring legal authority to EPAM to assert statutory trade secret claims over client-owned property.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits only that the First Amended Complaint does not plead the terms of any client agreement assigning title or granting an exclusive license to EPAM. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 164: (*i.e.* PURPORTED REQUEST NO. 133(d))**

Admit that the First Amended Complaint alleges zero facts regarding reasonable measures taken by EPAM's commercial clients to maintain the secrecy of client-owned materials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits only that the First Amended Complaint does not identify specific measures taken independently by EPAM’s clients to protect client-owned materials. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 165: (*i.e.* PURPORTED REQUEST NO. 134(a))**

Admit that in Paragraphs 126, 132, 139, and 146 of the First Amended Complaint (ECF No. 30), Plaintiff realleged and incorporated by reference the identical factual allegations that support its trade secret claims in Counts I and II.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Paragraphs 126, 132, 139, and 146 of the First Amended Complaint incorporate the preceding allegations by reference.

**ACTUAL REQUEST FOR ADMISSION NO. 166: (*i.e.* PURPORTED REQUEST NO. 134(b))**

Admit that in each of Counts IV (Breach of Fiduciary Duty), Count V (Replevin), Count VI (Conversion), and Count VII (Unjust Enrichment), Plaintiff identified the property allegedly taken, retained, or converted as 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Counts IV, V, VI, and VII of the First Amended Complaint identify "EPAM Confidential Information and IP" as property allegedly misappropriated, retained, converted, or obtained by Dr. Rao.

**ACTUAL REQUEST FOR ADMISSION NO. 167: (*i.e.* PURPORTED REQUEST NO. 134(c))**

Admit that the First Amended Complaint alleges no taking, detention, or conversion of any physical property or non-confidential asset separate from the digital files and data encompassed within the defined term 'EPAM Confidential Information and IP'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits only that the First Amended Complaint does not allege the taking, detention, or conversion of physical property or non-confidential assets separate from the digital files and data at issue.

**ACTUAL REQUEST FOR ADMISSION NO. 168: (*i.e.* PURPORTED REQUEST NO. 135(a))**

Admit that in Count III (Breach of Contract, Paragraphs 118–125) of the First Amended Complaint (ECF No. 30), Plaintiff does not identify by name any commercial client that terminated, reduced, or failed to renew a contract with EPAM as a result of Dr. Rao's alleged conduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits only that Count III of the First Amended Complaint does not identify by name a commercial client that terminated, reduced, or failed to renew a contract with EPAM as a result of Dr. Rao’s alleged conduct.

**ACTUAL REQUEST FOR ADMISSION NO. 169: (*i.e.* PURPORTED REQUEST NO. 135(b))**

Admit that in Count III, Plaintiff does not set forth any specific dollar amount of lost profits or historical revenue incurred by EPAM prior to the filing of the complaint.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 170: (*i.e.* PURPORTED REQUEST NO. 135(c))**

Admit that prior to initiating this action on November 4, 2025 (including in Plaintiff's October 31, 2025 cease-and-desist letter, ECF No. 3-13), Plaintiff sent no written communication to Dr. Rao identifying specific documents or data files by name or file path and demanding their return.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits only that, before initiating this action, it did not identify specific documents or data files by name or file path. EPAM denies the remainder of the Request because it demanded the return of all EPAM information in Dr. Rao's possession.

**ACTUAL REQUEST FOR ADMISSION NO. 171: (*i.e.* PURPORTED REQUEST NO. 136(a))**

Admit that neutral forensic examiner iDS reported to Plaintiff that on December 12, 2025, Defendant physically surrendered five (5) computing and storage devices (including Device A0001 [MSI Desktop Workstation, S/N: MSB0Y2O7S0104130], HP Laptop, two legacy laptops, and Samsung S23 mobile device) pursuant to the Court's Consent Order (ECF No. 20) and the Forensic Inspection Protocol (ECF No. 55).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that 1 desktop computer, 3 laptop computers, and 1 mobile device were made available to iDS for forensic imaging, refers to the iDS reports for a description of these devices, and denies the request to the extent it is inconsistent with those reports.

**ACTUAL REQUEST FOR ADMISSION NO. 172: (*i.e.* PURPORTED REQUEST NO. 136(b))**

Admit that iDS reported to Plaintiff that in or about mid-December 2025, iDS completed forensic bit-stream imaging of said devices and forensically sound collections of Defendant's email and cloud accounts (including Defendant's Microsoft OneDrive, personal and CoReason GitHub repositories, and CoReason email account gowtham.rao@coreason.ai ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits that iDS completed forensic imaging and, as far as EPAM knows, a forensically sound collection of the referenced devices and accounts. EPAM objects to this request to the extent that it implies that the above-referenced devices and accounts were all “of Defendant’s email and cloud accounts” as EPAM lacks personal knowledge of this.

**ACTUAL REQUEST FOR ADMISSION NO. 173: (*i.e.* PURPORTED REQUEST NO. 136(c))**

Admit that iDS reported to Plaintiff that Defendant provided all requested administrative credentials, volume passcodes, and multi-factor authentication tokens required to complete imaging.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced. For the above reasons, EPAM objects to the Request,

declines to admit or deny, and refers Defendant to the alleged document itself for its full and accurate contents.

EPAM further objects to this request because it depends upon discussions/interactions between Dr. Rao and iDS that EPAM does not have personal knowledge of.

Notwithstanding its objections, EPAM cannot admit or deny the request because it could not locate a specific communication in which iDS "reported" to it "that Defendant provided all requested administrative credentials, volume passcodes, and multi-factor authentication tokens required to complete imaging"; if EPAM subsequently locates such a communication it reserves the right to amend this answer.

**ACTUAL REQUEST FOR ADMISSION NO. 174: (*i.e.* PURPORTED REQUEST NO. 137(a))**

Admit that pursuant to Sections I(f) and II(a) of the Forensic Inspection Protocol (ECF No. 55), neutral examiner iDS was mandated to create a 'Forensic Image' (contractually defined in Protocol § I(f) as 'a full forensic bitstream image of a device') of Defendant's surrendered computing devices and forensically sound collections of associated email and cloud repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Section I(f) defines “Forensic Image” as “a full forensic bitstream image of a device,” and that Section II(a) requires Forensic Images of the Device Sources. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 175: (*i.e.* PURPORTED REQUEST NO. 137(b))**

Admit that Plaintiff has identified zero instances where any responsive file, document, or communication was deleted, purged, or destroyed following the transmission of Plaintiff's October 31, 2025 cease-and-desist letter.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM denies the Request. Defendant spoliated forensic data after receiving EPAM's October 31, 2025 cease-and-desist letter. Defendant further spoliated evidence by refreshing or resetting his device, thereby destroying forensic evidence that could have shown what documents were deleted and when. The data that was spoliated could be deemed files and communications, depending on one's definition of those terms. Further, Defendant's destruction of forensic evidence impaired EPAM's ability to identify the full extent of the responsive files, documents, and communications that were deleted, purged, or destroyed.

**ACTUAL REQUEST FOR ADMISSION NO. 176: (*i.e.* PURPORTED REQUEST NO. 138(a))**

Admit that on or about October 15, 2025, when Plaintiff decided to terminate Dr. Rao's employment and initiated steps leading to the filing of this lawsuit, Plaintiff reasonably anticipated litigation against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because to Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 177: (*i.e.* PURPORTED REQUEST NO. 138(b))</u>**

Admit that as a sophisticated corporate enterprise, Plaintiff’s legal duty to preserve all relevant electronically stored information (ESI)—including server-side GitLab clone and audit

logs, Entra ID telemetry, internal Teams and email communications regarding Dr. Rao's termination, and SharePoint administrative logs—attached on or about October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 178: (*i.e.* PURPORTED REQUEST NO. 139(a))**

Admit that Plaintiff's legal duty to preserve relevant ESI attached irrespective of whether Dr. Rao served a formal litigation hold notice or cease-and-desist letter on Plaintiff.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request because it seeks information protected by work product.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 179: (*i.e.* PURPORTED REQUEST NO. 139(b))**

Admit that in April 2026, Defendant formally proposed in writing that the parties instruct neutral examiner iDS to de-NIST the file listings against the National Software Reference

Library (NSRL) and exclude standard operating-system files, virtual environments, Git infrastructure files, and public open-source software libraries.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

Notwithstanding its objections, EPAM admits that Rao sent communications in April 2026 which asked that the parties instruct neutral examiner iDS to de-NIST the file listings, and which made claims about other files being open source. Except as stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 180: (*i.e.* PURPORTED REQUEST NO. 139(c))**

Admit that Plaintiff did not agree to de-NISTing or the algorithmic exclusion of public open-source software files from the review sets.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that EPAM did not agree to Plaintiff's demand at the time for iDS to perform additional work not set forth in the Forensic Protocol that would be billed to EPAM. Except as stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 181: (*i.e.* PURPORTED REQUEST NO. 139(d))**

Admit that Plaintiff designated keyword search strings in Exhibit A of the Forensic Protocol that included open-source packages ('uvicorn', 'beego', 'quarto', 'picard', 'Arachne', 'cyclops'), public OMOP database columns ('concept_id', 'cohort_definition_id', 'covariateid'), public medical vocabulary ('rxnorm'), clinical condition terms ('afib', 'Thrombosis', 'LUPUS'), and third-party entity names ('epic', 'cerner', 'j&j', 'Cloudera'), to evaluate file retention under the Forensic Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM admits that Exhibit A to the Forensic Protocol, "EPAM Search Terms - Content(322319662.1).xlsx", contained the following terms: uvicorn, beego, quarto, picard, Arachne, cyclops, concept_id, cohort_definition_id, covariateid, rxnorm, afib, Thrombosis, LUPUS, epic, cerner, j&j, Cloudera. EPAM objects to the remainder of the request, which, among other problems, effectively asks it to have knowledge regarding every open source file in existence, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 182: (*i.e.* PURPORTED REQUEST NO. 140(a))**

Admit that Plaintiff maintains custody and control over internal server-side Git clone logs, GitLab access audit trails, and Entra ID authentication telemetry associated with corporate user accounts or credentials assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 183: (*i.e.* PURPORTED REQUEST NO. 140(b))**

Admit that Plaintiff produced spreadsheets reflecting automated SharePoint download log rows in this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM admits that it produced a spreadsheet with that contained, among other information, certain automated SharePoint download log rows. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 184: (*i.e.* PURPORTED REQUEST NO. 140(c))**

Admit that as of the date of this Request, Plaintiff has produced no raw server-side Git clone logs, GitLab access audit trails, or repository cloning telemetry associated with Dr. Rao's corporate user accounts or credentials in this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, admitted that such documents have not been produced as of the date of these RFAs. ESI and document production is ongoing.

**ACTUAL REQUEST FOR ADMISSION NO. 185: (*i.e.* PURPORTED REQUEST NO. 141(a))**

Admit that Plaintiff provided unredacted copies of forensic search extractions and documents obtained under the Forensic Inspection Protocol (including exhibits filed as ECF Nos. 58-12 and 58-13) to Dmitrii Ilin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM additionally objects to the Request because it seeks information protected by the attorney-client privilege and the work product doctrine.

Notwithstanding its objections, admitted that Dmitrii Illin was given access to the two documents he referenced in his Declaration. EPAM objects to the remainder of the Request and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 186: (*i.e.* PURPORTED REQUEST NO. 141(b))**

Admit that Dmitrii Ilin is employed by Odysseus Data Services s.r.o. in Prague, Czech Republic, is an active commercial software developer, is not an attorney of record, and resides outside the territorial jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 187: (*i.e.* PURPORTED REQUEST NO. 141(c))**

Admit that Defendant communicated written objections to Plaintiff regarding non-attorney employees (including Dmitrii Ilin) receiving access to unredacted forensic extractions under the Forensic Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not understand what Defendant means by the phrase “unredacted forensic extractions.”

Notwithstanding its objections, EPAM admits that Defendant asserted frivolous, bad faith objections to non-attorneys receiving access to materials obtained through the forensic protocol, despite Defendant admitting that no attorney’s eyes only provision governed the materials, and despite the forensic protocol permitting EPAM to use the materials for litigation purposes. EPAM otherwise objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 188: (*i.e.* PURPORTED REQUEST NO. 141(d))**

Admit that the forensic search extractions provided to Dmitrii Ilin included personal records of Defendant and materials associated with the email account gowtham.rao@coreason.ai.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects to the Request because it seeks information protected by the attorney-client privilege and the work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 189: (*i.e.* PURPORTED REQUEST NO. 142(a))**

Admit that Miroslav Sklansky, who executed the declaration filed as ECF No. 3-4 in support of Plaintiff's ex parte motion for temporary restraining order, is an employee of Plaintiff, and neither the declaration nor Plaintiff's Rule 26 disclosures identify any professional digital forensic certification (such as EnCE, CFCE, CCE, GCFA, or GCFE) held by Miroslav Sklansky.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Admitted that Miroslav Sklansky is employed by EPAM and that neither the declaration by Mr, Sklansky nor EPAM's Rule 25 Disclosures identify any professional digital forensic certification.

**ACTUAL REQUEST FOR ADMISSION NO. 190: (*i.e.* PURPORTED REQUEST NO. 142(b))**

Admit that the 44,960 download figure asserted in the declaration of Miroslav Sklansky (ECF No. 3-4 ¶ 9) was calculated from automated SharePoint and OneDrive log rows.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 191: (*i.e.* PURPORTED REQUEST NO. 142(c))**

Admit that prior to executing the declaration on November 4, 2025 (ECF No. 3-4), Miroslav Sklansky did not examine the contents of the 44,960 files, cross-reference the file paths against public opensource software repositories, or determine that each individual file contained proprietary trade secrets of Plaintiff as opposed to third-party or open-source software.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 192: (*i.e.* PURPORTED REQUEST NO. 143(a))**

Admit that during the November 5, 2025 preliminary injunction hearing before Chief Judge Beetlestone, Plaintiff's counsel of record James S. Yu stated in the record: 'Did we actually open up every single document of the 44,000 files? No.' (ECF No. 43-3 at 8:17–18).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The hearing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Notwithstanding its objections, EPAM admits that the quoted text is accurate.

**ACTUAL REQUEST FOR ADMISSION NO. 193: (*i.e.* PURPORTED REQUEST NO. 143(b))**

Admit that Section III(b)(ii) of the Forensic Inspection Protocol (ECF No. 55) required Plaintiff, within five (5) business days of receiving Initial Reports from neutral examiner iDS, to provide a listing of records by unique identifier that Plaintiff reasonably believes contain Confidential Information and/or Work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Notwithstanding its objections, EPAM admits that Section 3(b)(ii) of the Forensic Protocol states “Within five (5) business days of receiving either the Initial Reports or Redacted Initial Reports, counsel for EPAM will provide counsel for Rao and Forensic Vendor a listing of the records contained in each report by unique identifier that it reasonably believes contain Confidential Information and/or Work.” EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 194: (*i.e.* PURPORTED REQUEST NO. 143(c))**

Admit that Plaintiff did not designate or promote approximately 79,000 files identified in said Initial Reports within said five-day period, and Plaintiff's counsel of record Jacob Oslick confirmed in writing that 'the 79,000 documents that were not promoted for review were, unsurprisingly, not reviewed' and that Plaintiff's promotion decisions were based on metadata 'and not review of the content of every single file' (ECF No. 54-6 at p. 3).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Notwithstanding its objections, EPAM admits that the quoted text is accurate, and further admits that it did not initially designate or seek to promote approximately 79,000 files, but denies the Request to the extent it suggests that EPAM was required to review or promote all approximately 79,000 files. EPAM also admits that it made promotion decisions based on the limited information (such as metadata) contained in the Initial Reports, not the full contents of the documents, but denies that it made its decisions based exclusively on metadata. Except as stated denied.

**ACTUAL REQUEST FOR ADMISSION NO. 195: (*i.e.* PURPORTED REQUEST NO. 143(d))**

Admit that with respect to the subset of 6,693 files Plaintiff promoted for review, Plaintiff's counsel of record Matthew Christoff stated in written correspondence dated July 20, 2026 that under the Forensic Protocol a document 'must be remediated' if it contains EPAM's Confidential Information and/or Work 'even if it does not contain a trade secret under the DTSA'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The correspondence referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. EPAM refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 196: (*i.e.* PURPORTED REQUEST NO. 143(e))**

Admit that as of the date of this Request, Plaintiff has not served or produced an individualized trade secret identification list specifying which specific files among either said 79,000 unpromoted files or said 6,693 promoted files constitute protectable trade secrets of Plaintiff.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Notwithstanding its objections, EPAM references and incorporates its response to purported Interrogatory No. 1 and admits that, except for this response, it has not produced a trade secret identification list, and denies the remaining portions of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 197: (*i.e.* PURPORTED REQUEST NO. 144(a))**

Admit that Exhibit B of the Forensic Protocol mandated targeted searches across Defendant's devices for over 100 specific source code filenames for Plaintiff's AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') and eight (8) specific Python packages and wheels for Plaintiff's 'ETL Kit' (including cdmkit and cdmkit-1.7.8-py2.py3-noneany.whl ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Based on its objections, EPAM objects to this request in its entirety and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 198: (*i.e.* PURPORTED REQUEST NO. 144(b))**

Admit that the neutral forensic scan conducted by neutral examiner iDS across Defendant's personally owned desktop workstation (designated by iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130) returned zero (0) hits for the targeted Cohort Generator source code and zero (0) hits for the targeted cdmkit Python wheels.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request

accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

EPAM additionally objects because Defendant spoliated evidence, thereby impacting what iDS could find.

EPAM further objects because the Request assumes disputed facts, that IDS ran searches for specific targeted items versus for hash values and key words or made any specific findings as to source code found or not found in its searches.

For the above reasons, EPAM objects to the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 199: (*i.e.* PURPORTED REQUEST NO. 144(c))**

Admit that the neutral forensic scan conducted by neutral examiner iDS across all ten (10) collected computing devices returned zero (0) matching source code files for Plaintiff's AI Cohort Generator, ETL Kit ( cdmkit ), or AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

EPAM additionally objects because Defendant spoliated evidence, thereby impacting what iDS could find.

EPAM further objects because the Request assumes disputed facts, that iDS collected and searched ten “computing devices” and furthermore that iDS ran searches for specific targeted

items versus for hash values and key words or made any specific findings as to source code found or not found in its searches.

Notwithstanding its objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 200: (*i.e.* PURPORTED REQUEST NO. 145(a))**

Admit that 'de-NISTing' (filtering candidate and collected file hashes against public reference databases such as the NIST National Software Reference Library (NSRL) pursuant to NIST SP 800-86 and the CIRCL HashLookup database) is an established digital forensic practice to exclude known benign operating system and public third-party software.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 201: (*i.e.* PURPORTED REQUEST NO. 145(b))**

Admit that the candidate hash list Plaintiff submitted as Exhibit C of the Forensic Protocol included cryptographic hashes representing empty or 0-byte files (including standard empty-file hashes MD5 d41d8cd98f00b204e9800998ecf8427e and SHA-256 e3b0c44298fc1c149afbf4c8996fb92427ae41e4649b934ca495991b7852b855 ) and generic Git repository templates (such as .git/info/exclude and applypatch-msg.sample ) on Defendant's personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 202: (*i.e.* PURPORTED REQUEST NO. 145(c))**

Admit that Plaintiff rejected Defendant's formal written demand in April 2026 to instruct neutral examiner iDS to perform automated de-NISTing, with the result that known benign operating-system files, empty-file hash collisions, and Git-template artifacts remained throughout Plaintiff's discovery review spreadsheet EPAMR-06448.A0001-III-a-i-KWResponsive.xlsx.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of an (unspecified) document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the alleged document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the allegedly referenced document, or what document is supposedly referenced.

Notwithstanding its objections, admitted that EPAM did not agree to Dr. Rao’s demand at the time for iDS to perform further work not set forth in the Forensic Protocol that would be billed to EPAM, which could be performed without use and cost of iDS. Except as stated, based on its objections, EPAM objects to the request and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 203: (*i.e.* PURPORTED REQUEST NO. 145(d))**

Admit that at least 755 of the cryptographic hashes Plaintiff designated for searching are verified in the public CIRCL HashLookup database as corresponding directly to publicly

available, benign opensource software files (including Ubuntu dependencies and Boost C++ libraries).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond to the Request outweigh any likely benefit and are disproportionate to the needs of the case.

Based on its objections, EPAM objects to the request in its entirety and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 204: (*i.e.* PURPORTED REQUEST NO. 146(a))**

Admit that in the global forensic review listings produced by neutral examiner iDS across all ten (10) collected computing devices pursuant to Section III(a) of the Forensic Protocol (ECF No. 55), the overwhelming majority of all entries flagged as matching Plaintiff's search criteria were identified by textual keyword strings or filenames (Protocol Exhibits A, B, and BC) rather than exact cryptographic file hashes (Protocol Exhibit C).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. EPAM refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 205: (*i.e.* PURPORTED REQUEST NO. 146(b))**

Admit that entries attributable to exact cryptographic file hashes from Protocol Exhibit C constituted only a small fraction of all matching entries globally across said collected devices, and included hash collisions mapping to empty files and standard Git repository templates (including .git/info/exclude and applypatch-msg.sample ).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. EPAM refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, EPAM responds that the phrase "small fraction" is a statement of opinion, not a factual allegation that can be admitted or denied. EPAM admits that a minority of the entries were attributable to exact cryptographic file hashes from Protocol Exhibit C. Except as stated denied.

**ACTUAL REQUEST FOR ADMISSION NO. 206: (*i.e.* ACTUAL REQUESTS NO. 146(c))**

Admit that the most frequent criteria matches reflected in said listings across Defendant's devices consisted of generic software licensing, graphical, and developer boilerplate terms — including 'LICENSE', '1.svg', 'Core', 'index', 'Threads', 'BUILD', and the standard Python package initializer ' __init__.py ' — each of which generated thousands of matching entries in said listings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely

quotes or characterizes the referenced document. EPAM refers Defendant to the document itself for its full and accurate contents.

Notwithstanding its objections, EPAM admits that the above-referenced terms returned thousands of hits. Except as stated, based on its objections, EPAM objects to the request and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 207: (*i.e.* PURPORTED REQUEST NO. 147(a))**

Admit that during recruitment discussions in October and November 2024, Gregory Klebanov represented to Dr. Rao that EPAM's Life Sciences Data Science practice had an existing baseline annual revenue of approximately $2,000,000, that Dr. Rao would manage a dedicated team of 8 to 10 data scientists upon joining EPAM, and that the acquired Odysseus Data Services business line possessed an operational enterprise data network generating stable commercial margins.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, admitted that Mr. Klebanov and Dr. Rao discussed that revenue projections could only be approximated based on consequences from the acquisition of Odysseus including a change in the fiscal year, change in account methods, and change in systems used. Mr. Klebanov does not recall a specific figure being identified during those discussions. Admitted that Mr. Klebanov did discuss with Dr. Rao that Dr. Rao would have a team supporting him, but Mr. Klebanov does not recall any specific number of team members being discussed. Denied that Mr. Klebanov made any representation as to an existing

operational enterprise data network generating stable commercial margins. To the contrary, Mr. Klebanov advised Dr. Rao that EPAM was hiring another individual to help build such a network. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 208: (*i.e.* PURPORTED REQUEST NO. 147(b))**

Admit that Gregory Klebanov made said financial, team, and infrastructure representations to induce Dr. Rao to accept EPAM's offer of employment and execute the Employment Covenants Agreement on November 12, 2024 (Amended Complaint, ECF No. 30-1, Exhibit A).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); Gannon, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Notwithstanding its objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 209: (*i.e.* PURPORTED REQUEST NO. 147(c))**

Admit that following Dr. Rao's commencement of employment on November 18, 2024, the actual baseline annual revenue of the practice, the dedicated billable data science staffing, and the funded Odysseus client pipeline were materially below the figures and resources Gregory Klebanov had described during recruitment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 210: (*i.e.* PURPORTED REQUEST NO. 147(d))**

Admit that EPAM's internal financial records reflect that the Life Sciences Data Science practice's actual annual revenue baseline at the time of Dr. Rao's recruitment was materially below the approximately $2,000,000 figure represented by Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Notwithstanding its objections, denied.

Dated: October 12, 2026

SEYFARTH SHAW LLP

By: *\/s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted pro hac vice)
jyu@seyfarth.com
Brooke K. Gary (admitted pro hac vice)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted pro hac vice)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October 2026, a copy of PLAINTIFF'S AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR ADMISSION was sent via electronic mail to:

GOWTHAM ADAMANE RAO
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

*/s/ Brooke K. Gary*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260 |

**EPAM SYSTEMS, INC.'S AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FOURTH AND FIFTH SETS OF REQUESTS FOR ADMISSION**

Plaintiff/Counterclaim-Defendant EPAM SYSTEMS, INC. ("EPAM"), by and through its attorneys, Seyfarth Shaw LLP, hereby submits its Amended Responses and Objections to Defendant/Counterclaim-Plaintiff GOWTHAM RAO's Fourth and Fifth Sets of Requests For Admission.

## RESERVATION OF RIGHTS

Any responses to Defendant's Requests for Admission will be subject to EPAM's right to object to the admission into evidence of any and all such responses on the grounds that they, or any of them, are not relevant to the issues in this action or are otherwise inadmissible. The responses and objections contained herein are based on EPAM's current knowledge, information and belief. These responses and objections are subject to amendment and supplementation as EPAM acquires additional information and completes its review and analysis of the facts and issues presented by the litigation.

## PRELIMINARY STATEMENT

1. The following responses are given without prejudice to EPAM's right to produce evidence of any subsequently discovered fact or facts. EPAM accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made and/or documents are discovered.

2. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of EPAM in relation to further discovery, research or analysis.

3. The Requests for Admission have been interpreted and answered in accordance with plain English usage. Many of the Requests, however, are vague and ambiguous. EPAM has done its best to interpret these requests as it understands them.

4. EPAM will not produce any information covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity.

## RESPONSES AND OBJECTIONS

**ACTUAL REQUEST FOR ADMISSION NO. 211: (*i.e.* PURPORTED REQUEST NO. 148(a))**

Admit that prior to September 23, 2025, EPAM or Odysseus Data Services, Inc. lost business of Roche, Genentech, or an affiliated Roche entity in connection with a dispute concerning deliverables or intellectual property developed for that client.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 212: (*i.e.* PURPORTED REQUEST NO. 148(b))**

Admit that in the internal chat filed by Dr. Rao as Exhibit B to his Answer and Counterclaims (ECF No. 33-2 at p. 2) and separately filed by EPAM (ECF No. 43-7), EPAM employee Katie Barista transmitted to Dr. Rao a written message relaying EPAM In-House Legal's advice that Odysseus 'should not demo this for anyone else unless the MSA has been amended' to provide for background intellectual property ownership 'or Takeda gives express permission to share it'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 213: (*i.e.* PURPORTED REQUEST NO. 148(c))**

Admit that the same relayed written legal advice stated, in substance, that EPAM 'lost all of Roche's business,' would not 'get it back for a generation,' and 'barely avoided lawsuit with Roche'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

**ACTUAL REQUEST FOR ADMISSION NO. 214: (*i.e.* PURPORTED REQUEST NO. 148(d))**

Admit that between September 23, 2025 and October 15, 2025, no EPAM officer, manager, or in-house counsel transmitted any written communication to Dr. Rao stating that the statements described in subparts (b) and (c) were inaccurate or incorrect.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. Objecting further, this Request seeks to "prove a negative" (*i.e.*, that "no EPAM officer, manager, or in-house counsel transmitted any written communication"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM officer, manager, or in-house counsel" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted that EPAM is unaware of any EPAM officer, manager, or in-house counsel that transmitted a written communication to Dr. Rao stating that the statements described in subparts (b) and (c) were inaccurate or incorrect,

and that to EPAM's knowledge, Dr. Rao did not share the statements described in subparts (b) and (c) with any EPAM officer, manager, or in-house counsel for them to respond to.

**ACTUAL REQUEST FOR ADMISSION NO. 215: (*i.e.* PURPORTED REQUEST NO. 149(a))**

Admit that the Microsoft Teams chat filed at ECF No. 43-7 is a true and correct copy of a September 23, 2025 written exchange between Dr. Rao and EPAM employee Katie Barista conducted on EPAM's corporate messaging systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 216: (*i.e.* PURPORTED REQUEST NO. 149(b))**

Admit that in that exchange, at approximately 3:59 PM, Dr. Rao transmitted a written message stating, in substance, that he needed to do a demo but could not demo 'what we built for takeda to another potential client'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, denied. Dr. Rao made no statement that, in substance, stated that he or EPAM “could not demo.” EPAM refers Dr. Rao to the referenced document for its full contents and context.

**ACTUAL REQUEST FOR ADMISSION NO. 217: (*i.e.* PURPORTED REQUEST NO. 149(c))**

Admit that in that exchange, Katie Barista transmitted written replies stating 'legal confirmed this yesterday' and identifying the subject of that confirmation as 'the roche/sanofi problem'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 218: (*i.e.* PURPORTED REQUEST NO. 149(d))**

Admit that no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao on or before October 15, 2025 disputing the statements described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity. EPAM will not disclose communications from counsel, or confirm the lack of such communications – the scope of what EPAM's counsel communicated with Dr. Rao about is privileged. Objecting further, this Request seeks to "prove a negative" (*i.e.*, that "no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM manager, executive, or in-house counsel" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted that no EPAM manager, executive, or in-house counsel transmitted any written response to Dr. Rao on or before October 15, 2025 disputing the statements described in subpart (b), and that to EPAM's knowledge, Dr. Rao did not share the purported text from subpart (b) with any EPAM manager, executive, or in-house counsel for them to respond to.

**ACTUAL REQUEST FOR ADMISSION NO. 219: (*i.e.* PURPORTED REQUEST NO. 150(a))**

Admit that in or around 2024, EPAM acquired Odysseus Data Services, Inc., and following the acquisition Gregory Klebanov served as a Vice President with profit-and-loss responsibility for the Odysseus / life sciences data science practice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 220: (*i.e.* PURPORTED REQUEST NO. 150(b))**

Admit that Gregory Klebanov's compensation or acquisition consideration included earn-out or performance linked targets tied to the post-acquisition financial performance of that practice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 221: (*i.e.* PURPORTED REQUEST NO. 150(c))**

Admit that during 2025, the revenue generated by that practice declined below its historical pre-acquisition levels and fell in the lower thresholds of the financial performance targets or benchmarks established for Gregory Klebanov's post-acquisition earn-out compensation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving its objections, EPAM admits that, during 2025, the revenue of the data science team within the RWE business unit of Odysseus was below the pre-acquisition level. Except as so stated, EPAM otherwise objects to the Request and declines to

admit or deny as the question is so ambiguous and confusing that EPAM cannot formulate a response.

**ACTUAL REQUEST FOR ADMISSION NO. 222: (*i.e.* PURPORTED REQUEST NO. 150(d))**

Admit that prior to EPAM's 2024 corporate acquisition of Odysseus Data Services, Inc., Gregory Klebanov and EPAM Founder, CEO, and Chairman Arkadiy Dobkin maintained a pre-existing direct or indirect relationship, acquaintance, or commercial connection.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Klebanov and Dobkin spoke on more than one occasion. Whether Klebanov and Dobkin maintained a "pre-existing direct or indirect relationship, acquaintance, or commercial connection" is a statement of opinion, not a factual contention that can be admitted or denied. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 223: (*i.e.* PURPORTED REQUEST NO. 150(e))**

Admit that during Dr. Rao's recruitment, Gregory Klebanov represented to Dr. Rao that his pre-existing relationship with Arkadiy Dobkin afforded him direct executive access and operational autonomy within EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa.

2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 224: (*i.e.* PURPORTED REQUEST NO. 151(a))**

Admit that during Dr. Rao's 2024 recruitment, EPAM personnel (including Gregory Klebanov or SVP Greg Killian) represented to Dr. Rao that he would receive full Profit and Loss (P&L) authority, a trajectory toward a Chief Medical Officer role, and a mandate to scale the life sciences unit from approximately $400 million toward $1 billion.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 225: (*i.e.* PURPORTED REQUEST NO. 151(b))**

Admit that during the same recruitment, EPAM personnel represented to Dr. Rao that EPAM possessed an operational, enterprise-grade 'distributed data network'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the undefined term “distributed data network” as the term is vague and unclear as to what Defendant is referring to.

EPAM further objects in that the term "EPAM personnel" is unreasonably broad. Subject to and without waiving its objections, denied that Gregory Klebanov made such representation to Dr. Rao. Except as so stated, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 226: (*i.e.* PURPORTED REQUEST NO. 151(c))**

Admit that as of November 12, 2024 — the date Dr. Rao executed the Employment Covenants Agreement — the 'distributed data network' described in subpart (b) was not deployed in production for any paying client.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to the undefined term "distributed data network" as the term is vague and unclear as to what Defendant is referring to. EPAM additionally objects insofar as Plaintiff has represented that he will withdraw his fraudulent inducement claims. Thus, this Request is irrelevant for that additional reason.

Subject to and without waiving its objections, and while denying the content of subpart (b)'s representations, EPAM admits that – to the best of its understanding regarding what Plaintiff means by the phrase "distributed data network," such a network was not deployed in production for any paying client as of November 12, 2024.

**ACTUAL REQUEST FOR ADMISSION NO. 227: (*i.e.* PURPORTED REQUEST NO. 151(d))**

Admit that prior to Dr. Rao's execution of the Employment Covenants Agreement, no EPAM representative disclosed to him in writing that Gregory Klebanov held acquisition-related earn-out targets tied to the financial performance of the unit Dr. Rao was being recruited to lead.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Objecting further, this Request seeks to "prove a negative" (i.e., that "no EPAM representative disclosed to him in writing that Gregory Klebanov held acquisition-related earn-out targets"). EPAM cannot prove a negative, as it cannot review every single written communication that any "EPAM representative" throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving its objections, admitted, as there would be no reason or obligation for such disclosures.

**ACTUAL REQUEST FOR ADMISSION NO. 228: (*i.e.* PURPORTED REQUEST NO. 152(a))**

Admit that EPAM executive leadership authorized and launched an internal marketing initiative designated the 'Star Magnet' program built around Dr. Rao's public scientific profile, with sponsorship that included Head of Marketing Jim Gatch, SVP Greg Killian, and Gregory Klebanov.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 229: (*i.e.* PURPORTED REQUEST NO. 152(b))**

Admit that as of September 17, 2025, Dr. Rao's records in EPAM's Telescope human-resources system contained no written reprimand, no disciplinary notice, and no documented performance deficiency, and included a March 31, 2025 '2.2 Meets' project rating and a February 10, 2025 assessment by Project Manager Raman Loseu rating Dr. Rao's impact as 'High'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that EPAM records include a March 31, 2025 '2.2 Meets' project rating and a February 10, 2025 assessment by Project Manager Raman Loseu rating Dr. Rao's impact as 'High', and that Telescope records do not reflect any specific reprimand or discipline notice. Except as so stated, denied. Additionally, any implication that performance records are restricted solely to those in Telescope, or that no records of performance deficiencies exist, is also denied.

**ACTUAL REQUEST FOR ADMISSION NO. 230: (*i.e.* PURPORTED REQUEST NO. 152(c))**

Admit that EPAM's corporate records (including Outlook calendar entries, Microsoft Teams meeting logs, adhoc call records, and chat communications) reflect recurring scheduled and ad-hoc meetings, calls, and written discussions between Dr. Rao and SVP Greg Killian or VP Troy Rask concerning Life Sciences and Real-World Data practice strategy during the period February 3, 2025 through August 11, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa.

2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that Dr. Rao, Greg Killian, and Troy Rask communicated during the period of February 2025 through August 2025. Except as so stated, the Request is too vague to further respond to, and EPAM declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 231: (*i.e.* PURPORTED REQUEST NO. 152(d)):**

Admit that on or about September 17 and September 22, 2025, Gregory Klebanov and SVP Greg Killian each verbally characterized Dr. Rao's performance to him in positive terms, including as 'wonderful,' 'stellar,' or 'solid.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Mr. Klebanov and Mr. Killian each provided feedback to Mr. Rao on strengths and weaknesses relative to his performance in his role. Except as so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 232: (*i.e.* PURPORTED REQUEST NO. 153(a))**

Admit that during 2022 through 2025, EPAM maintained human-resources systems of record (including the system known within EPAM as 'Telescope') that recorded each employee's assigned work country or work location.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Based on its objections, EPAM objects to the Request in its entirety and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 233: (*i.e.* PURPORTED REQUEST NO. 153(b))**

Admit that during the same period, EPAM required corporate network access to occur through managed security tooling — including GlobalProtect VPN and the OPSWAT posture-checking agent referenced in EPAM's Acceptable Use of IT Resources Policy — that generated log records reflecting the connecting device and connection origin.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 234: (*i.e.* PURPORTED REQUEST NO. 153(c))**

Admit that EPAM's Acceptable Use of IT Resources Policy (filed with EPAM's own moving papers, ECF No. 30-3) stated that it is 'forbidden to allow the computer device accessing the Company's network to act as a gateway between the Company's network and another network'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. For the above reasons, EPAM objects to the Request, declines to admit or deny, and refers Defendant to the document itself for its full and accurate contents.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 235: (*i.e.* PURPORTED REQUEST NO. 153(d))**

Admit that during 2022 through 2025, EPAM operated a formal relocation program through which employees' assigned work countries were updated in its human-resources systems upon approved relocation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g & Manufacturing Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *7-*10 (E.D. Pa. 2021). Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 236: (*i.e.* PURPORTED REQUEST NO. 154(a))**

Admit that during 2024 and 2025, EPAM or Odysseus Data Services, Inc. performed data science, analytics, or software services for Gilead Sciences, Inc. under one or more Master Services Agreements, Statements of Work, or work orders.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 237: (*i.e.* PURPORTED REQUEST NO. 154(b))**

Admit that the work performed for Gilead included processing or analyzing longitudinal patient-level healthcare claims datasets licensed by Gilead from one or more third-party data vendors.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 238: (*i.e.* PURPORTED REQUEST NO. 154(c))**

Admit that one or more instruments governing that work — including client data-security requirements or datavendor license terms applicable to U.S. Medicare or Medicaid data — restricted or prohibited access to the licensed data by personnel located in one or more designated foreign jurisdictions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 239: (*i.e.* PURPORTED REQUEST NO. 154(d))**

Admit that EPAM was contractually obligated to Gilead to comply with the data-access restrictions described in subpart (c).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. If Dr. Rao can provide evidence to support this claim, EPAM will consider amending its answer.

**ACTUAL REQUEST FOR ADMISSION NO. 240: (*i.e.* PURPORTED REQUEST NO. 155(a))**

Admit that during 2024 or 2025, one or more individuals performing work on the Gilead Sciences account were physically located in Belarus, Russia, or Serbia while performing that work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that a person in Belarus performed work for Gilead, as was disclosed to the client during onboarding. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 241: (*i.e.* PURPORTED REQUEST NO. 155(b))**

Admit that EPAM represented to Gilead Sciences that an individual performing work on the account, Anna Tauetekova, was operating from within the United States.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 242: (*i.e.* PURPORTED REQUEST NO. 155(c))**

Admit that at one or more times when the representation described in subpart (b) was outstanding, Anna Tauetekova was physically located in and working from Serbia.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, admits that Anna Tauetekova was located in Serbia. The remainder of the Request is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 243: (*i.e.* PURPORTED REQUEST NO. 155(d))**

Admit that EPAM's own human-resources or telemetry records (including Telescope work-location entries, GlobalProtect connection logs, or Entra ID sign-in logs) reflected, at the relevant times, the actual physical locations of one or more personnel described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 244: (*i.e.* PURPORTED REQUEST NO. 156(a))**

Admit that Gregory Klebanov directed a Belarus-based employee, Alexander Alexeuk, to perform work in a manner that bypassed one or more federal or client security protocols applicable to the account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 245: (*i.e.* PURPORTED REQUEST NO. 156(b))**

Admit that one or more personnel located in Belarus, Russia, or another restricted jurisdiction participated in Gilead account work through screen-sharing sessions or through access under another individual's session or credentials.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of

the case. EPAM further objects to this request because the phrase "participated in Gilead account work" is ambiguous.

Subject to and without waiving the foregoing objections, and as EPAM interprets the Request, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 246: (*i.e.* PURPORTED REQUEST NO. 156(c))**

Admit that network connections for one or more such personnel were routed through intermediate VPN gateways, proxy nodes, or egress points located outside the personnel's actual physical jurisdiction (including, but not limited to, gateway infrastructure in the Republic of Serbia).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 247: (*i.e.* PURPORTED REQUEST NO. 156(d))**

Admit that no written authorization from Gilead Sciences approved the practices described in subparts (a) through (c).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM denies that the "practices described in subparts (a) through (c)" occurred. Therefore, it is admitted that "no written authorization from Gilead Sciences approved" these practices insofar there was no reason to seek such written authorization in the first place.

**ACTUAL REQUEST FOR ADMISSION NO. 248: (*i.e.* PURPORTED REQUEST NO. 157(a))**

Admit that in or before September 2025, an employee of Gilead Sciences communicated to Dr. Rao a concern regarding the physical locations of EPAM personnel performing work on the Gilead account.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM lacks knowledge sufficient to admit or deny. EPAM admits that Dr. Rao claimed that such a communication occurred, but has not been able to verify whether Dr. Rao's claims are accurate. EPAM further avers a representative of Gilead raised certain concerns to a different employee, not to Dr. Rao, in 2024 (not 2025).

**ACTUAL REQUEST FOR ADMISSION NO. 249: (*i.e.* PURPORTED REQUEST NO. 157(b))**

Admit that in or around September 2025, Dr. Rao escalated concerns regarding the staffing and location practices on the Gilead account to his supervisor Gregory Klebanov and to Senior Program Manager Lucy McDermott, and objected to those practices.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 250: (*i.e.* PURPORTED REQUEST NO. 157(c))**

Admit that Dr. Rao declined to participate in staffing or location-reporting practices on the Gilead account that he identified as inconsistent with client or legal requirements.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 251: (*i.e.* PURPORTED REQUEST NO. 157(d))**

Admit that the escalation and objection described in subparts (b) and (c) occurred before September 17, 2025, the date on which Gregory Klebanov first communicated to Dr. Rao that his position was being eliminated.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. The alleged "escalations" did not happen.

**ACTUAL REQUEST FOR ADMISSION NO. 252: (*i.e.* PURPORTED REQUEST NO. 158(a))**

Admit that between September 1, 2025 and October 15, 2025, EPAM did not open a documented internal compliance investigation into the Gilead staffing and location practices described in Dr. Rao's escalation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that EPAM did not open an internal compliance investigation of the kind described in this Request, because there was no need for any such investigation. It is denied that Dr. Rao engaged in any "escalation."

**ACTUAL REQUEST FOR ADMISSION NO. 253: (*i.e.* PURPORTED REQUEST NO. 158(b))**

Admit that during the same period, EPAM did not engage any outside counsel, auditor, or consultant to investigate those practices.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted. Answering further, Dr. Rao raised no "escalation," so there was nothing brought to EPAM's attention to investigate.

**ACTUAL REQUEST FOR ADMISSION NO. 254: (*i.e.* PURPORTED REQUEST NO. 158(c))**

Admit that during the same period, EPAM did not report the escalated concerns to Gilead Sciences or to any governmental authority.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that EPAM did not (and could not) "report the" alleged "escalated concerns" because it denies that there were any such escalated concerns.

**ACTUAL REQUEST FOR ADMISSION NO. 255: (*i.e.* PURPORTED REQUEST NO. 158(d))**

Admit that prior to October 15, 2025, no EPAM compliance, legal, or HR function interviewed Dr. Rao regarding the substance of his Gilead escalation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. It is admitted that "no EPAM compliance, legal, or HR function interviewed Dr. Rao" regarding the alleged escalation; it is denied that there was any escalation – thus, there was nothing to "interview[]" Dr. Rao about.

**ACTUAL REQUEST FOR ADMISSION NO. 256: (*i.e.* PURPORTED REQUEST NO. 159(a))**

Admit that the Master Services Agreement filed as Exhibit A to Dr. Rao's Answer and Counterclaims (ECF No. 33-1) was entered into as of June 1, 2019 by and between Millennium Pharmaceuticals, Inc., a wholly owned subsidiary of Takeda Pharmaceutical Company Limited, and Odysseus Data Services, Inc.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 257: (*i.e.* PURPORTED REQUEST NO. 159(b))**

Admit that Section 12 of that Agreement provides that materials prepared in the performance of services 'are "works for hire," shall be the sole and exclusive property of Takeda and copyright therein shall immediately vest in Takeda'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, EPAM admits that the following words appear in Section 12 of the MSA "materials prepared in the performance of Services (collectively, the "Deliverable(s)") are 'works for hire,' shall be the sole and exclusive property of Takeda and copyright therein shall immediately vest in Takeda." However, EPAM refers to the MSA and any applicable statements of work for their full context, and denies that pre-existing intellectual property becomes property of Takeda.

**ACTUAL REQUEST FOR ADMISSION NO. 258: (*i.e.* PURPORTED REQUEST NO. 159(c))**

Admit that Section 12 further provides that, to the extent any such property is not a work for hire, the company 'hereby assigns and agrees to assign to Takeda... all rights including copyright in such property, ideas and materials'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests

propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, EPAM admits that the following words appear in Section 12 of the MSA “'hereby assigns and agrees to assign to Takeda” and “all rights including copyright in such property, ideas and materials'.” However, EPAM refers to the MSA and any applicable statements of work for their full context, and denies that pre-existing intellectual property becomes property of Takeda.

**ACTUAL REQUEST FOR ADMISSION NO. 259: (*i.e.* PURPORTED REQUEST NO. 159(d))**

Admit that Section 25 of that Agreement provides that '[i]n the event of any conflict between the provisions of this Agreement and the provisions of any PWO, the terms of this Agreement shall prevail.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials,* 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it does no more than ask EPAM to admit the content of a document, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, EPAM admits that the following words appear in Section 25 of the MSA “In the event of any conflict between the provisions of this Agreement and the provisions of any PWO, the terms of this Agreement shall prevail.” However, EPAM refers to the MSA and any applicable statements of work for their full context, and denies that pre-existing intellectual property becomes property of Takeda.

**ACTUAL REQUEST FOR ADMISSION NO. 260: (*i.e.* PURPORTED REQUEST NO. 160(a))**

Admit that software functionality that EPAM's pleadings describe as the 'AI Cohort Generator' and as the Prometheus platform (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') was developed in whole or in part pursuant to work orders or Statements of Work funded by Takeda.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. Solomon, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 261: (*i.e.* PURPORTED REQUEST NO. 160(b))**

Admit that developer time for that work was billed or allocated to Takeda-related project, client, or corporate investment billing codes (including, but not limited to, codes containing 'TKDA', 'TKDA-DSFX', 'TKDA-ESFX', 'TKDA-OSFX', 'TKDA-SYNPS', 'TAKEDA', 'TAKEDA-SYNAPSE', 'SYNP', or 'EPMC-SYNP').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses.

EPAM further objects because this Request contains the assumption of denied facts. Subject to and without waiving its objections, the Request requires the acceptance of denied facts, and thus the Request must be denied.

**ACTUAL REQUEST FOR ADMISSION NO. 262: (*i.e.* PURPORTED REQUEST NO. 160(c))**

Admit that during that development, Dr. Rao served in a technical leadership role on the Takeda engagement pursuant to his assigned EPAM duties.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied. EPAM would not describe Dr. Rao's role as "a technical leadership role."

**ACTUAL REQUEST FOR ADMISSION NO. 263: (*i.e.* PURPORTED REQUEST NO. 160(d))**

Admit that the source code repositories containing that work were not segregated into a repository designated as EPAM-proprietary and separate from the Takeda deliverable repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request contains the assumption of denied facts. Subject to and without waiving its objections, the Request requires the acceptance of denied facts, and thus the Request must be denied.

**ACTUAL REQUEST FOR ADMISSION NO. 264: (*i.e.* PURPORTED REQUEST NO. 161(a))**

Admit that data loading or ETL scripts associated with the toolset EPAM's pleadings describe as the 'ETL Conversion Kit' were revised, rewritten, or further developed during the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied. Answering further, ETL scripts are customized for each client. Clients, including Takeda, have different data sets and thus it is necessary to customize the scripts for each client.

**ACTUAL REQUEST FOR ADMISSION NO. 265: (*i.e.* PURPORTED REQUEST NO. 161(b))**

Admit that on September 20, 2025, Dr. Rao transmitted a written communication to EPAM employee Katie Barista via corporate email (filed within ECF No. 33-2 at p. 3) stating, among other things, that 'we do not have any pre-existing IP in this solution' and that the prior data loading scripts 'were all sphagetti and incomplete before and we re-did all of those for Takeda'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm

matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao, among other things, claimed in the referenced communication: "we do not have any pre-existing IP in this solution – everything was built on Takeda's dime (like the backend, front end, we had some data loading scripts but they were all sphagetti and incomplete before and we re-did all of those for Takeda)."  The reference to "prior data loading scripts" is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 266: (*i.e.* PURPORTED REQUEST NO. 161(c))**

Admit that EPAM received the September 20, 2025 communication described in subpart (b) on its corporate email, Microsoft Teams, or other corporate messaging systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 267: (*i.e.* PURPORTED REQUEST NO. 161(d))**

Admit that no EPAM manager, executive, or in-house counsel transmitted a written response to Dr. Rao via email, Microsoft Teams, or other corporate messaging systems on or before October 15, 2025 disputing the statements quoted in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information protected by the attorney-client privilege, the work-product doctrine, and/or other applicable immunity.

Objecting further, this Request seeks to “prove a negative” (*i.e.*, that “no EPAM manager, executive, or in-house counsel transmitted a written response”). EPAM cannot prove a negative, as it cannot review every single written response that any “EPAM manager, executive, or in-house counsel” throughout the entire company may have transmitted to Dr. Rao in any format (including informal formats such as text messages on personal cellphones).

Subject to and without waiving the foregoing objections, admitted, as to EPAM's knowledge, Dr. Rao did not share the above-referenced communications with Barista with any EPAM manager, executive, or in-house counsel, and so there would have been no response.

**ACTUAL REQUEST FOR ADMISSION NO. 268: (*i.e.* PURPORTED REQUEST NO. 162(a))**

Admit that EPAM source-code repository or infrastructure paths associated with the software variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse' included a repository or namespace designated takeda-synapse-infra , as reflected in EPAM's own exhibit filed at ECF No. 3-6.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that it has a code repository called "takeda-synapse-infra"; denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same, and denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 269: (*i.e.* PURPORTED REQUEST NO. 162(b))**

Admit that as EPAM stated at ECF No. 58-2 at 3 n.2, "Synapse' is not the final tradename for the software, only an in-development name'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 270: (*i.e.* PURPORTED REQUEST NO. 162(c))**

Admit that as EPAM's declarant Gregory Klebanov stated at ECF No. 58-28 ¶ 3, 'Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 271: (*i.e.* PURPORTED REQUEST NO. 162(d))**

Admit that prior to October 15, 2025, EPAM had not released or licensed any product under the name 'Synapse' to any client other than in connection with the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that it did not release or license any software at issue in this litigation “under the name 'Synapse' to any client other than in connection with the Takeda engagement.” EPAM objects to answering whether it

ever, in the entire history of the company, had a different product or service that used the name "Synapse" and which may have been released or licensed.

**ACTUAL REQUEST FOR ADMISSION NO. 272: (*i.e.* PURPORTED REQUEST NO. 163(a))**

Admit that on or about September 9, 2025 and September 20, 2025, Dr. Rao transmitted written communications via EPAM's corporate email, Microsoft Teams, or other corporate messaging systems (filed within ECF No. 33-2 at pp. 3–4) requesting legal review of whether work built under the Takeda engagement could be demonstrated to a third party.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product

doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, denied. Answering further, EPAM admits that, on September 20, 2025, Dr. Rao wrote in full:

"Hi Katie, Did you get the legal opinion? I am now confused.

There is a request to do a demo from J&J, but is it something we truly can demo? I re-read the SOW and then decided to read the MSA (both re-attached). Unless I am wrong, the MSA supersedes the SOW as written.

The problem is we do not have any pre-existing IP in this solution – everything was built on Takeda's dime (like the backend, front end, we had some data loading scripts but they were all sphagetti and incomplete before and we re-did all of those for Takeda).

We need absolute clarity from Legal on this before we schedule anything. If we have not done this already can you please forward to the legal person? There is so much opportunity lined up and I heard about the disaster with Roche

If we are told that its Takeda's and not EPAM's that fine – I can ask Takeda for permission (they are friends). In these cases its always better (legally safer?) to ask permission than to beg for forgiveness 😃"

**ACTUAL REQUEST FOR ADMISSION NO. 273: (*i.e.* PURPORTED REQUEST NO. 163(b))**

Admit that the September 20, 2025 written communication stated, among other things, 'There is a request to do a demo from J&J, but is it something we truly can demo?' and 'We need absolute clarity from Legal on this before we schedule anything'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao’s September 20 email contains the above quotations, and refers to its prior request for the full contents of Dr. Rao’s email.

**ACTUAL REQUEST FOR ADMISSION NO. 274: (*i.e.* PURPORTED REQUEST NO. 163(c))**

Admit that EPAM received the written communications described in subpart (a) on its corporate email, Microsoft Teams, or other corporate messaging systems before October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted that EPAM as an entity received it; denied that any specific recipient at EPAM received the communication.

**ACTUAL REQUEST FOR ADMISSION NO. 275: (*i.e.* PURPORTED REQUEST NO. 163(d))**

Admit that Dr. Rao declined to conduct a demonstration of Takeda-funded work for Johnson & Johnson unless and until such legal clarity was obtained.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 276: (*i.e.* PURPORTED REQUEST NO. 164(a))**

Admit that in September 2025, EPAM employee Katie Barista consulted EPAM In-House Legal regarding ownership of work built under the Takeda engagement and relayed Legal's responses to Dr. Rao in writing.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, EPAM admits that Barista and Dr. Rao had a written exchange on September 23, 2025, and refers Dr. Rao to the contents of that exchange.  EPAM objects on the grounds of attorney-client privilege to providing any other

information about "consult[ations] with in-house legal," and objects based on the overbroad characterization of the request.

**ACTUAL REQUEST FOR ADMISSION NO. 277: (*i.e.* PURPORTED REQUEST NO. 164(b))**

Admit that one such relayed written response stated, in substance, that the SOW identified the accelerator code as pre-existing IP that Odysseus presumably owns, but that 'the MSA makes no allowance for preexisting IP,' that 'everything we build belongs to Takeda,' and that 'the MSA controls over the SOW in the event of conflict between the terms of the two documents'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted; however, EPAM refers Dr. Rao to the full document for the relevant context.

**ACTUAL REQUEST FOR ADMISSION NO. 278: (*i.e.* PURPORTED REQUEST NO. 164(c))**

Admit that one such relayed written message stated 'legal said nope. You were right SOW said cool but MSA is not'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, admitted; however, EPAM refers Dr. Rao to the full document for the relevant context.

**ACTUAL REQUEST FOR ADMISSION NO. 279: (*i.e.* PURPORTED REQUEST NO. 164(d))**

Admit that EPAM has not produced or identified in this litigation any written legal opinion dated prior to October 15, 2025 concluding that EPAM or Odysseus, rather than Takeda, owned the work built under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to

obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

Subject to and without waiving the foregoing objections, EPAM admits that it has not waived privilege, and thus has not produced or identified any "written legal opinion[s]" on any subject, and furthermore that it has not made any productions to date in this case. Denied that no legal opinions exist.

**ACTUAL REQUEST FOR ADMISSION NO. 280: (*i.e.* PURPORTED REQUEST NO. 165(a))**

Admit that on September 17, 2025, Gregory Klebanov communicated to Dr. Rao that his position was being eliminated or that he was being separated from his role.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 281: (*i.e.* PURPORTED REQUEST NO. 165(b))**

Admit that in that communication, Mr. Klebanov cited corporate budgetary constraints and a flat or declining Real-World Data pipeline as the reason.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the foregoing Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 282: (*i.e.* PURPORTED REQUEST NO. 165(c))**

Admit that in or around the same communication, a transfer of Dr. Rao to the consulting group led by Dr. Chris Waller was proposed or discussed as an alternative.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM admits that there was a discussion of Dr. Rao moving to Waller's group. Denied that termination was raised as an alternative, as there was no intention of terminating Rao, and the remainder of the Request is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 283: (*i.e.* PURPORTED REQUEST NO. 165(d))**

Admit that in that September 17, 2025 communication, Mr. Klebanov did not state that Dr. Rao was being separated for poor performance or for cause.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, EPAM admits that on September 17,

2025 “Mr. Klebanov did not state that Dr. Rao was being separated” for any reason, and thus had no reason to identify poor performance, for cause, or any other reason – as no statement of a separation was communicated then.

**ACTUAL REQUEST FOR ADMISSION NO. 284: (*i.e.* PURPORTED REQUEST NO. 166(a))**

Admit that on or about September 18, 2025, SVP Greg Killian met with Dr. Rao following Gregory Klebanov's September 17, 2025 layoff notice.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. There was no September 17, 2025 layoff notice.

**ACTUAL REQUEST FOR ADMISSION NO. 285: (*i.e.* PURPORTED REQUEST NO. 166(b))**

Admit that in that meeting, transfer or redeployment options within EPAM for Dr. Rao were discussed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. There was no September 17, 2025 layoff notice. Answering further, EPAM admits that sometime in September 2025, Killian discussed a potential new role with Dr. Rao.

**ACTUAL REQUEST FOR ADMISSION NO. 286: (*i.e.* PURPORTED REQUEST NO. 166(c))**

Admit that in that meeting, Mr. Killian did not state that Dr. Rao was being separated for poor performance or misconduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects as the Request requires the assumption of denied facts. Subject to and without waiving the foregoing objections, EPAM admits that, in or about September 2025, "Mr. Killian did not state that Dr. Rao was being separated" for any reason.

**ACTUAL REQUEST FOR ADMISSION NO. 287: (*i.e.* PURPORTED REQUEST NO. 166(d))**

Admit that on or about September 22, 2025, Mr. Killian characterized Dr. Rao's performance to him in positive terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted in part and denied in part. In September, Killian spoke with Dr. Rao about both strengths and weaknesses.

**ACTUAL REQUEST FOR ADMISSION NO. 288: (*i.e.* PURPORTED REQUEST NO. 167(a))**

Admit that on or about September 22, 2025, Dr. Rao met with EPAM HR leader Larry McKlaine concerning his separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 289: (*i.e.* PURPORTED REQUEST NO. 167(b))**

Admit that on or about September 23, 2025, Dr. Rao communicated to HR that he would not resign voluntarily and would accept a performance plan only if EPAM produced objective, pre-existing, documented goals.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny. EPAM's ESI review is ongoing, and EPAM will supplement this answer if it locates evidence during that review.

**ACTUAL REQUEST FOR ADMISSION NO. 290: (*i.e.* PURPORTED REQUEST NO. 167(c))**

Admit that on or about September 30, 2025, Dr. Rao transmitted a written email on EPAM's corporate systems under the subject 'Gowtham and EPAM - concrete (documented) next steps' (filed at ECF No. 33-7) memorializing his requests for documented terms.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao transmitted a "written email on EPAM's corporate systems under the subject 'Gowtham and EPAM - concrete (documented) next steps" on September 30, 2025. The email speaks for itself, and will be produced in discovery. EPAM denies Dr. Rao's characterization of the email as being about "requests for documented terms."

**ACTUAL REQUEST FOR ADMISSION NO. 291: (*i.e.* PURPORTED REQUEST NO. 167(d))**

Admit that EPAM received the September 30, 2025 email described in subpart (c), and no EPAM representative responded in writing disputing Dr. Rao's account of the September meetings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that, as an entity, it received the September 30th email. EPAM denies that no EPAM representative submitted a "writing disputing Dr. Rao's account of the September meetings." EPAM's ESI review is ongoing and EPAM will supplement the request if necessary.

**ACTUAL REQUEST FOR ADMISSION NO. 292: (*i.e.* PURPORTED REQUEST NO. 168(a))**

Admit that on or about September 26, 2025, Gregory Klebanov communicated to Dr. Rao a performance improvement plan or proposed performance conditions that included a revenue target of approximately $2.5 million.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 293: (*i.e.* PURPORTED REQUEST NO. 168(b))**

Admit that the September 2025 communication alleged that Dr. Rao had failed to achieve 'target revenue' and 'profit margins'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied as stated. Answering further, EPAM admits that a communication to him from Greg Klebanov, on September 26, 2025, stated, in pertinent part, as follows: "Failure to meet core role expectations: Critical goals, such as achieving target revenue and maintaining required profit margins, have not been met."

**ACTUAL REQUEST FOR ADMISSION NO. 294: (*i.e.* PURPORTED REQUEST NO. 168(c))**

Admit that prior to September 18, 2025, EPAM had not established, communicated, or documented any specific revenue targets for Dr. Rao's role in its performance-management systems.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng’g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. EPAM’s ESI review is ongoing and EPAM will supplement if appropriate.

EPAM further objects because the phrase “performance-management systems” is ambiguous. Subject to and without waiving the foregoing objections, denied as EPAM understands the term. Mr. Klebanov transmitted a revenue goal to Dr. Rao as part of EPAM’s performance management process on July 15, 2025.

**ACTUAL REQUEST FOR ADMISSION NO. 295: (*i.e.* PURPORTED REQUEST NO. 168(d))**

Admit that the practice unit's historical peak revenue was approximately $700,000.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the request is ambiguous. EPAM does not know what "the practice unit" referred to in this Request is. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 296: (*i.e.* PURPORTED REQUEST NO. 169(a))**

Admit that EPAM terminated Dr. Rao's employment on October 15, 2025, and Dr. Rao did not resign.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, Rao provided notice of intent to resign, but retracted that notice because EPAM would not waive post-employment covenants.

EPAM admits that it subsequently terminated Rao on October 15, 2025, and admits that Rao's termination was not coded as a resignation.

**ACTUAL REQUEST FOR ADMISSION NO. 297: (*i.e.* PURPORTED REQUEST NO. 169(b))**

Admit that in submissions or responses to the State of New Jersey Department of Labor and Workforce Development concerning Dr. Rao's unemployment claim, EPAM did not classify the separation as a termination for misconduct, and the State thereafter awarded Dr. Rao unemployment benefits.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted as it was a regular practice of the HR team to not contest unemployment.

**ACTUAL REQUEST FOR ADMISSION NO. 298: (*i.e.* PURPORTED REQUEST NO. 169(c))**

Admit that in the Stipulated Consent Order entered December 10, 2025 (ECF No. 20), EPAM agreed that 'because Defendant's employment was involuntarily terminated, Section 5(c) of the Employee Covenants Agreement... regarding Noncompetition is not at issue'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 299: (*i.e.* PURPORTED REQUEST NO. 169(d))**

Admit that EPAM did not contest or appeal the State of New Jersey's award of unemployment benefits to Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted as it was a regular practice of the HR team to not contest unemployment.

**ACTUAL REQUEST FOR ADMISSION NO. 300: (*i.e.* PURPORTED REQUEST NO. 170(a))**

Admit that on September 17, 2025, the reason communicated to Dr. Rao for his separation was budgetary (as described in RFA No. 165).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied. There was no notice of separation on or about September 17, 2025.

**ACTUAL REQUEST FOR ADMISSION NO. 301: (*i.e.* PURPORTED REQUEST NO. 170(b))**

Admit that on or about September 26, 2025, the reason communicated shifted to performance, in the form of the PIP conditions described in RFA No. 168.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request assumes denied facts. Subject to and without waiving the foregoing objections, denied. Answering further, the factual premise of this question is mistaken. There was no notice of separation on September 17 or September 26, and no "PIP conditions" were implemented.

**ACTUAL REQUEST FOR ADMISSION NO. 302: (*i.e.* PURPORTED REQUEST NO. 170(c))**

Admit that in its Amended Complaint, EPAM alleged that Dr. Rao 'was terminated for cause on October 15, 2025' (ECF No. 30 ¶ 3).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a pleading, which is a written instrument that speaks for itself and is the best

evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the pleading out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 303: (*i.e.* PURPORTED REQUEST NO. 170(d))**

Admit that prior to October 12, 2025, EPAM had not communicated to Dr. Rao any of the conduct grounds recited in ECF No. 30 ¶ 3 as a basis for his separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because it does not know what every single employee may have communicated to Dr. Rao. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 304: (*i.e.* PURPORTED REQUEST NO. 171(a))**

Admit that on October 16, 2025, EPAM employee Gaurav Dravida initiated contact with Dr. Rao via Microsoft Teams.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 305: (*i.e.* PURPORTED REQUEST NO. 171(b))**

Admit that the Microsoft Teams exchange filed by EPAM in support of its emergency application (ECF No. 3-7) is an excerpt of the same exchange filed unredacted as Exhibit E to Dr. Rao's Answer and Counterclaims (ECF No. 33-5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 306: (*i.e.* PURPORTED REQUEST NO. 171(c))**

Admit that in the version filed at ECF No. 3-7, the name and identity of the EPAM employee counterparty were redacted or not disclosed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 307: (*i.e.* PURPORTED REQUEST NO. 171(d))**

Admit that EPAM's emergency application did not disclose to the Court that the exchange was initiated by a current EPAM employee.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, EPAM denies any suggestion it had a duty to “disclose” any purported initiation. EPAM admits that its papers speak for themselves, and admits that it did not claim that an EPAM employee initiated the exchange.

**ACTUAL REQUEST FOR ADMISSION NO. 308: (*i.e.* PURPORTED REQUEST NO. 172(a))**

Admit that on or about October 2, 2025, Dr. Rao transmitted to EPAM Senior Manager Larry McKlaine, with copy to June Dinitz, a series of written emails designated E01 through E04, including E01 titled 'Documentation of Agreed Position and Employment Status' and E04 concerning his independent, non-proprietary development work.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao sent four communications with the subjects E01 through E04, including E01 titled “Documentation of Agreed Position and Employment Status.” EPAM denies that E04 concerned Dr. Rao’s “independent, non-proprietary development work.” Answering further, EPAM refers Dr. Rao to E04 for its full contents, which included Dr. Rao’s assertions, legal positions, and requests for “dialogue” about contractual obligations he owed to EPAM under the Employment Covenants Agreement.

**ACTUAL REQUEST FOR ADMISSION NO. 309: (*i.e.* PURPORTED REQUEST NO. 172(b))**

Admit that on October 2, 2025, Larry McKlaine transmitted a written reply stating 'This is to confirm that I have received your emails (E01 through E04) and will respond accordingly,' and acknowledging Dr. Rao's 'request to withdraw your previous request for a mutually agreed separation'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended

to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 310: (*i.e.* PURPORTED REQUEST NO. 172(c))**

Admit that Larry McKlaine and June Dinitz each executed declarations submitted in support of EPAM's emergency application in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 311: (*i.e.* PURPORTED REQUEST NO. 172(d))**

Admit that the declarations described in subpart (c) did not disclose to the Court the E01–E04 communications or McKlaine's October 2, 2025 written acknowledgment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies that it had any duty to "disclose," in the aforementioned declarations, the emails titled E01 to E04, or McKlaine's acknowledgment. EPAM admits that the contents of the declarations do not mention the emails titled E01 to E04, or McKlaine's acknowledgment, and avers there was no reason to do so.

**ACTUAL REQUEST FOR ADMISSION NO. 312: (*i.e.* PURPORTED REQUEST NO. 173(a))**

Admit that on October 31, 2025, EPAM's counsel James Yu transmitted to Dr. Rao a letter titled 'Cease and Desist and Notice Pursuant to Fed. R. Civ. P. 65 on Behalf of EPAM Systems, Inc.'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 313: (*i.e.* PURPORTED REQUEST NO. 173(b))**

Admit that on November 4, 2025, EPAM filed its Complaint and an application for emergency injunctive relief in this Court.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 314: (*i.e.* PURPORTED REQUEST NO. 173(c))**

Admit that by Order dated November 7, 2025 (ECF No. 10), the Court denied EPAM's Motion for a Temporary Restraining Order and Expedited Discovery and scheduled a preliminary-injunction hearing.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The order referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 315: (*i.e.* PURPORTED REQUEST NO. 173(d))**

Admit that as of November 4, 2025, EPAM had not completed any documented internal investigation into the Gilead staffing escalation or the Takeda IP escalation described in RFAs 157 and 163.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because the Request assumes denied facts. EPAM denies that the alleged escalations occurred.

Subject to and without waiving the foregoing objections, EPAM admits that it did not "complete" any such investigations, because it never conducted any such investigations and had no reason to begin any such investigations. EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 316: (*i.e.* PURPORTED REQUEST NO. 174(a))**

Admit that the software tools EPAM identifies in this litigation as trade secrets include the ETL Conversion Kit, the AI Cohort Generator, and the software variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse' (ECF No. 58-2).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives

were not the same. EPAM otherwise admits the Request with the clarification that its trade secrets are not limited to the items identified in the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 317: (*i.e.* PURPORTED REQUEST NO. 174(b))**

Admit that prior to October 15, 2025, source code for one or more of those tools resided in repositories that also contained code authored, funded, or deliverable under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request. EPAM additionally objects to the Request as vague, and because it appears to depend upon assumptions based upon disputed and/or incorrect facts. EPAM additionally objects because the Takeda-Synapse project incorporated pre-existing intellectual property relating to the project known certain times as

Synapse and the request is ambiguous about how such intellectual property should be classified under this Request.

Based on its objections, EPAM objects to this Request in its entirety, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 318: (*i.e.* PURPORTED REQUEST NO. 174(c))**

Admit that prior to October 15, 2025, EPAM did not maintain a separate repository, designated as containing only EPAM-proprietary code and no client-deliverable code, for the tools described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving its objections, EPAM denies the request.

**ACTUAL REQUEST FOR ADMISSION NO. 319: (*i.e.* PURPORTED REQUEST NO. 174(d))**

Admit that prior to October 15, 2025, Takeda and EPAM (or Odysseus) had not executed any written amendment to the governing Master Services Agreement (ECF No. 33-1) granting EPAM or Odysseus a license, assignment, or carve-out to commercialize or demonstrate for other clients work product developed under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects to this Request because it does not understand what the Request is seeking. EPAM additionally objects because the Request builds in numerous assumptions which may be incorrect. Subject to and without waiving the foregoing objections, EPAM interprets the request to the best of its ability and, with that interpretation, denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 320: (*i.e.* PURPORTED REQUEST NO. 175(a))**

Admit that prior to October 15, 2025, EPAM did not develop, maintain, or possess a separate, standalone software product named 'EPAM Synapse' that was independently built without incorporating source code, architecture, or deliverables created under the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM additionally objects because the phrase “separate, standalone software product” is ambiguous. Subject to and without waiving the foregoing objections, EPAM admits that “EPAM Synapse” was not a final tradename. EPAM otherwise denies the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 321: (*i.e.* PURPORTED REQUEST NO. 175(b))**

Admit that prior to October 15, 2025, EPAM maintained no internal budget line, capitalized development project, or funded R&D workstream for a 'Synapse' software product independent of client-funded engagements.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 322: (*i.e.* PURPORTED REQUEST NO. 175(c))**

Admit that prior to October 15, 2025, EPAM had not sold, licensed, or deployed 'Synapse' (variously labeled in EPAM's pleadings as 'EPAM Synapse,' 'AI Cohort Generator,' or 'AI Accelerator') to any client other than in connection with the Takeda engagement.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, EPAM denies that AI Cohort generator is the same as Synapse.  EPAM admits that, as of October 15, 2025, it had not sold, licensed, or deployed a version of 'Synapse' to any client other than Takeda.  EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 323: (*i.e.* PURPORTED REQUEST NO. 175(d))**

Admit that the software functionality that EPAM claims as proprietary trade secrets in this action embodies the same essential architecture and components developed during the Takeda engagement period.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Based on its objections, EPAM objects to the request and will not admit or deny it.

**ACTUAL REQUEST FOR ADMISSION NO. 324: (*i.e.* PURPORTED REQUEST NO. 175(e))**

Admit that EPAM's declarant stated at ECF No. 58-25 ¶ 8 that the 'Architectural Vision' document 'would provide a substantial foundation for recreating Synapse as it exists today.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 325: (*i.e.* PURPORTED REQUEST NO. 176(a))**

Admit that the OMOP Common Data Model and associated OHDSI vocabularies and tooling were publicly available prior to June 1, 2019, the effective date of the Takeda MSA.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 326: (*i.e.* PURPORTED REQUEST NO. 176(b))**

Admit that the ETL Conversion Kit identified in EPAM's filings performs extraction, transformation, and loading of data into OMOP-based structures.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The public repository referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 327: (*i.e.* PURPORTED REQUEST NO. 176(c))**

Admit that EPAM managers or executives had contemporaneous knowledge, during Dr. Rao's employment, of his public open-source releases through OHDSI GitHub repositories (including the LlmPromptBuilders package).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because it does not know whom the "EPAM managers or executives" referred to are. EPAM cannot "prove a negative," and determine what every single manager or executive may have known during Rao's employment. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 328: (*i.e.* PURPORTED REQUEST NO. 176(d))**

Admit that EPAM did not instruct Dr. Rao to cease his OHDSI open-source activities at any time prior to October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because it does not know whom the request means by “EPAM.” EPAM cannot “prove a negative,” and determine what every single manager or executive may have communicated to Rao during Rao’s employment. EPAM would consider a narrower request which asks it to identify whether particular managers provided instructions to Dr. Rao.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 329: (*i.e.* PURPORTED REQUEST NO. 177(a))**

Admit that as stated in the Klebanov Supplemental Declaration (ECF No. 58-28 ¶ 3), 'Synapse and MedRag (another EPAM development) together are referred to as AI Accelerator'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 330: (*i.e.* PURPORTED REQUEST NO. 177(b))**

Admit that MedRAG and Synapse are separate software developments with distinct codebases and distinct primary functions.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Synapse and MedRag have "distinct codebases." EPAM denies the remainder of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 331: (*i.e.* PURPORTED REQUEST NO. 177(c))**

Admit that MedRAG's primary function concerns biomedical literature retrieval or retrieval-augmented generation, and it is not a cohort-analytics platform.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 332: (*i.e.* PURPORTED REQUEST NO. 177(d))**

Admit that EPAM's allegation that Dr. Rao downloaded 'AI Accelerator' source code (Klebanov Decl. ¶ 40, as glossed by ECF No. 58-28 ¶ 3) does not identify which of the two components — Synapse or MedRAG — any particular file belonged to.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM's allegations in Klebanov's declarations are written documents which speak for themselves and are the best evidence of their contents. EPAM additionally objects to the Request because it is confusing and ambiguous.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 333: (*i.e.* PURPORTED REQUEST NO. 178(a))**

Admit that during Dr. Rao's employment, Workstation A0001 accessed EPAM systems while the OPSWAT MetaAccess agent reported the device as compliant with EPAM's security policy.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 334: (*i.e.* PURPORTED REQUEST NO. 178(b))**

Admit that EPAM's identity and endpoint management tenant records (including Microsoft Entra ID sign-in logs) reflect authenticated sessions originating from Workstation A0001 during Dr. Rao's employment.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 335: (*i.e.* PURPORTED REQUEST NO. 178(c))**

Admit that the personally owned desktop workstation designated by neutral forensic examiner iDS as Device A0001 (Make: MSI, S/N: MSB0Y2O7S0104130) was surrendered for inspection and examined by iDS pursuant to the parties' stipulated Forensic Inspection Protocol.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 336: (*i.e.* PURPORTED REQUEST NO. 178(d))</u>**

Admit that iDS transmitted its forensic investigation report concerning Device A0001 to counsel for both parties on or about January 12, 2026.

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, multiple reports issued by iDS may reflect information specific to that device. EPAM will consider a more specific request that enables definitive identification of the "report" referred to herein.

**ACTUAL REQUEST FOR ADMISSION NO. 337: (*i.e.* PURPORTED REQUEST NO. 179(a))**

Admit that during Dr. Rao's employment, EPAM assigned to him or utilized for his work one or more internal employee project codes, corporate investment codes, or client billing codes (including, but not limited to, codes containing 'TKDA', 'TKDA-DSFX', 'TKDA-ESFX', 'TKDA-OSFX', 'TKDA- SYNPS', 'ODUS-TKDA', 'TAKEDA', 'TAKEDA-SYNAPSE', 'SYNP', 'EPMC-SYNP', 'AMNA- ODYS', 'AMNA', 'AMNA-AIRN', 'CCC-ARCH', 'CCC', or 'ODYS').

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

Subject to and without waiving its objections, EPAM will be producing Dr. Rao's time entry records as part of its forthcoming production and refers to those records to identify the codes/projects that Dr. Rao recorded time to. EPAM denies the request to the extent inconsistent with those time entry records.

**ACTUAL REQUEST FOR ADMISSION NO. 338: (*i.e.* PURPORTED REQUEST NO. 179(b))**

Admit that developer time recorded by or for Dr. Rao was allocated in EPAM's timekeeping systems against one or more of the codes described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. EPAM additionally objects to the request as vague and ambiguous.

Subject to and without waiving its objections, EPAM will be producing Dr. Rao's time entry records as part of its forthcoming production and refers to those records to identify the codes/projects that Dr. Rao recorded time to. EPAM denies the request to the extent inconsistent with those time entry records.

**ACTUAL REQUEST FOR ADMISSION NO. 339: (*i.e.* PURPORTED REQUEST NO. 179(c))**

Admit that repository or directory paths inventoried by neutral forensic examiner iDS from the examined devices and accounts (including, but not limited to, paths containing 'amna-airn', 'amna-odys', 'takeda-synapse', or 'synapse') correspond to client engagements or corporate projects associated with the codes described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 340: (*i.e.* PURPORTED REQUEST NO. 179(d))**

Admit that EPAM's records do not reflect any written revocation, during Dr. Rao's employment, of his authorization to access repositories or directory paths associated with the codes described in subpart

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself (*e.g.*, presumably, all EPAM records in existence). Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 341: (*i.e.* PURPORTED REQUEST NO. 180(a))**

Admit that on or about September 23, 2025, EPAM (through or at the direction of Gregory Klebanov) withdrew or reduced its support for Dr. Rao's activities in the OHDSI open-science community, as communicated through EPAM employee Lana Shubinsky.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 342: (*i.e.* PURPORTED REQUEST NO. 180(b))**

Admit that after October 15, 2025 – including in or around late October 2025 and in or around January and February 2026 – one or more EPAM executives or managers (including Gregory Klebanov) communicated with personnel of Gilead Sciences (including Alex Cash, also known as Alex Asiimwe, or Ram Varma) regarding Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because this RFA appears to relate to defamation and tortious interference claims that Rao has represented will be withdrawn, and thus no longer has any arguable relevance.

EPAM objects to the request as overbroad, failing to identify any managers other than Klebanov. On those bases, EPAM objects and declines to admit or deny. EPAM's ESI review is ongoing and EPAM reserves the right to supplement.

**ACTUAL REQUEST FOR ADMISSION NO. 343: (*i.e.* PURPORTED REQUEST NO. 180(c))**

Admit that one or more of the communications described in subpart (b) referenced this lawsuit, alleged data taking, or alleged misconduct by Dr. Rao, and concerned Dr. Rao in his individual professional capacity.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because this RFA appears to relate to defamation and tortious interference claims that Rao has represented will be withdrawn, and thus no longer has any arguable relevance.

EPAM further objects because the Request poses numerous conjunctives and differing possibilities (i.e., "referenced this lawsuit, alleged data taking, or alleged misconduct by Dr. Rao, and concerned Dr. Rao in his individual professional capacity"), creating the risk of any response being materially misleading. EPAM will consider responding to a narrower request, which poses

a single specific question – not whether one of numerous possibilities happened. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 344: (*i.e.* PURPORTED REQUEST NO. 180(d))**

Admit that EPAM has never transmitted to Gilead Sciences any correction or retraction of the statements described in subpart (c).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because this RFA appears to relate to defamation and tortious interference claims that Rao has represented will be withdrawn, and thus no longer has any arguable relevance.

EPAM further objects because this Request requires the assumption of disputed facts and/or facts not in evidence. EPAM incorporates its objections to Request 180(c) by reference. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 345: (*i.e.* PURPORTED REQUEST NO. 181(a))**

Admit that CoReason, Inc. was incorporated in Delaware on or about October 16, 2025 – after Dr. Rao's October 15, 2025 termination – and EPAM has no documents showing CoReason conducted commercial operations before that date.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections. EPAM admits that CoReason, Inc. was incorporated in Delaware on or about October 16, 2025 which was after Dr. Rao's October 15, 2025 termination. EPAM objects to the phrase “commercial operations” as ambiguous. EPAM admits that CoReason did not have a formal legal existence until October 16, 2025, and thus could not conduct commercial operations as a formal legal entity. Answering further, even if CoReason did not have a formal legal existence, Dr. Rao was already, before October 15, 2025, plotting improper commercial operations, and was doing so using the CoReason name. EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 346: (*i.e.* PURPORTED REQUEST NO. 181(b))**

Admit that the email correspondence filed at ECF No. 33-9 reflects that on November 3, 2025, a Johnson & Johnson representative corresponded regarding a draft Statement of Work and terms for a proof-ofconcept engagement for technical and scientific services to be performed by Dr. Rao (whether individually or through CoReason, Inc.).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 347: (*i.e.* PURPORTED REQUEST NO. 181(c))**

Admit that as stated in the Klebanov Supplemental Declaration, 'Johnson & Johnson ("J&J") is an EPAM client' (ECF No. 58-28 ¶ 5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 348: (*i.e.* PURPORTED REQUEST NO. 181(d))**

Admit that after October 15, 2025, one or more EPAM personnel communicated with Johnson & Johnson personnel regarding Dr. Rao personally, CoReason, Inc., or this lawsuit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

EPAM additionally objects because it cannot assess what every single individual who may be "EPAM personnel" might have communicated with every single individual who might be "Johnson & Johnson personnel." Subject to and without waiving the foregoing objections, EPAM admits that Klebanov received a call from a Johnson & Johnson representative after October 15, 2025, regarding Dr. Rao, and refers Dr. Rao to Klebanov's deposition testimony regarding this case. EPAM denies that this call mentioned CoReason. EPAM otherwise objects to the request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 349: (*i.e.* PURPORTED REQUEST NO. 182(a))**

Admit that the email filed at ECF No. 33-9 reflects that on November 3, 2025, a Johnson & Johnson representative wrote regarding prospective technical services by Dr. Rao and CoReason: 'We had a change in business priorities and have decided to not pursue the... activities. I have asked the team to pause the contracting activities.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 350: (*i.e.* PURPORTED REQUEST NO. 182(b))**

Admit that as of November 3, 2025, the proof-of-concept Statement of Work involving Dr. Rao referenced in that thread had been under active negotiation since at least October 21, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of Dr. Rao's and/or CoReason's relationship with Johnson & Johnson, or any associated documents, and cannot authenticate either Dr. Rao's contentions regarding this relationship or the documents.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 351: (*i.e.* PURPORTED REQUEST NO. 182(c))**

Admit that EPAM filed its Complaint and emergency application in this Court on November 4, 2025, the day after the communication described in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because it does not have personal knowledge of the document referenced, and cannot authenticate it.

EPAM admits that it filed the Complaint on November 4, 2025. Otherwise, on the bases set forth above, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 352: (*i.e.* PURPORTED REQUEST NO. 182(d))**

Admit that EPAM does not contend that the proof-of-concept engagement involving Dr. Rao or CoReason described in ECF No. 33-9 would have used or disclosed any EPAM trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 353: (*i.e.* PURPORTED REQUEST NO. 183(a))**

Admit that Count VII of EPAM's original Complaint asserted a breach of contract claim related to the noncompetition provision, and EPAM withdrew that claim in its Amended Complaint (ECF No. 37. redline at ECF No. 37-4 p. 31).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 354: (*i.e.* PURPORTED REQUEST NO. 183(b))**

Admit that EPAM stated in its motion papers that '[b]ecause EPAM does not seek to enforce the noncompetition provisions of Rao's Agreement, there is no justiciable controversy' (ECF No. 43-1 at p. 30).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng’g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 355: (*i.e.* PURPORTED REQUEST NO. 183(c))**

Admit that Section 5(c) of the Employment Covenants Agreement (ECF No. 37-1) imposes its post-employment restriction '[i]n the event you voluntarily resign employment'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng’g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 356: (*i.e.* PURPORTED REQUEST NO. 183(d))**

Admit that since the entry of the Stipulated Consent Order (ECF No. 20), EPAM has not sought any judicial relief enforcing a non-competition restriction against Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing, or lack thereof, referenced is a matter of

public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 357: (*i.e.* PURPORTED REQUEST NO. 184(a))**

Admit that EPAM's motion papers describe its Life Sciences and Healthcare business as earning revenue of approximately $490 million in 2023 and over $574 million in 2024 (ECF No. 43-1 at p. 12, citing EPAM's Form 10-K for the year ended December 31, 2024).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The SEC filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 358: (*i.e.* PURPORTED REQUEST NO. 184(b))**

Admit that no client of EPAM has terminated, cancelled, or reduced any engagement with EPAM as a result of conduct by Dr. Rao alleged in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 359: (*i.e.* PURPORTED REQUEST NO. 184(c))**

Admit that EPAM has not lost any specific, identified sale or license of the software described in its pleadings as a result of conduct by Dr. Rao alleged in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 360: (*i.e.* PURPORTED REQUEST NO. 184(d))**

Admit that EPAM has not identified any customer, contract, license, or revenue stream lost to Dr. Rao individually, to CoReason, Inc., or to Scientific Informatics, LLC.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. See Penn Eng'g, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 361: (*i.e.* PURPORTED REQUEST NO. 185(a))**

Admit that EPAM's initial disclosures served under Fed. R. Civ. P. 26(a)(1) in this action did not state a computation of any category of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested

factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 362: (*i.e.* PURPORTED REQUEST NO. 185(b))**

Admit that as of the date of these responses, EPAM has not served a supplemental disclosure stating a computation of any category of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 363: (*i.e.* PURPORTED REQUEST NO. 185(c))**

Admit that as of the date of these responses, EPAM has not disclosed any expert witness on the subject of damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 364: (*i.e.* PURPORTED REQUEST NO. 185(d))**

Admit that as of the date of these responses, EPAM has not produced documents quantifying any claimed monetary loss caused by Dr. Rao.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g,* 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials,* 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Subject to and without waiving the foregoing objections, admitted. EPAM's ESI review is ongoing, and EPAM will supplement if appropriate.

**ACTUAL REQUEST FOR ADMISSION NO. 365: (*i.e.* PURPORTED REQUEST NO. 186(a))**

Admit that on July 8, 2026, Dr. Rao transmitted a written meet-and-confer email to EPAM's counsel of record stating, among other things, that EPAM's litigation conduct was 'actively causing me documented physical and mental health harm.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials,* 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 366: (*i.e.* PURPORTED REQUEST NO. 186(b))**

Admit that EPAM's counsel received the July 8, 2026 email and transmitted a written response in the same thread on or about July 9, 2026.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 367: (*i.e.* PURPORTED REQUEST NO. 186(c))**

Admit that after receiving the July 8, 2026 notice, EPAM did not withdraw or modify the discovery demands addressed in that meet-and-confer thread.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 368: (*i.e.* PURPORTED REQUEST NO. 186(d))**

Admit that as of July 8, 2026, Dr. Rao was appearing pro se in this action and personally conducting his own defense.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao is appearing *pro se*. EPAM lacks personal knowledge regarding the remainder of the Request (*e.g.*, EPAM does not know, and cannot know, if Dr. Rao is receiving assistance from counsel who has not appeared), and thus cannot admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 369: (*i.e.* PURPORTED REQUEST NO. 187(a))**

Admit that on or before October 15, 2025 (the date Dr. Rao's employment with EPAM was terminated), EPAM issued a written litigation hold notice concerning disputes involving Dr. Rao (including disputes concerning EPAM trade secrets, ownership of client products, and the geographic location of employees).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 370: (*i.e.* PURPORTED REQUEST NO. 187(b))**

Admit that on or before October 31, 2025 (the date EPAM served its cease-and-desist letter and preservation demand, filed as ECF No. 58-4), EPAM issued a written litigation hold notice concerning disputes involving Dr. Rao (including disputes concerning EPAM trade secrets, ownership of client products, and the geographic location of employees).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 371: (*i.e.* PURPORTED REQUEST NO. 187(c))**

Admit that on or before November 4, 2025 (the date EPAM filed its initial Complaint and ex parte TRO application, ECF Nos. 1 and 3), EPAM issued a written litigation hold notice concerning this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 372: (*i.e.* PURPORTED REQUEST NO. 187(d))**

Admit that as of the date of these responses, EPAM has not released, suspended, or narrowed the scope of any litigation hold issued concerning this dispute.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 373: (*i.e.* PURPORTED REQUEST NO. 188(a))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former executive leadership, Practice Leaders, and business unit heads with managerial or supervisory responsibility for EPAM's Healthcare and Life Sciences practice or the Odysseus business unit.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to

obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 374: (*i.e.* PURPORTED REQUEST NO. 188(b))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former Human Resources, People Operations, Employee Relations, and In-House Legal personnel involved in Dr. Rao's hiring, performance management, compliance escalations, or separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 375: (*i.e.* PURPORTED REQUEST NO. 188(c))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former Delivery Managers, Project Managers, and technical leads responsible for client engagements or software projects in which Dr. Rao participated or provided technical input.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 376: (*i.e.* PURPORTED REQUEST NO. 188(d))**

Admit that EPAM issued or transmitted a written litigation hold notice concerning disputes involving Dr. Rao to current or former IT Security, Systems Engineering, and Microsoft 365 Tenant Administration personnel responsible for endpoint security, user account telemetry, and data retention policies.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects to this Request to the extent it seeks, or cannot be answered without disclosing, information protected by the attorney-client privilege or the work-product doctrine, including legal advice sought from or rendered by counsel, communications made to obtain or provide such advice, and materials prepared by or at the direction of counsel in anticipation of litigation.

EPAM further objects because legal hold notices are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM additionally objects because this request is extremely overbroad and does not identify specific individuals

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 377: (*i.e.* PURPORTED REQUEST NO. 189(a))**

Admit that on or before November 4, 2025 (the date EPAM filed its initial Complaint and ex parte TRO application, ECF Nos. 1 and 3), EPAM suspended automatic deletion and data-purge policies for Microsoft Teams messages, Exchange Online mailboxes (including inactive or departed employee mailboxes), and cloud storage accounts for current and former personnel within the functional categories identified in RFA No. 188.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 378: (*i.e.* PURPORTED REQUEST NO. 189(b))**

Admit that on or before November 4, 2025, EPAM issued instructions to preserve, or implemented technical measures to preserve, all local ESI stored on or generated through interactions with EPAM computers, EPAM agents' computers, mobile devices, or other computing devices assigned to those same current and former personnel.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

EPAM further objects because legal hold notices (including instructions to preserve) are privileged and work product, thus the request seeks information protected by the attorney-client privilege and work product doctrine.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 379: (*i.e.* PURPORTED REQUEST NO. 189(c))**

Admit that EPAM maintains written administrative change logs or audit records documenting the date and execution of each suspension described in subparts (a) and (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention measures as to specific individuals and specific kinds of documents.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 380: (*i.e.* PURPORTED REQUEST NO. 189(d))**

Admit that as of the date of these responses, EPAM has not produced in this action any administrative change log or audit record documenting the suspension of automatic deletion policies or the forensic preservation of local device storage for those current and former personnel.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, admitted as of the date of this response.

**ACTUAL REQUEST FOR ADMISSION NO. 381: (*i.e.* PURPORTED REQUEST NO. 190(a))**

Admit that EPAM has preserved the complete Microsoft Entra ID interactive and non-interactive sign-in and audit logs (including source IP addresses, client application identifiers, and device compliance telemetry) for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) covering November 18, 2024 through October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 382: (*i.e.* PURPORTED REQUEST NO. 190(b))**

Admit that EPAM has preserved the GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records that record, or permit determination of, the physical geographic locations of personnel assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen) for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 383: (*i.e.* PURPORTED REQUEST NO. 190(c))**

Admit that EPAM has preserved the compliance, posture-verification, and network telemetry logs generated by the OPSWAT MetaAccess agent required under Section 3.21 of EPAM's 'Acceptable Use of IT Resources' policy (ECF No. 30-3) for a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. See Martin Marietta Materials, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 384: (*i.e.* PURPORTED REQUEST NO. 190(d))**

Admit that after anticipating litigation against Dr. Rao, EPAM took affirmative administrative steps to extend retention of its Microsoft 365 Unified Audit Log (UAL) beyond the tenant's default retention period for the user accounts and software repositories identified in its Amended Complaint (ECF No. 30).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 385: (*i.e.* PURPORTED REQUEST NO. 191(a))**

Admit that EPAM has preserved the server-side GitLab and Bitbucket access, clone, and administrative audit logs for the software repositories associated with the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform'), ETL Kit (including 'cdmkit'), and AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, EPAM admits most of the Request, except denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 386: (*i.e.* PURPORTED REQUEST NO. 191(b))**

Admit that EPAM has preserved the complete corporate Microsoft Exchange mailbox and Microsoft Teams message archive for any EPAM-issued corporate user account or credential assigned to Dr. Rao (including, but not limited to, gowtham_rao@epam.com ) in its native state as it existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 387: (*i.e.* PURPORTED REQUEST NO. 191(c))**

Admit that EPAM has preserved all electronic files and forensic artifacts resulting from any interaction by Dr. Rao with EPAM computers, EPAM agents' computers, server instances, or other devices that store ESI.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 388: (*i.e.* PURPORTED REQUEST NO. 191(d))**

Admit that prior to reassigning, reimaging, wiping, or disposing of the EPAM-issued laptop computer hardware (or any other computing device provisioned to Dr. Rao during his employment), EPAM created a bit-stream forensic disk image of that hardware.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 389: (*i.e.* PURPORTED REQUEST NO. 192(a))**

Admit that EPAM has preserved the software repositories and infrastructure configuration files associated with the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' 'Takeda-Synapse,' or 'takeda-synapse-infra'), including their full Git commit histories, in native format as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving the foregoing objections, EPAM admits most of the Request, except denies the Request insofar as it improperly conflates “EPAM Synapse” with “Takeda-Synapse”; these initiatives were not the same.

**ACTUAL REQUEST FOR ADMISSION NO. 390: (*i.e.* PURPORTED REQUEST NO. 192(b))**

Admit that EPAM has preserved the software repositories associated with the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform'), ETL Kit (including 'cdmkit'), and MedRAG, including their full Git commit histories, in native format as they existed on October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng’g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 391: (*i.e.* PURPORTED REQUEST NO. 192(c))**

Admit that EPAM has preserved the October 12, 2025 commit 3d8b15ac referenced in EPAM's own Exhibit A (ECF No. 3-6) and its surrounding repository history in native form.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 392: (*i.e.* PURPORTED REQUEST NO. 192(d))**

Admit that since November 4, 2025, no commit that was reachable in the history of those repositories as of October 15, 2025 has been deleted, force-pushed over, rebased, squashed, or otherwise rewritten.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

Subject to and without waiving its objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 393: (*i.e.* PURPORTED REQUEST NO. 193(a))**

Admit that EPAM has preserved the staffing rosters, assignment schedules, and Telescope work-location records for all personnel assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen) for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 394: (*i.e.* PURPORTED REQUEST NO. 193(b))**

Admit that EPAM has preserved any Telescope work-location history and any relocation-program records for Anna Tauetekova, Alexander Alexeuk, and the personnel identified in Dr. Rao's Answer and Counterclaims (ECF No. 33 ¶¶ 320–327) reflecting any approved or pending work-country changes during 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 395: (*i.e.* PURPORTED REQUEST NO. 193(c))**

Admit that EPAM has preserved all source IP address records, VPN session logs, and multi-account access histories that record, or permit determination of, the actual physical work locations of personnel assigned to those same pharmaceutical client accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 396: (*i.e.* PURPORTED REQUEST NO. 193(d))**

Admit that EPAM has not destroyed, deleted, or failed to preserve any internal record documenting a discrepancy between the recorded Telescope work locations of developers assigned to pharmaceutical client accounts and their physical network connection locations.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for

Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 397: (*i.e.* PURPORTED REQUEST NO. 194(a))**

Admit that EPAM has preserved the VPN gateway and network-egress infrastructure located in the Republic of Serbia, including IP routing tables and network configuration records, for the years 2024 and 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because the Request is based on a denied fact. The assertion that Anna Arksenova performed work for Gilead is false.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 398: (*i.e.* PURPORTED REQUEST NO. 194(b))**

Admit that the records described in subpart (a) record, or permit determination of, the external IP addresses, routing paths, and multi-account proxy sign-in configurations used for connections to client environments from Serbia.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because the Request is based on a denied fact. The assertion that Anna Arksenova performed work for Gilead is false.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 399: (*i.e.* PURPORTED REQUEST NO. 194(c))**

Admit that EPAM has preserved all written communications between EPAM IT infrastructure personnel and life sciences account leadership concerning the physical hosting, proxy routing, and egress locations of remote developers assigned to pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences. This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of data and other records. Dr. Rao's demands

for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

EPAM additionally objects because there is no time frame associated with the request.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that no employee within "EPAM IT infrastructure personnel and life sciences account leadership" ever accidentally deleted a single email or other electronic communication.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 400: (*i.e.* PURPORTED REQUEST NO. 194(d))**

Admit that as of the date of these responses, EPAM has not produced in this litigation the network routing tables, external IP logs, or VPN gateway records reflecting remote developer connections into pharmaceutical client environments during 2024–2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 401: (*i.e.* PURPORTED REQUEST NO. 195(a))**

Admit that EPAM has preserved all email, Microsoft Teams, and messaging communications between Gregory Klebanov and Greg Killian concerning Dr. Rao for the period September 1, 2025 through December 31, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that neither Klebanov nor Killian did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

Notwithstanding those objections, EPAM is not aware of any email, Microsoft Teams, and messaging communications between Gregory Klebanov and Greg Killian concerning Dr. Rao for the period September 1, 2025 through December 31, 2025 being deleted or destroyed and, to the best of its knowledge, all such records have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 402: (*i.e.* PURPORTED REQUEST NO. 195(b))**

Admit that EPAM has preserved all communications between Gregory Klebanov and either Arkadiy Dobkin or Balázs Fejes, or any other member of EPAM executive leadership or the Board of Directors, concerning Dr. Rao's separation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that Klebanov did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

EPAM additionally objects because the request is overbroad insofar as it covers EPAM's Board of Directors and Executive Leadership, who had nothing to do with Rao's separation.

On those bases, EPAM objects and declines to admit or deny.

Notwithstanding those objections, EPAM is not aware of any communication/record referenced in the Request being deleted or destroyed and, to the best of its knowledge, all such records/communications have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 403: (*i.e.* PURPORTED REQUEST NO. 195(c))**

Admit that EPAM has preserved all communications among its human resources and legal personnel (including at least June Dinitz, Larry McKlaine, Larry Solomon, and Sarah Lugar) concerning Dr. Rao's separation, irrespective of the country in which those personnel are employed.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this is a request to prove a negative. For example, EPAM cannot affirmatively confirm that none of the referenced persons did not accidentally delete a single email or other electronic communication, even before any records preservation obligation would have attached.

Notwithstanding those objections, EPAM is not aware of any communication/record referenced in the Request being deleted or destroyed and, to the best of its knowledge, all such records/communications have been completely preserved.

**ACTUAL REQUEST FOR ADMISSION NO. 404: (*i.e.* PURPORTED REQUEST NO. 195(d))**

Admit that EPAM has preserved all written communications, across all global subsidiaries, among EPAM personnel concerning client contractual commitments, developer physical work locations, and location-masking practices on pharmaceutical client accounts (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon "all written communications, across all global subsidiaries, among EPAM personnel concerning client contractual commitments, developer physical work locations, and location-masking practices on pharmaceutical client accounts." Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 405: (*i.e.* PURPORTED REQUEST NO. 196(a))**

Admit that EPAM has not identified any instance in which an EPAM officer, employee, or agent deleted, purged, wiped, or destroyed any internal communication in Microsoft Exchange, Microsoft Teams, or Slack concerning Dr. Rao since October 15, 2025 (the date Dr. Rao's employment with EPAM was terminated, Amended Complaint, ECF No. 30 ¶ 7).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the request is wildly overbroad insofar as it covers every single "EPAM officer, employee, or agent" worldwide, which is tens of thousands of people.

Subject to and without waiving the foregoing objections, admitted as stated.

**ACTUAL REQUEST FOR ADMISSION NO. 406: (*i.e.* PURPORTED REQUEST NO. 196(b))**

Admit that EPAM has not identified any instance in which an EPAM officer, employee, or agent deleted, purged, wiped, or destroyed any internal communication in Microsoft

Exchange, Microsoft Teams, or Slack concerning this litigation since November 4, 2025 (the date EPAM filed its initial Complaint, ECF No. 1).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the request is wildly overbroad insofar as it covers every single "EPAM officer, employee, or agent" worldwide, which is tens of thousands of people.

Subject to and without waiving the foregoing objections, admitted as stated.

**ACTUAL REQUEST FOR ADMISSION NO. 407: (*i.e.* PURPORTED REQUEST NO. 196(c))**

Admit that EPAM has not received any report or notification from its IT security or compliance personnel indicating that communications or ESI on computers or devices of custodians of this dispute (including, but not limited to, the custodians referenced in RFA No. 188) were deleted, wiped, or auto-purged after October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because the "custodians" referenced throughout Rao's requests are overbroad.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 408: (*i.e.* PURPORTED REQUEST NO. 196(d))**

Admit that EPAM maintains an immutable administrative audit log capable of discovery forensics to independently verify whether any custodian communication, email, chat message, or device-stored ESI was deleted, purged, or wiped after October 15, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL

1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM additionally objects because it does not understand the meaning of "immutable."

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 409: (*i.e.* PURPORTED REQUEST NO. 197(a))**

Admit that EPAM has preserved all client contracts, Master Services Agreements, Statements of Work, and written communications representing EPAM's commitments to clients regarding the physical geographic work locations of assigned personnel (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, and Amgen).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands

for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 410: (*i.e.* PURPORTED REQUEST NO. 197(b))**

Admit that EPAM has preserved all client communications received during 2023 through 2025 raising questions, objections, compliance audits, or disputes regarding the physical geographic locations or staffing representations of EPAM personnel across pharmaceutical client accounts.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 411: (*i.e.* PURPORTED REQUEST NO. 197(c))**

Admit that EPAM has preserved all internal and external records concerning any formal or informal accommodations, exceptions, side-letters, or waivers negotiated or arrived at with clients regarding employee physical locations.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request, and several requests of a similar nature, appear to improperly seek an extensive forensic examination of EPAM systems through Requests for Admissions.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

For additional clarity, Dr. Rao's purported CEPA claim involves his claims that he engaged in protected activity regarding the physical locations of personnel performing work for Gilead Sciences (not any of the other entities mentioned in that request). This claim depends on whether Dr. Rao engaged in protected activity (he did not), and whether EPAM retaliated against him based on that protected activity (it did not). It does not depend upon an incredibly exhaustive list of "GlobalProtect VPN connection logs, ingress/egress gateway telemetry, and concurrent multi-account sign-in records" and other kinds of associated data. Dr. Rao's demands for discovery into those kinds of topics is disproportionate, wildly overbroad, and seeks information of essentially no relevance.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 412: (*i.e.* PURPORTED REQUEST NO. 197(d))**

Admit that EPAM has preserved the complete file of any internal ethics, compliance, or whistleblower investigation concerning Dr. Rao or concerning the staffing practices he reported.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request assumes denied facts. EPAM denies that it "preserved the complete file of any internal ethics, compliance, or whistleblower investigation concerning Dr. Rao or concerning the staffing practices he reported" because it denies that Dr. Rao "reported" any such staffing practices, and further denies that any internal ethics, compliance, or whistleblower investigation took place. EPAM avers that there was no reason for

any internal ethics, compliance, or whistleblower investigation. On these bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 413: (*i.e.* PURPORTED REQUEST NO. 197(e))**

Admit that EPAM has preserved the complete, native Microsoft Teams chat thread involving Katie Barista referenced in ECF No. 33-2 and ECF No. 43-7 containing the statement: 'everything we build belongs to Takeda and the MSA controls over the SOW'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 414: (*i.e.* PURPORTED REQUEST NO. 198(a))**

Admit that the Microsoft 365 download audit log produced by EPAM as Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ) contains exactly 54,900 total rows of event records.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside

the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the file titled "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" contained 54,900 event records.

**ACTUAL REQUEST FOR ADMISSION NO. 415: (*i.e.* PURPORTED REQUEST NO. 198(b))**

Admit that every single event record in the 54,900-row export bears a timestamp falling exclusively within the 14-day calendar window from September 30, 2025 through October 13, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained a "Start Time" field with values exclusively between September 30, 2025 through October 13, 2025. EPAM denies any remaining portion of this Request.

**ACTUAL REQUEST FOR ADMISSION NO. 416: (*i.e.* PURPORTED REQUEST NO. 198(c))**

Admit that of the 54,900 event records in the export, exactly 44,742 records (81.50%) designate the operation type as FileSyncDownloadedFull.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 44,741 records with an "O365_Operation (custom)" value of "FileSyncDownloadedFull". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 417: (*i.e.* PURPORTED REQUEST NO. 198(d))**

Admit that of the 54,900 event records in the export, exactly 10,158 records (18.50%) designate the operation type as FileDownloaded.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 10,157 records with an "O365_Operation (custom)" value of "FileDownloaded". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 418: (*i.e.* PURPORTED REQUEST NO. 199(a))**

Admit that of the 54,900 event records in Forensic Protocol Exhibit B ( EPAM Search Terms - Rao SP Download322329263.1.xlsx ), exactly 44,702 records (81.42%) designate the client user-agent as Microsoft SkyDriveSync (versions 25.170, 25.174, or 25.179).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,*

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 8 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.170.0901.0002 ship; Windows NT 10.0 (26100)", 10 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.174.0907.0003 ship; Windows NT 10.0 (26100)", and 44,684 records with a "user-agent (custom)" value of "Microsoft SkyDriveSync 25.179.0914.0003 ship; Windows NT 10.0 (26100)". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 419: (*i.e.* PURPORTED REQUEST NO. 199(b))**

Admit that across the entire 54,900-row dataset in Exhibit B, exactly 53 records (0.097%) designate a standard interactive web browser user-agent (i.e., a user-agent string identifying a consumer web browser such as Chrome, Edge, Firefox, or Safari).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will

stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 3 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36", 1 record with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/140.0.0.0 Safari/537.36 Edg/140.0.0.0 Teams/25241.203.3947.4411/49", 37 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36", 1 record with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153 (49)", and 11 records with a "user-agent (custom)" value of "Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/141.0.0.0 Safari/537.36 Edg/141.0.0.0 Teams/25255.703.3978.7153/49". EPAM denies any remaining portion of the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 420: (*i.e.* PURPORTED REQUEST NO. 199(c))**

Admit that exactly 8,745 records in Exhibit B record no user-agent string ( N/A ) representing automated serverside events.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or

review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 8,745 records with a "user-agent (custom)" value of "N/A".

Based on its objections, EPAM objects to the remaining portion of the Request, and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 421: (*i.e.* PURPORTED REQUEST NO. 199(d))**

Admit that exactly 1,393 records in Exhibit B designate the server-side transformation user-agent OneDriveMpc-Transform_Zip/1.0.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that the "EPAM Search Terms - Rao SP Download(322329263.1).xlsx" file contained 1,393 records with a "user-agent (custom)" value of "OneDriveMpc-Transform_Zip/1.0". EPAM denies any remaining portion of the request.

**ACTUAL REQUEST FOR ADMISSION NO. 422: (*i.e.* PURPORTED REQUEST NO. 200(a))**

Admit that EPAM received in discovery the document titled 'CoReason Clean Room Protocol & Trade Secret Protection Standard (P-IP-001),' Version 1.0, dated November 20, 2025.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

Based on its objections, EPAM objects and declines to admit or deny. EPAM's review of Dr. Rao's discovery production is on-going, and EPAM reserves the right to supplement this response. EPAM requests that Dr. Rao supply a Bates number associated with the alleged document.

**ACTUAL REQUEST FOR ADMISSION NO. 423: (*i.e.* PURPORTED REQUEST NO. 200(b))**

Admit that Section 1.1 of P-IP-001 defines a 'Temporal Firewall Date' and establishes Standard P-102 requiring a Genesis Commit for all new repositories.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because the information requested is not within its personal knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether the document "establishes" any policy or procedure that was actually in effect at CoReason.

Based on its objections, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 424: (*i.e.* PURPORTED REQUEST NO. 200(c))**

Admit that Section 1.3 of P-IP-001 establishes the 'Human Assumption of Transformative Authorship' protocol requiring human review, substantive modification, and contamination checks before merging code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it does no more than ask EPAM to admit the content of a document allegedly produced in discovery, which is a written instrument that speaks for itself and is the best evidence of its own terms. EPAM further objects to the extent that the Request selectively quotes or paraphrases the document out of context. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to confirm whether each such Request accurately and completely quotes or characterizes the referenced document. On that basis EPAM

declines to admit or deny and refers Defendant to the document itself for its full and accurate contents.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because the information requested is not within its personal knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether the document "establishes" any policy or procedure that was actually in effect at CoReason.

Based on its objections, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 425: (*i.e.* PURPORTED REQUEST NO. 200(d))**

Admit that as of the date of these responses, EPAM has not identified to Dr. Rao any written technical critique asserting that the provisions of P-IP-001 are inadequate to prevent IP contamination.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because Dr. Rao has not made any request for the "identify[cation]" requested in the Request. EPAM additionally objects because, irrespective of what a document might purport to say, the associated information is not within its personnel knowledge. By way of example, irrespective of what any CoReason document may say, EPAM does not have personal knowledge of whether any "provisions" within the alleged referenced document were actually enforced or used at CoReason. Subject to those objections, EPAM admits that as of the date of these responses, it has not produced a "written technical critique" of the alleged document.

**ACTUAL REQUEST FOR ADMISSION NO. 426: (*i.e.* PURPORTED REQUEST NO. 201(a))**

Admit that during the period between December 12, 2025 and the date of these responses, Plaintiff and its designated forensic experts have had electronic access, or the contractual opportunity under the Forensic Protocol to obtain access via file promotion and release, to inspect all files on the Relativity workspace hosted by neutral forensic examiner iDS.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g,* 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 427: (*i.e.* PURPORTED REQUEST NO. 201(b))**

Admit that as of the date of these responses, EPAM has not identified by file name or path any specific file in the collected CoReason repositories that it contends contains EPAM proprietary source code.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because it is ambiguous what constitutes a "CoReason repositor[y]" given the overlap between Dr. Rao and CoReason.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced and, in fact, only received the document production a short time ago. EPAM has not had the opportunity to fully review this production.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 428: (*i.e.* PURPORTED REQUEST NO. 201(c))**

Admit that as of the date of these responses, EPAM has not identified any specific line, block, or routine of source code in the collected CoReason repositories that was copied from any EPAM repository.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because it is ambiguous what constitutes a "CoReason repositor[y]" given the overlap between Dr. Rao and CoReason.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced and, in fact, only received the document production a short time ago. EPAM has not had the opportunity to fully review this production.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 429: (*i.e.* PURPORTED REQUEST NO. 201(d))**

Admit that the sworn Declaration of Dmitrii Ilin (ECF No. 58-25) does not identify any CoReason source code file or directory path by name.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 430: (*i.e.* PURPORTED REQUEST NO. 202(a))**

Admit that EPAM has not identified any document, repository README, or source code header file in existence prior to October 15, 2025 that designated the ETL Conversion Kit (including cdmkit ) source code as a 'trade secret' on its face.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 431: (*i.e.* PURPORTED REQUEST NO. 202(b))**

Admit that EPAM has not identified any document, repository README, or source code header file in existence prior to October 15, 2025 that designated the AI Cohort Generator (including developments variously known within EPAM as 'Prometheus,' 'Prometheus Platform,' or 'Prometheus Federated Data Analytics Platform') source code as a 'trade secret' on its face.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 432: (*i.e.* PURPORTED REQUEST NO. 202(c))**

Admit that EPAM has not identified any presentation slide deck produced or filed in this action in existence prior to October 15, 2025 for the AI Accelerator (including developments variously known within EPAM as 'EPAM Synapse,' 'Synapse,' or 'Takeda-Synapse') that bore the word 'Trade Secret' on its title slide or body pages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the

investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM additionally objects because EPAM has not been required, to date, to "identif[y]" the information referenced. EPAM further avers that it does not, in the ordinary course of business, routinely affix a sticker or other label of "trade secret" on trade secrets.

Subject to and without waiving the foregoing objections, EPAM denies the Request insofar as it improperly conflates "EPAM Synapse" with "Takeda-Synapse"; these initiatives

were not the same. Except as expressly denied, and on the foregoing bases, EPAM objects and declines to admit or deny the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 433: (*i.e.* PURPORTED REQUEST NO. 202(d))**

Admit that Dr. Rao's offboarding from EPAM on October 15, 2025 (Amended Complaint, ECF No. 30 ¶ 7) did not include an exit interview in which EPAM identified any specific repository, file, or document for return.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed

to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because responding would require reference to and investigation of documents, repositories, source code, logs, communications, records, or other materials outside the Request itself. Requests for Admission are intended to require only minimal response and explanation and may not be used in a manner that requires extensive factual investigation or review of external materials before answering. *See Martin Marietta Materials*, 2007 WL 1300772, at *2-*3. EPAM further objects because the burden and expense of conducting the investigation necessary to respond outweigh any likely benefit and are disproportionate to the needs of the case.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that Dr. Rao did not have an exit interview. EPAM denies any suggestion that during offboarding Dr. Rao was not reminded of his contractual obligations to EPAM, including returning EPAM property and information.

**ACTUAL REQUEST FOR ADMISSION NO. 434: (*i.e.* PURPORTED REQUEST NO. 203(a))**

Admit that during 2024 and 2025, EPAM publicly marketed commercial services offering automated software modernization, code conversion, and rapid application rebuilding using Generative AI and LLM tooling.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at document retention policies as to specific individuals and specific kinds of documents.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 435: (*i.e.* PURPORTED REQUEST NO. 203(b))**

Admit that during the July/August 2025 executive meeting introducing incoming CEO Balázs Fejes, Balázs Fejes commended Dr. Rao's Generative AI presentation and workflows, stating, in words or in substance: 'I really loved what Gautam and Sara was presenting, this is really helpful to the industry, and it's not just chat GPT prompts which others are selling'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM

will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 436: (*i.e.* PURPORTED REQUEST NO. 203(c))**

Admit that the July/August 2025 executive meeting referenced in subpart (b) was electronically recorded by EPAM.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 437: (*i.e.* PURPORTED REQUEST NO. 203(d))**

Admit that EPAM has preserved the complete audio/video recording and any transcript thereof of the meeting described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to

harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny. Notwithstanding, EPAM will reconsider a renewed request that narrows the date of the alleged meeting or otherwise offers further information to enable reasonable identification of the meeting referred to.

**ACTUAL REQUEST FOR ADMISSION NO. 438: (*i.e.* PURPORTED REQUEST NO. 203(e))**

Admit that EPAM does not contend that utilizing a commercial LLM to generate original source code from functional requirements constitutes, in itself, the misappropriation of a trade secret.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects as the term "functional requirements" is too vague and broad as to allow a response.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 439: (*i.e.* PURPORTED REQUEST NO. 204(a))**

Admit that at the November 5, 2025 preliminary injunction hearing, neither EPAM's counsel nor any EPAM witness disputed Dr. Rao's statement in the record that 'all EPAM employees use OneDrive and those files gets downloaded to our local machines' (Hearing Tr., ECF No. 58-6, at 19:9–10).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record

that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 440: (*i.e.* PURPORTED REQUEST NO. 204(b))**

Admit that the transcript of the November 5, 2025 hearing (ECF No. 58-6) contains no statement by EPAM's counsel, and no testimony or exhibit offered by EPAM, contradicting the statement quoted in subpart (a).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 441: (*i.e.* PURPORTED REQUEST NO. 204(c))**

Admit that EPAM did not present any witness, declaration, or testimonial evidence at the November 5, 2025 hearing establishing that Dr. Rao disabled or bypassed any security telemetry agent (including OPSWAT MetaAccess or GlobalProtect VPN) on a personally owned desktop workstation (designated by neutral forensic examiner iDS as Device A0001, Make: MSI, S/N: MSB0Y2O7S0104130).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects

because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits that EPAM witness testimony was not presented on any topic at this Court date. Accordingly, the lack of witness testimony on this Court date is not dispositive on any point.

**ACTUAL REQUEST FOR ADMISSION NO. 442: (*i.e.* PURPORTED REQUEST NO. 204(d))**

Admit that the transcript of the November 5, 2025 hearing (ECF No. 58-6) contains no statement or exhibit by EPAM's counsel identifying any specific trade secret formula, algorithm, or customer record alleged to have been disclosed to any third party.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19

(granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 443: (*i.e.* PURPORTED REQUEST NO. 205(a))**

Admit that in 2025, Dr. Rao was awarded the corporate 'EPAM HEROES 2025' award recognizing his professional contributions to the company (Answer & Counterclaims, ECF No. 33 ¶ 359).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving its objections, admitted that Rao received badges in the Heroes digital platform. Except as stated, the Request is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 444: (*i.e.* PURPORTED REQUEST NO. 205(b))**

Admit that on September 17, 2025, Gregory Klebanov informed Dr. Rao that his role would be backfilled by Sarah Seager (ECF No. 33 ¶ 352).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*,

2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that on or about September 17, 2025, Greg Klebanov informed Rao that his position would be changing and that the title of Head of Data Science would be moved to Sarah Seager. Except as to so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 445: (*i.e.* PURPORTED REQUEST NO. 205(c))**

Admit that Dr. Rao's role was backfilled by Sarah Seager following his separation (ECF No. 33 ¶ 352).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that Sarah Seager took on the title of Head of Data Science and certain aspects of Rao’s prior role. Denied that Sarah Seager assumed a role that was exactly the same as Rao’s prior role. Except as so stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 446: (*i.e.* PURPORTED REQUEST NO. 205(d))**

Admit that Dr. Rao's official profile in EPAM's Telescope performance portal, as reflected in Exhibit F (ECF No. 33-6), stated 'No expectations found'.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng’g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving its objections, EPAM admits that the phrase “No expectations found,” and refers to the document for the full context. Denied that no expectations were communicated, such expectations were communicated.

**ACTUAL REQUEST FOR ADMISSION NO. 447: (*i.e.* PURPORTED REQUEST NO. 206(a))**

Admit that on September 25, 2025 at 3:54 PM, Dr. Rao transmitted an email to Greg Killian and Gregory Klebanov, copying Larry McKlaine (Exhibit G, ECF No. 33-7), stating: 'We confirmed there are no organizational changes impacting my position and no change in role. No layoffs. It was explicitly stated that there is no performance improvement plan (PIP) in place.'

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng’g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the above objections, admitted that Rao made this false unilateral statement in an email.

**ACTUAL REQUEST FOR ADMISSION NO. 448: (*i.e.* PURPORTED REQUEST NO. 206(b))**

Admit that on September 26, 2025, Gregory Klebanov responded in writing stating: 'Should you choose to continue in this revised role, a Performance Improvement Plan (PIP) will be implemented to ensure that clear goals and expectations are established for future success' (ECF No. 33-7).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 449: (*i.e.* PURPORTED REQUEST NO. 206(c))**

Admit that in or around mid-September 2025, Gregory Klebanov stated to Dr. Rao that the legacy data science pipeline was 'close to zero' (ECF No. 33 ¶ 361).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving its objections, EPAM admits that Klebanov spoke the phrase "close to zero" in a discussion about a pipeline during a communication that Rao secretly recorded. Denied that the Klebanov referenced a "legacy data science pipeline" in this conversation. EPAM refers to the full recording for the context, and denies the Request to the extent inconsistent with that context.

**<u>ACTUAL REQUEST FOR ADMISSION NO. 450: (*i.e.* PURPORTED REQUEST NO. 206(d))</u>**

Admit that in September or October 2025, EPAM executive Alvin Ow stated internally that EPAM was 'abusing' Dr. Rao in connection with the sudden performance demands and role changes (ECF No. 33 ¶ 357).

**<u>ANSWER:</u>**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that

speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 451: (*i.e.* PURPORTED REQUEST NO. 207(a))**

Admit that EPAM's official 'Performance Management process at EPAM' policy directs that employee expectations and goals be recorded in the Expectations section of the Performance tab of the employee's Telescope profile.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at

353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving its objections, EPAM admits that employee expectations and goals can be recorded in the Expectations section of the Performance tab of the Telescope profile. Except as stated, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 452: (*i.e.* PURPORTED REQUEST NO. 207(b))**

Admit that the same policy directs that project performance evaluations focus on how well the employee met the project expectations and goals so recorded.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 453: (*i.e.* PURPORTED REQUEST NO. 207(c))**

Admit that prior to September 17, 2025, EPAM management never entered any specific numeric revenue target for Dr. Rao into the Telescope system (ECF No. 33 ¶ 354, Exhibit F. ECF No. 33-6).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 454: (*i.e.* PURPORTED REQUEST NO. 207(d))**

Admit that prior to September 26, 2025, EPAM management never delivered to Dr. Rao a written PIP setting forth structured performance targets, criteria, or review periods.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that Rao was not placed on a formal written Performance Improvement Plan despite the fact that he was given constructive performance feedback.

<u>**ACTUAL REQUEST FOR ADMISSION NO. 455: (*i.e.* PURPORTED REQUEST NO. 208(a))**</u>

Admit that after October 15, 2025, EPAM personnel or representatives communicated with Takeda Pharmaceuticals personnel (including Sunil Dravida) regarding Dr. Rao's departure and this litigation.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 456: (*i.e.* PURPORTED REQUEST NO. 208(b))**

Admit that in one or more such communications, EPAM stated, in words or in substance, that Dr. Rao had engaged in unlawful data exfiltration or trade secret theft.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 457: (*i.e.* PURPORTED REQUEST NO. 208(c))**

Admit that EPAM has never transmitted any written retraction, clarification, or correction to Takeda Pharmaceuticals regarding the statements described in subpart (b).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g,* 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring

EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objections as this Request assumes a disputed fact.

Subject to and without waiving the foregoing objections, admitted that no written retraction, clarification, or correction was issued, as the alleged statement is denied.

**ACTUAL REQUEST FOR ADMISSION NO. 458: (*i.e.* PURPORTED REQUEST NO. 208(d))**

Admit that EPAM has not identified any written or oral statement by Dr. Rao to any commercial client of EPAM (including, but not limited to, Gilead Sciences, Takeda Pharmaceuticals, Eli Lilly, Johnson & Johnson, or Amgen) disparaging EPAM's technical capabilities or business integrity.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because this Request seeks to "prove a negative" (*i.e.*, that "no EPAM officer, manager, or in-house counsel transmitted any written communication"). EPAM cannot prove a negative, as it cannot review every single written communication or oral statement that Rao made to any commercial client of EPAM throughout the entire company (including informal formats such as text messages on personal cellphones).

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 459: (*i.e.* PURPORTED REQUEST NO. 209(a))**

Admit that the complete October 2025 Microsoft Teams thread filed as Exhibit E (ECF No. 33-5) shows that Gaurav Dravida transmitted messages to Dr. Rao on October 14, 2025 and at 10:49 AM on October 16, 2025, before any responsive message from Dr. Rao shown in ECF No. 3-7.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant

protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and

unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 460: (*i.e.* PURPORTED REQUEST NO. 209(b))**

Admit that the 10:49 AM October 16, 2025 message from Gaurav Dravida requested Dr. Rao's technical assistance concerning ETL processing of STD_COST_YR and type-of-service cost fields (ECF No. 33-5).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially

outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 461: (*i.e.* PURPORTED REQUEST NO. 209(c))**

Admit that the screenshot filed by EPAM as Exhibit B to the Declaration of Gregory Klebanov (ECF No. 3-7) does not display the text of any inbound message from Gaurav Dravida transmitted before Dr. Rao's first reply, including the substance of the 10:49 AM October 16, 2025 message shown in ECF No. 33-5.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper

discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

**ACTUAL REQUEST FOR ADMISSION NO. 462: (*i.e.* PURPORTED REQUEST NO. 209(d))**

Admit that EPAM's emergency motion for a temporary restraining order and preliminary injunction filed on November 4, 2025 (ECF No. 3) did not attach or disclose the October 2–3, 2025 'E01–E04' email thread between Dr. Rao and HR leadership (Exhibit C, ECF No. 33-3).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon,* 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because

Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The court filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted the email was not attached, but denied that EPAM had any duty to disclose or that absence of disclosure is dispositive of any issue.

**ACTUAL REQUEST FOR ADMISSION NO. 463: (*i.e.* PURPORTED REQUEST NO. 209(e))**

Admit that EPAM transmitted its proposed Second Amended Complaint to Dr. Rao on August 11, 2026, while its Motion for Terminating Sanctions (ECF No. 58) remained pending and undecided before the Court.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted that EPAM first shared a draft of its Proposed Second Amended Complaint on August 10, 2026.

**ACTUAL REQUEST FOR ADMISSION NO. 464: (*i.e.* PURPORTED REQUEST NO. 210(a))**

Admit that during the approximately six-month period preceding Dr. Rao's November 2024 hire, the Odysseus unit's rolling six-month revenue was approximately $200,000 (Answer & Counterclaims, ECF No. 33 ¶¶ 347, 471).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3

(granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 465: (*i.e.* PURPORTED REQUEST NO. 210(b)**

Admit that within his first four months of employment at EPAM, Dr. Rao originated and delivered a commercial contract with Bayer generating approximately $150,000 in revenue (ECF No. 33 ¶ 351).

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the

subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case. On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 466: (*i.e.* PURPORTED REQUEST NO. 210(c))**

Admit that Dr. Rao joined EPAM from Johnson & Johnson, an established enterprise in the healthcare and life sciences industry.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund,* 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See*

*Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM admits the Request.

**ACTUAL REQUEST FOR ADMISSION NO. 467: (*i.e.* PURPORTED REQUEST NO. 210(d))**

Admit that during recruitment discussions, EPAM was informed that Dr. Rao would forfeit unvested compensation and benefits at Johnson & Johnson by accepting EPAM's employment offer.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom

discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

EPAM further objects because the Request is far too overbroad. EPAM would consider a revised Request targeted at specific individuals.

On those bases, EPAM objects and declines to admit or deny.

**ACTUAL REQUEST FOR ADMISSION NO. 468: (*i.e.* PURPORTED REQUEST NO. 211(a))**

Admit that as of the date of these responses, EPAM has not produced any economic model, expert calculation, or document computing a claimed reasonable royalty under 18 U.S.C. § 1836(b)(3)(B) or 12 Pa. C.S. § 5304 for the software assets identified in its pleadings.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical"

device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM refers to its response to purported Interrogatory No. 10 and admits that it has not served any additional damages calculations.

**ACTUAL REQUEST FOR ADMISSION NO. 469: (*i.e.* PURPORTED REQUEST NO. 211(b))**

Admit that as of the date of these responses, EPAM has not produced any financial ledger, customer loss statement, or document calculating actual lost profits resulting from Dr. Rao's alleged conduct.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with

EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, denied.

**ACTUAL REQUEST FOR ADMISSION NO. 470: (*i.e.* PURPORTED REQUEST NO. 211(c))**

Admit that as of the date of these responses, EPAM has not produced any expert computation or document quantifying alleged head-start or unjust enrichment damages.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the

needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects because this Request seeks admission regarding disputed merits issues rather than a narrow and genuinely undisputed fact. Requests for Admission are intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives, argumentative contentions, or efforts to obtain agreement with a party's

version of events. *Solomon*, 2018 WL 1740530, at *2. This Request is directed to contested factual and legal issues at the heart of the parties' claims and defenses. EPAM further objects because discovery remains ongoing and EPAM has not yet had a full opportunity to obtain discovery concerning the matters addressed in the Request.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, EPAM refers to its response to purported Interrogatory No. 10 (including its reference to disgorgement of the $100,000 investment in CoReason that Dr. Rao obtained) and admits that it has not served any additional damages calculations.

**ACTUAL REQUEST FOR ADMISSION NO. 471: (*i.e.* PURPORTED REQUEST NO. 211(d))**

Admit that the consolidated financial statements and accompanying notes in Item 8 of EPAM Systems, Inc.'s Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (filed February 26, 2026) do not recognize any impairment charge, loss contingency accrual, or material loss attributable to the alleged misappropriation of the software at issue in this action.

**ANSWER:**

EPAM objects to Defendant's Requests for Admission, collectively totaling 471 individual requests across five sets as so voluminous, oppressive, and disproportionate to the needs of this case that they exceed the bounds of Rules 36 and 26, transforming Rule 36 from a

tool to narrow issues for trial into an abusive discovery device. *Oppenheimer Fund*, 437 U.S. at 353 n.17 (holding discovery should be denied where the aim is to harass the party from whom discovery is sought). Federal courts, including those within the Third Circuit, routinely grant protective relief against far fewer requests. *See Penn Eng'g*, 2021 WL 4037857, at *8-*9, n.19 (granting protective order as to 185 RFAs, noting that the requests were consistent with an aim to harass the responding party and allowing a party to issue "copious RFAs to see how many will stick" invites discovery abuse); *Martin Marietta Materials*, 2007 WL 1300772, at *2-*3 (granting protective order as to all but 27 of 654 RFAs); *Gannon*, 2006 WL 2927639, at *1 (1,407 requests and subparts was "grossly excessive").

EPAM further objects because Requests for Admission are intended to narrow genuinely undisputed issues, not to impose unnecessary burden and expense through voluminous paper discovery or to obtain agreement with a party's version of disputed facts and events. *See Solomon*, 2018 WL 1740530, at *2 (establishing that Requests for Admission are a "surgical" device intended to eliminate issues concerning undisputed facts and are improper when directed to disputed factual narratives or used to prove a party's case). EPAM also objects because Defendant served the Requests on a schedule that caused response deadlines to coincide with EPAM's preparation for the evidentiary hearing concerning Defendant's spoliation of evidence, further exacerbating the burden imposed.

EPAM further objects to this Request because it seeks admission of a matter of public record equally available to Defendant. The SEC filing referenced is a matter of public record that speaks for itself, is the best evidence of its own contents and date, and is as readily accessible to the propounding party as to EPAM. Requiring EPAM to research, authenticate, and confirm matters of public record, rather than Defendant simply consulting that record, serves no

legitimate purpose of narrowing issues for trial. Particularly given the sheer number of Requests propounded (471 across five sets), it would be disproportionate to the needs of the case and unduly burdensome for EPAM to verify and confirm each such public-record recitation. On that basis EPAM declines to admit or deny and refers Defendant to the public record itself.

EPAM further objects because this Request seeks information of negligible or no relevance to the claims, counterclaims, and defenses asserted in this action. To the extent the subject matter has any relevance whatsoever, such relevance is minimal and substantially outweighed by the burden and expense required to investigate and respond. *See Penn Eng'g*, 2021 WL 4037857, at *7-*10. Particularly given the volume of Requests propounded, requiring EPAM to investigate and respond to collateral matters would be disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, admitted.

Dated: October 12, 2026

SEYFARTH SHAW LLP

By: */s/ Jacob Oslick*

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of October 2026, a copy of PLAINTIFF'S AMENDED RESPONSES AND OBJECTIONS TO DEFENDANT'S FOURTH AND FIFTH SETS OF REQUESTS FOR ADMISSION was sent via electronic mail to:

GOWTHAM ADAMANE RAO
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

*/s/ Brooke K. Gary*