**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EPAM SYSTEMS, INC.,
Plaintiff/Counterclaim-Defendant,

**CIVIL ACTION**
**NO. 2:25-cv-06260-WB**

v.

GOWTHAM RAO, MD, PhD,
Defendant/Counterclaim-Plaintiff.

# DEFENDANT'S EXHIBIT PX-41

***EPAM Systems, Inc.'s Responses and Objections to Defendant's First Set of Requests for Production***

Source / Locator: Served Discovery Response (101 pp.)
Date / Timestamp: Served 2026-09-28
Target Claims: Count I (CEPA), Count II, Prayer Item D (Fees & Sanctions)

Evidentiary Summary & Purpose:
EPAM discovery responses admitting in RFP 20 that EPAM conducted zero compliance investigation into Dr. Rao's Gilead staffing escalation and failed to produce client authorization under RFP 7.

*Authentication & Admissibility:*
*Authenticated pursuant to Fed. R. Evid. 901 and 28 U.S.C. § 1746 in Part IX (¶ 51) of the Declaration of Dr. Gowtham Rao, MD, PhD in Support of Motion for Leave to File First Amended Counterclaims.*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EPAM SYSTEMS, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>GOWTHAM RAO,<br><br>Defendant/Counterclaim-Plaintiff. | Civil Action No. 2:25-cv-06260 |

**EPAM SYSTEMS, INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff/Counterclaim-Defendant EPAM SYSTEMS, INC. ("EPAM"), by and through its attorneys, Seyfarth Shaw LLP, hereby submits its Responses and Objections to Defendant/Counterclaim-Plaintiff GOWTHAM RAO's First Set of Requests for Production of Documents.

**RESERVATION OF RIGHTS**

Any responses to Defendant's Requests will be subject to EPAM's right to object to the admission into evidence of any and all such responses on the grounds that they, or any of them, are not relevant to the issues in this action or are otherwise inadmissible. The responses and objections contained herein are based on EPAM's current knowledge, information and belief. These responses and objections are subject to amendment and supplementation as EPAM acquires additional information and completes its review and analysis of the facts and issues presented by the Complaint.

## PRELIMINARY STATEMENT

1. The following responses are given without prejudice to EPAM's right to produce evidence of any subsequently discovered fact or facts. EPAM accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed and contentions are made and/or documents are discovered.

2. The responses contained herein are made in a good-faith effort, but should in no way be to the prejudice of EPAM in relation to further discovery, research or analysis.

3. The Requests have been interpreted and answered in accordance with plain English usage. Many of the Requests, however, are vague and ambiguous. EPAM has done its best to interpret these requests as it understands them.

4. EPAM will not produce any document covered by the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity. EPAM will produce a privilege log listing these documents.

5. EPAM has already produced significant documents and is producing additional documents together with these responses. EPAM will supplement its production if it locates additional responsive documents.

6. Rao originally served 84 compound Requests. The Requests are, collectively, extraordinary in breadth and burden. The Requests now demand searches across scores of custodians, clients, business units, repositories, communications platforms, security systems, personnel systems, financial systems, and years of records. Many Requests seek every version, every communication, every attachment, every metadata field, and every system event. Taken individually and collectively, the Requests are disproportionate to the needs of this case.

7. Rao has refused to agree to an appropriate protective order. Many Requests seek EPAM trade secrets, source code, security information, confidential client materials, personnel information, acquisition materials, financial data, and other competitively sensitive information. Rao's refusal to provide basic confidentiality protections substantially heightens the burden and prejudice associated with production. EPAM will not produce sensitive EPAM or third-party information absent adequate safeguards and reserves all rights to seek appropriate relief.

8. EPAM objects to Rao's attempts to dictate the custodians, systems, searches, fields, formats, and completeness certifications EPAM must use. EPAM will conduct reasonable and proportionate searches based on the claims and defenses, the sources reasonably available to it, and the discovery obligations imposed by the Federal Rules. EPAM will not create documents, compilations, reports, or fields that do not exist in the ordinary course.

9. Discovery, EPAM's technical and forensic investigation, and damages analysis remain ongoing. Any statement that EPAM may produce documents is not a representation that responsive, nonprivileged documents exist, that EPAM accepts Rao's characterization of the Request, or that EPAM will search every source identified by Rao. EPAM will produce responsive documents as they are kept in the ordinary course of business and will not create or manufacture data, metadata, fields, compilations, reports, or certifications that do not exist.

## RESPONSES & OBJECTIONS

**DOCUMENT REQUEST NO. 1 - Takeda agreements governing ownership, licensing, and reuse of the Contested Materials:**

Produce the final executed Takeda Agreement and each executed amendment or incorporated schedule that addresses ownership, work-product assignment, licensing, permitted reuse, or commercialization of a Contested Material. Produce each nonprivileged negotiation redline and Communication that proposed, accepted, or rejected a substantively different term on one of those subjects.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce the final executed Takeda agreements that can be located after a proportionate search.

EPAM will not undertake a search for drafts, negotiation redlines, or communications concerning the negotiation of the Takeda Agreement. Those materials have negligible or no relevance to the claims and defenses in this action beyond the final executed agreements themselves, and searching for them would impose a burden disproportionate to their likely benefit. In particular, identifying all potentially responsive drafts, redlines, and negotiation communications would require expansive searches of historical communications and files across multiple custodians for antecedent versions and negotiations concerning agreements whose final executed terms EPAM has agreed to produce. EPAM therefore objects to that portion of the Request as overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to producing the responsive executed agreements absent an appropriate protective order or confidentiality agreement because they contain confidential and commercially sensitive EPAM and third-party information. Rao has declined to agree to such protections. EPAM will produce the responsive executed agreements once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 2 - Takeda statements of work, delivery records, project-planning records, and client communications identifying the Contested Materials:**

Produce each executed statement of work, work order, change order, milestone acceptance, delivery report, or closeout record under the Takeda Agreement that identifies a Contested Material as work performed, funded, accepted, or delivered for Takeda. Produce each final scope description and each project-management epic, sprint, release, backlog item, or functionally equivalent planning record that identifies a Contested Material, its source code, tool, architecture, deliverable, project code, billing code, acceptance, or delivery. Produce the final deliverable reconciliation and each substantive client Communication that identifies one of those subjects. Limit the required search to the Takeda project, billing, work-management, and delivery systems maintained from June 1, 2019 through October 15, 2025. EPAM must produce every responsive item located by the required search.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce executed statements of work, work orders, change orders, and delivery reports, if located, for the period January 1, 2024 through October 15, 2025.

EPAM will not undertake the substantially broader search demanded by this Request for every project-management "epic, sprint, release, backlog item," or "functionally equivalent planning record," or for every record identifying source code, tools, architecture, deliverables, project codes, billing codes, acceptance, or delivery. Those categories encompass potentially extensive project-management and technical records without regard to whether any particular record bears materially on the claims or defenses in this action. Searching EPAM's project, billing, work-management, and delivery systems for every record arguably falling within those broadly defined categories would impose substantial burden and expense disproportionate to the likely benefit of the additional information, particularly where EPAM has agreed to search for and produce the executed agreements and final records identified above.

EPAM further objects to the Request's time period beginning June 1, 2019 as overbroad and disproportionate. EPAM will conduct the search described above for documents dated January 1, 2024 through October 15, 2025.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 3 - Rao's and EPAM's communications with Takeda about the Contested Materials, November 18, 2024 through October 15, 2025:**

Produce Communications from November 18, 2024 through October 15, 2025 between Rao and Sunil Dravida, Saurin Jani, or another Takeda representative that discuss the development, delivery, ownership, reuse, demonstration, or commercialization of a Contested Material. Produce Communications during the same period between an EPAM account and a Takeda account that name "Gowtham" or "Rao" and discuss one of those subjects. Limit the required EPAM search to Rao, Evgeny Sidenko, Dmitrii Ilin, Gregory Klebanov, Lucy McDermott, Anastasia Christianson, and the account lead for the corresponding Takeda project. Search each natural person and each EPAM-issued or Takeda-issued corporate identity assigned to that person. EPAM must produce every responsive Communication, responsive thread, and attachment located by the required search. The listed custodians and accounts limit the required search sources, not the production of responsive material found in those sources.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged, non-work-product communications responsive to this Request, and will produce any such documents located. EPAM's search will be limited to Rao, Evgeny Sidenko, Dmitrii Ilin, Gregory Klebanov, Lucy McDermott.

EPAM will not search the files of other custodians beyond those identified above. EPAM objects to that portion of the Request as overbroad and disproportionate because it would require the identification, collection, and search of additional custodians where EPAM has agreed to conduct a proportionate search of the five custodians identified above for the communications at issue.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 4 - Written instruments on which EPAM bases its claimed ownership of and exclusion rights in the Contested Materials:**

Produce documents sufficient to show each contract, assignment, acquisition schedule, license, or other written instrument on which EPAM relied as of October 15, 2025 or now relies to claim title to or a proprietary interest in each Contested Material or to claim the right to restrict any person or entity outside EPAM from possessing, using, disclosing, licensing, demonstrating, or commercializing it. This request seeks the written instrument that gives EPAM the asserted ownership or exclusion right. A document showing only that EPAM developed, possessed, or used a product is not sufficient.

**RESPONSE:**

EPAM will produce Rao's Employment Covenants Agreement, plus relevant policies and procedures.

EPAM objects to this Request to the extent it assumes that EPAM's ownership of or proprietary rights in the Contested Materials must derive from a discrete "contract, assignment, acquisition schedule, license, or other written instrument." EPAM disputes that premise and does not accept Rao's assertion that a document reflecting EPAM's development or creation of the materials is necessarily insufficient to establish EPAM's rights. EPAM therefore will not undertake a search premised on Rao's characterization of the particular documentation legally necessary to establish ownership or exclusion rights.

EPAM further objects to the extent the Request could be construed to require production of every agreement or other document concerning employees or other persons who contributed to the development of the Contested Materials. Such a search would encompass potentially numerous employment and other agreements containing confidential third-party information, without regard to whether EPAM relies upon any particular agreement to establish the rights at issue. EPAM will instead produce the documents identified above that it relies upon concerning the rights addressed by this Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will

produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 5 - Rao's Takeda ownership objections and EPAM's response:**

Produce each of the following, in each case from July 1 through October 15, 2025:

(a) each nonprivileged business Communication that states, summarizes, forwards, discusses, evaluates, escalates, or responds to Rao's concern, report, or objection about Takeda's ownership of or contractual rights in a Contested Material or another Takeda-funded deliverable or about EPAM's or Odysseus's lack of ownership, license, or contractual authority to reuse, demonstrate, market, sell, license, commercialize, or represent that material as its own;

(b) each nonprivileged business Communication that discusses whether EPAM Synapse had code, repository, architectural, contractual, or legal separation from Takeda-Synapse or Prometheus;

(c) each nonprivileged business Communication that discusses Rao's refusal or recommendation not to market or demonstrate such material or EPAM's response to his concern, report, objection, refusal, or recommendation; and

(d) each nonprivileged Communication among the Decision-Makers that refers to Rao's Takeda ownership objections, the absence of code, repository, architectural, contractual, or legal separation between EPAM Synapse and Takeda-Synapse or Prometheus, Rao's refusal or recommendation not to market or demonstrate a Contested Material, Rao's escalation to or through Katie Barista, or either statement quoted in this request; and

(e) each nonprivileged business Communication that discusses Takeda's ownership of or contractual rights in a Contested Material or another Takeda-funded deliverable; EPAM's or Odysseus's ownership, license, or contractual authority to reuse, demonstrate, market, sell, license, commercialize, or represent such material as its own; the application of the Takeda Agreement's intellectual-property, work-product, assignment, or permitted-reuse terms to a Contested Material; whether the Master Services Agreement or a statement of work controlled on one of those subjects; or whether to obtain Takeda's consent, a license, or a contract amendment before reusing, demonstrating, marketing, or commercializing such material.

A Communication is responsive under subparts (a), (b), (d), and (e) whether or not Rao authored, sent, received, or was copied on it, whether or not it names or refers to Rao, and whether or not Rao raised the subject it discusses. Subparts (b) and (e) reach EPAM's internal discussion of the identified subjects on their own terms, and EPAM may not withhold a responsive Communication on the ground that Rao was not a participant in it or did not originate the subject.

Produce each complete nonprivileged Communication chain that Katie Barista initiated, forwarded, or continued from July 1 through October 15, 2025 to investigate, route, obtain an answer to, or otherwise assist with Rao's question, concern, report, or objection concerning ownership, licensing, code or repository separation, architectural or legal separation, permitted

reuse, demonstration, marketing, or commercialization of a Contested Material or another Takeda-funded deliverable. Produce the complete Communication chain reproduced in ECF No. 33-2 that contains Rao's statement, "we do not have any pre-existing IP in this solution – everything was built on Takeda's dime." Produce the complete nonprivileged business Communication chain reproduced in ECF No. 33-2 that reports, "legal said nope. You were right. SOW said cool but MSA is not… everything we build belongs to Takeda and the MSA controls over the SOW."

A Communication is responsive even if it does not quote or paraphrase either statement. Include all attachments and nonprivileged forwarding or response Communications. Limit the required search to Rao, the Decision-Makers, Anastasia Christianson, Vojtech Huser or Heuser, Katie Barista, each manager, account representative, sales representative, or non-legal compliance employee who received, forwarded, evaluated, escalated, or responded to Rao's concern, report, objection, refusal, or recommendation, and each EPAM or Odysseus employee who participated in a Communication described in subpart (b) or (e). The listed custodians limit the required search sources, not the production of responsive material found in those sources.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged, non-work-product documents responsive to this Request and will produce any such documents that are located. EPAM's search will be limited to the files of Rao, June Dinitz, Jim Gatch, Gregory Klebanov, Lucy McDermott, Larry McKlaine, and Jonathan Rioux.

EPAM will not undertake the substantially broader custodian search demanded by this Request, including searches of every manager, account representative, sales representative, non-legal compliance employee, or other EPAM or Odysseus employee who may have participated in a communication falling within the numerous categories identified in the Request. EPAM objects to that portion of the Request as overbroad and disproportionate because it potentially encompasses an indeterminate number of additional custodians based solely on their participation in communications concerning broadly defined subjects. EPAM will instead conduct a proportionate search of the custodians identified above for communications responsive to the subject matter and time period identified in the Request.

EPAM further objects to the extent the Request seeks or would require the disclosure of communications protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection, notwithstanding the Request's characterization of certain categories as "nonprivileged."

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 6 - EPAM's marketing of the Contested Materials to Pharma Clients and its later client-facing communications concerning Rao, CoReason Inc., and this action:**

Produce each final or substantively different presentation, demonstration, proposal, or sales attachment that EPAM actually sent or showed from January 1 through October 15, 2025 to a Pharma Client to market a Contested Material.

From October 15, 2025 through the date of response, produce each final or substantively different presentation, demonstration, proposal, sales attachment, client-meeting invitation, attendee record, recording, transcript, chat, note, recap, question-and-answer record, or follow-up Communication that EPAM sent, showed, or used with a Pharma Client if the item (a) identifies Rao or CoReason Inc., (b) discusses the origin, authorship, ownership, license, or development of a Contested Material, or (c) records any EPAM employee discussing this action or stating or implying that Rao stole files, misappropriated trade secrets, sabotaged EPAM, committed a crime, or engaged in professional misconduct. Include the transmittal, invitation, attendee record, or approval record that identifies the date, client recipient, EPAM presenter, and authorizing manager. Limit the required search to the business accounts of Anastasia Christianson, Gregory Klebanov, Greg Killian, Chris Waller, Sergey Yezhkov, Jonathan Rioux, and each EPAM presenter, organizer, authorizing manager, or client-account lead identified in an existing responsive presentation or meeting record.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged, non-work-product documents

responsive to this Request and will produce any such documents located. EPAM's search will be limited to the files of Gregory Klebanov and Lindsey Schuster.

EPAM will not search for or produce draft or non-final versions of presentations, demonstrations, proposals, sales materials, or other documents where a final version is available. EPAM objects to that portion of the Request as overbroad and disproportionate because searching for and reviewing each draft or substantively different version would substantially expand the collection and review required while providing negligible or no additional relevant information beyond the final materials EPAM has agreed to search for and produce.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 7 - EPAM's and Odysseus's requests to Takeda for permission to reuse, co-own, demonstrate, or commercialize the Contested Materials and the grant, denial, withdrawal, or abandonment of those requests:**

Produce nonprivileged Communications, meeting notes, draft proposals, informal inquiries, written authorizations, consents, assignments, licenses, proposed amendments, or proposed exceptions between EPAM or Odysseus personnel and Takeda representatives from June 1, 2019 through October 15, 2025 that requested, discussed, evaluated, or negotiated permission to reuse, co-own, demonstrate, market, sell, license, or commercialize a Contested Material or that granted, denied, rejected, withdrew, or abandoned a request for that permission.

EPAM or Odysseus personnel include, without limitation, Evgeny Sidenko, Gregory Klebanov, Dmitrii Ilin, Lucy McDermott, and Anastasia Christianson. Takeda representatives include, without limitation, Sunil Dravida, Saurin Jani, and another Takeda representative who participated in the identified request or discussion. Search the relevant contract, account, sales, delivery, and client-communication locations and the business accounts of each representative who participated in the identified request, discussion, evaluation, negotiation, decision, withdrawal, or abandonment.

**RESPONSE:**

EPAM objects to this request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request seeks more than six years of communications, meeting notes, proposals, inquiries, authorizations, consents, assignments, licenses, proposed amendments, and other materials concerning any request or discussion between EPAM or Odysseus and Takeda regarding the reuse, ownership, demonstration, marketing, sale, licensing, or commercialization of any Contested Material. The Request is not reasonably limited to the particular transactions, communications, or events underlying the parties' claims and defenses and instead demands a broad historical inquiry into EPAM's and Odysseus's relationship and dealings with Takeda concerning the Contested Materials.

EPAM further objects to the Request because it requires searches across contract, account, sales, delivery, and client-communication repositories and the business accounts of an open-ended universe of EPAM, Odysseus, and Takeda personnel who may have participated in any responsive request, discussion, evaluation, negotiation, decision, withdrawal, or abandonment. Responding would therefore require EPAM first to identify potentially responsive historical discussions and participants and then expand its collection and search based on information uncovered during that investigation. The burden of that open-ended, multi-year search is disproportionate to the needs of the case.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**<u>DOCUMENT REQUEST NO. 8 - EPAM's Life Sciences and Healthcare client-intellectual-property, work-for-hire, reuse, and commercialization policies and written procedures:</u>**

Produce the client-intellectual-property, work-for-hire, reuse, and commercialization policies or written procedures in effect for EPAM's Life Sciences and Healthcare business from January 1 through October 15, 2025.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for responsive, nonprivileged policies or written procedures and will produce any such documents that are located.

**DOCUMENT REQUEST NO. 9 - The demonstration of Roche or Genentech material to Sanofi or another prospective client described by Greg Killian, the client objection, EPAM's response, and any employment action:**

Produce the nonprivileged ordinary-course business records concerning the incident that Greg Killian described to Rao in which EPAM or its personnel showed Roche or Genentech software, code, architecture, or intellectual property to Sanofi or another prospective client without client authorization.

Limit the production to records that identify the demonstrated material, the client objection, the final business response, and any employment action imposed on a person who reported, opposed, authorized, or participated in the demonstration.

Produce responsive records created on or after the date of the earliest Roche or Genentech objection, complaint, or notice concerning the demonstration, through October 15, 2025, together with the records that identify the demonstration itself and the date it occurred. The incident and the client objection preceded January 1, 2024, and no date in this set limits this request to a period beginning on that date. Search the business records of Greg Killian, Gregory Klebanov, Sergey Yezhkov, and the account personnel who handled that incident.

**RESPONSE:**

EPAM objects to this Request in its entirety. The Request concerns an alleged incident involving Roche or Genentech materials and a different prospective client that, by Rao's own description, occurred before Rao's employment with EPAM. The Request therefore seeks documents concerning a separate incident involving different client materials, different circumstances, and potentially different employees that has negligible or no relevance to the claims, counterclaims, or defenses in this action.

EPAM further objects because the Request is overbroad and disproportionate to the needs of the case. Although the Request seeks records through October 15, 2025, it sets no beginning

date and expressly requires EPAM to search for records concerning an alleged incident and client objection predating January 1, 2024. Locating such materials would require EPAM to identify and investigate a historical incident unrelated to Rao, determine the personnel and accounts involved, and search historical records concerning that separate incident, including records relating to any resulting employment action. The burden and expense of that investigation and search is disproportionate to the negligible or nonexistent relevance of the information sought. EPAM therefore will not undertake the search demanded by this Request.

**DOCUMENT REQUEST NO. 10 - Gilead geographic-access, credential-use, and screen-access requirements known and applied by EPAM:**

Produce each of the following that EPAM applied, relied on, or understood to govern the physical locations from which Gilead Personnel could access United States healthcare data or a Gilead Account system at any time from January 1, 2024 through October 15, 2025: contractual provision, statement-of-work term, change-order term, data-protection term, business-associate term, security schedule, approved-country requirement, client instruction, onboarding material, training material, playbook, meeting note, recording, transcript, acknowledgment, audit, or compliance record.

Produce each retained Communication or meeting record that states, memorializes, summarizes, reflects, applies, or explains a formal or informal written or oral Gilead instruction, expectation, or established course of dealing concerning approved countries, physical work location, credential use, screen access, or access to United States healthcare data or a Gilead Account system.

Produce documents sufficient to show how and when EPAM's account, staffing, security, or compliance personnel received, communicated, trained on, implemented, audited, or enforced each requirement or expectation.

Include a responsive record created before January 1, 2024 if EPAM continued to apply or rely on it during the stated period. EPAM need not create a record of an oral instruction or expectation that EPAM did not memorialize or retain.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and

defenses. The Request seeks an exhaustive collection of contractual provisions, statements of work, change orders, data-protection and business-associate terms, security schedules, client instructions, onboarding and training materials, playbooks, meeting records, recordings, transcripts, acknowledgments, audits, compliance records, and communications concerning virtually every aspect of geographic access, credential use, screen access, and access to United States healthcare data or Gilead systems.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks an exhaustive account-wide inquiry into Gilead's requirements and EPAM's implementation, training, auditing, and enforcement of those requirements. To the extent materials concerning broader Gilead Account practices unrelated to Rao's alleged report have any relevance to the claims or defenses, that relevance is negligible and does not justify the breadth and burden of the requested search.

EPAM further objects because the Request expressly extends beyond the January 1, 2024 through October 15, 2025 period to any earlier record that EPAM allegedly "continued to apply or rely on" during that period. Determining whether historical materials continued to be applied or relied upon would require an additional open-ended investigation of records preceding the stated period and further expands an already disproportionate Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, security, or compliance information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 11 - EPAM's Gilead Account personnel roster, recorded and represented work countries, and the stated reasons for staffing, onboarding, access, rejection, removal, and offboarding decisions**

Produce documents sufficient to identify each Gilead Personnel whom EPAM assigned,

proposed, submitted for onboarding, staffed, billed, or made available to the Gilead Account from January 1, 2024 through October 15, 2025.

For each such person, produce the following maintained fields: name; employing entity; role; proposal date; onboarding status; assignment dates; project code; recorded work country; country represented to Gilead; client acceptance or rejection date; access-denial date; removal or offboarding date; assignment status; and stated reason for any rejection, access denial, delayed onboarding, removal, offboarding, or end of the person's Gilead contractor assignment.

Produce each retained Gilead Communication or ordinary-course onboarding, staffing, access, or offboarding decision record that states that reason through the date of response.

The stated period limits the underlying proposal, onboarding, assignment, staffing, access, rejection, removal, offboarding, or assignment-end event. The stated period does not limit the creation date of a responsive decision or reason record. An official staffing or onboarding export and the related client decision record are sufficient.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks comprehensive personnel, staffing, onboarding, access, billing, project, work-location, rejection, removal, and offboarding information for every individual whom EPAM assigned, proposed, submitted for onboarding, staffed, billed, or made available to the Gilead Account during the requested period.

The Request is not limited to the particular individual, staffing decision, or work-location concern Rao alleges he reported or complained about and instead seeks account-wide discovery concerning every individual who worked or was proposed to work on the Gilead Account and every staffing, onboarding, access, rejection, removal, or offboarding decision concerning those individuals.

EPAM further objects to the Request's demand that EPAM produce numerous maintained fields for each individual, including employing entity, role, proposal date,

onboarding status, assignment dates, project code, recorded and represented work countries, acceptance or rejection dates, access-denial dates, removal or offboarding dates, assignment status, and reasons for specified staffing or access decisions. To the extent those fields are maintained across different systems or records, the Request would effectively require EPAM to create a comprehensive personnel and staffing compilation that is not maintained in the ordinary course of business. EPAM will not create or manufacture a new record, compilation, or dataset in response to the Request.

EPAM further objects because the Request is temporally overbroad insofar as it expressly seeks responsive decision or reason records created without any limitation on their creation date. That provision potentially extends the Request indefinitely beyond the stated January 1, 2024 through October 15, 2025 period and further expands the burden of the requested search.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, or financial information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 12 - Candidate submissions, screening records, and country representations EPAM provided to Gilead for Access-Event Gilead Personnel, and Gilead's resulting decisions:**

Produce each of the following that EPAM sent or made available to Gilead for Access-Event Gilead Personnel from January 1, 2024 through October 15, 2025: resume, curriculum vitae, candidate submission, worker profile, role description, onboarding record, client-verification record, security-screening record, interview record, biographical page, or representation concerning employer, country of work, country of residence, or country of citizenship. This includes a person whom Gilead rejected, declined to onboard, removed, offboarded, or directed EPAM to remove from or stop assigning to the Gilead Account.

Produce through the date of response each related nonprivileged client onboarding decision, access decision, rejection, removal, offboarding, or contractor-assignment termination record and each stated reason.

The stated period limits the underlying proposal, onboarding, assignment, or staffing event. The stated period does not limit the creation date of a responsive decision or reason record. EPAM may redact home addresses and unrelated personal information.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request in its entirety as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks extensive candidate, personnel, screening, onboarding, access, and biographical information concerning Access-Event Gilead Personnel, including resumes, curricula vitae, candidate submissions, worker profiles, role descriptions, onboarding records, client-verification records, security-screening records, interview records, and information concerning country of work, residence, and citizenship.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks broad discovery into the qualifications, employment history, personal information, screening, onboarding, and access history of Gilead personnel generally.

EPAM further objects because the Request seeks sensitive information concerning nonparties, including resumes, biographical information, screening information, employment information, country of residence, and country of citizenship. Rao's agreement that certain personal information may be redacted does not cure the overbreadth, burden, or privacy concerns associated with producing these records for personnel unrelated to the particular conduct underlying Rao's allegations.

EPAM further objects because the Request is temporally overbroad insofar as it seeks onboarding, access, rejection, removal, offboarding, and termination records created through the date of response and expressly provides that there is no creation-date limitation for responsive decision or reason records. That formulation potentially extends the requested search beyond the

January 1, 2024 through October 15, 2025 period and further increases the burden of the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 13 - Project, billing, employment, work-country, and time records for Access-Event Gilead Personnel:**

Produce documents sufficient to show each project code, official project name, billing code, cost center, employing entity, assigned role, authorized work country, recorded work country, country represented to Gilead, approved remote-work country, approved country change, assignment date, and time entry for Access-Event Gilead Personnel from January 1, 2024 through October 15, 2025.

Produce each bench, internal, or other-client time entry recorded during the person's proposed or actual Gilead assignment or during the preceding or following 90 days. Limit the search to EPAM's staffing, people, time, project-accounting, remote-work, and Gilead onboarding systems.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks extensive project, billing, employment, work-location, and timekeeping information concerning Access-Event Gilead Personnel, including project and billing codes, cost centers, employing entities, roles, country information, assignment dates, and individual time entries. It further seeks bench, internal, and other-client time entries for the 90-day periods preceding and following each individual's proposed or actual Gilead assignment.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks comprehensive project-assignment, billing, cost-center,

employment, and timekeeping information concerning Access-Event Gilead Personnel generally, including work on projects and for clients entirely unrelated to Gilead.

EPAM further objects because responding to the Request would require EPAM to identify, collect, and review records across multiple staffing, personnel, timekeeping, project-accounting, remote-work, and Gilead onboarding systems for numerous nonparty employees. To the extent the requested information has any relevance, that relevance is negligible and does not justify the substantial burden associated with collecting and reviewing these disparate categories of personnel, project, billing, and timekeeping information.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 14 - Gilead communications about the identity, employer, work location, credentials, screening results, and staffing and access decisions concerning Gilead Personnel:**

Produce Communications created on or before the date of response between EPAM and Gilead representatives, including Ram Varma and Alex Asiimwe, that discuss any of the following subjects concerning a proposal, onboarding, assignment, staffing decision, access decision, or access event that was pending or occurred from January 1, 2024 through October 15, 2025:

(a) the identity, employer, role, physical work location, or offshore status; (b) country of residence or citizenship when used for a staffing, screening, or access decision; (c) proposal, onboarding, acceptance, rejection, delayed onboarding, access denial, removal, offboarding, or end of a contractor assignment; (d) credential use, screen access, or data-access authorization; (e) client-verification result, security-screening result, audit flag, or notice; or (f) a stated reason for a Gilead staffing or access decision.

The stated period limits the underlying proposal, onboarding, assignment, decision, or event. The stated period does not limit the creation date of a responsive Communication.

Limit EPAM custodians to Gregory Klebanov, Greg Killian, Lucy McDermott, Jim Singer, Vojtech Huser or Heuser, Peter Berzin, Rao, the Gilead account manager or client partner, and the staffing or security manager responsible for the person or event discussed. Search each natural person and each assigned EPAM-issued or Gilead-issued corporate identity.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a proportionate search for documents responsive to this request which concern Anna Tauetekova, the sole individual in connection with whom Dr. Rao alleges he made a report. EPAM will produce responsive, non-privileged, non-work-product documents located through that search.

EPAM objects to the Request to the extent it seeks communications and records concerning Gilead Personnel other than Ms. Tauetekova as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request broadly seeks communications concerning the identity, employer, role, work location, country of residence or citizenship, onboarding, acceptance, rejection, access denial, removal, offboarding, credential use, screen access, data-access authorization, screening results, audit flags, and other staffing or access decisions concerning Gilead Personnel generally, without limiting those categories to the individual in connection with whom Dr. Rao alleges he made a report. EPAM will not conduct a broader search concerning Gilead Personnel unrelated to that alleged report.

EPAM further objects to the Request's proposed custodian scope, including its demand to search the files and corporate identities of an open-ended group of EPAM and Gilead personnel, as overbroad, unduly burdensome, and disproportionate. EPAM will conduct the proportionate search described above and will not undertake the broader custodian and account-based search demanded by the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 15 - Repository, task, code-review, file-transfer, and delivery records of Gilead work by Access-Event Gilead Personnel, and records of Gilead work performed from a restricted or unapproved country or routed through another worker:**

Produce existing source-code-repository, task-management, code-review, file-transfer, and delivery records from January 1, 2024 through October 15, 2025 that show work performed or transmitted by Access-Event Gilead Personnel on the Gilead Account.

Produce Communications in which Access-Event Gilead Personnel sent code, scripts, patches, data instructions, or technical instructions through another worker for submission to a Gilead environment.

Produce nonprivileged Communications or security tickets that discuss Access-Event Gilead Personnel performing Gilead work from a restricted or unapproved country or through another worker's account, credential, screen, or session. For structured repository and task records, limit the production to the maintained user, author, committer, timestamp, branch, merge-request or pull-request, code-review, SSH-key identifier, GPG-signature status, project or repository, object or task, recipient, and transmission or delivery event.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks extensive source-code-repository, task-management, code-review, file-transfer, delivery, communications, security-ticket, and granular technical metadata concerning work performed or transmitted by Access-Event Gilead Personnel on the Gilead Account.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks comprehensive discovery into the technical history of work performed by Access-Event Gilead Personnel generally.

EPAM further objects because the Request demands granular technical and security information, including maintained user, author, and committer information, timestamps, branches, merge or pull requests, code reviews, SSH-key identifiers, GPG-signature status,

repositories, tasks, recipients, and transmission or delivery events. Responding would require EPAM to identify, collect, and review technical records across multiple repositories, task-management systems, code-review systems, file-transfer systems, delivery systems, and security records. To the extent such materials have any relevance to Rao's claims, that relevance is negligible and does not justify the substantial technical collection and review demanded.

EPAM further objects to the extent the Request seeks communications or security records concerning any Access-Event Gilead Personnel allegedly performing work from a restricted or unapproved country or through another worker's account, credential, screen, or session, without limiting that discovery to the particular individual or conduct Rao alleges he reported. The Request therefore improperly expands discovery from Rao's alleged report into an account-wide investigation of potential work-location, credential, access, and security issues involving other personnel.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 16 - Authentication, network, and security-alert records of Gilead Account access by Access-Event Gilead Personnel, and records associating the credentials used with an EPAM identity or endpoint:**

Produce existing identity, authentication, single-sign-on, VPN, virtual-desktop, proxy, cloud, database, endpoint, SIEM, and security-alert records from January 1, 2024 through October 15, 2025 that show a successful, failed, or blocked Gilead Account access by Access-Event Gilead Personnel or a location, identity, device, credential, impossible-travel, or unauthorized-country alert concerning that access. Limit the production to systems that contained United States healthcare data or enforced a location, identity, device, or credential restriction. Produce the maintained user, UTC timestamp, source IP, derived country, device, target system, event type, result, and alert fields.

Produce each existing record that associates a Gilead credential, single-sign-on account, or client username used in the event with an EPAM employee identity or EPAM-managed endpoint.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks extensive identity, authentication, single-sign-on, VPN, virtual-desktop, proxy, cloud, database, endpoint, SIEM, and security-alert records reflecting every successful, failed, or blocked access event by Access-Event Gilead Personnel, as well as location, identity, device, credential, impossible-travel, and unauthorized-country alerts concerning such access.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks an account-wide investigation into authentication, network, endpoint, and security records concerning Access-Event Gilead Personnel generally.

EPAM further objects because the Request demands granular authentication and security information, including user identities, timestamps, source IP addresses, derived countries, device information, target systems, event types, results, alert information, and records associating Gilead credentials or usernames with EPAM employee identities or managed endpoints. Responding would require the identification, collection, and review of technical and security information across numerous systems and potentially substantial volumes of access events. To the extent such materials have any relevance to Rao's claims, that relevance is negligible and does not justify the substantial technical collection and review demanded.

EPAM further objects to the extent the Request seeks authentication, network, security, or access records maintained by Gilead rather than EPAM. EPAM will not produce documents outside its possession, custody, or control.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 17 - Approvals, exceptions, waivers, risk acceptances, remediation plans, and access restrictions issued by EPAM or Gilead for out-of-country work, credential use, screen access, and restricted-country access on the Gilead Account:**

Produce each written approval, exception, waiver, risk acceptance, remediation plan, or access restriction that EPAM or Gilead issued from January 1, 2024 through October 15, 2025 for Access-Event Gilead Personnel to work from a country different from the country represented to Gilead, to use another person's credential, to view another person's screen, or to access a Gilead Account system from a restricted country.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks every written approval, exception, waiver, risk acceptance, remediation plan, and access restriction issued by EPAM or Gilead concerning Access-Event Gilead Personnel working from a country different from the country represented to Gilead, using another person's credential or screen, or accessing a Gilead Account system from a restricted country.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks account-wide discovery into every approval, exception, waiver, risk acceptance, remediation plan, or access restriction concerning Access-Event Gilead Personnel.

EPAM further objects to the extent the Request seeks approvals, exceptions, waivers, risk acceptances, remediation plans, or access restrictions issued or maintained by Gilead rather than EPAM. EPAM will not produce documents outside its possession, custody, or control.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 18 - EPAM's invoices, invoice-support, time, staffing, and project-accounting records for work billed or reported to Gilead for Access-Event Gilead Personnel:**

Produce the invoices, invoice-support records, approved time entries, staffing reports, and project-accounting records by which EPAM billed, sought payment, or reported work to Gilead for Access-Event Gilead Personnel from January 1, 2024 through October 15, 2025.

Limit the production to the maintained worker identity, role, dates, hours, project code, recorded work country, billing classification, and source record. EPAM may redact unrelated rates and unrelated personnel.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks invoices, invoice-support records, approved time entries, staffing reports, and project-accounting records concerning Access-Event Gilead Personnel generally, including worker identities, roles, dates, hours, project codes, recorded work countries, billing classifications, and source records.

The Request is not limited to the particular individual or conduct Rao alleges he reported or complained about and instead seeks comprehensive billing, timekeeping, staffing, and project-accounting records concerning Access-Event Gilead Personnel generally.

EPAM further objects because responding to the Request would require EPAM to identify, collect, and review multiple categories of billing, timekeeping, staffing, and project-accounting records concerning numerous nonparty personnel. The requested information may

reside across different systems and records and, to the extent the requested fields are not maintained together in the ordinary course of business, the Request would effectively require EPAM to create or compile a dataset containing the particular fields selected by Rao. EPAM will not create or manufacture a new record, compilation, or dataset in response to the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 19 - Rao's reports and objections concerning the location, staffing, billing, credential use, screen access, and data access of Gilead Personnel, and EPAM's response:**

Produce Rao’s Communications created from July 1 through October 15, 2025 reporting or objecting to the location, staffing, billing, credential use, screen access, or data access of Gilead Personnel. Produce Communications created during that period exchanged by any two or more of Rao, Gregory Klebanov, Lucy McDermott, and Access-Event Gilead Personnel that state or discuss the person’s actual or represented physical work location, credential use, screen access, or performance of Gilead work through another worker.

Produce each nonprivileged response, follow-up, escalation, investigation referral, or corrective-action Communication created through the date of response. The stated period limits Rao’s underlying report or objection. The stated period does not limit the creation date of a responsive response or follow-up. Limit EPAM custodians to Gregory Klebanov, Greg Killian, Sergey Yezhkov, Lucy McDermott, Peter Berzin, Larry McKlaine, June Dinitz, Access-Event Gilead Personnel, and the Gilead account manager, client partner, staffing manager, security manager, or compliance manager who received or handled Rao’s report.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged documents concerning or arising from assertions by Rao, if any, that an employee staffed on a Gilead project was working from an improper location, and will produce responsive documents, if any, located through that search. That is the only purported protected activity that Rao testified to at his deposition. EPAM objects to searching for or producing “Communication[s]” or other documents that had no connection to any purported protected activity by Rao.

EPAM's search will be limited to the files of Rao, June Dinitz, Gregory Klebanov, Lucy McDermott, and Larry McKlaine. EPAM will not search the files of the additional, unidentified account, staffing, security, compliance, or client personnel demanded by the Request because that open-ended custodian formulation would substantially expand the collection and review burden beyond the persons from whom EPAM has agreed to collect.

EPAM further objects to the extent the Request encompasses ordinary-course communications that merely state or display an employee's work location, such as signature blocks, addresses, or routine staffing information, without reflecting any report, objection, escalation, or concern regarding inaccurate work-location information. Such materials have negligible or no relevance to Rao's alleged protected activity and will not be treated as responsive.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope of the proportionate search described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 20 - EPAM's intake, investigation, escalation, corrective-action, and no-action records responding to the Communications produced under Request No. 19:**

Produce each intake record, investigation file, security review, compliance review, client-escalation record, corrective-action record, or nonprivileged decision not to act that EPAM created in response to a Communication produced under Request No. 19. Produce documents sufficient to show the opening date, assigned function, nonprivileged factual finding, client contact, corrective action, and closure date.

**RESPONSE:**

To the best of its knowledge, EPAM represents that no such documents exist.

EPAM further objects to the Request to the extent it requires EPAM to create a chronology, compilation, or data fields identifying an opening date, assigned function, factual finding, client contact, corrective action, or closure date where such a record or compilation is not maintained in the ordinary course of business. EPAM will not create or manufacture documents, compilations, or data that do not exist.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 21 - EPAM policies and written procedures on disclosing personnel location to Gilead, recording a worker's country, staffing personnel on demand, credential sharing, screen viewing by an uncleared worker, remote access from another country, sanctions screening, export-control review, security exceptions, and escalation of a client data-access concern on the Gilead Account:**

Produce the EPAM policies and written procedures in effect from January 1, 2024 through October 15, 2025 for disclosing personnel location to Gilead, recording a worker's country, staffing personnel on demand, credential sharing, screen viewing by an uncleared worker, remote access from another country, sanctions screening, export-control review, security exceptions, and escalation of a client data-access concern on the Gilead Account.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks policies and written procedures addressing numerous distinct subjects, including personnel-location disclosures, recording of worker countries, staffing practices, credential sharing, screen viewing, remote access, sanctions screening, export-control review, security exceptions, and escalation of client data-access concerns.

The Request is not limited to policies or procedures concerning the particular individual or conduct that Rao alleges he reported or complained about. Instead, it seeks policies and procedures concerning numerous aspects of EPAM's staffing, security, access, sanctions, export-control, and compliance practices applicable to the Gilead Account generally, without regard to whether those materials bear on Rao's alleged reports or the employment actions at issue. To the extent such broader policies and procedures have any relevance, that relevance is negligible and does not justify the breadth and burden of the requested search.

EPAM further objects because the Request combines numerous discrete subjects that implicate different business, staffing, security, compliance, and technical functions. Responding would require EPAM to identify and search for policies and procedures across multiple subject areas and potentially multiple systems or repositories. To the extent such materials have any relevance to Rao's claims, that relevance is negligible and does not justify the breadth and burden of the requested search.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, security, or compliance information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 22 - Rao's title, reporting line, direct reports, business unit, duties, decision authority, P&L responsibility, budget, headcount, client-account responsibility, and revenue target as maintained by EPAM:**

Produce the approved organization charts, job descriptions, and people.epam.com or equivalent hierarchy records that show Rao's title, reporting line, direct reports, assigned business unit, duties, decision authority, P&L responsibility, budget, headcount, client-account responsibility, and revenue target as each existed from November 18, 2024 through October 15, 2025. EPAM may produce documents sufficient to show each maintained state.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce documents sufficient to show Rao's title, reporting line, direct reports, assigned business unit, duties, decision authority, P&L responsibility, budget, headcount, client-account responsibility, and revenue target as maintained in the ordinary course.

EPAM further objects to producing confidential or commercially sensitive EPAM business, financial, client, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 23 - EPAM's removal, reduction, transfer, or reassignment of Rao's duties, client accounts, budget, and reporting line and the stated reasons:**

Produce nonprivileged Communications, Human Resources notes, consultation summaries, employee-relations records, meeting records, and approved organization records from July 1 through October 15, 2025 that recommended, evaluated, approved, implemented, or stated the reason for removing, reducing, transferring, or reassigning a duty, direct report, budget, P&L responsibility, client account, sales opportunity, decision authority, reporting line, role, or position held by Rao.

Produce the maintained author, date, stated reason, and approver. Limit the search to Rao, Gregory Klebanov, Greg Killian, Lucy McDermott, Jim Gatch, Chris Waller, Anastasia Christianson, Human Resources personnel assigned to Rao, and the recipient of the reassigned responsibility.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged documents dated July 1 through October 14, 2025 concerning the removal, reduction, transfer, or reassignment of Rao's duties or responsibilities and will produce responsive documents located from the following custodians: Rao, Gregory Klebanov, Lucy McDermott, Larry McKlaine, and June Dinitiz.

EPAM will not search for or produce documents dated October 15, 2025 or later because the Request concerns alleged changes to Rao's duties before his separation, and post-separation materials have negligible or no relevance to that alleged pre-termination conduct.

EPAM further objects to producing confidential or commercially sensitive EPAM business, client, financial, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 24 - EPAM's proposed performance-improvement plan for Rao and the decisions to create, review, approve, pause, withdraw, or replace it:**

Produce the complete ordinary-course decision file for the performance-improvement plan proposed for Rao from July 1 through October 15, 2025. Limit the production to each substantively different proposed plan, the contemporaneous performance evidence cited in it, the stated objectives and measurement criteria, the nonprivileged Human Resources notes or consultation records, the approval or routing record, and nonprivileged business Communications that explain why EPAM created, reviewed, approved, paused, withdrew, or replaced the plan.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged documents concerning performance-related guidance considered in connection with Rao and will produce responsive documents, if any.

EPAM objects to the Request to the extent it assumes that EPAM placed Rao on, approved, paused, withdrew, or replaced a performance-improvement plan. EPAM disputes that premise. EPAM will not create or produce a purported 'decision file' for a performance-improvement plan that did not exist.

**DOCUMENT REQUEST NO. 25 - Rao's performance evaluations, Telescope entries, TALK and written manager feedback, scorecards, ratings, awards, commendations, disciplinary records, and documented performance complaints:**

Produce Rao's performance evaluations, Telescope entries, TALK feedback, written manager feedback, sales or delivery scorecards, awards, commendations, disciplinary records, final ratings, and documented performance complaints from November 18, 2024 through October 15, 2025. Search Rao's natural-person personnel file and records associated with his EPAM-issued corporate identity.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged, non-work-product documents responsive to this Request and will produce any such documents located.

EPAM further objects to producing confidential or sensitive personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 26 - EPAM's policies, procedures, escalation channels, and training on performance-improvement plans, position elimination and layoff selection, employee reporting of contract, intellectual-property, data, sanctions, export-control, and compliance concerns, and retaliation protection, and Rao's acknowledgment and training-completion records:**

Produce each version in effect from January 1, 2024 through October 15, 2025 of the written policy, procedure, escalation channel, or training material for any of the following subjects: (a) performance-improvement plans; (b) position elimination, reductions in force, restructuring, financial layoff selection, or involuntary separation; (c) employee reporting of client-contract, client-intellectual-property, data-security, data-privacy, sanctions, export-control, or compliance concerns; and (d) protection against retaliation for those reports.

Produce the policy acknowledgment or training-completion record maintained for Rao and any EPAM-issued corporate identity assigned to him.

**RESPONSE:**

EPAM will produce formal policies and procedures, if any, concerning the subjects identified in the Request, together with written policy acknowledgments and training-completion records maintained for Rao.

EPAM will not search for or produce informal communications or materials outside the formal policies, procedures, escalation channels, training materials, acknowledgments, and

completion records identified above because that broader search would be overbroad and disproportionate to the likely benefit.

**DOCUMENT REQUEST NO. 27 - Rao's assigned revenue and performance targets, their approval and business basis, the source data and result attributed to him, and EPAM's comparison with the approved target and the Life Sciences unit result:**

Produce documents sufficient to show the source, assigning person, assignment date, approval, measurement period, calculation, result attributed to Rao, and contemporaneous business basis for each revenue, sales, utilization, headcount, billable-hours, or margin target assigned to Rao from November 18, 2024 through October 15, 2025. Produce the final source data EPAM used to calculate Rao's result.

Produce the final ordinary-course record that compares Rao's result through September 18, 2025 with the approved target and with the Life Sciences unit result for the same period.

**RESPONSE:**

EPAM will produce documents, if any, sufficient to establish Rao's revenue and performance targets, including any utilization, headcount, billable-hours, or margin targets.

EPAM objects to the remainder of the Request. The Request goes beyond documents sufficient to establish Rao's targets and any implemented changes following his alleged protected activity and seeks, among other things, the source, assigning person, assignment date, approval, calculation, contemporaneous business basis, underlying source data, and other information concerning each target. EPAM objects to those additional categories as overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case. EPAM will produce the documents identified above but will not undertake a broader reconstruction of the creation, approval, calculation, or business basis of each target.

EPAM further objects to the demand for a comparison of Rao's individual results through September 18, 2025 with the results of the entire Life Sciences unit. The Request does not identify a comparable metric, population, role, or measurement methodology that would make a comparison between Rao's individual performance and the performance of the entire business

unit meaningful. EPAM will not create a comparison, calculation, or dataset that is not maintained in the ordinary course of business.

EPAM further objects to the extent the Request seeks underlying "source data" beyond the documents EPAM has agreed to produce. EPAM will produce responsive records within the scope described above as maintained in the ordinary course of business but will not create or compile additional source data, calculations, or datasets in response to the Request.

**DOCUMENT REQUEST NO. 28 - The Odysseus, EPAM corporate, and "THE EARN OUT" profit-and-loss entries, account definitions, and variance reports, and the allocation of revenue from projects attributed to Rao:**

Produce the final monthly entries and account definitions from November 18, 2024 through October 15, 2025 for the Odysseus historical fiscal-year P&L, the EPAM corporate fiscal-year P&L, and the separate P&L identified by Gregory Klebanov on December 30, 2024 as "THE EARN OUT."

Produce the final monthly or quarterly variance reports that compare revenue, margin, EBITDA, or earn-out results with the applicable approved target.

Produce records that allocate, credit, or withhold revenue from Synapse, MedRAG, the AI Accelerator, Takeda, Boehringer Ingelheim, Bayer, or another project attributed to Rao between an EPAM delivery division and the Odysseus P&L or earn-out calculation. EPAM may redact unrelated transaction terms and personal compensation.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks extensive financial information concerning the Odysseus historical fiscal-year P&L, EPAM's corporate fiscal-year P&L, the separate P&L referred to as "THE EARN OUT," variance reporting concerning revenue, margin, EBITDA, and earn-out results, and the allocation of revenue across various EPAM projects and business units.

The Request is not reasonably limited to Rao's individual revenue or performance targets or the results attributed to Rao. Instead, it seeks broader company and business-unit financial information, including monthly P&L entries and account definitions, variance reports, EBITDA and earn-out information, and records concerning how revenue from multiple projects and clients was allocated between EPAM delivery divisions and the Odysseus P&L or earn-out calculation. To the extent such broader financial information has any relevance to the claims or defenses, that relevance is negligible and does not justify the breadth and burden of the requested production.

EPAM further objects because responding to the Request would require EPAM to identify, collect, and review financial and accounting records concerning multiple P&Ls, financial metrics, projects, clients, and business units over the requested period, including records concerning projects and financial results not limited to Rao's own performance. The burden and sensitivity associated with such a broad financial inquiry are disproportionate to any likely benefit.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or financial information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 29 - Sarah Seager's role, its approval and funding, and EPAM's comparison, transfer, or assignment of Rao's duties, direct reports, budget, or client responsibility to her:**

Produce documents sufficient to show the requisition date, approved duties, reporting line, start date, approval, and source of funding for Sarah Seager's role from July 1 through December 31, 2025.

Produce nonprivileged Communications among Gregory Klebanov, Greg Killian, Human Resources, Sarah Seager, and Rao that compare, transfer, or assign a material part of Rao's duties, direct reports, budget, or client responsibility to Sarah Seager.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, disproportionate to the needs of the case, and seeking information of negligible or no relevance to the claims and defenses. The Request seeks recruiting, organizational, funding, and personnel information concerning Sarah Seager, a nonparty, including the requisition, approval, duties, reporting line, funding, and other information concerning her role.

EPAM further objects to the Request insofar as it seeks communications and other records concerning any comparison, transfer, or assignment of Rao's duties, direct reports, budget, or client responsibilities to Sarah Seager. The Request is not limited to any particular duty or responsibility that Rao alleges was transferred to Sarah Seager or any particular employment action at issue, but instead seeks broad discovery concerning another employee's role, responsibilities, reporting structure, and funding. To the extent such information has any relevance to the claims or defenses, that relevance is negligible and does not justify the burden and privacy intrusion associated with collecting and reviewing another employee's personnel, organizational, and funding records.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM business, financial, organizational, or personnel information concerning a nonparty absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 30 - EPAM's September 17 or 18, 2025 decision to eliminate Rao's role or select him for a financial layoff:**

Produce the nonprivileged ordinary-course records of the September 17 or 18, 2025 decision to eliminate Rao's role or select him for a financial layoff. Limit the production to the decision memorandum, final financial record, meeting invitation, attendee record, contemporaneous note, retained recording or transcript, approval, executive or Board of Directors approval, authorization, escalation, or notification record, stated financial reason, selection criteria, identified alternatives, proposed separation date, transition duty, and severance term. Limit Communications to Gregory Klebanov, Greg Killian, Lucy McDermott, Larry McKlaine, June Dinitz, Larry Solomon, Arkadiy Dobkin, Sergey Yezhkov, the responsible

finance officer, each member of EPAM's executive leadership, executive committee, or Board of Directors who recommended, reviewed, approved, ratified, directed, or was notified of the decision, and another Human Resources employee who made or implemented the decision.

**RESPONSE:**

Notwithstanding its objections, EPAM states that no responsive documents exist because no such decision occurred.

EPAM objects because the Request assumes a disputed and denied fact. EPAM did not decide on September 17 or 18, 2025 to eliminate Rao's position or select him for a financial layoff.

**DOCUMENT REQUEST NO. 31 - EPAM's September 18 through October 15, 2025 records on Rao's status, monitoring, and client transition, its change from the financial layoff to the immediate termination, and each investigation, compliance review, employee-relations inquiry, or security assessment concerning Rao:**

Produce the nonprivileged ordinary-course records from September 18 through October 15, 2025 that address Rao's status, monitoring, client transition, proposed performance-improvement plan, severance withdrawal, anticipated dispute, or immediate termination.

Produce the factual investigation, decision memorandum, meeting record, approval, stated reason, policy provision, and Communications that the business or Human Resources decision-makers actually relied on to alter, delay, replace, or convert the financial layoff into the October 15, 2025 immediate termination.

Produce documents sufficient to identify each person who recommended, authorized, or executed the immediate termination, including any approval by Arkadiy Dobkin, Larry Solomon, Sergey Yezhkov, Greg Killian, Gregory Klebanov, or Lucy McDermott.

Produce each Human Resources, People Partner, employee-relations, talent, or Human Resources business-partner record concerning the change from the financial layoff to the immediate termination, including the consultation request, intake, case file, employee-relations note, guidance or advice given in a business or Human Resources capacity, risk or exposure assessment prepared in that capacity, escalation, routing record, approval, checklist, script, talking points, separation-meeting plan, and post-meeting note.

Produce documents sufficient to identify each Human Resources, People Partner, or employee-relations employee who advised on, participated in, reviewed, approved, documented, or implemented the role change, the proposed performance-improvement plan, the September 2025 financial layoff, the severance withdrawal, or the October 15, 2025 immediate termination, and to show that person's function, the date of each involvement, and the action taken.

For each investigation, compliance review, employee-relations inquiry, or security assessment opened from November 18, 2024 through November 15, 2025 concerning Rao's employment, a Takeda or Gilead report, Rao's device or system access, alleged misconduct, or termination, whether or not EPAM relied on the review, produce the ordinary-course or pre-litigation intake, scope, employee-relations log, compliance ticket, security-incident record, underlying nonprivileged business record or system log, and final nonprivileged factual finding. Produce documents sufficient to show the opening date, initiating function, assigned investigator, subject, disposition, action taken, and closure date.

Privileged legal advice, counsel's interview notes, mental impressions, and litigation strategy are excluded.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged documents concerning performance criticisms of Rao, Rao's separation from employment and the decision-making process regarding it, and investigations into alleged misconduct by Rao.

EPAM further states that no documents exist concerning investigations into Rao's alleged protected activity involving Takeda or Gilead.

EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it assumes that EPAM decided in September 2025 to eliminate Rao's position or select him for a "financial layoff" and thereafter altered, delayed, replaced, or converted that purported financial layoff into his October 15, 2025 termination. EPAM disputes and denies that premise. Accordingly, EPAM will not search for or produce documents concerning a purported change or conversion from a financial layoff to an immediate termination because EPAM denies that any such change or conversion occurred.

EPAM further objects to the Request to the extent it seeks every Human Resources, People Partner, employee-relations, talent, compliance, or security record concerning Rao, regardless of whether the record concerns the performance criticisms, alleged misconduct, separation, or separation decision-making for which EPAM has agreed to conduct a proportionate search. The Request encompasses numerous categories of records, reviews,

investigations, and inquiries, including matters that EPAM did not rely upon in connection with Rao's separation. EPAM objects to that broader discovery as overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case.

EPAM further objects to the Request's demand for documents sufficient to identify every person involved in specified employment actions and to show each person's function, date of involvement, and action taken, as well as its demand for the opening date, initiating function, assigned investigator, subject, disposition, action taken, and closure date for each investigation or review. EPAM will produce responsive documents located through the proportionate search described above but will not create a chronology, compilation, or data fields that are not maintained in the ordinary course of business.

EPAM further objects to the extent the Request seeks communications or materials protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection. EPAM will not produce privileged legal advice, counsel's interview notes, attorney mental impressions, litigation strategy, or other protected materials.

**DOCUMENT REQUEST NO. 32 - EPAM's recorded separation reason and eligibility-for-rehire designation for Rao, and their change history, in its personnel-action, unemployment, and government-agency records:**

Produce each final separation notice, personnel-action record, separation-reason code, eligibility-for-rehire designation, benefits record, unemployment submission, government-agency response, and nonprivileged supporting document provided to a government agency in which EPAM stated the reason for Rao's separation.

Produce the change history, entry date, and entering user maintained for each separation-reason code or eligibility-for-rehire designation from October 1, 2025 through January 31, 2026. EPAM may redact benefits amounts, account numbers, medical information, and information unrelated to the stated reason.

**RESPONSE:**

EPAM will produce final separation and personnel-action documents responsive to this Request as maintained in the ordinary course of business.

EPAM will not create a change history, compilation, or data fields reflecting entry dates, entering users, or changes to separation-reason codes or eligibility-for-rehire designations to the extent such information is not maintained in the ordinary course of business. To the extent the Request seeks underlying system histories, audit information, or other data beyond the responsive records as maintained in the ordinary course, EPAM objects because locating and compiling such information would impose a burden disproportionate to its likely benefit. EPAM will produce responsive records as they exist and will not create or manufacture documents, compilations, or data that do not exist.

**DOCUMENT REQUEST NO. 33 - Communications among the Decision-Makers that discuss Rao's Takeda or Gilead objections together with his role change, proposed performance-improvement plan, layoff, termination, or post-separation client contact:**

Produce nonprivileged Communications from July 1 through October 15, 2025 among the Decision-Makers that discuss a Takeda objection described in Request No. 5 or a Gilead objection described in Request No. 19 and that also discuss Rao's role change, proposed performance-improvement plan, financial layoff, termination, or post-separation client contact.

**RESPONSE:**

To the best of EPAM's knowledge, no such documents exist.

EPAM further objects to the Request to the extent it assumes disputed and denied facts, including that Rao experienced a "role change," was placed on or subject to a proposed performance-improvement plan, or was selected for a "financial layoff." EPAM disputes and denies those premises.

EPAM further objects to the Request's use of the defined term "Decision-Makers" as overbroad to the extent it encompasses individuals without regard to whether they participated in any decision concerning Rao or had any involvement in the matters identified in the Request.

**DOCUMENT REQUEST NO. 34 - Reports by other Life Sciences and Healthcare employees on client intellectual property, worker location, credentials, and data access, EPAM's response, and employment actions affecting the reporting employees:**

Produce documents sufficient to show each report made from January 1, 2022 through October 15, 2025 by another employee in EPAM's Life Sciences and Healthcare business to Gregory Klebanov, Greg Killian, Lucy McDermott, Human Resources, Compliance, or Legal about unauthorized reuse or commercialization of client intellectual property, worker-location misrepresentation, credential sharing, restricted-country access, or unauthorized geographic access to healthcare data on a Pharma Client account. Produce the report date, recipient, subject category, investigation status, nonprivileged disposition, EPAM response, and any discipline, demotion, role reduction, layoff, or termination imposed on the reporting employee within twelve months. EPAM may pseudonymize the employee, maintain a reidentification key through counsel, and redact medical, family, compensation, and unrelated performance information.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged documents reflecting reports, if any, by employees who reported through Gregory Klebanov concerning alleged misuse of client intellectual property or allegedly improper work locations, EPAM's response, and any employment action affecting the reporting employee within the following twelve months.

Upon information and belief, no such documents exist. If responsive documents are located, EPAM will produce them following entry of an appropriate protective order or confidentiality agreement.

EPAM otherwise objects to the Request as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request encompasses vague and expansive subject matters, including "client intellectual property," "worker location," "credentials," and "data access," that are not sufficiently defined to permit a reasonable and proportionate search across the employees, reporting channels, and time period identified.

EPAM further objects because the Request seeks comparator information concerning employees who were not similarly situated to Rao or subject to the same decision-makers. EPAM will not undertake the broader search demanded by the Request for reports concerning other employees beyond the proportionate search described above.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 35 - EPAM's Life Sciences and Healthcare cost-reduction, margin, headcount, or role-elimination directive, the approved selection criteria and comparison-group selection records for the August or September 2025 reduction in force, and the application of that directive to Rao:**

Produce the final executive directive, approved business-unit plan, or final restructuring record issued from July 1 through September 18, 2025 that required a cost reduction, margin improvement, headcount reduction, or role elimination in EPAM's Life Sciences and Healthcare business. Produce the approved selection criteria and final selection records for the August or September 2025 reduction in force within the comparison group that EPAM used to select Rao's role. Limit the comparison records to the maintained position or pseudonymized incumbent identifier, business unit, role, selection result, and stated criterion.

Produce nonprivileged Communications among Gregory Klebanov, Greg Killian, Chris Waller, Sergey Yezhkov, Arkadiy Dobkin, Larry Solomon, the responsible finance officer, Human Resources, and any member of EPAM's executive leadership, executive committee, or Board of Directors that apply the identified directive, plan, or criterion to Rao's unit, role, or selection, or that discuss whether to include Rao or his position in the reduction in force.

Produce each preliminary, draft, interim, working, or superseded version of the reduction-in-force selection list, affected-position list, headcount-reduction slate, organization-change proposal, or equivalent record prepared from July 1 through October 15, 2025 for EPAM's Life Sciences and Healthcare business or the Odysseus business unit, whether or not the version recorded a final decision and whether or not the decision it reflected was later changed.

Produce for each version the maintained metadata: filename, author, created-by, creation date and time, last-modified-by, last-modified date and time, and the version history with the editor and timestamp for each version. Produce the Communication that transmitted, circulated, or presented each version, with its distribution list.

Produce each Board of Directors, executive committee, executive leadership, or operating committee meeting minute, pre-read, deck, agenda, appendix, backup schedule, resolution, written consent, or action-item record from July 1 through October 15, 2025 that addresses a headcount reduction, role elimination, restructuring, or cost reduction affecting EPAM's Life Sciences and Healthcare business or the Odysseus business unit, whether or not the record states a final decision and whether or not it names Rao.

Produce each record that shows when Rao, his position, his employee identifier, or his role first appeared on a reduction-in-force, layoff, position-elimination, or affected-position list,

and each record that shows a subsequent change to that entry, including an addition, removal, deferral, substitution, or reinstatement.

Produce the approval, routing, sign-off, and authorization records for the August or September 2025 reducing in force, including the approval chain and each approver, and each instruction, request, direction, or recommendation from a person outside Rao's reporting line that his position be included in, considered for, or evaluated for the reduction.

**RESPONSE:**

EPAM objects because the Request assumes disputed and denied facts. There was no reduction in force or similar initiative that applied to Rao. To the extent that there was some other reduction in force or similar initiative somewhere within EPAM's Life Sciences and Healthcare business that did not apply to Rao, such documents are irrelevant to this litigation and it would be outrageously disproportionate and unduly burdensome to search for or produce them.

**DOCUMENT REQUEST NO. 36 - Retained meeting recordings, transcripts, and recaps on Rao's performance, role change, ECA, separation, the Takeda and Gilead reports, and the Odysseus P&L and earn-out:**

Produce each retained recording, transcript, automated recap, summary, or action-item log for a meeting from August 1 through October 31, 2025 involving a Decision-Maker, Arkadiy Dobkin, a member of EPAM's executive leadership or executive committee, or a member of EPAM's Board of Directors, when the meeting title, agenda, invitation, contemporaneous note, or recap identifies Rao's performance, role change, ECA, proposed performance-improvement plan, September financial layoff, October termination, Takeda ownership objection, Gilead staffing report, Odysseus P&L, or earn-out. This request does not require EPAM to create a transcript or recap that it does not maintain.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged meeting recordings and transcripts maintained in the ordinary course, and not created for this litigation, concerning Rao's performance, alleged role change, or separation.

EPAM will not undertake the substantially broader search demanded by this Request for meeting records concerning every subject identified, including the Odysseus P&L and earn-out, or for every meeting involving the expansive group of individuals encompassed by Rao's

definition of "Decision-Makers," EPAM executive leadership or executive committee, or the Board of Directors. Those categories are not limited to persons involved in decisions concerning Rao and would require a broad search of meeting records involving numerous individuals based on subjects having negligible or no relevance to the employment actions at issue. EPAM objects to those portions of the Request as overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to the extent the Request assumes disputed and denied facts, including that Rao experienced a "role change," was placed on or subject to an approved performance-improvement plan, or was selected for a "financial layoff." EPAM does not accept those premises by agreeing to conduct the proportionate search described above.

**DOCUMENT REQUEST NO. 37 - EPAM's identification of each alleged trade secret or confidential item and the asserted secrecy boundary:**

Produce EPAM's operative existing identification, as of the date of response, of each alleged trade secret or confidential item that EPAM contends Rao acquired, used, disclosed, retained, or failed to return.

Produce the smallest existing set of documents that identifies the item, repository or source, asserted owner, and asserted secrecy boundary. This request does not require EPAM to create a new contention document.

**RESPONSE:**

EPAM objects to this Request in its entirety as vague. EPAM does not know what "operative existing identification" means, nor does it otherwise understand what documents the Request is seeking.

EPAM further objects because the Request seeks highly confidential EPAM or third-party business, technical, financial, security, personnel, or client information. Rao has refused to agree to an appropriate protective order. Until adequate protections are in place, EPAM will not

produce sensitive information that could expose EPAM's systems, trade secrets, commercial strategy, employees, or clients to unnecessary risk.

**DOCUMENT REQUEST NO. 38 - Authorship, creation dates, source projects, asserted owner, and the contract or assignment on which EPAM bases ownership of each Contested Material and each item identified in response to Request No. 37:**

Produce documents sufficient to show the following for each Contested Material and each item identified in response to Request No. 37: the creation date; the identified authors, software architects, contributors, product owners, project managers, and delivery leads; the source project; the asserted owner; and the contract or assignment on which EPAM bases ownership.

Limit the identified-role records to Evgeny Sidenko, Dmitrii Ilin, Jonathan Rioux, Anastasia Christianson, Agnes Wojciechowski, Peter Berzin, Vojtech Huser or Heuser, Jim Singer, Sarah Seager, Rao, and another person whom EPAM identifies as an author, software architect, contributor, product owner, project manager, or delivery lead.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce documents sufficient to show development dates and development costs for the defined Contested Materials, namely the AI Cohort Generator, AI Accelerator, and ETL Conversion Kit. EPAM otherwise objects to this Request. EPAM's search will be limited to the files of Rao, Evgeny Sidenko, Dmitrii Ilin, and Jonathan Rioux.

EPAM objects to this Request to the extent it assumes that EPAM's ownership of or proprietary rights in the Contested Materials must derive from a discrete contract or assignment applicable to each individual item. EPAM disputes that premise and does not accept Rao's characterization of the particular documentation legally necessary to establish EPAM's ownership or other proprietary rights.

EPAM further objects to the demand for comprehensive identification of every author, software architect, contributor, product owner, project manager, delivery lead, and source project associated with each Contested Material and each additional item identified in response to

Document Request No. 37. Certain technologies and development efforts implicated by the Request span many years and numerous versions, and reconstructing their complete development histories would require EPAM to identify and investigate potentially numerous historical projects, versions, and contributors regardless of the nature or significance of their contributions. EPAM objects to that historical reconstruction as overbroad, unduly burdensome, and disproportionate to the needs of the case.

To the extent EPAM searches for records concerning authorship, contributors, source projects, or development history, EPAM will limit its search to records from the two years preceding October 15, 2025. EPAM will not undertake a broader historical, person-by-person, role-by-role, or version-by-version reconstruction of the development histories demanded by the Request.

EPAM further objects to the extent the Request assumes or seeks to conflate EPAM Synapse with Takeda-Synapse. EPAM disputes that premise and will not conduct its search on the assumption that the two are the same development or that records concerning one are necessarily records concerning the other.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope of the proportionate search described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 39 - Rao's entitlement, role, group-membership, provisioning, and permission-audit records for EPAM business, repository, collaboration, CRM, staffing, delivery, and cloud systems from November 18, 2024 through October 31, 2025:**

Produce the entitlement, role, group-membership, provisioning, and permission-audit records from November 18, 2024 through October 31, 2025 for each business system, source-code

repository, SharePoint site, OneDrive location, Jira project, Miro board, network share, cloud environment, database, or account that EPAM contends Rao accessed without authorization or that contained a Contested Material, an item identified in response to Request No. 37, or a financial record identified in the operative Complaint.

Produce documents sufficient to show Rao's role, access level, provisioning date, revocation date, and approving person for onecrm.epam.com, crm.epam.com, or an equivalent CRM system as to Takeda, Gilead, Roche, Johnson & Johnson, Sanofi, AstraZeneca, Amgen, Boehringer Ingelheim, Pfizer, and Bayer.

Produce documents sufficient to show Rao's role, access level, provisioning date, revocation date, and approving person for people.epam.com, staffing.epam.com, telescope.epam.com, delivery.epam.com, time.epam.com, projects.epam.com, kb.epam.com, Workday, SAP Concur, and each AWS, Azure, Google Cloud Platform, Databricks, virtual-machine, or database environment used for a Contested Material, Synapse, MedRAG, Prometheus, or an item identified in response to Request No. 37.

For each Contested Material and each item identified in response to Request No. 37, produce documents sufficient to show, separately for that item: the name of each source-code repository, project, group, namespace, or storage location that held it; the hosting platform and instance; whether any EPAM-issued corporate user account or credential assigned to Rao held any entitlement to it at any time from November 18, 2024 through October 31, 2025; and, where an entitlement existed, the permission or role level, the date access was granted, the person who approved it, the date access was revoked, and the date and nature of each access, clone, fetch, pull, download, or view recorded for that account. Where no EPAM-issued corporate user account or credential assigned to Rao ever held an entitlement to a repository, project, group, namespace, or storage location holding that item during that period, produce the entitlement, group-membership, or permission-audit record that shows the absence of the entitlement, and state that fact in the written response.

This subject is central. EPAM alleges that Rao misappropriated the Contested Materials. Whether any account assigned to Rao could reach the repository holding each item, and whether any such account did reach it, are facts recorded in EPAM's own entitlement and audit systems. Produce the item-by-item and repository-by-repository records that answer them, including records that show no access and no entitlement.

Limit the production to records maintained for Rao and any EPAM-issued corporate user account or credential assigned to him.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request is extraordinarily overbroad, unduly burdensome, and disproportionate and demands an item-by-item, repository-by-repository access map across numerous systems and data fields.

EPAM further objects to the extent the Request requires creation of a new compilation or proof of the absence of access or entitlement.

EPAM further objects because the Request seeks highly confidential EPAM or third-party business, technical, financial, security, personnel, or client information. Rao has refused to agree to an appropriate protective order. Until adequate protections are in place, EPAM will not produce sensitive information that could expose EPAM's systems, trade secrets, commercial strategy, employees, or clients to unnecessary risk.

**DOCUMENT REQUEST NO. 40 - Confidentiality classifications, trade-secret registry entries, handling instructions, access restrictions, and nondisclosure terms EPAM applied before October 15, 2025 to each Contested Material and each item identified in response to Request No. 37:**

Produce the confidentiality classification, trade-secret registry entry, handling instruction, access restriction, and nondisclosure term that EPAM applied before October 15, 2025 to each Contested Material and each item identified in response to Request No. 37.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for confidentiality classifications or trade-secret registry entries, but states upon information and belief that no such documents exist. EPAM will produce documents sufficient to identify access restrictions applicable to the so-called Contested Materials. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it assumes that EPAM maintained or applied a separate nondisclosure term, confidentiality classification, or trade-secret registry entry specific to each Contested Material or each item identified in response to Document Request No. 37.

Nondisclosure and confidentiality obligations may instead be reflected in generally applicable policies, procedures, employment agreements, or other agreements. EPAM will produce responsive documents reflecting applicable confidentiality and nondisclosure obligations located through the proportionate search described above, but will not create an item-by-item compilation or mapping that does not exist in the ordinary course of business.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents containing such information once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 41 - README, license, dependency, package-descriptor, copyright-header, provenance, and attribution files maintained as of October 15, 2025 with each Contested Material and each software item identified in response to Request No. 37:**

Produce the README, license file, dependency manifest, package descriptor, copyright header, provenance record, open-source attribution notice, and source-attribution file maintained as of October 15, 2025 with each Contested Material and each software item identified in response to Request No. 37.

**RESPONSE:**

EPAM objects to this Request in its entirety because it is overbroad, unduly burdensome, and disproportionate to the needs of this case.

EPAM further objects because the Request seeks highly confidential EPAM or third-party business, technical, financial, security, personnel, or client information. Rao has refused to agree to an appropriate protective order. Until adequate protections are in place, EPAM will not produce sensitive information that could expose EPAM's systems, trade secrets, commercial strategy, employees, or clients to unnecessary risk.

**DOCUMENT REQUEST NO. 42 - The repository "Add License" template and system configuration, the commit records for the "Copyright 2025 Gowtham Rao" license file, and**

**comparable auto-populated license commits in other 2025 EPAM projects:**

Produce the license-template files, project settings, and system or instance settings that governed the automated population of a full-name field and a year field, however named, when a user selected "MIT License" or "MIT No Attribution" through an "Add License" or equivalent web-interface workflow from October 12 through October 14, 2025.

Produce the commit log, web-interface event record, parent hash, and unedited diff for commit c8575d66 and for any related license-addition event identified as 3d8b15ac.

Produce the generated license file and commit record for up to three other EPAM projects created in 2025 through the same workflow in which the name field populated another user's name. Produce nonprivileged technical Communications or tickets among Lucy McDermott, Gregory Klebanov, Dmitrii Ilin, and the responsible repository or platform administrator that address the technical origin, template configuration, or characterization of "Copyright 2025 Gowtham Rao."

This request is not limited to a single hosting platform. It reaches the repository, source-control, or developer platform that in fact hosted the project and generated the license file, whether GitLab at git.epam.com, Bitbucket, GitHub, an EPAM-hosted or vendor-hosted instance, or another system performing that function. Identify in the written response the platform, instance, and project actually searched.

**RESPONSE:**

EPAM will conduct a proportionate search for responsive, non-privileged license templates that Rao could have applied to the documents for which he improperly attempted to affix an open source license.

EPAM further objects because the Request seeks highly granular platform configurations, settings, event records, commit data, comparator projects, and technical communications across unidentified platforms and instances.

EPAM further objects because the Request seeks highly confidential EPAM or third-party business, technical, financial, security, personnel, or client information.

**DOCUMENT REQUEST NO. 43 - EPAM's presentations, abstracts, recordings, and repository publications of the AI Accelerator and AI Cohort Generator at the 2025 OHDSI Global Symposium and through public YouTube, GitHub, conference, and marketing channels, with the related approval, visibility, and removal records:**

Produce each final or substantively different presentation, abstract, recording, repository publication, approval record, or publication record by which EPAM disclosed the architecture, design, features, or source material of the AI Accelerator or AI Cohort Generator at the 2025 OHDSI Global Symposium or through a public YouTube, GitHub, conference, or marketing channel by October 15, 2025. Include the publication date, publisher, approval, visibility setting, and removal date maintained for each item.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for final public presentations, abstracts, recordings, repository publications, and publication records responsive to this Request and will produce responsive, nonprivileged documents located. EPAM otherwise objects to this Request.

EPAM will not search for or produce draft, interim, or other non-final versions of presentations, abstracts, recordings, repository publications, or similar materials where a final public version is available. EPAM objects to that portion of the Request as overbroad, cumulative, and disproportionate because searching for and reviewing multiple iterations of materials that were ultimately made public would substantially expand the collection and review required while providing negligible or no additional relevant information beyond the final public-facing materials EPAM has agreed to produce.

EPAM further objects to the extent the Request requires EPAM to create a compilation of publication dates, publishers, approval information, visibility settings, or removal dates that is not maintained in the ordinary course of business. EPAM will produce responsive existing records but will not create or manufacture a new record or compilation in response to the Request.

**DOCUMENT REQUEST NO. 44 - Drafts, approvals, and communications for the July 2025 GCP Foundry CIO Hub Campaign item "Scientists need more than generative AI, they need a co-reasoning partner," the proposed "EPAM Synapse (TBC)" topic, and the co-reasoning-partner and knowledge-graph concepts:**

Produce the shared campaign-planning record that identifies the proposed topic "EPAM Synapse (TBC)," each substantively different draft, the final publication, the byline approval, and the internal business and editorial approvals for the July 2025 GCP Foundry CIO Hub Campaign item titled "Scientists need more than generative AI, they need a co-reasoning partner."

Produce nonprivileged Communications concerning the co-reasoning-partner concept, knowledge-graph integration, or public release. Limit Communications to Naaz Fatima Butt, Gabby Semon, the EPAM marketing approver, and the Google Cloud representative who handled that item.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for nonprivileged communications, final publications, and final public releases responsive to this Request and will produce documents located. EPAM otherwise objects to this Request.

EPAM will not search for or produce each draft, interim version, or underlying editorial iteration of the publication or related campaign materials where a final version is available. EPAM objects to that portion of the Request as overbroad, cumulative, and disproportionate because searching for and reviewing each iteration and the communications concerning each revision would substantially expand the collection and review required while providing negligible or no additional relevant information beyond the final publication, final approval records, and responsive communications EPAM has agreed to search for and produce.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement.

**DOCUMENT REQUEST NO. 45 - Drafts, approvals, exemplars, assignment communications, and the distributed Q4 2025 derivative collateral for the "Sales Battle Card: EPAM's Unified AI Platform (MedRAG + Synapse)":**

Produce the July 21, 2025 working draft, the September 21, 2025 iteration, the final approved version, and each final Q4 2025 sales collateral item derived from "Sales Battle Card: EPAM’s Unified AI Platform (MedRAG + Synapse)" that EPAM actually distributed internally

or sent to a client by October 15, 2025. Produce each battle card, sales playbook, or pitch template that Jim Gatch or Gabby Semon provided to Rao as an exemplar for that assignment.

Produce the nonprivileged Communications between Rao, Jim Gatch, Gabby Semon, and the approving sales or marketing manager that assigned, revised, approved, or directed the battle card or derived collateral from July 1 through October 15, 2025.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for the July 21, 2025 working draft, the September 21, 2025 iteration, the final approved version of the Sales Battle Card. EPAM will also conduct a reasonable and proportionate search for communications between Rao and Jim Gatch relating to the Sales Battle Card. From these searches, EPAM will produce the responsive, non-privileged documents located. EPAM otherwise objects to the Request.

EPAM further objects to the terms "sales collateral items" and "derived collateral" to the extent those terms purport to encompass materials beyond final collateral actually distributed internally or sent to a client and deriving from the identified Sales Battle Card. EPAM will construe those terms consistent with the foregoing limitation.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement.

**DOCUMENT REQUEST NO. 46 - Synapse steering-committee records of development status, planned features, contributors, budget, commercialization plan, and technical separation from Takeda-Synapse:**

Produce the final or substantively different steering-committee presentations, approved roadmaps, meeting minutes, Miro boards, architecture diagrams, and funding decisions for Synapse from June 1 through October 15, 2025 that state its development status, planned features, contributors, budget, commercialization plan, or technical separation from Takeda-Synapse. Search the shared steering-committee locations and the business accounts of Rao, Anastasia Christianson, Chris Waller, Sergey Yezhkov, Gregory Klebanov, Jonathan Rioux, and each other identified steering-committee participant.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged Synapse "steering-committee records," if any, concerning development status, planned features, contributors, budget, commercialization plans, and technical separation from Takeda-Synapse, including responsive presentations, approved roadmaps, meeting minutes, architecture diagrams, and funding decisions. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it demands a search of the files of every identified or subsequently identified steering-committee participant. EPAM's search will be limited to the files of Rao, Gregory Klebanov, and Jonathan Rioux. EPAM will not separately search the files of Anastasia Christianson, Chris Waller, Sergey Yezhkov, or the open-ended category of "each other identified steering-committee participant." Requiring EPAM to identify, collect from, and search additional custodians based merely on their participation in a steering-committee meeting or identification in another responsive record, without regard to whether their files are reasonably likely to contain unique responsive information, is overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or financial information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents located through the proportionate search described above following entry of an appropriate protective order or confidentiality agreement.

**DOCUMENT REQUEST NO. 47 - Time and project-accounting charges by identified personnel to the Contested Materials, Synapse, Prometheus, MedRAG, ETL Conversion Kit, Data Science Innovation, and Takeda-Synapse project codes:**

Produce the time.epam.com or project-accounting entries from January 1, 2024 through October 31, 2025 that EPAM charged to a project, billing, internal-research-and-development, internal-product-pipeline, or overhead code used for a Contested Material, Synapse, Prometheus, MedRAG, the ETL Conversion Kit, Data Science Innovation, or Takeda-Synapse. Limit the entries to those maintained for Rao, Evgeny Sidenko, Dmitrii Ilin, Jonathan Rioux, Maryna Drazhenka, Konstantin Iaroshovets, Agnes Wojciechowski, Alexander Alexeuk, Peter Berzin, Vojtech Huser or Heuser, Jim Singer, Sarah Seager, and Lucy McDermott. Produce the maintained employee identity, date, project-code name and number, task description, hours, approval status, and billing classification.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce a summary of time and project-accounting charges responsive to this Request which relate to MedRag, Synapse, and/or AI Accelerator. EPAM otherwise objects to this Request. EPAM's search will be limited to the files of Rao, Evgeny Sidenko, Dmitrii Ilin, Lucy McDermott, and Jonathan Rioux.

EPAM will not produce every underlying time entry, project-accounting entry, or individual data field demanded by the Request where the information is reflected in the summary or other documents EPAM has agreed to produce. EPAM objects to that portion of the Request as cumulative, unduly burdensome, and disproportionate to the needs of the case. Producing every underlying entry for the thirteen identified individuals across the numerous identified projects for the period January 1, 2024 through October 31, 2025 would substantially increase the volume of records requiring collection, review, and production while providing negligible additional information beyond the responsive time and project-accounting information EPAM has agreed to provide.

EPAM further objects to the extent the Request requires EPAM to create or populate data fields, including task descriptions, approval status, or billing classifications, that are not maintained in the ordinary course of business. EPAM will produce responsive information as

maintained in the ordinary course and will not create or manufacture records or data that do not exist.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 48 - Communications and design records between Rao and Jonathan Rioux and within the MedRAG team on Synapse, MedRAG, internal-product-pipeline funding, the August 3, 2025 Miro architecture, technology and architecture choices, Rao's contributions, assigned work, and the separation of EPAM Synapse from Takeda-Synapse:**

Produce the complete responsive Communications, meeting records, recordings, transcripts, channel files, Miro boards, whiteboard diagrams, architecture diagrams, and retained wireframes from November 18, 2024 through October 15, 2025 between Rao and Jonathan Rioux or within the MedRAG team that directly discuss any of the following subjects: Synapse; MedRAG; internal-product-pipeline funding; the August 3, 2025 Miro architecture; LangGraph; AutoGen; public foundation models; prompt engineering; agentic or multi-agent architecture; AWS hosting estimates; biomedical data ingestion; Rao's contributions; work assigned to Agnes Wojciechowski, Konstantin Iaroshovets, Santanu Sen, or bench personnel; or separation of EPAM Synapse from Takeda-Synapse. EPAM may redact unrelated thread content while preserving responsive participants, sequence, and timestamps.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged documents concerning MedRAG, EPAM Synapse, and Takeda-Synapse and will produce responsive documents located. EPAM otherwise objects to this Request.

EPAM will not undertake separate searches for each of the numerous individual technologies, concepts, personnel assignments, or technical subjects listed in the Request, including LangGraph, AutoGen, public foundation models, prompt engineering, agentic or multi-

agent architecture, AWS hosting estimates, biomedical data ingestion, or work assigned to particular employees or bench personnel, except to the extent responsive materials concerning those subjects are located through the proportionate search described above. The Request combines numerous discrete technical and personnel subjects and would require broad searches for materials regardless of whether they bear on the development, ownership, or asserted separation of the technologies at issue. EPAM objects to that broader search as overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to the Request to the extent it assumes or seeks to conflate EPAM Synapse with Takeda-Synapse. EPAM disputes that premise and will not conduct its search on the assumption that the two are the same development or that records concerning one are necessarily records concerning the other.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope of the proportionate search described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 49 - Agentic-AI, multi-agent, and autonomous-large-language-model workflow designs, EPAM's comparisons to a methodology attributed to Rao, and its records of authorship, creation date, and independent development:**

Produce each final or substantively different presentation, design specification, architecture diagram, or approved roadmap from January 1, 2024 through October 15, 2025 for an agentic-AI, multi-agent, or autonomous-large-language-model workflow that EPAM incorporated into Synapse, MedRAG, Prometheus, the AI Accelerator, or the AI Cohort Generator. Produce nonprivileged Communications that compare the workflow with a methodology or architecture attributed to Rao.

Produce each existing record on which EPAM relies to establish the workflow's author, creation date, or independent-development date. Limit the required Communication search to Rao, Anastasia Christianson, Jonathan Rioux, Dmitrii Ilin, Evgeny Sidenko, and another person whom EPAM identifies as the workflow's author, product owner, or approving manager.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged documents concerning MedRAG, EPAM Synapse, and Takeda-Synapse and will produce responsive documents located. EPAM otherwise objects to this Request.

EPAM's search will be limited to the files of Rao, Evgeny Sidenko, and Dmitrii Ilin. EPAM will produce responsive documents located through that search.

EPAM will not undertake the broader search demanded by the Request across every identified product and workflow, including Prometheus and the AI Cohort Generator, or the open-ended category of any additional person whom EPAM identifies as a workflow's author, product owner, or approving manager. That formulation would require EPAM to investigate multiple products and development histories and potentially identify, collect from, and search additional custodians based on information uncovered during the search itself. EPAM objects to that broader search as overbroad, unduly burdensome, and disproportionate to the needs of the case. To the extent responsive information concerning those additional products or persons is located through the proportionate search described above, EPAM will produce it, but EPAM will not undertake separate searches directed to those additional products or custodians.

EPAM further objects to the extent the Request requires EPAM to reconstruct or create an authorship, creation-date, or independent-development history that is not maintained in the ordinary course of business. EPAM will produce existing responsive records located through the proportionate search described above but will not create a new chronology, mapping, or compilation in response to the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, or technical information absent an appropriate protective

order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce responsive documents falling within the scope of the proportionate search described above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 50 - AI Platform enterprise licenses and subscriptions assigned to Rao and identified contributors, with their assignment, payer, cost-center, approval, and billing records:**

Produce documents sufficient to show the AI Platform, assigned user or team, license tier, activation date, deactivation date, payer, cost center, approving manager, developer-access approval, and billing record for each enterprise license or subscription assigned from November 18, 2024 through October 15, 2025 to Rao or an identified contributor to Synapse, MedRAG, Prometheus, the AI Accelerator, the AI Cohort Generator, or the ETL Conversion Kit. This request does not seek API keys, passwords, or secret credential values.

**RESPONSE:**

EPAM objects to this Request in its entirety, as vague and ambiguous. EPAM cannot search for or produce documents in response to this Request, or sufficiently object, because it does not know what this Request is seeking.

Specifically, the Request does not define "AI Platform," "enterprise license," "subscription," or "identified contributor" with sufficient specificity for EPAM to determine the platforms, services, accounts, or individuals for which records are sought. As drafted, EPAM would first have to determine the meaning and scope of these terms before it could identify potentially responsive records.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 51 - AI Platform prompts, training data, and model-validation records incorporated into or relied on for the Contested Materials, Synapse, MedRAG, Prometheus, OMOP ETL tools, and the Request No. 37 items:**

Produce each retained AI Platform prompt, system prompt, input, output, fine-tuning script, benchmark, training-data manifest, training-data provenance record, model-validation report, or version-history record from January 1, 2024 through October 15, 2025 that EPAM actually incorporated into a Contested Material, Synapse, MedRAG, Prometheus, an OMOP ETL tool, or an item identified in response to Request No. 37 or that EPAM relies on to prove authorship, originality, secrecy, independent development, or value for that item.

Produce the maintained source, license, access-restriction, and date fields for each responsive dataset or model. Limit custodians to Dmitrii Ilin, Jonathan Rioux, Gregory Klebanov, Evgeny Sidenko, Agnes Wojciechowski, and another person whom EPAM identifies as the item's author. This request excludes unrelated AI Platform histories, personal-account activity outside EPAM's possession, custody, or control, and patient-level data.

**RESPONSE:**

EPAM objects to this Request in its entirety, as vague and ambiguous. EPAM cannot search for or produce documents in response to this Request, or sufficiently object, because it does not know what this Request is seeking.

In particular, the Request does not define "AI Platform" or otherwise identify the platforms, models, systems, or services encompassed by that term. The Request also seeks numerous categories of prompts, inputs, outputs, training data, model-validation materials, and related records across multiple products and items without sufficiently identifying the particular materials or systems to be searched. As drafted, EPAM cannot reasonably identify the universe of potentially responsive records.

EPAM further objects to the open-ended demand to search the files of any additional person whom EPAM identifies as an item's author and to the extent the Request requires EPAM to create a compilation of source, license, access-restriction, or date information that is not maintained in the ordinary course of business.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 52 - EPAM's development-cost and value calculations for the Contested Materials and items identified in response to Request No. 37, and the underlying time, rate, vendor, and expense records:**

Produce documents sufficient to show each development-cost or value calculation that EPAM relies on to quantify the value of a Contested Material or an item identified in response to Request No. 37. Produce the existing time, rate, vendor, or expense records incorporated into that calculation.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement EPAM refers Rao to its responses to the prior Requests in which EPAM agreed to produce development-cost records or summaries for the Contested Materials.

EPAM will not search for or produce additional value calculations or underlying time, rate, vendor, or expense records beyond the development-cost records or summaries EPAM has already agreed to produce. EPAM objects to those additional categories as overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case because they would require EPAM to collect and review potentially extensive underlying financial and accounting records beyond the development-cost information EPAM has agreed to provide, with negligible additional relevance or benefit.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, client, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections. EPAM will produce the development-cost records or summaries identified above once appropriate confidentiality protections are in place.

**DOCUMENT REQUEST NO. 53 - Code analysis, software composition, open-source license, bill-of-materials, vulnerability, and third-party dependency reports for the Contested Materials, Synapse, MedRAG, Prometheus, and the ETL Conversion Kit:**

Produce each static code analysis report, software composition analysis report, open-source license audit, software bill of materials, vulnerability scan, or third-party dependency

report completed before October 15, 2025 for a Contested Material, Synapse, MedRAG, Prometheus, or the ETL Conversion Kit.

**RESPONSE:**

EPAM objects to this Request in its entirety, as vague and ambiguous. EPAM cannot search for or produce documents in response to this Request, or sufficiently object, because it does not know what this Request is seeking.

In particular, the Request does not sufficiently identify or define the types of reports sought, including what constitutes a "static code analysis report," "software composition analysis report," "open-source license audit," "software bill of materials," or "third-party dependency report." Nor does the Request identify the systems, repositories, tools, or processes through which such reports allegedly were generated or maintained. EPAM therefore cannot reasonably identify the universe of potentially responsive records.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 54 - Public-release records for the AI/Run and CodeMie repositories and EPAM's analysis attributing Device A0001 documents to those archives:**

Produce the repository manifest, commit history, license file, public-release record, creation date, and initial public-visibility record for ai-run-community-tools, ai-run-demo-agents, ai-run-swebench, codemie-tools, codemie-code, codemie, and codemie-ui maintained under epam-gen-ai-run, codemie-ai, or EPAM-AI-RUN-Marketplace.

Produce the nonprivileged technical analysis that supports EPAM's assertion that approximately 93 percent of the documents identified on Device A0001 as of April 22, 2026 originated from AI/Run and CodeMie ZIP archives.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request seeks repository manifests, complete commit histories, license files, public-release records, creation dates, and initial public-visibility records across numerous separate AI/Run and CodeMie repositories. Responding would require EPAM to reconstruct and review the development and public-release history of each identified repository, including granular repository and commit-level information, without a proportional relationship between that burden and the likely relevance of the materials sought.

EPAM further objects to the demand for the "technical analysis" purportedly supporting EPAM's assertion concerning documents identified on Device A0001 to the extent the Request assumes that a separate technical analysis or record exists or requires EPAM to create, reconstruct, or compile such an analysis. EPAM will not create a new analysis, compilation, or other record that is not maintained in the ordinary course of business.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 55 - EPAM's funding and authorization of the subscriptions, services, memberships, tools, equipment, and events Rao used for EPAM work:**

Produce each of the following records from November 18, 2024 through October 31, 2025 for each EPAM-funded or EPAM-authorized AI Platform subscription, cloud service, compute instance, data store, source-code service, developer tool, computer item, OHDSI event, scientific membership, professional service, academic-literature service, or conference used by Rao for EPAM work: the expense report, receipt, invoice, card transaction, business justification, cost-center allocation, approval, payment record, reviewer note, and final disposition. Include responsive records associated with subscriptionrao@gmail.com and the payment card ending in 4760. EPAM may redact unrelated transactions and all but the last four digits of an account or card number.

**RESPONSE:**

EPAM will produce documents sufficient to identify AI Platform subscriptions and cloud-storage accounts paid for by EPAM and used by Rao for EPAM work. EPAM otherwise objects to this Request.

EPAM objects to producing every underlying expense report, receipt, invoice, card transaction, business justification, cost-center allocation, approval, payment record, reviewer note, and disposition concerning those subscriptions or accounts as cumulative, unduly burdensome, and disproportionate to the needs of the case. The documents EPAM has agreed to produce are sufficient to identify the relevant subscriptions and cloud-storage accounts without requiring production of every underlying expense and accounting record.

EPAM further objects to the extent the Request seeks records concerning compute instances, data stores, source-code services, developer tools, computer items, OHDSI events, scientific memberships, professional services, academic-literature services, conferences, or other expenditures beyond the AI Platform subscriptions and cloud-storage accounts identified above. Those categories are overbroad and seek information of negligible or no relevance to the claims or defenses. EPAM will not search for or produce documents concerning those categories.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, personnel, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 56 - EPAM's BYOD, device, account, cloud-service, repository, retention, and offboarding policy versions EPAM contends governed Rao or relies on for a claimed duty, and Rao's policy acknowledgment and training records:**

Produce each version of the BYOD, acceptable-use, personal-device, personal-account, external-cloud-service, source-code-repository, information-asset-management, data-retention, and offboarding policy that EPAM contends governed Rao from November 18, 2024 through October 15, 2025 or that EPAM relies on to contend that Rao violated a duty concerning a

device, account, file, repository, synchronization, retention, or return. Include each complete policy that contains a provision reproduced in ECF No. 37-3:

"When storage of strictly confidential or confidential data is required for productivity/convenience purposes, the data must be automatically synced up to EPAM online storage (SharePoint, OneDrive)."

"Personally owned computing device - CONFIGURATION OF devices with any operating system (devices without EPAM image)"

"Each user must monitor and verify on regular basis that OPSWAT meta-access agent is running, and its status confirms compliance with EPAM's security policy."

"Remove Company/Client data from all personal devices and personal cloud storages (iCloud/Google Drive, etc.)."

Produce each policy acknowledgment or training record associated with Rao and any EPAM-issued corporate user account or credential assigned to him.

Produce each report, alert, notification, ticket, flag, finding, warning, counseling record, inquiry, or expression of concern created at any time from November 18, 2024 through October 15, 2025 stating or suggesting that Rao violated, may have violated, or was out of compliance with any policy identified in this request or any information-security, data-protection, acceptable-use, device-compliance, or data-handling requirement. Responsive records include a data-loss-prevention alert, an OPSWAT MetaAccess or endpoint-compliance alert or non-compliance notice, a Microsoft Defender, Purview, Intune, or Entra ID alert or risk detection, a SIEM or security-operations alert, an InfoSec or security-incident ticket, an insider-risk or user-behavior-analytics flag, an email-gateway or outbound-transmission alert, a repository or cloud-storage policy alert, an access-review exception, and an audit finding. For each responsive record produce the maintained date, generating system or person, subject, severity, description, assigned owner, action taken, disposition, and closure date.

If EPAM's systems generated no such record for Rao during that period, or generated none for a particular system or category, say so in the written response and identify the system or category and the period searched.

**RESPONSE:**

EPAM will produce formal policies and procedures, if any, responsive to this Request, together with responsive acknowledgment or training records maintained for Rao. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it seeks every report, alert, notification, ticket, flag, finding, warning, counseling record, inquiry, or expression of concern concerning Rao

across numerous information-security, data-protection, device-compliance, access, and monitoring systems. That demand is overbroad, unduly burdensome, and disproportionate to the needs of the case because it would require EPAM to search numerous separate systems and categories of technical and security records for any potential indication of noncompliance.

EPAM further objects to the demand that, where no responsive record is located, EPAM identify each system or category searched and affirmatively state that no responsive record exists for the identified period. EPAM will not create a compilation, certification, or other record that is not maintained in the ordinary course of business.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 57 - EPAM-owned devices assigned or offered to Rao, and the enrollment, compliance, exception, and removal records maintained for Device A0001, Rao's corporate identity, and other personal devices EPAM enrolled or permitted:**

Produce documents sufficient to show each EPAM-owned laptop, desktop, mobile device, security token, or managed virtual desktop that EPAM assigned or offered to Rao from November 18, 2024 through October 15, 2025 and each date of assignment, offer, acceptance, return, or refusal.

Produce the enrollment, device-registration, OPSWAT MetaAccess, Entra ID, mobile-device-management, mobile-application-management, endpoint-compliance, exception, and device-removal records maintained for Device A0001, Rao, and any EPAM-issued corporate user account or credential assigned to him during the same period. Include another personal device only to the extent EPAM enrolled, monitored, approved, or permitted that device to access an EPAM service. This request does not seek personal-device contents.

**RESPONSE:**

EPAM will produce documents sufficient to show each EPAM-owned laptop, desktop, mobile device, security token, or managed virtual desktop assigned or offered to Rao between

November 18, 2024 and October 15, 2025, including when each device was provided or returned. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it seeks enrollment, device-registration, OPSWAT MetaAccess, Entra ID, mobile-device-management, mobile-application-management, endpoint-compliance, exception, and device-removal records concerning Device A0001, Rao's corporate identity, and other personal devices. That demand is overbroad, unduly burdensome, and disproportionate because it would require EPAM to identify, collect, and review granular device-management, identity, endpoint, and security records across multiple systems, including records concerning personal devices beyond the EPAM-owned devices for which EPAM has agreed to produce documents.

EPAM further objects to the extent the Request seeks sensitive technical or security information concerning EPAM's device-management, identity, endpoint-security, and access-control systems. Such information is confidential and proprietary and could reveal information concerning EPAM's security infrastructure and controls.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 58 - EPAM's records of Rao's access, transfers, and synchronization events:**

Produce each of the following existing records from November 18, 2024 through October 31, 2025 for Device A0001 and any EPAM-issued corporate user account or credential assigned to Rao: Entra ID sign-in, Conditional Access, MFA, VPN, virtual-desktop, OPSWAT MetaAccess, Intune, mobile-device-management, mobile-application-management, Microsoft 365, SharePoint, OneDrive, GitLab, Bitbucket, GitHub, OneCRM, time.epam.com, projects.epam.com, and endpoint-compliance records. The responsive records are those that show compliance status or a successful, failed, or blocked access, view, modification, clone, fetch, download, export, synchronization, upload, or transaction involving a Contested Material,

an item identified in response to Request No. 37, or a financial record EPAM alleges Rao accessed without authorization.

Produce the maintained user, UTC timestamp, device, source IP, source, target, repository or object, event type, result, compliance, initiator, and synchronization-source fields.

Limit the required search to existing administrative and audit sources that EPAM can filter by Device A0001, Rao's corporate identity, or an identified object. This request does not seek unrelated browsing history, personal-device contents, or the contents of an entire mailbox.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request demands granular identity, authentication, access, transfer, synchronization, endpoint, and compliance records across numerous separate systems and platforms for nearly a year, including records of successful, failed, and blocked events and numerous associated technical data fields.

Responding would require EPAM to identify, collect, correlate, and review potentially extensive administrative and audit records across multiple systems to determine whether individual access, transfer, synchronization, or other events involved a Contested Material, an item identified in response to Document Request No. 37, or a financial record that EPAM alleges Rao accessed without authorization. EPAM objects to requiring that type of system-by-system and event-by-event reconstruction as unduly burdensome and disproportionate.

EPAM further objects to the Request to the extent it requires EPAM to create or compile a consolidated access or activity history from disparate systems where no such record is maintained in the ordinary course of business. EPAM will not create a new compilation, analysis, or dataset in response to the Request.

EPAM further objects because the Request seeks highly sensitive and confidential EPAM or third-party technical, security, business, financial, personnel, and client information, including

information concerning EPAM's identity, authentication, endpoint, access-control, and security systems. Rao has refused to agree to an appropriate protective order or confidentiality agreement.

**DOCUMENT REQUEST NO. 59 - EPAM's identified evidentiary basis for its contentions of unauthorized access, copying, transmission, retention, failure to return, control bypass, credential misuse, and post-deactivation access:**

Produce each existing document or ESI item on which EPAM relies to contend that Rao or any EPAM-issued corporate user account or credential assigned to him lacked authorization for, exceeded authorized access to, copied, downloaded, transmitted, retained, or failed to return a Contested Material, an item identified in response to Request No. 37, or a financial record alleged in the operative Complaint.

Produce each record on which EPAM relies to contend that Rao bypassed, disabled, evaded, or compromised OPSWAT, MFA, VPN, Entra ID Conditional Access, or another access control; used another person's account, credential, or session; or accessed or attempted to access an EPAM system after EPAM deactivated Rao's corporate credentials on October 15, 2025.

Produce the maintained date, system, object, corporate identity, device, security control, asserted authorization boundary, and factual basis for each alleged act. Limit the production to records created by October 15, 2025 and nonprivileged forensic source records created after that date.

**RESPONSE:**

EPAM will conduct a reasonable proportionate search for documents, if any, regarding whether Rao lacked authorization or exceeded authorized access in connection with the documents he copied, downloaded, transmitted, retained, and/or failed to return, and will produce the non-privileged documents that this search locates. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it seeks a comprehensive identification and compilation of every document or ESI item on which EPAM relies in support of each contention concerning Rao's alleged access, copying, downloading, transmission, retention, failure to return, circumvention of security controls, credential use, or post-deactivation access. The Request is overbroad, unduly burdensome, and disproportionate to the extent it requires EPAM

to organize its evidence on a contention-by-contention and item-by-item basis beyond the proportionate search described above.

EPAM further objects to the demand for the maintained date, system, object, corporate identity, device, security control, asserted authorization boundary, and factual basis for each alleged act to the extent that information is not maintained together in the ordinary course of business. EPAM will not create a new chronology, compilation, analysis, or dataset in response to the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 60 - EPAM's derivation of the 44,960-file count attributed to Device A0001:**

Produce each saved query, KQL syntax, script, API command, SQL query, eDiscovery-job definition, filter, execution log, raw file-list export, deduplication rule, classification rule, exception list, worksheet, and count reconciliation used to derive EPAM's assertion that Device A0001 contained 44,960 files attributable to EPAM or its clients. Produce the maintained source system, scope, custodian, mailbox, site, repository, date range, executing user, UTC execution time, path, filename, hash, size, timestamp, source-attribution field, synchronization field, and classification field for each counted item. This request excludes counsel's legal analysis, mental impressions, and litigation strategy.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks counsel-directed forensic work, search methodology and logic, review criteria, classifications, and related materials protected by the attorney-client privilege, work-product doctrine, or other applicable protections. The Request expressly seeks the queries, scripts, commands, filters, execution logs, deduplication and

classification rules, exception lists, worksheets, and count reconciliations used in connection with EPAM's forensic analysis and derivation of the 44,960-file count.

EPAM further objects as overbroad, unduly burdensome, and disproportionate to the extent the Request demands granular information for each of the 44,960 files, including source-system, path, filename, hash, size, timestamp, attribution, synchronization, and classification information. EPAM will not create a new item-by-item compilation, reconciliation, or dataset in response to the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, financial, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 61 - The forensic scope, search terms, classification rules, reference materials, and validation and reporting records EPAM supplied to iDS or that EPAM or iDS used on Device A0001 under ECF No. 55:**

Produce each of the following that EPAM supplied to iDS or that EPAM or iDS used to collect, identify, or classify material on Device A0001 under ECF No. 55: the final nonprivileged forensic work request, technical scope, collection protocol, search-term list, Boolean expression, regular expression, hash list, file-path list, extension filter, date filter, source-attribution rule, classification rule, reference file, exemplar codebase, repository export, security log, telemetry export, calibration record, validation log, test-hit summary, and technical report. This request excludes privileged Communications, counsel's mental impressions, litigation strategy, and draft expert reports protected by Federal Rule of Civil Procedure 26(b)(4).

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks counsel-directed forensic work product, including forensic scope, search terms and logic, classification rules, reference materials, validation materials, and other information reflecting the methodology used to identify and classify materials on Device A0001. Such materials reveal counsel's strategy, selection criteria,

and mental impressions and are protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

EPAM further objects because the Request seeks materials that are cumulative of, or otherwise addressed by, the stipulated forensic protocol governing the examination of Device A0001. The Request is also overbroad, unduly burdensome, and disproportionate to the extent it seeks every search term, Boolean expression, regular expression, hash list, file-path list, filter, classification rule, reference file, calibration record, validation log, test-hit summary, and related forensic material used in connection with that examination.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party technical or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 62 - The final Inspection Documents Reports, remediation-set inventories, hash lists, exception reports, classifications, and count reconciliations generated under ECF No. 55:**

Produce each final Inspection Documents Report, remediation-set inventory, hash list, exception report, factual classification, or count reconciliation generated under ECF No. 55.

Produce the maintained record identifier, filename, hash, source path, source attribution, disposition, and stated factual basis for each classification. Include the record that reconciles EPAM's references to approximately 85,000 extracted files, approximately 79,000 unreviewed files, and each later final count.

This request seeks the machine-generated and neutral-examiner output of the stipulated protocol and the file-level data fields it records. That output is produced under a court-ordered process to which EPAM stipulated, and it is not counsel's work product. Materials outside the inspection protocol are not requested. This request does not seek attorney review notes, attorney coding or tagging, counsel's mental impressions, legal analysis, or litigation strategy. Where a responsive report contains an attorney annotation, produce the report with the annotation redacted and the record identifier, filename, hash, source path, source attribution, disposition, and factual basis intact.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks counsel-directed forensic work, review classifications, analyses, and related materials prepared in connection with the examination of Device A0001 and this litigation that are protected by the attorney-client privilege, work-product doctrine, or other applicable protections. The Request also seeks materials and reporting beyond those required by the stipulated forensic protocol.

EPAM further objects to the Request as overbroad, unduly burdensome, cumulative, and disproportionate to the extent it demands file-level identifiers, filenames, hashes, source paths, source attributions, dispositions, and purported factual bases for each classification, as well as a reconciliation of various file counts. To the extent the Request requires EPAM to create a new file-level compilation, reconciliation, or analysis that is not maintained in the ordinary course of business, EPAM will not create such a record.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 63 - EPAM's review-burden estimate, review decisions and counts for the extracted files, and its disposition of Rao's May 27, 2026 proposal:**

Produce the inputs and arithmetic of EPAM's representation to the Court that review of approximately 79,000 extracted files would require more than 1,300 hours, including the file count used, the per-document or per-hour rate used, the source of that rate, each review metric, worksheet, time record, sampling record, timing study, vendor or platform estimate, and the calculation that produced the stated figure.

Produce documents sufficient to show the number of extracted files EPAM has reviewed, classified, promoted, designated, or left unreviewed as of the date of response, and the dates of that review activity.

Produce the platform-generated review, tagging, and productivity statistics maintained by Relativity or another review platform for the extracted set, limited to reviewer identifier or role, date, documents reviewed, and time recorded.

Produce the nonprivileged business or technical Communications that document EPAM's decision not to review, classify, promote, or designate those files while reserving a later claim

concerning them, and the nonprivileged evaluation and disposition of Rao's May 27, 2026 proposal to reconcile EPAM's asserted download ledger with the extraction list.

EPAM placed the 1,300-hour figure before the Court. This request seeks the factual basis, inputs, method, and result of that representation, together with the ordinary-course and platform-generated records that measure the review. It does not seek counsel's mental impressions, legal analysis, litigation strategy, attorney coding of any document, or the substance of any attorney's assessment of a document's relevance or privilege. The content of a reviewer's coding decision is not requested; the count, the rate, the time recorded, and the calculation are.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks counsel-directed litigation work product, including the calculations, review metrics, worksheets, sampling records, review statistics, review decisions, and related materials concerning EPAM's review of the extracted files. These materials were generated in connection with counsel's management and assessment of discovery and reflect attorney-directed review strategy, methodology, and decision-making protected by the work-product doctrine and, where applicable, the attorney-client privilege.

EPAM further objects as overbroad, unduly burdensome, cumulative, and disproportionate to the extent the Request seeks a reconstruction of the calculation underlying the 1,300-hour estimate, current and historical review and classification counts, reviewer-level productivity statistics, and the disposition of particular proposals concerning the extracted files. Rao's exclusion of attorney mental impressions and coding decisions does not eliminate EPAM's objections to disclosure of counsel-directed review methodology and litigation work product.

EPAM further objects to the extent the Request seeks communications or materials already in Rao's possession.

**DOCUMENT REQUEST NO. 64 - Actual and attempted access by non-legal EPAM employees to files extracted under ECF No. 55 outside the neutral Relativity platform, the related approvals and confidentiality acknowledgments, and EPAM's correspondence with iDS:**

Produce the nonprivileged factual access log, screen-sharing log, remote-desktop log, export log, meeting log, approval record, confidentiality acknowledgment, and technical-control record from July 1, 2026 through the date of response that shows actual or attempted access by Dmitrii Ilin, Gregory Klebanov, Lucy McDermott, or another non-legal EPAM employee to a file extracted under ECF No. 55 outside the neutral Relativity platform.

Produce nonprivileged correspondence with James Vaughn or iDS concerning the employee's platform authorization, access method, or screen-sharing proposal. Produce documents sufficient to identify the employee, date, access method, and file identifier. Privileged legal advice and litigation strategy are excluded.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks counsel-directed litigation and forensic work product concerning access to materials collected, hosted, and reviewed pursuant to the court-ordered forensic protocol, including records concerning authorization of access, methods of access, screen-sharing proposals, and communications with iDS regarding the administration of that process. Such materials reflect counsel's direction and management of the forensic review and are protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

EPAM further objects as overbroad, unduly burdensome, and disproportionate to the extent the Request seeks every actual or attempted access event, screen-sharing event, remote-desktop event, export event, meeting record, approval, confidentiality acknowledgment, and technical-control record concerning non-legal EPAM employees, as well as related correspondence with iDS.

EPAM objects to this Request in its entirety because it seeks attorney-client communications and counsel-directed work product concerning access to materials collected and reviewed under the court-ordered forensic protocol.

**DOCUMENT REQUEST NO. 65 - EPAM's ordinary-course technical assessments of Rao's device and system access, a Contested Material's provenance or license, and alleged**

**exposure or risk attributed to Rao, and the pre-existing records supporting EPAM's filed declarations:**

Produce each ordinary-course technical record created from January 1, 2024 through November 15, 2025 by Dmitrii Ilin or another EPAM engineer, security analyst, architect, or risk manager that assesses Rao's device or system access, a Contested Material's provenance or license, an alleged data exposure, an alleged trade-secret risk, or an alleged client-confidentiality risk attributed to Rao. If an assessment, review, investigation, or ticket within that period remained open on November 15, 2025, produce its later finding, disposition, corrective action, and closure record through the date of response.

Produce each pre-existing nonprivileged log, query result, data export, and business record that EPAM relied on as factual support for a filed declaration by Gregory Klebanov, Dmitrii Ilin, Lucy McDermott, Miroslav Sklansky, or another EPAM witness.

These are records EPAM's technical and security personnel created in the ordinary course of operating and securing its systems, and the pre-existing business records underlying sworn statements EPAM has filed. They are not work product. This request does not seek privileged legal advice, counsel's mental impressions, litigation strategy, or a protected draft declaration.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged, ordinary-course technical assessments concerning Rao's device or system access, an alleged data exposure, an alleged trade-secret risk, or an alleged client-confidentiality risk attributed to Rao, including any ordinary-course investigation, disposition, corrective action, or closure record.

EPAM otherwise objects to this Request. EPAM objects to the phrase "a Contested Material's provenance or license" as vague and ambiguous because the Request does not identify the particular provenance or licensing information sought or the types of records that would be responsive.

EPAM further objects to the extent the Request seeks every underlying log, query result, data export, or business record associated with a filed declaration, rather than documents

sufficient to support the factual statements contained in those declarations. Such a demand is overbroad, cumulative, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 66 - EPAM's post-separation statements to Gilead about Rao:**

Produce Communications from October 15, 2025 through the date of response exchanged by Ram Varma, Alex Asiimwe, or another Gilead representative with Gregory Klebanov, another Decision-Maker, EPAM Corporate Communications, or another EPAM or Odysseus person identified in a Gilead account record, client-meeting invitation, or responsive Communication as a participant in the client contact. The responsive Communications must state or imply that Rao stole files, misappropriated trade secrets, sabotaged EPAM, committed a crime, or engaged in professional misconduct. Limit the required search to the business accounts of the named or identified EPAM or Odysseus participants.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for communications between Gregory Klebanov and Ram Varma, Alex Asiimwe, or another Gilead representative that contain the kinds of statements described in the Request and will produce nonprivileged responsive documents, if any.

EPAM otherwise objects to this Request. EPAM objects to the remaining custodian scope, including “another Decision-Maker,” Corporate Communications personnel, and any other EPAM or Odysseus person identified in a Gilead account record, meeting invitation, or responsive communication, as overbroad, vague, unduly burdensome, and disproportionate to the needs of the case. That formulation would require EPAM to identify and potentially search additional custodians based on information uncovered during the search itself, without regard to

whether their files are reasonably likely to contain unique responsive information. EPAM will not undertake that open-ended custodian search.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 67 - EPAM-Boehringer Ingelheim communications on client work and opportunities involving Rao and its later statements about Rao and CoReason Inc.:**

Produce Communications from November 18, 2024 through October 15, 2025 exchanged by Ajit Londhe or another Boehringer Ingelheim representative with EPAM or Odysseus personnel that concern a proposal, proof of concept, project, client relationship, or business opportunity in which Rao participated or to which EPAM assigned Rao.

Produce Communications from October 15, 2025 through the date of response exchanged by those participants that do any of the following: (a) identify Rao or CoReason Inc.; (b) discuss Rao's work, separation, or this action; (c) state or imply that Rao stole files, misappropriated trade secrets, sabotaged EPAM, committed a crime, or engaged in professional misconduct; or (d) discuss whether Boehringer Ingelheim should continue, delay, decline, or terminate a relationship or opportunity involving Rao or CoReason Inc.

Produce each complete responsive thread and its attachments. Limit the required search to the business accounts of Rao, Gregory Klebanov, the EPAM or Odysseus account lead for Boehringer Ingelheim, and each EPAM or Odysseus person identified in a CRM record, proposal, calendar invitation, or responsive Communication as a participant in the identified proposal, project, opportunity, or client contact.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged communications dated on or after October 15, 2025 concerning Rao or CoReason Inc. and will produce responsive documents located.

EPAM otherwise objects to this Request. EPAM objects to producing communications concerning proposals, projects, client relationships, or business opportunities during Rao's employment as overbroad, unduly burdensome, and disproportionate to the needs of the case.

Those materials are not limited to the post-separation statements or conduct concerning Rao or CoReason Inc. that are the subject of the proportionate search described above.

EPAM further objects to the Request's open-ended custodian scope, including its demand to search the files of every EPAM or Odysseus person identified in a CRM record, proposal, calendar invitation, or responsive communication as a participant in an identified proposal, project, opportunity, or client contact. That formulation could require EPAM to identify and search additional custodians based on information uncovered during the search itself, without regard to whether their files are reasonably likely to contain unique responsive information. EPAM will not undertake that broader custodian search.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, financial, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 68 - EPAM-Pfizer communications on client work and opportunities involving Rao and its later statements about Rao and CoReason Inc.:**

Produce Communications from November 18, 2024 through October 15, 2025 exchanged by Josh Ide or another Pfizer representative with EPAM or Odysseus personnel that concern a proposal, demonstration, training, project, client relationship, or business opportunity in which Rao participated or to which EPAM assigned Rao.

Produce Communications from October 15, 2025 through the date of response exchanged by those participants that do any of the following: (a) identify Rao or CoReason Inc.; (b) discuss Rao's work, separation, or this action; (c) state or imply that Rao stole files, misappropriated trade secrets, sabotaged EPAM, committed a crime, or engaged in professional misconduct; or (d) discuss whether Pfizer should continue, delay, decline, or terminate a relationship or opportunity involving Rao or CoReason Inc. Produce each complete responsive thread and its attachments. Limit the required search to the business accounts of Rao, Gregory Klebanov, Lucy McDermott, the EPAM or Odysseus account lead for Pfizer, and each EPAM or Odysseus person identified in a CRM record, proposal, calendar invitation, or responsive Communication as a participant in the identified proposal, project, opportunity, or client contact.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged communications dated on or after October 15, 2025 concerning Rao or CoReason Inc. and will produce responsive documents located.

EPAM otherwise objects to this Request. EPAM objects to producing communications concerning proposals, demonstrations, training, projects, client relationships, or business opportunities during Rao's employment as overbroad, unduly burdensome, and disproportionate to the needs of the case. Those materials are not limited to the post-separation statements or conduct concerning Rao or CoReason Inc. that are the subject of the proportionate search described above.

EPAM further objects to the Request's open-ended custodian scope, including its demand to search the files of every EPAM or Odysseus person identified in a CRM record, proposal, calendar invitation, or responsive Communication as a participant in an identified proposal, project, opportunity, or client contact. That formulation could require EPAM to identify and search additional custodians based on information uncovered during the search itself, without regard to whether their files are reasonably likely to contain unique responsive information. EPAM will not undertake that broader custodian search.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, personnel, financial, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 69 - EPAM's post-separation communications with Pharma Clients other than Gilead, Boehringer Ingelheim, and Pfizer that identify Rao or CoReason Inc.:**

Produce Communications from October 15, 2025 through the date of response between a Decision-Maker or EPAM Corporate Communications and a representative of Johnson & Johnson, Roche, Genentech, Sanofi, or another Pharma Client other than Gilead, Boehringer Ingelheim, or Pfizer that identify Rao or CoReason Inc. and discuss this action, alleged theft, alleged misappropriation, alleged sabotage, or alleged professional misconduct.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks communications concerning Rao or CoReason Inc. with an open-ended universe of EPAM pharmaceutical clients, including Johnson & Johnson, Roche, Genentech, Sanofi, and any "other Pharma Client," without identifying a factual basis to believe that responsive communications occurred with those clients. The Request would require EPAM to identify and search communications across numerous client relationships for post-separation statements concerning Rao or CoReason Inc. EPAM objects to that search as overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to the Request's reliance on the defined term "Decision-Makers" to the extent that term encompasses individuals without regard to whether they communicated with the identified clients or had any involvement in post-separation communications concerning Rao or CoReason Inc.

**DOCUMENT REQUEST NO. 70 - The October 16, 2025 Gaurav Dravida thread concerning Rao's separation, CoReason Inc., a Johnson & Johnson proof of concept, alleged theft or misappropriation, or this action, and EPAM's approval, factual sourcing, and internal forwarding of it:**

Produce the complete October 16, 2025 email or message thread involving Gaurav Dravida that refers to Rao's separation, CoReason Inc., a Johnson & Johnson proof of concept, alleged theft, alleged misappropriation, or this action. Include (a) attachments; (b) nonprivileged internal forwarding Communications through November 15, 2025; and (c) nonprivileged business Communications among Gregory Klebanov, Greg Killian, Lucy McDermott, Larry Solomon, Corporate Communications personnel, and the sender that approved, directed, drafted, supplied the factual basis for, or reported the transmission. Privileged legal advice and litigation strategy are excluded.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for the complete October 16, 2025 thread involving Gaurav Dravida, including its attachments, and will produce non-privileged, non-work product documents.

EPAM otherwise objects to this Request. EPAM objects to the demand for additional internal forwarding, approval, drafting, factual-sourcing, and reporting communications as overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request seeks a broad reconstruction of the internal development, approval, and transmission of the October 16, 2025 communication beyond the thread and attachments that EPAM has agreed to search for and produce.

EPAM further objects to the extent such internal communications reflect or reveal requests for legal advice, communications with counsel, counsel-directed investigation, or attorney mental impressions or strategy protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

**DOCUMENT REQUEST NO. 71 - EPAM's internal communications approving, directing, drafting, sourcing, or reporting the statements described in Requests Nos. 66 through 70, and its communications about contacting, warning, blocking, discouraging, or monitoring third-party opportunities involving Rao or CoReason Inc.:**

Produce nonprivileged business Communications from October 15, 2025 through the date of response among Arkadiy Dobkin, the Decision-Makers, Corporate Communications personnel, Human Resources personnel, or EPAM sales leadership that approved, directed, drafted, supplied the factual basis for, or reported the transmission of a statement described in Requests Nos. 66 through 70.

Produce nonprivileged business Communications among those custodians that both (a) identify a Johnson & Johnson proof of concept, Gilead keynote, Boehringer Ingelheim negotiation, Pfizer opportunity, prospective employer, prospective investor, industry organization, speaking engagement, business partner, or other opportunity involving Rao or CoReason Inc., and (b) discuss contacting, warning, blocking, discouraging, or monitoring that opportunity.

**RESPONSE:**

To the best of its knowledge, EPAM represents that no such documents exist.

EPAM otherwise objects to this Request as overbroad, vague, unduly burdensome, and disproportionate to the needs of the case. The Request seeks communications across broad and undefined categories of personnel, including "Decision-Makers," Corporate Communications personnel, Human Resources personnel, and EPAM sales leadership, concerning an open-ended universe of third-party employment, investment, speaking, contracting, and other opportunities involving Rao or CoReason Inc.

EPAM further objects to the extent the Request seeks internal communications concerning the approval, drafting, factual sourcing, or transmission of statements described in Document Request Nos. 66 through 70, including communications protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

**DOCUMENT REQUEST NO. 72 - Rao's pre-existing open-source work, scientific reputation, and industry knowledge in EPAM's recruitment of him, and the executed and negotiated ECA confidential-information carve-out:**

Produce each Communication in which an EPAM employee attempted to discourage employment, investment, speaking, contracting, or another engagement between the identified third party and Rao or CoReason Inc. Privileged legal advice and litigation strategy are excluded.

Produce Communications between Rao and Gregory Klebanov, Greg Killian, or the EPAM or Odysseus recruiter who handled Rao's recruitment that identify Rao's pre-existing public work on OHDSI, OMOP, WebAPI Pull Request No. 358, WebAPI Issues Nos. 363 and 364, circe-be Issue No. 59, or another named open-source milestone.

Produce the recruiting Communications from January 1 through November 18, 2024 that state EPAM recruited Rao because of his pre-existing open-source expertise, scientific reputation, industry knowledge, or community software.

Produce the executed agreement and negotiation Communications that contain the following ECA language: "Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM Group Confidential Information".

Produce nonprivileged negotiation Communications that contain or discuss the following language: "For avoidance of doubt, Confidential Information expressly does not include general industry knowledge, skills, or software developed or acquired by you without reliance on EPAM

Group Confidential Information, which is through and for the purpose of community, professional, scientific, or similar groups and settings that are reasonably available through general industry sources."

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for documents responsive to this Request that relate to Rao's recruitment and were exchanged with Gregory Klebanov, and will produce the non-privileged, non-work product documents located. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it seeks additional recruiting and negotiation communications beyond the proportionate search described above as overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case. EPAM will not separately search the files of Greg Killian or the unidentified EPAM or Odysseus recruiter referenced in the Request.

EPAM further objects to the extent the Request seeks copies of executed agreements, contractual language, or communications already in Rao's possession, custody, or control.

EPAM further objects to the extent the Request seeks communications concerning contract negotiations that are protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

**DOCUMENT REQUEST NO. 73 - Statements to Rao during recruitment about the title, reporting line, authority, staffing and sales resources, revenue baseline and forecast, and financial condition of the role offered to him:**

Produce Communications from October 1 through November 18, 2024 between Rao and Gregory Klebanov, Greg Killian, Sergey Yezhkov, or the EPAM or Odysseus recruiter who handled Rao's recruitment that state the title, reporting line, decision authority, P&L responsibility, staffing resources, sales opportunity, revenue baseline, revenue target, business forecast, financial condition, or organizational support for the role offered to Rao.

**RESPONSE:**

EPAM will conduct a reasonable and proportionate search for documents responsive to this Request that relate to Rao's recruitment and were exchanged with Gregory Klebanov, and will produce the non-privileged, non-work product documents located. EPAM otherwise objects to this Request.

EPAM objects to the Request to the extent it demands searches of additional custodians, including Greg Killian, Sergey Yezhkov, and the unidentified EPAM or Odysseus recruiter referenced in the Request. Requiring EPAM to collect from and search additional custodians beyond Gregory Klebanov is unduly burdensome and disproportionate to the needs of the case, particularly where EPAM has agreed to conduct the proportionate search described above.

EPAM further objects to the Request to the extent it seeks communications concerning numerous aspects of Rao's recruitment and prospective role, including staffing resources, sales opportunities, revenue forecasts, financial condition, and organizational support, without regard to whether those subjects bear on any claim or defense.

**DOCUMENT REQUEST NO. 74 - Executed Odysseus acquisition terms identifying acquired and excluded intellectual property, assumed Takeda contracts, historical revenue, and earn-out:**

Produce the executed acquisition-agreement sections and final schedules for EPAM's 2024 acquisition of Odysseus Data Services, Inc. or Odysseus Data Services s.r.o. that identify acquired intellectual property, excluded intellectual property, assumed Takeda contracts, Odysseus historical revenue for 2022 through 2024, or earn-out terms. EPAM may redact transaction terms and personal compensation unrelated to an identified subject.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks confidential acquisition and transaction documents concerning EPAM's acquisition of Odysseus, including intellectual-property schedules, assumed client contracts, historical financial information, and earn-out terms. The Request is overbroad, unduly burdensome, and disproportionate to the needs of the case because

it seeks transaction-level information concerning the acquisition generally without limiting the requested materials to any particular intellectual property, contract, financial issue, or other matter relevant to the claims or defenses.

EPAM further objects to the extent the Request seeks historical revenue and earn-out information, as such information is commercially sensitive and has negligible or no relevance to the claims or defenses.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, contractual, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 75 - EPAM's valuation of Odysseus and its post-acquisition revenue target, and the approved organization, budget, headcount, P&L authority, and forecast for Rao's role and the September 2025 layoff:**

Produce the final Quality of Earnings report, valuation model, pro forma projection, or revenue forecast on which EPAM relied to value Odysseus or establish its post-acquisition revenue target.

Produce the approved organization, budget, headcount, P&L authority, and business forecast that EPAM actually relied on to define the role offered to Rao in November 2024 or to support the September 2025 financial layoff decision. EPAM may redact transaction terms and personal compensation unrelated to an identified subject.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request seeks highly sensitive valuation, transaction, financial, organizational, budget, headcount, P&L, and forecasting materials concerning EPAM's acquisition and operation of Odysseus. The Request is overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks company and business-unit financial

information extending well beyond documents concerning Rao's individual role, performance, or separation from employment.

EPAM further objects to the extent the Request seeks Quality of Earnings reports, valuation models, pro forma projections, revenue forecasts, and other materials concerning EPAM's valuation and acquisition of Odysseus. To the extent those transaction-level materials have any relevance to the claims or defenses, that relevance is negligible and does not justify production of EPAM's sensitive acquisition and financial information.

EPAM further objects because the Request assumes a disputed and denied fact: there was no September 2025 financial layoff decision concerning Rao. EPAM therefore will not search for or produce documents purportedly relied upon to "support" a September 2025 financial layoff decision that EPAM denies occurred.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, contractual, personnel, or client information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 76 - The executed Odysseus earn-out provision and the milestone calculations, certifications, approvals, and payments from June 1, 2024 through October 31, 2025:**

Produce the executed earn-out provision and the final milestone calculation, certification, approval, and payment record for each Odysseus earn-out milestone measured or paid from June 1, 2024 through October 31, 2025.

Produce the final record that identifies the revenue, margin, EBITDA, or other metric credited to the milestone during that period. EPAM may redact personal account information and compensation unrelated to the milestone calculation.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects to this Request as irrelevant, overbroad, unduly burdensome, and disproportionate to the needs of the case. The Request seeks highly sensitive acquisition and financial information concerning the Odysseus earn-out, including the executed earn-out provision, milestone calculations, certifications, approvals, payments, and underlying revenue, margin, EBITDA, or other financial metrics. These materials concern the economics and performance of the Odysseus transaction generally and are not limited to Rao's individual compensation, performance, responsibilities, or separation from employment.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, contractual, personnel, or client information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 77 - EPAM's application of Rao's negotiated ECA resignation, involuntary-termination, confidential-information, and section 5c2 competitor provisions to his layoff, termination, post-employment activity, and the change in EPAM's stated separation basis, and the comparison with EPAM's standard form:**

Produce nonprivileged business and Human Resources Communications from August 1 through October 31, 2025 among Larry McKlaine, June Dinitz, Javier Zamarripa, Sarah Lugar, Larry Solomon, Gregory Klebanov, and Greg Killian that discuss either ECA provision: "In the event you voluntarily resign employment"; or "The restrictions in this subsection shall not apply in case of an involuntary termination." Produce Communications that discuss the language quoted in Request No. 72.

Produce Communications that contain or discuss Sarah Lugar's statements that "these would not fall into the definition of competitor under 5c2" and those entities were "not likely to be competitors of EPAM." Produce the ordinary-course comparison or Human Resources record that identifies a material difference between Rao's negotiated ECA and EPAM's standard form. Limit the production to records that address the application of those terms to Rao's layoff, termination, post-employment activity, or the change in EPAM's stated separation basis. Privileged legal advice is excluded.

**RESPONSE:**

EPAM will produce a standard-form ECA, if one exists and can be located.

EPAM otherwise objects to this Request in its entirety. It is not seeking to enforce Rao's contractual noncompetition agreement. Thus, the material sought in the Request is irrelevant.

EPAM further objects to the Request as overbroad, unduly burdensome, and disproportionate to the extent it seeks communications among numerous custodians concerning the interpretation and application of multiple provisions of Rao's negotiated ECA to his separation and post-employment activities. In particular, because EPAM is not seeking to enforce Rao's contractual noncompetition agreement, communications concerning whether particular entities constitute competitors under Section 5(c)(2), or whether restrictions would apply following an involuntary termination, have negligible or no relevance to the claims or defenses.

EPAM further objects to the extent the Request seeks communications concerning the interpretation, application, or legal effect of Rao's ECA that reflect requests for or provision of legal advice or otherwise constitute attorney-client privileged communications or attorney work product.

**DOCUMENT REQUEST NO. 78 - Recruiting authorization, approved role description, executive-search record, and approved compensation range for Rao's November 2024 role and for any 2025 replacement, successor, or material reassignment of that role at Managing Principal, Senior Director, Vice President, or equivalent level:**

Produce the recruiting authorization, approved role description, executive-search record, and approved compensation range for the role offered to Rao in November 2024.

Produce the same categories for each Managing Principal, Senior Director, Vice President, or more senior role, and for each role carrying an EPAM internal job grade, band, or career level of B5 or above, that EPAM opened, revised, posted, filled, backfilled, or forecast from July 1 through December 31, 2025 as a replacement for, successor to, or material reassignment of a duty, direct report, client account, budget, revenue responsibility, or decision authority previously held by Rao. This request is not limited to the Data Science function or to EPAM's Life Sciences practice.

Produce documents sufficient to show EPAM's job-grade, band, or career-level framework in effect from November 18, 2024 through December 31, 2025, including each grade

or band designation of B5 and above, the corresponding titles, and the approval authority, compensation range, and headcount authority attached to each.

Produce documents sufficient to show Rao's assigned grade, band, or career level and each change to it during his employment. If EPAM uses a different designation for the levels described in this request, produce the equivalent records for the designation EPAM in fact maintains and identify that designation in the written response.

Include responsive records prepared by Rebecca Popp. Exclude candidate medical, family, benefits, and unrelated background records.

**RESPONSE:**

EPAM objects to this Request in its entirety. The terms that governed Rao's employment offer are memorialized in his offer letter and ECA. Further, Rao's ordinary employment records were already provided to him during his employment. Thus, this Request seeks documents that are wholly irrelevant to this dispute.

EPAM further objects because the Request seeks expansive recruiting, compensation, organizational, job-level, headcount, and alleged replacement or successor information concerning numerous nonparties and positions. The Request is not limited to any particular individual or position alleged to have replaced Rao, but instead extends to any role at specified seniority levels that purportedly involved a reassignment of any duty, direct report, client account, budget, revenue responsibility, or decision authority previously held by Rao, without limitation to any particular business unit or practice. That search is overbroad, unduly burdensome, and disproportionate to the needs of the case.

EPAM further objects to the demand for EPAM's broader job-grade, compensation, and headcount framework for all positions at B5 and above. Such company-wide organizational and compensation information extends well beyond Rao's own employment and seeks confidential information concerning numerous positions and nonparties with negligible or no relevance to the claims or defenses.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, financial, organizational, compensation, or personnel information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 79 - EPAM's computation and factual support for its claimed damages:**

Produce EPAM's current computation of each category of damages claimed in the operative Complaint and the nonprivileged documents on which each computation is based. Include each claimed forensic, investigation, remediation, development, lost-revenue, unjust-enrichment, disgorgement, or other expense.

Produce each nonprivileged claim notice or proof-of-loss submission that EPAM sent to an insurer and that states the factual basis or amount of a loss or expense included in EPAM's computation. This request does not address damages alleged only in a proposed or unfiled pleading.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged documents sufficient to support its computation of damages. EPAM otherwise objects to this Request.

EPAM objects to the extent the Request seeks final damages computations, expert analyses or opinions, counsel-directed analyses, models or calculations that have not been completed, or materials protected by the attorney-client privilege, work-product doctrine, or other applicable protections. EPAM's damages computation and supporting materials remain subject to supplementation as appropriate.

EPAM further objects to the demand for claim notices or proof-of-loss submissions to insurers to the extent such materials are cumulative of the damages-support materials EPAM has agreed to search for and produce, or contain privileged or protected communications or analyses.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 80 - EPAM's valuation, forecast, and commercialization-funding models, and their assumptions and source data, for the Contested Materials, the Request No. 37 items, and claimed damages:**

Produce each final market-valuation model, total-addressable-market projection, revenue forecast, client-lifetime-value calculation, development-cost calculation, or commercial-valuation spreadsheet that EPAM relies on to value a Contested Material, an item identified in response to Request No. 37, or damages claimed in this action.

Produce the final valuation or forecast that EPAM used from January 1, 2023 through October 15, 2025 to approve funding or commercialization for Synapse, Prometheus, the AI Accelerator, the AI Cohort Generator, or the ETL Conversion Kit. Produce the existing assumptions and source data incorporated into each responsive model.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will conduct a reasonable and proportionate search for nonprivileged documents sufficient to support its computation of damages. EPAM otherwise objects to this Request.

EPAM objects to the extent the Request seeks valuation models, projections, forecasts, calculations, spreadsheets, assumptions, or underlying source data beyond the documents sufficient to support EPAM’s damages computation. In particular, the Request seeks historical funding, valuation, and commercialization materials concerning numerous products and projects, without regard to whether EPAM relies on those materials in support of damages claimed in this action. That broader discovery is overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case.

EPAM further objects to the extent the Request seeks incomplete analyses, expert analyses or opinions, counsel-directed analyses, or materials protected by the attorney-client privilege, work-product doctrine, or other applicable protections.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, or technical information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 81 - Insurance agreements that may cover a judgment in this action:**

Produce each Directors and Officers, Employment Practices Liability, Commercial General Liability, Cyber, or Technology Errors and Omissions insurance agreement under which an insurer may be liable to satisfy all or part of a judgment in this action or to indemnify or reimburse payments made to satisfy the judgment. Include the declaration page, policy-limit schedule, endorsement, and rider in effect from January 1, 2024 through the date of response.

**RESPONSE:**

EPAM objects to the Request to the extent it seeks insurance agreements or policy materials beyond the scope of Federal Rule of Civil Procedure 26(a)(1)(A)(iv), including policies or materials under which an insurer could not be liable to satisfy all or part of a possible judgment in this action or to indemnify or reimburse payments made to satisfy such a judgment.

EPAM further objects to the Request's January 1, 2024 through the date-of-response time period to the extent it encompasses policies or policy periods that could not provide coverage for a judgment in this action.

EPAM reserves all rights and objections concerning the scope, applicability, interpretation, or availability of coverage under any insurance policy.

**DOCUMENT REQUEST NO. 82 - EPAM's authorization for Rao to access and evaluate CodeMie and AI/Run, and his communications with the product owner of those tools:**

Produce each Communication from November 18, 2024 through October 15, 2025 between Rao and James Bland, or between Rao and another EPAM employee who served as product owner, product manager, engineering lead, or maintainer of CodeMie or AI/Run, that concerns CodeMie, AI/Run, the codemie, codemie-ai, codemie-tools, codemie-code, codemie-ui, ai-run-community-tools, ai-run-demo-agents, or ai-run-swebench repositories, or access to, evaluation of, use of, contribution to, demonstration of, or adoption of either tool. Responsive Communications include Microsoft Teams one-to-one chats, Teams group chats, Teams channel posts, email, and meeting invitations, notes, recordings, transcripts, and automated recaps. Produce each complete thread and its attachments.

Produce each record that requested, granted, approved, recorded, invited, or announced access to or evaluation of CodeMie or AI/Run by Rao or by EPAM employees generally, including the access request, approval, provisioning record, group, project, or namespace membership record, license or seat assignment, onboarding or enablement material, internal announcement, newsletter, demonstration invitation, training session, office-hours invitation, and any internal posting inviting EPAM employees to use, test, evaluate, or contribute to either tool.

Produce documents sufficient to show each person who served as product owner, product manager, or engineering lead for CodeMie and for AI/Run from November 18, 2024 through October 15, 2025, and the dates each person held that role.

EPAM must produce responsive Communications whether or not James Bland is the correct name of the person who held that role. If EPAM contends that no employee named James Bland held it, identify in the written response the person or persons who did and produce the responsive Communications with those persons.

Limit the required search to Rao, James Bland, and each person identified as a CodeMie or AI/Run product owner, product manager, engineering lead, or maintainer. Search each natural person and each EPAM-issued corporate user account or digital identity assigned to that person, including Microsoft Teams chat and channel stores.

**RESPONSE:**

EPAM objects to this Request in its entirety, as vague and ambiguous. EPAM cannot search for or produce documents in response to this Request, or sufficiently object, because it does not know what this Request is seeking.

In particular, the Request does not sufficiently define the scope of “CodeMie” or “AI/Run,” the identified repositories, or the activities encompassed by “access to, evaluation of, use of, contribution to, demonstration of, or adoption of” those tools. The Request further requires EPAM to identify an open-ended universe of product owners, product managers, engineering leads, and maintainers and then search multiple forms of communications and access records for each such person.

EPAM further objects to the Request as overbroad, unduly burdensome, and disproportionate because it seeks communications, access and provisioning records, membership

records, onboarding materials, announcements, newsletters, demonstrations, training materials, and other records concerning not only Rao but EPAM employees generally.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, personnel, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**DOCUMENT REQUEST NO. 83 - The SharePoint files EPAM alleges Rao deleted, their content, versions, and system metadata:**

Produce each file that EPAM contends Rao deleted, attempted to delete, or attempted to make permanently unavailable from an EPAM SharePoint site, OneDrive location, or Teams-backed document library, in native form. EPAM alleges that "Rao had attempted to delete various files from an EPAM SharePoint site (including by attempting to make them permanently unavailable by clearing the recovery folder)" and that "on October 13, 2025, Rao had attempted to permanently delete files in over 60 EPAM client and project folders from EPAM's SharePoint network." ECF No. 37 ¶¶ 68, 81.

Produce each version of each such file retained in version history, and each copy retained in the recycle bin, second-stage or site-collection recycle bin, preservation-hold library, retention hold, litigation hold, or backup.

Produce for each such file the maintained metadata: filename, file extension, full site and folder path, unique document identifier, size, hash, author, created-by, creation date and time, last-modified-by, last-modified date and time, each version number with the editor and timestamp for that version, checked-out-by, deleted-by, deletion date and time, restoration date and time, and each retention or hold applied.

Produce the SharePoint Online and Microsoft 365 unified audit-log entries for each such file, limited to the maintained user, UTC timestamp, event type and operation, source IP, client application or user agent, site and item identifier, and result.

Produce documents sufficient to show each of the folders EPAM describes as the "over 60 EPAM client and project folders," and, for each folder, the files affected, the disposition of each file, and whether each file was restored and on what date.

Responsive files include each such file whose content concerns Synapse, EPAM Synapse, Takeda-Synapse, Prometheus, MedRAG, the AI Accelerator, the AI Cohort Generator, the ETL Conversion Kit, or another Contested Material, including any draft, note, outline, analysis, or presentation authored or edited by Rao on one of those subjects.

Produce the nonprivileged ordinary-course records by which the project team or EPAM's InfoSec function identified, reported, investigated, reconstructed, or restored the affected files, including the alert, ticket, restoration request, restoration confirmation, and the record stating the number of files and folders affected.

**RESPONSE:**

Subject to an appropriate protective order or confidentiality agreement, EPAM will produce responsive files that Rao allegedly deleted or attempted to delete. If Rao refuses to agree to appropriate confidentiality protections, EPAM will produce a list identifying such files.

EPAM otherwise objects to this Request. EPAM objects to producing every version, retained or preservation copy, metadata field, audit event, folder-level reconciliation, and restoration record associated with each identified file as overbroad, unduly burdensome, cumulative, and disproportionate to the needs of the case. The Request would require EPAM to reconstruct, on a file-by-file and folder-by-folder basis, the complete version, deletion, restoration, retention, and audit history of the allegedly affected materials across multiple Microsoft 365 and SharePoint sources, notwithstanding EPAM's agreement to produce the responsive files themselves.

EPAM further objects to the demand for documents sufficient to reconstruct each of the "over 60 EPAM client and project folders," including the affected files, disposition, and restoration date for each, to the extent that information is not maintained together in the ordinary course of business. EPAM will not create a new reconciliation, compilation, or dataset in response to the Request.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, technical, financial, personnel, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

**<u>DOCUMENT REQUEST NO. 84 - Otter.ai and other third-party meeting recordings, transcripts, and summaries created or shared by EPAM personnel, and the subscriptions used to make them:</u>**

Produce each audio or video recording, transcript, summary, abstract, outline, action-item or takeaway list, chat log, and shared link created, obtained, stored, or shared by Jim Gatch, also appearing in EPAM records as James Gatch, by Rebecca Popp, or by another EPAM or Odysseus employee using Otter.ai or another third-party meeting-recording, transcription, or note-taking service, for a meeting, call, or conversation from November 18, 2024 through October 15, 2025 that Rao attended, that discussed Rao, or that concerned a Pharma Client engagement, a Contested Material, Synapse, MedRAG, Prometheus, the AI Accelerator, the AI Cohort

Generator, the ETL Conversion Kit, the Odysseus P&L or earn-out, or Rao's role, performance, duties, or separation. Responsive services include Otter.ai, Fireflies.ai, Fathom, Read.ai, Gong, Chorus, Grain, Sembly, tl;dv, Microsoft Teams transcription and Copilot recap, and Zoom AI Companion.

For each responsive item, produce the complete record in every form in which it exists, including the audio or video file in native form, the full verbatim transcript, the summary or abstract, the outline, the action-item list, the speaker labels and speaker-attribution data, and the maintained metadata, including recording date and time, duration, meeting title, organizer, participant list, recording or uploading user, workspace or account identifier, item identifier, sharing history, and each person or group with whom the item was shared.

Where EPAM's records contain only a link, only a summary, only an outline, or only a partial or excerpted transcript, produce the complete item, including the full transcript, the summary, and the audio. A link is not a produced document. If EPAM contends that a responsive item is held in an account outside its possession, custody, or control, identify the item, the service, the account holder, and the meeting it records, as Instruction 2 requires.

Produce each Communication, Microsoft Teams chat or channel post, or email by which such a recording, transcript, summary, outline, or link was circulated, shared, forwarded, requested, or discussed among EPAM or Odysseus personnel, together with its recipients.

Produce documents sufficient to show each Otter.ai or comparable subscription, license, seat, or workspace used by Jim Gatch or Rebecca Popp in connection with EPAM business from November 18, 2024 through October 15, 2025, including the account or workspace identifier, the assigned user, the payer, the cost center, and the approving manager.

Produce each expense report, receipt, invoice, card transaction, reimbursement record, or vendor-payment record submitted to or paid by EPAM for that service. EPAM may redact unrelated transactions and all but the last four digits of an account or card number.

Produce each notice, consent, disclosure, acknowledgment, or objection concerning the recording or transcription of a meeting by such a service, and each EPAM policy, procedure, or written guidance in effect from November 18, 2024 through October 15, 2025 governing the use

of third-party meeting-recording or transcription services, the recording of client meetings, the retention of recordings and transcripts, and participant notice or consent.

**RESPONSE:**

EPAM objects to this Request in its entirety.

EPAM objects because the Request is extraordinarily overbroad, unduly burdensome, and disproportionate to the needs of the case. It seeks recordings, transcripts, summaries, metadata, sharing histories, communications, subscriptions, expense records, notices, and policies across numerous third-party services, custodians, meetings, and subject matters without identifying any particular meeting or recording for which responsive material allegedly exists.

The Request further requires EPAM to identify and search an open-ended universe of employees and third-party recording, transcription, and note-taking services for any meeting that Rao attended, discussed Rao, or concerned any of numerous clients, products, projects, financial matters, or employment subjects. EPAM objects to undertaking that expansive, multi-source search as disproportionate to the needs of the case.

EPAM further objects to the demand that EPAM obtain and produce a "complete" recording, transcript, audio file, or other item where EPAM's records contain only a link, summary, outline, or excerpt, and to the extent the Request requires EPAM to identify or obtain materials that are not within EPAM's possession, custody, or control.

EPAM further objects to producing confidential, proprietary, or commercially sensitive EPAM or third-party business, client, financial, personnel, technical, or security information absent an appropriate protective order or confidentiality agreement. Rao has declined to agree to such protections.

Dated: September 28, 2026

SEYFARTH SHAW LLP

By: */s/* Jacob Oslick

Jacob Oslick (Pa. Bar No. 311028)
joslick@seyfarth.com
James S. Yu (admitted *pro hac vice*)
jyu@seyfarth.com
Brooke K. Gary (admitted *pro hac vice*)
brgary@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Matthew Christoff (admitted *pro hac vice*)
mchristoff@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September 2026, a copy of PLAINTIFF'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS was sent via electronic mail to:

GOWTHAM ADAMANE RAO
gowthamrao@gmail.com
gowthamrao.litigation@gmail.com

*/s/ Brooke Gary*